**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 15 |
| Pride Group Holdings Inc., *et al.*[1] | Case No. 24-10632 (CTG) |
| Debtors in Foreign Proceedings. | (Joint Administration Requested) |

**DECLARATION OF RACHEL NICHOLSON AS**
**CANADIAN COUNSEL IN SUPPORT OF VERIFIED PETITION**
**FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS,**
**(II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND**
**(III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

I, Rachel Nicholson, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows to the best of my knowledge, information and belief:

1.    I am a Partner in the Restructuring and Insolvency practice of the law firm Thornton Grout Finnigan LLP located at 100 Wellington Street West, Suite 3200, Toronto, Ontario, M5K 1K7, Canada ("TGF"). TGF is acting as Canadian counsel to the above-captioned debtors (collectively, the "Debtors," and together with their non-Debtor affiliates, the "Pride Group") in the Canadian proceedings (the "CCAA Proceedings") commenced under the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court").

2.    I submit this declaration (this "Declaration") in support of (i) the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition,"

---

[1]    The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

and, together with the Official Form 401 Petition for each Debtor, the "Petitions"), and (ii) the *Motion of the Foreign Representative for Entry of an Order Granting Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* (the "Provisional Relief Motion"), each filed contemporaneously herewith by Randall Benson in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the Debtors in these cases under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code").[2]

3.      I am over the age of 18 and, if called upon to testify, could and would testify competently to all facts and matters set forth in this Declaration.  All facts and matters contained in this Declaration are based upon (i) my knowledge, (ii) my review of the relevant documents, and/or (iii) my opinion based upon my knowledge and experience of the Debtors' operations.

## PERSONAL BACKGROUND AND QUALIFICATIONS

4.      I received a Bachelor of Arts degree from Western University in 2011 and a Juris Doctorate from Western University in 2014.  I was admitted to the Ontario Bar in 2015.

5.      I have extensive experience representing debtors, creditors, and court-appointed monitors and receivers in a broad range of Canadian insolvency matters, including complex proceedings under the CCAA and the Canada *Bankruptcy and Insolvency Act*, R.S.C. 1985 c. B-3, out-of-court workouts, and distressed investments and purchases.  I also have significant experience with cross-border and international mandates with a particular focus in proceedings in the United States.

6.      Although I am not admitted to practice law in the United States, I am generally familiar with recognition proceedings arising under Chapter 15 of the Bankruptcy Code as a consequence of my involvement with other Canadian restructurings involving companies that have required recognition proceedings under Chapter 15 of the Bankruptcy Code.

---

[2]   Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Verified Petition.

## THE DEBTORS' CCAA PROCEEDINGS

7.     On March 27, 2024, the Debtors filed an application (the "Application") with the Canadian Court pursuant to, among others, sections 3, 9, 10, 11 and 11.001 of the CCAA.  On March 28, 2024, the Canadian Court signed a first day initial order (as may be amended and restated from time to time, the "Initial Order"): (i) declaring that the Debtors are corporations to which the CCAA applies; (ii) staying all proceedings and remedies taken or that might be taken in respect of the Debtors and certain of their non-Debtor affiliates, or any of their property, except as otherwise set forth in the Initial Order, for an initial period until April 6, 2024 in accordance with the CCAA; (iii) appointing Ernst & Young, Inc. as the court-appointed monitor of the Debtors in the CCAA Proceedings (in such capacity, the "Monitor"); (iv) granting (a) the Monitor, counsel to the Monitor, counsel to the Debtors, the Debtors' Chief Restructuring Officer, and counsel to the Debtors' board of directors a charge on the Debtors' property as security for their respective fees and disbursements, and (b) the directors and officers of the Debtors and certain of their affiliates a charge on the Debtors' property as security against obligations and liabilities that they may incur in such capacities; and (v) granting other customary relief.

8.     The Initial Order further provides that the Foreign Representative is authorized to act as a representative in respect of the CCAA Proceedings for the purpose of having the CCAA Proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative to apply to the United States Bankruptcy Court for the District of Delaware for relief pursuant to chapter 15 of the Bankruptcy Code and representing the Debtors in these proceedings.

## STATEMENTS OF CANADIAN LAW AND PRACTICE

9.     The CCAA provides for court-supervised restructuring designed to enable financially distressed companies with liabilities in excess of $5 million to avoid foreclosure or

seizure of assets while maximizing the company's value as a going concern for the benefit of creditors and other parties in interest.

10.     A CCAA proceeding is, in the usual course, a voluntary insolvency proceeding in which a debtor aims to reorganize or liquidate its business and distribute proceeds to creditors pursuant to a plan and under court supervision.  A debtor's assets and affairs are subject to the supervision of the Canadian court and court-appointed monitor during the pendency of a CCAA proceeding.

11.     In a CCAA proceeding, absent exceptional circumstances, a debtor's management and board of directors remain in place, and the board maintains its power under Canadian law to approve significant actions, including disposing of important assets, borrowing significant amounts, or changing corporate structures, subject to oversight by a court-appointed monitor and approval of the court.

12.     Upon the commencement of a CCAA proceeding, the court will appoint a qualified monitor, that functions as an independent court officer and observer of the CCAA proceeding and the debtor's business.  The monitor's powers and duties are set out in the CCAA and relevant court order and include, among other things, the duties to (i) monitor the debtor's ongoing operations, (ii) report to the court on any major events affecting the debtor, (iii) notify the debtor's creditors and, if applicable, shareholders of any meetings and tabulates votes at these meetings, if held, (iv) assist with preparing, filing, and holding meetings for voting on the plan of arrangement, (v) approve the disclaimer of contracts and leases, (vi) prepare reports in conjunction with any interlocutory motions by the company or other stakeholders, and (vii) prepare a report on the plan of arrangement, which is usually included in the mailing of the plan, if one is filed.  Consent of the monitor is generally not required for the debtor to manage its business in the ordinary course, including the sale of assets in the ordinary course, but the monitor may request that the court enjoin any actions that may prove harmful to the debtor

and/or its creditors.  Though the monitor need not formally approve significant transactions such as asset sales outside of the ordinary course, court approval is generally required for such transactions and the court gives weight to the monitor's recommendations concerning such transactions.

13.     Following the commencement of a CCAA proceeding, the company may select one or more foreign representatives to apply to a court in a jurisdiction outside Canada for recognition of the CCAA proceeding on behalf of the debtor company.

14.     Upon the commencement of a CCAA proceeding, all actions against the debtor and its assets are stayed. The stay presumptively applies to all persons who might bring proceedings or take either judicial or extra-judicial steps against the debtor or its property, unless there is an express exemption in the CCAA. The stay is first granted for a maximum period of ten (10) days, but is typically extended where the debtor can show it continues to act with good faith and due diligence and provides a cash flow forecast demonstrating sufficient liquidity to continue the CCAA proceeding during the proposed extension of the stay period. There is no prescribed limit on the number or duration of these extensions of the stay.

15.     In a CCAA proceeding, subject to limited exceptions, clauses triggering termination rights upon the debtor's commencement of an insolvency proceeding are not enforceable, so contract counterparties may not terminate contracts solely by virtue of the commencement of the CCAA proceeding.

16.     In a CCAA proceeding, a debtor is also able to obtain postpetition financing (*i.e.*, DIP financing), subject to a hearing and court approval, after showing that the proposed financing is in the best interests of its estate.  Such borrowings would typically have priority status in the CCAA proceeding.  The Canadian court may approve priority charges against the company's assets, which take priority over existing secured creditors, where notice of the

hearing to approve priority charges is given to the potentially affected creditors and the court is of the opinion that such charges are appropriate in the circumstances.

17.     For a plan of compromise or arrangement to be binding on each class of creditors, a majority of the creditors that voted on the plan in that class, by number, together with two-thirds (2/3) of the creditors that voted on the plan in that class, by dollar value, must approve of said plan presented to them.  If a class of creditors approves the plan, it is binding on all creditors within the class, subject to the court's approval of the plan.  If all of the classes of creditors approve the plan, the court must then approve the plan as a final step.  Upon court approval, the debtor continues forward as outlined under the plan until it has satisfied the requirements under the plan.

18.     Throughout a CCAA proceeding, the court retains broad discretion to make any order that it considers appropriate in the circumstances.

### THE CCAA PROCEEDINGS ARE FOREIGN MAIN PROCEEDINGS

19.     To ensure the effective and economic administration of the Debtors' restructuring efforts, I believe that the Debtors require the protection afforded to foreign debtors pursuant to chapter 15 of the Bankruptcy Code in order to prevent business disruption and recognize the legal effect of the CCAA Proceedings in the United States.

20.     The CCAA Proceedings provide full due process for impacted creditors, including receipt of notice, an opportunity to retain counsel and to appear, to raise objections, to vote (if a plan is proposed), and to appeal.

21.     To the best of my information and belief, the CCAA Proceedings are collective judicial proceedings under Canadian law in which the purpose is a corporate restructuring or liquidation.  In the CCAA Proceedings, the Debtors' assets and affairs are subject to the control or supervision of the Canadian Court and the Monitor.  Impacted creditors are afforded full due process rights.  The effect of a plan of arrangement is that if the requisite statutory majorities

of the voting creditors of each class are obtained and the Canadian Court approves the plan, then the terms of the plan become binding on all members of each class of creditors as a matter of Canadian law.

22.    I believe, to the best of my information and belief, and as identified in the *Declaration of Randall Benson in Support of the (A) Debtors' Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code and (B) Motion for Provisional Relief*, filed contemporaneously herewith, other than these chapter 15 cases, the CCAA Proceedings are the only proceedings related to the insolvency of the Debtors and, therefore, are the only "foreign proceedings" with respect to the Debtors within the meaning of section 101(23) of the Bankruptcy Code.

23.    Additionally, I understand that a statement identifying all foreign proceedings with respect to the Debtors has been filed with this Court.

[*Remainder of Page Intentionally Left Blank*]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: April 1, 2024
      Toronto, Canada

                    */s/ Rachel Nicholson*
                    Rachel Nicholson