**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Pride Group Holdings Inc., *et al.*[1]<br><br>    Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 24-10632 (CTG)<br><br>(Joint Administration Requested) |

**MOTION OF THE FOREIGN REPRESENTATIVE
FOR ENTRY OF AN ORDER GRANTING PROVISIONAL RELIEF
PURSUANT TO SECTIONS 105(a) AND 1519 OF THE BANKRUPTCY CODE**

Randall Benson, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors"), in the Canadian proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"), respectfully submits this motion (the "Motion") for entry of an order, substantially in the form attached as **Exhibit A**, granting provisional relief under section 1519(a) of Title 11 of the United States Code (the "Bankruptcy Code"), including relief available pursuant to sections 362, 364 and 365 of the Bankruptcy Code with respect to the Debtors and their non-Debtor affiliates (collectively, the "Pride Group")[2] and their property located within the territorial jurisdiction of the United States (the "Provisional Relief Order").

---

[1]   The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

[2]   As used in this Motion, "Pride Group" does not include certain affiliated entities that are special-purpose securitization vehicles that do not engage in any business or activity other than acting as purchasers of securitized assets or issuers of asset-backed obligations under various securitization agreements. These entities are not applicants in the CCAA Proceedings, are not Debtors in these Chapter 15 Cases, and no relief is sought with respect to these entities.

In support of the requested relief, the Foreign Representative respectfully refers the Court to and incorporates the following herein by reference: the (a) *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition"); (b) *Declaration of Randall Benson in Support of the (A) Debtors' Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code and (B) Motion for Provisional Relief* (the "Benson Declaration"); and (c) *Declaration of Rachel Nicholson as Canadian Counsel to the Debtors in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Nicholson Declaration").

## PRELIMINARY STATEMENT[3]

1.     The Debtors operate a trucking and logistics conglomerate based in Canada with operations in Canada and the United States that is collectively the largest used truck seller in North America.  The Debtors' businesses are managed from their headquarters in Mississauga, Ontario, and they maintain facilities and operations in both Canada and the United States.  The Debtors own substantial assets within the territorial jurisdiction of the United States, including in California, Texas, Indiana, and Illinois.  These assets consist of, among other things, real estate properties, bank accounts, equipment, and trucks.

2.     On the date hereof (the "Petition Date"), the Foreign Representative filed the Verified Petition, seeking, among other things, recognition by this Court of his status as the

---

[3]   Capitalized terms used in this section but not otherwise defined shall have the meanings ascribed to them in the Verified Petition.

Debtors' foreign representative, recognition of the CCAA Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code, and certain related relief (the "Recognition Order").  The provisional relief requested herein pending the entry of the Recognition Order will provide much needed protection for the Pride Group and its property located within the United States and will enable the Pride Group to stabilize their operations and give them sufficient time to negotiate with their creditors and other stakeholders regarding a potential restructuring in the CCAA Proceedings.

3.      In order to provide the Pride Group with the necessary breathing room and stability to pursue a potential restructuring, the Foreign Representative now seeks certain provisional relief from the Petition Date through the date of entry of the Recognition Order, including application of sections 362, 364 and 365 of the Bankruptcy Code to the Pride Group and its property located in the United States.  While the Pride Group has received relief from the Canadian Court against potential creditors seeking to, among other things, exercise rights or remedies against the Pride Group or its assets pursuant to the Initial Order, the Pride Group may be exposed to potentially adverse action in the United States by parties that may disregard such provisions contained in the Initial Order.

4.      Indeed, as described in greater detail below, certain lenders have already initiated litigation or otherwise taken actions to enforce their claims against the Pride Group in the United States, including sending notices to lessees directing them to change payment from Pride Group entities to the relevant lender.  Absent provisional relief, creditors, litigants, contract counterparties, or other parties in interest in the United States may engage in a "race to the courthouse" or resort to other self-help remedies resulting in a piecemeal and preferential liquidation and distribution of assets, rather than an orderly distribution of assets through the

CCAA Proceedings.  Provisional relief is therefore necessary to avoid immediate and irreparable harm to the Pride Group and its assets located in the United States.

5.     The Initial Order also extends the stay of proceedings and other protections provided under the CCAA to (i) the Pride Group as a whole to preserve the *status quo*, given that the businesses and operations of the Debtors are heavily intertwined with that of the non-Debtor entities; and (ii) certain directors and officers of the Pride Group in their capacity as personal guarantors on certain of the Pride Group's credit facilities[4] (collectively and in such capacities, the "Personal Guarantors"), given that permitting such proceedings to continue would be distracting to management which is operating the Pride Group and pursuing the CCAA Proceedings and these Chapter 15 Cases.  The Foreign Representative likewise seeks concomitant recognition and enforcement of the stay granted by the Canadian Court pursuant to the Initial Order with respect to these parties and their assets located within the United States in order to prevent creditors and other parties in interest from taking adverse actions against them during the pendency of the CCAA Proceedings and these Chapter 15 Cases.

6.     The Initial Order also granted (i) a court-ordered charge, with first priority over all other charges, on the Debtors' property as security for the fees and disbursements of the Debtors' monitor and its counsel, the Debtors' U.S. and Canadian counsel, the Debtors' chief restructuring officer, and Canadian counsel to the Debtors' board of directors (the "Administration Charge"); and (ii) a court-ordered charge, with first priority over all other charges except the Administration Charge, on the Debtors' property as security in favor of the directors and officers of the Pride Group for additional liability insurance and certain obligations for which they may be held

---

[4]    Including the Pride Group's co-founders Sulakhan Johal and Jasvir Johal and Sulakhan's son Amrinder Johal.

personally liable in Canada and the United States, including unpaid wages, certain taxes, and withholdings (the "Directors' and Officers' Charge").

7.      Certain of the Pride Group's executory contracts may also contain arguably unenforceable provisions permitting termination upon the Debtors' filing of a case or proceeding under the Bankruptcy Code or CCAA.  The provisional relief requested by the Debtors is necessary to prevent individual creditors from acting to frustrate the purpose of the Debtors' restructuring by disregarding the Initial Order or otherwise seeking to terminate or modify executory contracts or unexpired leases.

8.      Chapter 15 of the Bankruptcy Code is intended to prevent precisely these types of negative effects on a debtor's restructuring in a foreign country.   Therefore, the Foreign Representative respectfully submits that provisional relief is proper and urgently needed to give the Pride Group the time to pursue a restructuring in the CCAA Proceedings for the benefit of all stakeholders.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under 28 U.S.C. § 157(b)(2)(P).

10.      The Foreign Representative, solely in his capacity as such, consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

11.      Venue is proper in this Court and this District pursuant to 28 U.S.C. § 1410.

12.     The statutory predicates for the relief requested herein are section 105(a), 362, 364, 365, 1517, 1519, and 1521 of the Bankruptcy Code and Local Rule 9013-1(m).

**BACKGROUND**

13.     On March 27, 2024, the Debtors commenced the CCAA Proceedings in the Canadian Court, and the Canadian Court signed the initial order on the following day (the "Initial Order"), granting certain relief in connection with the CCAA Proceedings.  The Initial Order, among other things, (i) appoints Randall Benson as the Foreign Representative for the Debtors and authorizes him to file these cases (collectively, the "Chapter 15 Cases"); and (ii) stays the commencement or continuation of any proceeding or enforcement process in any court or tribunal against the Pride Group, the Personal Guarantors, and their property through and including April 6, 2024 (the "Stay Period").

14.     On the date hereof (the "Petition Date"), the Foreign Representative commenced these Chapter 15 Cases by filing petitions (collectively, the "Chapter 15 Petitions") seeking recognition of the CCAA Proceedings as "foreign main proceedings" as defined in sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Foreign Representative has requested joint administration of these Chapter 15 Cases pursuant to Bankruptcy Rule 1015(b).

15.     As described in detail in the Benson Declaration, the primary purpose of the CCAA Proceedings is to give the Debtors breathing room to stabilize their business and develop a plan to restructure their affairs and indebtedness for the benefit of their stakeholders.  Additional factual background regarding the Debtors, including their history and business operations, their capital structure, and the events leading to the filing of the CCAA Proceedings and these Chapter 15 Cases, is set forth in detail in the Benson Declaration.  Details regarding the CCAA Proceedings and the CCAA process are set forth in the Nicholson Declaration.

## RELIEF REQUESTED

16.     Pursuant to sections 105(a), 1519, and 1521 of the Bankruptcy Code, the Foreign

Representative respectfully requests that the Court enter the Provisional Relief Order, substantially

in the form attached hereto as **Exhibit A**, granting the following provisional relief (the "Provisional

Relief") effective as of the Petition Date through the date of entry of the Recognition Order:

a.  The Foreign Representative is recognized as, and shall be, the representative of
    the Debtors with full authority to administer the Debtors' property and affairs
    in the United States on a provisional basis.

b.  The Initial Order shall be recognized and enforced in the United States on a
    provisional basis.

c.  The Pride Group, the Personal Guarantors, and their property located within the
    United States shall be entitled to the full protections and rights pursuant to
    section 1519(a)(1), which protections shall be coextensive with the provisions
    of section 362 of the Bankruptcy Code.  Without limiting the generality of the
    foregoing, and except as permitted in the Initial Order or authorized by the
    Foreign Representative in his sole discretion, the Provisional Relief Order shall
    impose a stay within the territorial jurisdiction of the United States of:

    i.   the commencement or continuation, including the issuance or
         employment of process, of a judicial, administrative, or other action or
         proceeding against the Pride Group or the Personal Guarantors, or any
         of their assets or proceeds thereof, or to recover a claim or enforce any
         judicial, quasi-judicial, regulatory, administrative or other judgment,
         assessment, order, lien or arbitration award against the Pride Group, the
         Personal Guarantors, or any of their assets or proceeds thereof;
         *provided,* that the Provisional Relief Order shall not in any way limit
         the Pride Group from initiating, prosecuting, or continuing any lawsuits
         or other actions in the United States in which they are plaintiffs, and any
         defendants in such lawsuits or other actions shall not be prevented from
         taking any actions to defend against such lawsuits or other actions;

    ii.  the enforcement, against the Pride Group, the Personal Guarantors, or
         any of their property, of any judgment obtained before the
         commencement of these Chapter 15 Cases;

    iii. any act to obtain possession of, exercise control over, or create, perfect,
         or enforce any lien against, any property of the Pride Group or the
         Personal Guarantors;

      iv.  any act to collect, assess, or recover a claim against the Pride Group, the Personal Guarantors, or any of their property that arose before the commencement of these Chapter 15 Cases; including, without limitation, any act to collect cash payments from the Pride Group's lessees on account of unexpired equipment leases; and

      v.  the setoff of any debt owing to the Pride Group or the Personal Guarantors that arose before the commencement of these Chapter 15 Cases against any claim of the Pride Group or the Personal Guarantors, as applicable.

d.  Section 364 of the Bankruptcy Code shall be applicable with respect to each of the entities within the Pride Group, and their property within the United States.

e.  Section 365(e) of the Bankruptcy Code shall apply with respect to the executory contracts and unexpired leases of the Pride Group such that, notwithstanding any provision in any such contract or lease or under applicable law, no executory contract or unexpired lease with any Pride Group entity may be terminated, cancelled, or modified (and any rights or obligations in such leases or contracts cannot be terminated or modified) solely because of a provision in any contract or lease of the kind described in sections 365(e)(1) of the Bankruptcy Code, and all contract and lease counterparties located within the United States shall be prohibited from taking any steps to terminate, modify, or cancel any contracts or leases with the Pride Group arising from or relating in any way to any so-called "*ipso facto*" or similar clauses.

f.  The Foreign Representative shall have the rights and protections to which the Foreign Representative is entitled under chapter 15 of the Bankruptcy Code, including, but not limited to, the protections limiting the jurisdiction of U.S. Courts over the Foreign Representative in accordance with section 1510 of the Bankruptcy Code and the granting of additional relief in accordance with sections 1519(a) and 1521 of the Bankruptcy Code.

g.  Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the Provisional Relief Order shall be effective immediately and enforceable upon entry, (ii) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in the Provisional Relief Order, and (iii) the Foreign Representative is authorized and empowered, and may, in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of the Provisional Relief Order.

**<u>BASIS FOR RELIEF REQUESTED</u>**

**I.**    **Section 1519 of the Bankruptcy Code Authorizes the Requested Provisional Relief**

17.     The Foreign Representative has contemporaneously filed the Verified Petition

seeking, among other things, recognition that the CCAA Proceedings are foreign main proceedings

under section 1517 of the Bankruptcy Code.  Section 1519 of the Bankruptcy Code permits the Court

"[f]rom the time of filing a petition for recognition until [it] rules on the petition" to grant provisional

relief pending recognition of the foreign proceeding where such relief is "urgently needed to protect

the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a).  Sections 1519(a)(1)-

(3) of the Bankruptcy Code define the scope of available provisional relief, which includes:

    a.   staying execution against the debtor's assets;

    b.   entrusting the administration or realization of all or part of the debtor's property
located in the United States to the foreign representative . . . in order to protect
and preserve the value of assets that, by their nature or because of other
circumstances, are perishable, susceptible to devaluation or otherwise in
jeopardy; and

    c.   any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519(a).[5]

18.     The Foreign Representative seeks provisional relief under sections 105(a) and 1519

of the Bankruptcy Code.  Among other things, the Foreign Representative seeks imposition of

sections 362, 365(e), and 525 of the Bankruptcy Code for the purpose of maintaining the *status quo*

until the Court rules on the Debtors' Chapter 15 Petitions.

19.     The Provisional Relief requested here is an "effective mechanism" to implement

the chapter 15 policies of promoting cooperation between courts of the United States and courts

of foreign countries involved in cross-border restructuring cases.   The "fair and efficient

administration of cross border [cases] that protects the interest of all creditors, and other interested

---

[5]     *See also* 11 U.S.C. § 1501, which sets forth the Congressional intent to be used to, among other things, "create
greater legal certainty for trade and investment," and allow for the "facilitation of the rescue of financially troubled
businesses, thereby protecting investment and preserving employment."

entities," including the Debtors, is essential to the "protection and maximization of the value of the [Debtors'] assets." 11 U.S.C. § 1501(a)(3) and (4).

## II.    Provisional Relief Is Needed to Protect the Assets of the Pride Group and the Debtors' Restructuring Efforts.

20.    The Provisional Relief Order is needed here to protect the Pride Group's assets and the interests of their creditors until the Recognition Order is granted by this Court.  *See* 11 U.S.C. § 1519(a).  Although a "petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time," there is necessarily a gap between the time the petition for recognition is filed and the time the court decides on whether a proceeding should be recognized.  11 U.S.C. § 1517(c).  Prior to recognition, a chapter 15 debtor is not automatically entitled to the automatic stay or any other provisions of the Bankruptcy Code, which, in this case, necessitates an order granting provisional relief.  Provisional relief should be granted "where relief is urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a).

21.    Here, the Pride Group has substantial assets in the United States, and therefore faces significant risk that one or more creditors, contract counterparties, litigants, or other parties in interest within the United States may "race to the courthouse" to obtain and enforce a judgment or otherwise take action against the Pride Group or its assets, which would reward creditors that circumvent the effective administration of the CCAA Proceedings in the United States to the detriment of the Debtors as well as all other creditors and parties in interest.  Absent the Provisional Relief, individual actions brought by creditors or other parties in interest could threaten to interfere with the orderly proceedings underway in the Canadian Court and may place at risk the Debtors' ability to successfully reorganize.  *See, e.g., In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) (finding that the debtors would suffer irreparable harm if local creditors sought to interfere with the reorganization process); *In re MMG, LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("[I]rreparable

harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of other creditors").

22.     Indeed, prior to the commencement of the CCAA Proceedings and these Chapter 15 Cases, lenders and other parties in interest have already taken steps to enforce their claims against the Pride Group and its assets in the United States.  Lawsuits were filed in both federal court in the Northern District of Texas[6] and the District Court of Dallas County, Texas[7] requesting, among other things, appointment of a receiver of collateral and the enforcement of certain pre-petition guarantees (collectively, the "U.S. Litigation").  The Debtors have also been made aware that at least one lender has sent notices of change of payment to truck lessees in the United States, instructing the lessees to make payments on their leases (which serve as collateral to the lender's loans) to the lenders instead of to Pride Group entities.  The Provisional Relief, if granted, will stay the U.S. Litigation and prevent the plaintiffs from taking further actions against the Pride Group, the Personal Guarantors, or any of their property in the United States to the detriment of the Pride Group and its creditors, and will ensure that any proceeds that are improperly paid to any lenders are returned to the Pride Group for fair and equitable distribution in accordance with the CCAA Proceedings.

23.     Further, extension of the stay to the Personal Guarantors is appropriate.  Irreparable harm could result to the Debtors if parties in interest were to enforce their claims against the Personal Guarantors[8] given that they are intimately involved in the management and operations of the Pride Group, and distraction from their duties at this pivotal time could result in business

---

[6]     The defendants in this litigation are Debtors Pride Group Logistics Ltd., Arnold Transportation Services Inc., Parker Transport Co., Pride Group Logistics USA Co., and Parker Global Enterprises Inc.

[7]     The defendant in this litigation is non-Debtor TPine Leasing Capital L.P.

[8]     Indeed, one lender has already filed litigation against the co-founders in federal court in the District of Connecticut and Southern District of New York seeking to enforce certain personal guarantees.

disruption and further decline, leading to worsened outcomes for all stakeholders.  Accordingly, the Foreign Representative submits that provisional relief extending the stay of proceedings under the Initial Order as to the non-Debtor affiliates and the Personal Guarantors is appropriate and in the best interest of the Debtors, their creditors, and other parties in interest.

## III.    The Provisional Relief Satisfies the Preliminary Injunction Standard

24.    Relief under section 1519 of the Bankruptcy Code is available where the foreign representative can satisfy the standard for injunctive relief.  11 U.S.C. § 1519(e); *In re Innua Canada Ltd.*, No. 09-16362, 2009 WL 1025088, at *3 (Bankr. D.N.J. Mar. 25, 2009).  In the Third Circuit, the factors considered for injunctive relief include (i) whether irreparable harm will occur if the requested injunction is denied; (ii) likelihood of success on the merits; (iii) whether granting preliminary relief will not result in greater harm to the nonmoving party; and (iv) whether the public interest favors such relief.  *U.S. v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996)); *see also Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citations omitted); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted).  The Foreign Representative submits that this standard is satisfied here and, therefore, the Foreign Representative is entitled to the requested Provisional Relief under section 1519 of the Bankruptcy Code.

### A.  The Debtors will Suffer Irreparable Harm if Provisional Relief is not Granted.

25.    The Foreign Representative's request to apply sections 362, 364, and 365(e) of the Bankruptcy Code on a provisional basis is necessary to prevent irreparable harm to the Pride Group, the Personal Guarantors, and any of their assets located in the United States.  Absent such relief, the assets of the Pride Group or the Personal Guarantors located in the United States may become subject to enforcement actions from various creditors and litigants that may not believe that they are subject to the jurisdiction of the Canadian Court and bound by the Initial Order, which

would jeopardize the Foreign Representative's ability to conduct and effectuate the Debtors' reorganization.  *See, e.g., In re Netia Holdings, S.A.*, 278 B.R. 344, 353 (Bankr. S.D.N.Y. 2002) ("It is well established, at least in this district, that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury."); *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) ("With respect to irreparable injury, we note that there appears to be little dispute regarding the notion that the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury.").  In particular, application of the automatic stay to the Pride Group's non-Debtor affiliates and their assets to the same extent as provided for in the Initial Order is appropriate given the intertwined nature of the Debtor's businesses.  Absent such extension, creditors, litigants, and other parties in interest could (and indeed already have started to) enforce their claims against the assets of the non-Debtor affiliates which would similarly cause irreparable harm to the Debtors.

26.     Furthermore, protections that were approved by the Canadian Court are necessary to the Foreign Representative's uninterrupted operation of the Debtors' business in both Canada and the United States.  Given the foregoing, the Provisional Relief is necessary on an immediate basis to protect against potential destruction of asset value, disruption to business operations, and interference with the Foreign Representative's restructuring efforts that would result from the exercise of remedies by lenders, litigants, contract counterparties, and others pending entry of the Recognition Order.

### B.   There is a Substantial Likelihood That the CCAA Proceedings will be Recognized as Foreign Main Proceedings

27.     The Foreign Representative is likely to succeed on the merits because the CCAA Proceedings satisfy the requirements of a foreign main proceeding.  As set forth in detail in the Verified Petition and the Benson Declaration, the CCAA Proceedings are (i) "foreign proceedings"

as defined under section 101(23) of the Bankruptcy Code and (ii) "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code.

28.     The Bankruptcy Code provides that a "foreign proceeding" must be recognized as a foreign main proceeding if it is pending in the country where the debtor has its center of its main interests ("COMI").  11 U.S.C. § 1517(b).  In the absence of evidence to the contrary, a debtor's registered office is presumed to be its COMI.  *See* 11 U.S.C. § 1516(c).  As further described in the Verified Petition and the Benson Declaration, Canada is each Debtor's COMI because, among other things, (i) the registered office of each Debtor incorporated in Canada is in Canada and (ii) each Debtor incorporated in the United States is owned by a Canadian Debtor company and managed by a Canadian senior management team that makes all strategic, operational and policy decisions for the Pride Group from its global headquarters in Ontario, Canada.

29.     Moreover, the Foreign Representative has demonstrated that he is a proper "foreign representative" as defined under section 101(24) of the Bankruptcy Code.  Additionally, the Verified Petition was filed in accordance with, and satisfies all of the applicable requirements of chapter 15 of the Bankruptcy Code.

30.     Courts in this District and other districts have granted recognition to foreign proceedings similar to the CCAA Proceedings as "foreign main proceedings," where, as is the case here, they were part of a jointly administered CCAA proceeding with their Canadian parent and the debtor presented evidence, as here, of these entities' COMI being in Canada.  *See*, *e.g.*, *In re The Aldo Group Inc.*, No. 20-11060 (KBO) (Bankr. D. Del. May 8, 2020) [D.I. 66]; *In re Pac. Exploration & Prod. Corp.*, No. 16-11189 (JLG) (Bankr. S.D.N.Y. June 10, 2016) [D.I. 25]; *In re John Forsyth Shirt Co. Ltd.*, No. 13-10526 (SCC) (Bankr. S.D.N.Y. Mar. 18, 2013) [D.I. 24]; *In re Essar Steel Algoma Inc.*, No. 15-12271 (BLS) (Bankr. D. Del. Dec. 2, 2015) [D.I. 100]; *In re*

*Talon Sys. Inc.*, No. 13-11811 (KJC) (Bankr. D. Del. Aug. 30, 2013) [D.I. 49]; *In re Arctic Glacier Int'l Inc.*, No. 12-10605 (KG) (Bankr. D. Del. Mar. 16, 2012) [D.I. 70]; *In re Catalyst Paper Corp.*, No. 12-10221 (PJW) (Bankr. D. Del. March 5, 2012) [D.I. 89]; *In re Angiotech Pharm., Inc.*, No. 11-10269 (KG) (Bankr. D. Del. Feb. 22, 2011) [D.I. 83].  Thus, the likelihood of success on the underlying merits here is substantial.

### C.  The Threatened Injury to the Debtors Outweighs Any Damage the Provisional Relief Would Cause to a Creditor

31.    The balance of harm also weighs in favor of granting the Provisional Relief. Maintaining the *status quo* during the gap period between the Petition Date and entry of the Recognition Order will preserve the value of the Pride Group's assets located in the United States and empower the Foreign Representative to facilitate the Debtors' restructuring in an orderly fashion. *See In re Innua Canada Ltd.*, No. 0916362, 2009 WL 1025088, at *4 (Bankr. D.N.J. Mar. 25, 2009) (finding that the temporary maintaining of the *status quo* pending recognition of the foreign proceedings actually served to benefit creditors "by allowing for an orderly administration of the Foreign Debtors' financial affairs under the Canadian Proceeding," tipping the balance of harm in favor of the foreign representative); *see also In re Atlas Shipping A/S*, 404 B.R. 726, 742 (Bankr. S.D.N.Y. 2009) (stating that denying certain creditors an advantage over the debtor's other creditors is not a valid reason to deny relief to the foreign representative).

32.    The CCAA Proceedings are conducted as a collective and centralized process and parties in interest will have an opportunity to participate in that process.  Granting the Provisional Relief will preserve the Pride Group's assets and permit the Debtors' restructuring to proceed in an orderly and efficient manner in accordance with Canadian law.  Therefore, the Foreign Representative respectfully requests that this Court grant the Provisional Relief while it considers

whether to recognize the CCAA Proceedings as foreign main proceedings and the other relief requested in the Verified Petition.

33.    Moreover, under section 1522 of the Bankruptcy Code, a court may grant relief under section 1519, if the "interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).  The relief sought herein is provisional pending recognition of the CCAA Proceedings as foreign main proceedings and supplements the stay in place in Canada under the Initial Order.  In the Verified Petition, the Debtors have requested that the Court exercise its discretion to grant relief similar to the Provisional Relief on a final basis after notice and a hearing.  The granting of additional relief is consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code and is necessary to administer the CCAA Proceedings.

### D.  Public Interest Favors Granting Provisional Relief

34.    The requested Provisional Relief is consistent with the policy underlying bankruptcy law and is in the public interest because it will facilitate the Debtors' efforts to pursue and complete a successful restructuring for the benefit of the Debtors' creditors and other stakeholders.  *See, e.g.*, *In re Tribune Co.*, 477 B.R. 465, 475 (Bankr. D. Del. 2012) ("there is also a strong public interest in the swift and efficient resolution of bankruptcy proceedings"); *Grimes v. Genesis Health Ventures, Inc. (In re Genesis Health Ventures, Inc.)*, 280 B.R. 339, 346 (D. Del. 2002) ("[p]ublic policy weighs in favor of facilitating quick and successful reorganizations of financially troubled companies"); *Rehabworks, Inc. v. Lee (In re Integrated Health Servs, Inc.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("[i]n the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests") (citations omitted).  At this stage, parties in interest will have an opportunity to participate in the CCAA Proceedings, which are designed to take account of and balance the needs of the various creditor constituencies in a

collective orderly process, as well as to participate in any hearing on the granting of final relief in this Court.  *See* Nicholson Declaration at ¶¶ 9-18.

35.     Granting the requested relief is also in the public interest because it will facilitate the Foreign Representative's efforts to complete a court-supervised restructuring process for the benefit of all creditors and other stakeholders (including those in the United States).  Additionally, granting the Provisional Relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15 of the Bankruptcy Code.  *See* 11 U.S.C. § 1501(a).

36.     The Provisional Relief sought herein is of a type frequently granted in chapter 15 cases.  Bankruptcy courts in this district and others have imposed the stay under section 362 of the Bankruptcy Code or ordered similar relief to maintain the status quo pending recognition or disposition of foreign proceedings in ancillary cases under chapter 15 of the Bankruptcy Code. *See, e.g., In re Duvaltex Inc*., No. 23-12072 (Bankr. D. Del. December 21, 2023) [D.I. 24] (granting provisional relief under section 362 of the Bankruptcy Code); *In re Acerus Pharms. Corp*., No. 23-10111 (Bankr. D. Del. Jan. 31, 2023) [D.I. 25] (same); *In re Yatsen Grp. of Cos. Inc*., No. 21-10073 (Bankr. D. Del. Jan. 27, 2021) [D.I. 23] (same); *In re Hematite Holdings Inc.*, No. 2012387 (Bankr. D. Del. Sept. 23, 2020) [D.I. 10] (same); *In re CDS Holdings, Inc*., No. 20-11719 (Bankr. D. Del. July 2, 2020) [D.I. 37] (same); *In re DAVIDsTEA Inc.,* No. 20-11802 (Bankr. D. Del. July 9, 2020) [D.I. 21] (same); *In re Lone Pine Res. Inc*., No. 13-12487 (Bankr. D. Del. Sept. 26, 2013) [D.I. 18] (same); *In re Just Energy Grp. Inc*., No. 21-30823 (Bankr. S.D. Tex. Mar. 9, 2021) [D.I. 23] (same, including extending the stay under section 362 to certain of the debtors' non-debtor affiliates); *In re Essar Steel Algoma Inc*., No. 15-12271 (Bankr. D. Del. Nov. 10, 2015) [D.I. 35-3] (same).

## **WAIVER OF BANKRUPTCY RULE 1007(a)(4)(B)**

37.     Contemporaneously with the filing of this Motion, the Foreign Representative filed the Lists Pursuant to Federal Rules of Bankruptcy Procedure 1007(a)(4) and 7007.1 (the "Bankruptcy Disclosures").  Among other things, Bankruptcy Rule 1007(a)(4)(B) requires a list of all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code, unless the court orders otherwise.  As set forth in this Motion and as reflected in the Bankruptcy Disclosures, the Foreign Representative seeks provisional application of the stay similar to that available under section 362 of the Bankruptcy Code with respect to the property of the Pride Group and the Personal Guarantors located within the United States that would specifically, but not exclusively, affect those parties. The relief sought herein could likewise affect other parties to the extent any party might commence litigation against the Pride Group or the Personal Guarantors or enforce against any of their property located within the United States.

38.     The disclosure provided in the Rule 1007 statement with respect to this Motion is sufficient to satisfy Bankruptcy Rule 1007(a)(4)(B).  However, given that other, unknown parties may be affected, the Foreign Representative also requests that the Court waive any further requirement under Rule 1007(a)(4)(B) with respect to the provisional relief sought by this Motion.

## **NOTICE**

39.     The Foreign Representative has provided notice of this Motion consistent with Local Rule 9013-1(m).  The Foreign Representative submits that such notice is sufficient in view of the facts and circumstances, and no other or further notice need be provided.

## <u>CONCLUSION</u>

WHEREFORE, the Foreign Representative respectfully requests that the Court enter an order, substantially in the form attached as **<u>Exhibit A</u>**, granting the requested relief and such other and further relief as may be just and proper.

Dated: April 1, 2024
        Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Derek C. Abbott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Austin T. Park (No. 7247)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
aremming@morrisnichols.com
apark@morrisnichols.com

-and-

**LINKLATERS LLP**
Penelope J. Jensen
Christopher J. Hunker
Clark L. Xue
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 903-9000
Facsimile: (212) 903-9100
penelope.jensen@linklaters.com
christopher.hunker@linklaters.com
clark.xue@linklaters.com

*Attorneys for the Foreign Representative*
