UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
IN RE:                          .  Chapter 15
                                .  Case No. 24-10632 (CTG)
PRIDE GROUP HOLDINGS, INC.,     .
et al.,                         .  (Joint Administration Requested)
                                .
                                .  Courtroom No. 7
                                .  824 North King Street
                                .  Wilmington, Delaware 19801
     Debtors in a Foreign       .
     Proceeding.                .  Tuesday, April 2, 2024
. . . . . . . . . . . . . . . .    3:30 p.m.
```

TRANSCRIPT OF FIRST DAY HEARING
BEFORE THE HONORABLE CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

<u>APPEARANCES</u>:

```
For the Debtors:          Derek Abbott, Esquire
                          Andrew Remming, Esquire
                          MORRIS, NICHOLS, ARSHT
                            & TUNNELL LLP
                          1201 North Market Street
                          16th Floor
                          Wilmington, Delaware 19801

                          Christopher Hunker, Esquire
                          LINKLATERS LLP
                          1290 Avenue of the Americas
                          New York, New York 10104
```

(APPEARANCES CONTINUED)

```
Audio Operator:           Ian Willoughby, ECRO


Transcription Company:    Reliable
                          The Nemours Building
                          1007 N. Orange Street, Suite 110
                          Wilmington, Delaware 19801
                          Telephone: (302)654-8080
                          Email:  gmatthews@reliable-co.com
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1   APPEARANCES (CONTINUED):

2   For the U.S. Trustee:       Timothy Fox, Esquire
                                OFFICE OF THE UNITED STATES TRUSTEE
3                               844 King Street, Suite 2207
                                Lockbox 35
4                               Wilmington, Delaware 19801

5   For Mitsubishi HC
    Capital America:            Jason Angelo, Esquire
6                               REED SMITH LLP
                                1201 Market Street
7                               Suite 1500
                                Wilmington, Delaware 19801
8
                                Aaron Javian, Esquire
9                               REED SMITH LLP
                                599 Lexington Avenue
10                              22nd Floor
                                New York, New York 10022
11
    For Regions Bank NA:        Sean Scott, Esquire
12                              MAYER BROWN LLP
                                71 South Wacker Drive
13                              Chicago, Illinois 60606

14  For Regions Equipment
    Finance:                    Joseph Trad, Esquire
15                              LEWIS RICE LLC
                                600 Washington Avenue
16                              Suite 2500
                                St. Louis, Missouri 63101

17

18

19

20

21

22

23

24

25

1                                    INDEX

2    FIRST DAY MOTIONS:                                   PAGE

3    Agenda
     Item 7: Motion of the Foreign Representative for      10
4            Order Directing Joint Administration of
             Chapter 15 Cases and Related Relief
5            (D.I. 8, Filed 4/1/24)

6            Court's Ruling:                               11

7    Agenda
     Item 5: Motion of the Foreign Representative for      12
8            Entry of an Order Scheduling a Hearing on
             Chapter 15 Petitions for Recognition and
9            Related Relief and Specifying Form and
             Manner of Service of Notice (D.I. 5,
10           Filed 4/1/24)

11           Court's Ruling:                               13

12   Agenda
     Item 6: Motion of the Foreign Representative for      13
13           Entry of an Order Granting Provisional
             Relief Pursuant to Sections 105(A) and
14           1519 of the Bankruptcy Code (D.I. 6,
             Filed 4/1/24)

15           Court's Ruling:                               46

16

17   DECLARATIONS:                                       PAGE

18   1) Randall Benson                                    14

19   2) Rachel Nicholson                                  18

20

21

22

23

24

25

1      (Proceedings commenced at 3:30 p.m.)

2          THE COURT:  Good afternoon, all.  This is Judge

3  Goldblatt.  We are on the record in In Re Pride Group

4  Holdings, Inc., et al., which is Case No. 24-10632.

5          We are proceeding this afternoon by way of Zoom.

6  As a result, usual Zoom rules apply which are, first, leave

7  your microphones muted unless you are addressing the Court.

8  Second, when you do address the Court if you could introduce

9  yourself for the record each time that would be very helpful.

10  Finally, my usual preference is that folks leave your cameras

11  off unless you are either addressing the Court or wish to be

12  recognized mostly because I find it helpful to see cameras

13  turned on as a way of signaling that someone would like the

14  opportunity to be heard.

15          So, with that, I am happy to pass the virtual

16  podium to counsel for the foreign representative to take us

17  through the agenda this afternoon.

18          MR. REMMING:  Good afternoon, Your Honor.  Andrew

19  Remming of Morris, Nichols, Arsht & Tunnell. Its good to see

20  you again.

21          THE COURT:  Good afternoon, Mr. Remming.

22          MR. REMMING:  I am joined today by my friend and

23  colleague from the Linklaters Firm, Christopher Hunker, who

24  will handle the presentation today for the debtors. I am also

25  joined in the conference room here at Morris Nichols by my

1  Morris Nichols colleagues, Derek Abbott, Clint Carlisle, and

2  Austin Park.

3        As I mentioned, Mr. Hunker will handle today's

4  presentation and some additional introductions.  Before

5  turning the podium over to Mr. Hunker, I would like to thank

6  Your Honor and Your Honor's Chambers staff for scheduling

7  this hearing on an expedited basis.  We all appreciate that

8  on the debtors' side as well --

9        THE COURT:  Very well -- go ahead, I'm sorry, Mr.

10  Remming.

11        MR. REMMING:  No, I interrupted you, Your Honor.

12  Please go ahead.

13        THE COURT:  No, I was only going to say very happy

14  to have the chance to see everyone.

15        MR. REMMING:  I would also like to thank from the

16  Office of the United States Trustee, Mr. Fox, who worked very

17  collaboratively with us in short order and providing comments

18  to our motions today.  Your Honor will probably realize that

19  we don't have any redlines and that is because we have

20  resolved all of Mr. Fox's comments and file versions of our

21  pleadings. I understand all of his comments are resolved as

22  to the matters going forward today.

23        So, I have nothing further other then to introduce

24  my colleague, Mr. Hunker, again for today's presentation.

25        THE COURT:  Very well. Thank you, very much, Mr.

1 Remming.

2          Mr. Hunker, you can proceed.

3          MR. HUNKER:  Good afternoon, Your Honor.

4 Christopher Hunker from Linklaters on behalf of Randall

5 Benson, the foreign representative of Pride Group Holdings,

6 Inc., and its affiliates in these Chapter 15 cases.  I am

7 joined today by my colleagues, Penelope Jensen and Clark Xue

8 from Linklaters, as well as Mr. Benson who is our foreign

9 representative, the Group's chief restructuring officer and

10 one of our declarants today.  And Rachel Nicholson from

11 Thornton Grout Finnigan who is Canadian counsel to the

12 debtors in CCAA proceedings and our declarant on Canadian

13 law.

14          We would like to echo Mr. Remming's thanks to both

15 the Court and the United States Trustee for working with us

16 and accommodating us with a hearing on shortened notice

17 following the holiday weekend.  So, thank you very much for

18 that.

19          Before getting into today's agenda, I thought it

20 would be helpful to provide some background on the debtors

21 and the events that led up to the Canadian proceedings and

22 these Chapter 15 cases if that would be acceptable.

23          THE COURT:  Certainly.

24          MR. HUNKER:  Thank you, Your Honor.  Your Honor,

25 the debtors are part of the Pride Group which is a cross-

1  border trucking logistics company operating from its global

2  headquarters in Canada with locations across Canada and the

3  United States.  The Group's businesses include selling,

4  leasing, and financing new and used trucks and truck parts,

5  servicing trucks, logistics, and operating dealerships, truck

6  stops, and service centers throughout North America.

7         Historically, the Group's services have been

8  especially attractive to smaller scale owner operators in the

9  trucking community who are typically individuals operating

10 between one and five trucks.  Until very recently the Group's

11 business was profitable and growing; however, the COVID-19

12 pandemic disrupted the company's trajectory and ultimately

13 contributed to the company's current financial crisis.

14        Additionally, the pandemic was a boon to the

15 trucking industry, but as the pandemic subsided and industry-

16 wide tightening occurred as a result, a few factors including

17 an overabundance of trucks and truck drivers, increased

18 interest rates, and rising diesel prices.  That challenging

19 operating environment contributed to a sharp increase in

20 payment delinquencies by the Group's customers, a large

21 number of which are those smaller scale operators who have

22 less financial resources to withstand a sustained downturn.

23        Those delinquencies had a domino effect on the

24 business because each delinquency lead to a decline in the

25 customers use of other goods and services provided by the

1  Group like maintenance, repairs, rescue services and so

2  forth.  In addition to worsening market conditions, the Group

3  recently discovered that certain security interests on

4  certain truck collateral under the Group's various financing

5  arrangements were inadvertently not properly tracked and

6  updated as the trucks were moved across various business

7  lines within the Group; a practice driven in part by the

8  overall disruption of the business and the resulting strain

9  on human resources at the company.  That resulted in a

10 situation where more than one lender claims a security

11 interest in certain of the trucks that the Group operates.

12        In response to that discovery the Group

13 immediately created an internal task force to identify the

14 extent of the issue and make sure that the practice stops.

15 The Group has since been working closely with Ernst & Young

16 and the recently appointed chief restructuring officer, Mr.

17 Benson, to implement an internal governance control designed

18 to ensure accurate recording and correction of security

19 granted over truck collateral.

20        The contours of all these issues contributed to

21 the Group defaulting under its various credit facilities and

22 other financing sources.  As noted in our papers, certain

23 lenders and contract counterparties issued default notices

24 and began exercising remedies against the Group including

25 against Group entities and their assets located in the United

1  States.

2         Given all these factors and considering all

3  available alternatives certain of the Group's entities

4  commenced Canadian CCAA proceedings on March 27th and the

5  Canadian Court issued an initial order on March 28th which

6  provides for a broad stay of proceedings against the Group in

7  the Canadian proceedings, approve the appointment of Mr.

8  Benson as the foreign representative and authorize him to

9  commence these Chapter 15 cases.

10         The Group intends to use the Canadian proceedings

11  to monetize certain of its assets and negotiate a path

12  forward with its key stakeholders including the syndicated

13  facility lenders, the Group's bilateral lenders, and its

14  OEMs.  The debtors commenced these Chapter 15 cases to

15  protect their assets and operations in the United States as

16  well as those of the non-debtor affiliates that enjoy the

17  protection afforded by the Canadian Court's initial order.

18         We are before Your Honor today to recognize and

19  extend the relief granted by that initial order on a

20  provisional basis pending recognition of the Canadian

21  proceeding.  Unless Your Honor has any questions, I would

22  propose to turn to today's agenda.

23         THE COURT:  That makes good sense to me, Mr.

24  Hunker.

25         MR. HUNKER:  Thank you, Your Honor.  If it's okay

1   with Your Honor I would like to take us slightly out of order

2   on the agenda and start with the joint administration motion

3   which appears at Docket No. 8.  The motion seeks standard

4   relief in cases with multiple debtors including joint

5   administration of the Chapter 15 cases under a single docket

6   and authorization for the debtors to file a consolidated list

7   under Bankruptcy Rule 1007.

8           Unless Your Honor has any questions, we would ask

9   that the Court enter the proposed joint administration order

10  attached to the motion.

11          THE COURT:  Is there any party in interest that

12  would like to be heard with respect to the debtors' motion

13  for the foreign representatives motion for joint

14  administration of the cases?  Mr. Fox.

15          MR. FOX:  Good afternoon, Your Honor.  May I

16  please the Court, Tim Fox on behalf of the United States

17  Trustee.

18          I just thought now would be an appropriate time

19  for me to come to the virtual podium and confirm Mr.

20  Remming's comments on the record. The U.S. Trustee had the

21  opportunity to review these motions in a pre-filing format.

22  Any comments that my office provided informally have been

23  baked into the as filed versions of the forms of order and

24  the U.S. Trustee does not object to the relief sought here

25  today on a provisional basis.  We appreciate the foreign

1  debtors and foreign representative's accommodations of those

2  informal comments.  We will evaluate anything going forward

3  in these cases in due course.

4          Unless Your Honor has any questions of me, I don't

5  expect to have to appear again further, but I appreciate the

6  need to should any matters come up.

7          THE COURT:  Thank you, Mr. Fox.  That is very

8  helpful and I'm glad to see that you weren't rising to be

9  heard in opposition to the motion for joint administration.

10 With that, that is said without prejudice to the rights of

11 anyone who might want to raise such an objection just to be

12 clear, but thank you, Mr. Fox.

13         MR. FOX:  Thank you, Your Honor.

14         THE COURT:  With that, is there any party in

15 interest that would like to be heard in opposition to the

16 debtors' motion seeking joint administration?

17     (No verbal response)

18         THE COURT:  Seeing none, I have reviewed the

19 motion and order.  I am satisfied that the relief sought is

20 customary and appropriate.  We will enter that order.

21         MR. HUNKER:  Thank you, Your Honor.

22         The next item on our agenda is the scheduling

23 motion which appears at Docket No. 5.  The motion seeks

24 approval of a schedule on which the debtors seek recognition

25 of the CCAA proceedings and foreign main proceedings.  Under

1  the notice procedures we propose to provide notice of the

2  Chapter 15 cases and the recognition hearing to all relevant

3  parties in Canada and the United States by mail with

4  supplemental publication notice in the Wall Street Journal

5  and potentially other publications.  Subject to the Court's

6  availability we would request a recognition hearing during

7  the week of April 29th with an objection deadline set seven

8  days prior to that hearing.

9          Unless Your Honor has any questions, we would ask

10  that the Court enter the scheduling order.

11          THE COURT:  Ms. Barksdale, is there any reason we

12  couldn't do that hearing on May 1st at 2 p.m.?

13          MS. BARKSDALE:  We have a number of --

14          THE COURT:  Oh, hold on.  Let me click the right

15  thing.  Okay.  What about -- so, what if we did 10 a.m. on

16  May 2nd? I know that I can make that work.  From the debtors'

17  perspective is there any reason why 10 a.m. on Thursday, May

18  2nd would present a problem?

19          MR. HUNKER:  On the debtors' side I don't believe

20  so.  Thank you, Your Honor.

21          THE COURT:  So, why don't we go ahead and set that

22  for 10 a.m. on May 2nd.

23          MR. HUNKER:  Thank you, Your Honor.

24          THE COURT:  Mr. Hunker, you can -- I take it -- is

25  there any party that objects to granting the scheduling

1  motion and setting the subsequent hearing for May 2nd at 10

2  a.m.?

3          (No verbal response)

4          THE COURT:  Okay.  Seeing none, we will enter that

5  order.  Mr. Hunker, you can proceed.

6          MR. HUNKER:  Thank you, Your Honor.  The final

7  matter on our agenda today is the foreign representatives

8  motion for provisional relief which appears at Docket No. 6.

9  We filed the declaration from Mr. Benson in support of the

10  provisional relief motion at Docket No. 3.  We also filed a

11  declaration from Mr. Nicholson, our declaration on Canadian

12  law matters, which appears at Docket No. 4.  Both Mr. Benson

13  and Ms. Nicholson are on the Zoom today and available to

14  answer any questions.

15          I do want to note for the record one correction to

16  Mr. Benson's declaration. In Paragraph 34(b) of that

17  declaration, it states that Mr. Benson guaranteed the

18  obligations that are owed to Mitsubishi.  That should have

19  stated that Mr. Johal guaranteed those obligations, not Mr.

20  Benson.

21          With that correction, Your Honor, I would like to

22  move those two declarations into evidence.

23          THE COURT:  Let's take them one at a time.  First,

24  is there any party in interest that objects to the

25  introduction into evidence of Mr. Benson's declaration?

1          (No verbal response)

2               THE COURT:  Seeing none, that will be admitted.

3          (Benson declaration received into evidence)

4               THE COURT:  Is there party in interest that would

5     like to cross-examine Mr. Benson with respect to the matters

6     set forth in the declaration?

7          (No verbal response)

8               THE COURT:  Seeing -- I'm sorry, Mr. Angelo, I see

9     you have turned your camera on.

10              MR. ANGELO:  Jason Angelo of Reed Smith on behalf

11    of Mitsubishi.

12              We would like to -- I believe Aaron can take it

13    from here. Its Aaron Javian, I apologize, of Reed Smith who I

14    would like to introduce. He has been admitted pro hac but

15    can't unfortunately get his last name on the screen.  So, its

16    Mr. Javian who I will turn it over to, to raise any issues.

17              MR. JAVIAN:  Thanks, Mr. Angelo.

18              Good afternoon, Your Honor.  Aaron Javian of Reed

19    Smith on behalf of Mitsubishi Capital for the record.

20              Your Honor, I met and conferred with Mr. Hunker

21    before today's hearing and we came to an understanding around

22    an ability of Mitsubishi to seek subsequent discovery in

23    relation to the relief being sought today including

24    potentially deposing Mr. Benson at a later date.  And I

25    understand that Mr. Hunker and the debtors won't oppose that.

1  I just wanted to put that on the record.  That was a way for

2  us to agree not to seek to cross-examine Mr. Benson today

3  with respect to his declaration.

4          THE COURT:  Okay.  So, just to be clear you have

5  an understanding with the foreign representative that you

6  will be able to conduct your discover in connection with the

7  entry of ultimate recognition, but aren't seeking to examine

8  Mr. Benson with respect to the relief sought today, is that

9  correct?

10         MR. JAVIAN:  That is correct with respect to the

11 relief sought today. I think as this hearing unfolds it will

12 be clear that further provisional relief may be sought and I

13 think that what we discussed would be to be punting the

14 objections that we might otherwise raise today to that later

15 date.  This will all, I think, come out in the round, but I

16 just wanted to flag for Your Honor and for the record at this

17 moment that we had had that discussion or I had that

18 discussion with counsel to the foreign representative prior

19 to today's hearing.

20         THE COURT:  Very well.  Mr. Hunker, anything to

21 add in that regard?

22         MR. HUNKER:  Nothing further other than to confirm

23 that Mr. Javian's statements were accurate.  We have agreed

24 to make Mr. Benson available for a deposition if it becomes

25 necessary and address his discovery needs.

1    THE COURT:  Okay.  All right.  With that, is there

2  any party in interest that does seek to cross-examine Mr.

3  Benson with respect to the matters set forth in his

4  declaration?

5    (No verbal response)

6    THE COURT:  Seeing none, then let's turn to Ms.

7  Nicholson's declaration and the debtors have sought to

8  introduce that into evidence.  Is there any party that would

9  like to be heard in opposition to the introduction into

10  evidence of Ms. Nicholson's declaration?  Mr. Scott.

11    MR. SCOTT:  Good afternoon, Your Honor.  Sean

12  Scott of Mayer Brown on behalf of Regions Bank.

13    The only note that I would like to make, Your

14  Honor, and I think it goes to the remarks that you just

15  heard, is there may be issues in the proceeding as it moves

16  forward as to what is the proper foreign main proceeding and

17  whether Chapter 15 relief beyond today is acceptable. I would

18  note that the declaration purports to state that the Canadian

19  proceedings are a foreign main proceeding and, obviously, I

20  think that is a determination Your Honor will make at the

21  appropriate time.  We just wanted to reserve rights

22  particularly with respect to subsequent hearings to the

23  extent there are issues around the proper forum or disputes.

24    We represents one of the US securitization lenders

25  that may have issues with the CCAA being the forum for

1  adjudication of disputes that we could have with the debtors.

2  So, I just wanted to put that on the record, Your Honor.

3      THE COURT:  Okay.  Thank you, Mr. Scott.  I take

4  it, Mr. Scott -- I understand your reservation of rights and

5  one can have a conversation about whether conclusion of US

6  law is or isn't the proper subject of factual testimony, but

7  I take it you are not seeking to object to the introduction

8  into evidence of the declaration so long as it doesn't

9  preclude your ability to come in later and argue what you

10  want to argue.  Is that right?

11      MR. SCOTT:  That is correct, Your Honor.

12      THE COURT:  Mr. Hunker, I take it by the admission

13  of this declaration into evidence you aren't seeking to

14  preclude Mr. Scott from making whatever argument later that

15  he wishes to make, is that right?

16      MR. HUNKER:  That is correct, Your Honor.

17      THE COURT:  Okay.  So, is there any other party in

18  interest that would like to be heard with respect to the

19  admission into evidence of Ms. Nicholson's declaration?

20      (No verbal response)

21      THE COURT:  Okay.  Seeing none, the declaration

22  will be admitted.

23      (Nicholson declaration received into evidence)

24      THE COURT:  Prior points also having been noted,

25  is there any party in interest that wishes to cross-examine

1  Ms. Nicholson with respect to the subject matter set forth in

2  her declaration?

3       (No verbal response)

4           THE COURT:  Okay.  Seeing none, Mr. Hunker, you

5  can proceed.

6           MR. HUNKER:  Thank you, Your Honor.  Your Honor,

7  we served the hearing agenda and the provisional motion on

8  all effective parties by overnight mail and email if it was

9  available yesterday as well as the United States Trustees

10 Office and a certificate of service can be found at Docket

11 No. 22.

12          The foreign representative is seeking provisional

13 relief with respect to the recognition and enforcement of the

14 Canadian Court's initial order in the United States to

15 maintain the status quo until the recognition hearing.  The

16 Canadian Court's initial order includes the stay of

17 proceedings and enforcement of action against the Group

18 including the applicants in the Canadian proceeding and

19 certain non-applicant entities such as the US limited

20 partnerships, individual guarantors of the Group's debt, and

21 the Group's directors and officers.

22          The foreign representative is requesting

23 enforcement of the stay and other protections granted to the

24 Group under the initial order so that the same parties enjoy

25 the same protections in the United States as those granted by

1  the Canadian Court.  That relief will prevent creditors and

2  other parties in interest from taking adverse actions against

3  the Group during the pendency of the Canadian proceedings and

4  these Chapter 15 cases until the Court can consider our

5  request for recognition.

6        As noted earlier, and as set forth in Mr. Benson's

7  declaration certain lenders and other parties have started

8  taking enforcement against the Group including issuing

9  default notices and instituting litigation against certain

10 group entities in the United States.  The provisional relief

11 we are seeking will prevent these and other actions against

12 the Group by enforcing the stay that is already in place in

13 Canada under the initial order in the United States.  That

14 relief, as I said, will maintain the status quo and give the

15 Group the breathing room that it needs to stabilize the

16 business and formulate a path forward in an orderly fashion

17 without disruption to the business or the Canadian

18 proceedings.

19        We have set forth our arguments on why provisional

20 relief under Section 1519 and injunctive relief is

21 appropriate under these circumstances on a provisional basis,

22 but I am happy to walk through those arguments in detail or

23 answer any questions that Your Honor may have.

24        THE COURT:  so, I don't think -- I have seen the

25 form of order, I don't think I need you to go through it line

 1  by line.  I guess I have only one question/observation --

 2  well, actually, no, before we get to my questions why don't I

 3  see if there is any -- unless you have got more that you

 4  would like to -- any further points that you would like to

 5  make, Your Honor.  Let me see if there is anyone that wants

 6  to be heard in opposition unless you have got additional

 7  points you want to make in support.

 8          MR. HUNKER:  No, that is all for me for right now.

 9  Thank you, Your Honor.

10          THE COURT:  Let me ask this question: Is there any

11  party that wants to be heard in opposition to the motion

12  seeking provisional relief?  Mr. Javian, you can, if I am

13  pronouncing that vaguely correctly, be heard.

14          MR. JAVIAN:  Thank you, Your Honor.  Aaron Javian

15  for the record on behalf of Mitsubishi Capital. I am with

16  Reed Smith LLP.

17          I think what we would like to do, Your Honor, is

18  just to provide you with a little bit of background regarding

19  Mitsubishi's relationship with the Pride Group so that you

20  have that handy, Your Honor.  Then also let you know about

21  several of the concerns we have with the relief that the

22  foreign representative is seeking today.  But as I mentioned

23  earlier, I believe that we can reach an arrangement with the

24  foreign representative to defer any objection, formal

25  objection, with respect to the relief today until a later

1  date prior to the recognition hearing to be determined when I

2  understand that the foreign representative may seek to have

3  further provisional relief entered.

4          With that windup let me give you a little bit of

5  background about Mitsubishi which I will also refer to as

6  MHCA.  MHCA has several outstanding financing receivables

7  purchase agreements with the Pride Group with a total

8  exposure of over $300 million. That is split between the US

9  and Canada. In addition, in particular, MHCA has the

10  following financing arrangements with US members of the Pride

11  Group.

12          In 2018 MHCA, through its predecessor, entered

13  into a floor plan and security agreement with Pride Truck

14  Sales LP, which is a non-applicant in the Canadian CCAA

15  process, pursuant to which Mitsubishi agreed to extend credit

16  to or on behalf of Pride Truck to purchase inventory.  The

17  floor plan agreement, as collateralized by all of Pride

18  Trucks current and after acquired property including

19  inventory acquired by virtue of extension of credits among

20  other categories of collateral identified under the UCC and

21  their proceeds.

22          MHCA is owed approximately $88.9 million currently

23  under the floor plan facility.  Several US and non-US

24  entities have guaranteed Pride Truck Sale LP's obligations

25  under the floor plan agreement as well as the personal

1  guarantors.  In addition, in 2021, MHCA entered into a mass

2  release receivable sale and assignment agreement and a

3  servicing and remarketing agreement with TPine Leasing

4  Capital LP, another US entity that is not an applicant in the

5  Canadian CCAA process.

6         Under this receivable purchase agreement TPine

7  Leasing Capital agreed to sell from time to time to

8  Mitsubishi the rentals payable under certain of the leases

9  for commercial vehicles. MHCA agreed to provide financial

10  accommodations to and for the benefit of TPine while TPine

11  agreed to provide servicing for purchase lease

12  (indiscernible) and remarketing for leased equipment in

13  accordance with the terms of the agreement.  The maximum

14  funded amount under this facility is approximately $48

15  million and the committed amount is approximately $9 million.

16         Finally, on May 31st, 2023 an affiliate of

17  Mitsubishi entered into the second amended and restated

18  program agreement with TPine Leasing Capital LP.  Under the

19  program agreement TPine Leasing Capital LP agreed to sell

20  Mitsubishi all of its rights, title and interest to certain

21  contracts which is defined to include leases, conditional

22  sale agreements, among other types of contracts, including

23  all related guarantees, insurance proceeds, vendor warranties

24  and other amounts thereunder.  The maximum funded amount

25  under the program agreement is $134 million and the committed

1  amount is approximately $28 million.  The program agreement

2  is guaranteed by the personal guarantors.

3           Mitsubishi commenced lawsuits on May 25th -- March

4  25th, excuse me, against the personal guarantors which are

5  part of -- which are subject to the stay that the debtors are

6  seeking to have implemented as of today.  The purpose of that

7  was to give you some perspective on the fact that Mitsubishi

8  has property interests in property that is possessed by the

9  debtors in the form of liens or in the form of outright

10  ownership and/or backup liens.

11           Accordingly, I think its -- I wanted to get on the

12  record on behalf of my client that the type of relief that

13  the debtors are seeking today is not ordinary in Chapter 15

14  cases, either in Chapter 15 cases generally or as a subject

15  of provisional relief for several reasons.

16           The first reason, of course, is that MHCA is a

17  secured creditor that has these property interests that it

18  entered into under New York law and there is a strong public

19  policy presumption in the US to afford secured creditors the

20  benefit of their property whether in a pure domestic context

21  or in a cross-border context.  The relief that the debtors

22  are seeking today in the form of provisional relief effects

23  the ability of Mitsubishi to enforce its rights under its

24  lien and given that upon recognition Chapter 15 provides on a

25  mandatory basis that the provisions of 361 and 362 as well as

1   363(c)(2) governing the use of cash collateral, governing

2   adequate protection and various steps for relief from the

3   stay in light of the fact that those become mandatory upon

4   the grant of recognition of a foreign main proceeding.

5           Mitsubishi's belief is that these provisions

6   should also be implemented in connection with the provisional

7   relief order as of today in order for secured creditors to

8   have the benefit of what their rights are under the

9   bankruptcy code in a main proceeding or in a plenary Chapter

10  11 case.  We believe that its appropriate for this type of

11  protection to be included as of today as part of the

12  sufficient protection that is afforded to creditors of the

13  debtors, in addition to the debtor, in connection with the

14  grant of provisional relief under 1521.  That is one

15  important element of the relief that the debtors are seeking

16  that we wanted to flag for Your Honor to be considering over

17  the course of the gap period.

18          The second thing to flag for Your Honor, which Mr.

19  Scott has already done, goes to the fact that the foreign

20  representative is seeking provisional relief with respect to

21  CCAA proceedings to commence by operating entities that are

22  organized in the United States.  There is a rebuttal

23  presumption that as the foreign representative indicated in

24  its papers that COMI is located in the jurisdiction of an

25  entities registered office.

1          Mitsubishi Capital reserves its right to probe

2    further the debtors through discovery or otherwise the basis

3    for the conclusion that they were able to rebut that

4    presumption with respect to each and every single one of the

5    US entities that are subject to CCAA proceedings.  In

6    addition to that, the foreign representative is seeking

7    provisional relief with respect to entities that are not

8    subject to CCAA proceedings at all.

9          In particular, two of the borrowers or

10   counterparties under the loan -- under the financing

11   facilities and the receivables purchased facilities between

12   MHCA and the Pride Group, they are LPs that are not subject

13   to the CCAA proceeding, in addition to the personal

14   guarantors who themselves are not subject to the CCAA

15   proceeding.

16         That relief, we believe, doesn't comport with the

17   language of Chapter 15 which defines foreign representative

18   in respect of a foreign debtor.  A foreign debtor under

19   Chapter 15 is defined to be the entity that is subject to the

20   foreign proceeding.  As a matter of relief its available in

21   the GAAP period under 1519.  That relief is something that is

22   granted in respect of a debtor.

23         To the extent that the foreign representative is

24   seeking relief with respect to non-debtors we don't believe

25   that the time is necessarily right as a matter of provisional

1  relief to seek that under Chapter 15; rather, under Chapter

2  15 that is something that could be assessed from an act of

3  recognition if at all under the category of additional

4  assistance.  So, we have a potential issue just from a plain

5  language perspective of interpreting the statute as to

6  whether provisional relief is appropriate with respect to

7  entities that are not currently subject to the CCAA

8  proceedings in Canadia.

9       Finally, and in addition, the papers concede that

10 some of the issues associated with the reason that we are all

11 here today in TPine's CCAA proceeding is because of the

12 actions that TPine understood with respect to their treatment

13 of collateral.  Specifically, there have been instances in

14 which collateral that has been pledged to secured creditors

15 like Mitsubishi has been double pledged, or triple pledged,

16 or quadruple pledged.  We are very, very concerned about the

17 nature of what has happened in the past and it goes really to

18 the propriety of having the founders of the business, the

19 Johal's, continuing in their role and assisting the company

20 in its reorganization or not.

21       In particular, the behavior of the Johal's and

22 whether they knew or should have known or didn't know about

23 the double pledging goes to the propriety of the type of

24 equitable relief that the foreign representative is seeking

25 in connection with staying the suits that we had filed as,

1  for one, as against the personal guarantors under the

2  guarantee agreement.

3          We reserve our rights as part of the discovery

4  process to understand further what they knew, what the

5  company did in the past that led to the situation, and

6  whether -- and the extent of bad actions that occurred, and

7  to be able to take that on board in this proceeding, to the

8  extent that the debtors are seeking relief in this proceeding

9  in the appropriate way.

10          Those are, at a big picture level, the concerns

11  that we have as secured lender with the relief that the

12  foreign representative is seeking.  I think, from a practical

13  perspective, I can work with Mr. Hunker to come up with

14  reservation of rights language, et cetera, as part of this

15  order, and also to, you know, have an ability to raise these

16  issues at a later date when the next time to reach -- to

17  request provisional relief might be -- you might hear, Your

18  Honor, but we thought it was important on behalf of my client

19  to let you know how we're thinking about this case and how we

20  think it's actually extraordinary from an ancillary case,

21  Chapter 15 perspective.

22          That's all I wanted to say at this time.

23          THE COURT:  Okay.  Mr. Javian, just to make sure

24  I've understood you correctly.  So I understand you've made

25  four points and, as I -- I think you were clear that your

1  second, third, and fourth points, the questions about whether

2  it's a foreign main for the U.S. entities, the question of

3  entities that are not debtors in the CCAA, and your concern

4  about, to put it in U.S. terms, whether the debtor-in-

5  possession belongs in possession, are points that you are

6  reserving your rights and want to come back to.

7          With respect to your request with respect to

8  adequate protection, were you suggesting that the order

9  granting provisional relief today, to the extent that's

10 entered, wouldn't need to address that, or is that more of a

11 point that you want to address on a go-forward basis after

12 you've had the chance to talk to Mr. Hunker?

13         MR. JAVIAN:  I believe that the order today should

14 reflect the applicability of the provisions that would be

15 applicable upon the grant of a main proceeding, should it be

16 so granted, and would want to work with Mr. Hunker to agree

17 to that language.  To the extent that Mr. Hunker resists that

18 language, I'd want to work with Mr. Hunker to try to -- to

19 put that marker down in the order itself.  But I don't see it

20 as being controversial for simply the provisions of Chapter

21 15 that apply on -- you know, in a mandatory -- upon

22 recognition of a foreign main proceeding to be embodied in

23 this order for the purposes of giving creditors, secured

24 creditors sufficient protection now.

25         THE COURT:  Okay.  Mr. Hunker, let me give you a

1  chance to respond.

2       MR. HUNKER:  Thank you, Your Honor.  And this

3  might now be a good time, Mr. Javian raised the issue of

4  adequate protection, to talk about the sort of second request

5  for provisional relief that Mr. Javian alluded to.

6       And I apologize, Your Honor, I had intended to

7  leave this for the end of the hearing because I sort of

8  viewed it more of a housekeeping and sort of planning matter,

9  but the group is currently finalizing the terms of the DIP

10 facility that the group is going to ask the Canadian court to

11 approve at the comeback hearing that's scheduled, currently

12 scheduled for this Friday.  The group anticipates asking the

13 Canadian court for an amended and restated initial order that

14 approves that facility, including the typical grant of liens

15 and claims that you would expect to see in a DIP facility.

16      Given that the facility is not finalized yet, I

17 didn't think it was appropriate to ask for prospective relief

18 with respect to a DIP facility that at the time of filing had

19 not been finalized and has not been approved by the Canadian

20 court, but we do anticipate asking this Court for time,

21 ideally next week, to hear essentially a second provisional

22 relief motion, asking this Court to recognize and enforce the

23 amended and restated initial order that approves the DIP

24 facility.

25      I think that is the provisional relief order in

1  which the protections that Mr. Javian is currently seeking

2  with respect to adequate protection properly belong, but

3  obviously we'll be guided by the Court with respect to both

4  timing and that issue.

5          THE COURT:  Okay.  Well, I'm happy to talk about

6  timing, but just with respect to the relief that's being

7  sought today, it sounds like Mr. Javian is asking for some

8  language that effectively reserves his rights with respect to

9  those issues as they relate to future requests, including,

10  presumably, the relief for ultimate recognition of the

11  Canadian proceedings.  It doesn't sound to me like you guys

12  have a disagreement, but would it -- subject to giving anyone

13  else who wants to be heard with respect to the relief the

14  chance, does it make sense to give you the chance to talk

15  about coming up with reservation of rights language to be

16  included in the order that can be then submitted under

17  certification?

18          MR. HUNKER:  Yes, absolutely, Your Honor.  And to

19  be clear, the foreign representative has no issue with

20  including reservation of rights language.  Mr. Javian and I,

21  as he mentioned, did meet and confer prior to the hearing,

22  and I agree with Your Honor, I think it does make sense for

23  us to see if we can agree on reservation of rights language

24  to include in the provisional relief order to be submitted

25  under certification.

1          THE COURT:  Okay.  And, Mr. Javian, am I

2   understanding your ask correctly that that's essentially what

3   you're asking for?

4          MR. JAVIAN:  That works for me, Your Honor.  I'd

5   want to include language that reserves our right to say that

6   adequate protection is appropriate from the petition date of

7   the Chapter 15 case onward, and I'm confident that Mr. Hunker

8   and I can agree reservation of rights language to that effect

9   that appropriately reserves everyone's rights and we can move

10  on to the next hearing, if need be.

11         THE COURT:  Okay.  So why don't -- rather than my

12  getting in the middle of this, why don't I give you the

13  chance to have that conversation first, if you can work it

14  out and submit language under certification, that's terrific;

15  if you can't, just reach out to chambers, and we'll hop on a

16  Zoom promptly to try to sort that out.

17         Mr. Javian, with respect to the objections that

18  you've asserted, is there anything else that you would like

19  to add?

20         MR. JAVIAN:  No, Your Honor.  I think, again, I

21  can work with Mr. Hunker to address the discovery points that

22  we mentioned earlier so that's properly reflected in the

23  order.  And then, in addition to that, the other sort of

24  reservation of rights language that goes to the issues I

25  flagged, I guess, from Your Honor's perspective, it's 2

1  through 4, and I suspect that other parties on the phone will

2  have some more interest in that type of reservation of rights

3  language as well.

4          THE COURT:  Okay.  Well, we're about to get to

5  that.

6          Mr. Hunker, is there anything else from you before

7  I see whether there's anybody else that would like to be

8  heard in response to the pending motion for relief?

9          MR. HUNKER:  Yes, Your Honor.  And I don't want to

10  belabor points that are not before the Court with respect to

11  COMI, but I did want to address a couple of points that Mr.

12  Javian raised.

13          First, the foreign representative does not agree

14  that the relief that we are seeking is extraordinary in

15  Chapter 15 cases.  The relief that we are seeking is entirely

16  consistent with the broad authority granted to courts under

17  Chapter 15 to grant enforcement and recognition of a foreign

18  court -- of a foreign insolvency court's orders and extend

19  that protection to both the applicants in that proceeding and

20  to non-debtor applicants.  There's no requirement under

21  Chapter 15 that the relief that's granted under the foreign

22  court order be identical to that that is possible to obtain

23  under Chapter 11 or otherwise under the Bankruptcy Code.

24          So we do not agree that this relief is

25  extraordinary in any way, particularly in the context of a

1  Chapter 15 seeking recognition of a Canadian proceeding in

2  which it's common, including in this district, to recognize

3  Canadian stays that apply both to applicants and non-

4  applicants without modification, and we have cited to a

5  number of those cases in our papers.

6          Your Honor, with respect to the COMI point, again,

7  I don't want to belabor a point that's not before the Court,

8  but we have set forth in the verified petition why we believe

9  that the facts of this case are sufficient to rebut the

10 presumption that the U.S. entity, COMI is in the United

11 States, but, again, I don't want to rehash those.

12         And then the last point I just want to make is the

13 -- sort of the whether the debtor-in-possession should remain

14 in possession point.  Your Honor, the foreign representative

15 in this case is the chief restructuring officer.  He is a

16 restructuring expert with more than 20 years of experience

17 dealing with complex restructuring scenarios.  He has been

18 working closely with Ernst & Young, which was hired as the

19 financial adviser to the company, and now serves in a

20 capacity as the monitor.  And so there's -- those

21 developments should give Mr. Javian and his clients, and the

22 other lenders and other parties in interest in this case,

23 that there is -- that there is sufficient oversight in terms

24 of the management of the business going forward and the

25 implementation of the restructuring by experienced

1  professionals who don't have an affiliation with the existing

2  management.

3         So those are the three points I just wanted to

4  raise in response to Mr. Javian's comments.

5         THE COURT:  Okay.  Thank you, Mr. Hunker.  It

6  sounds like both of you have the sense to appreciate that

7  neither of you is asking me to resolve any of these points

8  today and that this is by way of background, and I think, by

9  way of background, it's been helpful and I appreciate it.

10        I think it makes sense for me to see if anyone

11  else would like to be heard, unless there is more that needs

12  to be said on these points.

13     (No verbal response)

14        THE COURT:  Okay.  With that, let me ask, is there

15  -- Mr. Tetro, I see you've turned on your camera, let me give

16  you the chance to be heard, and then Mr. Trad, who's behind

17  him.

18        So, Mr. Tetro, you can proceed.

19        MR. TETRO:  Thank you, Your Honor.  Stephen Tetro

20  of Chapman and Cutler on behalf of the Royal Bank of Canada.

21  The Royal Bank of Canada is agent for a group of prepetition

22  secured lenders with -- under a (indiscernible) facility in

23  this case.  And so I raised my virtual hand just to say we'd

24  be interested in seeing that reservation of rights language

25  and having a chance to comment on that to make sure it

1  applies appropriately to my client as an additional secured,

2  significant secured creditor on the case.

3           THE COURT:  Okay.  Mr. Hunker, any objection to

4  bringing Mr. Tetro into the conversation about reservation of

5  rights language?

6           MR. HUNKER:  No objection, Your Honor.

7           THE COURT:  Okay.  So, thank you, Mr. Tetro, and

8  Mr. Trad.

9           And, I'm sorry, you are still muted.

10           MR. TRAD:  Thank you, Your Honor, Joe Trad of

11  Lewis Rice in St. Louis.  We represent Regions Equipment

12  Finance Corporation and Regions Commercial Equipment Finance,

13  LLC, which is a distinct entity from Regions Bank, who's also

14  represented here today.

15           These two finance companies made secured loans on

16  216 units, trailers, refrigerated trailers, and power units,

17  and they made those loans to an entity called TPine Leasing

18  Capital LP, a U.S. limited partnership.  Because it's a

19  limited partnership, TPine Leasing Capital LP, as I

20  understand it, is not qualified to be an applicant under the

21  CCAA and is therefore a non-applicant entity under the 60-day

22  order.

23           I know Mr. Javian talked about reservations of

24  rights and wanting to exercise the rights of a secured

25  creditor in Chapter 15.  However, I would note to the Court

1  that while other entities that are subject to the -- and

2  other non-applicant entities are subject -- have filed their

3  own Chapter 15 bankruptcy filings, TPine Leasing Capital LP

4  has not, yet the Court is being asked today to extend a stay

5  as granted by the Canadian court, something we'll deal with

6  them about on Friday, but we have grave reservations about

7  the extension of that stay of the Canadian court to this non-

8  applicant entity TPine Leasing Capital LP, a U.S. limited

9  partnership that has not filed a separate Chapter 15 case

10  here.

11       So I think there's a fundamental issue of

12  jurisdiction that the Court has as it's being asked to extend

13  a stay over an entity that hasn't filed its own Chapter 15

14  case --

15            THE COURT:  So, slow down --

16            MR. TRAD:  -- or --

17            THE COURT:  -- Mr. Trad, slow down.  So there are

18  two different concepts that I want to keep separate, one is

19  the merits of the propriety of extending an injunction, and

20  the second is the question of jurisdiction.  And I think it's

21  really, really, really clear that if I've got jurisdiction by

22  the filing of a Chapter 15, just like I would by the filing

23  of a Chapter 11, you have jurisdiction to enjoin entities who

24  aren't -- enjoin the pursuit of actions against entities who

25  aren't debtors, where in a U.S. Chapter 11 case it would have

1  an effect on the estate or interfere with the reorganization

2  or in a Chapter 15 where doing so is simply, essentially

3  recognizing -- not recognizing because that gets to a

4  different point, but is giving effect to an order that

5  already has been entered in some other -- in a different

6  foreign proceeding.

7           And so just slow down a second, so I'm following

8  this.

9           Mr. Hunker, are the entities that are non-

10 applicants the beneficiaries of the stay that was granted in

11 the initial order in Canada?

12          MR. HUNKER:  Yes, and that would include the U.S.

13 limited partnership.  A U.S. limited partnership is not

14 eligible to be an applicant under the CCAA proceedings, but

15 both of its general partners are applicants under the CCAA

16 proceeding.

17          THE COURT:  Okay.  And the limited partnership

18 itself, am I correct, is the beneficiary -- the injunction

19 that was entered in connection with the initial order enjoins

20 actions from being brought against that limited partnership

21 entity, is that correct?

22          MR. HUNKER:  Yes, that's correct.

23          THE COURT:  All right.  So, Mr. Trad, I don't

24 think there's any question of jurisdiction.  If you want to

25 be heard to the contrary, I'll give you that opportunity, but

1   you've got an uphill battle there.

2          With respect to the propriety of the relief, what

3   I've got before me today is provisional relief, and the

4   relief would be, as I understand it, just coextensive with an

5   order that has been entered in Canada.  And I don't think

6   there's anything extraordinary on a provisional basis with

7   saying, to the extent a court, you know, with jurisdiction

8   over the main case, at least a main case, has granted relief,

9   in order to respect and give comity to that court's ruling,

10  we're going to similarly enjoin actions being taken in the

11  United States or with respect to U.S. assets that would

12  violate the terms of that court's injunction.

13         So what -- again, this is all interim, right?  So

14  I understand that if on regular notice there are real issues,

15  you know, we'll all -- everyone will have a chance to hear

16  them, but is there anything extraordinary with granting this

17  form of interim relief where it's just coextensive with

18  relief that was granted in Canada?

19         MR. TRAD:  No, it's not, other than my concern

20  that our ability to exercise our rights of a secured creditor

21  to an entity that has not filed a Chapter 15 companion case

22  here in the United States.

23         THE COURT:  Okay.  Well, look, as to ultimate

24  relief, your rights will be reserved and you can make

25  whatever argument you want to make, but I think between now

1    and the time we get to an ultimate hearing, it seems to me

2    appropriate to enter an order that essentially mirrors the

3    stay that has been entered in Canada and not disrupt the

4    status quo between now and the time that folks get to a final

5    hearing on these issues.

6            MR. TRAD:  Thank you, Your Honor, for hearing me

7    out on this.

8            THE COURT:  Okay.  Thank you, Mr. Trad.

9            Is there any other party in interest that would

10    like to be heard with respect to the relief sought by the

11    debtors or the foreign representative?

12            Mr. Scott.

13            MR. SCOTT:  Thank you.  Again, for the record,

14    Sean Scott of Mayer Brown on behalf of Regions Bank.  We -- I

15    appreciate that both Linklaters and Mr. Abbott have confirmed

16    we do want the footnote relating to the securitization

17    entities that are not subject to this order to clarify that

18    our borrower is one of those entities.  I think the way the

19    draft order has been written it's not entirely clear which

20    non-debtor entities are part of the Pride Group versus which

21    non-debtor entities, including our bankruptcy remote

22    borrower, are the subject of that footnote and, therefore,

23    outside the scope of the order.

24            And so we have asked and we'll work with

25    Linklaters and Morris, Nichols to make sure that the order

1   does clarify that.  I think that's important for the purposes

2   of understanding which entities are subject to the

3   recognition in the stay and not.

4           THE COURT:  Okay, very well.  Thank you, Mr.

5   Scott.

6           Mr. Abbott?

7           MR. ABBOTT:  Yes, Your Honor, we did confirm by

8   email.  Just to make it clear for the record, Your Honor,

9   footnote number 7 in Mr. Benson's declaration lists those

10  entities that were referred to more generically in footnote 3

11  of the order that Mr. Scott is talking about.  So we're just

12  going to add those specific corporate entities' names into

13  that footnote at footnote 3, and we'll submit that under

14  certificate after the hearing, Your Honor.

15          THE COURT:  Okay.  Thank you, Mr. Abbott.

16          And, Mr. Scott, it sounds like that's agreeable to

17  you.

18          MR. SCOTT:  That's correct, Your Honor.  Thank

19  you.

20          THE COURT:  Okay, thank you.

21          Is there any other party in interest that would

22  like the opportunity to be heard?

23      (No verbal response)

24          THE COURT:  Okay.  So let me just offer the

25  following 40,000-foot observations.  And I, as I'm sure will

1  become apparent over the course of these proceedings, do not

2  purport to be the world's leading expert in Chapter 15,

3  though I promise to work hard and learn fast.  But what I do

4  understand, at least think I understand, is that the concepts

5  of recognition and enforcement are analytically distinct and

6  that, under Chapter 15 and the model law more broadly, what

7  is recognized is a proceeding and what is enforced is an

8  order.  And the proposed order that's been submitted to me

9  seems -- I don't mean this as pejoratively as it might sound,

10  but to be a touch cagey about that and talks about

11  recognizing orders, which I'm not sure is a thing.

12         That said, to the extent it sounds like the

13  parties have in substance agreed, subject only to the one

14  objection that I -- to the extent it's an objection -- that

15  I've overruled with respect to granting relief that is

16  essentially on a provisional basis, that is coextensive with

17  the stay entered in the initial order in the CCAA proceeding.

18  I think the parties are otherwise essentially in agreement

19  about the relief that should be granted today and the

20  reservation of rights that should be addressed going forward.

21  So I don't propose to get in the way of the understanding the

22  parties have in that regard, even if the language, you know,

23  is a touch different from my understanding, but I don't think

24  my job in entering orders that are carefully negotiated among

25  the parties is for it to read exactly the way it would if I

1  sat down with a blank piece of paper.  So I'm comfortable

2  with the current formulation, certainly on a provisional

3  basis.

4          So, with that, I guess I would suggest, Mr.

5  Hunker, that you get in touch with those who have raised

6  objections, see if you can come up with language that

7  addresses their concerns, and that if an order is entered on

8  certification, then -- if it's submitted under certification,

9  I'd be very happy to enter the order at that time.

10          MR. HUNKER:  Okay.  Thank you, Your Honor.  We

11  will certainly take your comments into consideration as we

12  work through the revised order.

13          THE COURT:  Okay.  And, again, I'm not asking you

14  to restructure the existing order.  I only offer it just

15  because it jumped out at me when I read it and I thought I

16  should share those reactions, but, again, I'm not intending

17  to get in the way of an understanding that works as a

18  commercial matter among the parties who actually have, you

19  know, a stake in the matter.

20          Okay.  So, Mr. Hunker, I know you mentioned that

21  you'd want to be back before us when you have a DIP order in

22  Canada, are you looking for a date now or do you want to get

23  that order entered and then reach out for a date?

24          MR. HUNKER:  Ideally, I think we'd like to get a

25  date on the Court's calendar sometime next week.

1           THE COURT:  Okay.

2           MR. HUNKER:  The comeback hearing is currently

3   scheduled for this Friday and we're hopeful to have the order

4   either on Friday or on Monday, and we would aim to get our

5   second provisional relief motion on file very shortly

6   thereafter.

7           THE COURT:  Okay.  So I have a hearing on Thursday

8   morning at 10:00, but I don't think that -- that hearing has

9   come off?

10          THE CLERK:  Yes.

11          THE COURT:  Okay, so I've got Thursday the 11th.

12          MR. HUNKER:  That works for me, Your Honor.

13          THE COURT:  Well, hold on, I -- so I still have

14  something on at 10:00, but I don't think that's an all-day

15  thing.  So what I guess I would propose would be something

16  like say 2:30 on Thursday the 11th.  Does that work for the

17  parties?

18          MR. HUNKER:  That works for the foreign

19  representative, Your Honor.

20          THE COURT:  Okay.  Mr. Fox?

21          MR. FOX:  Good afternoon, Your Honor.  May it

22  please the Court, Tim Fox on behalf of the United States

23  Trustee.

24          Your Honor, I rise virtually as that would be a

25  conflict with a 341 I have scheduled in another matter.  If

1  it still works for the foreign representative's and foreign

2  debtors' schedules to be slightly earlier than 2:30.  I don't

3  expect the hearing to necessarily go all that long, or at

4  least I could excuse myself to conduct the 341 if the

5  proceedings are lengthy on Thursday, the 11th, but wanted to

6  raise that issue as to my availability.  I do have colleagues

7  that might be able to cover, but I have been kind of tapped

8  as the resident Chapter 15 trial attorney from my office and,

9  just given the issues that could come up, would likely be

10 asked to consult on those and participate if the U.S. Trustee

11 has a position on matters for the 11th.

12        THE COURT:  Okay, Mr. Fox, just so I'm following.

13 Your 341 is when?

14        MR. FOX:  It is at 2:30 on Thursday the 11th --

15        THE COURT:  I see.

16        MR. FOX:  -- so I would have to step away from the

17 hearing if it was running longer than, you know, 2:00 to

18 2:30, potentially, to conduct the 341 --

19        THE COURT:  Actually, no, I think we were talking

20 about actually starting at 2:30.  So that --

21        MR. FOX:  Yes.

22        THE COURT:  -- sounds like that creates -- so,

23 look, what if we did the -- if we did -- I understand your

24 341 will go as long as it goes -- if I set this hearing --

25 would it be better for you, Mr. Fox, if I set this hearing

1   for 2 o'clock or 3 o'clock?

2           MR. FOX:  I think 2 o'clock, so that I can advise

3   the Court of any position that the U.S. Trustee may have --

4           THE COURT:  Got it.

5           MR. FOX:  -- at the outset of the hearing, and

6   then be excused to return --

7           THE COURT:  Okay.

8           MR. FOX:  -- upon the conclusion of 341, if

9   necessary.  Again, you know, fingers crossed that the parties

10  are able to reach resolutions on certain disputed items and

11  next Thursday's hearing will be brief, but not knowing how

12  that will play out, I was just trying to resolve calendaring

13  issues in advance if at all possible.

14          THE COURT:  Which I very much appreciate, Mr. Fox.

15  So no -- I appreciate your raising it and want to do the best

16  I can in a world in which, you know, sometimes you can't, you

17  know, solve all of the problems, but I'm certainly happy to

18  hear the concerns and we'll do our best to work around them.

19          So let me ask this question, is there any party in

20  interest that would have a problem with our tentative -- with

21  our setting a hearing on a to-be-filed motion for further

22  provisional relief for 2:00 p.m. on Thursday, April 11th?

23      (No verbal response)

24          THE COURT:  Okay, seeing none, why don't we plan

25  on proceeding then.  Obviously, Mr. Hunker, the more notice

1  you can give, the better, but I also appreciate that until

2  you have an order in Canada, you don't have a ripe request

3  for relief here.

4        Okay, so we will hold that slot and come back to

5  that when that motion is before us.

6        Is there -- from the foreign representative's

7  perspective, are there other issues that we can address today

8  while we're here?

9        MR. HUNKER:  No, Your Honor, that's all we have

10  for today.  Again, we thank the Court for its time and

11  attention today.

12        THE COURT:  I'm very happy to do it.

13        Is there any other party in interest that has any

14  other point that they would like to raise while we are here?

15      (No verbal response)

16        THE COURT:  Okay, if not, we will go ahead.  If

17  you could upload the joint administration order, and there

18  was another order that was --

19        MR. REMMING:  The scheduling order, Your Honor?

20        THE COURT:  I'm sorry?

21        MR. REMMING:  Was it the scheduling order?

22        THE COURT:  Yes, and the order setting the

23  scheduling for the final relief, yes.  So if those orders,

24  Mr. Remming, could be uploaded, we will go ahead and enter

25  them when they're uploaded.  And otherwise, with respect to

1  the motion for provisional relief, we'll wait for a

2  certification and, when that comes across, we're happy to

3  enter it.  And if there's an issue among the parties that

4  requires our involvement, if you reach out to chambers, we'll

5  find a time to hop on the phone and figure it out.

6         Anything else that I can do to be helpful while

7  we're all here?

8       (No verbal response)

9         THE COURT:  Okay.

10        MR. HUNKER:  No.  Thank you very much, Your Honor.

11        THE COURT:  Okay.  Well, thanks to all of you.

12  We'll await the certification and the uploading of orders,

13  and we'll see you when we next see you.

14        So, with that and my thanks, we're adjourned.

15  Thank you.

16        COUNSEL:  Thank you, Your Honor.

17      (Proceedings concluded at 4:32 p.m.)

18

19

20

21

22

23

24

25

1                          CERTIFICATION

2              We certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of our

5    knowledge and ability.

6

7    /s/ William J. Garling                    April 3, 2024

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12   /s/ Tracey J. Williams                    April 3, 2024

13   Tracey J. Williams, CET-914

14   Certified Court Transcriptionist

15   For Reliable

16

17

18

19

20

21

22

23

24

25