**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Pride Group Holdings Inc., *et al.*[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 24-10632 (CTG)<br><br>Jointly Administered |

**MOTION OF THE FOREIGN REPRESENTATIVE FOR
ENTRY OF AN ORDER GRANTING PROVISIONAL RELIEF IN CONNECTION
WITH DEBTOR IN POSSESSION FINANCING AND CERTAIN PROTOCOLS
PURSUANT TO SECTIONS 105(a) AND 1519 OF THE BANKRUPTCY CODE**

Randall Benson, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors"), in the Canadian proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"), respectfully submits this motion (the "Motion") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, granting provisional relief under section 1519(a) of Title 11 of the United States Code (the "Bankruptcy Code"), including relief available pursuant to section 364 of the Bankruptcy Code with respect to enforcement of debtor-in-possession financing (the "DIP Facility") and certain Protocols (as defined below) approved by the Canadian Court.

---

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

In support of the requested relief, the Foreign Representative respectfully refers the Court to and incorporates by reference the *Declaration of Randall Benson in Support of Motion of the Foreign Representative for Entry of an Order Granting Provisional Relief in Connection with Debtor in Possession Financing and Certain Protocols Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* (the "Second Benson Declaration") filed contemporaneously herewith.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under 28 U.S.C. § 157(b)(2)(P).

2. The Foreign Representative, solely in his capacity as such, consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue is proper in this Court and this District pursuant to 28 U.S.C. § 1410.

4. The statutory predicates for the relief requested herein are section 105(a), 364, 1519, and 1521 of the Bankruptcy Code.

## BACKGROUND

**I. Commencement of the CCAA Proceedings and the Chapter 15 Cases**

5. The Debtors and certain of their non-Debtor affiliates (collectively, the "Pride Group")[2] operate a trucking and logistics conglomerate based in Canada with operations in Canada

---

[2] As used herein, "Pride Group" includes: (i) each of the "Applicants" listed in Schedule "A" to the A&R Initial Order (as defined below); (ii) Pride Truck Sales L.P., TPine Leasing Capital L.P., and Sweet Home Hospitality L.P. ((i) and (ii) together, the "Pride Entities"); and (iii) Block 6 Holding Inc., 2500819 Ontario Inc., Pergola Holdings, Corp., and Pride Global Insurance Company Ltd. (the "Additional Stay Parties"). "Pride Group" does

and the United States. The Pride Group's businesses are managed from their headquarters in Mississauga, Ontario, and they maintain facilities and operations in both Canada and the United States. The Pride Group own substantial assets within the territorial jurisdiction of the United States, including, among other things, real estate properties, bank accounts, equipment, and trucks.

6. On March 27, 2024, the Debtors commenced the CCAA Proceedings in the Canadian Court, and the Canadian Court issued the initial order on the following day (the "Initial Order"), granting certain relief in connection with the CCAA Proceedings. The Initial Order, among other things, (i) appoints Randall Benson as the Foreign Representative for the Debtors and authorizes him to file these chapter 15 cases (collectively, the "Chapter 15 Cases"); (ii) stays the commencement or continuation of any proceeding or enforcement process in any court or tribunal against the Pride Group, the Personal Guarantors (as defined in the *Motion of the Foreign Representative for Entry of an Order Granting Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 6] (the "First Provisional Relief Motion")), and their property through and including April 6, 2024 (the "Stay Period"); and (iii) authorizes a court-ordered charge over the property and assets of the Pride Entities to secure (a) the fees and disbursements of certain of their professionals (the "Administration Charge") and (b) certain personal liability of the Pride Entities' directors and officers (the "Directors' and Officers' Charge").

7. On April 1, 2024 (the "Petition Date"), the Foreign Representative commenced these Chapter 15 Cases by filing petitions seeking recognition of the CCAA Proceedings as "foreign main proceedings" as defined in sections 1502(4) and 1517(b)(1) of the Bankruptcy Code (the "Chapter 15

---

not include the following affiliated special-purpose securitization vehicles that do not engage in any business or activity other than acting as purchasers of securitized assets or issuers of asset-backed obligations under various securitization agreements: TPine USA Funding I LLC, TPine USA Funding II LLC, TPine USA Funding III LLC, TPine USA Funding IV LLC, TPine Canada Securitization L.P, and TPine Canada GP L.P. (collectively, the "Securitization SPVs"). The Securitization SPVs are not applicants in the CCAA Proceedings, are not Debtors in these Chapter 15 Cases, and no relief is sought with respect to these entities.

3

Petitions"). On the same day, the Foreign Representative filed the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* seeking, among other things, recognition by this Court of his status as the Debtors' foreign representative, recognition of the CCAA Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code, and certain related relief (the "Recognition Order").

8. Also on the Petition Date, the Foreign Representative filed the First Provisional Relief Motion, requesting, among other things, enforcement of the Initial Order in the United States on a provisional basis. On April 3, 2024, the Court entered the *Order Granting Motion of the Foreign Representative for Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 49] approving the First Provisional Relief Motion.

9. Additional factual background regarding the Pride Group, including their history and business operations, their capital structure, and the events leading to the filing of the CCAA Proceedings and these Chapter 15 Cases, is set forth in detail in the *Declaration of Randall Benson in Support of the (A) Debtors' Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code and (B) Motion for Provisional Relief* [D.I. 2] (the "First Benson Declaration").

## II. The DIP Facility and A&R Initial Order

10. After entry of the Initial Order and the filing of the Chapter 15 Petitions, certain entities in the Pride Group entered into that certain debtor-in-possession facility term sheet, dated as of April 1, 2024 (the "DIP Term Sheet") with its prepetition lenders under the Syndicated Facility[3] (in such capacities, the "DIP Lenders") and Royal Bank of Canada, as administrative

---

[3] That certain Third Amended and Restated Credit Agreement dated as of November 4, 2022 (the "Syndicated Facility"), by and among: TPine Truck Rental Inc., TPine Leasing Capital Corporation, Pride Truck Sales Ltd.,

4

agent (in such capacity, the "DIP Agent"). A copy of the DIP Term Sheet is attached hereto as **Exhibit B**. Pursuant to the terms of the DIP Term Sheet, the DIP Lenders will make available to the DIP Borrowers (as defined in the DIP Term Sheet) a new term loan facility in aggregate principal amount not to exceed CAD$30 million. Subsequent advances under the DIP Facility are subject to finalization of definitive documentation that will be substantially on the same terms as the DIP Term Sheet (the "DIP Documentation").

11. Set forth on the table below are certain key terms of the DIP Term Sheet, including modifications made thereto by the A&R Initial Order.[4]

| Category | Summary Term |
|---|---|
| ***DIP Facility*** | • CAD$30 million multiple-advance term loan facility, including a CAD$6.5 million initial advance.<br>• Proceeds to be used in accordance with the DIP Budget and applicable orders of the Canadian Court and this Court. |
| ***DIP Budget*** | • DIP Borrowers shall provide to the DIP Agent a consolidated and, if requested by the DIP Agent, non-consolidated rolling 13-week detailed cash flow forecast in respect of the DIP Availment Borrowers.<br>• The DIP Budget shall be updated every two weeks beginning on April 12, 2024, including any variance on a line-by-line basis. |
| ***DIP Advances*** | • Advances under the DIP Facility require a written notice to be delivered by the applicable DIP Borrower to the DIP Agent. |

---

2076401 Ontario Inc., TPine Leasing Capital L.P., PGED Holding, Corp., High Prairie Texas Holding Corp, 131 Industrial Blvd Holding Corp, 59th Ave Phoenix Holding Corp., Di Miller Drive Bakersfield Holding Corp. and 1450 Meyerside Holding Inc., as borrower (the "Borrower Parties"); various guarantors including each of the Borrower Parties and Pride Truck Sales L.P., TPine Rental USA, Inc., Coastline Holdings, Corp., Pride Group Holdings Inc., Pride Group Logistics Ltd., 2043002 Ontario Inc., Pride Fleet Solutions Inc., and Frontage Road Holding Corp.; Royal Bank of Canada, as administrative agent; and the lenders from time to time party thereto.

[4] Capitalized terms used in this table but not otherwise defined shall have the meanings ascribed to them in the DIP Term Sheet. In the event of any inconsistency between the summary set forth herein and the DIP Term Sheet, the DIP Term Sheet shall govern.

| Category | Summary Term |
|---|---|
|  | - Each Advance shall be in the minimum amount of CAD$500,000. |
| *Interest* | - Canadian Prime Rate from time to time in effect plus 250bps per annum. |
| *Security* | - To be secured by the "Security" as defined under the Syndicate Agreement, together with the DIP Charge. |
| *DIP Charge* | - All obligations of the DIP Borrowers under or in connection with the DIP Facility without limitation, all principal, accrued but unpaid interest and Permitted Fees and Expenses (collectively, the "DIP Obligations") shall be secured by the Security and a Court-ordered super-priority charge (the "DIP Charge") in favor of the DIP Agent, for and on behalf of the DIP Lenders, on the assets, undertakings and properties of the Pride Entities.<br>- No portion of the proceeds of the DIP Facility may be used for intercompany advances other than amongst DIP Borrowers. |
| *Priority of DIP Charge* | - As among the DIP Charge and the other charges created by the Initial Order and the A&R Initial Order, the relative priority shall be as follows:<br>    o the Administration Charge;<br>    o the Intercompany Advances Charge;<br>    o the DIP Charge; and<br>    o the Directors' and Officers' Charge<br>- Subject to the priorities set out above, the DIP Charge shall rank in priority to any and all Liens on the DIP Collateral, subordinate only to: (i) any validly perfected and enforceable security interests of third party financiers in specific vehicle and lease collateral and proceeds of such collateral which, as of the date of the Initial Order, ranks in priority to the Security, (ii) any valid and enforceable mortgages duly registered on title to real properties as of the date of the Initial Order; and (iii) until April 19, 2024 (which may be extended upon further order of the Canadian Court), any validly perfected and enforceable security interest of Triumph Financial Services LLC in the property of Debtor Arnold Transportation Services, Inc. in the maximum amount of CAD$3 million. |
| *Maturity Date* | - The earlier of (i) June 30, 2024 at 12:00 p.m. ET (which, subject to satisfaction of certain conditions precedent as provided in the DIP Term Sheet, may be extended to |

| Category | Summary Term |
|---|---|
| | September 30, 2024); and (ii) the occurrence of an Event of Default in respect of which the DIP Agent has elected, in its sole discretion, to accelerate the obligations under the DIP Facility. |
| *Other Terms* | • The DIP Borrowers shall pay all costs and expenses of the DIP Agent, the DIP Lenders, Lenders' Counsel, and Lender Financial Advisor incurred in connection with the DIP Facility, the preparation of the DIP Term Sheet, and such other Permitted Fees and Expenses (as defined in the DIP Term Sheet).<br>• The DIP Facility shall be governed under the laws of Ontario, Canada. |

12. On April 9, 2024, the Canadian Court signed an Amended and Restated Initial Order (as may be further amended from time to time, the "A&R Initial Order"), a copy of which is attached hereto as **Exhibit C**. Among other things, the A&R Initial Order (i) authorizes the DIP Borrowers to obtain and borrow under the DIP Facility in accordance with the terms of the DIP Term Sheet to finance the ordinary working capital and other general corporate purposes of the DIP Borrowers; (ii) grants the DIP Charge to the DIP Agent for and on behalf of the DIP Lenders on the property of the Pride Entities; (iii) extends the Stay Period through June 30, 2024 (or such later time as the Canadian Court may order); and (iv) increases the Administration Charge and the Directors' and Officers' Charge over the property of the Pride Entities.

### III. The Protocols Order

13. Also on April 9, 2024, the Canadian Court signed the Protocols Order (as may be further amended from time to time, the "Protocols Order"), a copy of which is attached hereto as **Exhibit D**. The Protocols Order approves (i) a governance protocol (the "Governance Protocol"), (ii) a real estate monetization plan (the "Real Estate Monetization Plan") and (iii) an intercompany and unsecured claims preservation protocol (the "Intercompany and Unsecured Claims

7

Preservation Protocol," and together with the Governance Protocol and the Real Estate Monetization Plan, collectively, the "Protocols"), each of which is designed to promote fairness, transparency and oversight for all of the Pride Entities' stakeholders during the pendency of the CCAA Proceedings.

14. The Governance Protocol provides the Pride Group's Canadian Court-appointed monitor (the "Monitor") and chief restructuring officer (the "CRO") with reasonable control and oversight over the cash proceeds generated from asset sales and other dispositions, as well as distributions and remittances of the Pride Entities (the "Governance Protocol"). The Governance Protocol is designed to ensure that distributions are made in consideration of the rights of all stakeholders by creating a process to determine how funds received on account of sales, leases, or enforcement are dealt with by the Pride Group, with the Monitor's supervision. The Governance Protocol was initially proposed by the Pride Entities at the initial hearing before the Canadian Court, and, at the direction of the Canadian Court, the Pride Entities, the CRO and the Monitor have been engaging with their stakeholders on the terms of such protocol, which discussions remain ongoing. The Protocols Order also provides that parties will have an opportunity to propose revisions to the Governance Protocol at a further hearing before the Canadian Court.

15. The Real Estate Monetization Plan is designed to bring structure, oversight, and transparency to the monetization of the Pride Entities' real estate, which is an important source of proceeds for the benefit of the Pride Entities' stakeholders. Under the Real Estate Monetization Plan, the Pride Entities are required to list for sale all of their real property by no later than May 1, 2024 (or such later date as the DIP Agent may agree to in writing), and any sale of property will be subject to the prior written consent of the DIP Agent and any applicable third-party mortgagee, or approval of the Canadian Court.

16. The Intercompany and Unsecured Claims Preservation Protocol provides a mechanism to permit mortgage lenders to be repaid from the proceeds of the real estate sales in their respective Mortgage Pools (as defined in the Protocols Order) when they are sold, and, subject to the claims of the DIP Agent against such properties under the DIP Charge, allow for the balance of the proceeds to be distributed to the intercompany creditors and other creditors. This protocol is necessary because certain of the Pride Entities' mortgage lenders have provided financing in respect of real properties, which financing has been cross-collateralized against other properties owned by Pride Entities where the owner may be subject to intercompany claims. The Intercompany and Unsecured Claims Preservation Protocol further provides that, to the extent practical and subject to receipt by the Monitor of a security opinion from its counsel, the Pride Entities will seek an order of the Canadian Court authorizing the distribution from the net proceeds of any sale of property to the relevant mortgagee at the same time as the Pride Entities seek an order of the Canadian Court approving the sale. Any remaining net proceeds after such distribution will be held by the Monitor, pending a determination as to how those proceeds should be distributed.

17. It is a condition precedent to the DIP Lenders making an initial advance of CAD$6.5 million under the DIP Facility that the Court enter an order enforcing the A&R Initial Order and the Protocols Order and approving the DIP Facility on a provisional basis by no later than April 12, 2024. As such, the Pride Group urgently requires the provisional relief requested herein

**RELIEF REQUESTED**

18. By this Motion, the Foreign Representative seeks entry of the Proposed Order:

   a. Enforcing in the United States, on a provisional basis, the A&R Initial Order, including, without limitation, the terms, conditions, and provisions that, among other things:

      i. authorizes and empowers the DIP Borrowers to obtain and borrow pursuant to the DIP Facility subject to the terms of the DIP Term Sheet in order to finance the ordinary course working capital and other general corporate purposes of the DIP Borrowers;

      ii. authorizes and empowers the DIP Borrowers to execute and deliver the DIP Documentation as contemplated under the DIP Term Sheet or as reasonably required by the DIP Agent;

      iii. authorizes and directs the DIP Borrowers to pay and perform all their indebtedness, interest, fees, liabilities, and obligations to the DIP Agent and the DIP Lenders under the DIP Documentation as they become due;

      iv. grants the DIP Charge on the property of the Pride Entities to the DIP Agent for and on behalf of the DIP Lenders with the same priority as set out in the A&R Initial Order; and

      v. increases the size of the Administration Charge and the Directors' and Officers' Charge over the Pride Entities' assets.

b. granting the DIP Agent and DIP Lenders certain protections afforded by the Bankruptcy Code, including under section 364 of the Bankruptcy Code, made applicable pursuant to section 1519(a)(3) of the Bankruptcy Code;

c. enforcing in the United States, on a provisional basis, the Protocols Order; and

d. granting such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF REQUESTED

**I. Section 1519 of the Bankruptcy Code Authorizes the Requested Provisional Relief**

19. Section 1519 of the Bankruptcy Code permits the Court "[f]rom the time of filing a petition for recognition until [it] rules on the petition" to grant provisional relief pending recognition of the foreign proceeding where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a). Sections 1519(a)(1)-(3) of the Bankruptcy Code define the scope of available provisional relief, which includes:

a. staying execution against the debtor's assets;

b. entrusting the administration or realization of all or part of the debtor's property located in the United States to the foreign representative . . . in order to protect

  and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and

  c. any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11. U.S.C. § 1519(a).[5]

20.   The Foreign Representative seeks provisional relief under sections 105(a) and 1519 of the Bankruptcy Code. Among other things, the Foreign Representative seeks the Court's application of section 364 of the Bankruptcy Code to these Chapter 15 Cases on a provisional basis for the purpose of allowing the DIP Borrowers to utilize the DIP Facility to finance their operations, the CCAA Proceedings, and these Chapter 15 Cases.

21.   Of particular relevance in these Chapter 15 Cases is section 364(e) of the Bankruptcy Code, which provides that a reversal or modification of a financing order does not affect the validity or priority of a post-petition lender's claim or lien. Lenders to foreign debtors in chapter 15 cases are entitled to the protection that their claims and liens retain their validity and priority if a recognition order is not entered. Absent such relief, the incorporation of Bankruptcy Code section 364 into chapter 15 through Bankruptcy Code section 1519 would have little effect.

22.   Further, the provisional relief requested herein is an "effective mechanism" to implement the chapter 15 policies of promoting cooperation between courts of the United States and courts of foreign countries involved in cross-border restructuring cases. The "fair and efficient administration of cross border [cases] that protects the interest of all creditors, and other interested entities," including the Debtors, is essential to the "protection and maximization of the value of the [Debtors'] assets." 11 U.S.C. § 1501(a)(3) and (4).

---

[5]   *See also* 11 U.S.C. § 1501, which sets forth the Congressional intent to be used to, among other things, "create greater legal certainty for trade and investment," and allow for the "facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment."

11

## II. Provisional Relief Is Needed to Provide Necessary Liquidity to Support the Pride Group's Restructuring Efforts

23. The relief requested herein is necessary to provide the Pride Group with the necessary liquidity to operate while it pursues a restructuring solution. *See* 11 U.S.C. § 1519(a). Although a "petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time," there is necessarily a gap between the time the petition for recognition is filed and the time the court decides on whether a proceeding should be recognized. 11 U.S.C. § 1517(c). Prior to recognition, a chapter 15 debtor is not automatically entitled to the automatic stay or any other provisions of the Bankruptcy Code, which, in this case, necessitates an order granting provisional relief. Provisional relief should be granted "where relief is urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a).

24. Here, the DIP Lenders have agreed to provide the DIP Facility on the terms outlined in the DIP Term Sheet to provide the DIP Borrowers with liquidity to operate their businesses. The terms of the DIP Facility were negotiated, proposed and entered into by the DIP Borrowers and the DIP Lenders without collusion, in good faith and at arm's length. The DIP Facility will preserve and maintain the going concern value of the Pride Group, which, in turn, is integral to maximizing recoveries for the Pride Group's stakeholders.

25. Further, the DIP Facility and the DIP Charge authorized under the A&R Initial Order generally align with the U.S. process for obtaining debtor-in-possession financing under section 364 of the Bankruptcy Code. On notice to creditors, the Canadian Court reviewed the DIP Term Sheet, held a hearing, and approved the DIP Facility and DIP Charge. By granting the relief requested herein, the Court would enforce the Canadian Court's order that approves the DIP Facility and DIP Charge, which will allow the Pride Group to operate its businesses, continue its restructuring efforts, and finance the CCAA Proceedings and these Chapter 15 Cases.

26.     Provisional enforcement of the A&R Initial Order, including the granting of the DIP Charge and the other charges approved in the A&R Initial Order, and provisional enforcement of the Protocols Order, is a condition to the initial draw under the DIP Facility. Consequently, absent provisional enforcement of the A&R Initial Order and the Protocols Order in the United States, the DIP Borrowers will be unable to draw on the DIP Facility to fund their operations and restructuring, resulting in value destruction.

### III.     The Requested Provisional Relief Under Section 1519 is Justified

27.     Relief under section 1519 of the Bankruptcy Code is available where the foreign representative can satisfy the standard for injunctive relief. 11 U.S.C. § 1519(e); *In re Innua Canada Ltd.*, No. 09-16362, 2009 WL 1025088, at *3 (Bankr. D.N.J. Mar. 25, 2009). In the Third Circuit, the factors considered for injunctive relief include (i) whether irreparable harm will occur if the requested injunction is denied; (ii) likelihood of success on the merits; (iii) whether granting preliminary relief will not result in greater harm to the nonmoving party; and (iv) whether the public interest favors such relief. *U.S. v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996)); *see also Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citations omitted); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted). The Foreign Representative submits that this standard is satisfied here and, therefore, the Foreign Representative is entitled to the requested provisional relief requested herein under section 1519 of the Bankruptcy Code.

####     A.  The Debtors will Suffer Irreparable Harm if Provisional Relief is not Granted.

28.     The Foreign Representative's request to apply section 364 of the Bankruptcy Code on a provisional basis is necessary to prevent irreparable harm to the Pride Group. The Pride Group is currently operating under significant liquidity constraints, and requires immediate access to the DIP Facility to fund working capital requirements, general corporate expenses, and the costs

of administering the CCAA Proceedings and these Chapter 15 Cases pending entry of the Recognition Order.  In addition, the DIP Facility will also help to preserve the Pride Group's businesses by providing assurance to employees, suppliers, and customers that it can maintain its business operations and satisfy its obligations pending the outcome of the CCAA Proceeding and these Chapter 15 Cases.  Absent access to the DIP Facility, the Pride Group will be unable to continue operations and fund its restructuring, which will significantly impair the value of the Pride Group's assets and recoveries to all stakeholders.

### B. There is a Substantial Likelihood That the CCAA Proceedings will be Recognized as Foreign Main Proceedings

29. The Foreign Representative is likely to succeed on the merits because the CCAA Proceedings satisfy the requirements of a foreign main proceeding.  As set forth in detail in the Chapter 15 Petitions, the CCAA Proceedings are (i) "foreign proceedings" as defined under section 101(23) of the Bankruptcy Code and (ii) "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code.

30. The Bankruptcy Code provides that a "foreign proceeding" must be recognized as a foreign main proceeding if it is pending in the country where the debtor has its center of its main interests ("COMI").  *See* 11 U.S.C. § 1517(b).  In the absence of evidence to the contrary, a debtor's registered office is presumed to be its COMI.  See 11 U.S.C. § 1516(c).  As further described in the Chapter 15 Petitions, Canada is each Debtor's COMI because, among other things, (i) the registered office of each Debtor incorporated in Canada is in Canada and (ii) each Debtor incorporated in the United States is owned by a Canadian Debtor company and managed by a Canadian senior management team that makes all strategic, operational and policy decisions for the Pride Group from its global headquarters in Ontario, Canada.

31. Moreover, the Foreign Representative has demonstrated that he is a proper "foreign representative" as defined under section 101(24) of the Bankruptcy Code. Additionally, the Chapter 15 Petitions was filed in accordance with, and satisfies all of the applicable requirements of, chapter 15 of the Bankruptcy Code.

32. Courts in this District and other districts have granted recognition to foreign proceedings similar to the CCAA Proceedings as "foreign main proceedings," where, as is the case here, they were part of a jointly administered CCAA proceeding with their Canadian parent and the debtor presented evidence, as here, of these entities' COMI being in Canada. *See, e.g., In re The Aldo Group Inc*., No. 20-11060 (KBO) (Bankr. D. Del. May 8, 2020) [D.I. 66]; *In re Pac. Exploration & Prod. Corp*., No. 16-11189 (JLG) (Bankr. S.D.N.Y. June 10, 2016) [D.I. 25]; *In re John Forsyth Shirt Co. Ltd*., No. 13-10526 (SCC) (Bankr. S.D.N.Y. Mar. 18, 2013) [D.I. 24]; *In re Essar Steel Algoma Inc*., No. 15-12271 (BLS) (Bankr. D. Del. Dec. 2, 2015) [D.I. 100]; *In re Talon Sys. Inc*., No. 13-11811 (KJC) (Bankr. D. Del. Aug. 30, 2013) [D.I. 49]; *In re Arctic Glacier Int'l Inc*., No. 12-10605 (KG) (Bankr. D. Del. Mar. 16, 2012) [D.I. 70]; *In re Catalyst Paper Corp*., No. 12-10221 (PJW) (Bankr. D. Del. March 5, 2012) [D.I. 89]; *In re Angiotech Pharm., Inc*., No. 11-10269 (KG) (Bankr. D. Del. Feb. 22, 2011) [D.I. 83]. Thus, the likelihood of success on the underlying merits here is substantial.

### C. The Threatened Injury to the Debtors Outweighs Any Damage the Provisional Relief Would Cause to a Creditor

33. The balance of harm also weighs in favor of granting the relief requested herein. The Canadian Court determined that the terms of the DIP Term Sheet, as approved in the A&R Initial Order, are fair and reasonable and were entered into in good faith by the DIP Borrowers and the DIP Lenders. Further, the DIP Lenders will not extend financing without the protections provided by sections 364 of the Bankruptcy Code, made applicable through section 1519 of the Bankruptcy

Code, as it is a condition precedent to funding that this Court enter an order enforcing the A&R Initial Order in the United States. It is also a condition precedent to funding that this Court enforce the Protocols Order on a provisional basis in the United States. The goal of the Protocols Order is to promote fairness, transparency and oversight among the Pride Entities' stakeholders.

34.  Given the above, the Foreign Representative submits that granting the relief requested herein will benefit the Pride Group's creditors by providing the liquidity necessary to continue operating the Pride Group's businesses, which will preserve and maximize the value of the Pride Group's assets for the benefit of all its stakeholders.

35.  Moreover, under section 1522 of the Bankruptcy Code, a court may grant relief under section 1519, if the "interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). The relief sought herein supplements the A&R Initial Order which authorizes the DIP Facility and DIP Charge and the Protocols Order, is consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code, and is necessary to administer the CCAA Proceedings.

### D.  Public Interest Favors Granting Provisional Relief

36.  The provisional relief requested herein is consistent with the policy underlying bankruptcy law and is in the public interest because it will facilitate the Pride Group's efforts to pursue and complete a successful restructuring for the benefit of the Pride Group's creditors and other stakeholders. *See, e.g., In re Tribune Co.*, 477 B.R. 465, 475 (Bankr. D. Del. 2012) ("there is also a strong public interest in the swift and efficient resolution of bankruptcy proceedings"); *Grimes v. Genesis Health Ventures, Inc. (In re Genesis Health Ventures, Inc.)*, 280 B.R. 339, 346 (D. Del. 2002) ("[p]ublic policy weighs in favor of facilitating quick and successful reorganizations of financially troubled companies"); *Rehabworks, Inc. v. Lee (In re Integrated Health Servs, Inc.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("[i]n the context of a bankruptcy

case, promoting a successful reorganization is one of the most important public interests") (citations omitted).

37. Granting the requested relief is also in the public interest because it will facilitate the Foreign Representative's efforts to complete a court-supervised restructuring process (i.e., the CCAA Proceedings) for the benefit of all creditors and other stakeholders (including those in the United States). Additionally, granting the provisional relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15 of the Bankruptcy Code. *See* 11 U.S.C. § 1501(a).

38. The provisional relief sought herein is of a type frequently granted in chapter 15 cases. Bankruptcy courts in this district and others have authorized provisional relief pursuant to section 364 of the Bankruptcy Code or ordered similar relief to allow debtors access to debtor-in-possession financing to finance their operations and restructuring pending recognition or disposition of foreign proceedings in ancillary cases under chapter 15 of the Bankruptcy Code. *See*, *e.g.*, *In re Xebec Holding USA Inc.*, Case No. 22-10934 (KBO) (Bankr. D. Del. Oct. 27, 2022) (granting provisional relief in connection with debtor-in-possession financing in debtors' chapter 15 case); *In re Yatsen Grp. of Cos. Inc.*, Case No. 21-10073 (BLS) (Bankr. D. Del. Jan. 27, 2021) (same); *In re Hematite Holdings Inc.*, No. 20-12387 (Bankr. D. Del. Oct. 15, 2020) (same); *In re The Aldo Grp. Inc.*, No. 20-11060 (Bankr. D. Del. June 3, 2020) (same); *In re Cinram Int'l Inc.*, No. 1211882 (Bankr. D. Del. July 25, 2012); *In re Arctic Glacier Int'l Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012) (same); *In re Catalyst Paper Corp.*, Case No. 12-10221 (PJW) (Bankr. D. Del. Feb. 8, 2012) (same).

**IV.     Enforcement of Other Provisions of the A&R Initial Order is Appropriate**

39.     As noted above, the A&R Initial Order also, among other things: (i) extends the Stay Period to June 30, 2024 (or such later date as the Canadian Court may order) to give the Pride Group additional breathing room to operate its businesses and formulate a restructuring plan; and (ii) increases the Administration Charge and the Directors' and Officers' Charge commensurately with the extension of the Stay Period.  The Foreign Representative submits that these provisions of the A&R Initial Order should be enforced with respect to the Pride Group, the Personal Guarantors (as applicable), and their property in the United States on a provisional basis until the Court rules on the relief requested in the Verified Petition for the same reasons as set forth in the First Provisional Relief Motion.

**V.      Enforcement of the Protocols Order is Appropriate**

40.     The goal of the Protocols Order and the Protocols is to promote fairness and transparency by providing oversight into the Pride Entities' cash distributions and real estate monetization plan for the benefit of all stakeholders.  The Protocols serve to benefit creditors and other parties in interest, are in line with the public interest, and are entirely consistent with the purpose of Chapter 15 which is to promote cooperation between jurisdictions in cross-border insolvencies. Further, it is a condition precedent to funding that this Court enforce the Protocols Order on a provisional basis in the United States, and the DIP Lenders would not extend financing under the DIP Facility without such enforcement.  The Pride Entities urgently require access to the DIP Facility in order to finance their ordinary working capital needs and the costs of their restructuring.  Accordingly, the Foreign Representative submits that the Protocols Order should be enforced in the United States.

**NOTICE**

41. The Foreign Representative has provided notice of this Motion consistent with Local Rule 9013-1(m) and the *Order Scheduling Hearing on Chapter 15 Petitions for Recognition and Related Relief and Specifying Form and Manner of Service of Notice* [D.I. 56]. The Foreign Representative submits that such notice is sufficient in view of the facts and circumstances, and no other or further notice need be provided.

[*Remainder of page left intentionally blank*]

## **CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit A**, granting the requested relief and such other and further relief as may be just and proper.

Dated: April 9, 2024
      Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Andrew R. Remming*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Austin T. Park (No. 7247)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
aremming@morrisnichols.com
apark@morrisnichols.com

-and-

**LINKLATERS LLP**
Penelope J. Jensen
Christopher J. Hunker
Clark L. Xue
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 903-9000
Facsimile: (212) 903-9100
penelope.jensen@linklaters.com
christopher.hunker@linklaters.com
clark.xue@linklaters.com

*Attorneys for the Foreign Representative*