**<u>Exhibit B</u>**

**DIP Term Sheet**

Dated the 1st day of April, 2024

**TERM SHEET**
**DEBTOR-IN-POSSESSION FACILITY**
**APRIL 2024**

*This Debtor in Possession Facility Term Sheet (the "**Term Sheet**") is entered into between Tpine Truck Rental Inc., Tpine Leasing Capital Corporation, Pride Truck Sales Ltd., 2076401 Ontario Inc., Tpine Leasing Capital L.P., PGED Holding, Corp., High Prairie Texas Holding Corp, 131 Industrial Blvd Holding Corp, 59th Ave Phoenix Holding Corp., Di Miller Drive Bakersfield Holding Corp. and 1450 Meyerside Holding Inc. (collectively, the "**Borrowers**" and each a "**Borrower**"), Pride Truck Sales L.P., Tpine Rental USA, Inc., Coastline Holdings, Corp., Pride Group Holdings Inc., Pride Group Logistics Ltd., 2043002 Ontario Inc., Pride Fleet Solutions Inc. and Frontage Road Holding Corp., as guarantors (collectively, the "**Guarantors**" and each a "**Guarantor**"), the DIP Borrowers (as defined below) and the Lenders (as defined in the Existing Credit Agreement defined below). This Term Sheet incorporates information which is confidential or proprietary in nature, and is being furnished on the expressed basis that none of this information is to be used in a manner inconsistent with its confidential nature or be disclosed to anyone other than as may be required by law, to those employees who are directly involved in the proposed transaction and who have been informed of the confidential nature of this Term Sheet, for the purpose of obtaining the Amended and Restated Initial Order, the Protocols Order and the Provisional Order, or to those parties approved in advance by the Lenders. Reference is made to an existing third amended and restated credit agreement dated as at November 4, 2022 between the Borrowers, the Guarantors, the lenders referred to therein and Royal Bank of Canada, as administrative agent and floor plan administrator, as amended (the "**Existing Credit Agreement**"). Unless otherwise specified herein, all references to currency, monetary values and dollars shall mean Canadian dollars.*

| | |
|---|---|
| **Definitions:** | Capitalized terms not otherwise defined in this Term Sheet have the same meanings as specified in the Existing Credit Agreement. For purposes of this Term Sheet, defined terms that are incorporated herein by reference to the Existing Credit Agreement shall, to the extent such defined terms include the term "Borrower", "Borrowers", "Obligor" and/or "Obligors", as applicable, be deemed to include the "DIP Borrower" and/or "DIP Borrowers", *mutatis mutandis*. |
| **Documentation:** | The DIP Facility (as defined below) shall be documented by way of a stand-alone credit agreement which is supplemental to the Existing Credit Agreement, an amendment of the Existing Credit Agreement or an amendment and restatement of the Existing Credit Agreement, as the Lenders may reasonably require and in each case substantially on the terms set forth in this Term Sheet (as the Existing Credit Agreement is so supplemented, amended or amended and restated, the "**Credit Agreement**").<br><br>Until such time as the Credit Agreement is entered into, and subject to the conditions set forth under the heading "Conditions Precedent to All Advances other than the Initial Advance", the terms of this Term Sheet shall be in full force and effect and the Lenders commit to provide to the DIP Borrowers the DIP Facility (collectively, the "**DIP Commitments**"). To the extent any matter is explicitly provided for under the Existing Credit Agreement which is not provided for in this Term Sheet, including without limitation, the manner in which interest is to be paid, funding mechanics and administrative agency provisions, such terms and conditions set forth in the Existing Credit Agreement shall be deemed to be incorporated herein *mutatis mutandis*. At any time prior to the effectiveness of the Credit Agreement, the Administrative Agent and the Lenders may, without the consent of any DIP Borrower amend the terms of this Term Sheet provided such amendments affect only the rights among the Administrative Agent and the Lenders and not the DIP Borrowers. The Lenders may terminate their commitment, including the DIP Commitments if any of the conditions set forth under the heading "Conditions Precedent to All Advances other than the Initial Advance" which are to be satisfied before April 12, 2024 are not satisfied on or prior to such date. Except as expressly provided herein or in the Credit Agreement, nothing in this Term Sheet or |

|  | the Credit Agreement shall affect the rights, remedies and entitlements of the Administrative Agent or the Finance Parties under or in respect of the Existing Credit Agreement or the Credit Documents (including the Pre-Filing acceleration and demand for payment of Obligations) or, subject to the Court Orders, restrict the enforcement by the Administrative Agent or the Finance Parties of any such rights, remedies and entitlements. |
|---|---|
| **DIP Facility:** | A new facility (the "**DIP Facility)** shall be made available to the DIP Borrowers on a non-revolving basis by way of multiple draws in a principal amount not to exceed CAD30 million. |
| **Purpose:** | The proceeds of the DIP Facility shall be used by the DIP Borrowers solely in accordance with, and subject to, the DIP Budget and the Court Orders, to (a) fund the ordinary course working capital and other general corporate purposes of the DIP Borrowers and (b) pay Permitted Fees and Expenses (as defined below). |
|  | No proceeds of the DIP Facility may be used for any other purpose, except with the prior written approval of the Lenders. For certainty, proceeds of the DIP Facility shall not be used for the purpose of, directly or indirectly, repaying any Indebtedness, making an advance to or Investment in any Person that is not a DIP Borrower, or asserting or pursuing any claims against the Administrative Agent, the Lenders or any other Finance Party, or accumulating and/or maintaining cash in depository or investment accounts. |
| **DIP Budget** | Prior to the date of the Initial Advance, the DIP Borrowers shall provide to the Administrative Agent a consolidated and, if requested by the Administrative Agent, non-consolidated rolling 13-week detailed cash flow forecast in respect of the DIP Availment Borrowers (the "**DIP Budget**"), for the period from April 1, 2024 to June 30, 2024 which DIP Budget shall be in form and substance satisfactory to the Lenders. |
|  | The DIP Borrowers, with the assistance of the Monitor, shall provide to the Administrative Agent and Alvarez & Marsal Canada ULC (the "**Lender Financial Advisor**"): |
|  | (a) commencing April 12, 2024 and on Friday of each second week thereafter, an updated rolling 13-week cash flow forecast substantially in the form of the DIP Budget (each an "**Updated DIP Budget**"); and |
|  | (b) commencing April 12, 2024 and on Friday of each second week thereafter, a variance report (each a "**DIP Budget Variance Report**") showing on a line-by-line basis the actual receipts and disbursements and the total available liquidity for the last day of the prior two-week period and noting therein all variances on a line-by-line basis from the amounts in the DIP Budget, with explanations for all material variances; |
|  | in each case, certified by a senior officer of the DIP Borrowers. |
|  | The Lenders may agree in writing to substitute any Updated DIP Budget for the then current DIP Budget, upon which the Updated DIP Budget shall be deemed the DIP Budget with prospective but not retroactive effect. |
| **DIP Advances:** | Advances under the DIP Facility (each, an "**Advance**") require a written notice to be delivered by the applicable DIP Borrower to the Administrative Agent (an "**Advance Notice**"), which Advance Notice has been approved by the Monitor and executed by a senior officer of such DIP Borrower, setting out: (a) the proposed amount of the requested Advance; (b) the date the Advance is required; (c) the specific use for the proceeds of the Advance, together with a certification that such use is in accordance with the DIP Budget and the Credit Agreement (or, until execution and delivery of the Credit Agreement, this |

| | |
|---|---|
| | Term Sheet); (d) certification that the representations and warranties in the Credit Agreement (or, until execution and delivery of the Credit Agreement, this Term Sheet) are true and correct as of such date; and (e) certification that no Event of Default has occurred and is continuing or is expected to occur upon or after giving effect to the Advance. Except for the Initial Advance, each Advance Notice shall be delivered by the applicable DIP Borrower to the Administrative Agent not less than three (3) Banking Days prior to the requested date of the Advance. Each Advance shall be in the minimum amount of CAD500,000. Notwithstanding anything to the contrary contained herein, unless the Administrative Agent provides its consent in writing, the only DIP Borrowers permitted to submit an Advance Notice shall be the DIP Availment Borrowers. |
| **Interest/Applicable Margin:** | Advances of Canadian Prime Rate Loans shall bear interest at the Canadian Prime Rate from time to time in effect plus 250bps per annum. |
| **Security:** | As per the Existing Credit Agreement, together with the DIP Charge. |
| | All Post-Filing intercompany advances from any DIP Borrower to another DIP Borrower shall be secured by a first ranking super-priority court-ordered charge in favour of the advancing DIP Borrower on the assets, undertakings and properties of the recipient DIP Borrower (the "**Intercompany Advances Charge**"). The Intercompany Advances Charge and all underlying indebtedness shall be subject to the DIP Charge. No DIP Borrower shall make any advance or Distribution to, on behalf of, or for the benefit of any Person who is not a DIP Borrower. |
| **DIP Charge:** | All obligations of the DIP Borrowers under or in connection with the DIP Facility including without limitation, all principal, accrued but unpaid interest and Permitted Fees and Expenses (collectively, the "**DIP Obligations**") shall be secured by the Security and a Court-ordered first-ranking super-priority (except as otherwise provided herein) charge (the "**DIP Charge**") in favour of the Administrative Agent, for and on behalf of the Lenders, on the assets, undertakings and properties of the DIP Borrowers, which DIP Charge shall be established in the Amended and Restated Initial Order. The assets, undertakings and properties subject to the Security and the DIP Charge is referred to herein as the "**DIP Collateral**". Without limiting the foregoing, the DIP Borrowers acknowledge and agree that no portion of the proceeds of the DIP Facility may be used for intercompany advances other than amongst DIP Borrowers. |
| **Priority of the DIP Charge:** | Subject to the next paragraph, the DIP Charge shall rank in priority to any and all Liens on the DIP Collateral, provided the DIP Charge shall be subordinate only to: (i) any validly perfected and enforceable security interests of third party financiers in specific vehicle and lease collateral which, as of the Filing Date, ranks in priority to the Security, and (ii) any valid and enforceable mortgages duly registered on title to real properties as of the Filing Date. |
| | As among the DIP Charge and the other charges created by the Initial Order and the Amended and Restated Initial Order, the relative priority shall be as follows: |
| | 1.      the Administration Charge; |
| | 2.      the Intercompany Advances Charge; |
| | 3.      the DIP Charge; and |
| | 4.      the Directors' Charge (as defined in the Amended and Restated Initial Order); |
| **Maturity Date/Repayment:** | The DIP Facility shall mature and all DIP Obligations shall be due and payable on the earlier of (i) 12:00 pm Toronto time on June 30, 2024 (the "**Outside Maturity Date**") and (ii) the occurrence of an Event of Default in respect of which the Administrative |

|  | Agent has elected, in its sole discretion, to accelerate the DIP Obligations (the "**Maturity Date**").

The Lenders' commitment to make Advances under the DIP Facility shall expire on the Maturity Date and all then outstanding DIP Obligations shall be repaid on the Maturity Date without the Administrative Agent, for and on behalf of the Finance Parties, being required to give notice to the DIP Borrowers that the DIP Facility has expired and that all the DIP Obligations are due and payable.

The Outside Maturity Date will be extended to September 30, 2024 upon satisfaction of the following conditions precedent: (i) the DIP Borrowers shall have provided to the Administrative Agent by no later than June 1, 2024 the detailed principal terms of a restructuring plan in respect of the DIP Borrowers which is supported by the Monitor with appropriate financial analysis, which restructuring plan shall also contemplate the path for repayment in full of the DIP Obligations by no later than September 30, 2024 and the Lenders shall have provided their approval to such plan by June 15, 2024; (ii) as of June 30, 2024, no Event of Default shall have occurred which has not been waived by the Lenders, and no Event of Default shall be anticipated to occur within the period from June 30, 2024 through September 30, 2024 (the "**Extension Period**"). and (iii) the DIP Borrowers shall have provided to the Administrative Agent an Updated DIP Budget for the Extension Period in form and substance satisfactory to the Lenders and which the Lenders have agreed in writing shall constitute the DIP Budget for the Extension Period. |
|---|---|
| **Voluntary Prepayments:** | Voluntary prepayments of the DIP Obligations are permitted without penalty in whole or in partial payments of not less than CAD50,000.00. No prior written notice to the Administrative Agent of such a prepayment is required but the DIP Borrowers shall provide to the Administrative Agent written confirmation signed by the CRO of each voluntary prepayment. |
| **Mandatory Prepayments of DIP Facility:** | Subject to the terms and conditions herein, the DIP Borrowers shall repay the DIP Obligations with 100% of each of the following amounts, unless otherwise consented to or otherwise determined by the Administrative Agent in its sole and absolute discretion, and subject only to then outstanding claims ranking in priority to the DIP Charge:

(a)  insurance proceeds (net of deductibles) or expropriation awards received by any DIP Borrower;

(b)  subject to and except as provided in the Governance Protocol and the priorities as set out in the Amended and Restated Initial Order, all proceeds from the sale of Secured Assets (which, for certainty, includes the DIP Collateral) which proceeds are not contemplated in the DIP Budget and are not subject to a security interest in favour of a third party financier ranking in priority to the security interest of the Administrative Agent as of the Filing Date; provided for convenience the DIP Borrowers shall not be required to remit such proceeds to the Administrative Agent until the aggregate amount thereof reaches CAD250,000;

(c)  all payments received by any DIP Borrowers outside of the ordinary course of business, which are not disclosed or accounted for in the DIP Budget and which exceed CAD1 million individually or in the aggregate;

(d)  without limiting paragraph (b) above, the net cash proceeds from the sale of any equity interests in any DIP Borrower or the receipt of capital contributions by any DIP Borrower;

(e)  an amount equal to all dividends, returns of capital and/or repayments of intercompany advances received by any DIP Borrower which are not disclosed or accounted for in the DIP Budget; and |

|  | (f) the net cash proceeds received from the incurrence by any DIP Borrower of any Indebtedness (except as permitted under the Credit Agreement (or, until execution and delivery of the Credit Agreement, the Term Sheet)); |
|---|---|
|  | provided that 100% of the following shall be applied against Pre-Filing Obligations until such Pre-Filing Obligations have been paid in full in cash: (i) all amounts received by any DIP Borrower in repayment of Pre-Filing intercompany advances to other DIP Borrowers outstanding, and (ii) all amounts paid to the Administrative Agent in respect of Pre-Filing Obligations pursuant to the Real Property Monetization Plan and the Governance Protocol; and provided further that funds contemplated to be paid to the Administrative Agent and applied against Pre-Filing Obligations as aforesaid shall be held in trust by the Monitor and not released to the Administrative Agent until the Monitor has confirmed, based upon legal opinions obtained, that it has no objection to such payments being made to the Administrative Agent for application against Pre-Filing Obligations, or further Court Order. |
| **Commitment Fee:** | CAD200,000.00 payable to the Administrative Agent for the rateable benefit of the Lenders relative to each Lender's commitment under the DIP Facility as of the Filing Date. The Commitment Fee shall be deemed to have been fully earned by the Lenders and payable on the date that the CCAA Court issues the Amended and Restated Initial Order and approves this Term Sheet, which is contemplated to be on or before April 8, 2024. In the event the Commitment Fee becomes fully earned and payable and is not paid prior to the first Advance under the DIP Facility, the DIP Borrowers hereby irrevocably direct the Administrative Agent to pay the Commitment Fee from the first Advance. |
| **Fees and Expenses** | The DIP Borrowers shall pay all costs and expenses of the Administrative Agent and the Finance Parties (including all fees, expenses and disbursements of Lenders' Counsel and the Lender Financial Advisor) incurred including in connection with the DIP Facility, including the preparation of this Term Sheet and the Credit Agreement, the administration of the Facilities (including any Agent's standard administration and servicing fees), the enforcement of any of the Administrative Agent's or any other Finance Parties' rights and remedies available under the Existing Credit Agreement, this Term Sheet, the Credit Agreement, the Credit Documents and the Court Orders and in connection with the CCAA Proceedings and the Chapter 15 Proceedings (collectively, "**Permitted Fees and Expenses**"). |
| **Conditions Precedent to Initial Advance:** | The Lenders' agreement to make the Initial Advance is subject to the satisfaction of the following conditions precedent: |
|  | (a) No DIP Borrower shall, after the Filing Date, (i) be subject to any enforcement by any secured party or receiver of any right or remedy in respect of any property of such DIP Borrower which is not stayed, or (ii) be subject to any voluntary or involuntary proceeding (other than the Proceedings) under the *Bankruptcy and Insolvency Act*, the CCAA, the United States Bankruptcy Code or any other legislation or law dealing with bankruptcy, insolvency, restructuring or arrangement of indebtedness, or creditors rights generally (each of (i) and (ii) being an "**Adverse Action**"); |
|  | (b) The DIP Borrowers shall have paid all fees and expenses of the Administrative Agent and the Finance Parties incurred to the date of the Initial Advance, including the invoiced and Administrative Agent approved fees and expenses of Lenders' Counsel and the Lender Financial Advisor; |
|  | (c) The CCAA Court shall have issued the Initial Order no later than 5:00 pm (EST) on March 28, 2024, and the Initial Order shall not have been amended, restated, modified, varied, vacated, stayed, set aside, and there has been no motion served or filed seeking leave to appeal or to amend, vary or set aside the Initial Order; |

| | | |
|---|---|---|
| | (d) | The CCAA Court shall have issued the Amended and Restated Initial Order and the Protocols Order by no later than 5:00 pm (EST) on April 8, 2024, and the Amended and Restated Initial Order and the Protocols Order shall not have been amended, restated, modified, varied, vacated, stayed, set aside, and there shall have been no motion served or filed seeking leave to appeal or to amend, vary or set aside the Amended and Restated Initial Order or the Protocols Order; |
| | (e) | The US Court shall have issued an order, acceptable in form and substance to the Administrative Agent in its sole discretion, by no later than April 12, 2024 granting provisional relief pursuant to Section 1519(a) of the United States Bankruptcy Code pending recognition of the CCAA Proceedings as foreign main proceedings, recognizing the Amended and Restated Initial Order and the Protocols Order on an interim basis and approving the DIP Facility on an interim basis (the "**Provisional Order**"), and the Provisional Order shall not have been amended, restated, modified, varied, vacated, stayed, set aside, and there shall have been no motion served or filed seeking leave to appeal or amend, vary or set aside the Provisional Order; |
| | (f) | The Administrative Agent shall have received, in form and substance satisfactory to the Administrative Agent, an irrevocable direction from the DIP Borrowers directing the Administrative Agent to pay, with proceeds of the Initial Advance, the Commitment Fee; |
| | (g) | The Administrative Agent shall have received an Advance Notice in respect of the requested Initial Advance in accordance with the terms of this Term Sheet; |
| | (h) | No Event of Default shall have occurred and be continuing or will occur as a result of the requested Initial Advance; |
| | (i) | There shall be no Lien upon the DIP Collateral ranking *pari passu* with or in priority to the DIP Charge, other than potential *de minimis* claims in respect of repair and storage lien claimants if applicable in the aggregate amount not exceeding CAD100,000, except as permitted hereunder; and |
| | (j) | The Administrative Agent shall have received such other supporting documentation as it may reasonably request, in each case, in form and substance satisfactory to the Administrative Agent. |
| **CONDITIONS PRECEDENT TO ALL ADVANCES OTHER THAN THE INITIAL ADVANCE** | | The Lenders' agreement to make any Advance, other than the Initial Advance, is subject to the satisfaction of the following conditions precedent: |
| | (a) | The Administrative Agent shall have received, in form and substance satisfactory to the Lenders, a duly executed original of the Credit Agreement; |
| | (b) | The CCAA Court shall have issued the Amended and Restated Initial Order and the Protocols Order no later than 5:00 pm (EST) on April 8, 2024 and the Amended and Restated Initial Order and the Protocols Order shall not have been amended, restated, modified, varied, vacated, stayed, set aside, and there shall have been no motion served or filed seeking leave to appeal or to amend, vary or set aside the Amended and Restated Initial Order or the Protocols Order; |
| | (c) | The US Court shall have issued the Provisional Order by no later than April 12, 2024, and the Provisional Order shall not have been amended, restated, modified, varied, vacated, stayed, set aside, and there shall have been no motion served or filed seeking leave to appeal or amend, vary or set aside the Provisional Order; |
| | (d) | The Administrative Agent shall have received duly executed originals of all security documentation together with all insurance certificates, legal opinions from counsel to the DIP Borrowers and other documents as and in such form |

| | | |
|---|---|---|
| | | and substance the Administrative Agent may reasonably require to give effect to the provisions hereof; |
| | (e) | The DIP Borrowers shall have made all necessary or advisable registrations and taken all other steps in applicable jurisdictions to perfect and give effect to the DIP Charge as reasonably requested by the Administrative Agent; |
| | (f) | In respect of all Advances from and after April 28, 2024 (the "**Final Recognition Deadline**"), the US Court shall have issued an order (the "**Final Recognition Order**"), acceptable in form and substance to the Administrative Agent in its sole discretion, no later than the Final Recognition Deadline recognizing the Amended and Restated Initial Order and the Protocols Order on a final basis, recognizing the CCAA Proceedings as foreign main proceedings on a final basis, and approving the DIP Facility on a final basis, and such order shall not have been amended, restated, modified, varied, vacated, stayed, set aside, and there shall have been no motion served or filed seeking leave to appeal or amend, vary or set aside such order, provided if the US Court does not have time available for a hearing of the application for the Final Recognition Order on or before April 28, 2024 then the Final Recognition Deadline shall be extended to the earlier of (i) the first available US Court date thereafter, and (ii) May 3, 2024; |
| | (g) | No DIP Borrower shall, after the Filing Date, be subject to an Adverse Action; |
| | (h) | The DIP Borrowers shall have paid all fees and expenses of the Administrative Agent and the Finance Parties incurred to the date of the Advance, including the invoiced and Administrative Agent approved fees and expenses of Lenders' Counsel and the Lender Financial Advisor; |
| | (i) | The Administrative Agent shall have received an Advance Notice in accordance with the terms of the Credit Agreement; |
| | (j) | No Event of Default shall have occurred and be continuing or will occur as a result of the requested Advance; |
| | (k) | There shall be no Lien upon the DIP Collateral ranking *pari passu* with or in priority to the DIP Charge, except as permitted hereunder and in the Amended and Restated Initial Order; and |
| | (l) | The Administrative Agent shall have received such other supporting documentation as it may reasonably request, in each case, in form and substance satisfactory to the Administrative Agent. |
| **Representations & Warranties:** | | As per the Existing Credit Agreement but adjusted to reflect the CCAA filing, and excluding existing defaults of such Representations and Warranties. |
| **Affirmative Covenants:** | | As per the Existing Credit Agreement but adjusted to reflect the CCAA filing and otherwise updated to include the following: |
| | (a) | To the extent required, the DIP Borrowers shall make best efforts to provide the following to the Administrative Agent as soon as possible: duly executed originals of security documentation together with all insurance certificates, legal opinions from counsel to the DIP Borrowers and other documents as and in such form and substance the Administrative Agent may reasonably require to give effect to the provisions hereof; |
| | (b) | The DIP Borrowers shall consult with the Administrative Agent, as reasonably practicable, and provide to the Administrative Agent a copy of all materials to be served and/or filed in connection with any application or motion by any DIP Borrower (or a foreign representative on their behalf) for a Court Order at least |

| | | three (3) Banking Days before the earlier of service and filing thereof to permit review by the Lenders and their legal and financial advisors, unless it is not practical in the circumstances to provide a copy of such materials in such timing in which case the DIP Borrowers shall provide the Administrative Agent with a copy of such materials as far in advance as the circumstances permit. The final versions of such materials to be served and filed shall be in form and substance reasonably satisfactory to the Administrative Agent; |
|---|---|---|
| | (c) | The DIP Borrowers shall provide to the Administrative Agent, promptly upon receipt, a copy of all materials received by any DIP Borrower in connection with any application or motion to the Court or any other court by a third party in or in respect of the CCAA Proceedings or the Chapter 15 Proceedings; |
| | (d) | The DIP Borrowers shall consult with the Administrative Agent on the development of the Entitlement Protocol and shall make best efforts to obtain Court approval of an Entitlement Protocol by no later than May 1, 2024; |
| | (e) | The DIP Borrowers shall comply at all times with the provisions of the Initial Order, the Amended and Restated Initial Order, the Protocols Order, the Provisional Order, the Final Recognition Order and all other Court Orders, the Protocols, and the Real Estate Monetization Plan; |
| | (f) | In respect of any sale or investment solicitation process which may be initiated by or in respect of any DIP Borrower or any of their property, such SISP and related procedures (a "**SISP**") shall be acceptable to the Lenders in all respects or approved by the CCAA Court and the DIP Borrowers shall comply at all times with the SISP and any Court Order approving the SISP, including by achieving the milestones set out in the SISP; |
| | (g) | The DIP Borrowers shall comply at all times with the DIP Budget, provided the DIP Borrowers shall be permitted a cumulative aggregate negative variance from the cumulative net cash flow (exclusive of the professional fees and disbursements of the DIP Lender) of not more than: (i) CAD3 million in the first three weeks (being the week ending April 7, 2024 through the week ending April 21, 2024); (ii) CAD3.5 million in weeks four through six; (iii) CAD4 million in weeks seven through to nine; (iv) CAD4.5 million in weeks ten through to twelve; and (v) CAD5 million in week thirteen. |
| | (h) | The DIP Borrowers shall deliver to the Administrative Agent and the Lender Financial Advisor (i) Updated DIP Budgets and DIP Budget Variance Reports, (ii) such other reporting as is required under the Credit Agreement (or, until execution and delivery of the Credit Agreement, the Term Sheet), and (iii) such other information from time to time as is reasonably requested by the Administrative Agent or a Lender; |
| | (i) | The DIP Borrowers shall deliver to the Administrative Agent and the Lender Financial Advisor, as soon as reasonably possible following preparation thereof (i) copies of all monthly internal financial statements, statements of liquidity and updates to the DIP Budget, together with any related or supporting information provided to the Monitor to the extent that the DIP Borrowers currently produce such financial statements or information, and (ii) any material written reports, commentary or analysis received by the DIP Borrowers from the Monitor regarding the financial position of the DIP Borrowers and their affiliates (as applicable) or otherwise; |
| | (j) | The DIP Borrowers shall provide the Administrative Agent with a weekly status update (which at the Administrative Agent's request shall include weekly meetings with the Monitor and/or the Chief Restructuring Officer) regarding the status of the businesses (including any plans to cease operating any business), operations and restructuring efforts of the DIP Borrowers (including compliance |

with the Protocols), the CCAA Proceedings, the Chapter 15 Proceedings, the Real Estate Monetization Plan, all ongoing SISPs, and all other matters material to the DIP Borrowers or the Pre-Filing and Post-Filing interests of the Lenders;

(k)     The DIP Borrowers shall keep the Lenders apprised on a timely basis of all material developments with respect to the DIP Collateral, the business and affairs of the DIP Borrowers, the Real Estate Monetization Plan and all ongoing SISPs, including, without limiting the foregoing, by providing to the Administrative Agent copies of (i) all listing agreements and financial advisory or brokerage engagement letters, (b) all marketing, process and other materials which any DIP Borrower intends to provide to prospective interested parties, including all bid process letters and draft forms of letter of interest or definitive agreements, which materials shall be to the satisfaction of the Administrative Agent, acting reasonably, and (ii) all expressions of interest, bids or offers received, whether binding or non-binding;

(l)     The DIP Borrowers shall notify the Administrative Agent forthwith of the occurrence of any Event of Default;

(m)     Each DIP Borrower shall allow the Administrative Agent, the Lender Financial Advisor and such other agents or lease service providers engaged by the Administrative Agent or the Lender Financial Advisor full access to the Borrowers' premises and all information and documentation of the DIP Borrowers (including the taking of copies) on reasonable notice and during normal business hours and cause management thereof to fully cooperate with any such directors, officers, employees, agents, advisors and representatives, and provided that all requests under this paragraph shall be commercially reasonable and made with due consideration to the time and cost related to satisfying such requests;

(n)     The DIP Borrowers shall pay when due all amounts constituting Priority Payables;

(o)     If, at any time between the dates on which the DIP Borrowers are required to deliver a DIP Budget Variance Report, the DIP Borrowers have or expect to incur a material variance to the DIP Budget then the DIP Borrowers shall promptly inform the Administrative Agent and the Lender Financial Advisor of same; and

(p)     The DIP Borrowers shall, as soon as reasonably possible following the issuance of the Amended and Restated Initial Order and the Provisional Order, make all necessary or advisable registrations and take all other steps in applicable jurisdictions to perfect and give effect to the DIP Charge.

| | |
|---|---|
| **Negative Covenants:** | As per the Existing Credit Agreement but adjusted to reflect the CCAA filing and otherwise updated to include the following: |

(a)     No DIP Borrower shall use any Advance except in accordance with the permitted uses hereunder and the DIP Budget;

(b)     Except in accordance with the Initial Order and the Amended and Restated Initial Order and as contemplated in the DIP Budget, no DIP Borrower shall make any payment of any indebtedness or obligations existing as at the Filing Date (the "**Pre-Existing Debt**");

(c)     No DIP Borrower shall create, incur or permit to exist any Indebtedness other than Pre-Existing Debt, DIP Obligations, Advances, indebtedness subject to the Intercompany Advances Charge, and unpaid accounts payable in the ordinary course of business (including unpaid rents and other amounts payable to

|  |  | Affiliates of the DIP Borrowers in accordance with the Initial Order or the Amended and Restated Initial Order), all subject to the DIP Budget; |
|--|--|--|
|  | (d) | Except for the DIP Charge and the charges created in the Initial Order, no DIP Borrower shall cause any new Lien or provide, seek or support any request by another Person to provide any Lien (whether contractual or by Court Order), upon any of the DIP Collateral; |
|  | (e) | No DIP Borrower shall take any steps contrary to the provisions set out under the "Unaffected Creditor Status of the Lenders" section below; |
|  | (f) | No DIP Borrower shall accept or enter into any sale or other transaction involving any of the DIP Borrowers or their property outside of the ordinary course of business without prior consultation with the Administrative Agent and either the prior written consent of the Administrative Agent or approval of the Court; |
|  | (g) | No DIP Borrower shall disclaim any contract that is directly or indirectly material to the DIP Borrowers' business without the prior written approval of the Administrative Agent; |
|  | (h) | No DIP Borrower shall or shall permit the amendment of the Protocols or the Real Estate Monetization Plan, without the prior written consent of the Administrative Agent or approval of the Court; |
|  | (i) | No DIP Borrower shall make any advance or Distribution to, on behalf of, or for the benefit of any Person who is not a DIP Borrower; |
|  | (j) | No DIP Borrower shall make any advance, payment or Distribution to, on behalf of, or for the benefit of any member of the DIP Borrowers' management team or any Person related to any member of the DIP Borrowers' management team, whether directly or indirectly, other than the payment of salary in the ordinary course that is consistent with past practice and which have been disclosed to the Administrative Agent and approved by the Monitor; |
|  | (k) | No DIP Borrower shall establish or seek Court approval of a key employee retention or incentive or similar plan without prior consultation with the Administrative Agent; and |
|  | (l) | No DIP Borrowers shall (i) settle, compromise, reduce, assign or take any other step which might impair any intercompany indebtedness owing by it to another DIP Borrower, or (ii) make any Distribution to any DIP Borrower or any other Person without approval of the Court. |
| **Events of Default:** | (a) | Any breach or default by any DIP Borrower in performance of the terms of the Credit Agreement (or, until execution and delivery of the Credit Agreement, the Term Sheet) or any Credit Document; |
|  | (b) | If the Credit Agreement is not fully executed and delivered by April 19, 2024 provided that the DIP Borrowers are provided with the draft of such Credit Agreement on or before April 10, 2024; |
|  | (c) | The Lenders determine, in their sole discretion, acting reasonably, that a material adverse change has occurred after the date hereof in respect of the business, affairs or financial condition of the DIP Borrowers, collectively, or the ability of the DIP Borrowers, collectively, to comply with their respective Post-Filing Obligations under the Credit Agreement (or, until execution and delivery of the Credit Agreement, the Term Sheet), any other Credit Document or any Court Order; |

(d)    Any DIP Borrower fails to pay or remit any amounts that constitute Priority Payables as they become due from time to time;

(e)    The Initial Order, the Amended and Restated Initial Order, the Protocols Order, the Provisional Order, the Final Recognition Order or any other Court Order or any of the Protocols is amended, restated or otherwise varied, in a manner that adversely affects or would reasonably be expected to adversely affect the interests of the Administrative Agent or Lenders, without the prior written consent of the Administrative Agent, or any Court Order is issued, dismissed, stayed, reversed, vacated, amended or restated and such issuance, dismissal, stay, reversal, vacation, amendment or restatement adversely affects or would reasonably be expected to adversely affect the interests of the Administrative Agent or the Lenders, including any Court Order or order of any other court:

    i.    terminating, lifting or amending the stay imposed by any Court Order or otherwise in the Proceedings;

    ii.    dismissing the Chapter 15 Proceedings;

    iii.    granting an appeal of, or leave to appeal the Initial Order, the Amended and Restated Initial Order, the Protocols Order, the Provisional Order, the Final Recognition Order or any other Court Order;

    iv.    granting or declaring that any other claim or Lien ranks equal or in priority to the DIP Charge or the DIP Security, except as permitted hereunder and in the Amended and Restated Initial Order; or

    v.    staying, reversing, vacating or otherwise modifying this Term Sheet, the Credit Agreement or any other Credit Document, the DIP Charge or the Security or prejudicially affecting the Administrative Agent, the Lenders or the DIP Collateral;

(f)    The US Court refuses to recognize any order made in the CCAA Proceeding which the Administrative Agent in its sole discretion determines is material;

(g)    A case under Chapter 11 or Chapter 7 of the United States Bankruptcy Code shall be commenced by or against any DIP Borrower, which is not otherwise stayed;

(h)    The appointment of a receiver and manager, receiver, interim receiver or similar official or any process of any court becomes enforceable against any DIP Borrower or any of their material property, or any of their material property is seized or levied upon, or a creditor or governmental agency takes possession of a material amount of property of the DIP Borrowers, provided for certainty that for the purposes of this paragraph materiality shall be determined in reference to the collective property or operations of the DIP Borrowers;

(i)    Any violation or breach of any Court Order by a DIP Borrower;

(j)    Subject to the Initial Order, the Amended and Restated Initial Order, the Provisional Order, the Final Recognition Order any other Court Order, or the prior written consent of the Administrative Agent, any DIP Borrower ceases to carry on or maintain its business or its assets in the ordinary course of the business;

(k)    The initiation or continuation of any Adverse Action against any DIP Borrower;

(l)    Any proceeding, motion or application is commenced or filed by a DIP Borrower or, if commenced by another Person, supported or otherwise consented to by a DIP Borrower seeking the invalidation, subordination or other

| | | |
|---|---|---|
| | | challenge of the terms of the DIP Charge, this Term Sheet, the Credit Agreement or any other Credit Document; |
| | (m) | The DIP Budget in effect at any time or any Updated DIP Budget delivered hereunder indicates that the DIP Facility does not provide sufficient liquidity for the operations of the DIP Borrowers; |
| | (n) | In respect of any SISP, any deadline for the satisfaction of a material requirement (including any deadline for receipt of bids, offers, letters of intent or agreements, whether binding or non-binding, Court approval or closing) passes without such requirement being satisfied; |
| | (o) | The Monitor declares that a material adverse change has occurred; and |
| | (p) | The Monitor does not obtain opinions from its legal counsel on usual and customary terms, assumptions and qualifications with respect to the validity and enforceability of the Security in both Canada and the United States, including with respect to the security interest of the Administrative Agent over vehicles and leases financed by the Lenders pursuant to the Existing Credit Agreement, by April 29, 2024 or such later date reasonably required by such legal counsel exercising best efforts to complete such review in a timely manner and before the aforesaid date. |
| **Application of Cash Proceeds of Realization** | The Application of Proceeds of Realization provision in the Existing Credit Agreement shall be amended to provide that, except as otherwise contemplated herein, Obligations under and in respect of the DIP Facility shall be paid in full before other Obligations are paid. | |
| **Unaffected Creditor Status of the Lenders** | (a) The Administrative Agent and the Finance Parties shall at all times be treated as an *"unaffected creditor"* and *"unimpaired"* in the CCAA Proceedings and the Chapter 15 Proceedings, including in any plan of compromise or arrangement filed pursuant thereto and/or in any other insolvency, restructuring, reorganization and/or arrangement proceeding with respect to any DIP Borrower thereafter including, without limitation, proceedings under the CCAA, the *Bankruptcy and Insolvency Act* (Canada), United States Bankruptcy Code or any other legislation of any jurisdiction pertaining to insolvency or creditors' rights;<br><br>(b) No plan of compromise or arrangement filed by a DIP Borrower in the CCAA Proceedings or in any other proceedings shall contemplate or result in a compromise or other impairment of the Obligations (including the DIP Obligations) under the Existing Credit Agreement, the Term Sheet, the Credit Agreement and any other Credit Documents, or the rights of the Administrative Agent or the Finance Parties under or in respect thereof; and<br><br>(c) Any stay of proceedings ordered by a Court in the CCAA Proceedings or the Chapter 15 Proceedings, including, without limitation, in the Initial Order and the Amended and Restated Initial Order, shall not apply to the Administrative Agent, the Lenders or any Finance Parties, in respect of the DIP Facility, the DIP Obligations and the DIP Charge, provided, however, that the Initial Order and the Amended and Restated Initial Order shall provide that in respect of the DIP Facility, the DIP Obligations and the DIP Charge the Administrative Agent and the Lenders may not exercise any of their rights or remedies under or pursuant to this DIP Term Sheet, this Term Sheet, the Credit Agreement or any other Credit Documents or the DIP Charge, without providing 3 Banking Days' notice to the CCAA Debtors and the Monitor. | |
| **Governing Law:** | As per the Existing Credit Agreement. | |
| **Defined Terms:** | **"Administration Charge"** has the meaning given to it in the Initial Order; | |

"**Administrative Agent**" means Royal Bank of Canada in its capacity as administrative Agent for and on behalf of the Lenders and the other Finance Parties;

"**Amended and Restated Initial Order**" means an Amended and Restated Initial Order to be issued by the CCAA Court in the CCAA Proceedings in substantially the form attached hereto as Schedule A and otherwise satisfactory to the Administrative Agent and the Lenders;

"**CCAA**" means the *Companies' Creditors Arrangement Act* (Canada);

"**CCAA Proceedings**" means the proceedings commenced by the CCAA Debtors under the CCAA;

"**Chapter 15 Proceedings**" means the proceedings to be commenced under Chapter 15 of the United States Bankruptcy Code seeking, among other things, recognition of the CCAA Proceedings;

"**CCAA Court**" means the Ontario Superior Court of Justice (Commercial List);

"**Court**" means, as the context requires, one or both of the CCAA Court and the US Court;

"**Court Order**" means an order of the CCAA Court or the US Court;

"**DIP Availment Borrowers**" means the DIP Borrowers other than Coastline Holdings, Corp., Pride Group Holdings Inc., and Frontage Road Holding Corp.;

"**DIP Borrowers**" means the "Applicants" and the "Limited Partnerships" listed in Schedule "A" of the Initial Order;

"**Distribution**" means (i) payments of dividends or distributions (in cash, property or obligations) on any Equity Interests of any DIP Borrower, (ii) payments to repurchase, redeem or otherwise acquire for value any outstanding Equity Interests of any DIP Borrower, (iii) applications of any of the funds or assets of any DIP Borrower to a sinking fund dedicated to the repurchase, redemption or retirement of Equity Interests of any DIP Borrower, (iv) payments by any DIP Borrower on account of management fees and management bonuses, (v) repayments by any DIP Borrower of indebtedness owing to any Equity Interest holder of any DIP Borrower, or to any Related Person of any such holder, (vi) payments made in cash by any DIP Borrower to any affiliate of a DIP Borrower or any Related Person of a DIP Borrower and (vii) any other Distribution as defined in the Existing Credit Agreement;

"**Entitlement Protocol**" has the meaning given to it in the Governance Protocol;

"**Event of Default**" means any event of default set forth under the heading "Events of Default" in this Term Sheet;

"**Governance Protocol**" means the Governance Protocol attached hereto as Schedule B;

"**Filing Date**" means the date of issuance of the Initial Order;

"**Initial Advance**" means one or more Advances not to exceed the principal amount of CAD6,500,000;

"**Initial Order**" means the initial order of the Court issued in the CCAA Proceedings on March 27, 2024;

"**Intercompany and Unsecured Claims Preservation Protocol**" means the protocol attached hereto as Schedule C;

"**Lenders**" has the meaning given to it in the Existing Credit Agreement;

"**Monitor**" means Ernst & Young Inc. in its capacity as the Court-appointed Monitor in the CCAA Proceedings;

"**Pre-Filing**" refers to the period prior to the effective time of the Initial Order;

"**Priority Payables**" means harmonized sales tax, sales Tax and any amount payable or accrued by any DIP Borrower which is secured by a Lien (other than the Administration Charge) which ranks prior to or *pari passu* with the DIP Charge or any other DIP Security, including amounts accrued or owing for wages, vacation pay, termination pay (only where it is a priority payable), employee deductions, Taxes, or employer pension contributions, and other statutory or other claims that have or may have priority over, or rank *pari passu* with, the DIP Charge or any other DIP Security;

"**Obligations**" has the meaning given to it in the Existing Credit Agreement and includes the DIP Obligations;

"**Proceedings**" means the CCAA Proceedings and the Chapter 15 Proceedings, or either of them;

"**Post-Filing**" refers to the period from and after the effective time of the Initial Order;

"**Protocols**" means, collectively, the Governance Protocol, the Entitlement Protocol, and the Intercompany and Unsecured Claims Preservation Protocol;

"**Protocols Order**" means an Order to be issued by the CCAA Court in the CCAA Proceedings in substantially the form attached hereto as Schedule D and otherwise satisfactory to the Administrative Agent and the Lenders;

"**Real Estate Monetization Plan**" means the real estate monetization plan attached hereto as Schedule E; and

"**US Court**" means the United States Bankruptcy Court for the District of Delaware.

**DIP BORROWERS:**

**TPINE TRUCK RENTAL INC.**

By: _____
    Name:  Amrinder Johal
    Title:   Director


**TPINE LEASING CAPITAL CORPORATION**

By: _____
    Name:  Sulakhan Johal
    Title:   Director


**PRIDE TRUCK SALES LTD.**

By: _____
    Name:  Sulakhan Johal
    Title:   Director


**2076401 ONTARIO INC.**

By: _____
    Name:  Sulakhan Johal
    Title:   Director


**TPINE LEASING CAPITAL L.P. by its general partner COASTLINE HOLDINGS, CORP.**

By: _____
    Name:  Sulakhan Johal
    Title:   President

**PGED HOLDING, CORP.**

By: _____

    Name:  Sulakhan Johal
    Title:   President

**HIGH PRAIRIE TEXAS HOLDING CORP**

By: _____

    Name:  Sulakhan Johal
    Title:   Director

**131 INDUSTRIAL BLVD HOLDING CORP**

By: _____

    Name:  Sulakhan Johal
    Title:   Director

**59TH AVE PHOENIX HOLDING CORP.**

By: _____

    Name:  Sulakhan Johal
    Title:   Director

**DI MILLER DRIVE BAKERSFIELD HOLDING CORP.**

By: _____

    Name:  Sulakhan Johal
    Title:   Director

**1450 MEYERSIDE HOLDING INC.**

By: _____

    Name:  Sulakhan Johal
    Title:   Director

**PRIDE TRUCK SALES L.P., by its general partner COASTLINE HOLDINGS, CORP.**

By: _____

    Name:   Sulakhan Johal
    Title:   President

**TPINE RENTAL USA, INC.**

By: _____

    Name:   Sulakhan Johal
    Title:   Signing Officer

**COASTLINE HOLDINGS, CORP.**

By: _____

    Name:   Sulakhan Johal
    Title:   Director

**PRIDE GROUP HOLDINGS INC.**

By: _____

    Name:   Sulakhan Johal
    Title:   Director

**PRIDE GROUP LOGISTICS LTD.**

By: _____

    Name:   Navraj Johal
    Title:   Director

**2043002 ONTARIO INC.**

By: _____

    Name: Sulakhan Johal
    Title: Director

**PRIDE FLEET SOLUTIONS INC.**

By: _____

    Name: Sulakhan Johal
    Title: Director

**FRONTAGE ROAD HOLDING CORP.**

By: _____

    Name: Sulakhan Johal
    Title: Director

**PRIDE GROUP REAL ESTATE
HOLDINGS INC.**

By: _____

    Name: Sulakhan Johal
    Title: Director

**68TH STREET SASKATOON HOLDING
INC.**

By: _____

    Name: Sulakhan Johal
    Title: Director

**MANHEIM ROAD HOLDING CORP.**

By: _____
    Name:  Sulakhan Johal
    Title:   Director

**3000 PITFIELD HOLDING INC.**

By: _____
    Name:  Sulakhan Johal
    Title:   Director

**CRESCENTVILLE ROAD CINCINNATI HOLDING CORP.**

By: _____
    Name:  Sulakhan Johal
    Title:   Director

**84 ST SE CALGARY HOLDINGS INC.**

By: _____
    Name:  Sulakhan Johal
    Title:   Director

**87TH AVENUE MEDLEY FL HOLDING CORP.**

By: _____
    Name:  Amrinder Johal
    Title:   President

**102098416 SASKATCHEWAN LTD.**

By: _____

Name: Sulakhan Johal

Title: Director

**2863283 ONTARIO INC.**

By: _____

Name: Sulakhan Johal

Title: Director

**13761983 CANADA INC.**

By: _____

Name: Sulakhan Johal

Title: Director

**2554193 ONTARIO INC.**

By: _____

Name: Jasvir Johal

Title: Director

**2554194 ONTARIO INC.**

By: _____

Name: Sulakhan Johal

Title: Director

**933 HELENA HOLDINGS INC.**

By: _____

Name: Sulakhan Johal

Title: Director

**177A STREET SURREY HOLDING INC.**

By: _____

Name: Sulakhan Johal

Title: Director

**30530 MATSQUI ABBOTSFORD HOLDING INC.**

By: _____

    Name:  Sulakhan Johal
    Title:   Director

**EASTGATE MISSOURI HOLDING CORP.**

By: _____

    Name: Sulakhan Johal
    Title:  Director

**TERNES DRIVE HOLDING CORP.**

By: _____

    Name:  Sulakhan Johal
    Title:   Director

**CORRINGTON MISSOURI HOLDING CORP.**

By: _____

    Name: Sulakhan Johal
    Title:   Director

**401 SOUTH MERIDIAN OKC HOLDING CORP.**

By: _____

    Name:  Sulakhan Johal
    Title:   Director

**8201 HWY 66 TULSA HOLDING CORP.**

By: _____

    Name: Sulakhan Johal
    Title:   Director

**ALEXIS INVESTMENTS, LLC**

By: _____

    Name: Sulakhan Johal
    Title:  Director


**11670 INTERSTATE HOLDING, CORP.**

By: _____

    Name: Sulakhan Johal
    Title:  Director


**OLD NATIONAL HIGHWAY HOLDING CORP.**

By: _____

    Name: Sulakhan Johal
    Title:  Director


**BISHOP ROAD HOLDING CORP.**

By: _____

    Name: Sulakhan Johal
    Title:  Director


**TERMINAL ROAD HOLDING, CORP.**

By: _____

    Name: Sulakhan Johal
    Title:  Director


**HIGHWAY 46 MCFARLAND HOLDING CORP.**

By: _____

    Name:  Sulakhan Johal
    Title:   President

**LOOP 820 FORT WORTH HOLDING CORP.**

By: _____

    Name:  Sulakhan Johal
    Title:  President


**52 STREET EDMONTON HOLDING INC.**

By: _____

    Name:  Sulakhan Johal
    Title:  Director


**VALLEY BOULEVARD FONTANA HOLDING CORP.**

By: _____

    Name:  Sulakhan Johal
    Title:  Director


**PRIDE GROUP LOGISTICS INTERNATIONAL LTD.**

By: _____

    Name:  Sulakhan Johal
    Title:  Director


**DIXIE TRUCK PARTS INC.**

By: _____

    Name:  Sulakhan Johal
    Title:  Director


**TPINE FINANCIAL SERVICES INC.**

By: _____

    Name:  Sulakhan Johal
    Title:  Director

**PRIDE GROUP EV SALES LTD.**

By: _____

    Name:  Sulakhan Johal
    Title:   Director


**PRIDE GROUP LOGISTICS USA, CO.**

By: _____

    Name:  Navraj Johal
    Title:   President


**ARNOLD TRANSPORTATION SERVICES, INC.**

By: _____

    Name:  Navraj Johal
    Title:   Director


**DIXIE TRUCK PARTS INC.**

By: _____

    Name:  Sulakhan Johal
    Title:   Director


**TPINE FINANCIAL SERVICES CORP.**

By: _____

    Name:  Sulakhan Johal
    Title:   President


**PARKER TRANSPORT CO.**

By: _____

    Name:  Navraj Johal
    Title:   Director

**PRIDE FLEET SOLUTIONS USA INC.**

By: _____

Name: Sulakhan Johal
Title: President

**2029909 ONTARIO INC.**

By: _____

Name: Sulakhan Johal
Title: President

**2837229 ONTARIO INC.**

By: _____

Name: Sulakhan Johal
Title: Director

**2108184 ALBERTA LTD.**

By: _____

Name: Sulakhan Johal
Title: Director

**12944154 CANADA INC.**

By: _____

Name: Sulakhan Johal
Title: Director

**13184633 CANADA INC.**

By: _____

Name: Sulakhan Johal
Title: Director

**FRENCH CAMP HOLDING CORP.**

By: _____
     Name: Sulakhan Johal
     Title:  Director


**162 ROUTE ROAD TROY HOLDING CORP.**

By: _____
     Name: Sulakhan Johal
     Title:  Director


**13TH STREET POMPANO BEACH FL HOLDING CORP.**

By: _____
     Name: Sulakhan Johal
     Title:  Director


**EAST BRUNDAGE LANE BAKERSFIELD HOLDING CORP.**

By: _____
     Name:  Sulakhan Johal
     Title:  Director


**963 SWEETWATER HOLDING CORP.**

By: _____
     Name:  Sulakhan Johal
     Title:  Director


**OAKMONT DRIVE IN HOLDING CORP.**

By: _____
     Name:  Sulakhan Johal
     Title:  Director

**2692293 ONTARIO LTD.**

By: _____

Name: Sulakhan Johal
Title: Director

**1000089137 ONTARIO INC.**

By: _____

Name: Navraj Johal
Title: Director

**PARKER GLOBAL ENTERPRISES, INC.**

By: _____

Name: Navraj Johal
Title: Director

**DVP HOLDINGS, CORP.**

By: _____

Name: Sulakhan Johal
Title: President

**SWEET HOME HOSPITALITY L.P.**

By: _____

Name: Sulakhan Johal
Title: President

LENDERS:

ROYAL BANK OF CANADA, as Lender

By: _____

    Name: Brad Newton
    Title: Senior Director

By: _____

    Name:
    Title:

**THE TORONTO-DOMINION BANK, as Lender**

By: _____

Name: Michael Vos
Title: VP, Financial Restructuring Group

By: _____

Name: Andrea Jamnisek
Title: Director, Financial Restructuring Group

**THE BANK OF NOVA SCOTIA, as Lender**

By: _____

Name:   Neel Chopra
Title:   Director

By: _____

Name:   Jeff Johnston
Title:   Senior Manager

**BANK OF MONTREAL, as Lender**

By: _Zachary Newman_____
    Name:  Zachary Newman
    Title:   Senior Manager


By: _Shane Klein_____
    Name:  Shane Klein
    Title:   Managing Director

**ADMINISTRATIVE AGENT:**

**ROYAL BANK OF CANADA, as Administrative Agent**

By: _____
    Name:  Annie Lee
    Title:   Associate Director, Agency Services

By: _____
    Name:
    Title:

**<u>FLOOR PLAN ADMINISTRATOR</u>:**  **ROYAL BANK OF CANADA, as**
**Floor Plan Administrator**

By: _____
Name: Paul Murphy
Title:  Director, Senior Commercial Markets


By: _____
Name:
Title: