**Exhibit C**

**A&R Initial Order**

Court File No. CV-24-00717340-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| THE HONOURABLE | ) | FRIDAY, THE 5TH |
|---|---|---|
|  | ) |  |
| JUSTICE OSBORNE | ) | DAY OF APRIL, 2024 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF **PRIDE GROUP HOLDINGS INC.** and those Applicants listed on Schedule "A" hereto (each, an "**Applicant**", and collectively, the "**Applicants**")

**AMENDED AND RESTATED INITIAL ORDER**

**(amending the Initial Order dated March 27, 2024)**

**THIS APPLICATION**, made by the Applicants, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of Sulakhan Johal sworn March 26, 2024 and the Exhibits thereto (the "**Johal Affidavit**"), the affidavit of Randy Benson sworn April 2, 2024 and the Exhibits thereto (the "**Benson Affidavit**"), the pre-filing report of the proposed monitor, Ernst & Young Inc., dated March 27, 2024 (the "**Pre-Filing Report**"), the first report of Ernst & Young Inc., in its capacity as court-appointed monitor (the "**Monitor**") dated April 4, 2024 (the "**First Report**"), and on being advised that the secured creditors who are likely to be affected by the charges created herein were given notice, and on hearing the submissions of counsel for the Applicants and the limited partnerships listed in Schedule "A" hereto (the "**Limited Partnerships**" and collectively with the Applicants, the "**Pride Entities**"), the Monitor, Royal Bank of Canada (the "**DIP Agent**") as administrative agent for the lenders (the "**DIP Lenders**") under the DIP Term Sheet (as defined below) and such other counsel that were present, and no one

-2-

else appearing although duly served as appears from the affidavit of service of Puya Fesharaki sworn April 2, 2024 and the affidavit of service of Nancy Thompson sworn April 4, 2024, and on reading the consent of the Monitor to act as the monitor,

**SERVICE AND INTERPRETATION**

1.      **THIS COURT ORDERS** that the time of service of the Notice of Application, the Application Record, the Motion Record, the Pre-Filing Report, and the First Report is hereby abridged and validated so that this Application and Motion are properly returnable today and hereby dispenses with further service thereof.

2.      **THIS COURT ORDERS** that, with the exception of paragraphs 58 and 61, references in this Order to the "date of this Order", the "date hereof" or similar phrases refer to the date the Initial Order of this Court that was granted in these proceedings, being March 27, 2024 (the "**Initial Order**").

**APPLICATION**

3.      **THIS COURT ORDERS AND DECLARES** that the Applicants are companies to which the CCAA applies. Although not Applicants, the Limited Partnerships shall enjoy the benefits of the protections and authorizations provided by this Order.

**PLAN OF ARRANGEMENT**

4.      **THIS COURT ORDERS** that the Applicants shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "**Plan**").

**POSSESSION OF PROPERTY AND OPERATIONS**

5.      **THIS COURT ORDERS** that the Pride Entities shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof and insurance proceeds (the "**Property**"). For greater certainty, "Property" does not include any vehicles or equipment, vehicle or equipment certificates of title, leases and other similar agreements or contracts, lease and other similar agreement or contract payments or receipts, proceeds of sale, and all related rights therein and

-3-

proceeds (including insurance proceeds) thereof, including all amounts on deposit in or credited to accounts in respect thereof, which is owned by and the property of any party to a Securitization Agreement (as defined in the Johal Affidavit) (the "**Securitization Parties**") or other third party including any such property held by the Pride Entities in trust for the benefit of any Securitization Party or other third party (the "**Securitization Party Assets**"). Subject to further Order of this Court, the Pride Entities shall continue to carry on business in a manner consistent with the preservation of their business (the "**Business**") and the Property.  The Pride Entities shall be authorized and empowered to continue to retain and employ the employees, Independent Contractors (as defined below) consultants, agents, experts, accountants, tax consultants, counsel and such other persons (collectively, the "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order. Nothing in this paragraph 5 or this Order shall exempt any Securitization Party Assets from being subject to the Governance Protocol (as defined in and attached to the Protocols Order granted by this Court in these proceedings on April 5, 2024 (the "**Protocols Order**")).

6.     **THIS COURT ORDERS** that, subject to the Protocols (as defined in the Protocols Order), the Pride Entities shall be entitled to continue to utilize the central cash management system currently in place (including, for greater certainty, intercompany transfers from one Pride Entity to another Pride Entity approved by the Monitor) as described in the Johal Affidavit or replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Pride Entities of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Persons (as hereinafter defined) other than the Pride Entities, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System from and after the date of this Order.

-4-

7.    **THIS COURT ORDERS** that the Pride Entities shall be entitled but not required to pay the following expenses whether incurred prior to, on or after the date of this Order:

(a)    all outstanding and future wages, salaries, commissions, employee benefits, contributions in respect of retirement or other benefit arrangements, vacation pay and expenses payable prior to, on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements;

(b)    all outstanding and future amounts invoiced to any of the Pride Entities from those independent contractors (including, but not limited to, those contractors or subcontractors that provide truck driving, logistics, maintenance or office support) (the "**Independent Contractors**") retained by any of the Pride Entities, payable prior to, on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing payment arrangements (which for greater certainty, shall include payment to Independent Contractors through third party staffing agencies where applicable);

(c)    the fees and disbursements of any Assistants retained or employed by the Pride Entities in respect of these proceedings, at their standard rates and charges;

(d)    payment for fuel supplied to any of the Pride Entities either prior to, on or following the date of this Order; and

(e)    with the consent of the Monitor and the CRO and in accordance with the DIP Budget (as defined in the First Report), amounts owing by any of the Pride Entities prior to the date of this Order with respect to goods, services or tolls provided to or incurred by the Pride Entities, if, in the opinion of the Pride Entities, it is necessary to preserve the value of the Property and the Business of any of the Pride Entities, or to facilitate the Restructuring (as defined below) by any of the Pride Entities.

8.    **THIS COURT ORDERS** that, except as otherwise provided to the contrary herein, the Pride Entities shall be entitled but not required to pay all reasonable expenses incurred by the Pride

-5-

Entities in carrying on the Business in the ordinary course after this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a) all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), but with respect to such insurance, the Pride Entities shall be entitled to pay premiums that accrued, but were unpaid, prior to the date of this Order, maintenance and security services; and

(b) payment for goods or services supplied to any of the Pride Entities on or following the date of this Order.

9. **THIS COURT ORDERS** that the Pride Entities shall remit, in accordance with legal requirements, or pay:

(a) any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, (iv) income taxes, (v) statutory deductions in the United States, and (vi) 401(k) contributions in respect of employees domiciled in the United States;

(b) all goods and services taxes, harmonized sales taxes or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by any of the Pride Entities in connection with the sale of goods and services by any of the Pride Entities, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order; and

(c) any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors and which are attributable to or in respect of the carrying on of the Business by the Pride Entities.

-6-

10.    **THIS COURT ORDERS** that until a real property lease is disclaimed or resiliated in accordance with the CCAA, the Pride Entities shall pay all amounts constituting rent or payable as rent under real property leases (other than in respect of real property leased from one Pride Entity to another Pride Entity) (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the landlord under the lease) or as otherwise may be negotiated between the applicable Pride Entities and the respective arms' length landlord from time to time ("**Rent**"), for the period commencing from and including the date of this Order, twice-monthly in equal payments on the first and fifteenth day of each month, in advance (but not in arrears). On the date of the first of such payments, any Rent relating to the period commencing from and including the date of this Order shall also be paid.

11.    **THIS COURT ORDERS** that, except as specifically permitted herein, the Pride Entities are hereby directed, until further Order of this Court: (a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by any of the Pride Entities to any of their creditors as of this date; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of the Property, other than in the ordinary course of the Business; and (c) to not grant credit or incur liabilities except in the ordinary course of the Business.

12.    **THIS COURT ORDERS** that, notwithstanding paragraph 11 herein, the Pride Entities shall be entitled to remit the following amounts to their creditors and Securitization Parties in accordance with, and subject to, the Protocols:

(a)    amounts collected by Tpine Leasing Capital Corporation or Tpine Leasing Capital LP in respect of vehicles, trailers, equipment and other personal property leased to third party customers or in respect of Securitization Party Assets, in the ordinary course of the Business; and

(b)    amounts collected by any of the Pride Entities with respect to the sale of vehicles, trailers, or equipment as contemplated in paragraph 13 herein, in the ordinary course of the Business.

**RESTRUCTURING**

13.     **THIS COURT ORDERS** that each of the applicable Pride Entities shall, subject to such requirements as are imposed by the CCAA and the Protocols, have the right to sell vehicles, trailers, equipment or other equipment owned by them in the ordinary course of the Business.  For greater certainty, the Pride Entities shall not sell Securitization Party Assets, or Property in which a Securitization Party or other Person has financed pursuant to the books and records of the Pride Entities, without the written consent of the applicable Securitization Party or Person.

14.     **THIS COURT ORDERS** that each of the applicable Pride Entities shall, with the approval of the Monitor and CRO and upon notice to the DIP Agent, have the right to transition and relinquish servicing and other duties in respect of Securitization Party Assets (including relinquishing possession of any vehicles or equipment that are Securitization Party Assets and/or Property where Securitization Parties have a first-ranking security interest) pursuant to arrangements satisfactory to the Pride Entities and the applicable Securitization Party, or further order of the Court.

15.     **THIS COURT ORDERS** that each of the Pride Entities shall, subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the Definitive Documents (as hereinafter defined), have the right to:

(a)     permanently or temporarily cease, downsize or shut down any of its Business or operations;

(b)     list for sale its owned real properties, subject to the Real Estate Monetization Plan and Intercompany and Unsecured Creditor Claims Preservation Protocol (each as defined in the Protocols Order), provided that the applicable Pride Entity shall seek an order from the Court approving any such sale;

(c)     terminate the employment of such of its employees or temporarily lay off such of its employees as it deems appropriate;

(d)     terminate the engagement of any of its Independent Contractors as it deems appropriate; and

-8-

(e)     pursue all avenues of refinancing of its Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material refinancing,

all of the foregoing to permit the Pride Entities to proceed with an orderly restructuring of the Business (the "**Restructuring**").

**LEASED PREMISES**

16.     **THIS COURT ORDERS** that the applicable Pride Entities shall provide each of the relevant landlords with notice of the applicable Pride Entity's intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal.  The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes such Pride Entity's entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and the applicable Pride Entity, or by further Order of this Court upon application by the applicable Pride Entity on at least two (2) days notice to such landlord and any such secured creditors. If the applicable Pride Entity disclaims or resiliates the lease governing such leased premises in accordance with Section 32 of the CCAA, it shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer or resiliation of the lease shall be without prejudice to such Pride Entity's claim to the fixtures in dispute.

17.     **THIS COURT ORDERS** that if a notice of disclaimer or resiliation is delivered pursuant to section 32 of the CCAA, then (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the applicable Pride Entity and the Monitor 24 hours' prior written notice, and (b) at the effective time of the disclaimer or resiliation, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the applicable Pride Entity in respect of such lease or leased premises, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

**NO PROCEEDINGS AGAINST THE PRIDE ENTITIES, THE BUSINESS OR THE PROPERTY**

18.     **THIS COURT ORDERS** that until and including June 30, 2024, or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**" and collectively, the "**Proceedings**") shall be commenced or continued against or in respect of any of the Pride Entities, any of those additional parties listed on Schedule "A" hereto (the "**Additional Stay Parties**"), the Monitor or any of their respective employees, advisors or representatives acting in such capacities, or affecting the Business or the Property, except with the prior written consent of the Pride Entities, RC Benson Consulting Inc., in its capacity as Chief Restructuring Officer (the "**CRO**") and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of any of the Pride Entities, any of the Additional Stay Parties or any of their respective employees, advisors or representatives acting in such capacities, or affecting the Business or the Property, are hereby stayed and suspended pending further Order of this Court or the prior written consent of the Pride Entities, the CRO and Monitor.

19.     **THIS COURT ORDERS** that during the Stay Period, no Proceeding shall be commenced or continued against or in respect of Sulakhan Johal, Jasvir Johal and/or Amrinder Johal (collectively, the "**Personal Guarantors**"), or against or in respect of any of their current or future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate, and including all proceeds thereof (collectively, the "**Personal Guarantors Property**") with respect to any guarantee, contribution or indemnity obligation, liability or claim in respect of or that relates to any agreement involving any of the Pride Entities or the obligations, liabilities and claims of and against any of the Pride Entities (collectively, the "**Related Claims**"), except with the prior written consent of the Pride Entities, the CRO and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Personal Guarantors or the Personal Guarantors Property in respect of the Related Claims are hereby stayed and suspended pending further Order of this Court or the prior written consent of the Pride Entities, the CRO and the Monitor.

20.     **THIS COURT ORDERS** that, to the extent any prescription, time or limitation period relating to any Proceeding against or in respect of the Additional Stay Parties, or with respect to

any Related Claims against or in respect of the Personal Guarantors or the Personal Guarantors Property that is stayed pursuant to this Order may expire, the term of such prescription, time or limitation period shall hereby be deemed to be extended by a period equal to the Stay Period.

**NO EXERCISE OF RIGHTS OR REMEDIES**

21.    **THIS COURT ORDERS** that during the Stay Period, all rights and remedies of any individual, firm, corporation, organization, governmental unit, body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of any of the Pride Entities or the Monitor, or their respective employees, advisors and representatives acting in such capacities, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Pride Entities, the CRO and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower any of the Pride Entities to carry on any business which they are not lawfully entitled to carry on, (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by section 11.1 of the CCAA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

**NO INTERFERENCE WITH RIGHTS**

22.    **THIS COURT ORDERS** that during the Stay Period, no Person shall accelerate, suspend, discontinue, fail to honour, alter, interfere with, repudiate, rescind, terminate or cease to perform any right, renewal right, contract, agreement, lease, sublease, licence, authorization or permit in favour of or held by any of the Pride Entities, except with the written consent of the Pride Entities, the CRO and the Monitor, or leave of this Court.

**CONTINUATION OF SERVICES**

23.    **THIS COURT ORDERS** that during the Stay Period, all Persons having oral or written agreements with any of the Pride Entities or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, cash management services, payroll services, insurance, transportation or logistics services, utility or other services to any of the Pride Entities or the Business, are hereby restrained until further Order of this Court from discontinuing, altering,

-11-

interfering with, suspending or terminating the supply of such goods or services as may be required by any of the Pride Entities, and that each of the Pride Entities shall be entitled to the continued use of its current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the applicable Pride Entities in accordance with the normal payment practices of the applicable Pride Entities or such other practices as may be agreed upon by the supplier or service provider and each of the applicable Pride Entities and the Monitor, or as may be ordered by this Court.

**NON-DEROGATION OF RIGHTS**

24.    **THIS COURT ORDERS** that, notwithstanding anything else in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of lease or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to any of the Pride Entities.  Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

**NO PRE-FILING VERSUS POST-FILING SET-OFF**

25.    **THIS COURT ORDERS** that no Person shall be entitled to set off any amounts that (i) are or may become due to any of the Pride Entities in respect of obligations arising prior to the date hereof with any amounts that are or may become due from any of the Pride Entities in respect of obligations arising on or after the date of this Order, or (ii) are or may become due from any of the Pride Entities in respect of obligations arising prior to the date hereof with any amounts that are or may become due to any of the Pride Entities in respect of obligations arising on or after the date of this Order, in each case without the prior written consent of the applicable Pride Entity, the CRO and the Monitor or further Order of this Court.

**PROCEEDINGS AGAINST DIRECTORS AND OFFICERS**

26.    **THIS COURT ORDERS** that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of any of the Pride Entities with respect to any

-12-

claim against the directors or officers that arose before the date hereof and that relates to any obligations of any of the Pride Entities whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Pride Entities, if one is filed, is sanctioned by this Court or is refused by the creditors of the Pride Entities or this Court.

**DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE**

27.    **THIS COURT ORDERS** that the Pride Entities shall indemnify their directors and officers against obligations and liabilities that they may incur as directors or officers of the Pride Entities after the commencement of the within proceedings, except to the extent that, with respect to any officer or director, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

28.    **THIS COURT ORDERS** that the directors and officers of the Pride Entities shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property of the Pride Entities, which charge shall not exceed an aggregate amount of $7.4 million, as security for the indemnity provided in paragraph 27 of this Order.  The Directors' Charge shall have the priority set out in paragraphs 60 and 61 herein.

29.    **THIS COURT ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Pride Entities' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 27 of this Order.

**APPOINTMENT OF CHIEF RESTRUCTURING OFFICER**

30.    **THIS COURT ORDERS** that RC Benson Consulting Inc. is hereby appointed as CRO, an officer of this Court, over and in respect of the Pride Entities and shall have the powers and obligations set out in the engagement agreement between the Pride Entities and the CRO dated February 24, 2024 (the "**CRO Agreement**").

-13-

31.    **THIS COURT ORDERS** that the CRO Agreement is approved *nunc pro tunc* and the Pride Entities are hereby authorized to perform all of their obligations pursuant to the CRO Agreement.

32.    **THIS COURT ORDERS** that, subject to the terms of this Order, the CRO is hereby authorized to assist the Pride Entities and to do all things, carry out all actions and perform all duties described in the CRO Agreement and, without limiting the foregoing, the CRO is hereby empowered to do the following:

(a)    take any and all steps for and in the name of, and on behalf of, the Pride Entities necessary to carry out the Restructuring;

(b)    communicate with and provide information to the Monitor and report to this Court at such times and intervals as the CRO may deem appropriate with respect to matters relating to the Property, the Business, the Restructuring and such other matters as may be relevant to the proceedings herein;

(c)    perform such other duties as are required by this Order or by this Court from time to time, including but not limited to, such duties as set forth in the Protocols;

(d)    take all such steps and actions, enter into and execute all such agreements and documents in the name of and on behalf of the Pride Entities and incur such expenses and obligations necessary or incidental to the exercise of the foregoing powers; and

provided that each of the foregoing actions, agreements, expenses and obligations shall be construed to be those of the Pride Entities and not of the CRO nor any of its employees, representatives or agents.

33.    **THIS COURT ORDERS** that the Pride Entities shall (a) advise the CRO of all material steps taken by the Pride Entities in these proceedings, and (b) cooperate fully with and provide the CRO with the assistance necessary to enable the CRO to exercise its powers and discharge its obligations under the CRO Agreement, this Order and any other orders issued in these proceedings.

34.    **THIS COURT ORDERS** that the CRO shall not take possession of the Property and shall not, by fulfilling its obligations hereunder or under the CRO Agreement, be deemed to have taken

-14-

or maintained possession or control of the Business or the Property, or any part thereof. Without limiting the foregoing, the CRO shall not, as a result of this Order or anything done pursuant to its duties and powers under this Order or the CRO Agreement, be deemed to be in Possession (as defined below) of any Property within the meaning of any Environmental Legislation (as defined below).

35.     **THIS COURT ORDERS** that the CRO shall consult with the Monitor regarding all material issues relating to the Business and these proceedings as reasonably determined by the CRO.

36.     **THIS COURT ORDERS** that, in addition to the rights and protections afforded to the CRO as an officer of this Court, neither the CRO nor any employee or agent of the CRO shall be deemed to be a director, *de facto* director, employee or trustee of any of the Pride Entities.

37.     **THIS COURT ORDERS** that neither the CRO nor any employee or agent of the CRO shall incur any liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any liability or obligation incurred as a result of any gross negligence or wilful misconduct on its or their part; provided that any liability of the CRO hereunder shall in no event exceed the quantum of the fees paid to the CRO.

38.     **THIS COURT ORDERS** that the Pride Entities shall indemnify and hold harmless the CRO and any employees or agents of the CRO who may assist the CRO with the exercise of its powers and obligations under this Order (collectively with the CRO, the "**CRO Indemnified Parties**") with respect to any liability or obligation that the CRO Indemnified Parties may incur as a result of the appointment of the CRO or the fulfilling of the CRO's duties in carrying out the provisions of this Order, including any claims or liabilities subject to indemnification pursuant to the CRO Agreement, except to the extent that the obligation or liability was incurred as a result of the CRO Indemnified Parties' gross negligence or wilful misconduct. The CRO Indemnified Parties shall be treated as unaffected and the foregoing indemnity shall be treated as unaffected and may not be compromised in any Plan filed by the Pride Entities under the CCAA, or any proposal filed by the Pride Entities under the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c.B-3, as amended (the "**BIA**").

-15-

39.    **THIS COURT ORDERS** that no action or other proceeding shall be commenced directly, or by way of counterclaim, third party claim or otherwise, against or in respect of the CRO Indemnified Parties, and all rights and remedies of any Person against or in respect of the CRO Indemnified Parties are hereby stayed and suspended, except with the written consent of the CRO and the Monitor or with leave of this Court on notice to the Pride Entities, the Monitor and the CRO. Notice of any such motion seeking leave of this Court shall be served upon the Pride Entities, the Monitor and the CRO at least seven (7) days prior to the return date of any such motion for leave.

40.    **THIS COURT ORDERS** that the CRO may resign or the appointment of the CRO may be terminated by further order of this Court at any time.

41.    **THE COURT ORDERS** that the Pride Entities' indemnity in favour of the CRO Indemnified Parties shall survive termination, replacement or discharge of the CRO.

42.    **THE COURT ORDERS** that the appointment of the CRO and the granting of the powers and responsibilities of the CRO hereunder will not constitute the sale or disposition of the Business or the sale or disposition of any of the Property and such Business and Property will continue to be the Business and Property of the Pride Entities unless and until sold in whole or in part to a purchaser.

**APPOINTMENT OF MONITOR**

43.    **THIS COURT ORDERS** that Ernst & Young Inc. is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Pride Entities with the powers and obligations set out in the CCAA or set forth herein and that the Pride Entities and their shareholders, officers, directors, and Assistants and the CRO shall advise the Monitor of all material steps taken by the Pride Entities pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

44.    **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

-16-

(a)    monitor the Pride Entities' receipts and disbursements;

(b)    report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(c)    assist the Pride Entities, to the extent required by the Pride Entities or the DIP Agent, in their dissemination to the DIP Agent and its counsel of financial and other information as agreed to between the Pride Entities and the DIP Agent, which may be used in these proceedings, including reporting on a basis to be agreed with the DIP Agent;

(d)    liaise and consult with the Pride Entities, to the extent required, with respect to all matters relating to the Property, the Business, the Restructuring and such other matters as may be relevant to these proceedings;

(e)    advise the Pride Entities in the preparation of their cash flow statements and reporting required by the DIP Agent, which information shall be reviewed with the Monitor and CRO and delivered to the DIP Agent and its counsel on a periodic basis as agreed to by the DIP Agent;

(f)    advise the Pride Entities in their development of the Plan and any amendments to the Plan;

(g)    assist the Pride Entities, to the extent required by the Pride Entities and CRO, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(h)    assist the Pride Entities and the Court in assessing the validity, enforceability and relative priority of any security, ownership or other interest which any Person (including any creditor or Securitization Party) may assert in or to any Property or other property in which the Pride Entities may have an interest;

(i)    have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Pride

-17-

Entities, to the extent that is necessary to adequately assess the Pride Entities' business and financial affairs or to perform its duties arising under this Order;

(j)    perform its duties set out in the Protocols;

(k)    be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

(l)    perform such other duties as are required by this Order or by this Court from time to time.

45.    **THIS COURT ORDERS** that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

46.    **THIS COURT ORDERS** that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation.  The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

47.    **THIS COURT ORDERS** that the Monitor shall provide any creditor of the Pride Entities with information provided by the Pride Entities in response to reasonable requests for information

-18-

made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by any of the Pride Entities is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Pride Entities may agree.

48.     **THIS COURT ORDERS** that, in addition to the rights and protections afforded to the Monitor under the CCAA or as an officer of this Court, neither the Monitor nor its employees, advisors and other representatives acting in such capacities shall incur any liability or obligation as a result of the Monitor's appointment or the carrying out by it of the provisions of this Order or the Protocols, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded to the Monitor by the CCAA or any applicable legislation.

49.     **THIS COURT ORDERS** that the Monitor, counsel to the Monitor (including both U.S. and Canadian counsel for all purposes of this Order), counsel to the Pride Entities (including both U.S. and Canadian counsel for all purposes of this Order), the CRO, and Canadian counsel to the Pride Entities' board of directors shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, whether incurred prior to, on, or subsequent to the date of this Order, by the Pride Entities as part of the costs of these proceedings. The Pride Entities are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor, the Pride Entities' counsel, the CRO, and Canadian counsel to the Pride Entities' boards of directors on a bi-weekly basis or pursuant to such other arrangements agreed to between the Pride Entities and such parties.

50.     **THIS COURT ORDERS** that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

**DIP FINANCING**

51.     **THIS COURT ORDERS** that the Pride Entities are hereby authorized and empowered to obtain and borrow pursuant to a credit facility from the DIP Lenders in order to finance the ordinary course working capital and other general corporate purposes of the Pride Entities,

provided that borrowings under such credit facility shall not exceed a principal amount of $30 million unless permitted by further Order of this Court.

52.     **THIS COURT ORDERS** that such credit facility shall be on the terms and subject to the conditions set forth in the Debtor-in Possession Financing Term Sheet between the Pride Entities, the DIP Agent and the DIP Lenders dated as of April 1, 2024 and attached as Exhibit "D" to the Benson Affidavit (as may be amended or amended and restated from time to time, the "**DIP Term Sheet**").

53.     **THIS COURT ORDERS** that the Pride Entities are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, with the DIP Term Sheet, the "**Definitive Documents**"), as are contemplated by the DIP Term Sheet or as may be reasonably required by the DIP Agent pursuant to the terms thereof, and the Pride Entities are hereby authorized and directed to pay and perform all of their indebtedness, interest, fees, liabilities and obligations to the DIP Agent and the DIP Lenders under and pursuant to the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

54.     **THIS COURT ORDERS** that the DIP Agent for and on behalf of the DIP Lenders shall be entitled to the benefit of and is hereby granted a charge (the "**DIP Lenders' Charge**") on the Pride Entities' Property, which shall not secure any obligation that exists before this Order is made. The DIP Lenders' Charge shall have the priority set out in paragraphs 60 and 61 hereof.

55.     **THIS COURT ORDERS** that, notwithstanding any other provision of this Order:

(a)     the DIP Agent for and on behalf of the DIP Lenders may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the DIP Lenders' Charge or any of the Definitive Documents;

(b)     upon the occurrence of an event of default under the Definitive Documents, the DIP Agent or the DIP Lenders, as applicable, may immediately cease making advances to the Pride Entities and, upon three (3) banking days' notice to the Pride Entities, the CRO and the Monitor, may exercise any and all of their rights and remedies against the

-20-

Pride Entities or the Property under or pursuant to the Definitive Documents and the DIP Lenders' Charge, including without limitation, to set off and/or consolidate any amounts owing by the DIP Lenders to the Pride Entities against the obligations of the Pride Entities to the DIP Lenders under or pursuant to the Definitive Documents or the DIP Lenders' Charge, to make demand, accelerate payment and give other notices, or to apply to this Court for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against any of the Pride Entities and for the appointment of a trustee in bankruptcy of any of the Pride Entities; and

(c)    the foregoing rights and remedies of the DIP Agent and the DIP Lenders shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of any of the Pride Entities or their Property.

56.    **THIS COURT ORDERS AND DECLARES** that the DIP Agent and the DIP Lenders shall be treated as unaffected in any Plan filed by the Pride Entities under the CCAA, or any proposal filed by the Pride Entities under the BIA, with respect to any advances made under the Definitive Documents.

57.    **THIS COURT ORDERS** that this Order is subject to provisional execution and that if any of the provisions of this Order in connection with the DIP Term Sheet, the Definitive Documents or the DIP Lenders' Charge shall subsequently be stayed, modified, varied, amended, reversed or vacated in whole or in part (collectively, a "**Variation**"), such Variation shall not in any way impair, limit or lessen the priority, protections, rights or remedies of the DIP Agent and the DIP Lenders, whether under this Order (as made prior to the Variation), the DIP Term Sheet the Definitive Documents or the DIP Lenders' Charge with respect to any advances made or obligations incurred prior to the DIP Agent receiving notice of the Variation, and the DIP Agent and the DIP Lenders shall be entitled to rely on this Order as issued (including, without limitation, the DIP Lenders' Charge) for all advances so made and other obligations set out in the DIP Term Sheet or the Definitive Documents.

**INTERCOMPANY ADVANCES CHARGE**

58.    **THIS COURT ORDERS** that to the extent that a Pride Entity (the "**Lending Entity**") after the date of this Order, makes any payment to any Pride Entity (such Pride Entity, a "**Recipient**

-21-

Entity"), such Lending Entity is hereby granted a charge (the "**Intercompany Advances Charge**") on all of the Property of the Recipient Entity in the amount of such payment or obligation or transfer, provided that, in relation to any payment(s) proposed to or from a R/E HoldCo (as such term is defined in the Johal Affidavit) by or to a Pride Entity that would be subject to the Intercompany Advances Charge, notice setting out sufficient details, including the basis for such payment, is provided to any relevant third party mortgagee and the DIP Agent in advance of making any such payment(s). The Intercompany Advances Charge shall have the priority set out in paragraphs 60 and 61 hereof.

**ADMINISTRATION CHARGE**

59.    **THIS COURT ORDERS** that the Monitor, counsel to the Monitor, counsel to the Pride Entities, the CRO, and Canadian counsel to the Pride Entities' boards of directors shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property of the Pride Entities, which charge shall not exceed an aggregate amount of $3 million as security for their professional fees and disbursements incurred at their standard rates and charges, both before and after the making of this Order in respect of these proceedings. The Administration Charge shall have the priority set out in paragraphs 60 and 61 herein.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

60.    **THIS COURT ORDERS** that the priorities of the Administration Charge, the Intercompany Advances Charge, the DIP Lenders' Charge and the Directors' Charge (collectively, the "**Charges**"), as among them, shall be as follows:

> First – Administration Charge (to the maximum amount of $3 million);
>
> Second – Intercompany Advances Charge;
>
> Third - DIP Lenders' Charge; and
>
> Fourth – Directors' Charge (to the maximum amount of $7.4 million).

61.    **THIS COURT ORDERS** that each of the Charges shall constitute a charge on the Property and that such Charges shall rank in priority to all other security interests, trusts, liens, charges and encumbrances, and claims of secured creditors, statutory or otherwise (collectively,

-22-

"**Encumbrances**") in favour of any Person; provided that (a) the DIP Lenders' Charge shall be subordinate to (i) any validly perfected and enforceable security interest of third party financers in specific vehicle and lease collateral and such proceeds of collateral which, as of the date of this Order, ranks in priority to the Security as defined in the Existing Credit Agreement (as defined in the Benson Affidavit); (ii) any valid and enforceable mortgage in favour of a third party mortgagee which, as of the date of this Order, is duly registered on title to real properties of the Pride Entities and ranks in priority to the Security; and (iii) until and including April 19, 2024 which may be extended upon further Order of this Court, any validly perfected and enforceable security interest of Triumph Financial Services LLC in the Property of Arnold Transportation Services, Inc. in the maximum amount of $3 million; and (b) the Directors' Charge shall be subordinate to: (i) any validly perfected and enforceable security interest of third party financers in specific vehicle and lease collateral and such proceeds of collateral; (ii) any valid and enforceable mortgage in favour of a third party mortgagee, in each case including, for greater certainty, such interests in favour of the Administrative Agent and Lenders (each as defined in the Existing Credit Agreement) under the Security, and (iii) until and including April 19, 2024 which may be extended upon further Order of this Court, any validly perfected and enforceable security interest of Triumph Financial Services LLC in the Property of Arnold Transportation Services, Inc. in the maximum amount of $3 million.

62.     **THIS COURT ORDERS** that the filing, registration or perfection of the Charges shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

63.     **THIS COURT ORDERS** that except as otherwise expressly provided for herein, or as may be approved by this Court, the Pride Entities shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Charges unless the Pride Entities also obtain the prior written consent of the Monitor, the CRO, the DIP Agent on behalf of the DIP Lenders, any relevant third party mortgagees with a valid and enforceable mortgage on Property of R/E HoldCos which, as of the date of this Order, is duly registered on title to real properties of Pride Entities and ranks in priority to the Security, and the beneficiaries of the Charges, or further Order of this Court.

-23-

64.    **THIS COURT ORDERS** that the Charges, the agreements and other documents governing or otherwise relating to the obligations secured by the Charges, including the Definitive Documents, shall not be rendered invalid or unenforceable and the rights and remedies of the chargees (including the DIP Agent and DIP Lenders) entitled to the benefit of the Charges (collectively, the "**Chargees**") shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) or receivership order(s) issued pursuant to BIA, or any bankruptcy order or receivership order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds any of the Pride Entities, and notwithstanding any provision to the contrary in any Agreement:

   (a)    neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the Definitive Documents shall create or be deemed to constitute a breach by any of the Pride Entities of any Agreement to which any of them is a party;

   (b)    none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Pride Entities entering into the DIP Term Sheet, the creation of the Charges, or the execution, delivery or performance of the Definitive Documents; and

   (c)    the payments made by the Pride Entities pursuant to this Order or the Definitive Documents, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

65.    **THIS COURT ORDERS** that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Pride Entities' interest in such real property leases.

-24-

**SERVICE AND NOTICE**

66.      **THIS COURT ORDERS** that the Monitor shall (i) without delay, publish in The Globe and Mail (National Edition) a notice containing the information prescribed under the CCAA, (ii) within five (5) days after the date of this Order, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against of the Pride Entities of more than $1000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with subsection 23(1)(a) of the CCAA and the regulations made thereunder, provided that the Monitor shall not make the claims, names and addresses of any creditors of the Pride Entities who are individuals publicly available.

67.      **THIS COURT ORDERS** that the Guide Concerning Commercial List E-Service (the "**Service Guide**") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Service Guide (which can be found on the Commercial List website at https://www.ontariocourts.ca/scj/practice/regional-practice-directions/eservice-commercial/) shall be valid and effective service.  Subject to Rule 17.05 this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the Rules of Civil Procedure. Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 13 of the Service Guide, service of documents in accordance with the Service Guide will be effective on transmission.  This Court further orders that a Case Website shall be established in accordance with the Service Guide with the following URL: www.ey.com/ca/pridegroup (the "**Monitor's Website**").

68.      **THIS COURT ORDERS** that the Monitor shall create, maintain and update as necessary a list of all Persons appearing in person or by counsel in this proceeding (the "**Service List**"). The Monitor shall post the Service List, as may be updated from time to time, on the Monitor's Website as part of the public materials to be recorded thereon in relation to this proceeding. Notwithstanding the foregoing, the Monitor shall have no liability in respect of the accuracy of or the timeliness of making any changes to the Service List.

69.      **THIS COURT ORDERS** that if the service or distribution of documents in accordance with the Service Guide or the CCAA and the regulations thereunder is not practicable, the Pride

-25-

Entities and the Monitor and their respective counsel and agents are at liberty to serve or distribute this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or facsimile or electronic transmission to the Pride Entities' creditors or other interested parties at their respective addresses (including e-mail addresses) as last shown in the books and records of the Pride Entities and that any such service or distribution by courier, personal delivery or facsimile transmission shall be deemed to be received (a) if sent by courier, on the next business day following the date of forwarding thereof, (b) if delivered by personal delivery or facsimile or other electronic transmission, on the day so delivered, and (c) if sent by ordinary mail, on the third business day after mailing. With respect to any claimant who has filed a lien under the *Repair and Storage Lien Act* under the Personal Property Registry in a jurisdiction in Canada against any of the Pride Entities, the service of the Notice of Application in the manner prescribed above, together with a cover letter advising such party of these proceedings, and directing such party to the Monitor's Website to monitor for future updates on these proceedings shall constitute sufficient service for the purposes of this Order and all future motions and matters in respect of these proceedings.

**FOREIGN PROCEEDINGS**

70.     **THIS COURT ORDERS** that Mr. Randy Benson on behalf of the CRO is hereby authorized and empowered, but not required, to act as the foreign representatives (each, in such capacity, the "**Foreign Representative**") in respect of the within proceedings for the purpose of having these proceedings recognized and approved in a jurisdiction outside of Canada.

71.     **THIS COURT ORDERS** that the Foreign Representative is hereby authorized to apply for foreign recognition and approval of these proceedings, as necessary, in any jurisdiction outside of Canada, including in the United States pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

**SEALING**

72.     **THIS COURT ORDERS** that the Confidential Appendix "A" to the Pre-Filing Report containing the unredacted CRO Engagement Agreement is hereby sealed pending further Order of the Court.

**GENERAL**

73. **THIS COURT ORDERS** that the Pride Entities, the CRO or the Monitor may from time to time apply to this Court for advice and directions in the discharge of their powers and duties hereunder.

74. **THIS COURT ORDERS** that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Pride Entities, the Business or the Property.

75. **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Pride Entities, the CRO, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Pride Entities, the CRO, and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the CRO and/or Monitor in any foreign proceeding, or to assist the Pride Entities, the CRO and the Monitor and their respective agents in carrying out the terms of this Order.

76. **THIS COURT ORDERS** that the Foreign Representative be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and the Foreign Representative is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

77. **THIS COURT ORDERS** that any interested party (including the Pride Entities, the CRO and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to the Service List and any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order, provided, however, that notwithstanding any amendment, variation or stay of this Order, the Chargees shall be entitled to rely on this Order as granted and on the Charges set forth in paragraphs 60 and 61 hereof with respect to any fees, expenses and disbursements incurred, advances or payments made and

-27-

obligations incurred, as applicable, between the date this Order and the date this Order may be amended, varied or stayed.

78.    **THIS COURT ORDERS** that the Initial Order is hereby amended and restated pursuant to this Order and this Order and all of its provisions are effective as of 12:01 a.m. (Eastern Time) on the date of this Order without the need for entry or filing.



2024.04.09 17:22:43 -04'00'

-28-

SCHEDULE "A"

## A. APPLICANTS

**Operating Entities**
*Canadian Operating Entities*
- PRIDE TRUCK SALES LTD.
- TPINE TRUCK RENTAL INC.
- PRIDE GROUP LOGISTICS LTD.
- PRIDE GROUP LOGISTICS INTERNATIONAL LTD.
- TPINE LEASING CAPITAL CORPORATION
- DIXIE TRUCK PARTS INC.
- PRIDE FLEET SOLUTIONS INC.
- TPINE FINANCIAL SERVICES INC.
- PRIDE GROUP EV SALES LTD.

*U.S. Operating Entities*
- TPINE RENTAL USA, INC.
- PRIDE GROUP LOGISTICS USA, CO.
- ARNOLD TRANSPORTATION SERVICES, INC.
- DIXIE TRUCK PARTS INC.
- TPINE FINANCIAL SERVICES CORP.
- PARKER TRANSPORT CO.
- PRIDE FLEET SOLUTIONS USA INC.

**Real Estate Holding Companies**
*Canadian Real Estate Holding Companies*
- 2029909 ONTARIO INC.
- 2076401 ONTARIO INC.
- 1450 MEYERSIDE HOLDING INC.
- 933 HELENA HOLDINGS INC.
- 30530 MATSQUI ABBOTSFORD HOLDING INC.
- 2863283 ONTARIO INC.
- 2837229 ONTARIO INC.
- 2108184 ALBERTA LTD.
- 12944154 CANADA INC.
- 13184633 CANADA INC.
- 13761983 CANADA INC.
- 102098416 SASKATCHEWAN LTD.
- 177A STREET SURREY HOLDING INC.
- 52 STREET EDMONTON HOLDING INC.
- 84 ST SE CALGARY HOLDINGS INC.
- 68TH STREET SASKATOON HOLDING INC.
- 3000 PITFIELD HOLDING INC.

-29-

*U.S. Real Estate Holding Companies*
- PGED HOLDING, CORP.
- HIGH PRAIRIE TEXAS HOLDING CORP.
- 131 INDUSTRIAL BLVD HOLDING CORP.
- 59TH AVE PHOENIX HOLDING CORP.
- DI MILLER DRIVE BAKERSFIELD HOLDING CORP.
- FRONTAGE ROAD HOLDING CORP.
- ALEXIS INVESTMENTS, LLC
- TERNES DRIVE HOLDING CORP.
- VALLEY BOULEVARD FONTANA HOLDING CORP.
- HIGHWAY 46 MCFARLAND HOLDING CORP.
- TERMINAL ROAD HOLDING, CORP.
- BISHOP ROAD HOLDING CORP.
- OLD NATIONAL HIGHWAY HOLDING CORP.
- 11670 INTERSTATE HOLDING, CORP.
- 401 SOUTH MERIDIAN OKC HOLDING CORP.
- 8201 HWY 66 TULSA HOLDING CORP.
- EASTGATE MISSOURI HOLDING CORP.
- FRENCH CAMP HOLDING CORP.
- 87TH AVENUE MEDLEY FL HOLDING CORP.
- LOOP 820 FORT WORTH HOLDING CORP.
- 162 ROUTE ROAD TROY HOLDING CORP.
- CRESCENTVILLE ROAD CINCINNATI HOLDING CORP.
- MANHEIM ROAD HOLDING CORP.
- 13TH STREET POMPANO BEACH FL HOLDING CORP.
- EAST BRUNDAGE LANE BAKERSFIELD HOLDING CORP.
- CORRINGTON MISSOURI HOLDING CORP.
- 963 SWEETWATER HOLDING CORP.
- OAKMONT DRIVE IN HOLDING CORP.

**Other Holding Companies**
*Other Canadian Holding Companies*
- 2692293 ONTARIO LTD.
- 2043002 ONTARIO INC.
- PRIDE GROUP HOLDINGS INC.
- 2554193 ONTARIO INC.
- 2554194 ONTARIO INC.
- PRIDE GROUP REAL ESTATE HOLDINGS INC.
- 1000089137 ONTARIO INC.

*Other U.S. Holding Companies*
- COASTLINE HOLDINGS, CORP.
- PARKER GLOBAL ENTERPRISES, INC.
- DVP HOLDINGS, CORP.

**B. LIMITED PARTNERSHIPS**

*U.S. Limited Partnerships*
- PRIDE TRUCK SALES L.P.
- TPINE LEASING CAPITAL L.P.
- SWEET HOME HOSPITALITY L.P.

**C. ADDITIONAL STAY PARTIES**

*Canadian Additional Stay Parties*
- BLOCK 6 HOLDING INC.
- 2500819 ONTARIO INC.

*U.S. and Other Additional Stay Parties*
- PERGOLA HOLDINGS, CORP.
- PRIDE GLOBAL INSURANCE COMPANY LTD.

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF **PRIDE GROUP HOLDINGS INC.** et al

(each, an "**Applicant**", and collectively, the "**Applicants**")

Court File No. CV-24-00717340-00CL

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceedings commenced at Toronto, Ontario

**AMENDED AND RESTATED INITIAL ORDER**

**THORNTON GROUT FINNIGAN LLP**
TD West Tower, Toronto-Dominion Centre
100 Wellington Street West, Suite 3200
Toronto, ON  M5K 1K7

**Leanne Williams (LSO #41877E)**
Tel: (416) 304-0060 / Email: lwilliams@tgf.ca

**Rachel Nicholson (LSO #68348V)**
Tel: (416) 304-1153 / Email: rnicholson@tgf.ca

**Puya Fesharaki (LSO #70588L)**
Tel: (416) 304-7979 / Email: pfesharaki@tgf.ca

Lawyers for the Applicants