**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br>Pride Group Holdings Inc., *et al.*[1]<br>Debtors in Foreign Proceedings. | Chapter 15<br>Case No. 24-10632 (CTG)<br>Jointly Administered |

**DECLARATION OF RANDALL BENSON IN SUPPORT OF MOTION OF THE FOREIGN REPRESENTATIVE FOR ENTRY OF AN ORDER GRANTING PROVISIONAL RELIEF IN CONNECTION WITH DEBTOR IN POSSESSION FINANCING AND CERTAIN PROTOCOLS PURSUANT TO SECTIONS 105(a) AND 1519 OF THE BANKRUPTCY CODE**

I, Randall Benson, pursuant to 28 U.S.C. § 1746, hereby declare (this "Declaration") under penalty of perjury under the laws of the United States, as follows:

1. I am the founder of RC Benson Consulting Inc, which was engaged on February 26, 2024 as the Chief Restructuring Officer of the Pride Group, a group of related companies comprising a trucking and logistics conglomerate that operates in Canada and the United States headquartered in Mississauga, Ontario, Canada (the "Pride Group").[2] I have over 20 years of experience managing complex restructuring situations. The Pride Group includes Pride Group Holdings Inc. and its affiliates that are debtors (the "Debtors") in these chapter 15 cases (the

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

[2] As used herein, "Pride Group" includes: (i) each of the "Applicants" listed in Schedule "A" to the A&R Initial Order; (ii) Pride Truck Sales L.P., TPine Leasing Capital L.P., and Sweet Home Hospitality L.P. ((i) and (ii) together, the "Pride Entities"); and (iii) Block 6 Holding Inc., 2500819 Ontario Inc., Pergola Holdings, Corp., and Pride Global Insurance Company Ltd. (the "Additional Stay Parties"). "Pride Group" does not include the following affiliated special-purpose securitization vehicles that do not engage in any business or activity other than acting as purchasers of securitized assets or issuers of asset-backed obligations under various securitization agreements: TPine USA Funding I LLC, TPine USA Funding II LLC, TPine USA Funding III LLC, TPine USA Funding IV LLC, TPine Canada Securitization L.P, and TPine Canada GP L.P. (collectively, the "Securitization SPVs"). The Securitization SPVs are not applicants in the CCAA Proceedings, are not Debtors in these Chapter 15 Cases, and no relief is sought with respect to these entities.

"Chapter 15 Cases"). The Debtors and certain of their affiliates are the subject of proceedings (the "CCAA Proceedings") under the Companies' Creditors Arrangement Act, pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"). I was appointed as the foreign representative of the Debtors (the "Foreign Representative") by the Canadian Court pursuant to the preliminary initial order dated March 27, 2024 (the "Initial Order").

2. Since my engagement on February 26, 2024, I have become familiar with the Pride Group's businesses, operations, and financial affairs, and I am ultimately responsible for the Debtors' restructuring, including the CCAA Proceedings and these Chapter 15 Cases. I am an individual over the age of 18 and, if called upon, could and would testify to the facts set forth in this Declaration. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by members of the Pride Group's management and professionals or learned from my review of relevant documents, or my opinion based upon my experience and knowledge of the Pride Group's industry, operations, and financial condition that I have acquired since my engagement.

3. I submit this Declaration in support of the *Motion of the Foreign Representative for Entry of an Order Granting Provisional Relief in Connection with Debtor in Possession Financing and Certain Protocols Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* (the "Motion").[3]

[3] Capitalized terms used in this Declaration but not otherwise defined shall have the meanings ascribed to them in the Motion.

## THE DIP FACILITY AND THE A&R INITIAL ORDER

4. After entry of the Initial Order and the filing of the Chapter 15 Petitions, certain entities in the Pride Group entered into a debtor-in-possession facility term sheet, dated as of April 1, 2024 (the "DIP Term Sheet") with its prepetition lenders under the Syndicated Facility (in such capacities, the "DIP Lenders") and Royal Bank of Canada, as administrative agent (in such capacity, the "DIP Agent"). A copy of the DIP Term Sheet is attached to the Motion as Exhibit B. Pursuant to the terms of the DIP Term Sheet, the DIP Lenders will make available to the DIP Borrowers a new term loan facility in aggregate principal amount not to exceed CAD$30 million. Subsequent advances under the DIP Facility are subject to finalization of definitive documentation that will be substantially on the same terms as the DIP Term Sheet (the "DIP Documentation").

5. Set forth on the table below are certain key terms of the DIP Term Sheet, including modifications made thereto by the A&R Initial Order.[4]

| Category | Summary Term |
|---|---|
| ***DIP Facility*** | • CAD$30 million multiple-advance term loan facility, including a CAD$6.5 million initial advance.<br>• Proceeds to be used in accordance with the DIP Budget and applicable orders of the Canadian Court and this Court. |
| ***DIP Budget*** | • DIP Borrowers shall provide to the DIP Agent a consolidated and, if requested by the DIP Agent, non-consolidated rolling 13-week detailed cash flow forecast in respect of the DIP Availment Borrowers.<br>• The DIP Budget shall be updated every two weeks beginning on April 12, 2024, including any variance on a line-by-line basis. |
| ***DIP Advances*** | • Advances under the DIP Facility require a written notice to be delivered by the applicable DIP Borrower to the DIP Agent. |

4 Capitalized terms used in this table but not otherwise defined shall have the meanings ascribed to them in the DIP Term Sheet. In the event of any inconsistency between the summary set forth herein and the DIP Term Sheet, the DIP Term Sheet shall govern.

| Category | Summary Term |
|---|---|
| | • Each Advance shall be in the minimum amount of CAD$500,000. |
| ***Interest*** | • Canadian Prime Rate from time to time in effect plus 250bps per annum. |
| ***Security*** | • To be secured by the "Security" as defined under the Syndicate Agreement, together with the DIP Charge. |
| ***DIP Charge*** | • All obligations of the DIP Borrowers under or in connection with the DIP Facility without limitation, all principal, accrued but unpaid interest and Permitted Fees and Expenses (collectively, the "DIP Obligations") shall be secured by the Security and a Court-ordered super-priority charge (the "DIP Charge") in favor of the DIP Agent, for and on behalf of the DIP Lenders, on the assets, undertakings and properties of the Pride Entities.<br>• No portion of the proceeds of the DIP Facility may be used for intercompany advances other than amongst DIP Borrowers. |
| ***Priority of DIP Charge*** | • As among the DIP Charge and the other charges created by the Initial Order and the A&R Initial Order, the relative priority shall be as follows:<br>o the Administration Charge;<br>o the Intercompany Advances Charge;<br>o the DIP Charge; and<br>o the Directors' and Officers' Charge<br>• Subject to the priorities set out above, the DIP Charge shall rank in priority to any and all Liens on the DIP Collateral, subordinate only to: (i) any validly perfected and enforceable security interests of third party financiers in specific vehicle and lease collateral and proceeds of such collateral which, as of the date of the Initial Order, ranks in priority to the Security, (ii) any valid and enforceable mortgages duly registered on title to real properties as of the date of the Initial Order; and (iii) until April 19, 2024 (which may be extended upon further order of the Canadian Court), any validly perfected and enforceable security interest of Triumph Financial Services LLC in the property of Debtor Arnold Transportation Services, Inc. in the maximum amount of CAD$3 million. |
| ***Maturity Date*** | • The earlier of (i) June 30, 2024 at 12:00 p.m. ET (which, subject to satisfaction of certain conditions precedent as provided in the DIP Term Sheet, may be extended to |

| Category | Summary Term |
|---|---|
| | September 30, 2024); and (ii) the occurrence of an Event of Default in respect of which the DIP Agent has elected, in its sole discretion, to accelerate the obligations under the DIP Facility. |
| ***Other Terms*** | • The DIP Borrowers shall pay all costs and expenses of the DIP Agent, the DIP Lenders, Lenders' Counsel, and Lender Financial Advisor incurred in connection with the DIP Facility, the preparation of the DIP Term Sheet, and such other Permitted Fees and Expenses (as defined in the DIP Term Sheet).<br>• The DIP Facility shall be governed under the laws of Ontario, Canada. |

6. On April 9, 2024, the Canadian Court signed an Amended and Restated Initial Order (as may be further amended from time to time, the "A&R Initial Order"), a copy of which is attached to the Motion as Exhibit C. Among other things, the A&R Initial Order (i) authorizes the DIP Borrowers to obtain and borrow under the DIP Facility in accordance with the terms of the DIP Term Sheet to finance the ordinary working capital and other general corporate purposes of the DIP Borrowers; (ii) grants the DIP Charge to the DIP Agent for and on behalf of the DIP Lenders on the property of the Pride Entities; (iii) extends the Stay Period through June 30, 2024 (or such later time as the Canadian Court may order); and (iv) increases the Administration Charge and the Directors' and Officers' Charge over the property of the Pride Entities.

**THE PROTOCOLS ORDER**

7. Also on April 9, 2024, the Canadian Court signed the Protocols Order (as may be further amended from time to time, the "Protocols Order"), a copy of which is attached to the Motion as Exhibit D. The Protocols Order approves (i) a governance protocol (the "Governance Protocol"), (ii) a real estate monetization plan (the "Real Estate Monetization Plan") and (iii) an intercompany and unsecured claims preservation protocol (the "Intercompany and Unsecured

Claims Preservation Protocol," and together with the Governance Protocol and the Real Estate Monetization Plan, collectively, the "Protocols"), each of which is designed to promote fairness, transparency and oversight for all of the Pride Entities' stakeholders during the pendency of the CCAA Proceedings.

8. The Governance Protocol provides the Pride Group's Canadian Court-appointed monitor (the "Monitor") and chief restructuring officer (the "CRO") with reasonable control and oversight over the cash proceeds generated from asset sales and other dispositions, as well as distributions and remittances of the Pride Entities (the "Governance Protocol"). The Governance Protocol is designed to ensure that distributions are made in consideration of the rights of all stakeholders by creating a process to determine how funds received on account of sales, leases, or enforcement are dealt with by the Pride Group, with the Monitor's supervision. The Governance Protocol was initially proposed by the Pride Entities at the initial hearing before the Canadian Court, and, at the direction of the Canadian Court, the Pride Entities, the CRO and the Monitor have been engaging with their stakeholders on the terms of such protocol, which discussions remain ongoing. The Protocols Order also provides that parties will have an opportunity to propose revisions to the Governance Protocol at a further hearing before the Canadian Court.

9. The Real Estate Monetization Plan is designed to bring structure, oversight, and transparency to the monetization of the Pride Entities' real estate, which is an important source of proceeds for the benefit of the Pride Entities' stakeholders. Under the Real Estate Monetization Plan, the Pride Entities are required to list for sale all of their real property by no later than May 1, 2024 (or such later date as the DIP Agent may agree to in writing), and any sale of property will be subject to the prior written consent of the DIP Agent and any applicable third-party mortgagee, or approval of the Canadian Court.

10. The Intercompany and Unsecured Claims Preservation Protocol provides a mechanism to permit mortgage lenders to be repaid from the proceeds of the real estate sales in their respective Mortgage Pools (as defined in the Protocols Order) when they are sold, and, subject to the claims of the DIP Agent against such properties under the DIP Charge, allow for the balance of the proceeds to be distributed to the intercompany creditors and other creditors. This protocol is necessary because certain of the Pride Entities' mortgage lenders have provided financing in respect of real properties, which financing has been cross-collateralized against other properties owned by Pride Entities where the owner may be subject to intercompany claims. The Intercompany and Unsecured Claims Preservation Protocol further provides that, to the extent practical and subject to receipt by the Monitor of a security opinion from its counsel, the Pride Entities will seek an order of the Canadian Court authorizing the distribution from the net proceeds of any sale of property to the relevant mortgagee at the same time as the Pride Entities seek an order of the Canadian Court approving the sale. Any remaining net proceeds after such distribution will be held by the Monitor, pending a determination as to how those proceeds should be distributed.

11. It is a condition precedent to the DIP Lenders making an initial advance of CAD$6.5 million under the DIP Facility that the Court enter an order enforcing the A&R Initial Order and the Protocols Order and approving the DIP Facility on a provisional basis by no later than April 12, 2024. As such, I understand that the Pride Group urgently requires the provisional relief requested in the Motion.

**THE NEED FOR PROVISIONAL RELIEF IN CONNECTION WITH THE DIP**

12. The Pride Group is currently operating under significant liquidity constraints, and requires immediate access to the DIP Facility to fund working capital requirements, general

corporate expenses, and the costs of administering the CCAA Proceedings and these Chapter 15 Cases pending entry of the Recognition Order. In addition, the DIP Facility will also help to preserve the Pride Group's businesses by providing assurance to employees, suppliers, and customers that it can maintain its business operations and satisfy its obligations pending the outcome of the CCAA Proceeding and these Chapter 15 Cases. Absent access to the DIP Facility, the Pride Group will be unable to continue operations and fund its restructuring, which will significantly impair the value of the Pride Group's assets.

13. The DIP Lenders have agreed to provide the DIP Facility on the terms outlined in the DIP Term Sheet to provide the DIP Borrowers with liquidity to operate their businesses. The terms of the DIP Facility were negotiated, proposed and entered into by the DIP Borrowers and the DIP Lenders without collusion, in good faith and at arm's length. The DIP Facility will preserve and maintain the going concern value of the Pride Group, which, in turn, is integral to maximizing recoveries for the Pride Group's stakeholders.

14. Further, I understand that the DIP Facility and the DIP Charge authorized under the A&R Initial Order generally align with the U.S. process for obtaining debtor-in-possession financing under section 364 of the Bankruptcy Code. On notice to creditors, the Canadian Court reviewed the DIP Term Sheet, held a hearing, and approved the DIP Facility and DIP Charge. By granting the relief requested herein, the Court would enforce the Canadian Court's order that approves the DIP Facility and DIP Charge, which will allow the Pride Group to operate its businesses, continue its restructuring efforts, and finance the CCAA Proceedings and these Chapter 15 Cases.

15. Provisional enforcement of the A&R Initial Order, including the granting of the DIP Charge and other charges approved in the A&R Initial Order, and provisional enforcement of the

Protocols Order, is a condition to the initial draw under the DIP Facility. Consequently, absent provisional enforcement of the A&R Initial Order and the Protocols Order in the United States, the DIP Borrowers will be unable to draw on the DIP Facility to fund their operations and restructuring, resulting in value destruction. Indeed, the incurrence of indebtedness under the DIP Facility and granting of the DIP Charge, as authorized by the A&R Initial Order, is necessary to prevent irreparable harm to the Pride Group because, absent such financing, it will be unable to continue operations and fund its restructuring, which will significantly impair the value of the Pride Group's assets and recoveries to all stakeholders.

16. I also understand that the balance of harm weighs in favor of granting the relief requested herein. The Canadian Court determined that the terms of the DIP Term Sheet, as approved in the A&R Initial Order, are fair and reasonable and were entered into in good faith by the DIP Borrowers and the DIP Lenders, and the DIP Lenders will not extend financing without the protections requested in the Motion, as it is a condition precedent to funding that the Court enter an order enforcing the A&R Initial Order in the United States. It is also a condition precedent to funding that this Court enforce the Protocols Order on a provisional basis in the United States. The goal of the Protocols Order is to promote fairness, transparency and oversight among the Pride Entities' stakeholders. As such, I submit that granting the relief requested herein will benefit the Pride Group's creditors by providing the liquidity necessary to continue operating the Pride Group's businesses, which will preserve and maximize the value of the Pride Group's assets for the benefit of all its stakeholders.

17. I also submit that granting the requested relief is in the public interest because it will facilitate my efforts to complete a court-supervised restructuring process (i.e., the CCAA

Proceedings) for the benefit of all creditors and other stakeholders (including those in the United States).

18. As noted above, the A&R Initial Order also, among other things: (i) extends the Stay Period to June 30, 2024 (or such later date as the Canadian Court may order) to give the Pride Group additional breathing room to operate its businesses and formulate a restructuring plan; and (ii) increases the Administration Charge and the Directors' and Officers' Charge commensurately with the extension of the Stay Period. I submit that these provisions of the A&R Initial Order should be enforced with respect to the Pride Group, the Personal Guarantors (as applicable), and their property in the United States on a provisional basis until the Court rules on the relief requested in the Verified Petition for the same reasons as set forth in the First Provisional Relief Motion.

19. Accordingly, I believe that enforcement of the terms, conditions, and provisions of the A&R Initial Order, including with respect to the DIP Facility and the DIP Charge, constitutes the best option available in the circumstances to preserve the value of the Pride Group's assets and to enable the Pride Group to proceed with its restructuring efforts through the CCAA Proceedings and these Chapter 15 Cases for the benefit of all of its creditors and stakeholders.

**THE NEED FOR PROVISIONAL RELIEF**
**IN CONNECTION WITH THE PROTOCOLS ORDER**

20. The goal of the Protocols Order and the Protocols is to promote fairness and transparency by providing oversight into the Pride Entities' cash distributions and real estate monetization plan for the benefit of all stakeholders. The Protocols serve to benefit creditors and other parties in interest, are in line with the public interest, and are entirely consistent with the purpose of Chapter 15 which is to promote cooperation between jurisdictions in cross-border insolvencies. Further, it is a condition precedent to funding that this Court enforce the Protocols Order on a provisional basis in the United States, and the DIP Lenders would not extend financing under the DIP

Facility without such enforcement. The Pride Entities urgently require access to the DIP Facility in order to finance their ordinary working capital needs and the costs of their restructuring.

21. Accordingly, I believe that enforcement of the terms, conditions, and provisions of the Protocols Order is appropriate and will enable the Pride Group to proceed with its restructuring efforts through the CCAA Proceedings and these Chapter 15 Cases for the benefit of all of its creditors and stakeholders.

22. For the reasons set forth above, I submit that the Court should grant the relief requested in the Motion seeking to enforce, on a provisional basis, the A&R Initial Order and the Protocols Order in the United States.

[*Remainder of page left intentionally blank*]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: April 9, 2024
Toronto, Canada

*/s/ Randall Benson*
Randall Benson