1                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF DELAWARE
2

3     IN RE:                       .  Chapter 15
                                   .  Case No. 24-10632 (CTG)
4     PRIDE GROUP HOLDINGS, INC.,  .
      *et al.,*                    .  (Jointly Administered)
5                                  .
                                   .  Courtroom No. 7
6                                  .  824 North Market Street
                                   .  Wilmington, Delaware 19801
7         Debtors in a Foreign     .
          Proceeding.              .  Thursday, April 11, 2024
8     . . . . . . . . . . . . . .  .  2:00 p.m.

9                         TRANSCRIPT OF HEARING
                BEFORE THE HONORABLE CRAIG T. GOLDBLATT
10                  UNITED STATES BANKRUPTCY JUDGE

11    APPEARANCES:

12    For the Debtors:          Derek Abbott, Esquire
                                Andrew Remming, Esquire
13                              MORRIS, NICHOLS, ARSHT
                                  & TUNNELL LLP
14                              1201 North Market Street
                                16th Floor
15                              Wilmington, Delaware 19801

16                              Christopher Hunker, Esquire
                                LINKLATERS LLP
17                              1290 Avenue of the Americas
                                New York, New York 10104
18
      (APPEARANCES CONTINUED)
19
      Audio Operator:          Ian Willoughby, ECRO
20

21    Transcription Company:   Reliable
                                The Nemours Building
22                              1007 N. Orange Street, Suite 110
                                Wilmington, Delaware 19801
23                              Telephone: (302)654-8080
                                Email:  gmatthews@reliable-co.com
24
      Proceedings recorded by electronic sound recording,
25    transcript produced by transcription service.

APPEARANCES (CONTINUED):

For the U.S. Trustee:        Timothy Fox, Esquire
                             OFFICE OF THE UNITED STATES TRUSTEE
                             844 King Street, Suite 2207
                             Lockbox 35
                             Wilmington, Delaware 19801

For PACCAR Financial:        Michael DeBaecke, Esquire
                             ASHBY & GEDDES, P.A.
                             500 Delaware Avenue, 8th Floor
                             P.O. Box 1150
                             Wilmington, Delaware 19899

For Triumph Financial
Services:                    Jami Nimeroff, Esquire
                             BROWN MCGARRY NIMEROFF LLC
                             Two Penn Center, Suite 610
                             1500 John F. Kennedy Boulevard
                             Philadelphia, Pennsylvania 19102

For Royal Bank of
Canada, as Agent:            Stephen Tetro, II, Esquire
                             CHAPMAN & CUTLER LLP
                             320 South Canal Street
                             27th Floor
                             Chicago, Illinois 60606

For Daimler Truck
Financial Services:          Dennis Meloro, Esquire
                             GREENBERG TRAURIG LLP
                             222 Delaware Avenue
                             Suite 1600
                             Wilmington, Delaware 19801

For Regions:                 Ryan Bartley, Esquire
                             YOUNG CONAWAY STARGATT & TAYLOR LLP
                             Rodney Square
                             1000 North King Street
                             Wilmington, Delaware 19801

1                                    INDEX

2    MOTIONS:                                                    PAGE

3    Agenda
     Item 1: Motion of the Foreign Representative              5
4            for Entry of an Order Granting
             Provisional Relief in Connection with
5            Debtor in Possession Financing and
             Certain Protocols Pursuant to Sections
6            105(a) and 1519 of the Bankruptcy Code
             (D.I. 70, filed 4/9/24)
7
             Court's Ruling:                                    51
8

9    DECLARATIONS:                                             PAGE

10
     1) Randall Benson                                          6
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 2:00 p.m.)

2               THE COURTROOM DEPUTY:  All rise.

3               THE COURT:  Please be seated.  So, good afternoon.

4               MR. REMMING:  Good afternoon, Your Honor.

5               THE COURT:  We are here in *In Re Pride Group*

6    *Holdings, Inc.*, Case No. 24-10632.

7               MR. REMMING:  Good afternoon, Your Honor.  For the

8    record Andrew Remming, Morris, Nichols, Arsht & Tunnell, for

9    the foreign representative.  I am joined in Court today by my

10   colleagues from the Linklaters Firm, Penelope Jensen and

11   Christopher Hunker.  Also in the courtroom is Mr. Randall

12   Benson and my colleagues from Morris Nichols, Clint Carlisle

13   and Austin Park.

14               Mr. Hunker will handle the presentation for the

15   foreign representative today.

16               THE COURT:  Okay.  Thank you very much, Mr.

17   Remming.

18               MR. REMMING:  Thank you.

19               THE COURT:  Mr. Hunker.

20               MR. HUNKER:  Good afternoon, Your Honor.

21   Christopher Hunker from Linklaters on behalf of the foreign

22   representative.

23               Your Honor, we would like to thank the Court for,

24   once again, accommodating us with a hearing on shortened

25   notice.  We had initially intended to file our papers earlier

1  then we did, but the Canadian Court orders were only signed

2  at the end of the day on Tuesday.  So we appreciate the

3  Court's patience with us.

4        Your Honor, I understand that Mr. Fox has a few

5  issues with the proposed order and a bit of a time crunch.

6  So, if it's okay with Your Honor I will make a very brief

7  presentation on the relief that we are requesting today and

8  then turn it over to Mr. Fox and any others that may wish to

9  raise any issues.

10        THE COURT:  Very well.

11        MR. HUNKER:  Thank you, Your Honor.  Your Honor,

12 there is just one item on today's agenda and that is our

13 second motion for provisional relief seeking enforcement of

14 the Canadian Court orders, approving the DIP facility, and

15 certain protocols that will govern the Canadian proceedings.

16 Our second provisional relief motion was filed at Docket No.

17 70.

18        We served the hearing agenda and the second

19 provisional relief motion on all effected parties by

20 overnight mail and email if that was available.  And the

21 certificate of service can be found at Docket No. 78.  We

22 also filed Mr. Benson's declaration in support of the motion

23 at Docket No. 71.  Mr. Benson is available to answer any

24 questions on the declaration.

25        Your Honor, at this time I would like to move Mr.

1  Benson's declaration into evidence.

2          THE COURT:  Any objection to the introduction into

3  evidence of Mr. Benson's declaration?

4      (No verbal response)

5          THE COURT:  Okay.  Seeing none, it will be

6  admitted.

7      (Benson declaration received into evidence)

8          THE COURT:  Any party wish to cross-examine Mr.

9  Benson with respect to the matters set forth in the

10  declaration?

11      (No verbal response)

12          THE COURT:  Seeing none, you can proceed.

13          MR. HUNKER:  Thank you, Your Honor.  As noted in

14  our papers, the foreign representative is seeking enforcement

15  of the Canadian Court's amended and restated initial order

16  which approves the DIP facility and the DIP charge among

17  other things and the protocols order which approves certain

18  protocols designed to promote fairness, transparency, and an

19  orderly process for the disposition of certain of the group's

20  assets and the broader restructuring process.

21          With respect to the DIP facility the group entered

22  into a DIP term sheet on April 1st, which is attached to our

23  motion as Exhibit B.  Under the DIP term sheet, the DIP

24  lenders have agreed to lend up to $30 million Canadian

25  dollars which is capital that is urgently needed by the group

1  to fund the group's operations and the cost of the

2  restructuring.  The DIP facility will help to preserve the

3  group's businesses by providing assurances to employees,

4  suppliers and customers that it can maintain its business

5  operations and satisfy its obligations in the ordinary

6  course.

7           THE COURT:  I apologize, can I just ask -- and

8  apologies to all in advance for these very rudimentary

9  questions and my need for, sort of, remedial help on

10 understanding the mechanic of Chapter 15.

11          First of all, the order that was entered in Canada

12 approving, essentially, authorizing the debtor to take -- to

13 borrow on a post-petition basis in granting liens, post-

14 petition liens was that entered on notice to all parties in

15 interest where there is a mechanism where someone was being

16 primed they had the ability to come in there and say, hang

17 on, Your Honor, I'm entitled to adequate protection or

18 whatever the Canadian equivalent is?

19          MR. HUNKER:  Yes, Your Honor.  Notice was provided

20 to parties in interest.  I believe it's about the same sort

21 of notice period as you would for any kind of emergency or

22 provisional relief that we have here, but parties did have,

23 at least, several days with the materials before the hearing.

24          THE COURT:  The relief that has been entered in

25 Canada is that, essentially, interim relief that is subject

1   to a final hearing or has that been entered now on a final

2   basis?

3           MR. HUNKER:  That has been entered now on a final

4   basis.

5           THE COURT:  Okay.  And the relief you are seeking

6   from me today is that interim approval of recognition, or

7   enforcement, or whatever you call it, and I confess to being

8   a little confused by the notion of enforcement in the context

9   in which there is no claim of violation but hold that aside.

10  Is the relief you are seeking here interim approval of it or

11  are you seeking, sort of, final approval of the

12  recognition/enforcement of the Canadian DIP order?

13          MR. HUNKER:  We are seeking enforcement of the

14  Canadian Court's order here.  On a provisional basis,

15  obviously, its subject to this Court's determination on

16  recognition as to whether recognition is appropriate under

17  Chapter 15. So, its really for the period until recognition.

18          THE COURT:  Till the period of recognition. So,

19  until then its subject to being revisited but once we

20  recognize the proceeding, I think that hearing is set for May

21  2nd or whenever that is --

22          MR. HUNKER:  That is correct.

23          THE COURT:  -- then the order you are asking me to

24  enter today would be then, essentially, deemed final.

25          MR. HUNKER:  Correct.

1          THE COURT:  But there would remain a period for

2   anyone who has an issue with the order -- I am concerned

3   about the question of notice.  Again, without prejudice to

4   Mr. Fox's right to tell me that I'm thinking about the wrong

5   issues.  I am not faulting anyone for the fact that we are

6   where we are and its despite what appear to me to be

7   everyone's good faith efforts, but I want to -- I normally

8   take the view that when you are acting on an emergency basis

9   you should basically make no more of a ripple than is

10  absolutely necessary.

11         MR. HUNKER:  Right.

12         THE COURT:  So, the relief you are seeking now

13  would provide relief for this interim period but would not

14  prejudice anyone's rights to be heard with respect to

15  ultimate approval.

16         MR. HUNKER:  Yes, Your Honor.  I think that is

17  consistent with Section 1519 and the notion of provisional

18  relief. Obviously, its subject to this Court's determination

19  on recognition.  To the extent that we do not obtain

20  recognition I am not sure where that leaves us, but I think

21  those avenues for parties to come in and make an argument are

22  there.

23         THE COURT:  Let me ask the question this way.

24  Look, I don't want to get ahead of the arguments that parties

25  actually want to make, but to the extent I entered this order

1   and we get to May 2nd, and I am satisfied that the standards

2   for recognition are met, which is to say that it's a real

3   proceeding, that parties rights are respected, etc., but I

4   have got concerns about the treatment of people's collateral

5   that is located in the United States, is that too late a time

6   to consider those kinds of issues?  Are my questions making

7   any sense at all?

8           MR. HUNKER:  Yes, they are, Your Honor.  I mean I

9   don't think that parties would be precluded from making those

10  arguments as part of their objection to recognition or

11  otherwise.  I don't think that is what we are trying to

12  achieve today.

13          THE COURT:  Okay.  All right. I have pestered you

14  enough with annoying questions.  Let me let you make your

15  presentation.

16          MR. HUNKER:  Sure.  Thank you, Your Honor.  The

17  obligations under the DIP facility are secured by the DIP

18  charge which is a superpriority charge granted to RBC as the

19  DIP agent over the property and assets of the Pride entities.

20  The DIP charge is importantly subordinate to perfected and

21  enforceable security interests of third parties finances of

22  specific vehicle and leased collateral.  Any valid

23  enforceable mortgages on real property and through an

24  agreement with Triumph Financial Services until April 19th

25  any security interest of Triumph on the property of debtor,

1  Arnold Transportation Services, up to $3 million Canadian

2  dollars is also subordinate to the DIP charge.

3          Your Honor, it's a condition precedent to the

4  initial draw of the DIP facility, which is $6.5 million

5  Canadian, that the DIP facility be approved by an order of

6  the Canadian Court which it was last Tuesday and this Court

7  entering an order enforcing that the Canadian Court's amended

8  and restated initial order and the protocol's order, which I

9  will turn to in a moment, in the United States.

10          Following a hearing held on April 5th, the

11  Canadian Court approved the DIP facility and directed the

12  group to engage with its stakeholders on the terms of the

13  amended and restated initial order. The group successfully

14  resolved most of the outstanding issues and the Court -- the

15  Canadian Court signed the amended and restated initial order

16  that was submitted to it by the monitor late in the day on

17  Tuesday, April 9th.

18          Turning to the protocols order, following last

19  Friday's hearing, the Canadian Court also approved three

20  protocols.  The first is a governance protocol that governs

21  how cash proceeds generated by asset sales, leases, and

22  enforcement will be dealt with by the group under the

23  supervision of the monitor and the CRO.  The second is a real

24  estate monetization plan that governs the sale of the groups

25  real estate which is an important source of value for

1  stakeholder recoveries in this case and an intercompany

2  unsecured claims preservation protocol that provides a

3  mechanism to permit mortgage lenders to be repaid from the

4  proceeds of real estate sales when they are sold and allows

5  for the balance of the proceeds to be distributed to the

6  intercompany creditors and other creditors subject to the

7  claims of the DIP agent following a further order of the

8  Canadian Court.

9          Each of these protocols has been and continues to

10 be heavily negotiated by the group, the monitor and the

11 relevant stakeholders in this case and were approved by the

12 Canadian Court in a separate order also issued this past

13 Tuesday.  Your Honor, we have set forth our arguments in the

14 motion as to why we believe provisional relief in the form of

15 enforcement of the amended and restated initial order and the

16 protocols order in the United States is appropriate and

17 urgently needed under the circumstances.

18         I am happy to answer any questions Your Honor may

19 have or pass the podium to Mr. Fox.

20         THE COURT:  It sounds like Mr. Fox has a time

21 crunch, so let me give him a chance to be heard before we run

22 out the clock on him.

23         MR. HUNKER:  Thank you, Your Honor.

24         THE COURT:  Thank you.

25         MR. FOX:  Good afternoon, Your Honor.  May I

1  please the Court, Tim Fox on behalf of the United States

2  Trustee.

3  Your Honor, as counsel to the foreign

4  representative and foreign debtors mentioned, the United

5  States Trustee does have some issues with the relief sought

6  here today, but before I get into the specifics just wanted

7  to try to provide some general overview as to some trends

8  that have been concerning to the U.S. Trustee in Chapter 15

9  practice here over the last 12 to 18 months or so.

10  So, Your Honor, at the initial provisional relief

11  hearing last week Your Honor made a comment about you

12  recognize proceedings and then you grant relief.  I think

13  that might be a helpful lens to think about some of these

14  issues that we're encountering and why the U.S. Trustee is

15  interposing an objection to the additional provisional relief

16  sought here today.

17  So, Your Honor, what the U.S. Trustee is growing

18  concerned about is what we would refer to as creep of custom

19  and practice on Chapter 15 matters from where it had

20  historically been since the implementation of Chapter 15.

21  So, Your Honor, typically the path of a Chapter 15 case

22  includes the filing of the petition for recognition, a

23  provisional relief hearing which may be relatively limited

24  into just the extension of the automatic stay in the

25  territorial jurisdiction of the United States, scheduling of

1   a hearing on final recognition, and then upon satisfying the

2   standards of Chapter 15 granting recognition of that foreign

3   proceeding as either a foreign main or foreign non-main

4   proceeding as necessary.

5           What has seemingly crept into the provisional

6   relief prong of the process has been a lot of specific

7   requests for relief that seem to go beyond the scope of

8   relief that you could obtain in a parallel case that could

9   have been filed under Chapter 11.  That brings me to the

10  specific issue that the U.S. Trustee objects to today and

11  that is Paragraphs 10 and 11 of the provisional relief order

12  up for hearing today, Your Honor.

13          It includes relief relating to Section 506(c),

14  Section 552(b) and the equities of the case exception and a

15  waiver of the doctrine of marshalling to be implemented on

16  entry of the requested provisional order.  Those elements, as

17  Your Honor is well aware, in a Chapter 11 case would not be

18  something that could be approved over objection at an interim

19  hearing in a Chapter 11 proceeding but as noted in counsel's

20  presentation, the requirements of this form of order have

21  been required by the lenders and are getting relief here in

22  the U.S. that you wouldn't see in a parallel proceeding if

23  under Chapter 11.

24          THE COURT:  Let me stop you here for a second.

25  So, this is interesting.  I apologize for being the slowest

1   one in the room, but those of you that are here regularly are

2   accustomed to that.  So, that relief has been granted in

3   Canada on a permanent basis already, right?

4           MR. FOX:  That is the representation and the text

5   of the order as appended to the motion today.  Correct, Your

6   Honor.

7           THE COURT:  And is your objection to that -- so

8   what I am -- I am trying to isolate the moving parts. These

9   are debtors in Canada.  I understand I still haven't made the

10  determination about whether it's the foreign main case as to

11  all of them or not.  We will get to that when we get to that,

12  but for now these are Canadian cases with respect -- and it

13  seems to me that with respect to the collateral that is in

14  Canada none of this is my business at all and that the only

15  question is with respect to collateral that is located in the

16  United States.  Do you --

17          MR. FOX:  I agree that that is largely the central

18  issue here in terms of the practical import of the language

19  that is being requested.

20          THE COURT:  And with respect to the -- well, let

21  me ask this question which -- all right, so your concern,

22  obviously, given your institutional interest, is we are here

23  on awfully short notice and there may be a creditor that has

24  US collateral that hasn't had reasonable opportunity to come

25  in and speak up on this issue.

1          I understand your points and they strike me as

2    fair. This is relief, though, that on final approval one

3    would enter, in the absence of an objection, right, like

4    every day, and here -- I guess the -- I am not at all

5    minimizing your concerns. I appreciate your office

6    identifying them, its very helpful to the Court and very much

7    in the traditions of the office. So, I do appreciate it.

8          Here, we have got like a reasonably full courtroom

9    full of effected parties, some of whom have raised issues and

10   none of whom have raised the particular concerns that you are

11   identifying.  So, I guess I am interested in your thoughts

12   on, look, it would be one thing if we were here and you are

13   the only one who was quick enough to the trigger to tell me

14   about it. I guess my question is should I worry a little bit

15   or less about it in this context where the people whose

16   rights are effected by have been paying attention all along

17   and haven't raised this particular set of concerns.  Does

18   that question make any sense?

19          MR. FOX:  I understand where Your Honor is coming

20   from. It's a matter of, you know, if parties that are

21   impaired have had notice and can appear, is the U.S. Trustee

22   just, you know, raising an issue to stand on ceremony as

23   opposed to --

24          THE COURT:  And I don't mean it as a criticism at

25   all that way, it's just should I put somewhat less weight on

1  it in this context.  It's important that I understand what is

2  going on and without you raising it I wouldn't.  So, I am not

3  at -- I am appreciative not critical.

4        MR. FOX:  I understand where the Court is coming

5  from in terms of your comments.  What the U.S. Trustee would

6  posit is that independent of any specific harm that might be

7  occurring to parties and whether or not they can live with

8  economic consequences of the deal, providing other parties

9  that might not have gotten up to speed a chance to preserve

10  their rights and have something like this heard on notice is

11  the appropriate trajectory of an issue like this as opposed

12  to it being heard on an emergent basis with limited notice.

13        THE COURT:  Okay.  Before I understood what your

14  issues were, in my colloquy with counsel for the foreign

15  representative, he said, look, all of this is at some level

16  provisional and subject to being revisited.  So, I understand

17  that in a regular 11 we don't grant this relief even on an

18  interim basis. We come back to it at the -- we only grant it

19  on the final basis, but in a world in which it is subject to

20  being revised does that mitigate your concerns at all?

21        MR. FOX:  So, it's more comfort then the

22  alternative where its final after, you know, two days' notice

23  and entry of an order; however, the larger concern is that it

24  emboldens parties to ask for the moon and because its

25  provisional to put the burden on others. Your Honor and I, I

1   think we have had this colloquy at least on one other issue

2   about setting the default for parties operating further and,

3   again, this is one of those issues and has been one where

4   some of your colleagues have been troubled by this

5   development and the U.S. Trustee, likewise, has had some

6   issues.

7           I do have a memorandum opinion from Judge

8   Silverstein in her Crystallex case.  I provided a copy via

9   email to counsel for the foreign representative, but I have

10  three copies if Your Honor would like one. I have given one

11  to the secured lenders. I don't know if that will be all that

12  instructive.  Some of the facts are a little bit different.

13          THE COURT:  Crystallex is different, but I -- but

14  that wasn't about the relief granted at the beginning, right?

15          MR. FOX:  Correct.

16          THE COURT:  That was after the fact.

17          MR. FOX:  But it bears on the same issues as it

18  relates to specific relief sought in connection with a DIP in

19  a foreign proceeding being asked for in the Chapter 15 cases

20  sometimes with language that might go beyond what the

21  parameters of 1519, or 1520, or 1521 would provide.  That is,

22  I think, where we would say that although the facts are very

23  different there are some analogous concepts that Your Honor

24  can draw from in deciding this issue.

25          THE COURT:  So, I have seen that opinion. I am

1 more then happy to have a copy, but why don't I allow you to

2 approach with a copy.

3          MR. FOX:  May I approach?

4          THE COURT:  You may.

5          MR. FOX:  Would your clerk like one as well?

6          THE COURT:  Sure. He is in the back.  Thank you

7 very much.

8          MR. FOX:  You're welcome, Your Honor.  So, Your

9 Honor, to resume my prepared remarks on this issue, again the

10 Collier's discussion of Chapter 15 identifies that the

11 foreign proceedings should dominate over the case pending

12 under Chapter 15 and the U.S. Trustee again would advance the

13 position that when the stay is in place and the foreign

14 representative and foreign debtors have the ability to come

15 and prevent harm occurring the territorial jurisdiction of

16 the United States that these additional bells and whistles

17 that are being required by third parties like their lenders

18 are not necessary, especially in this provisional period, and

19 may not ultimately be necessary given the recognition of the

20 main proceeding at the appropriate time as satisfying those

21 statutory provisions.

22          You know, I would note that the forerunner to

23 Chapter 15 was section 304 which was ancillary proceedings

24 and putting that ancillary glaze back on the Chapter 15

25 proceedings is probably something that would eliminate some

1   of these concerns about overreach and creep of custom and

2   practice on a number of these matters.

3          So, Your Honor, for those reasons the U.S. Trustee

4   again would argue that the language contained in Paragraphs

5   10 and 11 relating to certain debtor-in-possession financing,

6   relief that is commonly only granted upon final order in a

7   Chapter 11 case ought not to be granted here on a provisional

8   basis today.

9          Again, Your Honor, this is not the easiest item to

10  get one's arm around so I am, again, happy to try and explain

11  if there is anything else that is giving Your Honor a

12  difficulty in understanding or, you know, if my comments have

13  not been targeted enough as to what we view as the problems

14  here, but that is largely what I had for Your Honor to

15  consider.

16          I would note that this strain of comment and this

17  objection is something that we have, you know, made

18  informally in a couple of other cases recently as well.  One

19  of which in the Kopel case that is pending before Judge

20  Dorsey as it related to requests for a TRO on a provisional

21  basis or ex parte basis before the provisional relief

22  hearing.  And back in 2019 there was a motion pending before

23  Judge Owens in the Motorcycle Tire cases that related to what

24  was, essentially, a quasi-retention of a liquidation

25  consultant in a Chapter 15 matter.

1          So, Your Honor, again, we would --

2          THE COURT:  So, can I ask this practical question?

3          MR. FOX:  Yes.

4          THE COURT: I understand.  Again, this isn't a

5    criticism at all because I -- look, the notion that what we

6    do without thinking about it basically then creates an

7    expectation in the marketplace and, therefore, people demand

8    it and, therefore, it becomes required going forward is a

9    real dynamic.  So, I get the point purely as a matter of

10   principal.

11         As a practical matter, what we are talking about

12   is surcharging collateral and the marshalling doctrine.  Can

13   you imagine a world in which one of those things happens

14   between now and provisional relief being addressed?

15         MR. FOX:  Again, Your Honor, the U.S. Trustee's

16   position would be that that could be more appropriately dealt

17   with in the main proceeding as opposed to banning an order

18   from Your Honor about to avoid it.

19         THE COURT:  I hear you and that is the abstract

20   point. I actually am inclined to agree with you on the

21   abstract point, but I am also -- I also have a practical

22   question and I think I understand the answer to the practical

23   question.

24         Okay.  Anything further?

25         MR. FOX:  I think that is it for now, Your Honor.

1  My colleague, John Lipshie, is here with me today since I

2  have to ask to be excused for my 341 Meeting at 2:30, but Mr.

3  Lipshie is familiar with the circumstances here and can pick

4  things up as necessary for my office.

5         THE COURT:  We will do that.  In the absence of

6  your ability to clone yourself we are going to have to find a

7  way to get by.  So, thank you very much, Mr. Fox.  This was

8  helpful and I appreciate it.

9         MR. FOX:  Thank you, Your Honor.  May I be

10 excused?

11        THE CORUT:  Yes, you may.  Thank you.

12        Is there any other party in interest?

13        MR. HUNKER:  Your Honor, if I may, just very

14 briefly, in response to Mr. Fox's remarks.

15        THE COURT:  You may.

16        MR. HUNKER:  I just wanted to make two points.  We

17 don't necessarily agree that the provisions that we have

18 included in the proposed order to which the United States

19 Trustee objects represents a departure from custom in this

20 practice. Similar language has been approved in other

21 provisional relief orders approving DIP financing --

22        THE COURT:  Over someone's objection?

23        MR. HUNKER:  I don't believe so, Your Honor.

24        THE COURT:  Do you know how helpful it is to point

25 to an order that wasn't objected to or what effect it has on

1   the Judge who is worried that they might enter some order

2   over objections that someone will cite to his authority in

3   the next case.

4          MR. HUNKER:  Understood, Your Honor.  My only

5   point was that this is, sort of, not newly invested language.

6   It has been employed in other Chapter 15 cases.

7          THE COURT:  I understand. I get it.

8          MR. HUNKER:  The second point I would make, and

9   this is probably the more important point, and I referenced

10  this in my opening presentation, which is that the group does

11  require access to this capital and the DIP lenders have

12  requested the inclusion of these provisions.

13         THE COURT:  I understand.  You understand that

14  that proves too much, right?

15         MR. HUNKER:  Correct, Your Honor.

16         THE COURT:  Okay.

17         MR. HUNKER:  Those are the only two points I

18  wanted to make in response.  Thank you, Your Honor.

19         THE COURT:  Thank you.

20         MR. MELORO:  Your Honor, I wasn't sure if you were

21  only hearing from pro or --

22         THE COURT:  I'm here for anyone who will help me

23  get it right.

24         MR. MELORO:  Certainly.  Good afternoon, Your

25  Honor.  Dennis Meloro of Greenberg Traurig on behalf of

1  Daimler Truck Financial Services USA.

2         Your Honor, we filed a brief reservation to the

3  motion, I guess, technically early this morning.  Our issues

4  are relatively straightforward for today notwithstanding this

5  is kind of messy as we are all seeing.  As we sit it there is

6  an intercompany advance charge in this DIP that is proposed

7  to be senior to our interest at Daimler.  The DIP charge is

8  subordinate, as counsel noted in his opening presentation. As

9  set up we could conceivably see unlimited, uncapped

10 intercompany advance charges priming our interests.

11        THE COURT:  Right. So, Mr. Meloro, I read your

12 paper and I understand that.  I say that not to snap because

13 the papers all came in quickly.  So, no one is going to

14 insult me by reminding me of things.

15        I was puzzled by -- it was your objection that

16 lead me to ask the questions that I did of, okay, you call it

17 a reservation of rights, not an objection and so can I ask

18 you to tell me, sort of, specifically are you objecting to

19 the entry of this order for this reason or are you saying I

20 am not objecting today, but I reserve the right to come back

21 later?  Does my question make sense?

22        MR. MELORO:  We object to the inclusion of priming

23 of our interests in this order.

24        THE COURT:  All right.  So, let's back up.  An

25 order was entered in Canada --

1          MR. MELORO:  Right.

2          THE COURT:  -- that does exactly what this does.

3  It primes your interests, right?

4          MR. MELORO:  Understood, yes.

5          THE COURT:  And with respect to -- did you have

6  the opportunity to -- you don't dispute that you had the

7  opportunity to raise an objection to it under Canadian law?

8          MR. MELORO:  I did not do it personally, but we

9  have counsel in Canada and I understand that they were at the

10 hearing, and I understand --

11         THE COURT:  And on the merits is Canadian law

12 about the priming of a secured lenders lien any different

13 than it is here?

14         MR. MELORO:  And I hate to apologize this early in

15 my presentation, I do not know.

16         THE COURT:  Okay.  And did you, in fact, object --

17 not you personally, of course, did your client object to the

18 relief sought in Canada.

19         MR. MELORO:  My understanding is yes.

20         THE COURT:  And what happened to your objection?

21         MR. MELORO:  I was not there, so forgive the lack

22 of knowledge yet again.  I think, Your Honor, the distinction

23 we're making here is not just recognition of the Canadian

24 order, but the debtors are affirmatively seeking relief under

25 Section 364.

1          THE COURT:  I want to isolate the moving parts.

2          MR. MELORO:  Understood.

3          THE COURT:  Am I right you have got collateral

4  that is located both in Canada and in the United States?

5          MR. MELORO:  Correct. The collateral package in

6  Canada is materially larger then in the United States, but it

7  is in both jurisdictions.

8          THE COURT:  Okay.  And so, whatever happened to

9  your collateral in Canada you are not asking me to do

10 anything, right?  That is what it is?

11         MR. MELORO:  That will be revisited in Canada, if

12 it can be. We are not asking you to do anything with that.

13         THE COURT:  Okay.  So, with respect to the

14 collateral that is in the United States, now the debtor is

15 saying that -- the foreign representative is -- okay, so you

16 are objecting to the entry of the relief to the extent with

17 respect to the collateral that is located in the United

18 States.  You are primed without a showing that you are

19 entitled to adequate protection?

20         MR. MELORO:  Exactly.  As I just noted, the

21 debtors are not only seeking recognition under Chapter 15,

22 what they are affirmatively seeking relief under 364, the

23 protection under 364 and 364(e) where, under 364, the debtors

24 are required to make, as you know, many showing to prime an

25 interest.  We don't think we have a record for that.  We

1  don't think its appropriate on this basis right now.

2          Just as kind of a practical illustration where the

3  DIP charge is subordinate to our interests, so that draw is

4  over there.  If debtor A draw under the --

5          THE COURT:  I understand. The concern is the

6  intercompany loans.

7          MR. MELORO:  That advance vaults over our interest

8  just instead of debtor B borrowing the money.  So, to the

9  extent there is an irreparable harm or similar concern, which

10 I think is more than appropriate for an interim hearing like

11 this, we haven't heard anything why debtor B needs an

12 intercompany payable from A as opposed --

13         THE COURT:  That primes your lien.  I understand.

14         MR. MELORO:  -- to just borrowing itself.

15         THE COURT:  Understood.  Okay.  I understand your

16 position.  I want to hear from the foreign representative in

17 response to it, but why don't I first see if there is anyone

18 else who wants to be heard.

19         MR. MELORO:  Understood. Thank you, Your Honor.

20         THE COURT:  Thank you.

21         MR. DEBAECKE:  Good afternoon, Your Honor.

22         THE COURT:  Good afternoon.

23         MR. DEBAECKE: Michael DeBaecke, Ashby & Geddes, on

24 behalf of PACCAR Financial Corp., who is situated, I would

25 say, from what I have read and heard so far, similar to Mr.

1  Meloro's client, Daimler.  We also are one of the vehicle

2  financers collateral in Canada and the US. I think it sounds

3  like our situation may be flipped, may have more collateral

4  in the US then Canada.

5         We would echo Mr. Meloro's client's concerns and

6  we would also request that if to the extent there is any

7  priming today that it certainly (A) we don't think it should

8  happen on such short notice, but if it does then I think I

9  take Your Honor's comments and questions from earlier in the

10 hearing that it can be revisited even here at the next

11 hearing if its on May 2nd.

12        I am not sure that I agree that it can't be

13 revisited in Canada.  I am certainly not a Canadian law

14 expert, but I am not positive that the order that has been

15 entered that may grant the priority on the items such as the

16 intercompany advance charge, I am not sure that that cannot

17 be revisited in Canada. I think there is a hearing coming up

18 in Canada, maybe on April 19th if I remember correctly, that

19 deals with the protocol issues.  That may also be a hearing

20 where some of these issues could be aired in front of the

21 Canadian Court, but we also did not want to let our -- if we

22 were silent today, we don't want that to be used against us.

23 Whether we want to argue in front of Your Honor at a later

24 hearing or in Canada at the next hearing.

25        THE COURT:  Okay.  Thank you, Mr. DeBaecke.

1          Ms. Nimeroff?

2          MS. NIMEROFF:  Good afternoon, Your Honor, Jami

3    Nimeroff, counsel for Triumph Financial Services.

4          We are a factor for Arnold Transportation.  So we

5    are a U.S.-based company out of Texas with a U.S. -- entirely

6    U.S.-based company that is involved in this -- you know, an

7    applicant in the CCAA.  So I, as my colleagues before me,

8    stand here as someone who doesn't know all that much exactly

9    about what's going on in the CCAA or the implications

10   thereof, but, Your Honor, as counsel for the debtors stated,

11   there was -- we are -- the DIP charge is subordinated to

12   Triumph through language in the A&R order to the tune of,

13   it's three million Canadian dollars.  It is a temporary

14   solution that was reached at the last hearing, contemplating

15   that there would be further relief in connection with the

16   April 19th hearing.  We are working through those issues,

17   Your Honor, both with respect to prepetition collateral and

18   then future factoring that the company is looking for.

19         So, with respect to this issue that's been raised

20   by Mr. Meloro and Mr. DeBaecke, I similarly rise just to say,

21   to the extent Your Honor is granting some provisional relief

22   today, given the fluid nature of what's going on with my

23   client and Arnold, I would like to just reserve rights, to

24   the extent there's any priming, that we be entitled to object

25   to that with regard to the further hearing that's coming up

1   and be similarly situated to my colleagues.

2          THE COURT:  Okay.

3          MS. NIMEROFF:  Thank you.

4          THE COURT:  Thank you, Ms. Nimeroff.

5          MR. BARTLEY:  Good afternoon, Your Honor, Ryan

6   Bartley on behalf of various Regions entities.  Our clients

7   have two respective facilities and you did hear from my co-

8   counsel at the first day hearing.

9          We did file a limited objection shortly before the

10  hearing and we have concerns that are similar to those voiced

11  by the other financiers.  Regions is an equipment financier

12  and also a financier under a securitization facility.  Our

13  concern goes beyond the relief with respect to priming and

14  it's that we believe the relief here is out of bounds as it

15  relates to the non-debtor entity.

16         Specifically, Your Honor, there is an entity,

17  TPine Leasing Capital LP, you heard about at the prior

18  hearing that was an ineligible to be a debtor in the Canadian

19  proceeding and is not a debtor under any chapter here.  Our

20  concern is granting relief under Section 364 of the

21  Bankruptcy Code with respect to borrowing by a non-debtor and

22  liens and collateral and assets against that non-debtor.

23         So, Your Honor, I want to address some of the

24  concerns you raised --

25         THE COURT:  Let me ask --

1          MR. BARTLEY:  Yes.

2          THE COURT:  -- are you concerned about collateral

3   that is located in the United States?

4          MR. BARTLEY:  Yes, Your Honor.  With respect to at

5   least our securitization, all of the assets are in the United

6   States.  So, to the point the Court has raised, the relief

7   that we're concerned about is U.S.-based assets owned by a

8   U.S.-based non-debtor.

9          And I want to start with the question the Court

10  asked, which is, is it too late to undo this?  And one of the

11  relief -- one of the forms of relief that's being sought is

12  relief under Section 364(e).  As the Court knows, once liens

13  are granted and the protections of 364(e) extend to those,

14  those can't be un-rung.  So our concern is that loans are

15  made -- and as we heard earlier in the presentation, there is

16  a final DIP order, so there's the ability to lend to that

17  debtor against that collateral and, if that can be

18  whitewashed with a 364(e) order if there are some disputes in

19  the future, we're stuck with the arguments that 364(e)

20  completely protects those.

21         So, Your Honor, the objection that the Regions

22  entities have are extending the protections of 364 to non-

23  debtors and non-debtor assets, and we believe that that's

24  relief that goes beyond merely recognizing the entry of the

25  order in the Canadian proceeding and giving effect to that

1 because I don't believe that order has 364 protections.  It's

2 substantive affirmative relief that we understand the Monitor

3 to be seeking with respect to those entities.

4         So we did propose a carveout, it's in the form of

5 order that's attached, and I'm happy to approach with our

6 objection, Your Honor.  May I do that?

7         THE COURT:  You may.

8     (Pause)

9         THE COURT:  Thank you.

10        MR. BARTLEY:  I think I gave too many out, Your

11 Honor.

12        I mean, I think at bottom, Your Honor, you'll see

13 the very last page, we'd like the order to say,

14 notwithstanding anything herein to the contrary, nothing in

15 this order shall grant any protections or relief under

16 Section 364 of the Bankruptcy Code with respect to the

17 property of any non-debtor.  You know, in an analogous

18 Chapter 11 context the Court wouldn't be able to enter a DIP

19 order authorizing a non-debtor to borrow, blessing liens

20 granted on an assets of a non-debtor.

21        So, Your Honor, those are our issues.  I'm happy

22 to address any questions the Court has, but that's the -- in

23 sum and substance, what our concern is and the relief we --

24        THE COURT:  Okay, I understand your point.

25        MR. BARTLEY:  Thank you.

1          THE COURT:  Thank you.

2          Anyone else?

3          MR. TETRO:  Good afternoon, Your Honor, Steven

4   Tetro of Chapman and Cutler on behalf of Royal Bank of Canada

5   as the prepetition agent under the prepetition syndicated

6   facility and as the proposed DIP agent under the proposed DIP

7   facility.

8          THE COURT:  Good, you're the person I want to talk

9   to.

10          MR. TETRO:  I rise -- first of all, Your Honor, my

11   intention was to address Mr. Fox's issues.  I think some of

12   the other issues that have been raised we certainly have a

13   view on, but the estate's counsel may want to speak to before

14   we do.  So --

15          THE COURT:  Fair enough.

16          MR. TETRO:  -- I could speak to Mr. Fox's issue

17   first or --

18          THE COURT:  I'm happy to -- well, why don't you

19   start wherever you want and I'm not shy if I want to ask you

20   something else.

21          MR. TETRO:  For sure.  So, Your Honor, first of

22   all, with respect to the issue raised by the United States

23   Trustee, a couple things I'd like to point out.  First of

24   all, as has been mentioned, this relief has been entered in

25   other cases.  I do want to point out, though, that in at

1   least one of those other cases, the Office of the U.S.

2   Trustee -- we reviewed the transcript in addition to the

3   order and the Office of the U.S. Trustee raised some issues,

4   and some additional protective language was added with

5   respect to a provisional basis, we've included that language

6   in our proposed language in this order.

7              THE COURT:  Show me.

8              MR. TETRO:  The language at the beginning of

9   paragraph 11, the "effective on a provisional basis upon

10  entry of this order, to the extent precluded by or provided

11  for under the Canadian order," that's the language that

12  resolved the issue as raised by the U.S. Trustee in the -- I

13  believe it was the Hematite Holdings case in Delaware.  My

14  point, Your Honor, is to say, while I know the Office of the

15  United States Trustee is worried about sort of mission creep

16  with respect to additional language, we tried to be careful

17  to not add additional bells and whistles and try to -- you

18  know, try to creep the mission.  We tried to --

19             THE COURT:  So, can I ask this, what -- as a

20  practical matter, what is this getting you, like in the real

21  -- I understand to the extent it exists in some other --

22  you've got a client, I get it, there are orders in which

23  people get this, I want to get it too, I'm not faulting

24  anyone for that, that's life, but in terms of your client's

25  economic interests, if this relief instead of saying

1  effective on a provisional basis upon the entry of this

2  order, to say, you know, unless the Court orders otherwise,

3  effective upon the granting of recognition, so that it works

4  the way we normally do in Chapter 11 and this sort of relief

5  is second day relief, not first day relief --

6           MR. TETRO:  Yeah.

7           THE COURT:  -- like have we actually harmed your

8  client?

9           MR. TETRO:  Well, you know, factually, I don't

10  know -- I mean, hopefully not, Your Honor, I don't know.  As

11  you point out, it is a little bit different than in the

12  interim order because this relief has, at least in Canada,

13  been entered on a final basis with the --

14           THE COURT:  Yes, and as to collateral located in

15  Canada, that is what it is --

16           MR. TETRO:  Yeah.

17           THE COURT:  -- and I'm not, you know, second

18  guessing anything there, but the reason you're asking for

19  relief, the reason the foreign representative is asking for

20  relief here is that some of the collateral is located in the

21  United States, and what you're looking for is an order that

22  invokes 364 and, therefore, if you want that protection,

23  you've got to play by those rules, right?  I mean, that's

24  only fair.

25           MR. TETRO:  Yeah.  I would say the other piece of

1   that, Your Honor, is -- here's how we view this big picture,

2   right, is what we're hoping is that -- and what the estate is

3   asking and we're asking is that this Court will give effect

4   to the Canadian order, what we -- and it's on the basis of

5   that sort of DIP structure that's been approved in Canada

6   that the DIP has been negotiated to be provided.

7           And what we were doing at least with this language

8   was to not allow some -- you know, this language wouldn't be

9   as is appropriate in a Canadian order, obviously, because it

10  deals with issues and it deals with provisions of the

11  Bankruptcy Code and matters that can be raised in the U.S.

12  court, and what we don't want is sort of a back door that

13  undermines what's being done under the Canadian order.  We

14  view this language as supportive of the Canadian order such

15  that, if the Canadian order is given provisional effect to by

16  this Court, this helps with that.  That's our perspective.

17          THE COURT:  No, and I understand that.

18          MR. TETRO:  Yes.

19          THE COURT:  And, look, I've done my best to wrap

20  my head around the construct of Chapter 15 here and it's a

21  little bit complicated --

22          MR. TETRO:  Yes.

23          THE COURT:  -- right?  Because on the one hand, if

24  you view it purely as a matter of comity, we're just going to

25  respect there's a foreign court, it's a real court, they have

1  a real process, people have a right to appear there and be

2  heard and, to the extent there's a challenge to its order,

3  we're going to with respect to assets in the United States

4  respect that order as a matter of comity and respect for the

5  foreign court, and if that's all anyone was asking me to do,

6  it would be reasonably noncontroversial  The catch is that,

7  once you start invoking provisions of the United States

8  Bankruptcy Code and getting protections that U.S. law

9  provides that isn't -- you know, where the source of

10  authority is my order, not my respect for someone else's

11  order, then I feel like when someone comes in and says, well,

12  for a U.S. case you wouldn't do this on this basis, then I've

13  got to listen to them.

14         So I'm not trying to be disrespectful of the

15  Canadian court at all and if all you were asking for was to

16  say what happens there is valid and, if someone tries to

17  violate it, our doors are open to enforce that order, I

18  wouldn't have any problem with that, but you're asking for

19  something slightly more than that, which is to me -- which is

20  it opens the door to the objections that we're hearing.

21         MR. TETRO:  Fair enough, Your Honor, and I -- in

22  this sort of procedural context, which is not exactly like an

23  interim DIP order, but is also not exactly like a final DIP

24  order --

25         THE COURT:  Right.

1          MR. TETRO:  -- we sort of view the provisional

2    basis of this order as being sufficient to sort of address

3    those concerns, but --

4          THE COURT:  I hear you, and what I'm contemplating

5    is language to make clearer that this provisional and that as

6    to the relief that wouldn't otherwise be available on an

7    interim basis that it be granted pend -- that it's grant --

8    that it would be granted only upon the entry of recognition,

9    not in the meantime.

10         That's what I'm thinking about, but I want to give

11   everyone a chance to be heard.

12         MR. TETRO:  Yeah, that's -- there's a bit of a

13   substantive difference there of course, Your Honor, and I

14   don't know -- you know, I heard you ask practically earlier,

15   practically, how would that play out, I -- you know --

16         THE COURT:  I understand.  Look, I understand --

17         MR. TETRO:  Yeah.

18         THE COURT:  -- we've all had first day hearings

19   before and I understand that when you're in this situation,

20   you give the lender the option of not lending, and no one

21   likes that.  And the reason I asked the practical questions

22   is I don't think anyone here is irrational and, if this is

23   purely a matter of sort of an abstract point where no one's

24   economic stake, you know, is going to be affected, I'm not

25   opposed to accepting the concerns about lightly changing what

1  is market standard because I think those points are real.

2  And because sometimes I've been in cases -- this may surprise

3  you -- in which people stand up and point me to orders that

4  were entered, but in other courts, as evidence as to what is

5  appropriate and when -- therefore, when I'm asked to enter an

6  order, I think I need to pay attention to the consequences of

7  entering the order.

8            MR. TETRO:  No, understood, Your Honor,

9  understood.

10           THE COURT:  Okay, very well.

11           MR. TETRO:  Okay, I'll sit back down --

12           THE COURT:  Okay, very well.  Thank you.

13           MR. TETRO:  -- and let the estate respond, and I

14  expect I'll be back.  Thank you, Your Honor.

15           THE COURT:  Okay, very well.  Thank you.

16           So you've got a handful of topics, I think you

17  probably know what they are.  So why don't I let you start

18  and when -- to the extent there are topics that I'm worried

19  about that you haven't hit on, I'll ask you about them.

20           MR. HUNKER:  Sure.  Thank you, Your Honor.

21           So, first, I agree with Mr. Tetro that the

22  provisions that we've included in the provisional relief

23  order approving the DIP facility in the United States are

24  designed to be, to the extent possible -- and, obviously, the

25  provisions of the Bankruptcy Code do not apply in Canadian

1  court, but to the extent possible they're designed to be

2  consistent with and coextensive with the relief that was

3  granted by the Canadian court, particularly with respect to

4  the charges and the liens that were granted in favor of the

5  DIP agent by the same entities, by the same group entities,

6  and over the same collateral.

7          As Your Honor I think correctly pointed out, all

8  of the parties had an opportunity to appear before the

9  Canadian court, raise their objections.  Some of them did, my

10 understanding is Daimler was not one of them --

11         THE COURT:  Okay, so can we start there?

12         MR. HUNKER:  Sure.

13         THE COURT:  So -- again, I'm sorry -- you've

14 carved out -- you're thoughtful and intentional about not

15 priming with respect to the DIP charge and all of that, but

16 there's this quirk about the intercompany loans.  Is that

17 something that you need or is that just like a weirdness that

18 no one picked up on?

19         MR. HUNKER:  No, I think, particularly with

20 respect to -- and I think that was Daimler's counsel's --

21         THE COURT:  Right.

22         MR. HUNKER:  -- comment -- so, practically, I

23 don't think it makes a difference economically.  The entity

24 that Daimler is facing is TPine Capital Leasing LP --

25         THE COURT:  Okay.

1    MR. HUNKER:  -- which is a borrower under the DIP

2 facility.  So, as a practical matter, there isn't any present

3 intention to have any intercompany transfers at all because,

4 to the extent that leasing capital requires funding, it can

5 just obtain it as a borrower --

6    THE COURT:  Right.

7    MR. HUNKER:  -- under the DIP.

8    THE COURT:  And you understand, right, that to the

9 extent you're invoking 364 and you're getting a lien that

10 primes another secured creditor, and you're doing it under

11 U.S. bankruptcy law, you've got an obligation to demonstrate

12 adequate protection and the burden is on you, and you've

13 presented no evidence that suggests the adequate protection,

14 right?

15    MR. HUNKER:  That's correct, Your Honor.

16    THE COURT:  Okay.  So don't you think we need to

17 solve that problem?

18    MR. HUNKER:  Yes, I would agree with that.

19    THE COURT:  How do you propose we solve that

20 problem?

21    MR. HUNKER:  I mean, Daimler's counsel has raised

22 its issue in the form of a reservation of rights, so I think

23 --

24    THE COURT:  Right, but I asked them, are you

25 really reserving your rights or are you objecting, because I

1  didn't understand it, and they said I'm objecting.  So, here

2  we are.

3          MR. HUNKER:  Yeah.  So just on that point, Your

4  Honor, to the extent that any modifications need to be made

5  to the scope of the liens and charges granted by the Canadian

6  court order, parties do have an opportunity to go back to the

7  Canadian court and request a modification of the order to the

8  extent that, you know, additional kind of carveouts for

9  priming --

10          THE COURT:  Okay, and that's terrific --

11          MR. HUNKER:  -- of the liens --

12          THE COURT:  -- as to the order that's going to be

13  entered in Canada, that's great, but to the extent that

14  you're asking me for an order, how do I solve the specific

15  problem?

16          I mean, I could write a sentence that says nothing

17  herein operates to prime a secured creditor, you know,

18  pending final recognition, and then the parties could have

19  until May 2nd to try to figure this out and, if there's a

20  dispute on May 2nd, I can deal with it.  That's one thing I

21  could do.  You have a better thing?

22          MR. HUNKER:  Your Honor, I think we'd need to

23  consult with counsel to the DIP agent on that point.

24          THE COURT:  Okay, that's fair.  Okay.  So let's

25  put a pin in that one.

1          Now let's talk about the non-debtor entity.  So

2    what do -- are you asking for approval under Section 364 to

3    authorize post-petition liens on assets that are not debtor

4    assets?

5          MR. HUNKER:  Well, I would kind of couch it

6    slightly differently, Your Honor.  I would say that what we

7    are asking for is enforcement of the Canadian court's

8    authorization to all of those -- all of the group entities

9    that have granted liens and charges on their assets,

10   enforcement of that order in the United States under Section

11   1519 --

12          THE COURT:  So --

13          MR. HUNKER:  -- on a provisional basis.

14          THE COURT:  So 1519 doesn't say anything about

15   364, right?

16          MR. HUNKER:  Correct.

17          THE COURT:  Okay.  So here too I guess I have a

18   question of -- let me ask my question this way.  Look, I want

19   to be pragmatic and commercial and get everyone through their

20   day, but I also want to be respectful of people's rights, and

21   I'm trying to find the appropriate way to strike a balance

22   that is not pointy-headed, but also doesn't run roughshod

23   over people who are making fair arguments.

24          So, with respect -- what you're saying is, with

25   respect to -- so let's go back to sort of my first set of

1  points that I made at the original hearing because I am --

2  the way -- I've done a little bit of thinking about this and

3  reading about the way this works, right?  And so,

4  traditionally, you recognize a proceeding and you enforce an

5  order, and most of the law that arises in cases that involve

6  enforcing the order arises when someone is violating the

7  order, right?

8          So if some action is being taken in the United

9  States that's inconsistent with an order that's entered in

10 Canada, basically, I'm here.  And once I've recognized the

11 proceeding, it means my doors are open and, if someone is

12 violating that, come to me, and we're respectful here of what

13 happens in Canada and we're going to enforce their orders.

14         What you're asking me today is in that vein, but

15 it's slightly different because you want me basically to pre-

16 enforce the order.  And I've got a little bit of concern

17 about that, particularly on so little notice and particularly

18 because the relief we grant without much notice is meant to

19 be only what is absolutely necessary, and here that the

20 lender demands it doesn't count or nearly doesn't count.

21 What means necessary is like you can explain to me why

22 rationally this has to be done now.

23         And so I confess to be struggling, but what I'm

24 struggling with is a way to deal with this in a way that is

25 commercially reasonable, but does as little pre-deciding of

1   disputes that haven't arisen as is absolutely necessary.  I

2   don't know if I'm making any sense to you, but --

3          MR. HUNKER:  No, absolutely, Your Honor.

4          THE COURT:  So what would be helpful would be a

5   conversation about a path that could be taken that would not

6   blow up the bankruptcy case, but also wouldn't run over

7   people who have fair concerns, particularly to the extent

8   you're asking for relief under U.S. bankruptcy law as to

9   which you wouldn't get under U.S. bankruptcy law.

10          So let's just take this in pieces.  So I think

11  there are three pieces, as I understand it.  One piece is the

12  U.S. Trustee's concern about, you know, surcharging

13  collateral and equities of the case, and the like.  And I

14  think the solution to that, again, is likely that that is

15  relief that becomes effective upon the entry of a recognition

16  order, not immediately.  And it's, you know, obviously

17  without prejudice to anyone's rights to object between now

18  and the entry of a recognition order.

19          Without respect to the lien, the priming lien, I

20  think it's language that makes clear that nothing herein

21  operates to prime an existing lien pending final recognition.

22  And, again, to the extent there are issues that need to be

23  addressed between now and then, we'll deal with it.  And,

24  upon final recognition, you're going to have the same problem

25  under 364, which is either you show adequate protection or

1   you don't prime -- or you could choose not to invoke 364,

2   which is another solution.  Because, again, I don't have any

3   quarrel with the notion that, to the extent the order has

4   been entered in Canada, our doors are open to enforce it if

5   someone violates that order.

6         Then the last piece is liens on collateral that is

7   owned by a non-debtor.  And there it seems to me that

8   language that limits that relief to recognition and

9   enforcement of the Canadian order, to the extent there's a

10  claimed violation of the Canadian order, is the most

11  appropriate path through this, rather than my saying, under

12  Section 364 of the United States Bankruptcy Code, you now,

13  the debtor -- the foreign representative has authority to

14  lien up assets of an entity that is neither a debtor in front

15  of me nor an applicant under the CCAA.

16        Does that approach make sense to you?

17        MR. HUNKER:  Yes, Your Honor.  I think -- could I

18  suggest that we confer with the parties that have raised --

19        THE COURT:  Absolutely.  No, what I'm suggesting

20  is have I give you a framework that allows you to talk and

21  see if it might be a basis for an order that I can enter --

22  again, I'm not saying everyone needs to love it, but that

23  would not blow up the case and not run over everyone's right?

24        MR. HUNKER:  Yeah, I think that's a common goal

25  that all of us have today, Your Honor.

1          THE COURT:  All right.  So I have another hearing

2    at 3:30, but that I don't expect to last very long.  What if

3    I gave all of you 45 minutes or an hour, is that reasonable,

4    to see if you can work through the language?  Or would you

5    rather do this, would you rather I send you all back to your

6    offices and you can deal with this separately and send me an

7    order under certification?  What's your preference?

8          MR. HUNKER:  I mean, subject to views of others,

9    my preference would be to try to resolve this now.

10          THE COURT:  That's what I thought.

11          MR. HUNKER:  We do need the funding urgently --

12          THE COURT:  Right.

13          MR. HUNKER:  -- and the deadline for the CP is

14    tomorrow, so --

15          THE COURT:  Exactly, and I want to be responsive

16    to that.  So what if I gave all of you an hour to have a

17    conversation to see if you could hash out language along the

18    lines of my suggestions?  And if we can get there, great, and

19    if at 4 o'clock you've got disputes you need me to resolve, I

20    am prepared to do my job.  Is that --

21          MR. HUNKER:  Yes, I think that makes sense, Your

22    Honor.

23          THE COURT:  Okay.  Is there anyone who has a

24    different view of how it makes sense to proceed?

25          (No verbal response)

1          THE COURT:  Okay, it looks like no one is at least

2  willing to tell me they think I'm an idiot.

3          So, all right.  So, look, this is helpful.  I hope

4  that this guidance is useful to the case.  Why don't we

5  recess and then I'm happy to see you again at 4 o'clock.

6          So, until then, we're in recess.  Thank you.

7          MR. HUNKER:  Thank you, Your Honor.

8      (Recess taken at 3:00 p.m.)

9      (Proceedings resumed at 4:20 p.m.)

10          THE COURT:  Be seated.

11          MR. HUNKER:  Good afternoon, Christopher Hunker

12  from Linklaters on behalf of the foreign representative.

13          THE COURT:  Thank you, Mr. Hunker.

14          MR. HUNKER:  Your Honor, thank you very much for

15  your comments and feedback on the issues with respect to the

16  proposed order and the issues that the parties have raised.

17          We have conferred with the DIP agent and we have

18  concluded that we do need a bit more time to resolve issues.

19  So we would like to ask the Court for time on Tuesday next

20  week --

21          THE COURT:  Okay.

22          MR. HUNKER:  -- if the Court has availability.

23          THE COURT:  I do.  And I understand that during

24  the break you were able to confer with Ms. Barksdale and

25  Tuesday we were talking about -- is it 2:00 p.m., is that

1   what we were talking -- is that agreeable to the parties?

2           MR. HUNKER:  Yes, that's my understanding, Your

3   Honor.

4           THE COURT:  Okay, if that works for you, that's

5   certainly fine with me.

6           MR. HUNKER:  Okay.  Thank you very much, Your

7   Honor.

8           THE COURT:  Okay.  I take it that the DIP lender

9   has agreed to -- that to waive the condition that the order

10  be entered by tomorrow in order to permit this discussion to

11  continue?

12          MR. HUNKER:  We've raised that request, Your

13  Honor.  I don't want to speak for Mr. Tetro, so I will cede

14  the podium --

15          THE COURT:  Okay.

16          MR. HUNKER:  -- to him.

17          MR. TETRO:  Your Honor, Steven Tetro on behalf of

18  the Royal Bank of Canada.  What we -- this is sort of

19  happening in real time, so we're making that request formally

20  to our lenders --

21          THE COURT:  Okay, understood.

22          MR. TETRO:  Yes.

23          THE COURT:  Okay, okay.

24          MR. TETRO:  Thank you, Your Honor.

25          THE COURT:  Okay.  So this approach makes good

1  sense to me.  I guess if there's anyone else who would like

2  to be heard, let me give them that opportunity.

3          MR. HUNKER:  Your Honor, with respect to the

4  hearing on Tuesday at 2:00 p.m., if we're able to achieve

5  consensus with all of the parties that have raised issues, we

6  would request to have that hearing by Zoom, if possible.

7          THE COURT:  No problem.  So here are my rules.

8  For first days, we proceed, you know, by Zoom; otherwise,

9  we're in person if there's a contested dispute for something

10  that is about something other than discovery.  So if there's

11  a discovery dispute, my chambers procedures say you can write

12  a letter, we'll get on a Zoom.

13          If there's a motion, if it's contested, we're

14  here, but if it's consensual and all you need to do is put

15  things on the record or explain something to me, then I'm

16  totally comfortable doing that by Zoom.

17          So it does require you to decide whether you have

18  a deal in time to either get on planes or not, and I

19  appreciate that's sometimes complicated, but that's the

20  principle.  So, if it's a consensual hearing and you just

21  need to explain what it is and ask me to sign an order, I'm

22  happy to do that by Zoom.  If we're going to have an

23  argument, we're going to do that here.

24          MR. HUNKER:  Okay.  Thank you very much, Your

25  Honor.

1          THE COURT:  Okay?  Anything else that I can do to

2  be helpful between now and Tuesday?

3          MR. HUNKER:  I think that's all we have for today.

4          THE COURT:  Okay.  Any other party in interest who

5  would like to be heard with respect to any other matter in

6  this case?

7      (No verbal response)

8          THE COURT:  Seeing none.  Let me thank all of you

9  for your patience and hard work.  I look forward to hopefully

10  getting to an order that we can sign on Tuesday, and if

11  there's a dispute that requires me to do my job, I'm also

12  happy to do that.

13          So, with that, and thanks really to all of you.

14      (Proceedings concluded at 4:23 p.m.)

15

16

17

18

19

20

21

22

23

24

25

1                      CERTIFICATION

2          We certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of our

5    knowledge and ability.

6

7    /s/ William J. Garling                April 12, 2024

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12   /s/ Tracey J. Williams                April 12, 2024

13   Tracey J. Williams, CET-914

14   Certified Court Transcriptionist

15   For Reliable

16

17

18

19

20

21

22

23

24

25