```
 1                  UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
 2

 3   IN RE:                      .  Chapter 15
                                 .  Case No. 24-10632 (CTG)
 4   PRIDE GROUP HOLDINGS, INC., .
     et al.,                     .  (Jointly Administered)
 5                               .
                                 .  Courtroom No. 7
 6                               .  824 North Market Street
                                 .  Wilmington, Delaware 19801
 7      Debtors in a Foreign     .
        Proceeding.              .  Tuesday, April 16, 2024
 8   . . . . . . . . . . . . . .  2:00 p.m.

 9                       TRANSCRIPT OF HEARING
               BEFORE THE HONORABLE CRAIG T. GOLDBLATT
10                  UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   For the Debtors:           Derek Abbott, Esquire
                                Andrew Remming, Esquire
13                              MORRIS, NICHOLS, ARSHT
                                  & TUNNELL LLP
14                              1201 North Market Street
                                16th Floor
15                              Wilmington, Delaware 19801

16                              Christopher Hunker, Esquire
                                LINKLATERS LLP
17                              1290 Avenue of the Americas
                                New York, New York 10104
18
     (APPEARANCES CONTINUED)
19
     Audio Operator:           Ian Willoughby, ECRO
20

21   Transcription Company:    Reliable
                                The Nemours Building
22                              1007 N. Orange Street, Suite 110
                                Wilmington, Delaware 19801
23                              Telephone: (302)654-8080
                                Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

<pre>
 1  APPEARANCES (CONTINUED):

 2  For Triumph Financial
    Services:                   Jami Nimeroff, Esquire
 3                              BROWN MCGARRY NIMEROFF LLC
                                Two Penn Center, Suite 610
 4                              1500 John F. Kennedy Boulevard
                                Philadelphia, Pennsylvania 19102
 5
    For Royal Bank of
 6  Canada, as Agent:          Stephen Tetro, II, Esquire
                                CHAPMAN & CUTLER LLP
 7                              320 South Canal Street
                                27th Floor
 8                              Chicago, Illinois 60606

 9  For Regions:               Ryan Bartley, Esquire
                                YOUNG CONAWAY STARGATT & TAYLOR LLP
10                              Rodney Square
                                1000 North King Street
11                              Wilmington, Delaware 19801

12

13

14

15

16

17

18

19

20

21

22

23

24

25
</pre>

1

INDEX

MOTIONS:                                                    PAGE

Agenda
Item 2:  Second Motion of the Foreign                         5
         Representative for Order Directing
         Joint Administration of Chapter 15
         Cases and Related Relief
         (D.I. 102, filed 4/15/24)

         Court's Ruling:                                       8

Agenda
Item 1:  Motion of the Foreign Representative                  8
         for Entry of an Order Granting
         Provisional Relief in Connection with
         Debtor in Possession Financing and
         Certain Protocols Pursuant to Sections
         105(a) and 1519 of the Bankruptcy Code
         (D.I. 70, filed 4/9/24)

         Court's Ruling:                                      38

1          (Proceedings commenced at 2:00 p.m.)

2               THE COURT:  Thank you, Mr. Remming.

3               Mr. Hunker.

4               MR. HUNKER:  Good afternoon, Your Honor.

5     Christopher Hunker from Linklaters on behalf of the foreign

6     representative.  I am joined today in the courtroom by my

7     partner, Penelope Jensen, and Mr. Benson, our declarant, is

8     on the line as well.  We would like to thank the Court for

9     permitting him to attend this continued hearing remotely

10    today.

11              Before providing and update on where things stand

12    we do want to thank Your Honor for providing the guidance

13    that we received at last week's hearings and for giving us

14    the time to work with the parties on a revised form of order.

15    We also want to thank the parties for working constructively

16    with us over the past few days to address the open issues

17    which I think fall into three buckets.

18              First, was the U.S. Trustees objection to the

19    inclusion of certain relief related to limitations on

20    surcharge of collateral, marshalling and equities of the

21    case.

22              Second, a number of parties objected to the

23    inclusion of a Section 364 priming lien with respect to the

24    intercompany charge.

25              Third, Regions objected to the inclusion of

1  Section 364 relief with respect to property located in the

2  United States that is owned by non-debtors.

3          I am pleased to report that we have resolved the

4  objections asserted by the United States Trustee, Daimler,

5  and Paccar.  I understand that Triumph and Regions still have

6  objections to the relief that we are seeking today.

7          Your Honor, I have a revised form of order that we

8  believe resolves the open issues that we have agreed to

9  consensually and also, we believe reflects the Court's

10 comments at last week's hearing.  May I approach with a

11 revised form of order and a redline?

12         THE COURT:  Yes, you may.

13         MR. HUNKER:  Thank you, Your Honor.

14         THE COURT:  Okay. You can proceed.

15         MR. HUNKER:  Thank you, Your Honor.  So, taking

16 those three issues that I identified in turn, the foreign

17 representative and the DIP agent have agreed to remove the

18 paragraphs to which the United States Trustee has asserted an

19 objection.  So, you will see we have deleted Paragraphs 10

20 and 11 from the revised proposed order.  The foreign

21 representative and the DIP lenders do reserve their rights to

22 seek that relief in connection with recognition, but we

23 understand from the U.S. Trustee that the deletion of the

24 relief that we are requesting today satisfies their concerns.

25         THE COURT:  Okay.

1          MR. HUNKER:  On the second point with respect to

2  priming the intercompany advance charge we have agreed with

3  Daimler and Paccar to include language in the proposed order

4  to the effect that Tpine Leasing Capital LP will not be an

5  intercompany borrower such that an intercompany charge will

6  not arise with respect to that entity.  That language appears

7  in Footnote 5 of the order.

8          As noted at the initial hearing, Tpine Leasing

9  Capital is a DIP borrower.  So, our expectation continues to

10  be that to the extent that Tpine Capital Leasing requires

11  funding, it will draw directly under the DIP and not require

12  an intercompany transfer.

13          THE COURT:  Okay.

14          MR. HUNKER:  With respect to the broader issue

15  regarding the priming intercompany advance charge Your Honor

16  had suggested two potential solutions at the last hearing.

17  The first would be to provide that the lien does not prime

18  under Section 364 pending recognition or we could choose not

19  to invoke Section 364 relief at all with respect to the

20  priming lien.  We considered those comments together with the

21  parties and decided to withdraw our request for approval of a

22  priming lien under Section 364.

23          So, our revised proposed form of order provides

24  that the relief granted is solely based on enforcement of the

25  Canadian Court order in the United States under Section 1519

1 and principles of international comity.  And to the extent

2 that someone either violates the order or seeks to enforce

3 it, this Court has jurisdiction to resolve those issues.

4          So, we deleted references to Section 364 in

5 Paragraph 5 of the revised order in respect of the approval

6 of the DIP charge, and we added Paragraphs 6 and 7 to the

7 order to make clear that the Court has jurisdiction to

8 enforce the Canadian Court order with respect to US assets

9 and that the order does not grant protections or relief under

10 Section 364.

11          THE COURT:  Okay.

12          MR. HUNKER:  The final issue relates to the

13 granting of liens on collateral located in the United States

14 owned by non-debtors.  To be responsive to that concern we

15 filed a number of additional Chapter 15 cases yesterday in

16 respect of the Real Estate Holding Companies which are

17 applicants in the CCAA proceedings.  Those entities were

18 already included in the relief that we were seeking in the

19 provisional relief motion because they are Pride entities

20 that benefit from the protections granted by the amended and

21 restated initial order in Canada, but we filed those entities

22 as Chapter 15 debtors to be responsive to the Court's and

23 parties concerns.

24          In that regard, we filed a second joint

25 administration motion at Docket No. 102 seeking joint

1    administration of those additional cases with those already

2    pending before the Court.  I believe that's Agenda Item No.

3    2.  The relief sought in that motion is consistent with the

4    relief already granted in these cases and is customary in

5    cases such as this one.

6          Unless Your Honor has any questions about that

7    motion, we would ask that it be approved.

8          THE COURT:  Let's do the easy part first.  Is

9    there any party in interest that has -- that would like to be

10   heard with respect to the debtor's motion seeking joint

11   administration of the newly filed cases with the ones that

12   were already here.

13        (No verbal response)

14        THE COURT:  Seeing none, I have reviewed the

15   motion and order.  I am satisfied the relief is appropriate.

16   We will enter that order.

17        MR. HUNKER:  Thank you, Your Honor.

18        Back to the harder issues, with respect to the US

19   limited partnerships that are not applicants in the CCAA

20   proceedings we believe our suggested approach to limit the

21   relief that we are requesting to enforcement of the Canadian

22   Court order in the United States rather then extending

23   Section 364 relief is consistent with Your Honor's comments

24   at last week's hearing and will preserve the status quo while

25   enable the debtors to access the DIP financing that they

1   require.

2          As we have set forth in our papers, we believe the

3   relief that we have requested under Section 1519, that is

4   enforcement of the Canadian Court order within the

5   territorial jurisdiction of the Unted States, is appropriate

6   here.  We believe we satisfied the injunctive relief standard

7   for the reasons we have outlined in our papers.  We also

8   believe the enforcement of the Canadian Court order is

9   appropriate based on principles of international comity and

10  we have added that concept to the revised proposed order.

11         The Canadian Court had proper jurisdiction to

12  administer the CCAA proceedings and enter the amended and

13  restated initial order.  That process was fundamentally fair.

14  On notice to creditors the Canadian Court reviewed the DIP

15  term sheet, held a hearing and approved the relief that was

16  requested including approval of the DIP facility and the

17  charges that were granted by the Canadian Court.

18         Both for the remaining objectors, Regions and

19  Triumph, were represented by counsel in the Canadian

20  proceedings, participated in those proceeding, raised issues

21  and were heard by the Canadian Court.  To the extent those

22  parties now wish to challenge the relief that was granted in

23  the Canadian Court this is not the proper forum to do that.

24  The Canadian Court should hear those issues in the first

25  instance and the amended and restated initial order, in fact,

1  provides that parties may apply to the Canadian Court to vary

2  or amend the relief that was granted by that order.

3  Therefore, we believe that the resolutions that we have

4  proposed in a revised proposed order that we have handed up

5  today and circulated to the parties, which is limited to

6  enforcing the Canadian Court order in the United States is

7  appropriate relief.

8        Unless Your Honor has any questions, I would cede

9  the podium to anyone else who wishes to be heard.

10        THE COURT:  Thank you very much, Mr. Hunker.

11        MR. HUNKER:  Thank you, Your Honor.

12        THE COURT:  Let me hear from anyone who else would

13  like to be heard with respect to this matter.

14        MR. BARTLEY:  Thank you, Your Honor.  For the

15  record Ryan Bartley of Young Conaway on behalf of the Regions

16  entities.

17        Your Honor, our concerns continue to persist.  I

18  think what they boil down to is the order encompasses relief

19  that effectuates statutory mootness under Section 364(e) as

20  it relates to non-debtor entities and we continue to object

21  to that.

22        THE COURT:  I've got the redline, show me the

23  provision.

24        MR. BARTLEY:  Sure.  So, first is Paragraph 7, the

25  parenthetical.  We do not object to 364(e) applying to

1    debtors, but with respect to the non-debtor entity we do

2    object to that and we --

3                THE COURT:  Well, I thought the solution was that

4    364 wasn't going to apply at all.

5                MR. BARTLEY:  That was the solution we offered,

6    but as you see here, Your Honor, there is --

7                THE COURT:  I see, there's an exception.

8                MR. BARTLEY:  There's an exception.  And then,

9    Your Honor, we would submit that Paragraph 11, while not

10   invoking Section 364(e) in substance provides the statutory

11   mootness protection that is in Section 364(e) and we don't

12   believe is, otherwise, in Section 1519 or other provisions of

13   Chapter 15.

14               THE COURT:  I see.  Okay.

15               MR. BARTLEY:  So, Your Honor, we primarily object

16   to those two.  With respect to Paragraphs 5, 6, and 8 we do

17   think its appropriate to limit this Court's enforcement to

18   the debtors' assets within the territorial jurisdiction of

19   the United States.  And Paragraph 8 we have some concerns

20   about the language.  I think Paragraph 8 is intended to be a

21   notice provision, but it purports to provide sufficient and

22   conclusive evidence not only of the grant, but the validity,

23   perfection and priority of liens as it relates to the Pride

24   entities which include both the debtors before this Court and

25   the non-debtor entities.

1        So, Your Honor, with respect to 5, 6 and 8 we

2   would submit that any in rem relief in those paragraphs

3   should be limited to the debtors over which this Court and

4   whose assets the Court's exercising in rem jurisdiction.

5        THE COURT:  Okay. I understand that.

6        MR. BARTLEY:  Your Honor, do you have any

7   questions for me?

8        THE COURT:  If we added a new paragraph that said

9   notwithstanding any language to the contrary none of the in

10  rem relief granted herein shall extend to any entity that has

11  not filed a Chapter 15 case before this Court. Does that

12  solve your problem?

13       MR. BARTLEY:  I think it would, Your Honor.  Well,

14  it would so long as it's clear that 364(e) type relief

15  extends to both borrowings and liens.

16       THE COURT:  I was referring there to your concerns

17  with 5, 6 and 8.

18       MR. BARTLEY:  Correct.  Yes, Your Honor.

19       THE COURT:  I guess I am on 364 -- I guess --

20  well, let me ask this question: Does the Canadian order grant

21  -- include language that says, essentially, notwithstanding

22  anything that might happen on appeal this order -- these

23  protections won't be disturbed.

24       MR. BARTLEY:  My understanding is there is an

25  analog in the Canadian order that has similar effect, but

1  obviously --

2             THE COURT:  Okay.

3             MR. BARTLEY:  -- we would argue that doesn't apply

4  to the US assets of the non-debtor entities.

5             THE COURT:  Well, of the non-debtor entities.  I

6  understand that.

7             MR. BARTLEY:  Correct, Your Honor.

8             THE COURT:  I understand that.

9             MR. BARTLEY:  The concern we have is just for

10 background, and this was in our papers, but our clients

11 primarily have relationships with Tpine Capital and another

12 SPV entity, none of which are debtors, none of whose which

13 assets are at least before this Court.

14            THE COURT:  Just to isolate the moving parts let

15 me separate. So, there is one set of questions about which

16 entities are, I guess the term is, applicants in the CCAA

17 proceedings, right.

18            MR. BARTLEY:  Correct.

19            THE COURT:  That is one question. There is a

20 separate question for whose filed a Chapter 15 case before

21 me. So, when you are referring to non-debtors which of those

22 categories are you talking about?

23            MR. BARTLEY:  Honestly, Your Honor, we're focused

24 on Tpine Capital Leasing LP, that is the party that Regions

25 has business relationships with.

1           THE COURT:  Okay.  That is not an application --

2    that is neither an applicant under the CCAAA --

3           MR. BARTLEY:  Correct.

4           THE COURT:  -- nor has it filed a Chapter 15 case.

5           MR. BARTLEY:  Correct.  So, the solution that was

6    reported to you went almost there except for the one entity

7    that we care the most about.

8           THE COURT:  Okay.

9           MR. BARTLEY:  So, it continues to be an issue for

10   us.

11          THE COURT:  Okay. So, let's back up then.  Your

12   concern about the invocation of 364(e) would -- your only

13   raising that as it applies to the entities that are not

14   debtors either in -- that are not a CCAA applicant or Chapter

15   15 debtors.

16          MR. BARTLEY:  Correct, not a party in any Courts

17   insolvency.

18          THE COURT:  Slow down. To the extent the Canadian

19   Court, right, authorized protections for that entity and I

20   presume authorized -- is it right that the order entered in

21   Canada authorized the pledge of that asset -- that entities

22   assets.

23          MR. BARTLEY:  My understanding is it did authorize

24   the liens that are being sought here.

25          THE COURT:  Okay.  So, this is where this gets

1  complicated --

2          MR. BARTLEY:  Correct.

3          THE COURT:  -- because you had a chance to be

4  heard there that it shouldn't do that, right?

5          MR. BARTLEY:  There was a hearing, there's the

6  ability to go back and seek that relief.  Your Honor, I would

7  submit here they need to come to this Court to get the

8  protection that they are seeking under the US bankruptcy code

9  as to the US assets.

10         THE COURT:  Okay.  As to the US assets, if they

11  want protections under the US bankruptcy code they need to

12  meet the standards provided for under the US bankruptcy code.

13  It doesn't sound like anyone suggested that they have done

14  that.  So, let's assume we are not getting protections under

15  the bankruptcy code, but if what they want is me to say to eh

16  extent an order was entered in Canada and someone acts in the

17  United States in a way that would violate the language of an

18  order entered in Canada we are going to respect that order

19  and we are going to respect it even if the relief granted

20  might be different then what we would have granted in the

21  United States.  That is heartland of what comity is about,

22  no.

23         MR. BARTLEY:  Correct, Your Honor.

24         THE COURT:  So, tell me where -- so -- okay, so is

25  there a conceptual problem or is it a language problem?

1      MR. BARTLEY:  I think there's a conceptualize

2  problem which is this Court's being asked to give Section

3  364(e) type relief which is a bell that can't be unrung.

4      THE COURT:  All right.  So, let's slow down. And I

5  apologize for being the slowest one in the room.  When you

6  say 364(e) type relief, so I want to separate here and be

7  more precise. To the extent you have got a problem with my

8  invoking 364(e) I hear you.  That sounds to me like they are

9  going to have to explain why they are entitled to it and I'm

10 dubious.  To the extent 364(e) type relief has been granted

11 in Canada and they want me to say that order is enforceable

12 here then I don't understand what the problem with that is.

13     MR. BARTLEY:  The concern from our perspective is

14 if the Court grants Paragraph 11 in this order and at the

15 recognition hearing we're successful in having the Court

16 reconsider relief entered in Canada or the Canadian Court

17 because this order can be revisited in Canada they basically

18 get the backdoor protection of this order.

19     THE COURT:  So, that's a fair point.

20     MR. BARTLEY:  That is the crux of our concern,

21 Your Honor, on this, what I call, the statutory mootness

22 issue.

23     THE COURT:  Okay. If you don't mind, if I can go

24 back to Mr. Hunker so that we can figure out where the bid

25 and ask really is.

1    MR. BARTLEY:  Of course.

2    THE COURT:  All right.  So, Mr. Hunker, you agree

3  that they're entitled in Canada to seek -- to go back and

4  say, hey, undo some of what you did, right?

5    MR. HUNKER:  Correct.

6    THE COURT:  And do you -- are you asking me on

7  purpose to enter an order that would effectively render that

8  a nullity if they were to seek and obtain that relief in

9  Canada?

10    MR. HUNKER:  No. I think to the extent that they

11  went back and sought relief from the Canadian Court and

12  obtained that relief then that relief would be enforceable

13  here.

14    THE COURT:  So, where is there a substantive

15  disagreement between your position and the opposing position?

16    MR. HUNKER:  Well, I think Your Honor hit the nail

17  on the head in terms of what is the appropriate forum in

18  which to litigate those issues and I think the appropriate

19  forum is Canada.  They are free to go back to the Canadian

20  Court and seek to modify the liens that were granted either

21  the entities that are granting them or the scope of the

22  liens, but that is not an issue for this Court to adjudicate

23  or for them to relitigate here or get a second bit at the

24  apple.

25    THE COURT:  Okay.  So, look, conceptually that

1  sounds right to me.  So, let's talk about your parenthetical

2  in Paragraph 7.  What is the basis for that other than that

3  you would like it?

4         MR. HUNKER:  The basis for that, Your Honor, is

5  the -- so, we understood Your Honor's comments at the last

6  hearing to essentially guide us to, in terms of the relief

7  that we are seeking, either subordinating the intercompany

8  charges or dispensing with Section 364 altogether.  With

9  respect to the substantive relief of granting liens under

10  Section 364, Section 364(e) we view as a little bit different

11  in the sense that the lenders that are making advances to the

12  entities that had been authorized to grant liens by the

13  Canadian Court, the lenders require comfort that any advances

14  that they are making will not somehow be undone or their

15  liens be subordinated or challenged.

16         THE COURT:  So, I understand that.  Why isn't the

17  answer conceptually following the principles that I think we

18  have otherwise agreed to, that's really interesting, and they

19  should get whatever protection they are going to get from the

20  Canadian Court and I will enforce here whatever that

21  protection is but there is nothing new that comes out of here

22  arising under US bankruptcy law.

23         MR. HUNKER:  Correct, Your Honor. I think from the

24  company's perspective we would be okay with the substantive

25  relief and I think that is in Paragraph 11.  The substantive

1   relief that gives the lenders that comfort without actually

2   invoking a substantive provision of the US Bankruptcy Court.

3           THE COURT:  And you would have all of that if we

4   struck the parenthetical in Paragraph 7, right?

5           MR. HUNKER:  I think that is right, Your Honor.

6           THE COURT:  All right.  So, I will hear from the

7   lenders, but for now let's assume we are going to strike the

8   parenthetical in Paragraph 7.  So for now, the other question

9   that I have is it seems to me the import of what we are

10  saying is that what Paragraph1 11 ought to say in substance,

11  and I am not dictating language, I am just trying to

12  articulate a concept, is essentially, you know, something to

13  the effect of the validity, etc., shall only be effected by

14  any reversal modification, blah, blah, blah, to the extent it

15  would have that effect in the CCAA proceeding.  So,

16  basically, just to mirror whatever you get in Canada you get

17  here, you get not a drop less, but nor do you get more.

18          I am happy to take a few minutes and come up with

19  language or let you guys come up with language, but it seems

20  to me that that reflects the principles that we have been

21  talking about which is to the extent Canada has a 364 -- I'm

22  sorry, a 346(e) concept then that is enforceable here.  To

23  the extent they can go back to Canada and get some protection

24  -- and get something back then they don't lose that ability

25  here.  Why isn't that the conceptually correct way to deal

1   with it in light of what you have described as the approach

2   you're taking?

3          MR. HUNKER:  I think substantively that is the

4   relief that we are seeking. Obviously, the DIP lenders are

5   affected by it.

6          THE COURT:  I will give them a chance to be heard,

7   but -- okay, so I think I understand what your answers to my

8   questions are and I do want to hear from the DIP lenders, but

9   let me first hear from the objectors if language to this

10  effect -- I am not asking you if you are delighted by it, but

11  I am asking if it will -- if it fairly addresses the concerns

12  you have raised.

13         MR. HUNKER:  Thank you, Your Honor.

14         THE COURT:  Thank you.

15         MR. BARTLEY:  You Honor, our issue with that is we

16  don't have recognition and we still are in this interim

17  period.  We may come back and ask the Court to deny

18  recognition with respect to this entity.

19         THE COURT:  Nothing here purports to prejudice you

20  right to do that, does it?

21         MR. BARTLEY:  My only concern is, is this bell

22  rung with the entry of this order because the Canadian Court

23  has decreed that there is this protection under Canadian law

24  that we may come in and say under US law it should be given

25  effect to.

1         THE COURT:  So, just to be clear, whatever we are

2    doing on an interim basis is pending recognition and if

3    recognition is denied then that has the effect it has.  I

4    don't think -- I am happy to think more about that.  Let's

5    puzzle through that.

6         So, there is a case in Canada, the debtor needs to

7    borrow. They are borrowing in Canada under the proceedings in

8    Canada.  We haven't yet made a determination on recognition,

9    but we have granted interim recognition. So, the question is

10   can they get protections in the meantime?  You are saying

11   whatever protections they get -- look, here is what we do in

12   the United States all the time is we say when we grant

13   interim approval to something we expressly reserve the

14   authority to determine an appropriate remedy in the event we

15   deny final recognition.  We cross that bridge if and when we

16   get there.  That seems to me to be the appropriate response

17   here.

18        Language that we have that, you know, in a typical

19   interim DIP order that says nothing herein shall prejudice or

20   limit the Court's authority to craft an appropriate remedy in

21   the event that it here would be denies final recognition.

22   Language -- we do language like that in interim DIP orders,

23   you know, all day long and that seems to me the analogous

24   protection that we would be talking about here.

25        MR. BARTLEY:  Your Honor, the protection you are

1   describing is fine for Regions.  Our concern is just that

2   there is a specific provision of the code and there's only

3   two or three of them that I am aware of that protect

4   transactions that are entered into while orders are on the

5   docket.

6              THE COURT:  I understand.

7              MR. BARTLEY:  As long as we can make sure that --

8              THE COURT:  You're talking there about 364(e)?

9              MR. BARTLEY:  364(e), 363(m) those are the types

10  of provisions --

11             THE COURT:  Those aren't being invoked.

12             MR. BARTLEY:  Okay. So, if what the Court has

13  described, as long as we have our day in Court to challenge

14  these issues on May 2nd, I think that Regions can be

15  comfortable with the order.

16             THE COURT:  Look, this is where I am tentatively.

17  I want to be practical and commercial as well as respectful

18  to peoples rights.  So, I understand the lenders want to be

19  heard and I want to not rule before I give them that chance.

20  I appreciate that.

21             MR. BARTLEY:  Thank you, Your Honor.

22             THE COURT:  Let me hear from Ms. Nimeroff.

23             MS. NIMEROFF:  Good afternoon, Your Honor. Jami

24  Nimeroff, Brown McGarry Nimeroff, for Triumph Financial

25  Services.

1        Your Honor, I have similar concerns as raised by

2   Mr. Bartley.  Arnold -- you know, our factoring party, if you

3   will, is Arnold Transportation.  They are purely US based.

4   Triumph is purely US based.

5        THE COURT:  But they're applicants.

6        MS. NIMEROFF:  Correct.  They are applicants.

7   Your Honor, you may recall that the amended and restated

8   initial order actually contains language, subordination

9   language of the DIP charge to Triumph up to $3 million

10  Canadian dollars, but it is time limited, Your Honor. That

11  was done as a stop gap for a two-week period to allow the

12  parties to try to work through these issues. So, the DIP

13  charge -- so Triumph right now sits, I believe, under the

14  CCAA amended and restated order below the intercompany, but

15  above the DIP charge.

16       We rose at the last hearing with there being some

17  lack of clarity or some confusion, you know, sort of relating

18  to the intercompanies and intercompany advance and who that

19  was going to work.  Your Honor, so I would point out to you

20  in addition to Paragraph 11 of this order Paragraph 10 makes

21  a specific finding of, as I read it, good faith under 364(e).

22  So, I believe that that, you know, is sort of a similar issue

23  or concern or provision from the discussion that you were

24  having with Mr. Bartley.

25       Your Honor, we are in a bit of a interesting

1  situation because we were, at the time the CCAA and the

2  Chapter 15 were filed we, you know, understood that Arnold

3  wanted Triumph to factor post-petition and that those

4  discussions had begun when the plan to do the priming DIP

5  came about last week.

6         Your Honor, Arnold -- we are not sure whether

7  Arnold, you know, should be in a CCAA.  You know, we reserve

8  rights on that.  Whether there should be recognition as far

9  as Arnold is concerned. Its not clear to me they are actually

10 an affiliate of the Pride Group. They don't appear to be

11 under common ownership. There may be a related person who

12 owns, but, Your Honor, you can barely find Arnold on the org

13 chart of the Pride entities.

14        Prior to the CCAA it's my understanding that they

15 were not a syndicate borrower under the facility.  They have

16 been added a DIP borrower now; however, they remain, as far

17 as we can tell, not a syndicate borrower.  And under the 13-

18 week cash flow that was put into evidence in connection with

19 the amended and restated interim order there's a separation

20 as to who can access the DIP by syndicate borrowers and those

21 who are non-syndicate borrowers.  Those parties can access

22 the intercompany advances which are substantially less, Your

23 Honor.

24        So, what we have here is we have a time problem

25 right now because we have been trying to engage with parties

1  in the CCAA on this issue of a limited subordination.  You

2  know, with respect, Your Honor, we are not getting

3  engagement.  You could interpret that as an attempt to run

4  out the clock.  Point being that as of the end of the day on

5  Friday that subordination goes away.

6          So, what the concern is, Your Honor, if there is

7  provisional approval of this with 364(e) type protections or

8  the invocation of 364(e) then I think what would happen is

9  you're going to have instead of priming to the full extent of

10  the DIP.

11          THE COURT:  So, I understand that.  So, let's slow

12  down because I understand that you have explained to me why

13  you got, you know, skin in the game and I'm persuaded by

14  that, at least potentially depending on what happens. So,

15  that is fair.  You are allowed to invoke your rights.

16          MS. NIMEROFF:  Thank you, Your Honor.

17          THE COURT:  The principle that strikes me --

18  again, look, I could have this wrong and anyone who wants to

19  tell me I'm wrong, you know, don't be shy, don't worry about

20  my feelings, but the principle that strikes me is the

21  sensible principle is the debtors have filed a case in

22  Canada.  We are here on an interim basis, right, but we have

23  granted interim approval subject to final approval.  So,

24  everyone's rights at final approval to say what is happening

25  in Canada is inappropriate and shouldn't even be recognized

1  here.

2          I think that is an uphill argument, but everyone's

3  rights are preserved to come and make whatever argument you

4  want to make that we shouldn't enforce what happened in

5  Canada because its so, you know, antithetical to fairness and

6  due process that we shouldn't respect it.  Again, uphill.

7  You are entitled to make that argument and I am not

8  prejudging it.

9          As to protections granted under the United States

10 bankruptcy code it seems to me that my thinking was to get

11 those protections you need to make the showing you'd need to

12 make to get it.  No one has purported to make it. With

13 respect to the relief that is appropriate it seems to me that

14 saying that on an interim basis we will enforce the orders

15 that have been entered there and give -- again, without

16 prejudice to your rights to challenge recognition, but on an

17 interim basis we're going to enforce those orders and grant

18 here essentially relief that is identical to the relief that

19 has been entered there without adding to it at all and making

20 clear that if we don't grant final recognition we have

21 whatever remedies we have and if we end up there we cross

22 that bridge when we come to it with language you would

23 commonly see in an interim DIP order that says nothing in

24 this order shall be construed to limit the Court's authority

25 to craft an appropriate remedy if it doesn't grant final

1  approval.

2          If that is where we ended up would that address

3  your concerns?

4          MS. NIMEROFF:  Largely, yes, Your Honor. Again,

5  the concern is sort of having something happen that is -- you

6  know, some blessing under 364.

7          THE COURT:  We're not talking about that.

8          MS. NIMEROFF:  Yes, I understand that.  That would

9  be something that, as Mr. Bartley noted, a bell that cannot

10 be unrung.  If that is not where we are going today and,

11 otherwise, rights are preserved and that would mean, in fact,

12 that if we had to or wanted to seek to undo what happened

13 with the CCAA order, etc., those rights are preserved.

14         THE COURT:  Right. Just to be clear, if it turns

15 out under Canadian law the bell can't be unrung I enforce

16 that too.  So, the idea is not to give anyone greater or

17 lesser rights then they have in Canada, but simply to enforce

18 the deal that was struck and approved there leaving

19 everyone's substantive rights beyond that here in place until

20 we get to final recognition and then we deal with it.

21         MS. NIMEROFF:  I think, Your Honor, that that is

22 about all that one could really ask for today.

23         THE COURT:  Again, I'm not asking what makes

24 everyone really happy.  As you heard me say before, this

25 Court isn't in the happiness business, but it does its best

1   to be in the fairness business or, at least, law business.

2           MS. NIMEROFF:  Correct, Your Honor. Understood.

3   Again, that was, you know, -- when I was having discussion

4   with, you know, counsel it was relating specifically as I

5   read 10 and 11 of the order. So, if we're looking to sort of

6   address those paragraphs then that is my concern today.

7           THE COURT:  Okay. I understand.  Anything else?

8           MS. NIMEROFF:  Unless you have questions for me,

9   Your Honor.

10          THE COURT:  No. I think I understand it.

11          MS. NIMEROFF:  Thank you.

12          THE COURT:  Thank you, Ms. Nimeroff.

13          So, Mr. Hunker, I don't propose to play the role

14  of mediator in my own case, but I think -- I have done my

15  best to articulate the principals about how I am seeing it.

16  So, before turning to how we operationalize those let me ask

17  you -- I want to hear from the DIP lenders too, but the

18  principles as I have done my best to articulate them are

19  those acceptable to the debtor or to the foreign

20  representative.

21          MR. HUNKER:  At the risk of being kicked by Mr.

22  Tetro, I think from the foreign representative's perspective

23  that could work.

24          THE COURT:  Okay.  So, let me hear from the lender

25  and give you a chance to tell me why you should get more then

1  I tentatively think you should get.

2        MR. TETRO:  Good afternoon, Your Honor.  Steven

3  Tetro of Chapman & Cutler on behalf of Royal Bank of Canada

4  as prepetition agent under the prepetition syndicated

5  facility and as proposed DIP agent.

6        So, Your Honor, I guess a couple of points.  I

7  will start with big picture.  From the DIP lender's

8  perspective what we need to be sure we have is an order -- in

9  order to be able to lend is an order from this Court that

10 says that what has been given in Canada, which includes liens

11 and claims on these US companies and US assets, will be

12 enforced by this Court and it will -- not just if someone

13 violates the order, but will be able to enforce the rights

14 that have been given.

15       THE COURT:  Understood.

16       MR. TETRO:  That's number one.  Number two, that

17 if we, then on the basis of that order, advance a dollar

18 between today and the recognition hearing that dollar is

19 subject to those protections.

20       THE COURT:  Okay. I hear you.

21       MR. TETRO:   And I don't think, Your Honor, that

22 is different then what we do in interim DIP orders and I

23 don't think it's unreasonable for the DIP lenders to insist

24 on that.  How could a lender put money into it not knowing it

25 has and can rely on those protections.

1             THE COURT:  Right.  Look --

2             MR. TETRO:  That's just substantively before we

3     get to the --

4             THE COURT:  -- I hear you and this question about

5     what do we mean when we say in the interim order without

6     prejudice to the Court's authority to craft an appropriate

7     remedy is an area where there is some ambiguity because I

8     completely understand that a lender that relies on an interim

9     order and extends credit like you don't want to do that and

10    hear later, oh, we're going to recharacterize that and we're

11    going to treat that as a capital contribution, right.  That

12    is an eminently practical fair concern.

13            So, let me give some thought.  So, in your view --

14    let me ask you this question: In your view if it were to turn

15    out that someone were to persuade me that we shouldn't grant

16    recognition to the Canadian proceeding when we get there and,

17    again, I think I might -- if I were to be that Judge I would

18    likely be the first Judge in the United States to deny

19    recognition to a Canadian proceeding and I'm not that kind of

20    person, but, again, I will hear the arguments on the merits.

21            On your view if they were to persuade me that what

22    do you think the appropriate consequences of that would be

23    with respect to the lien on the debtors' assets in the United

24    States?

25            MR. TETRO:  I think that with respect to money

1   advanced following entry of the provisional order that that

2   would have no effect on our rights that have been recognized

3   with respect to that indebtedness and the liens security.

4         THE COURT:  Okay.  But up to and only up to the

5   extent --

6         MR. TETRO:  Up to and only up to that point in

7   time.

8         THE COURT:  -- post-petition advances.

9         MR. TETRO:  Correct.

10        THE COURT:  I get that.

11        MR. TETRO:  And from that point forward, frankly,

12  it would probably then blow up the DIP because it's another

13  condition under the DIP that --

14        THE COURT:  I understand that.

15        MR. TETRO:  So, it would -- you know, that would

16  the end unless some other relief was fashioned.

17        THE COURT:  I hear you.

18        MR. TETRO:  Lenders will not advance without

19  knowing that they can rely on the protections that they have

20  --

21        THE COURT:  To me the point -- saying I won't do

22  this unless I get X proves too much because if that were a

23  basis you could demand anything.  Here I think you have got a

24  better argument which is it would be eminently reasonable of

25  you to say that you won't advance and then be subject to

1    subsequent attacks.

2         MR. TETRO:  Apologies, Your Honor, that is what I

3    mean as evidenced by the changes to the order that we have

4    agreed to.

5         THE COURT:  I hear you.

6         MR. TETRO:  So, that is sort of the principle.

7    That is the substance that we need to satisfy the lenders to

8    close on the DIP and lend under the DIP.  Now as to the how

9    we get there, there is more than one way to do it.  What we

10   tried to do with Paragraph 10 and 11, if you look at

11   Paragraph 10 what it says is that these advances made on an

12   interim basis shall be deemed to be made by the DIP lenders

13   in good faith as that term is used in 364(e).

14        THE COURT:  All right.

15        MR. TETRO:  And 11 says it won't be undone.

16        THE COURT:  Can I stop you there?

17        MR. TETRO:  Yes, Your Honor.

18        THE COURT:  So, I don't think the usage of the

19   word "good faith" in 364(e) is different than the use of the

20   word "good faith" in ordinary English.  So, what if we struck

21   after the comma and you have made it in good faith, period,

22   full stop, and we don't grant you -- I think you mean 346,

23   but I have made that mistake today myself.  So, you are off

24   the hook -- I'm sorry, your right, 364, I apologize.  See,

25   I've made it twice today.  If we were to strike the reference

 1   to Section 364 but just say you have made it in good faith

 2   that gets you what you need.

 3            MR. TETRO: I think, Your Honor, if we preserve

 4   Paragraph 11 which Paragraph 10 or the good faith finding is

 5   in service of --

 6            THE COURT:  Let's talk about that.

 7            MR. TETRO:  -- then I think it -- that's why I

 8   say, Your Honor, this is the substance we need and there's

 9   more then --

10            THE COURT:  I understand.  Let's look at Paragraph

11   11.  So, let's back up.  So, this is a Chapter 15, the main

12   case is in Canada. The main protection you are getting is the

13   protection in Canada.  The principle that I have got in mind

14   is that you get the same degree of finality and assurance

15   here that you have there.

16            I have no idea whether in the CCAA proceeding

17   there is an ability for anyone to put you at any risk after

18   you have made an advance.  But if you are at risk after you

19   have made an advance, because the Canadian Court says I take

20   it back, whether that would be right or wrong isn't in front

21   of me, but isn't the principal if it gets taken back in

22   Canada then you have to live with that here.

23            MR. TETRO:  It depends, Your Honor. The reason I

24   say it depends is I think 1519 gives you the authority to

25   grant the relief that is in this paragraph, but what we are

1   really substantively -- what we want to substantively avoid

2   is, sort of, the converse that the relief in Canada does not

3   change, is not revoked or modified but then this Court, based

4   on motions of the parties who are pressing objections here

5   that they had lost on in Canada --

6           THE COURT:  I understand. I want to protect you --

7           MR. TETRO:  -- would have this Court undo what we

8   get. So, that is what we want.

9           THE COURT:  -- against their basically getting a

10  second bit of the apple here that they wouldn't have there,

11  but I want to protect them against your saying that if they

12  succeed up there they failed here.

13          MR. TETRO:  I understand, Your Honor. We can take

14  another crack at the language in 10 and 11, mindful of your

15  comments, to give effect to this. I think we can come up with

16  something, but I just wanted to articulate our reason. We

17  don't want, having had the relief and protections that have

18  been granted by Canada, those to be modified, undercut,

19  reversed, etc., by what happens in the United States

20  including, Your Honor, in the event of no recognition.

21          THE COURT:  So, here is where we are: in the event

22  of no recognition what you get would be to the extent you

23  have advanced money and protection with respect to that money

24  so long as you still get it in Canada, right, because we're

25  not in a world of interim approval.  So, if you advance money

1  now the only way you could lose the protections that I would

2  be giving in this interim order would be if you lose them in

3  Canada.  You don't lose that with respect to money actually

4  advanced by ultimate -- an ultimate determination not to

5  recognize.

6          MR. TETRO:  Understood, Your Honor.  Let me confer

7  with Canadian counsel and possibly my client and let us craft

8  some language. I think are on the same page about the

9  substance of the relief.

10          THE COURT:  Let me hear from the objectors if what

11  I have just said -- again, I'm not asking you whether you're

12  delighted, I am asking if it respects your legal rights.

13          MR. TETRO:  Your Honor, if I could just before I

14  cede the podium.

15          THE COURT:  Certainly.

16          MR. TETRO:  I just wanted to add one additional

17  fact, I think, with respect to the Triumph objection where

18  Triumph described -- so, here is my understanding in a

19  situation with Triumph in Canada: Triumph raised issues in

20  Canada, they appeared in Canada, and, in fact, language was

21  adopted and the order was modified to address and resolve

22  their concerns in Canada. Part of that was this date, Friday,

23  which I heard counsel for Triumph characterize as running out

24  the clock. My understanding is there is a hearing scheduled

25  in Canada. So, its not a clock being run out. There is a

1  hearing scheduled that will occur on Friday for those to

2  continue to be litigated in Canada.  So, I just wanted to

3  make sure from our perspective we describe what the situation

4  is.

5           THE COURT:  Fair enough.  Understood. I am not

6  forming any judgment about that one way or the other. I hear

7  both sides. I don't think I'm required to adjudicate that

8  dispute.

9           MR. TETRO:  I just wanted to provide that context.

10 Thank you.

11          THE COURT:  Thank you very much.

12          Mr. Bartley.

13          MR. BARTLEY:  Your Honor, thank you.  I feel like

14 we keep getting confused about the debtors and the non-

15 debtors.

16          THE COURT:  Fair enough.

17          MR. BARTLEY:  That is our primary concern because

18 our transactions are with non-debtors.  Mr. Tetro indicated

19 that he believes Section 1519 authorizes and gives this Court

20 the statutory power to do that.

21          THE COURT:  So, slow down.  Let's talk

22 conceptually about how we are dealing with non-debtors.  So,

23 we are talking about non-debtors --

24          MR. BARTLEY:  Correct.

25          THE COURT:  -- that nevertheless have obtained

1   where the lenders get certain protections vis-à-vis those

2   entities assets under the Canadian order.

3          MR. BARTLEY:  Correct.  US non-debtors and US

4   assets subject to relief in Canada.

5          THE COURT:  Right. So, the concept is no extra

6   bells and whistles here, but that is an order entered in

7   Canada in a presumptively valid proceeding that I am ready to

8   enforce.  You know, again, not just when its violated, but to

9   enforce even if its relief that would be broader then I would

10  give if I had a US bankruptcy case.  Any issue with that?

11         MR. BARTLEY:  Yeah, I think our issue, Your Honor,

12  is the presumptively valid.  We are going to come back at

13  some subsequent date to test the validity of that and what

14  Mr. Tetro made clear is that actions taken while our dispute

15  is extent he will be protected and possibly to the prejudice

16  of my client when they are extending loans and relying on the

17  strength of the liens in the order. If this Court concludes

18  not to give effect to that initial grant in Canada --

19         THE COURT:  I hear you.  To that extent I'm

20  overruling the objection. I hear you. I get it.  It's a

21  perfectly fair point, but it does seem to me that, just as a

22  practical commercial matter in light of the exigencies of the

23  circumstances that I have granted provisional recognition,

24  that that means we proceed on the presumption that the orders

25  there are valid.  I understand your concerns about that

1  order.  I am not prejudicing your ability to come in and say

2  what you want, but its in place.

3          We are talking about a lender on a post-petition

4  basis, you know, coming out of pocket and advancing, you

5  know, real cash in reliance on the order. It seems to me, as

6  a practical matter for the system to work a lender that makes

7  a post-petition loan on reliance on a Court order has got to

8  know that, at least, to the extent of their post-petition

9  extension of credit they have got the protection that they

10 have got.

11         You know, you -- I understand your point, it's a

12 fair point, you are welcome to go across the street with it,

13 but I am going to enter an order that does that.

14         MR. BARTLEY:  Okay.  Then I think Your Honor has

15 already ruled on the other issues. So, we will settle an

16 order to the in rem issues.  Thank you, Your Honor.

17         THE COURT:  Thank you.  Has that given all of you

18 enough to go craft language that reflects this and submit it

19 under certification?

20         MR. HUNKER:  Yes. Thank you, Your Honor.  I would

21 suggest that we take some time to see if we can craft an

22 order and then submit it under certification.

23         THE COURT:  Terrific.  Obviously, in the course

24 of, you know, giving effect to that if there is a dispute

25 just reach out, we will get on a Zoom call and we will try to

1  get it resolved.  Obviously, I am happy to give you the time

2  that you need to come up with language that implements the

3  points we have discussed.

4          MR. HUNKER:  Thank you, Your Honor.

5          THE COURT:  Is there anything else from the

6  foreign representative's perspective?

7          MR. HUNKER:  Nothing further from us.  Thank you,

8  Your Honor.

9          THE COURT:  Okay.  The joint administration order,

10 that has been uploaded?

11         MR. HUNKER:  I believe so.

12         THE COURT:  Okay.  Terrific. We will get that

13 entered if it hasn't happened already due to the magic of

14 what happens in these Chambers without any effort on my part.

15         Is there any other party in interest that would

16 like the opportunity to be heard?

17     (No verbal response)

18         THE COURT:  Thanks to everyone.  We -- (Audio

19 stops)

20     (Proceedings concluded at 2:53 p.m.)

21

22

23

24

25

1                             CERTIFICATION

2            I certify that the foregoing is a correct

3  transcript from the electronic sound recording of the

4  proceedings in the above-entitled matter to the best of my

5  knowledge and ability.

6

7  /s/ William J. Garling                    April 17, 2024

8  William J. Garling, CET-543

9  Certified Court Transcriptionist

10  For Reliable