**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br>Pride Group Holdings Inc., *et al.*[1]<br>Debtors in Foreign Proceedings. | Chapter 15<br>Case No. 24-10632 (CTG)<br>Jointly Administered |

**DECLARATION OF AMRINDER JOHAL IN SUPPORT
OF MOTION OF THE FOREIGN REPRESENTATIVE FOR
ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF
PROPERTY OF DEBTOR FRONTAGE ROAD HOLDING CORP.
FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF**

I, Amrinder Johal, pursuant to 28 U.S.C. § 1746, hereby declare (this "Declaration") under penalty of perjury under the laws of the United States, as follows:

1. I am the Vice President of the Pride Group, a group of related companies comprising a trucking and logistics conglomerate that operates in Canada and the United States headquartered in Mississauga, Ontario, Canada (the "Pride Group"). The Pride Group includes Pride Group Holdings Inc. and its affiliates that are debtors (the "Debtors") in these chapter 15 cases (the "Chapter 15 Cases"). The Debtors and certain of their affiliates are the subject of proceedings (the "CCAA Proceedings") under the Companies' Creditors Arrangement Act, pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court").

2. I am an individual over the age of 18 and, if called upon, could and would testify to the facts set forth in this Declaration. Except as otherwise indicated, all facts set forth in this

---

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

Declaration are based upon my personal knowledge, information supplied to me by members of the Pride Group's management and professionals or learned from my review of relevant documents, or my opinion based upon my experience and knowledge of the Pride Group's industry, operations, and financial condition.

3. I submit this Declaration in support of the *Motion of the Foreign Representative for Entry of an Order (I) Authorizing the Sale of Property of Debtor Frontage Road Holding Corp. Free and Clear of Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* (the "Motion"),[2] filed contemporaneously herewith.

## THE SALE PROCESS FOR THE FRONTAGE PROPERTY

4. Prior to Debtor Frontage Road Holding Corp.'s ("Frontage") acquisition of the parcel of real property located at 225 West South Frontage Road, Bolingbrook, Illinois (the "Property") approximately two years ago, the prior owner operated the Property as a hotel establishment. Frontage acquired the Property with the intention of developing it as a truck dealership. After Frontage acquired the Property, it obtained a variance from the relevant municipality to develop the Property for that purpose. However, Frontage never developed the Property for that purpose and instead used the site as a parking lot and for other operational purposes. Frontage no longer intends to use the Property for those purposes and has decided to sell the Property.

5. Accordingly, Frontage's in-house commercial real estate broker publicly listed the Property for sale. Frontage received several indications of interest and ultimately three offers in writing to purchase the Property. Following several rounds of negotiations, Frontage ultimately

---

[2] Capitalized terms used in this Declaration but not otherwise defined shall have the meanings ascribed to them in the Motion.

accepted the offer submitted by Hardik Patel (the "Purchaser"), which culminated in the Sale Agreement between the parties thereto. Frontage believes that entry into, and consummation of the transactions contemplated by, the Sale Agreement represents the highest and best value for the Purchased Assets (defined below) under the circumstances in its business judgement and is in the best interests of the Debtors, their creditors, and other stakeholders.

## THE SALE AGREEMENT

6. On March 11, 2024, Frontage, as seller, and the Purchaser entered into the Sale Agreement pursuant to which the Purchaser agreed to purchase from Frontage all of Frontage's right, title and interest in the Property, along with all buildings, fixtures, inventory and other tangible and intangible personal property located thereon (the "Purchased Assets").

7. I understand that the Foreign Representative is submitting the Motion on the date hereof to provide notice to parties in interest as required by Local Rule 9006-1 to enable Frontage to close the transactions contemplated by the Sale Agreement by the Closing Date, scheduled to occur on May 10, 2024, which is after the Recognition Hearing.

8. The following is a summary of certain material provisions of the Sale Agreement.[3]

| Provision | Description | Location in Sale Agreement |
|---|---|---|
| *Purchased Assets* | Subject to the terms of the Sale Agreement, Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller, all of Seller's right, title and interest in and to the following property:<br><br>a. the "Real Property" located at 225 West South Frontage Road, Bolingbrook, Illinois, consisting of approximately 2.64 acres of land, together with (i) all building and structures, paving, lighting and fencing improvements located thereon ("Improvements"), (ii) all and singular the rights, benefits, privileges, easements, | Sale Agreement ¶ 1.2 |

---

[3] Capitalized terms used in this table but not otherwise defined herein shall have the meanings ascribed to them in the Sale Agreement.

| Provision | Description | Location in Sale Agreement |
|---|---|---|
| | tenements, hereditaments, and appurtenances thereon or in any way appertaining to such real property, and (iii) without warranty, all right, title, and interest of Seller in and to all strips and gores and any land lying in the bed of any street, road or alley, open or proposed, adjoining such real property; and<br><br>b. the "Personal Property," being all of Seller's rights and interests in (i) items of tangible personal property consisting of all furniture, fixtures, equipment, machinery, and other tangible personal property located at the Hotel, including all in-use or stock of linens and terry (1.5 turns), china, glassware, silver, uniforms, and towels, paper goods, stationery, soaps, cleaning supplies and the like with respect to the Hotel on hand as of the Closing Date (5 day supply) (the "Inventory"), and (ii) "Intangible Personal Property" including Seller's right, title and interest in and to all intangible personal property owned or possessed by Seller and used exclusively in connection with the ownership or operation of the Hotel, including, without limitation, (1) trade names and general intangibles pertaining to the Real Property and the Personal Property related to the Hotel, (2) all licenses, permits, concessions and approvals required by any Governmental Authority, as defined in Section 7.1(c) of the Sale Agreement, or otherwise appropriate with respect to the construction, ownership, operation, leasing, maintenance, or use of the Property or any part thereof (the "Authorizations"), (3) all websites, domain names, social media accounts and similar items and (4) any warranties and guaranties relating to the Improvements and Personal Property. | |
| ***Purchase Price*** | $6,300,000.000 | Sale Agreement ¶ 1.1 |
| ***Sale to Insider*** Local Bankr. R. 6004-1(b)(iv)(A) | The Purchaser is not an insider as defined by section 101(31) of the Bankruptcy Code. | N/A |
| ***Agreements with Management*** Local Bankr. R. 6004-1(b)(iv)(B) | N/A | N/A |

4

| **Provision** | **Description** | **Location in Sale Agreement** |
|---|---|---|
| *Releases*  Local Bankr. R. 6004-1(b)(iv)(C) | The sale of the Purchased Assets to the Purchaser will be free and clear of all liens, claims, encumbrances, and other interests. | Sale Agreement ¶ 1.2 |
| *Private Sale/No Competitive Bidding*  Local Bankr. R. 6004-1(b)(iv)(D) | The sale of the Purchased Assets is fair and reasonable under the circumstances, is the result of good-faith, arm's length negotiations, and is in the best interests of the Debtors, their creditors, and other stakeholders. | N/A |
| *Closing and Other Deadlines*  Local Bankr. R. 6004-1(b)(iv)(E) | The Closing Date is scheduled to occur on May 10, 2024, which date may be extended by Purchaser for up to three (3) additional periods of fifteen (15) days each subject to the terms of the Sale Agreement. | Sale Agreement ¶ 6.1 |
| *Good Faith Deposit*  Local Bankr. R. 6004-1(b)(iv)(F) | Under the Sale Agreement, the Purchaser is required to deposit with the Escrow Agent $500,000.00 and any interest thereon (the "Earnest Money"), which shall be applied to the Purchase Price at Closing. Otherwise, the Earnest Money shall be delivered to the party entitled to receive the Earnest Money in accordance with the terms and conditions of the Sale Agreement. | Sale Agreement ¶ 1.3 |
| *Interim Arrangements with Purchaser*  Local Bankr. R. 6004-1(b)(iv)(G) | N/A | N/A |
| *Use of Proceeds*  Local Bankr. R. 6004-1(b)(iv)(H) | N/A | N/A |
| *Tax Exemption*  Local Bankr. R. 6004-1(b)(iv)(I) | N/A | N/A |
| *Record Retention* Local Bankr. R. 6004-1(b)(iv)(J) | N/A | N/A |
| *Sale of Avoidance Actions* Local Bankr. R. 6004-1(b)(iv)(K) | N/A | N/A |
| *Requested Findings as to Successor Liability*  Local Bankr. R. 6004-1(b)(iv)(L) | No constituent partner or member in, or agent of Purchaser, nor any present or future partner, member, manager, trustee, beneficiary, director, officer, shareholder, employee, advisor, affiliate or agent of any partnership, limited liability company, corporation, trust or other entity that has or acquires a direct or indirect interest in Purchaser or any affiliate of Purchaser shall have any personal liability, directly or indirectly, under or in connection with this Agreement or any agreement made and entered into under or in connection with the | Sale Agreement ¶ 12(b) |

5

| Provision | Description | Location in Sale Agreement |
|---|---|---|
| | provisions of this Agreement, or any amendment or amendments to any of the foregoing made at any time or times, heretofore or hereafter, and Seller and its successors and assigns and, without limitation, all other persons and entities, shall look solely to the Earnest Money, the assets of Purchaser, and the proceeds therefrom for the payment of any claim or for any performance, and Seller on behalf of itself and its successors and assigns hereby waives any and all such personal liability. | |
| ***Sale Free and Clear of Unexpired Leases*** Local Bankr. R. 6004-1(b)(iv)(M) | N/A | N/A |
| ***Credit Bid*** Local Bankr. R. 6004-1(b)(iv)(N) | N/A | N/A |
| ***Relief from Bankruptcy Rule 6004(h)*** Local Bankr. R. 6004-1(b)(iv)(O) | Time is of the essence given the Closing Date. Accordingly, the Foreign Representative requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h). | N/A |

9. I believe there is a sound business reason to consummate the Sale Agreement. Frontage originally acquired the Property with the intention of using the site for purposes of developing and operating a truck dealership. Frontage no longer intends to use the Property for that purpose or any other purposes and therefore no longer requires the Property. Accordingly, Frontage marketed the Property for sale and engaged parties that were interested in purchasing the Purchased Assets. Frontage ultimately accepted Purchaser's offer and believes that entry into, and consummation of the transactions contemplated by, the Sale Agreement represents the highest and best value for such assets under the circumstances in its business judgment.

10. I believe that the Purchase Price provided in the Sale Agreement is fair and reasonable. The Purchased Assets were publicly listed for sale by Frontage's in-house commercial real estate broker, and the Purchase Price was the result of several rounds of negotiations between

Frontage and the Purchaser, and is the highest and best offer received to date. Thus, I believe the consideration provided constitutes a fair and reasonable price for the Purchased Assets.

11.     The Sale Agreement was entered into without fraud or collusion, and is the result of a marketing process undertaken by Frontage and the product of arm's-length, good-faith negotiations between the parties thereto. Frontage also did not enter into the Sale Agreement for the purpose of hindering, delaying, or defrauding present or future creditors of Frontage. As such, I believe the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and has not violated section 363(n) of the Bankruptcy Code.

12.     I understand that no party holding a lien, claim, encumbrance or other interest has objected to the sale of the Purchased Assets (in fact, I believe that no party has a lien on the Purchased Assets other than the DIP Lenders[4]), and all such parties will have an opportunity to object at the hearing on the Motion. I further understand that to the extent any liens, claims, encumbrances, or other interests exist, those liens, claims, encumbrances and other interests will attach to the proceeds of the Purchased Assets in the order of priority and with the same validity, force and effect that they have as against the Purchased Assets immediately prior to the Sale Agreement. Accordingly, I believe that the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and other interests satisfies the statutory requirements of section 363(f) of the Bankruptcy Code.

---

[4]  The "DIP Lenders" are the prepetition lenders under that certain Third Amended and Restated Credit Agreement dated as of November 4, 2022, by and among: TPine Truck Rental Inc., TPine Leasing Capital Corporation, Pride Truck Sales Ltd., 2076401 Ontario Inc., TPine Leasing Capital L.P., PGED Holding, Corp., High Prairie Texas Holding Corp, 131 Industrial Blvd Holding Corp, 59th Ave Phoenix Holding Corp., Di Miller Drive Bakersfield Holding Corp. and 1450 Meyerside Holding Inc., as borrower (the "Borrower Parties"); various guarantors including each of the Borrower Parties and Pride Truck Sales L.P., TPine Rental USA, Inc., Coastline Holdings, Corp., Pride Group Holdings Inc., Pride Group Logistics Ltd., 2043002 Ontario Inc., Pride Fleet Solutions Inc., and Frontage Road Holding Corp.; Royal Bank of Canada, as administrative agent; and the lenders from time to time party thereto.

13. Accordingly, I submit that the sale of the Purchased Assets pursuant to the Sale Agreement is in the best interests of their estates, creditors and other parties in interest, and is a sound exercise of Frontage's business judgment.

[*Remainder of page left intentionally blank*]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: April 19, 2024
      Toronto, Canada

                                */s/ Amrinder Johal*
                                Amrinder Johal