## <u>EXHIBIT 1</u>

**Amended Foreign Representative Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 15 |
| Pride Group Holdings., *et al.*[1] | Case No. 24-10632 (CTG) |
| Debtors in Foreign Proceedings. | Jointly Administered |

**AMENDED DECLARATION OF RANDALL BENSON**
**IN SUPPORT OF THE DEBTORS' AMENDED VERIFIED**
**PETITION FOR (I) RECOGNITION OF FOREIGN MAIN**
**PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVE AND**
**(III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

I, Randall Benson, pursuant to 28 U.S.C. § 1746, hereby declare (this "Declaration") under

penalty of perjury under the laws of the United States, as follows:

1.     I am the founder of RC Benson Consulting Inc, which was engaged on February 26,

2024 as the Chief Restructuring Officer (the "CRO") of the Pride Group (the "Pride Group"),[2] a

group of related companies comprising a trucking and logistics conglomerate that operates in

Canada and the United States headquartered in Mississauga, Ontario, Canada.  I have over 20 years

---

[1]     The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399.  Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup.  The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

[2]     As used herein, "Pride Group" includes: (i) each of the Debtors; (ii) Pride Truck Sales L.P., TPine Leasing Capital L.P., and Sweet Home Hospitality L.P. ((i) and (ii) together, the "Pride Entities"); and (iii) Block 6 Holding Inc., 2500819 Ontario Inc., Pergola Holdings, Corp., and Pride Global Insurance Company Ltd. (the "Additional Stay Parties").

"Pride Group" does not include (i) the following affiliated special-purpose securitization vehicles that do not engage in any business or activity other than acting as purchasers of securitized assets or issuers of asset-backed obligations under various securitization agreements: TPine USA Funding I LLC, TPine USA Funding II LLC, TPine USA Funding III LLC, TPine USA Funding IV LLC, TPine Canada Securitization L.P, and TPine Canada GP L.P. (collectively, the "Securitization SPVs"), which are not applicants in the CCAA Proceedings, are not Debtors in these Chapter 15 Cases, and no relief is sought with respect to these entities; or (ii) the Arnold Entities (as defined below), given that the Foreign Representative is no longer seeking relief with respect to the Arnold Entities.

of experience managing complex restructuring situations. The Pride Group includes Pride Group Holdings Inc. and its affiliates that are debtors (the "Debtors")[3] in these chapter 15 cases (the "Chapter 15 Cases"). The Debtors are the subject of proceedings (the "CCAA Proceedings") under the Companies' Creditors Arrangement Act (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"). I was appointed as the foreign representative of the Debtors (the "Foreign Representative") by the Canadian Court pursuant to the preliminary initial order entered on March 28, 2024 (the "Initial Order"), and I am authorized to commence these Chapter 15 Cases in respect of the Debtors.

2.      Since my engagement on February 26, 2024, I have become familiar with the Debtors' business, history, operations, and financial affairs, and I am ultimately responsible for the Debtors' restructuring, including the CCAA Proceedings and these Chapter 15 Cases. I am an individual over the age of 18 and, if called upon, could and would testify to the facts set forth in this Declaration. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by members of the Debtors' management and professionals or learned from my review of relevant documents, or my opinion based upon my experience and knowledge of the Debtors' industry, operations, and financial condition that I have acquired since my engagement.

---

[3]     As described in greater detail herein, although 1000089137 Ontario Inc., DVP Holdings, Corp., Parker Global Enterprises, Inc., Parker Transport Co., and Arnold Transportation Services, Inc. (collectively, the "Arnold Entities") are currently Debtors in these Chapter 15 Cases, I no longer seek recognition or any other relief with respect to the Arnold Entities in these Chapter 15 Cases. Accordingly, the term "Debtors" as used herein does not include the Arnold Entities. The Arnold Entities are exploring all available options including potentially filing for bankruptcy assignment in Canada and/or chapter 7 in the United States.

3.      I submit this Declaration in support of the Debtors' *Amended Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Amended Verified Petition").

## GENERAL BACKGROUND

### A.  Overview of the Debtors' Businesses

4.      The Pride Group was founded by Sulakhan Johal and his brother Jasvir Johal in 2010 as a used truck dealership operating from the back of a single tractor trailer in Mississauga, Ontario, Canada.  Under their direction and supervision over the past 14 years, the Pride Group experienced rapid growth and success, quickly becoming a leading cross-border trucking and logistics conglomerate operating from more than 50 leased and owned locations across Canada and the United States.  The Pride Group is responsible for the management of, or logistics in respect of, over 20,000 trucks on roads across Canada and the continental United States, as well as on the Pride Group's dealership lots and service centers across more than a dozen Canadian provinces and U.S. states.

5.      The Pride Group's businesses consist of, among other things, (i) new and used truck and trailer sales; (ii) truck leasing and financing to individuals or corporate owners; (iii) trucks servicing and truck parts sales; (iv) logistics; and (v) owning and operating real estate properties across Canada and the United States as dealerships, truck stops, and service centers.  The Pride Group is a dominant or important player in each of these industries, and its ability to offer a "one-stop shop" solution for truck drivers is a unique competitive advantage that sets it apart from many other industry players.  In particular, the Pride Group's services are attractive to entrepreneurial "owner-operators" in the trucking community, who utilize the Pride Group's infrastructure and

businesses across Canada and the United States and benefit from its competitive pricing achieved through economies of scale.

6.     Until very recently, the Pride Group was profitable and growing. However, the onset of the COVID-19 pandemic in 2020 disrupted the company's historical trajectory, ultimately leading to the company's current financial crisis.

7.     Initially, the COVID-19 pandemic was a boon to the North American trucking and logistics industries as freight rates soared in Canada and across the world. Amidst a labor shortage, lower diesel prices and negligible (or negative) truck and trailer depreciation, the Pride Group's services became especially attractive to owner-operators, who flocked to the industry and to the Pride Group in particular to buy, finance, lease and service their trucks. The company seized on the opportunity and experienced rapid growth by significantly expanding its North American fleet and footprint, and expanding into new business lines that helped its entrepreneurial client base, along with the acquisition of several real estate properties in Canada and the United States.

8.     However, as the effects of the COVID-19 pandemic began to subside, so too did its beneficial effects on the North American trucking industry. As demand for trucking services waned, diesel prices soared, and interest rates rose, there was suddenly an overabundance of trucks and truck drivers in North America, negatively impacting every part of the industry. The industry's overall downturn had a particularly severe impact on smaller-scale trucking operations such as owner-operators, who typically operate at the margins of the industry and have less financial wherewithal to sustain them through more challenging times. In the past few years, there have been an unprecedented number of insolvencies among small trucking operations and owner-operators across North America.

9.    All of these realities have directly affected the Pride Group, which is currently contending with an unprecedented number of delinquencies from truck purchasers and lessors. The same synergies that contributed to the Pride Group's exceptional growth have exacerbated its present financial situation.  As the businesses of owner-operators falter, they become delinquent in making financing and lease payments for their trucks.  They also stop utilizing the various other services provided by the Pride Group such as maintenance, factoring, rescue, and fuel sales, resulting in a ripple effect across multiple business lines.  In essence, the Pride Group's fate has been uniquely tied to the fate of the currently struggling owner-operators.  Set forth below are tables illustrating the sharp rise in lease payment delinquencies for the Pride Group in Canada and the United States:

***Lease payment delinquencies – Canada (percentage of total leases):***



***Lease payment delinquencies – United States (percentage of total leases):***



10.    To address this downturn, the Pride Group took a number of important steps. In 2022, the Pride Group refinanced a significant amount of its assets, reduced its workforce, and wound down several of its less profitable business lines in an effort to shore up its finances. And in late 2023, the Pride Group suspended payment to certain of its lenders in an effort to continue operating as a going concern. Despite these efforts, the downturn has continued, the Pride Group can no longer sustain the *status quo*, and the lenders under the Syndicated Facility[4] informed the Pride Group that they would begin to enforce their rights and remedies if formal insolvency proceedings were not initiated by March 31, 2024.

11.    Since the end of December 2023, the Pride Group has received over 40 default notices from its various secured lenders, including more than 10 demands and notices of intent to enforce security under the Canadian *Bankruptcy and Insolvency Act*. Accordingly, and after thoroughly evaluating all other available options, the Debtors commenced the CCAA Proceedings and, shortly thereafter, these Chapter 15 Cases in an effort to maintain the stability and integrity of its enterprise, and to protect its customers and other stakeholders.

**B.    The Debtors' Corporate Structure**

---

[4]    That certain Third Amended and Restated Credit Agreement dated as of November 4, 2022 (the "Syndicated Facility"), by and among: TPine Truck Rental Inc., Tpine Leasing Capital Corporation, Pride Truck Sales Ltd., 2076401 Ontario Inc., Tpine Leasing Capital L.P., PGED Holding, Corp., High Prairie Texas Holding Corp, 131 Industrial Blvd Holding Corp, 59th Ave Phoenix Holding Corp., Di Miller Drive Bakersfield Holding Corp. and 1450 Meyerside Holding Inc., as borrower (the "Borrower Parties"); various guarantors including each of the Borrower Parties and Pride Truck Sales L.P., TPine Rental USA, Inc., Coastline Holdings, Corp., Pride Group Holdings Inc., Pride Group Logistics Ltd., 2043002 Ontario Inc., Pride Fleet Solutions Inc., and Frontage Road Holding Corp.; Royal Bank of Canada, as administrative agent, and the lenders from time to time party thereto.

12.     There is no ultimate parent company for the Debtors.   Sulakhan Johal and his brother, Jasvir Johal, started these businesses in 2010 after immigrating to Canada, and together with other members of their family (through various family trusts) are the ultimate beneficial owners of the Pride Group.   All management decisions for the Pride Group are made from its global headquarters located at 1450 Meyerside Dr., Suite 401, Mississauga, Ontario, Canada. Corporate organizational charts for Canada and the United States showing the structure of the Pride Group are attached hereto as **<u>Exhibit A</u>**.

13.     The Debtors, all of which are applicants in the CCAA Proceedings, consist of the Pride Group's Canadian and U.S. operating companies (the "<u>Operating Companies</u>"), its Canadian and U.S.  real estate holding companies (the "<u>Real Estate Holdcos</u>"), as well as certain other holding companies in Canada and the United States that are borrowers or guarantors under the Pride Group's credit facilities (the "<u>Other Holdcos</u>").[5]  The Debtors do not include three affiliated entities that are U.S. limited partnerships: Pride Truck Sales L.P., TPine Leasing Capital L.P., and Sweet Home Hospitality L.P.  I understand that these entities are limited partnerships and therefore not eligible to become applicants in the CCAA Proceedings due to their corporate structure. However, the controlling general partners of these limited partnerships are applicants in the CCAA Proceedings and Debtors in these Chapter 15 Cases.

14.     Many of the Pride Group's business lines are organized to include a Canadian company and a U.S. counterpart, and each business line is centrally managed by the Pride Group's senior management team from Ontario, Canada.  For example, Debtor Pride Truck Sales Ltd., a

---

[5]     The Operating Companies and Other Holdcos filed chapter 15 petitions on April 1, 2024 (the "<u>Initial Petition Date</u>").  The Real Estate Holdcos filed chapter 15 petitions on April 15, 2024.

Canadian company, oversees used truck sales in Canada, while non-Debtor Pride Truck Sales L.P.,

a Delaware limited partnership, performs the corresponding function in the United States.

      15.    The Pride Group entities that are Debtors in these Chapter 15 Cases consist of the

following entities:[6]

### *Canadian and U.S Operating Companies (16 entities):*

    a.   Pride Truck Sales Ltd., a Canadian entity that oversees used truck and tractor trailer sales in Canada that is a wholly-owned subsidiary of Pride Group Holdings Inc.[7]

    b.   TPine Truck Rental Inc., a Canadian entity that principally sells and rents new trucks and tractor trailers in Canada; and its U.S. equivalent, TPine Rental USA, Inc.

    c.   Pride Group Logistics Ltd., a Canadian entity that provides logistics, brokering and delivery services in Canada; and its U.S. equivalents, Pride Group Logistics USA, Co., and Arnold Transportation Services, Inc.

    d.   Pride Group Logistics International Ltd., a Canadian entity that is the freight broker for Pride Group Logistics Ltd., Pride Group Logistics USA Ltd., and Arnold Transportation Services, Inc.

    e.   TPine Leasing Capital Corporation, a Canadian entity that oversees truck leasing in Canada.[8]

    f.   Dixie Truck Parts Inc., a Canadian entity that sells and is a supplier of truck parts in Canada; and its U.S. equivalent, Dixie Truck Parts US Inc., which has no operations of its own and is used to facilitate the payment of U.S.-based vendors of Dixie Truck Parts Inc.

    g.   Pride Fleet Solutions Inc., a Canadian entity that is the fuel wholesaler and repair and maintenance services provider to external customers and to other members of the Pride Group; and its U.S. equivalent, Pride Fleet Solutions USA Inc.

---

[6]    As noted above, although the Arnold Entities are currently Debtors and therefore listed below, I am no longer seeking recognition or any relief with respect to those entities.

[7]    Pride Truck Sales Ltd.'s U.S. equivalent is Pride Truck Sales L.P., which is not applicant in the CCAA Proceedings for the reasons discussed above and therefore not a Debtor in these Chapter 15 Cases.

[8]    TPine Leasing Capital Corporation's U.S. equivalent is TPine Leasing Capital L.P., which is not applicant in the CCAA Proceedings for the reasons discussed above and therefore not a Debtor in these Chapter 15 Cases.

h.  TPine Financial Services Inc., a Canadian entity that provides factoring and other financial services to Pride Group customers in Canada; and its U.S. equivalent, TPine Financial Services Corp.

i.  Parker Transport Co., a U.S. entity that oversees equipment leases in the United States.

j.  Pride Group EV Sales Ltd., a Canadian entity that sells electric vehicle chargers to customers of the Pride Group.

### Canadian and U.S. Holding Companies (10 entities):

a.  Pride Group Holdings Inc., a Canadian entity that is the intermediate management holding company for certain entities of the Pride Group.  This entity is directly owned by members of Sulakhan Johal's family or family trusts.

b.  Coastline Holdings Corporation, a Delaware corporation that is a minority holding company for certain U.S. operating companies.

c.  Pride Group Real Estate Holdings Inc., a Canadian entity that holds the shares of certain Canadian real estate holding companies.

d.  1000089137 Ontario Inc., a Canadian holding company.

e.  DVP Holdings, Corp., a U.S. holding company.

f.  Parker Global Enterprises, Inc., a U.S. holding company that holds the shares of Parker Transport Co.

g.  2692293 Ontario Ltd., a Canadian holding company that is the ultimate shareholder of all of the U.S. Pride Group entities.

h.  2043002 Ontario Inc., a Canadian entity that acts as the real estate holding company for the Pride Group in Canada.

i.  2554193 Ontario Inc., a Canadian holding company that holds the shares of certain other real estate holding companies.

j.  2554194 Ontario Inc., a Canadian holding company that holds the shares of certain other real estate holding companies.

### Canadian and U.S. Single-Asset Real Estate Holding Companies (45 entities):

### Canadian Single-Asset Real Estate Holding Companies

a.  102098416 Saskatchewan Ltd., a Canadian entity that holds a parcel of real estate located at 4600 E Victoria Ave, Regina, Saskatchewan;

b.  12944154 Canada Inc., a Canadian entity that holds parcels of real estate located at 1943 - 45, 55th Ave, Dorval, Quebec and 3550-3590 Pitfield Blvd, Pierrefonds, Quebec;

c.  13184633 Canada Inc., a Canadian entity that holds a parcel of real estate located at 3600-3650 Pitfield Blvd, Pierrefonds, Quebec;

d.  13761983 Canada Inc., a Canadian entity that holds a parcel of real estate located at lot 1163711, Cadastre, Quebec;

e.  1450 Meyerside Holding Inc., a Canadian entity that holds a parcel of real estate located at 1450 Meyerside Drive, Mississauga, Ontario;

f.  177A Street Surrey Holding Inc., a Canadian entity that holds a parcel of real estate located at 10202 177A Street Surrey, British Columbia;

g.  2029909 Ontario Inc., a Canadian entity that holds a parcel of real estate located at 6050 Dixie Road, Mississauga, Ontario;

h.  2076401 Ontario Inc., a Canadian entity that holds a parcel of real estate located at 10862 Steeles Avenue East, Milton, Ontario;

i.  2108184 Alberta Ltd., a Canadian entity that holds a parcel of real estate located at 20804 Stony Plain Rd, Edmonton, Alberta;

j.  2837229 Ontario Inc., a Canadian entity that holds a parcel of real estate located at 10874 Steeles Ave, Halton Hills, Ontario;

k.  2863283 Ontario Inc., a Canadian entity that holds a parcel of real estate located at 6253 Boundary Road, South Glengarry, Ontario;

l.  3000 Pitfield Holding Inc., a Canadian entity that holds a parcel of real estate located at 3000 Pitfield Blvd., St Laurent, Quebec;

m.  52 Street Edmonton Holding Inc., a Canadian entity that holds a parcel of real estate located at 7403 52 Street NW, Edmonton, Alberta;

n.  30530 Matsqui Abbotsford Holding Inc., a Canadian entity that holds a parcel of real estate located at 30530 Matsqui Pl, Abbotsford, British Columbia;

o.  68th Street Saskatoon Holding Inc., a Canadian entity that holds parcels of real estate located at 335 68th Street, Saskatoon, SK S7P 0E3 and 343 68th Street, Saskatoon, Saskatchewan;

p.  933 Helena Holdings Inc., a Canadian entity that holds a parcel of real estate located at 933 Helena St, Fort Erie, Ontario;

q.  84 St SE Calgary Holdings Inc., a Canadian entity that holds a parcel of real estate located at 235132 84 Street SE, Rocky View County, Alberta;

### *U.S. Single-Asset Real Estate Holding Companies*

a.  11670 Interstate Holding, Corp., a Texas entity that holds a parcel of real estate located at 11670 Interstate 10 E, San Antonio, Texas;

b.  131 Industrial Blvd Holding Corp., a Tennessee entity that holds a parcel of real estate located at 131 Industrial Blvd, La Vergne, Tennessee;

c.  13th Street Pompano Beach FL Holding Corp., a Florida entity that holds a parcel of real estate located at 981 SW 13 Street, Pompano, Florida;

d.  162 Route Road Troy Holding Corp., an Illinois entity that holds a parcel of real estate located at 162 Route Road, Troy, Illinois;

e.  401 South Meridian OKC Holding Corp., an Oklahoma entity that holds a parcel of real estate located at 401 S Meridian Avenue, Oklahoma City, Oklahoma;

f.  59th Ave Phoenix Holding Corp., an Arizona entity that holds a parcel of real estate located at 1021 N 59th Ave, Phoenix, Arizona;

g.  8201 Hwy 66 Tulsa Holding Corp., an Oklahoma entity that holds a parcel of real estate located at 8201 State Highway 66, Tulsa, Oklahoma;

h.  87th Avenue Medley FL Holding Corp., a Florida entity that holds a parcel of real estate located at 10015 NW 87th Avenue Medley, Florida;

i.  963 Sweetwater Holding Corp., a Florida entity that holds a parcel of real estate located at 963 Sweetwater Ln, Boca Raton, Florida;

j.  Alexis Investments, LLC, an Ohio entity that holds a parcel of real estate located at 1125 E Alexis Rd. Toledo, Ohio;

k.  Bishop Road Holding Corp., a Washington state entity that holds a parcel of real estate located at 1696 Bishop Road, Chehalis, Washington;

l.  Corrington Missouri Holding Corp., a Missouri entity that holds a parcel of real estate located at NE 45th. & N. Corrington Ave., Kansas City, Missouri;

m.  Crescentville Road Cincinnati Holding Corp., an Ohio entity that holds a parcel of real estate located at 1985 E. Crescentville Road, West Chester, Ohio;

n.  Di Miller Drive Bakersfield Holding Corp., a California entity that holds a parcel of real estate located at 7548 DiMiller Drive, Bakersfield, California;

o.  East Brundage Lane Bakersfield Holding Corp., a California entity that holds a parcel of real estate located at E. Bundage Lane APN: 177-130-03-00, County of Kern, California;

p.  Eastgate Missouri Holding Corp., a Missouri entity that holds parcels of real estate located at 2726 N. Eastgate Ave., Springfield, Missouri and 2929 N. Eastgate Ave., Springfield, Missouri;

q.  French Camp Holding Corp., a California entity that holds a parcel of real estate located at 2546 French Camp Road, Stockton, California;

r.  Frontage Road Holding Corp., an Illinois entity that holds a parcel of real estate located at 225 West South Frontage Road, Bolingbrook, Illinois;

s.  High Prairie Texas Holding Corp., a Texas entity that holds a parcel of real estate located at 3375 High Prairie Rd, Grand Prairie, Texas;

t.  Highway 46 McFarland Holding Corp., a California entity that holds a parcel of real estate located at 31992 Highway 46, McFarland, California;

u.  Loop 820 Fort Worth Holding Corp., a Texas entity that holds a parcel of real estate located at 1501 NE Loop 820, Fort Worth, Texas;

v.  Manheim Road Holding Corp., an Illinois entity that holds a parcel of real estate located at 3800 Mannheim Rd, Franklin Park, Illinois;

w.  Oakmont Drive IN Holding Corp., an Indiana entity that holds a parcel of real estate located at 2400 Oakmont Dr., Bloomington, Indiana;

x.  Old National Highway Holding Corp., a Georgia entity that holds a parcel of real estate located at 4895 Old National Highway, College Park, Georgia;

y.  PGED Holding, Corp., a Texas entity that holds a parcel of real estate located at 34880 LBJ Freeway, Dallas, Texas;

z.  Terminal Road Holding, Corp., an Indiana entity that holds a parcel of real estate located at 6111 W Hanna Avenue, Indianapolis, Indiana;

aa. Ternes Drive Holding Corp., a Michigan entity that holds a parcel of real estate located at 500 Ternes Drive, Monroe, Michigan; and

bb. Valley Boulevard Fontana Holding Corp., a California entity that holds a parcel of real estate located at 15762 Valley Blvd, Fontana, California.

16.    As noted above, the Pride Group's three U.S. limited partnerships, Pride Truck Sales L.P., TPine Leasing Capital L.P., and Sweet Home Hospitality L.P., are not eligible to be

applicants in the CCAA Proceedings due to their corporate structure and are therefore not Debtors in these Chapter 15 Cases. Further, Canadian entity Block 6 Holding Inc. (a single-asset real estate company), Bermudan entity Pride Global Insurance Company Ltd. (which acts as the captive insurance company formed to provide risk mitigation services to Pride Group Logistics Ltd.), Canadian entity 2500819 Ontario Inc. (which holds insurance policies for all passenger vehicles driven by Pride Group employees in Canada), and Delaware Corporation Pergola Holdings, Corp. (which holds the shares of all of the U.S. real estate holding companies) are not applicants in the CCAA Proceedings and are therefore not Debtors in these Chapter 15 Cases (collectively, the "Non-Applicant Stay Entities"). However, given that the Non-Applicant Stay Entities continue to provide important services to the Pride Group, they require the stay under the Chapter 15 Cases to extend to these entities to preserve the *status quo*, and I understand that the Canadian Court has granted an extension of the stay under the CCAA Proceedings over these entities, which has been provisionally enforced in the United States. *See* First Provisional Relief Order.

17.    As noted above, the Pride Group includes certain Securitization SPVs that do not engage in any business or activity other than acting as purchasers of securitized assets or issuers of asset-backed obligations under various securitization agreements. The Securitization SPVs are not applicants in the CCAA Proceedings and are not Debtors in these Chapter 15 Cases, and no relief is being sought with respect to those entities. Finally, as set forth in greater detail in the following section, no relief is sought with respect to the Arnold Entities.

### The Arnold Entities

18.    Although the Arnold Entities filed chapter 15 cases on the Initial Petition Date, I am no longer seeking recognition as to their CCAA Proceedings or any other relief with respect to them. Since the Initial Petition Date, it has become apparent to me and my advisors that the Arnold

Entities, which were acquired by the Pride Group in 2022, had never been fully integrated into the Pride Group's operational structure as had been previously explained to me.  Instead, the Arnold Entities were operationally independent from the Pride Group, and had their own management team and infrastructure located in Texas (although their fleet of trucks is primarily leased from TPine Leasing Capital L.P.).  As a result, I concluded that certain of the statements set forth in the original *Declaration of Randall Benson in Support of the (A) Debtors' Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code and (B) Motion for Provisional Relief* [D.I. 2] (the "Original Benson Declaration") regarding the COMI of the Pride Group were inaccurate as to the Arnold Entities.

19.    Since the commencement of the CCAA Proceedings, the liquidity position of the Arnold Entities has been deteriorating rapidly due to the fact that: (i) the primary source of liquidity for the Arnold Entities, a factoring relationship with Triumph Financial Services LLC, has been discontinued following the commencement of the CCAA Proceedings, and (ii) certain large customers have ceased doing business with the Arnold Entities.  The Arnold Entities have taken measures to reduce cash burn, including shutting down business lines and not taking certain new delivery orders.  Further, on April 19, 2024, the Arnold Entities terminated their group medical and prescription drug plan, in accordance with its terms.  Nevertheless, the Arnold Entities required continued funding to maintain payments for fuel and employee wages and benefits, which have been in the form of intercompany advances from the Pride Group (the "Arnold Intercompany Advances") totaling approximately US$800,000 (as of April 22, 2024) since the commencement of the CCAA Proceedings.

20.    As a result of the foregoing, I have concluded that an asset sale for the Arnold Entities was the best—and only—option to pursue.  In conjunction with the Arnold Entities' management team and the Monitor, I solicited bids from potential purchasers that may be interested in the Arnold Entities' assets to determine if a sale could be accomplished quickly. Although certain bidders expressed interest in the Arnold Entities' assets, including one that was a particularly strong potential candidate, no bidder has yet emerged with a viable offer that could be consummated quickly.  I also recently discovered that the Arnold Entities were not current on, and failed to satisfy, significant obligations that directly impacted their ability to continue to operate their business.  As a result, the Arnold Entities are exploring all available options and are seeking authority from the Canadian Court to file for bankruptcy in Canada and/or chapter 7 in the United States.  As such, I am no longer seeking recognition of the CCAA Proceedings in the United States under chapter 15 of the Bankruptcy Code solely as to the Arnold Entities.

## C.  The Debtors' Business Operations

21.    The Pride Group is engaged in a number of business lines that focus on the North American trucking and logistics industries that collectively form a "one-stop shop" solution for truck drivers across Canada and the United States.

22.    *Logistics*.  As noted above, Pride Group Logistics Ltd. and Pride Group Logistics USA, Co. are the Canadian and U.S. logistics and brokering arm of the Pride Group, respectively. These entities serve a large and growing roster of blue-chip customers, including in the grocery and food and beverage industries.

23.    *Used Truck Sales*.  The Pride Group started as a seller of used trucks and tractor trailers and continues to focus on this business segment today.  Used trucks are sold at a lower price point as compared to new trucks and allow the Pride Group to target a broader group of

customers as well as to provide a way to monetize trucks that have been traded in by customers. The Pride Group sells and services trucks from various manufacturers.

24.     ***New Truck Sales and Leases.***  The Pride Group sells and leases new trucks and tractor trailers from various manufacturers.  Given the relatively high price of new trucks, customers typically lease trucks, including on a "lease to own" or operating lease basis. Additionally, the Pride Group offers customers a purchase package that includes servicing, repair, and 24/7 rescue services across North America, which allows it to draw on its relationships with local suppliers as well as synergies between its various business lines.  As of the date hereof, the Pride Group has over 18,500 trucks leased to customers throughout Canada and the United States, and over 4,500 trucks in inventory at its various facilities across Canada and the United States.

25.     ***Servicing and 24/7 Rescue.***  A critical component of most Pride Truck purchase packages is a servicing and 24/7 rescue package that provides peace-of-mind to customers, particularly smaller scale owner-operators.  The price of the service is typically included as part of the single monthly price charged to customers.  Commercial trucks and tractor-trailers have significant servicing needs due to their size, complexity and intensive use.  The Pride Group offers directly, or through service agreements with local companies, professional 24/7 rescue and repair services as well as replacement trucks to its customers.

26.     ***Truck Parts Sales.***  The Pride Group also sells truck and tractor trailer part and components through its Dixie Truck Parts Inc. (Canada) and Dixie Truck Parts Inc. (US) businesses.  These entities operate several big-box store parts businesses at Pride Group-owned properties across North America.

27.     ***Securitization and Securitization-Servicing.***   Certain Pride Group entities, including Canadian Debtor TPine Leasing Capital Corporation and U.S. non-Debtor TPine

Leasing Capital L.P., are party to certain securitization and servicing agreements with various funders (collectively, the "Securitization Agreements") which are used to generate funding that it can redeploy to grow its business. The Securitization Agreements generally provide that packages of leases and lease receivables are sold to special purpose vehicles or directly to securitization funders. The Securitization Agreements generally require that the Pride Group continue to administer or "service" the leases on behalf of the third-party funders, including by collecting payments and repossessing trucks in case of lease defaults.

28. ***Other Business Lines.*** The Pride Group also operates additional business lines, including (i) offering its customers wholesale fuel cards that allow truck drivers to purchase fuel from major fuel retailers at reduced cost; (ii) offering factoring services whereby the Pride Group purchases customer invoices at a discounted amount, then leverages its administrative and billing teams to bill and collect the outstanding amounts; (iii) operating truck stops at various locations across Canada and the United States; and (iv) installing electric truck charging stations at several of its real estate properties across North America. Several of these business lines have been wound down or are in the process of being wound down.

### D. **The Debtors' Customers, Suppliers, Employees, and Cash Management**

29. The Pride Group's customers include both large blue-chip businesses as well as smaller-scale owner-operators. Given the number of business lines operated by the Pride Group, it utilizes a large number of suppliers, but the most significant suppliers are original equipment manufacturers that manufacture and sell trucks to the Pride Group and provide related financing solutions, including Daimler, Navicar, Volvo, and Paccar Trucks.

30. Excluding the Arnold Entities, the Pride Group employs 669 employees, the majority of which are based in Ontario, Canada, with the remainder in limited-service centers in

the United States and India.  Certain full-time employees are entitled to participate in the Pride Group's registered retirement savings plan for Canadian resident employees maintained by the Pride Group.  The Pride Group's employees are all non-unionized.

31.    The Pride Group contracts with 405 independent contractors.    While these individuals are hired as independent contractors, they rely solely on the Pride Group for their income.  Independent contractors consist of back-office support, salespersons, mechanics, drivers, and owner-operators that support Pride Group entities.  These independent contractors are integral to the operations of the Pride Group, and the continuation of their relationship with the Pride Group is critical to its ongoing operations.  Set forth below is a table with respect to the Pride Group's employees and independent contractors:[9]

| Location | Employees | Contractors |
|----------|-----------|-------------|
| Canada | 369 | 384 |
| United States | 100 | 21 |
| India | 200 | 0 |
| **Total** | **669** | **405** |

32.    The Pride Group maintains a centralized cash management system to consolidate and track funds generated by the operations of its various business lines.  Canadian bank accounts are maintained with Royal Bank of Canada, Bank of Montreal, and National Bank of Canada, while a small number of bank accounts are maintained in the United States with BMO Harris Bank N.A. ("BMO Harris") and Bank of America.

---

[9]    The Original Benson Declaration inadvertently excluded the employees and contractors of the Arnold Entities. Given that no relief is being sought with respect to the Arnold Entities and the Arnold Entities are no longer included in the definition of "Pride Group" as used herein, the numbers set forth in this table are now correct.

33.     Certain Pride Group entities that use BMO Harris accounts have an arrangement where their deposit only accounts are used to settle disbursement operating accounts on a nightly basis.  The remainder of the BMO Harris accounts are standalone.

**E.  The Debtors' Liabilities and Capital Structure**

34.     The Pride Group has loan and credit facilities with more than 20 lenders and securitization agreements with more than six securitization funders.  Based on the books and records of the Pride Group as of March 22, 2024, the aggregate amount outstanding on these loan and credit facilities exceeds CA$1.6 billion and US$600 million.  The various facilities on which Pride Group entities are obligated are described in greater detail below.

35.     *Syndicated Facility*.  Many of the Debtors are borrowers and guarantors under the Syndicated Facility, which provides the following facilities to the borrowers: (i) a CA$125 million Revolving Omnibus Floor Plan Facility; (ii) a CA$22 million Non-Revolving Term Loan Facility; (iii) a US$80 million Non-Revolving Term Loan Facility; (iv) a CA$265 million Revolving Wholesale Lease Line; and (v) a US$250 million Revolving Whole Lease Line.  As of March 26, 2024, the total amount outstanding under the Syndicated Facility was CA$403 million.  The obligations under the Syndicated Facility are secured by general security agreements and other security documentation.

36.     *Floor Plan Facilities*.  Several Pride Group entities are parties to various floor plan facilities (the "Floor Plan Facilities"), the proceeds of which are used for the acquisition of trucks which are subsequently made available for sale on Pride Group lots across Canada and the United States.  The Floor Plan Facilities are guaranteed by various Pride Group entities and are secured by general security agreements granted by the borrowers, and include the following:

a.  The Syndicated Facility, which includes a CA$125 million Revolving Omnibus Floor Plan Facility.

b.  The floor plan facilities in an initial principal amount of US$100 million provided by Hitachi Capital Canada and Hitachi Capital America (which facilities have since been acquired by Mitsubishi HC Capital Canada, Inc. ("<u>Mitsubishi</u>")) in favor of Debtor Pride Truck Sales Ltd. and non-Debtor affiliate Pride Truck Sales L.P. (the "<u>Mitsubishi Facility</u>").  In addition to guarantees provided by various Canadian and U.S. Pride Group entities, the Mitsubishi Facility is guaranteed by Sulakhan Johal and Jasvir Johal personally.  As of March 26, 2024, the amount outstanding under the Mitsubishi Facility was approximately CA$93 million, plus interest and costs.

c.  The floor plan facilities in an initial principal amount of CA$50 million provided by BMO Harris in favor of Debtor TPine Rental USA Inc. (the "<u>BMO Facility</u>").  As of March 26, 2024, the amount outstanding under the BMO Facility was approximately CA$33.8 million, plus interest and costs.

37.   ***OEM Wholesale Leaseline Facilities.***  Several Pride Group entities are parties to various OEM *wholesale* leaseline facilities (the "<u>OEM Facilities</u>"), the proceeds of which are used to facilitate the leasing of trucks to end customers.  The OEM Facilities are guaranteed by various Pride Group entities and are secured by general security agreements granted by Debtor TPine Leasing Capital Corporation, and contemplate first-ranking security in specific trucks leased thereunder, and include the following:

*Canadian Leaseline Facilities*

a.  The wholesale leaseline facilities provided by Daimler Truck Financial Services in an initial principal amount of CA$256 million to Debtor TPine Leasing Capital Corporation (the "<u>Daimler Facility</u>").  As of March 26, 2024, the amount outstanding under the Daimler Facility was approximately CA$296 million.

b.  The wholesale leaseline facilities provided by Daimler Truck Financial Service USA LLC to Debtor TPine Leasing Capital L.P. As of March 26, 2024, the principal amount outstanding was approximately US$75 million.

c.  The wholesale leaseline facilities provided by Paccar Financial Corp. in an initial principal amount of CA$50 million to Debtor TPine Leasing Capital Corporation and non-Debtor affiliate TPine Leasing Capital L.P. (the "<u>Paccar Facility</u>").  As of March 26, 2024, the amount outstanding under the Paccar Facility was approximately CA$46.9 million.

d.  The wholesale leaseline facilities provided by Volvo Financial Services in initial principal amount of CA$35 million to Debtor TPine Leasing Capital Corporation (the "<u>Volvo Facility</u>").  As of March 26, 2024, the amount outstanding under the Volvo Facility was approximately CA$30.6 million.

*U.S. Leaseline Facilities*

a.  The wholesale leaseline facilities provided by Daimler Truck Financial Services USA LLC in an initial principal amount of up to US$165 million to non-Debtor TPine Leasing Capital L.P.

b.  The wholesale leaseline facilities provided Paccar Financial Corp. in an initial principal amount of up to US$50 million to non-Debtor TPine Leasing Capital L.P.

c.  The wholesale leaseline facilities provided VFS US LLC in an initial principal amount of up to US$35 million to non-Debtor TPine Leasing Capital L.P.

d.  The wholesale leaseline facilities provided BMO Harris in an initial principal amount of up to US$30 million to non-Debtor TPine Leasing Capital L.P.

e.  The wholesale leaseline facilities provided TBK Bank, SSB in an initial principal amount of up to US$40 million to non-Debtor TPine Leasing Capital L.P.

f.  The wholesale leaseline facilities provided First American Commercial Bancorp, Inc. in an initial principal amount of up to US$10 million to non-Debtor TPine Leasing Capital L.P.

38.  ***Lease Facilities.***  Debtor TPine Leasing Capital Corporation and non-Debtor affiliate TPine Leasing Capital L.P. are borrowers under several different bilateral leasing facilities (collectively the "Lease Facilities").  As of March 26, 2024, the amount outstanding under the Lease Facilities is approximately CA$300 million.  The Lease Facilities are guaranteed by various Pride Group entities and secured by general security agreements granted by those entities.  The Lease Facilities contemplate a first-ranking security interest in specific trucks leased thereunder.  Lenders under the various bilateral Lease Facilities include CWB/Maxium, Royal Bank of Canada, BMO Harris, TBC Bank, First American Equipment Finance, Versa Bank, Regions Bank, ENGS Commercial Finance Co. and Mitsubishi.

39.  ***Securitization  Facilities.***  As noted above, Debtor TPine Leasing Capital Corporation and non-Debtor affiliate TPine Leasing Capital L.P. are party to several Securitization Agreements with the following funders: (i) Royal Bank of Canada, (ii) Bodkin, a division of Bennington Financial Corp; (iii) Mitsubishi (formerly through CLE Leasing); (iv) ENGS

Commercial Finance Co.; (v) Coast Capital; (vii) National Bank of Canada and National Bank Financial Inc.; (viii) Regions Bank; (ix) VersaFinance US Corp. and Aviator Financial Inc.; (x) CWB/Maxium; and (xi) BDC/BNY Trust Company of Canada in its capacity as trustee of Move Trust.  The Securitization Agreements provide for a first-ranking interest in the specific leased trucks thereunder, and certain other Pride Group entities have also provided guarantees and pledged collateral in respect of the Securitization Agreements.

40.     ***Real Estate and Mortgages.***  Various lenders have provided real estate financing to specific Pride Group real estate holding companies in respect of specific real estate properties (*collectively*, the "Real Estate Financings").  In each case, the principal security is a first-ranking mortgage in respect of the underlying real estate property.  As of December 31, 2023, the aggregate amount outstanding under the Real Estate Financings is approximately CA$231.8 million and US$88.7 million.

41.     ***Other Credit Facilities.***  The Pride Group has several other credit facilities with other lenders (collectively, the "Other Credit Facilities"), including:

   a.  a CA$25 million revolving term equipment financing facility with Bank of Nova Scotia;

   b.  a CA$30 million revolving term equipment financing facility with HSBC Bank Canada;

   c.  a CA$20 million revolving term equipment financing facility with Canadian Western Bank;

   d.  a CA$30 million revolving term equipment financing facility with TD Bank; and

   e.  a CA$25 million operating facility with Royal Bank of Canada.

42.     Due to the centrally managed nature of the Pride Group's businesses, the Debtors' accounts, management, and operations are heavily intertwined, and assets and funds are routinely transferred between and among Pride Group entities, which are reflected through intercompany

invoices and accounts payables/receivables.  For example, the Debtor real estate holding companies have relied on advances from other Debtors to pay their mortgages, and the Floor Plan Facilities and Lease Facilities contemplate the frequent transfer of underlying truck collateral among the applicable Debtor entities.

## EVENTS LEADING TO THE COMMENCEMENT OF THE CCAA PROCEEDINGS

### A.  The "Perfect Storm" of Unfortunate Events

43.    The North American trucking and logistics industry is facing a prolonged downturn. While spot freight prices, diesel prices and interest rates trends were all initially favorable for the trucking industry following the COVID-19 pandemic, they have all deteriorated significantly since that time.  The situation has been exacerbated by the increased number of trucks that were brought to market during the immediate aftermath of the COVID-19 pandemic, many of which are currently sitting unused.

44.    The effects of the foregoing have been disproportionately borne by smaller trucking and logistics companies and owner-operators.  These smaller companies and owner-operators comprise a significant percentage of the Pride Group's customers.  Delinquencies and non-payment by such customers have directly contributed to the Pride Group's current financial position.  In addition, due to the nature of the Pride Group's business lines, the effects of non-payment and delinquencies by customers are multiplied as these customers have also stopped utilizing the Pride Group's other businesses, such as truck servicing, fuel sales, factoring, and rescue operations.  These factors have created a perfect storm of events contributing to the Pride Group's current financial position.

### B.  The Pride Group's Efforts to Improve Financial Performance

45.    In response to these financial difficulties, the Pride Group instituted a number of measures in an attempt to improve its financial position, including working closely with customers to create payment and other workout plans that maximize recoveries in the event of non-payment and delinquencies.  However, these efforts have been complicated by broader economic trends in Canada and the United States.  For instance, in the past, the Pride Group has attempted to secure its trucks against customers' homes, but stagnating home prices in Canada has made this recourse less effective.

46.    Efforts undertaken by the Pride Group have included efforts to initiate legal and collection proceedings against delinquent lease customers; imposing stricter credit policies on end customers; requiring more frequent payments; conducting layoffs to reduce payroll; selling non-core assets; and winding down unprofitable business lines, such as the factoring and electric truck charging businesses.  These efforts have imposed significant strain on the Pride Group's management team, who have been forced to do more with fewer resources.

**C.  Uncertainty Over Priority of Security Against Collateral**

47.    As noted above, the Pride Group's business requires the frequent transfer of trucks among different business lines.  It is my understanding based on discussions with the Debtors' management that while lenders expect first-ranking security over the trucks that are financed by them, it is not common practice for lenders to register financing statements against the specific trucks that serve as collateral on their loans.  Rather, periodic audit checks are performed by lenders to ensure that their collateral is not subject to other parties' interests.

48.    I have been informed that in the ordinary course of a truck's life, it will typically become subject to various liens and security interests.  When a truck is first acquired by the Pride Group for sale or lease, that truck is collateral for the Syndicated Facility.  When the same truck

is leased or financed, it then becomes subject to the lessor or financier's security registration instead. I have been informed that for most of the Pride Group's history, this potential for multiple security interests against the same trucks has always existed. However, starting in late 2022 through 2023, the Pride Group experienced much higher than normal rates of payment default and delinquency on truck leases, resulting in the Pride Group having to repossess an increasing number of trucks. I understand that these repossessed trucks sometimes had existing liens attached to them in favor of lessors or financiers, but they also became collateral under the Syndicated Facility upon their repossession and return to the Pride Group's inventory.

49.    It is my understanding based on discussions with the Debtors' management that due in part to the strains on the Pride Group's team and delays in transferring assets and liabilities across business lines in recent months, the Pride Group was not able to timely track and correct security registrations, and has inadvertently pledged certain trucks more than once such that more than one lender claims a security interest in those trucks. This issue was first identified by a lender pursuant to an ordinary course audit of pledged collateral. I understand that the Pride Group immediately created an internal task force to identify the extent of the issue and to ensure the inadvertent practice stopped. With the assistance of Canadian Court-appointed monitor, Ernst & Young Inc. (in such capacity, the "Monitor"), new internal governance programs and controls were implemented to ensure accurate recording and correction of security interest in truck collateral. The Pride Group has also alerted most lenders that may have been impacted by this issue. Since my engagement as CRO, I have been assisting the Pride Group and the Monitor with addressing this issue as well.

50.    Upon learning that there may be multiple security interests in the same collateral, certain Pride Group lenders have, as a precautionary measure, refused to permit their collateral

from being transferred or sold.  This has restricted the Pride Group from conducting a core part of its business—selling and leasing trucks.  To address this issue, since the commencement of the CCAA Proceedings and these Chapter 15 Cases, the Canadian Court has approved pursuant to the Protocols Order (as defined below) certain governance protocols designed by the Monitor to ensure that no lenders receive any benefits from their collateral at the expense of any other parties in interest, including by placing any proceeds of the trucks subject to multiple security interests into a trust account held by the Monitor to be distributed in accordance with the CCAA Proceedings (the "Governance Protocol").  The Governance Protocol was enforced by this Court on a provisional basis with respect to the Pride Group and its property located in the United States pursuant to the *Order Granting Provisional Relief in Connection with Debtors-In-Possession Financing and Certain Protocols Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 110] (the "Second Provisional Relief Order").  Negotiations regarding these protocols are continuing, and the Debtors intend to seek Canadian Court approval of revised governance protocols on April 25, 2024.

51.    The Monitor and I, with the Debtors' assistance, have also identified certain other instances where assets or credit facilities were recorded differently than they ought to have been. In each such case, the Debtors, the Monitor, and I have implemented practices and protocols to prevent these situations from occurring in the future, and such practices and protocols have been disclosed to certain of the Debtors' lenders.

**D.  Negotiations With Creditors**

52.    As noted above, over the past several months, the Debtors have engaged in extensive negotiations with their principal lenders to find a path forward.  These efforts have resulted in informal forbearances from several lenders.  Nevertheless, many of the Debtors' lenders have

delivered demands for payment, reservations of rights, and notices of intent to enforce security pursuant to section 244 of the Canadian *Bankruptcy and Insolvency Act*.

53.    Certain lenders and contract counterparties have already initiated litigation proceedings against certain Debtor and non-Debtor affiliated entities in the United States.  This includes seeking to litigate breach of contract claims and the appointment of a receiver with respect to their collateral and seeking to enforce existing settlement agreements.  Further, the Debtors have also been made aware that at least one lender has delivered notices to truck lessees instructing them to make payment on their lease (which serves as collateral for the lender's loans) to the lender instead of to the applicable non-Debtor Pride Group entity.  Finally, several funders under the Pride Group's Securitization Agreements have indicated that they intend to replace the Pride Group as the "servicer" under those agreements.  The Debtors intend to continue engaging in negotiations with their lenders as they develop their plan of restructuring.

54.    The Debtors are in urgent need of protection under the CCAA and these Chapter 15 Cases so they can stabilize their business, sell non-core assets, and work towards right sizing their businesses.  The Debtors have commenced the CCAA Proceedings with the ultimate goal of protecting the interests of creditors and other stakeholders, with a view to having the business emerge from CCAA protection in a stronger form that preserves and maximizes its enterprise value and employment for as many of its employees as is reasonably possible.

55.    Since the filing of the CCAA Proceedings and these Chapter 15 Cases, certain entities in the Pride Group entered into that certain debtor-in-possession facility term sheet, dated as of April 1, 2024 with its prepetition lenders under the Syndicated Facility and Royal Bank of Canada, as administrative agent to provide a debtor-in-possession facility in aggregate principal amount not to exceed CA$30 million (the "<u>DIP Facility</u>").  Further, the Pride Group, with my oversight and

the oversight of the Monitor, has been engaging in negotiations with its various creditor groups and identifying opportunities for asset sales or other avenues of value maximization. For instance, on April 19, 2024, I filed *the Motion of the Foreign Representative for Entry of an Order (I) Authorizing the Sale of Property of Debtor Frontage Road Holding Corp. Free and Clear of Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* [D.I. 115] seeking Court approval to sell certain real estate owned by Debtor Frontage Road Holding Corp. The Monitor has also been continuing its comprehensive securitization and security reviews, which are well underway. I continue to work with the Monitor and the other parties in interest to stabilize the Pride Group's business and evaluate available options for a restructuring that would benefit all stakeholders.

## THE CHAPTER 15 FILINGS

### A.  Recognition of the CCAA Proceedings as Foreign Main Proceedings

56.    On April 1, 2024, in my capacity as the Foreign Representative of the Debtors, I filed petitions under chapter 15 of the Bankruptcy Code with respect to the Operating Companies and Other Holdcos for recognition of the CCAA Proceedings, thereby commencing the chapter 15 cases for in respect of those Debtors. On April 15, 2024, in my capacity as the Foreign Representative of the Debtors, I filed petitions under chapter 15 of the Bankruptcy Code with respect to the Real Estate Holdcos for recognition of the CCAA Proceedings.

57.    I was authorized pursuant to the Initial Order and the A&R Initial Order to act as the Foreign Representative of the CCAA Proceedings and to seek recognition and approval of the CCAA Proceedings as necessary, including as "foreign main proceedings" under the Bankruptcy Code. In light of the statutory presumption embodied in section 1516(a) of the Bankruptcy Code, the Bankruptcy Code's definition of "foreign representative," and the Initial Order and A&R Initial

Order, I understand that I satisfy the requirements to serve as the Foreign Representative of the CCAA Proceedings.

58.     Each of the Debtors either is incorporated in the United States or holds property in the United States (or both).  On that basis, I understand that each of the Debtors is eligible to be a debtor in these Chapter 15 Cases.

59.     I understand that the Bankruptcy Code provides for recognition of foreign proceedings as "foreign main proceedings" if such foreign proceedings are "foreign proceedings" pending in a country where the debtor has "the center of its main interests."

60.     I understand that the CCAA Proceedings are "foreign proceedings" given that they are collective judicial proceedings authorized and supervised by the Canadian Court under the CCAA and pursuant to the Initial Order.  It is my understanding that for these reasons, the CCAA Proceedings qualify as "foreign proceedings" as that term is defined in Section 101(23) of the Bankruptcy Code.  In compliance with Section 1515(b) of the Bankruptcy Code, a copy of the Initial Order, which commenced the CCAA Proceedings, is attached to each of the Debtors' Chapter 15 petitions.

**B.  The Debtors' COMI is in Canada**

61.     I understand that section 1517(b)(1) of the Bankruptcy Code provides that foreign proceedings shall be recognized as "foreign main proceedings" if the foreign proceedings are pending in the country where the debtor has "the center of its main interests" ("COMI").  I understand that COMI is not defined in Chapter 15, but section 1516(c) of the Bankruptcy Code provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests."

62.     I believe that the COMI of each of the Debtors incorporated in Canada is located in Canada.  I also believe that, while certain of the Debtors are incorporated and have their registered offices in the United States, all of the Debtors' COMI (other than the Arnold Entities) is Canada for the reasons set forth below:

a.  Although the U.S. Debtors are incorporated under the laws of various U.S. states, they are all centrally managed by the same management team from the Pride Group's global headquarters located at 1450 Meyerside Dr. Suite 401, Mississauga, Ontario, Canada.[10]

b.  All of the U.S. Debtors are directly or indirectly owned personally by the Pride Group's co-founders, Sulakhan Johal and Jasvir Johal.

c.  33 of the Debtors are incorporated under the laws of Canada and have their principal place of business in Ontario, Canada.

d.  All of the Debtors' strategic and key operating and policy decisions are made by, or are subject to approval from, the Debtors' senior management located in Ontario, Canada.

e.  All of the Debtors' operations are overseen by the senior management team (including Sulakhan Johal and members of his family) at the Pride Group's global headquarters in Ontario, Canada.

f.  Substantially all of the Debtors' senior management team is located in Ontario, Canada.[11]

g.  Substantially all key human resources decisions pertaining to payroll and employees are made by the Debtors' senior management located in Ontario, Canada.

h.  Substantially all of the Debtors' key accounting decisions and all plans, budgets and financial projections are made by the Debtors' senior management located in Ontario, Canada.

---

[10]  While the Debtors maintain an office in Dallas, Texas that serves as the Pride Group's U.S. head office, all management decisions as a whole are made from the Pride Group's global headquarters in Ontario, Canada, and all of the most senior executives of the Pride Group live and work in Ontario, Canada.

[11]  While there are a few members of the management team that live and work in the United States, all management decisions as a whole are made from the Pride Group's headquarters in Ontario, Canada.

    i.   Substantially all of the Debtors' planning, budgeting, management of taxes, cash management and preparation of financial projections is done from Ontario, Canada.

    j.   Substantially all material and/or long-term contracts and expenses are subject to the approval of the Debtors' senior management located in Ontario, Canada.

    k.   Substantially all marketing and business development initiatives are overseen from Ontario, Canada.

    l.   Substantially all corporate governance and regulatory compliance for the Debtors is overseen from its management team located in Ontario, Canada.

    m.   For each of the U.S. Debtors other than the Arnold Entities, Sulakhan Johal and his brother Jasvir Johal are the only members of the board of directors and each of them live in Ontario, Canada, and, since the Pride Group's founding in 2010, all board meetings for all Pride Group entities have been physically held in Ontario, Canada.  Navraj Johal is the sole director of each of the Arnold Entities.

63.    Additionally, the primary assets of the Debtors, including its accounts receivables, trucks, dealerships, real estate, and the Pride Group's global headquarters, are located in Canada. While the Debtors maintain certain real estate held by various real estate holding companies (comprised of, among other things, truck stops, parking lots, and dealerships) and certain trucks in the United States, those assets are part of the overall Pride Group which is managed from its headquarters in Canada.  Further, all of the directors of the U.S. Debtors are located in Canada, which means that all decisions with respect to the property of those Debtors are made in Canada (for example, Sulakhan Johal executed the sale agreement to sell property owned by U.S. Debtor Frontage Road Holding Corp., and the sale was negotiated by a Pride Group executive located in Canada).

64.    Further, the majority of the Debtors' creditors affected by the CCAA Proceedings are located in, or have connections to, Canada.  I understand that the advisors engaged by those creditors in connection with the CCAA Proceedings are also primarily located in Canada.  I also understand that the lenders under the Syndicated Facility and DIP Facility are all Canadian banks

or subsidiaries of Canadian banks, and more than 50% (by value) of the Debtors' creditors are located in Canada. I further understand that the mortgagees on each of the Debtors U.S. Real Estate Holdcos that are subject to mortgages are Canadian banks or subsidiaries or affiliates of Canadian banks.

65.     Finally, while some of the Debtors' credit facilities are governed under U.S. law, the majority of them are governed by Canadian law, including the Syndicated Facility which is the largest credit facility on which the Debtors are obligated. Additionally, the CCAA Proceedings were initiated in Ontario, Canada, and are being prosecuted there, and the Canadian Court is overseeing the CCAA Proceedings. Therefore, I understand that many, if not most, disputes with the Debtors would have a nexus to Canada and will therefore be subject to Canadian law.

66.     Based on the foregoing facts, I believe that recognition of the CCAA Proceedings as foreign main proceedings is warranted.

67.     I also believe my recognition as the Debtors' "foreign representative" and recognition of the CCAA Proceedings as "foreign main proceedings" are consistent with the purpose of chapter 15 and will allow the Debtors to effectuate a potential restructuring or conduct a court-supervised sales process in the most efficient manner without jeopardizing creditors' rights.

## C.    **The Need for Discretionary Relief Related to the Stay**

68.     The Initial Order extends the stay of proceedings and other protections provided under the CCAA to (i) the Pride Group as a whole to preserve the *status quo*, given that the businesses and operations of the Debtors are heavily intertwined with that of the non-Debtor entities; and (ii) certain of the Pride Group's directors and officers in their capacity as personal guarantors on certain of the Pride Group's credit facilities, including Sulakhan Johal and members of his immediate family (collectively and in such capacities, the "Personal Guarantors"), given

that permitting such proceedings to continue would be distracting at this pivotal time during which they are managing and operating the Pride Group and pursuing the CCAA Proceedings and these Chapter 15 Cases.[12]   The Court previously granted enforcement of the Initial Order with respect to the stay of proceedings as to the Pride Group, the Personal Guarantors, and their property in the United States on a provisional basis pursuant to the *Order Granting Motion of the Foreign Representative for Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 49] (the "<u>First Provisional Relief Order</u>").

69.    I believe that extension of the relief granted under the First Provisional Relief Order on a final basis pursuant to section 1521(a)(6) of the Bankruptcy Code is appropriate.  Absent the requested relief, creditors, litigants, and other parties in interest could enforce their claims against the assets of the non-Debtor affiliates in the United States, causing irreparable harm to the Debtors and potentially derailing the orderly restructuring process under the CCAA Proceedings. Similarly, irreparable harm could result to the Debtors if parties in interest were to enforce their claims against the Personal Guarantors.  The Personal Guarantors are intimately involved in the management and operations of the Pride Group, and distraction from their duties at this pivotal time could result in business disruption and further decline, leading to worsened outcomes for all stakeholders.  Accordingly, I submit that enforcement of the Initial Order on a final basis, including extending the stay of proceedings as to the non-Debtor affiliates and the Personal Guarantors is appropriate and in the best interest of the Debtors, their creditors, and other parties in interest.

70.    To the extent not otherwise stayed under sections 1520 and 362 of the Bankruptcy Code, I also seek the Injunction to prevent any parties from attempting to continue or commence

---

[12]    I have been informed that one lender has already filed litigation against two of the Personal Guarantors in federal court in the District of Connecticut and Southern District of New York seeking to enforce certain personal guarantees.

actions or assert claims in the United States against the Pride Group, the Personal Guarantors, or their property inconsistent with the Initial Order and A&R Initial Order.  The Injunction is necessary to ensure that no party may take actions adverse to the Pride Group, the Personal Guarantors, or any of their property located within the territorial jurisdiction of the United States in an effort to gain an unfair advantage over other parties in interest subject to the CCAA Proceedings.

71.    The risk of irreparable harm exists here because disgruntled creditors and other parties in interest may seek judgments or take enforcement actions in the United States against the Pride Group, the Personal Guarantors, and their property located in the United States in an effort to circumvent the orderly administration of the Debtors' estates pursuant to the CCAA Proceedings.  As stated above, some of the Pride Group's credit facilities are governed by U.S. law, and are secured by collateral in the United States, and the Pride Group maintains assets in the United States such as real property, trucks, and equipment.  Further, certain of the Pride Group's credit facilities are personally guaranteed by the Personal Guarantors.  Accordingly, there is a risk that parties could file suit or take enforcement actions against the Pride Group, the Personal Guarantors, and their assets in the United States, as some lenders have already done.

72.    Absent permanent injunctive relief, the Debtors' efforts to reorganize through the CCAA Proceedings could be thwarted by the actions of disgruntled creditors or other parties in interest, a result that is inconsistent with the Bankruptcy Code.  I understand that the interests of affected parties under the CCAA Proceedings are sufficiently protected under section 1522(a) of the Bankruptcy Code because all similarly situated parties will be treated equally and fairly during the pendency of the CCAA Proceedings.  The Injunction also will not cause undue hardship or prejudice to the rights of any U.S.-based creditors or other parties in interest and is consistent with

principles of comity.  Accordingly, I submit that the Injunction should be granted.

### D.  <u>The Need for Discretionary Relief Related to the Charges and Waivers</u>

73.    In connection with recognition of the CCAA Proceedings, I am also seeking certain relief, including with respect to the Charges[13] to the extent and in the priorities set forth in under the A&R Initial Order with respect to the Pride Entities' property in the United States.

74.    Pursuant to the Second Provisional Relief Order, the Court enforced the Charges on a provisional basis under section 1519 of the Bankruptcy Code and principles of comity with respect to the Pride Entities and their property located within the territorial jurisdiction of the United States. I submit that extension on a final basis of the Second Provisional Relief Order, and grant of the Charges under section 364 of the Bankruptcy Code, is appropriate given that such relief is a condition precedent to the DIP Lenders extending all advances other than the initial advance of CA$6.5 million under the DIP Facility.  Absent such relief, the Pride Entities will not be able to access the capital necessary to continue operating to the detriment of all stakeholders.  For these reasons, I request that the Court, on a final basis, grant the Charges approved by the Canadian Court pursuant to the A&R Initial Order under sections 1519 and 364 of the Bankruptcy Code.

75.    I understand and acknowledge that the granting of the Charges under section 364 of the Bankruptcy Code requires that I provide adequate protection to lenders under the Syndicated Facility as well as other secured creditors of the Pride Entities, given that the Charges are superiority charges that rank ahead of certain existing security interests in the property of the Pride Assets.

---

[13]    The "Charges" are granted pursuant to the Initial Order and A&R Initial Order, and consist of superpriority charges on the Pride Entities' property (i) to secure the fees and disbursements of certain professionals (the "<u>Administration Charge</u>") (ii) to secure intercompany advances made from one Pride Entity to another Pride Entity after the entry of the Initial Order (the "<u>Intercompany Advances Charge</u>"); (iii) to secure the DIP Facility (as defined in the Amended Verified Petition) (the "<u>DIP Charge</u>"); and (iv) in favor of their directors and officers for additional liability insurance and certain obligations (the "<u>Directors' Charge</u>").  As among the Charges, the relative priority is as follows: (1) the Administration Charge; (2) the Intercompany Advances Charge; (3) the DIP Charge; and (4) the Directors' Charge.

Therefore, I also seek Court approval of certain replacement security interests in and liens on property of the Pride Entities located within the territorial jurisdiction of the United States pursuant to sections 362(d) and 364(d) of the Bankruptcy Code.  The adequate protection I seek has been negotiated with and agreed to by the lenders under the Syndicated Facility and the DIP Facility, and I submit that such adequate protection will adequately protect all other secured creditors from the diminution in the value of their collateral as a result of the grant of the Charges or the imposition or enforcement of the stay in these Chapter 15 Cases and the CCAA Proceedings.

76.     Finally,  I also seek waivers under sections 506(c), 552(b), and the doctrine of marshaling (collectively, the "Waivers").    Here, the DIP Lenders are extending additional credit in the form of the DIP Facility to the Pride Entities to fund their ongoing operations and the costs of their restructuring both in the CCAA Proceedings and these Chapter 15 Cases.  As noted above, the DIP Charge (which secures the DIP Facility) is junior to both the Administration Charge and the Intercompany Advances Charge, and the DIP Agent and DIP Lenders have required the Waivers in order to extend further credit under the DIP Facility.  I understand that waivers of this type are consistently requested and granted in connection with debtor-in-possession facilities in U.S. chapter 11 cases.  Thus, I submit that the Waivers are reasonable in light of the circumstances.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: April 23, 2024
      Toronto, Canada

                                  */s/ Randall Benson*
                                  Randall Benson

## Exhibit A

**Pride Group Organizational Charts**



**Organizational Chart – Canadian Entities**



**Organizational Chart -
Canadian Real Estate Entities**



**Organizational Chart – U.S. Entities**



JOHAL GROUP - USA
Corporate Structure
October 2023
USA

**Organizational Chart -
U.S. Real Estate Entities**

# Parker Global
# Organizational Chart



**Note**
Navraj Johal owns 100%
of 1000089137 ONTARIO INC.

**Organizational Chart –
Certain Other Entities**