IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) ) | Chapter 15 |
| Pride Group Holdings Inc., *et al.* | ) ) ) | Case No. 24-10632 (CTG) |
| Debtors in Foreign Proceedings. | ) ) ) | Jointly Administered |

### REGIONS BANK'S LIMITED OBJECTION TO AMENDED VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVE AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE

Regions Bank ("Regions") hereby files this limited objection (the "Limited Objection") to the Amended Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative and (III) Related Relief Under Chapter 15 of the Bankruptcy Code [Dkt. No. 121-1] the ("Amended Petition") filed by the foreign representative (the "Foreign Representative") of the above-captioned debtors (the "Debtors") seeking entry of the proposed recognition order attached as Exhibit A thereto (the "Proposed Recognition Order").[1] In support of this Limited Objection, Regions hereby states as follows:

### SUMMARY OF OBJECTION

1. Regions does not oppose this Court's entry of an order recognizing the CCAA Proceedings as "foreign main proceedings" under Chapter 15 of the Bankruptcy Code, recognizing the Foreign Representative, and giving effect to the existing Canadian Orders *as to the Debtors* within the territorial jurisdiction of the United States. However, Regions objects to any relief— including relief predicated on recognition of not-yet-entered Canadian Orders—that has the effect of providing to a non-debtor either (i) substantive, U.S. Bankruptcy Code-based relief that would

---

[1] Capitalized terms not defined herein are defined in the Proposed Recognition Order.

attach to or encumber the assets of such non-debtors or (ii) purporting to alter Regions' substantive, U.S.-law governed contractual and property rights.

## BACKGROUND

### A. The Regions Securitization Facility

2. Regions is administrative agent and lender under a Receivables Loan and Security Agreement, dated as of February 11, 2022, (as amended, restated, supplemented, or otherwise modified from time to time, the "Loan Agreement"), with TPine USA Funding II, LLC (the "Regions SPV Borrower"), which is one of the non-debtor "Securitization SPVs". From time to time using proceeds advanced by Regions as lender under the Loan Agreement, the Regions SPV Borrower acquired title to certain vehicles, leases, and related rights and property (the "SPV Assets") that had been owned by TPine Leasing Capital L.P. ("TPine Leasing"), a Delaware limited partnership that is a non-debtor affiliate of the Debtors, pursuant to that certain Sale and Contribution Agreement, dated as of February 11, 2022 (the "Sale Agreement"), by and between TPine Leasing, as "Originator" and "Initial Servicer" and the Regions SPV Borrower, as "Buyer." Regions Bank understands that TPine Leasing acts or acted as originator and initial servicer for multiple similar securitizations.

3. The Debtors have admitted that TPine Leasing is not eligible for relief under the Companies' Creditors Arrangement Act and therefore is neither a debtor nor applicant in the CCAA Proceedings nor a debtor these Chapter 15 proceedings. TPine Leasing also has not filed a petition for relief under Chapter 11 or any other chapter of the Bankruptcy Code. The Regions SPV Borrower is likewise not a CCAA debtor or applicant nor a U.S. debtor, and it has no business other than owning the SPV Assets, which include only U.S.-law governed leases and contracts for U.S.-titled vehicles, all of which serve as collateral for repayment of its indebtedness under the

Loan Agreement. As of the date hereof, the Regions SPV Borrower is indebted to Regions for in excess of $130 million.

### B. The Prepetition Servicer Defaults.

4. Between December 2023 and March 2024, TPine Leasing and the Regions SPV Borrower defaulted on, among other things, their obligations under the Loan Agreement to provide detailed servicing information relating to the acquisition by Regions SPV Borrower, and servicing by TPine Leasing, of the SPV Assets. Accordingly, on March 22, 2024, prior to the commencement of the CCAA Proceedings, Regions, TPine Leasing, and the Regions SPV Borrower entered into a Ninth Amendment to the Loan Agreement that required TPine Leasing and Regions SPV Borrower to provide sufficient information to Regions and a designated "backup servicer" under the Loan Agreement, which among other things would help Regions ensure that appropriate servicing of the SPV Assets is occurring. Unfortunately, that information has not been forthcoming, depriving Regions of the benefit of its bargain and placing the SPV Assets (and Regions' right to repayment therefrom) at substantial risk.

### C. The CCAA Proceedings and Proposed "Governance Protocol"

5. On March 27, 2024, the Debtors commenced the CCAA Proceedings. Among the steps taken in the CCAA Proceedings, the Debtors sought and obtained approval from the Canadian court to obtain DIP financing secured by a lien (the "DIP Charge") on assets of the Debtors and certain non-Debtor parties, including TPine Leasing. The Debtors then sought recognition in this Court of the DIP Charge, among other things, pursuant to the *Motion of the Foreign Representative for Entry of an Order Granting Provisional Relief in Connection With Debtor in Possession Financing and Certain Protocols Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [Dkt. No. 70] (the "DIP Motion"). Regions filed an objection [Dkt. No. 90]

to the relief sought in the DIP Motion on the basis that the order proposed in connection therewith sought additional substantive relief under Section 364 of the Bankruptcy Code, including as to non-Debtor TPine Leasing, that is not available under U.S. law. Following a hearing on the DIP Motion, while overruling certain of Regions' objections, this Court entered an order that expressly disclaimed that any "of the protections or relief granted [in the order were] granted under Section 364 of the Bankruptcy Code." [Dkt. No. 110.] As of the date hereof, it is Regions' understanding that no amounts have been advanced under the DIP credit agreement because of KYC issues, as noted in the Second Monitor Report (defined below) at paragraph 16.

6. In the CCAA Proceedings, there continue to be numerous open and unresolved issues with respect to the Debtors' proposed Governance Protocol (the "<u>Governance Proposal</u>"). The current Governance Proposal is attached as Appendix E to the Monitor's second report, which was filed on April 24, 2024 in the CCAA Proceedings, a copy of which is attached hereto as **<u>Exhibit A</u>** (the "<u>Second Monitor Report</u>"). Regions and other securitization funders have communicated to the Monitor and Debtors that they object to numerous provisions of the Governance Proposal. The securitization funders' objections to the Governance Proposal, include, without limitation:

(a) The ability of the Debtors, with the consent of the Monitor, to sell securitized vehicles—*i.e.*, non-Debtor property—without the consent of the affected parties where there are competing claims to ownership of or liens on such vehicles (Governance Proposal ¶ 3.A);

(b) The introduction of a "Vehicle Equity" concept that permits the Debtors to retain a portion of the proceeds from sales of securitized vehicles—again, non-Debtor

4

property—in contravention of the governing loan and security documents (Governance Proposal ¶ 5(a));

(c) The commingling of proceeds from the sale of securitized vehicles with general Debtor funds with the risk of potential benefit of the Debtors and DIP lender and detriment of the securitization funders (Governance Proposal ¶ 5(b));

(d) The ability of the Debtors to charge a 20% commission on "Soft Collections" and 12% commission on certain asset sales, in contravention of the terms of the governing securitization documents (Governance Proposal ¶¶ 4, 10); and

(e) The lack of deadline for the development and implementation of the "Entitlement Protocol" resulting in the retention of certain funds in trust during this indefinite period.

7. As a result of concerns and issues raised by numerous stakeholders, the Debtors and the Monitor have agreed to adjourn the hearing on approval of the Governance Proposal in the CCAA Proceeding until no earlier than May 13, 2024.

**D. The Amended Petition**

8. Notwithstanding the substantial open and unresolved issues in the CCAA Proceedings that relate to, among other things, the extent to which the Canadian Court may alter substantive property rights of U.S.-based creditors owed hundreds of millions of dollars by non-debtor U.S. entities owning U.S. assets, the Foreign Representative filed the Amended Petition on April 25, just two days before the current objection deadline, seeking entry of the overbroad Proposed Recognition Order. The Proposed Recognition Order provides for this Court's wholesale and blanket recognition of, among other things, *potential* orders in the CCAA Proceedings that have not yet been entered, as well as a continuing request for substantive discretionary relief under

the Bankruptcy Code with respect to non-debtors.[2] The Foreign Representative asks for too much. Accordingly, Regions files this Limited Objection to ensure that the rights of it and other similarly situated creditors are sufficiently protected under U.S. law.

## BASIS FOR RELIEF

9. Recognition of a foreign main proceeding, without more, accomplishes only what is set forth in Section 1520 of the Bankruptcy Code, which provides certain automatic protections only to a "debtor" and to "property of the debtor that is within the territorial jurisdiction of the United States." 11 U.S.C. § 1520. However, a foreign representative can request, pursuant to Sections 1519 and 1521, additional relief as enumerated therein, but when such additional relief is requested, Section 1522 requires that "the interests of creditors and other interested entities . . . [be] sufficiently protected." 11 U.S.C. § 1522(a). A determination of sufficient protection "requires a balancing of the respective parties' interests." *In re AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013) (citation omitted). It is axiomatic that such a balancing also requires that the actual request for specific relief be before the U.S. court so that it can evaluate the sufficiency of protection. Section 1522 was intended to give the Court "broad latitude to mold relief to meet specific circumstances, including appropriate responses if it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." H.R.Rep. No. 109–31, at 116, U.S.C.C.A.N. 2005, pp. 88, 178.

### A. The Court Should Deny Any Additional Substantive Bankruptcy Code Relief with Respect to a Non-Debtor

10. As a threshold matter, because TPine Leasing is not a Debtor in the CCAA Proceeding, none of the automatic effects of recognition set forth in Section 1520 apply to it.

---

[2] Although the Proposed Recognition Order claims in a footnote that "no relief is sought with respect to" the Securitization SPVs, the wholesale approval of, among other things the Governance Protocol, would likely interfere with Regions' and the other securitization funders' rights against the respective SPVs.

6

Further, the Foreign Representative's reliance on Section 1521(a) is misplaced, given that all of the enumerated bases for relief therein apply only to a debtor or its property. 11 U.S.C. § 1521(a) (authorizing, *inter alia*, relief "suspending the right to transfer, encumber or otherwise dispose of any assets ***of the debtor***" and "any additional relief that may be available ***to a trustee***") (emphasis added). Indeed, no provision of the Bankruptcy Code on its face permits extending the relief sought in the Amended Petition to non-Debtor parties and, on that basis alone, the Proposed Recognition Order should be amended to provide that none of its provisions apply to TPine Leasing and other non-Debtor parties, and any prior relief granted under section 1519 should be vacated.

11. To the extent any relief as to TPine Leasing is even permissible, because Section 1521 is not available to the Foreign Representative as to that entity, the Foreign Representative must rely exclusively on Section 105(a). It is well established that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). Thus, "Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits." *Law v. Siegel*, 571 U.S. 415 (2014). This means that, when using Section 105(a) to apply to non-debtors Bankruptcy Code provisions applicable on their face only to the debtor, the debtor must, at a minimum, comply with the requirements of those Code provisions. And, by extension, a foreign representative must do so as well. *See In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 111 n.12 (Bankr. S.D.N.Y. 2012). ("It would be ironic, to say the least, if property of a non-debtor affiliate received greater protection than property of the debtor."). In this regard, Regions submits that the relief here with respect to non-debtors or their assets in the U.S. should be limited ***solely*** to extending the stay with respect

to such entities, only coextensive with the CCAA stay or moratorium, to prohibit certain creditor action in the U.S.

### B. The Proposed Recognition Order Is Overbroad Even if TPine Leasing and the Regions SPV Borrower Were Debtors

12. Even assuming arguendo the Court had the judicial power to grant Bankruptcy Code relief as to non-debtor parties beyond the equivalent of a Section 105 injunction, the Proposed Recognition Order would violate the requirements of Section 363 in numerous ways with respect to TPine Leasing and the Regions SPV Borrower. It would authorize the sale of encumbered property without requiring satisfaction of Section 363(f). *See* Governance Proposal ¶ 3.A (authorizing the Debtors to sell securitized vehicles without the consent of the secured party or parties). It would authorize the sale of encumbered property without providing adequate protection, as required by Section 363(e). *See* Governance Proposal ¶ 5(a) (allowing Debtors to retain portion of sale proceeds free-and-clear of securitization funders' liens).[3] It would authorize the use of Regions' cash collateral without Regions' consent or requiring the Debtors to such funds as required by Section 363(c)(2) and (4) and without providing adequate protection as required by Section 363(e). *See* Governance Proposal ¶ 5(b) (permitting commingling of funds).

13. The Proposed Recognition Order would also violate the requirements of Section 364 by potentially authorizing priming liens on non-estate property (which is in itself impermissible) and without a showing of the necessary statutory prerequisites for priming and without providing adequate protection. As Regions previously noted, while Section 364 authorizes the granting of priming liens under certain circumstances, nothing in the Bankruptcy Code

---

[3] This provision is particularly egregious. The Loan Agreement and related documents do not provide that Regions' lien attaches only to a portion of each vehicle's value, such that, upon sale, any excess can be paid to the Regions SPV Borrower, TPine Leasing, or any Debtor. Instead, Regions' lien attaches to, and is enforceable against, all of the SPV Assets. *See* Loan Agreement § 2.11.

authorizes the Court to authorize the granting (or recognition) of priming liens on non-estate property owned by non-debtor parties. *See* 11 U.S.C. § 364(d) ("The Court . . . may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien ***on property of the estate*** . . . ."). But, if this Court does in fact authorize any such relief, such liens should in each case be subject to the provisions of the Bankruptcy Code that are otherwise applicable to liens granted on estate assets.

14. Finally, the Proposed Recognition Order would violate Section 365 by forcing contractual modifications on Regions and the other securitization funders. *See* Governance Proposal ¶¶ 4, 10 (imposing 12% commission on certain vehicle sales and 20% fee on certain collections, where no such fees or commissions exist under governing agreements). It is well established that a debtor, with or without court approval, cannot unilaterally modify the terms of a contract against the objection of the contractual counterparty. *See In re ANC Rental Corp., Inc.*, 277 B.R. 226, 238 (Bankr. D. Del. 2002) ("The [debtor], however, may not blow hot and cold. If he accepts the contract he accepts it cum onere. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.") (citations and internal quotation marks omitted).

15. To the extent that, notwithstanding the other statutory infirmities, the Court nonetheless uses Sections 1521 and 105(a) to grant relief as to non-Debtor affiliates of the Debtor, including TPine Leasing and the Regions SPV Borrower, the Court must still ensure that the requirements of Section 1522(a) are satisfied and Regions is sufficiently protected. The Foreign Representative barely makes a token effort to demonstrate such protection—on this key issue, the pleadings contain only a throwaway remark that "all similarly situated parties will be treated

equally and fairly during the pendency of the CCAA Proceedings." Amended Petition ¶ 78; Amended Benson Declaration ¶ 72.

16. The Proposed Recognition Order does not sufficiently protect Regions. On the contrary, it actively interferes with Regions' rights under the Loan Agreement, related agreements, and U.S. law, as discussed above, by interfering with Regions' property rights in the SPV Assets These rights would be indisputably enforceable in this Court if TPine Leasing and the Regions SPV Borrower were Chapter 11 debtors.

### C. The Requested Prospective Nature of the Recognition Order to Future "Canadian Orders" Is Overreaching and Should Be Denied.

17. Finally, given that the Proposed Recognition Order categorically applies to future orders that constitute "Canadian Orders" it is definitionally impossible to determine whether recognition of such *future* orders sufficiently protects Regions' interests because such orders do not yet exist. In particular, the Foreign Representative asks this Court to recognize all "Canadian Orders" wholesale, "including any and all existing and future extensions, amendments, restatements, and/or supplements authorized by the Canadian Court" and approve the Governance Protocol "as may be further amended or supplemented by order of the Canadian Court." Proposed Recognition Order ¶ 8. Accordingly, any order this Court enters on the Amended Petition should be limited such that it applies only to existing orders of the Canadian Court, and not to future orders that this Court has not yet had the opportunity to evaluate for propriety or compliance with the Bankruptcy Code.[4]

---

[4] Alternatively, Regions requests that this Court require that any order granting the Amended Petition include guardrails sufficient to protect Regions' interests as detailed above, including a provision permitting any party to seek relief from recognition of future orders on an expedited basis.

WHEREFORE, Regions respectfully requests that this Court (i) sustain this Limited Objection; (ii) decline to grant the relief requested in the Amended Petition to the extent that the rights of creditors against non-debtor parties are impaired; and (iii) enter any such other and further relief in favor of Regions as this Court deems just and proper.

Respectfully submitted,

| | |
|---|---|
| Dated: April 25, 2024<br>Wilmington, Delaware | */s/ Ryan M. Bartley*<br>Ryan M. Bartley (No. 4985)<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: 302-571-6600<br>Email: rbartley@ycst.com<br><br>-and-<br><br>Sean T. Scott (*pro hac vice* pending)<br>Joshua R. Gross (admitted *pro hac vice*)<br>Jade M. Edwards (*pro hac vice* pending)<br>MAYER BROWN LLP<br>71 South Wacker Drive<br>Chicago, IL 60606<br>Telephone: (312) 782-0600<br>Email: STScott@mayerbrown.com<br>       JGross@mayerbrown.com<br>       JMEdwards@mayerbrown.com<br><br>*Counsel to Regions Bank* |