## VERIFICATION OF PUBLICATION

STATE OF ___MASSACHUSETTS___

COUNTY OF ____PLYMOUTH____

Being duly sworn, _CAROLE LAURIAT____ says that s/he is the __VICE PRESIDENT/TREASURER_ (job title) of the *American Journal of Transportation*, and is duly authorized by the *American Journal of Transportation* to make this affidavit, and is fully acquainted with the facts stated herein: the following legal advertisement – **Pride Group Holdings Inc.** was published in the *American Journal of Transportation* in the following issues:

April 22, 2024

_____*[signed] Carole A Lauriat*_____ (Signature)

__04/29/24_____ (Date)

American Journal of Transportation
116 Court Street, Suite B1, Plymouth, MA 02360

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE PAID
PROVIDENCE, RI
PERMIT # 558



*Stay informed at www.AJOT.com and on Social Media!*



EVERGREEN LINE — Nature Above All

AJOT.COM — APRIL 2024 — ISSUE #764



**Ocean Carrier Review**
# WHAT'S THE FUTURE FOR OCEAN CARRIER ALLIANCES?
PAGE 2

**TOP 50 OCEAN CARRIERS** — PAGE 12

**Northeast Ports & Trade**
# EIMSKIP AND THE PORT OF PORTLAND MAINE
PAGE 16

# KEY BRIDGE COLLAPSE CLOSES PORT OF BALTIMORE AND RAISES QUESTIONS ABOUT WHAT'S NEXT?
PAGE 26

**Air Cargo Review**
# AIR CANADA CARGO'S FREIGHTER FEEDER TO PASSENGER JET STRATEGY IS POWERING GROWTH
PAGE 32

**Latin American Ports & Trade**
# NEAR OR FAR: LATIN AMERICAN TRADE
PAGE 36

*Photo courtesy of U.S. Army Corps of Engineers*

**Next Issue Focus**
Breakbulk Quarterly
Gulf Coast Ports & Trade
Top Logistics Tech Providers
Top 3PLs
Supply Chain Cyber Security

Case 24-10632-CTG    Doc 135    Filed 04/29/24    Page 3 of 3



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re
Pride Group Holdings Inc., et al.[1]
Debtors in Foreign Proceedings.

Chapter 15
Case No. 24-10632 (CTG)
Jointly Administered

**NOTICE OF FILING AND HEARING ON PETITIONS SEEKING RECOGNITION OF FOREIGN PROCEEDING AND RELATED RELIEF PURSUANT TO CHAPTER 15 OF THE UNITED STATES BANKRUPTCY CODE**

PLEASE TAKE NOTICE OF THE FOLLOWING:

On March 27, 2024, Randall Benson, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors") in the Canadian proceedings (the "CCAA Proceedings") commenced under the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36, pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"), and that on April 1, 2024 filed the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition")[2] and the *Chapter 15 Petition for Recognition of a Foreign Proceeding* for each of the Debtors (together with the Verified Petition, the "Petitions") pursuant to chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

On April 3, 2024, the Court entered an order granting provisional and related relief [Dkt. 49] pursuant to sections 105(a) and 1519 of the Bankruptcy Code (the "Provisional Relief Order") with respect to the Debtors and certain non-Debtor affiliates, their assets, and their contracts in the United States. The Provisional Relief Order, among other things, enjoins actions in the United States in contravention of the orders of the Canadian Court in the CCAA Proceedings from the entry of such Provisional Relief Order through and including the date of the Recognition Hearing (as defined below).

The Foreign Representative seeks the entry of an order (a) finding that (i) each of the Debtors is eligible to be a "debtor" under chapter 15 of the Bankruptcy Code, (ii) each of the CCAA Proceedings is a foreign main proceeding within the meaning of section 1502 of the Bankruptcy Code (iii) the Foreign Representative satisfies the requirements of a "foreign representative" under section 101(24) of the Bankruptcy Code, and (iv) each of the Petitions was properly filed and meets the requirements of section 1515 of the Bankruptcy Code; (b) granting recognition of each of the CCAA Proceedings as a "foreign main proceeding" under sections 1517 and 1520 of the Bankruptcy Code; (c) granting all relief afforded to foreign main proceedings under section 1520 of the Bankruptcy Code; (d) recognizing, granting comity to, and giving full force and effect within the territorial jurisdiction of the United States to the CCAA Proceedings, the Initial Order and other orders of the Canadian Court; (e) granting additional relief under sections 1521 and 1507 of the Bankruptcy Code, including for purposes of applying section 365 of the Bankruptcy Code in the Chapter 15 Cases; and (f) granting related relief.

The Court has scheduled a hearing (the "Recognition Hearing") to consider the relief requested in the Petitions for **9:00 a.m. (Eastern Time) on May 2, 2024**, before the Honorable Craig T. Goldblatt at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Courtroom 7, Wilmington, Delaware, 19801.

Copies of the Petitions and all documents filed in the Chapter 15 Cases are available to parties in interest on the Court's Electronic Case Filing System, which can be accessed from (i) the Court's website at http://www.deb.uscourts.gov (a PACER login and password are required to retrieve a document), (ii) the website maintained by the Foreign Representative's noticing agent, Epiq Corporate Restructuring, LLC, at https://dm.epiq11.com/pridegroup or (iii) upon written request to the Foreign Representative's counsel (including by facsimile or e-mail) addressed to: **LINKLATERS LLP**, Penelope J. Jensen, Christopher J. Hunker, Clark L. Xue, 1290 Avenue of the Americas, New York, NY 10104, Telephone: (212) 903-9000, Facsimile: (212) 903-9100, penelope.jensen@linklaters.com, christopher.hunker@linklaters.com, clark.xue@linklaters.com -and- **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**, Derek C. Abbott (No. 3376), Andrew R. Remming (No. 5120), Austin T. Park (No. 7247), 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899-1347, Telephone: (302) 658-9200, Facsimile: (302) 658-3989, dabbott@morrisnichols.com, aremming@morrisnichols.com, apark@morrisnichols.com.

Any party in interest wishing to submit a response, answer, or objection to the Petitions must do so pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, and such response, answer, or objection must (i) be in writing, (ii) set forth in detail the factual and legal bases therefor, (iii) be filed with the United States Bankruptcy Court for the District of Delaware, Office of the Clerk of the Court, 824 Market Street, Wilmington, Delaware 19801, and (iv) served upon counsel for the Foreign Representative, Linklaters LLP, 1290 Avenue of the Americas, New York, New York 10104 (Attention: Penelope J. Jensen, Esq. and Christopher J. Hunker, Esq.) and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Floor, P.O. Box 1347, Wilmington, Delaware 19801 (Attention: Derek C. Abbott, Esq. and Andrew R. Remming, Esq.), so as to be actually received on or before **April 25, 2024 at 4:00 p.m. (Eastern Time)**.

All parties in interest opposed to the Petitions must appear at the Recognition Hearing at the time and place set forth above.

At the Recognition Hearing, the Court may order the scheduling of a case management conference to consider the efficient administration of the cases.

If no response or objection is timely filed and served as provided above, the Court may grant the relief requested in the Petitions without further notice or hearing.

The Foreign Representative does not currently intend to conduct a claims process in the Chapter 15 Cases. To the extent there is a claims process established in the CCAA Proceedings, parties are directed to the CCAA Proceedings pending before the Canadian Court.

The Recognition Hearing may be adjourned from time to time without further notice other than an announcement in open court, or a notice of adjournment filed with the Court, of the adjourned date or dates at the hearing or any other further adjourned hearing.

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their federal identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Verified Petition.

(*LINKS* – continued from page 14)

related to either the port of Trois Rivieres or Quebec City.

### THE CARGO MIX: SUGAR BAGS TO BLADDERS OF TOMATO PASTE

As diverse as the ports served by G&W are, so is the cargo mix.

For example, in New Haven's Gateway Terminals the freight includes steel billet, steel plate, coil and biodiesel. In the Port of Providence, the rail freight includes chemicals, cement, lumber, scrap steel, ethanol and butane. Port of Davisville which accounts for 17% of Providence & Worcester's carloads is lumber, propane, waste, auto and plastics.

As Foley elaborated, "The Port of Davisville is a significant amount of traffic for us. When you consider it on a one off, one-by-one customer, they're not that large, but when you combine Seaview Transportation *(shortline for Quonset Development property which includes the Port of Davisville see page 16)*, who delivers all the traffic for the customers in the final mile, it's pretty significant for us."

It is an unexpected commodity mix. "And we're not talking about core port, in terms of coming off the water, but in general on port locations, the waste business has really picked up… who would have thought that construction and demolition debris would become a major commodity coming out of there," Foley remarked.

G&W also touts an unusual tagline "first and last mile" for a railroad. Something that sounds like it should belong to a parcel delivery company. But with G&W's extensive port coverage, it is a reality for the rail company.

As Dan Pavick, VP Operations for the Great Lakes Division explained of an unusual freight, "We're seeing a growing market in some of our areas with food, food materials, inbound pastes, sugars… they [the customer] make all sorts of pasta sauces for distribution… that's 100% California to Rochester, New York haul. It literally is the last mile." Adding, "When you see a boxcar full of tomato paste, you realize you can make a lot of stuff with that car." To which Foley remarked, "You quickly know how important pizza is to the world." And the tomato paste, which moves in large bladders, is more likely than not loaded on a G&W shortline train for the "first" mile of its long journey to Rochester.

And tomato paste isn't the only unusual cargo, as up in Buffalo, the G&W handles a large volume of "sugar." Pavick says of the sweet business, "We have a new customer, Sucro…It's gigantic sacks of sugar that they unload with a crane. And then they refine it to [use in] all different types of consumer goods, whether it's for soft drinks, food sweeteners, you name it. It's all across the board. But it's literally a lake freighter full of sugar bags."

And some of the G&W "links" are setting up to deliver freight in the near future. For instance, the Port of New London, Connecticut Gateway Terminals is currently being utilized for wind turbine production as part of Orsted and Connecticut Port Authority (CPA) operations. And while that has been removed from the loading of general freight, Foley expressed optimism, "We do have the opportunity later down the road once they're complete… if any of those [wind turbine related] components eventually come by rail, we would then serve that port."

• • • • • • • • • • • • • • • • • • • • • •

(*NICHE* – continued from page 18)

London, CT while another proposed New Bedford, MA. Speaking of New Bedford, construction of the entire Vineyard Wind 1 project runs through the New Bedford Marine Commerce Terminal, the first port facility in the nation specifically designed for offshore wind. At this writing, the project has installed nine turbines and is in the process of installing the 10th, with preparations underway to transport the 11th turbine to the offshore project site.


