**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>Pride Group Holdings Inc., et al.[1]<br><br>　　　　　Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 24-10632<br><br>**Hearing Date: TBD**<br>**Objection Deadline: TBD** |

**MOTION OF TRIUMPH FINANCIAL SERVICES, LLC TO DISMISS OR TERMINATE**
**CHAPTER 15 CASE OF ARNOLD TRANSPORTATION SERVICES, INC. AND**
**VACATE PROVISIONAL ORDERS AS TO ARNOLD TRANSPORTATION SERVICES,**
**INC. OR, IN THE ALTERNATIVE, FOR RELIEF FROM SUCH ORDERS**
**TO THE EXTENT NECESSARY OR APPROPRIATE**

Triumph Financial Services LLC formerly known as Advance Business Capital LLC d.b.a. Triumph Business Capital ("Triumph"), by and through its undersigned counsel, hereby moves for the entry of an order dismissing or terminating the Chapter 15 case of Arnold Transportation Services, Inc. ("Arnold") and to vacate orders of this case granting provisional relief pending recognition, or, in the alternative, for relief from such orders to permit Triumph to fully exercise its rights and remedies against Arnold to the extent necessary or appropriate (the "Motion").  In support of the Motion, Triumph avers as follows:

**INTRODUCTION AND REQUEST FOR RELIEF**

Late at night on April 23, 2024 the Foreign Representative admitted through certain amended court filings that there is no legitimate basis for a Chapter 15 case for Arnold Transportation Services, Inc. and that Arnold should not have been included in the "Pride Group"

---

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

of entities for which recognition of foreign proceedings was and is sought under Chapter 15 of

the Bankruptcy Code.  Arnold is a purely US-based company with purely US-based assets whose

operations are, as now admitted by the Foreign Representative, not integrated with the remainder

of the "Pride Group."  Consequently, the Foreign Representative has withdrawn his Chapter 15

Petition for Recognition as to Arnold.  He has further stated that, in lieu thereof, a Chapter 7

petition _may be_ on the way.  Despite those averments, as of the filing of this Motion, no such

Chapter 7 petition has been filed or case commenced.  Yet, with the provisional relief orders

entered by this Court pursuant to 11 U.S.C. § 1519 remaining in place, Triumph is wrongfully

precluded from asserting its rights and remedies as to Arnold and preserving its collateral to

collect on any shortfall of sums due to it.  Arnold should not be permitted to park itself in a

purposeless Chapter 15 and get the benefit of an injunction and creditor stay.

By this Motion, Triumph requests that this Court dismiss or terminate the Arnold Chapter

15 case as appropriate and vacate its prior orders granting provisional Chapter 15 relief pending

recognition that the Foreign Representative now admits will never occur.  Alternatively, Triumph

requests that this Court grant Triumph relief from the provisional orders such that Triumph is

unhampered from asserting its rights and remedies and protecting its interests.

**Since Arnold currently is the improper beneficiary of provisional stay relief and the
Court is scheduled to hear the Foreign Representative's request for recognition on May 2,
2024, Triumph is contemporaneously filing a Motion to Shorten Notice to request that this
Motion be heard at the same time as the hearing on the Foreign Representative's
recognition request.**[2]

---

[2]     Triumph requested that the Foreign Representative consent to the relief requested in this Motion.
As of the time of filing, Triumph had not yet received a response to the request.

## BACKGROUND

A.    Relationship between Triumph Financial Services, LLC's and Arnold Transportation Services, Inc.

1.    Triumph Financial Services LLC formerly known as Advance Business Capital LLC d.b.a. Triumph Business Capital is the second largest transportation factoring company in the United States, and is a subsidiary of Triumph Financial, Inc., a publicly traded company on the NASDAQ.  Triumph specializes in providing financial solutions to the trucking industry, which in addition to freight invoice factoring, including fuel cards. Truck Insurance, asset based lending and equipment finance.[3]

2.    In or about late 2019 Triumph and Arnold Transportation Services, Inc. entered into a Factoring and Security Agreement pursuant to which Arnold sold and assigned its freight services accounts receivable to Triumph on a recourse basis (meaning that if the purchased account was not paid within 90 days of its purchase by Triumph, Arnold was obligated to buy back the account from Triumph).  The buy back obligation was secured by a security interest over all of Arnold's personal and intangible property, and, to perfect the security interest, Uniform Commercial Code ("UCC") financing statements were filed and registered by Triumph's representative and agent, Corporation Services Company ("CSC"), in each of Texas, Pennsylvania and Delaware. When Arnold was sold to the Pride Group in 2022, the parties entered into a new Factoring and Security Agreement dated April 22, 2022 (the "FSA").  As of

---

[3]    In support of the Motion, Triumph relies upon the *Affidavit of Daniel Mourning* dated April 5, 2024 filed in the Canadian Proceedings (as defined below), attached hereto as Exhibit "A" and incorporated by this reference (the "First Mourning Affidavit") and the *Declaration of Daniel Mourning* dated April 29, 2024, attached hereto as Exhibit "B" and incorporated herein by this reference (the "Second Mourning Declaration").

the commencement of these proceedings Triumph held a perfected first priority security interest in Arnold's assets.  First Mourning Affidavit at ¶3, 5, 6.[4]

3.      As of March 27, 2024, the aggregate amount outstanding and owing to Triumph by Arnold customers in respect of Arnold customer receivables **purchased** by Triumph from Arnold (collectively, the "Purchased Accounts Receivable") was approximately U.S. $3.3 million.  *Id*. at ¶4.  Given Arnold's insolvency filing, Triumph is rightly concerned that the collectability of the Purchased Accounts Receivable will deteriorate materially and inevitably increase the buy back obligations of Arnold secured by the Triumph security interest granted by the FSA and registered under the UCC.  *Id*.  An initial audit of the Purchased Accounts Receivable already uncovered disputed invoices that will not be paid to Triumph in the amounts sold to Triumph by Arnold.  *Id*.

4.      In addition, Triumph recently learned that Arnold customers are or were being told to direct payment on account of the Purchased Accounts Receivable to Arnold instead of Triumph, increasing Triumph's exposure.  Second Mourning Declaration at ¶¶3-4.  As of the filing of this Motion, Triumph is aware that approximately $80,000 of payments on account of the Purchased Accounts Receivable were redirected to and retained by Arnold despite such payments belonging entirely to Triumph.  Those funds have not yet been remitted to Triumph despite request.  *Id*.at ¶7.

---

[4]      Under applicable Texas law, the factoring relationship between Arnold and Triumph is a true sale, even though it is full-recourse as to Arnold.  In Texas, full recourse factoring is protected by statute.  *See* Tex. Fin. Code Ann. § 306.001 (2021) (factoring is a sale of accounts even if the factoring customer has a repurchase obligation); Tex. Fin. Code Ann. § 306.103 (2021) (factoring fees are not interest, and an agreement is classified as a factoring arrangement if the parties call it factoring); and Tex. Uniform Commercial Code, § 9.109(e) (absent fraud, the parties' characterization of a deal as factoring and not as a loan is "conclusive," even if there is full recourse).  Here, because the FSA is governed by Texas law, the Purchased Accounts Receivable are unquestionably the property of Triumph.

5.     As of April 26, 2024, the aggregate amount outstanding and owing to Triumph in respect of the Purchased Accounts Receivable was approximately U.S. $1.3 million.  *Id*. at ¶3.

B.     Canadian Proceedings and Chapter 15 Petitions

6.     On April 1, 2024 (the "Initial Petition Date"), Randall Benson, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") commenced these Chapter 15 Cases by filing Petitions pursuant to 11 U.S.C. § 1504 for certain debtors defined as part of the "Pride Group", along with the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 2] (the "Initial Verified Recognition Petition").

7.     Through the Initial Verified Recognition Petition, the Foreign Representative sought recognition of Canadian proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court") as foreign main proceedings under 11 U.S.C. § 1515.

8.     Arnold was one of the alleged "Pride Group" debtors who filed a Chapter 15 Petition for Recognition of a Foreign Proceeding on that date, commencing case number 24-10639 (the "Arnold Chapter 15 Petition").

9.     Also on the Initial Petition Date, the Foreign Representative filed the *Motion of the Foreign Representative for Entry of an Order Granting Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* (the "First Provisional Relief Motion") requesting, among other things, enforcement in the United States on a provisional basis of an Initial Order obtained in the Canadian Proceedings.  On April 3, 2024, the Court entered the

*Order Granting Motion of the Foreign Representative for Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 49] approving the First Provisional Relief Motion ("First Provisional Relief Order").

10.     The First Provisional Relief Order imposed a creditor stay of actions against the Pride Group entities and their property within the territorial jurisdiction of the United States consistent with the automatic stay of 11 U.S.C. § 362 (the "Creditor Stay"), subject to requests for relief therefrom.  First Provisional Relief Order at ¶1(b).

11.     The relief afforded to the Pride Group entities by the First Provisional Relief Order is expressly provisional, satisfying an injunction standard, and granted under 11 U.S.C. § 1519 pending an order of recognition.  *See, e.g.*, *Id*. at ¶¶B-D, F-G, 1-3, 10.  Moreover, in the First Provisional Relief Order, this Court expressly retained jurisdiction over its terms and to consider any requests for relief therefrom.  *Id*. at ¶12.

12.     Initially, Arnold was included as part of the "Pride Group" and "Pride Entities" for which the Foreign Representative sought relief from this Court including provisional relief pursuant to 11 U.S.C. § 1519 in anticipation of recognition under 11 U.S.C. § 1521.  By virtue of the Amended Recognition Petition described below, that request has been withdrawn.

13.     On April 5, 2024, the Canadian Court granted an Amended and Restated Initial Order (the "A&R Initial Order").  Among other things, the A&R Initial Order authorized the Pride Entities as then defined to obtain and borrow under a debtor-in-possession credit facility with Royal Bank of Canada, as administrative agent.  On the same day, the Canadian Court granted a Protocols Order over the CCAA Proceedings.

14.     On April 9, 2024, the Foreign Representative filed the *Motion of the Foreign Representative for Entry of an Order Granting Provisional Relief in Connection with Debtors-In-*

*Possession Financing and Certain Protocols Pursuant to Sections 105(a) and 1519 of the*

*Bankruptcy Code* (the "Second Provisional Relief Motion") [D.I. 70] requesting, among other

things, enforcement of the A&R Initial Order and Protocols Order in the United States on a

provisional basis pursuant to 11 U.S.C. § 1519 in anticipation of recognition under 11 U.S.C.

§ 1521.

15.     On April 17, 2024, the Court entered the *Order Granting Provisional Relief in*

*Connection with Debtors-In-Possession Financing and Certain Protocols Pursuant to Sections*

*105(a) and 1519 of the Bankruptcy Code* [D.I. 110] (the "Second Provisional Relief Order," and

together with the First Provisional Relief Order, the "Provisional Relief Orders").

16.     Like the First Provisional Relief Order, the Second Provisional Relief Order is (i)

expressly provisional relief granted under 11 U.S.C. § 1519 pending an order of recognition, *see,*

*e.g.*, Second Provisional Relief Order at ¶¶B, G, H, 2-5, and (ii) subject to this Court's retained

jurisdiction to provide relief from its terms.  *See* Second Provisional Relief Order at ¶16.

C.     Request for Termination of Chapter 15 as to Arnold Entities

17.     Late at night on April 23, 2024, the Foreign Representative filed the *Notice of*

*Filing of Amended Verified Petition* [D.I. 121] which contained attached thereto an *Amended*

*Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign*

*Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the

"Amended Recognition Petition").

18.     Contemporaneously therewith, the Foreign Representative filed the *Notice of*

*Filing of Amended Foreign Representative Declaration* [D.I. 120], which contained attached

thereto the *Amended Declaration of Randall Benson in Support of the Debtors' Amended Verified*

*Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign*

*Representative and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the

"Amended Foreign Representative Recognition Declaration," and collectively with the Amended

Recognition Petition, the "Amended Recognition Documents").

19.     The Foreign Representative repeatedly admits in the Amended Recognition

Documents that he is ***not seeking Chapter 15 recognition of the Canadian Proceedings or any***

***other relief as to Arnold***.  The Amended Recognition Documents state as follows:

- "As described in greater detail herein, although 1000089137 Ontario Inc., DVP Holdings, Corp., Parker Global Enterprises, Inc., Parker Transport Co., and Arnold Transportation Services, Inc. (collectively, the "Arnold Entities") are currently Debtors in these Chapter 15 Cases, the Arnold Entities are exploring all available options including potentially filing for bankruptcy assignment in Canada and/or chapter 7 in the United States.  The Foreign Representative no longer seeks recognition or any other relief with respect to those entities in these Chapter 15 Cases.  Accordingly, the term "Debtors" as used herein does not include the Arnold Entities."  Amended Recognition Petition at fn 2; Amended Foreign Representative Recognition Declaration at fn 3;

- " 'Pride Group' does not include (i) …; or (ii) the Arnold Entities, given that the Foreign Representative is no longer seeking relief with respect to the Arnold Entities."  Amended Recognition Petition at fn 5; Amended Foreign Representative Recognition Declaration at fn 2, fn 9;

- Although the Arnold Entities filed chapter 15 cases on the Initial Petition Date, the Foreign Representative is no longer seeking recognition as to their CCAA Proceedings or any other relief with respect to them by this Amended Verified Petition.  Since the Initial Petition Date, it has become apparent to the CRO and other advisors that the Arnold Entities, which were acquired by the Pride Group in 2022, had never been fully integrated into the Pride Group's operational structure as had been previously explained to the CRO.  Instead, the Arnold Entities were operationally independent from the Pride Group, and had their own management team and infrastructure located in Texas (although their fleet of trucks is primarily leased from TPine Leasing Capital L.P.).  As a result, it was determined that certain statements set forth in the original *Declaration of Randall Benson in Support of the (A) Debtors' Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code and (B) Motion for Provisional Relief* [D.I. 2] regarding the COMI of the Pride Group were inaccurate as to the Arnold

Entities.  Amended Recognition Petition at ¶24; Amended Foreign Representative Recognition Declaration at ¶18;[5]

- The Foreign Representative is seeking no relief with respect to the Arnold Entities.  Amended Recognition Petition at fn 11; Amended Foreign Representative Recognition Declaration at ¶17, fn 6; and

- The Foreign Representative is no longer seeking recognition with respect to the Arnold Entities.  Amended Recognition Petition at ¶26; Amended Foreign Representative Recognition Declaration at ¶20, fn 6.

20.    The Amended Recognition Documents, collectively, constitute a request by the Foreign Representative to terminate the Chapter 15 proceedings as against Arnold.  There is no other proper interpretation.

## **ARGUMENT**

A.    The Court Should Dismiss or Terminate the Chapter 15 Case as to Arnold Transportation Services, Inc. as of April 23, 2024

21.    Requests for relief under Chapter 15 require the filing of a petition for recognition of a foreign proceeding under 11 U.S.C. § 1515.  11 U.S.C. § 1504.  The Amended Recognition Documents unquestionably effect a withdrawal of the Foreign Representative's request for recognition of the Canadian Proceedings as a foreign proceeding as to Arnold.  They are properly interpreted as the Foreign Representative's own request to terminate the Chapter 15 proceeding as to Arnold.  In fact, if Foreign Representative's words are taken at face value, the Court can fairly conclude that there were no grounds for inclusion of Arnold in the "Pride Group" Chapter 15 cases to begin with.[6]

---

[5]    As argued by the Foreign Representative 11 U.S.C. § 1517(b)(1) provides that foreign proceedings shall be recognized as "foreign main proceedings" if the foreign proceedings are pending in the country where the debtor has "the center of its main interests" ("COMI").  COMI is not defined in Chapter 15, but § 1516(c) provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests."

[6]    The Foreign Representative states that "[s]ince the Initial Petition Date, it has become apparent to the CRO and other advisors that the Arnold Entities, which were acquired by the Pride Group in 2022,

22.    But the Court need not even go that far to dismiss or terminate Arnold's Chapter

15 case.  The relief available under Chapter 15 of the Bankruptcy Code is premised upon a

request for recognition.  In fact, that is what the Arnold Chapter 15 Petition was for—recognition

of the Canadian proceedings.  As that request has been withdrawn, Arnold's case should be

formally dismissed or terminated by this Court.  Indeed, many courts have found that, without a

petition for recognition of the foreign proceeding under § 1504, this Court lacks jurisdiction to

grant further Chapter 15 relief as to Arnold.  *See, e.g., U.S. v. J.A. Const. Group, LLC*, 333 B.R.

637, 639 (E.D.N.Y. 2005); *Webb Mason, Inc. v. Video Plus Print Solutions, Inc.*, 2018 WL

7892976, at *2 (D. Md. Dec. 7, 2018).

23.    If this Court does not dismiss or terminate the Arnold Chapter 15 case and vacate

the Provisional Relief Orders, as discussed below, Arnold will be permitted to linger in a dead-

on-arrival U.S. based bankruptcy case and benefit from the Creditor Stay and other provisional

relief without any legitimate basis to do so.  Thus, Triumph respectfully requests that the Court

enter a formal order dismissing or terminating Arnold's Chapter 15 case.

24.    Such relief might not be necessary if the Court had *denied recognition* as to

Arnold.  *See, e.g., In re Creative Fin. Ltd.*, 543 B.R. 498, 521–22 (Bankr. S.D.N.Y. 2016) (the

court found that it did not need to address potential § 305 dismissal of a Chapter 15 case on the

grounds of bad faith because, having denied recognition of the foreign proceeding, there was no

Chapter 15 case left to dismiss); 11 U.S.C. §1509(d) (if the court denies recognition under

---

had never been fully integrated into the Pride Group's operational structure as had been previously
explained to the CRO.  Instead, the Arnold Entities were operationally independent from the Pride Group,
and had their own management team and infrastructure located in Texas (although their fleet of trucks is
primarily leased from TPine Leasing Capital L.P.)."  Amended Foreign Representative Recognition
Declaration at ¶18.

chapter 15, the court may issue any appropriate order necessary to prevent the foreign

representative from obtaining comity or cooperation from courts in the United States).

25.     However, since the recognition request was withdrawn as to Arnold—and not

formally denied—Triumph contends that an order dismissing or terminating the case is

appropriate here, and the Court certainly is capable of so ordering.  *See* 11 U.S.C. § 105(a) (the

court "may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title").

B.     The Court Should Vacate All Orders for Provisional Relief as to Arnold

26.     Triumph also requests that the Court vacate the Provisional Relief Orders

previously entered pursuant to § 1519.  Section 1519(a) of the Bankruptcy Code permits the

Court to grant certain forms of provisional relief in the gap period between a Chapter 15 filing

and recognition hearing "where relief is urgently needed to protect the assets of the debtor or the

interests of creditors."  In determining whether provisional relief is appropriate, the Court applies

the "standards, procedure, and limitations" applicable for the entry of a preliminary injunction.

11 U.S.C. § 1519(e); *In re Beechwood*, 2019 WL 3025283, at *2 (Bankr. S.D.N.Y. July 10,

2019).

27.     In the context of a Chapter 15 proceeding, a preliminary injunction is warranted

when (a) there is a likelihood of success on the merits (*i.e.,* the request for recognition); (b) there

is "an imminent irreparable harm" to the debtor if the preliminary injunction is not issued; (c)

"the balance of harms tips in favor of the moving party"; and (d) "the public interest weighs in

favor of an injunction."  *Lyondell Chem. Co. v. Centerpoint Energy Gas Servs. (In re Lyondell

Chem. Co.)*, 402 B.R. 571, 588–89 (Bankr. S.D.N.Y. 2009).  A showing of irreparable harm is

"the single most important prerequisite for the issuance of a preliminary injunction."  *Faiveley*

11

*Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation omitted).  To satisfy this element, the plaintiff must demonstrate that, absent the injunction, it "will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Id.*  Moreover, the "likelihood of success" element is satisfied in the context of a motion under section 1519 if the movant shows that it will likely obtain recognition of the foreign proceeding. *See In re Innua Can. Ltd.*, 2009 WL 1025088, at *3–4 (Bankr. D.N.J. Mar. 25, 2009).

28.     As explained above, the Provisional Relief Orders were entered pursuant to § 1519 and premised entirely upon the notion that the Foreign Representative would likely succeed in obtaining formal recognition of the CCAA Proceedings, which simply cannot occur as to Arnold because the Foreign Representative no longer even seeks such relief and acknowledges that he did not originally have a basis to do so.  Thus, the Foreign Representative cannot demonstrate any of the injunctive relief factors as to Arnold—certainly not the likelihood of succeeding in obtaining recognition.  For this reason, the Court should revisit the Provisional Relief Orders as it reserved jurisdiction to do so and vacate them as to Arnold.

29.     The Court may also vacate the Provisional Relief Orders pursuant to 11 U.S.C. § 1522(c) which provides that "the court may, at the request of the foreign representative or an entity affected by relief granted under section 1519 or 1521, or at its own motion, modify or terminate such relief."  11 U.S.C. §1522(c).  *See also In re Crystallex International Corp.*, 2022 WL 17254660 (Bankr. D. Del. Nov. 28, 2022) at *4 and fn 11 (citation omitted).[7]  Since the request for recognition as to Arnold has been withdrawn there is no basis to continue provisional

---

[7]     ***Since the Court can modify or terminate such relief on its own motion, Triumph intends to request that the Court vacate the Provisional Relief Orders at the recognition hearing on May 2, 2024 regardless of whether the Court grants Triumph's Motion to Shorten and hears this Motion simultaneously.***

relief including the Creditor Stay that was entered to preserve the status quo pending an event that will never occur.

30.    Section § 1522(a) of the Bankruptcy Code requires a court, in modifying or terminating provisional relief, to find that the interests of the debtor and creditors are sufficiently protected.  In considering whether relief should be modified pursuant to § 1522, courts have engaged in a balancing of the relative hardships.  *See Jaffe v. Samsung Elecs. Co. (In re Qimonda)*, 737 F.3d 14, 27-28 (4th Cir. 2013) ("The analysis required by § 1522(a) is therefore logically best done by balancing the respective interests based on the relative harms and benefits in light of the circumstances presented, thus inherently calling for application of a balancing test.").

31.    Here, in balancing the relative harms and benefits, it is notable that the Provisional Relief Orders should not have been entered against Arnold and its assets in the first place.  Admittedly, Arnold is operationally independent from the "Pride Group" entities and does not qualify for Chapter 15 recognition of the CCAA Proceedings.  The Foreign Representative has admitted so.  Moreover, based on the statements made to this Court in the Amended Recognition Documents, Arnold plainly understands that Chapter 7 relief is available to it.  Simply stated, Arnold should not continue to benefit from the Creditor Stay and other § 1519 relief if it is unwilling to invoke the jurisdiction of this Court and file a Voluntary Petition under Chapter 7 or Chapter 11.  Finally, there is no reason to believe that Arnold's creditors will be harmed by being extricated from a Chapter 15 case that they should never have been a part of to begin with.  In fact, Triumph submits that it would be worse for Arnold creditors to continue to be burdened by provisional injunctive relief ordered *pending* recognition when the request for recognition has been withdrawn.

32.     For all of these reasons, Triumph respectfully requests that the Court vacate the Provisional Relief Orders as to Arnold and its assets.[8]

C.     Alternatively, the Court Should Grant Triumph Relief from the Provisional Relief Orders

33.     In the alternative, if the Court declines to vacate the Provisional Relief Orders in their entirety, Triumph respectfully requests that the Court grant Triumph relief from the Creditor Stay or the automatic stay pursuant to §362(d) to the extent necessary or appropriate to permit Triumph to exercise all of its rights and remedies against Arnold and its assets in the United States.  As explained above, Triumph unquestionably is the absolute owner of the Purchased Accounts Receivable.  Thus, Triumph does not need relief from the Creditor Stay to collect its own property from Arnold's account debtors.  However, given the broad language of the Creditor Stay and the improper redirection of payments made by account debtors to Arnold on account of Triumph's Purchased Accounts Receivable, Triumph seeks relief from the Provisional Relief Orders to the extent necessary or appropriate to fully protect its rights, remedies and perfected security interest in Arnold's assets to cover Arnold's buyback obligations for payment shortfalls.

34.     Upon entry of an order granting recognition of a foreign main proceeding pursuant § 1517, certain automatic effects of recognition are triggered pursuant to § 1520. Among these automatic effects of recognition, § 1520(a) states that "sections 361 and 362 apply with respect to the debtor and property of the debtor that is within the territorial jurisdiction of the United States."  11 U.S.C. §1520.  Section 1519 allows for that relief to be ordered

---

[8]     Lastly, in Amended Recognition Petition, the Foreign Representative requests extension of the Provisional Relief Orders under § 1521(a)(6), which permits the Court to extend provisional relief granted under § 1519(a).  In light of the unambiguous withdrawal of the request for recognition as to Arnold, no extension of the Provisional Relief Orders can and should be granted with respect to Arnold and its assets. Triumph requested that certain language be added to any recognition order entered by the Court as to the "Pride Group" to make it very clear that no such relief is granted with respect to Arnold.  To the extent that it is not made clear in any recognition order that no such relief is being granted as to Arnold, Triumph requests that this Motion be treated as a limited objection to the form of recognition order.

provisionally, which occurred here in the granting of the Creditor Stay and other relief in the Provisional Relief Orders. *In re Sanjel (USA), Inc.*, 2016 WL 4427075 (Bankr. W.D. Tex. July 29, 2016) at *3.

35.    As explained above, there is no pending case under Title 11 pursuant to which the Creditor Stay has legitimately arisen.  That could only occur upon recognition or provisionally under § 1519 pending recognition, which will never occur here.  Thus, Triumph should be granted relief from the Creditor Stay to pursue its rights and remedies against Arnold and its assets in the United States.

36.    With that said, to the extent the Court evaluates Triumph's request under §362(d), Triumph is entitled to relief from the automatic stay for "cause" under §362(d)(1), which provides that "the court shall grant relief from the stay… for cause including the lack of adequate protection of an interest in property."  11 U.S.C. § 362(d)(1).  In the determination of "cause," the moving party bears the initial burden to establish a prima facie case which the party opposing relief must then rebut.  *Matter of Rexene Prods. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992).

37.    "Cause" is not defined in the Bankruptcy Code. "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).  The automatic stay "is not meant to be absolute, and in appropriate instances relief may be granted." *Id*.  The Third Court has instructed courts to use "wide latitude" in determining whether to grant relief from stay. *In re Myers*, 491 F.3d 120, 129 (3d Cir. 2007).  "The purpose of the automatic stay is to maintain the status quo that exists at the time of the debtor's bankruptcy filing." *In re APF Co.*, 274 B.R. 408, 417 (Bankr. D. Del. 2001).

38.     Specifically, to establish cause, the party seeking relief from the stay must show that the balance of hardships from not obtaining relief tips significantly in its favor. *See In re Am. Classic Voyages, Co.*, 298 B.R. 222, 225 (D. Del. 2003); *see also In re Aleris Int'l, Inc.*, 456 B.R. 35, 47 (Bankr. D. Del. 2011) (applying a hardship balancing test to assess the existence of "cause"). "The three prongs of the balancing test are (1) whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the stay; (2) whether the hardship to the non-bankrupt party by the maintenance of the stay considerably outweighs the hardship to the debtor if the stay is lifted; and (3) whether it is probable that the creditor will prevail on the merits of its case against the debtor." *In re Aleris Int'l, Inc.*, 456 B.R. at 47-48.

39.     Here, Triumph can amply demonstrate cause. As of today, Arnold is the improper beneficiary of the Creditor Stay without being in a valid bankruptcy case under Title 11. Arnold has, whether intentionally or otherwise, redirected payments on account of some of the Purchased Accounts Receivable, which are unquestionably Triumph's sole and exclusive property, away from Triumph and into Arnold without having committed to promptly return such funds. Triumph is rightly concerned that the Arnold insolvency proceeding itself—particularly now that parties are in limbo waiting to see whether Arnold chooses to file a voluntary bankruptcy case under U.S. law—will hamper Triumph's collections of the Purchased Accounts Receivable and leave Triumph in a compromised position and potentially needing to resort its secured creditor rights to cover losses.

40.     Granting relief to Triumph will not prejudice Arnold because Arnold is free, should it choose to do so, to seek relief under the United States Bankruptcy Code with its attendant protections and privileges. There simply is no reason, however, why this Court should continue to afford those protections and privileges to Arnold in light of its clear intention not to

move forward with its Chapter 15 case.  It is not even clear that the Court retains the jurisdiction to do so.  *See J.A. Const. Group, LLC*, *supra*.; *Webb Mason, Inc.*, *supra*.

41.     Finally, if the Court declines to grant relief from the stay to Triumph, Triumph respectfully requests an order of adequate protection to protect against diminution in the value of its collateral.

### **WAIVER OF BANKRUPTCY RULE 4001(a)(3)**

42.     Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).

43.     To the extent this Court grants Triumph relief from the automatic stay pursuant to §362(d), Triumph respectfully requests that this Court grant the requested relief effective immediately, so that Triumph may act expeditiously to preserve its collateral rights.

### **NO PRIOR REQUEST**

44.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

### **CONCLUSION**

**WHEREFORE,** for all of the foregoing reasons, Triumph Financial Services, LLC respectfully requests that this Court grant the Motion and enter an Order, in the form attached hereto, (i) dismissing or terminating, as appropriate, the Chapter 15 case of Arnold Transportation Services, Inc., case number 24-10639 and (ii) vacating the Provisional Relief Orders as of April 23, 2024, or in the alternative (iii) granting Triumph Financial Services, LLC relief from the automatic stay to pursue all rights and remedies against Arnold Transportation Services, Inc. and its assets in the United States and waiving the 14-day stay provided for in

Bankruptcy Rule 4001(a)(3) if necessary, and grant such other relief as the Court deems just and equitable.

Respectfully submitted,

Dated  April 29, 2024
       Wilmington, Delaware

**BROWN McGARRY NIMEROFF LLC**

*/s/ Jami B. Nimeroff*
Jami B. Nimeroff, Esquire (No. 4049)
919 N. Market Street, Suite 420
Wilmington, DE 19801
Telephone: (302) 428-8142
Email: jnimeroff@bmnlawyers.com

*Attorneys for Triumph Financial Services, LLC*