**Exhibit "A"**

**Affidavit of Daniel Mourning**
**dated April 5, 2024**

B-1-1

Court File No. CV-24-00717340-00CL

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c.C-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF PRIDE GROUP HOLDINGS INC. and those Applicants listed on Schedule "A" hereto (each, an Applicant, and collectively, the Applicants.

### AFFIDAVIT OF DANIEL MOURNING

**(Sworn April 5, 2024)**

I, Daniel Mourning of the City of Dallas, Texas, MAKE OATH AND SAY:

1.      I am a senior Vice President and Associate General Counsel of Triumph Financial Services LLC formerly known as Advance Business Capital LLC d.b.a. Triumph Business Capital ("**Triumph**") and as such have knowledge of the matters I depose to herein, save and except where matters are stated to be on information and belief, in which case I state the source of the information and I verily believe it to be true.

2.      Triumph is the second largest transportation factoring company in the United States, and is a subsidiary of Triumph Financial, Inc., a publicly traded company on the NASDAQ.  Triumph specializes in providing financial solutions to the trucking industry, which in addition to freight invoice factoring, including fuel cards. Truck Insurance, asset based lending and equipment finance.

B-1-1

3.      In or about late 2019 Triumph and the Applicant, Arnold Transportation Services, Inc. ("**Arnold**") entered into a Factoring and Security Agreement pursuant to which Arnold sold and assigned its freight services accounts receivable to Triumph on a recourse basis (meaning that if the purchased account was not paid within 90 days of its purchase by Triumph, Arnold was obligated to buy back the account from Triumph).    The buy back obligation was secured by a security interest over all of Arnold's personal and intangible property, and, to perfect the security interest, Uniform Commercial Code ("**UCC**") financing statements were filed and registered by Triumph's representative and agent, Corporation Services Company ("**CSC**"), in each of Texas, Pennsylvania and Delaware. When Arnold was sold to Pride Group in 2022, a new Factoring and Security Agreement dated April 22, 2022 was entered into, a copy of which is attached hereto as **Exhibit "A"** (the "**FSA**").

4.      As of March 27, 2024, the aggregate amount outstanding and owing to Triumph by Arnold customers in respect of purchased Arnold customer receivables purchased by Triumph from Arnold is approximately U.S. $3.3 million.  Given Arnold's insolvency filing, the collectability of these purchased accounts will deteriorate materially and inevitably increase the buy back obligations of Arnold secured by the Triumph security interest granted by the FSA and registered under the UCC.  An initial audit of the accounts purchased by Triumph has uncovered disputed invoices that will not be paid to Triumph in the amounts sold to Triumph by Arnold.

5.      Attached hereto as **Exhibit "B"** is the CSC summary from Exhibit "I" to the affidavit of Sulakhan Johal sworn March 26, 2024 in these proceedings of the Pennsylvania UCC registrations against Arnold, reflecting registrations in favour of only Daimler Truck

Financial Services and CSC as agent for Triumph.  Attached hereto as **Exhibit "C"** is a copy of the Pennsylvania UCC registration made by CSC as Triumph's representative in respect of the FSA on May 12, 2022.

6.      Based on the Pennsylvania UCC summary, I verily believe that apart from Daimler Truck Financial Services in respect of particular financed vehicles (and who are not primed by the proposed Amended and Restated Initial Order ("**ARIO**") being sought herein), Triumph is the sole secured creditor of Arnold.  The imposition of the superpriority charges and in particular the proposed $30 million DIP Lenders' Charge ahead of Triumph's existing security interests over Arnold's property will irreparably harm and prejudice Triumph and is effectively an expropriation of Triumph's property in those security interests.  Accordingly, Triumph opposes the granting of the Charges over the property of Arnold.

7.      Triumph is willing and prepared to continue its Factoring arrangements with Arnold, which will be far less disruptive to Arnold's business than a transition to a DIP funding model, given the long history of the Triumph-Arnold factoring arrangement, so long as Triumph is granted protection and priorities by the Court akin to a DIP Lender of Arnold. Alternatively, Triumph is willing and prepared to continue its Factoring arrangements with Arnold pursuant to DIP financing authorized by the US Bankruptcy Court in Delaware. This would have the added benefit of leaving more of the $30million DIP Facility available to other Pride Group Entities.  Triumph has attempted to engage in discussions with representatives of Pride and Ernst & Young, which have been overtaken by these proceedings.  Triumph is prepared to reengage in those discussions immediately.

B-1-4

-4-

**SWORN BEFORE ME** at the City of
Dallas, in the State of Texas on April 5,
2024

Commissioner, Notary, etc.

(Signature of affiant)

B-1-4

This  is Exhibit "A" to the Affidavit of

Daniel Mourning, Sworn April 5, 2024

_____

Commissioner/Notary

4/5/2024

DEANA MARIE MILLER
Notary ID #125450732
My Commission Expires
October 3, 2025



**FACTORING AND SECURITY AGREEMENT**

THIS FACTORING AND SECURITY AGREEMENT ("Agreement") is made as of the date executed, hereby known as the Effective Date, by and between ARNOLD TRANSPORTATION SERVICES, INC. ("Client") and Advance Business Capital LLC d/b/a **Triumph Business Capital** (together with its Affiliates, successors and assigns, "Triumph"), (individually, "Party" and collectively, "Parties").

### Recitals

WHEREAS Client desires to sell to Triumph certain existing and future Accounts arising from products sold and/or services performed under the regular course of Client's business.

WHEREAS Triumph desires to purchase certain of those Accounts, which Triumph in its sole Discretion deems acceptable for purchase, according to the terms and conditions provided in this Agreement and provide Client certain services in conjunction with such purchases.

WHEREAS this Agreement is in compliance with all applicable laws and regulations, including but not limited to, Uniform Commercial Code, Texas Finance Code, Code of Federal Regulations, United States Code Title 49, United States Bankruptcy Code, and Texas Civil Practice and Remedies Code.

WHEREAS in entering this Factoring Agreement, Client understands that Triumph assumes a degree of risk associated with any Purchased Accounts and Advances, including but not limited to invalid invoices sold to Triumph by Client and misdirection of payment proceeds on Accounts purchased by Triumph.

NOW, THEREFORE Client intends to enter into this Agreement with Triumph in good faith and to fully and timely comply with all of its responsibilities, representations and warranties made under this Agreement and otherwise operate and administer its business with honesty and transparency.

In consideration of the above recitals and mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Definitions and Index to Definitions**.  The following terms used herein shall have the following meanings.  All capitalized terms, whether or not herein defined, shall have the meaning set forth in the Uniform Commercial Code except to the extent otherwise provided in this Agreement.

    1.1. **"Account Debtor"** – the obligor on an Account, as defined in UCC Article 9.

    1.2. **"Active Account Debtor"** - an Account Debtor of Client which owes all or any portion of a Purchased Account to Triumph.

    1.3. **"Advance Rate"** - the percentage, per Schedule A, of the Face Amount of Purchased Accounts immediately available to the Client on the Purchase Date.

    1.4. "**Affiliate**" or "**Affiliated**" - means any Person that, whether directly or indirectly, or through one or more intermediaries, controls, is controlled by, or is under common ownership or control. Each of the following shall be deemed Affiliated with Client: Client's executive officers and directors; if Client is a Corporation, each shareholder, that, directly or indirectly, owns or directs 10% or more of any class of voting securities; if Client is a partnership, all general, limited or special partners and if Client is a limited liability company, all elected managers or members that have contributed or that have the right to receive, upon dissolution, 10% or more of the company's capital.

    1.5. **"Balance Subject to Finance Fees"** – the difference between the unpaid Face Amount of Purchased Accounts and the Reserve Account – but only to the extent that a Finance Rate is designated as applicable, pursuant to Schedule A.

    1.6. **"Carrier"** or "**Motor Carrier**" – a Person providing motor vehicle transportation for compensation and includes a Person, transporting property by motor vehicle when--the transportation is as provided in 49 USCS § 13501; the person is the owner, lessee, or bailee of the property being transported; and the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.



1.7.   **"Carrier Payment Period"** – time period, subsequent to Purchase Date, during which Triumph will issue payment to Carriers engaged by Freight Brokers.

1.8.   **"Carrier Settlement"** – per load documentation, between Freight Broker and Carrier, summarizing the terms and conditions, delivery confirmation, advances and/or other adjustments, if any, and final calculation of Carrier payment amounts for each load.

1.9.   **"Closed"** – in connection with a Purchased Account, occurs upon Triumph's receipt of full payment of a Purchased Account from a Payor or the Client (including payment by a charge to the Reserve Account).

1.10.  **"Collateral"**- all of Client's assets now owned and hereafter acquired including Accounts, Chattel Paper, Deposit Accounts, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, and General Intangibles.

1.11.  **"Complete Termination"** – in connection with the Term of this Agreement, occurs upon satisfaction of the following conditions: (a) payment in full of all Obligations of Client to Triumph; (b) if Triumph has issued or caused to be issued guarantees, promises, or letters of credit on behalf of Client, acknowledgement from any beneficiaries thereof that Triumph or any other issuer has no outstanding direct or contingent liability therein and (c) Client has executed and delivered to Triumph a general release in a form prepared by and acceptable to Triumph.

1.12.  **"Default Fees"** – 1.5 times the fees listed in Schedule A, applicable only upon an Event of Default.

1.13.  "**Discretion**" – in the sole and exclusive business judgment or determination of Triumph.

1.14.  **"Early Termination Fee"** – 5% of the Maximum Advance per Schedule A hereto, applicable only if this Agreement is terminated subsequent to the No-Risk Trial Period and prior to end of the Term.

1.15.  **"Eligible Account"** - an Account that in Triumph's Discretion is acceptable for purchase.

1.16.  **"Events of Default"** - see Section 10.1

1.17.  **"Expedited Settlement Fee"** – $25.00 or 1% of the Advance Rate portion of the Purchase Price, whichever is greater, upon Client's request for payment of the Purchase Price sooner than as provided in Section 2.2.

1.18.  **"Exposed Payments"** – payments received by Triumph that may subject Triumph to an Avoidance Claim under the United States Bankruptcy Code.

1.19.  **"Face Amount"** - the amount due on an Account at the time of purchase as evidenced by the Invoice and Invoice Documentation.

1.20.  **"Factoring Fee"** - the Factoring Fee Percentage multiplied by the Face Amount of a Purchased Account, for each Factoring Fee period or portion thereof, that any portion thereof remains unpaid as provided in Schedule A.

1.21.  **"Factoring Fee Percentage"** – as provided in Schedule A.

1.22.  **"Finance Fees"** - the product of the Finance Rate (if applicable, as provided in Schedule A) multiplied by Balance Subject to Finance Fees.

1.23.  **"Finance Rate"** - a rate per annum, expressed as a function of Prime Rate, if applicable, as provided in Schedule A.

1.24.  **"Freight Broker"** - a Person, other than a Motor Carrier or an employee or agent of a Motor Carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by a Motor Carrier for compensation as provided by 49 USCS §13102. In the event Client qualifies as a Freight Broker, a schedule B may apply.

1.25.  **"Insolvent"** – in connection with an Account Debtor occurs when, on or before the Repurchase date, the Account Debtor becomes subject to: (i) a petition under any state or federal debtor relief or liquidation statute filed within the insolvency period, or (ii) a proceeding under Chapters 11 or 13 of the Bankruptcy Code filed or the conversion of said case to one under Chapter 7. The burden of proof as to the Insolvency of an Account

B-1-8

Debtor shall rest solely on the Client, with it being presumed that at all relevant times, an Account Debtor is not Insolvent.

1.26. **"Invoice"** - the document that evidences or is intended to evidence the terms of sale giving rise to an Account. Where the context so requires, reference to an Invoice shall be deemed to refer to the Account to which it relates.

1.27. **"Invoice Documentation"** - all records, whether in electronic or paper form, relating to or supporting an Invoice in respect to a claim for payment from an Account Debtor including purchase orders, bills of lading, receiving documents, shipping receipts, packing lists and the like.

1.28. **"Maximum Advance"** – an amount, per Schedule A, equal to and not to exceed the total amount payable by Triumph to Client based on the Advance Rate portion of all Purchased Accounts offered during the Term of this Agreement and not Closed. Triumph may elect not to purchase any Account which will cause the unpaid balance of Purchased Accounts to exceed the Maximum Advance. However, if Triumph purchases Accounts in excess of the Maximum Advance, same shall have no adverse consequences to Triumph's rights under this Agreement. Triumph may increase the Maximum Advance in such instance without amending Schedule A hereto.

1.29. "**Minimum Monthly Fee**" - the minimum value of monthly Factoring Fees, but applicable only after the first 90 days of the initial Term; that amount being ___$600___ per month.

1.30. '**Misdirected Payment Fee"** – 15% of the amount of any payment (but in no event less than $1,000) which has been received by Client on account of a Purchased Account and not delivered in kind to Company on the next business day following the date of receipt by Client**.**

1.31. **"No-Risk Trial Period"** – the period of time in which the Early Termination Fee is waived; that being 30 days from the date of this Agreement.

1.32. **"Obligations"** - all present and future monetary indebtedness, liabilities and obligations owing by Client to Triumph, whether or not arising hereunder and whether arising before, during or after the commencement of any Bankruptcy Case in which Client is a Debtor or Debtor-In-Possession.

1.33. **"Payor"** - An Account Debtor or another entity making payment for the benefit of such party.

1.34. **"Person"** – includes but is not limited to individuals, firms, associations, joint adventures, general and limited partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations, limited liability companies, all forms of Registered Organizations, and all other groups or combinations.

1.35. **"Prime Rate"** - the "prime rate" as set forth in the Money Rates section of The Wall Street Journal or, if unavailable, Triumph will substitute a comparable index. For purposes of this Agreement, Prime Rate is subject to a minimum of _____ per annum. Triumph shall have Discretion to adjust the Factoring Fee Percentage, either up or down, to reflect changes in the Prime Rate.

1.36. **"Purchase Date"** - each date on which Client has been advised, either through writing or posting on daily settlement reports available to Client, that Triumph has elected to issue the Purchase Price to purchase an Account.

1.37. **"Purchase Price"** - the Face Amount of a Purchased Account less the Factoring Fee.

1.38. **"Purchased Accounts"** - Accounts purchased hereunder which have not been Closed.

1.39. **"Quick Payment Fees"** – discount fees, if applicable (Freight Brokers only), charged to Carriers, for immediate payment processing.

1.40. **"Repurchase Period"** – as provided in Schedule A.

1.41. **"Repurchase"** - an Account for which Client has paid to Triumph the then unpaid Face Amount.

1.42. **"Required Reserve Amount"** – the product of the total unpaid balance of all Purchased Accounts multiplied by a percentage equal to the difference between 100% and the Advance Rate percentage, as provided in Schedule A.

1.43. **"Reserve Account"** - a non-Deposit Account maintained by Triumph for bookkeeping purposes, intended to



represent the aggregate, yet-to-be paid, portion of all Purchased Accounts.

1.44. **"Reserve Shortfall"** - the amount by which the Reserve Account is less than the Required Reserve Amount.

1.45. **"Schedule of Accounts"** - a form supplied by Triumph from time to time to be used by Client to identify Accounts offered for sale to Triumph under this Agreement.

1.46. "**Security Interest**"- means an interest in personal property or fixtures which secures payment or performance of an obligation. Security Interest" includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Article 9 of the Uniform Commercial Code.

1.47. **"Setup Fee"** – a fee identified per Schedule A.

1.48. "**Term**" – term of this Agreement, as identified in Schedule A.

1.49. "**Uniform Commercial Code**" – the Uniform Commercial Code as adopted in the state of Texas.

## 2.  Sale; Purchase Price; Billing.

2.1. Client shall offer for sale to Triumph, as absolute owner and with full authority, such of Client's Accounts as are listed from time to time on each Schedule of Accounts. Each Schedule of Accounts shall be accompanied by Invoice Documentation supporting the Account. Triumph may, in its Discretion, elect to purchase from Client such Accounts that Triumph determines to be Eligible Accounts.

2.2. Triumph shall pay or otherwise make available to Client the Purchase Price of any Purchased Account, on one (1) business day of the Purchase Date, less any amounts due to Triumph from Client, including, without limitation, any fees, expenses, and Reserve Shortfall.

2.3. At the time each Schedule of Accounts is delivered by Client to Triumph, Client will have offered for sale to Triumph the Accounts so listed and shall also offer for sale each and every other than existing or later arising Account related to an Active Account Debtor. Triumph may transmit a monthly statement to each Payor by, among other things, itemizing their account activity during the preceding billing period.

2.4. Client shall not, without the prior written consent of Triumph in each instance, change or modify the terms of any original Invoice or any Invoice Documentation in respect to any Active Account Debtor or Purchased Account.

2.5. Subject to the terms and conditions of this Agreement, Triumph is authorized to purchase Accounts upon telephonic, facsimile, or other instructions received from any officer, employee, or representative of Client.

## 3.  Fees and Expenses. Client shall pay to Triumph the following items:

3.1. **Factoring Fees.** The Factoring Fee on the date on which a Purchased Account is purchased, as well as for subsequent periods as applicable – as provided in Schedule A.

3.2. **Finance Fees.** Computed on the Balance Subject to Finance Fees on the first day of the month following the month in which it accrues, as applicable – as provided in Schedule A.

3.3. **Early Termination Fee.** Applicable only in the event that Client terminates this Agreement after the end of the No- Risk Trial Period and other than at the end of the Term.

3.4. **Out-of-pocket Expenses.** The out-of-pocket expenses directly incurred by Triumph in the administration of this Agreement such as wire transfer fees, electronic funds transfer fees, postage, and audit fees – as provided in Schedule A.

3.5. **Field Audit Expenses.** $1,000 per day plus travel expenses in respect to each audit, applicable only if the total Purchased Accounts exceeds $1,000,000, upon an Event of Default or as may otherwise be provided in Schedule A. Subject to the preceding sentence, Triumph may have performed but Client shall not be required to pay for more than two audits per twelve-month period.

3.6. **Minimum Monthly Fee**- In consideration of the services provided as a part of or in conjunction with the



purchase of Accounts, minimum value of monthly Factoring Fees; that amount being $600 per month.

3.7.  **Other Charges**. Other fees and expenses as specified in this Agreement or as may otherwise be provided in Schedule A, including, upon each occurrence, Expedited Settlement Fees.

## 4. <u>Reserve Account.</u>

4.1.  Triumph shall pay to Client weekly, or at such other times and frequencies mutually agreeable to the Parties, any amount by which the Reserve Account exceeds the Required Reserve Amount, subject to Triumph's right to charge the Reserve Account with any Obligations. Triumph may pay any amounts due by Client hereunder by making a credit to the Reserve Account. Additionally, Triumph may increase the Required Reserve Amount by the value of Purchased Accounts which, in its Discretion, are unlikely to be paid prior to the Repurchase Period.

4.2.  Client shall pay to Triumph, on demand, the amount of any Reserve Shortfall. If a Reserve Shortfall continues to exist for ten (10) days after notice is issued by Triumph, Client shall also pay either as a debit to any Purchase Price paid or payable by Triumph, or immediately upon demand, an amount equal to nine percentage points (9%) in excess of Prime Rate (but not to exceed the maximum rate of interest permitted by applicable law) and such charges will continue on the outstanding Reserve Shortfall until the Reserve Shortfall is eliminated. The imposition of such interest charges shall not be deemed to excuse a late payment or be deemed a waiver of any other rights of Triumph under this Agreement.

4.3.  Triumph may retain the Reserve Account for ninety days following termination of this Agreement or until a Complete Termination, whichever is greatest, to be applied to, inter alia, payment of any Obligations whether known or unknown to Triumph at the time of termination.

## 5. <u>Account Disputes</u>. Client shall notify Triumph promptly of any account disputes. If, but only if, requested by Triumph in writing, at Client's sole cost and expense, Client will seek to settle all disputes concerning any Purchased Account, however, no final resolution shall be made without Client having first obtained Triumph's express written authorization. Triumph, at Client's sole expense, shall at all times be irrevocably authorized, but not required, to settle, compromise, or pursue collection of (collectively, "Resolve") any dispute pertaining to a Purchased Account upon such terms, per Triumph's Discretion, without otherwise seeking Client's consent. Upon the occurrence of an Event of Default, Triumph may Resolve such issues with respect to any Account of Client.

## 6. <u>Repurchase of Accounts</u>. Triumph may demand that Client Repurchase a Purchased Account by requiring payment or at Triumph's option, by debiting the Reserve Account of the then unpaid Face Amount of such Purchased Account together with any unpaid fees including those described in Section 3 above, in connection with each of the following:

6.1.  Any Purchased Account in respect to which (a) a Payor has indicated an inability or unwillingness to pay the Purchased Account when due or (b) remains unpaid beyond the Repurchase Period or (c) in Triumph's Discretion a Payor qualifies as Insolvent;

6.2.  Any Purchased Account, the right to receive payment of which has been disputed by a Payor, Triumph being under no obligation to determine the bona fides of such dispute;

6.3.  Any Purchased Account in respect to which Client has breached any representation, warranty or covenant as set forth in Sections 8 and 9; and

6.4.  All Purchased Accounts upon occurrence of an Event of Default or upon the termination date of this Agreement.

## 7. <u>Security and Ownership Interest; Notification of Assignment.</u>

7.1.  To secure all of Client's Obligations, Client grants to Triumph a continuing first priority Security Interest in the Collateral. Notwithstanding the creation of this Security Interest, the relationship of the Parties constitutes an account purchase transaction as more specifically described in Section 21.

7.2.  To enable Triumph's perfection of its unconditional and unfettered ownership interest in the Purchased Accounts and Security Interest in Collateral, Client authorizes Triumph to file a UCC Financing Statement so



noting such interest.

**8. Representation and Warranties**. Client and each principal who has executed this Agreement on Client's behalf, represents and warrants each of the following:

8.1.  This Agreement constitutes its legal, valid, and binding obligation, it is fully authorized to enter into this Agreement and to perform its Obligations hereunder and all required signatures are properly evidenced and genuine;

8.2.  Client is solvent, in good standing in the jurisdiction of its organization and able to pay its debts as they mature;

8.3.  Client has filed all tax returns and required reports and is current on payment of all taxes, assessments, fees, and other governmental charges;

8.4.  All financial statements and all other information which have been furnished by Client to Triumph are true, correct, and complete in all material respects, and there have been no material adverse changes in the condition (financial or otherwise) of Client since submission.

8.5.  Client shall not be maintained by or be Affiliated with any entity that is or may be in violation of 49 C.F.R. 386.73 (reincarnated and Affiliate Motor Carrier regulation).

**9. Covenants by Client**.  Client and each principal who has executed this Agreement on Client's behalf, covenants, upon the execution of this Agreement and in each instance that a Schedule of Accounts is delivered to Triumph, each of the following:

9.1.  Each Purchased Account is and will: (a) remain a bona fide existing obligation created by the full and complete rendition of services or sale and delivery of goods in the ordinary course of Client's business; (b) remain unconditionally owed and will be paid to Triumph in full without any assertion of a defense, dispute, offset, counterclaim, or right of return or cancellation, other than Accounts owed by an Account Debtor which becomes subject to any bankruptcy or state debtor relief proceeding; and (c) not constitute a sale to any entity that is Affiliated with Client or in any way not an "arm's length" transactions.

9.2.  Client shall not create, incur, assume, or permit to exist any Security Interest, lien or any form of adverse ownership interest or claim upon or with respect to any of the Purchased Accounts or Collateral in which Triumph now or hereafter holds an ownership interest or a Security Interest.

9.3.  Before sending any Invoice to an Account Debtor, Client shall notate on same the form of notice of assignment as may be required by Triumph and/or otherwise notify any Payor of such assignment of Triumph's right to receive payment.

9.4.  Client shall not solicit from any Account Debtor any form of payment in respect to a Purchased Account or any Account offered for sale to Triumph. Should Client receive payment of all or any portion of any Purchased Account, Client shall immediately notify Triumph of receipt of the payment, hold said payment in express trust for Triumph separate and apart from Client's own property and funds, and by no later than the next banking day following the date of receipt and deliver said payment to Triumph in the identical form in which received. Any claim or cause of action that Client may have against Triumph, whether predicated on this Agreement or otherwise, shall not constitute a defense or any form of excuse of non-performance to the enforcement by Triumph in law or in equity of the provisions contained in this section applicable to Client's duty to hold in trust and turn over all proceeds of Purchased Accounts to Triumph.

9.5.  Client shall provide Triumph, within two (2) business days, with written Notice of: (a) any billing dispute including, but not limited to, any challenge by a Payor as to invoiced amount, damage to shipped cargo, returns or allowances or claim for loss or (b) actual or imminent bankruptcy, insolvency, or material impairment of the financial condition of any Active Account Debtor.

9.6.  Client shall not, without the prior written consent of Triumph, in each instance: (a) grant any extension of time for payment or otherwise modify the terms of any of its Accounts, (b) compromise or settle any of its Accounts for less than the full amount thereof, (c) release in whole or in part any Payor, or (d) grant any credits, discounts,

allowances, deductions, return authorizations or the like with respect to any of the Accounts.

9.7.    Client shall timely pay all payroll and other taxes and shall provide proof thereof to Triumph in such form as Triumph shall reasonably require.

9.8.    Client shall maintain insurance at all times on all insurable property owned or leased by Client in such manner, to the extent and against at least such risks as usually maintained by owners of similar businesses and properties in similar geographic areas. All such insurance shall be in such form and written by such companies acceptable to Triumph.

9.9.    Client shall not, outside Client's ordinary course of business, sell, transfer, or assign any of Client's assets without the prior written consent of Triumph.  Client will notify Triumph, in writing, of any existing or newly created business, if owned in whole or part by Client or Client's principals and such company is in any way related to or associated with the type of business conducted by Client.

9.10.   From time to time as requested by Triumph, Triumph or its designee shall have access, during reasonable business hours if prior to an Event of Default and at any time if on or after an Event of Default, to all premises where Collateral is located for the purposes of inspecting (and removing, if after the occurrence of an Event of Default) any of the Collateral, including Client's books and records and Client shall permit Triumph or its designees to make copies or extracts therefrom. Client hereby irrevocably authorizes and shall direct each of its accountants and third parties to disclose and deliver to Triumph, at Triumph's request and at Client's expense, all financial information, books and records, work papers, management reports and other information in their possession relating to Client.

9.11.   Client acknowledges that the duty to accurately complete each Schedule of Accounts is fundamental to this Agreement and as such the duty to accurately complete each Schedule of Account shall at all times remain non- delegable such that each of Client's principal(s) acknowledge that he/she shall remain fully responsible for the accuracy of each Schedule of Accounts delivered to Triumph regardless of who may otherwise be delegated the responsibility to prepare, complete or submit each such Schedule of Accounts.

9.12.   Client shall hold all required valid operating permits to transact business and be duly registered with the Federal Motor Carrier Safety Administration ("FMCSA") as a Motor Carrier and/or Freight Broker and, at all times, duly maintain its operating authority.

9.13.   Client will provide, upon request, agings of accounts receivable and payables, as well as financial statements prepared in accordance with generally accepted accounting principles, including income statement and balance sheet, upon an Event of Default or as may be requested by Triumph.

9.14.   Client, its employees and agents shall not take any action which may lead to penal liability due to fraud, embezzlement, crimes in violation of competition, bribery, acceptance of bribes or other corruption crimes and, in addition, Client shall comply with all applicable laws and regulations.

## 10. **Default.**

10.1.   **Events of Default**. The following will constitute an Event of Default hereunder: (a) Client's failure to pay any Obligation or perform any provision under this Agreement or any other agreement now or hereafter entered into with Triumph; (b) any covenant, warranty or representation contained under this Agreement proves to be false in any way, howsoever minor, (c) Client or any guarantor of the Obligations becomes subject to any bankruptcy, state debtor-relief proceeding such as an assignment for the benefit of creditors or becomes subject to the appointment of any receivership, (d) any guarantor fails to perform or observe any of such guarantor's duties or obligations to Triumph or shall notify Triumph of its intention to rescind, modify, terminate or revoke any guaranty of the Obligations, or any such guaranty shall cease to be in full force and effect for any reason whatever, (e) Client fails to offer for sale to Triumph an Eligible Account for a period of ninety (90) days from the date the last Eligible Account was offered for sale by Client; and (f) Triumph, in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Obligations or any other required performance under this Agreement.

10.2.   **Effect of Default**. Upon the occurrence of any Event of Default, in addition to any rights Triumph has under this Agreement or applicable law, Triumph may, without notice, immediately terminate this Agreement and/or

B-1-13

declare all Obligations immediately due and payable and all fees shall accrue and be payable at the Default Fees rate.

**11. Authorization to Triumph.** Client authorizes Triumph and irrevocably grants power of attorney to Triumph to exercise each and any of the following powers until all of Obligations have been paid in full and a Complete Termination has been performed:

11.1. **At All Times**: (a) Receive, take, endorse, assign, deliver, accept and deposit, in the name of Triumph or Client, any and all Proceeds of any Collateral securing the Obligations or the Proceeds thereof; (b) Take or bring, in the name of Triumph or Client, all steps, actions, suits or proceedings deemed by Triumph necessary or desirable to effect collection of or other realization upon Triumph's Accounts; (c) File any claim in connection with any bond or any trust fund; (d) Pay any sums Triumph, in its Discretion, deems necessary including the discharge of any Security Interest, lien or encumbrance which may be senior to Triumph's Security Interest in any assets of Client, which sums shall thereafter be included as Obligations hereunder; (e) File and enforce in the name of Client or Triumph, or both, a mechanics or any other form of lien or related notices, or claims under any payment bond, in connection with goods or services sold by Client; (f) Notify any Payor obligated with respect to any Account, that, *inter alia*, the Account has been assigned to Triumph by Client and that payment thereof is to be made to the order of and directly and solely to Triumph; (g) Communicate directly with Client's Payors, regardless of whether any actual Obligation is due at the time of such communication, to verify the amount and validity of any Account created by Client; (h) Accept, endorse and deposit any checks tendered by an Account Debtor "in full payment" of its obligation to Client and Client shall not assert against Triumph any claim arising therefrom, irrespective of whether such action by Triumph effects an accord and satisfaction of Client's claims, under §3-311 of the Uniform Commercial Code, or otherwise; (i) File, amend and correct any addresses with the proper federal, state and local authorities and (j) Affix an electronic version of the signature of Client to any notification of assignment or other communication sent by Triumph to an Account Debtor, the Internal Revenue Service or other governmental or regulatory agency.

11.2. **Upon an Event of Default:** (a) Change the address for delivery of mail to Client and to receive and open mail addressed to Client; (b) Extend the time of payment, compromise or settle for cash, credit, return of merchandise or otherwise, and upon any terms or conditions, any and all Accounts and discharge or release any Payor (including filing of any public record releasing any lien granted to Client by such Account Debtor), without affecting any of the Obligations; (c) Initiate electronic debit or credit entries through the ACH system to any deposit account maintained by Client; (d) Without expense to Triumph, use any of Client's personnel, equipment, including computer equipment, programs, printed output and computer media, supplies and premises for the collection of Accounts and realization on other Collateral as Triumph, in its Discretion, deems appropriate and (e) Implement Default Fees. In the event, due to an Event of Default, Triumph deems it necessary to seek equitable relief, including, but not limited to, injunctive or receivership remedies, Client waives any requirement that Triumph post or otherwise obtain or procure any bond. Alternatively, in the event Triumph, in its sole and exclusive Discretion, desires to procure and post a bond, such bond may be limited to the sum of $10,000.00 notwithstanding any common or statutory law requirement to the contrary, and Triumph shall nonetheless be entitled to all legal benefits as if such bond was posted in an amount as may otherwise be required by law.

11.3. **Financing Statements:** File any initial Financing Statement and amendments thereto that: (a) Indicates the Collateral as "all assets" or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code, or as being of an equal or lesser scope or with greater detail; (b) Contain any other information required by part 5 of Article 9 of the Uniform Commercial Code for the sufficiency or filing office acceptance of any Financing Statement or amendment, including whether the Client is an organization, the type of organization, and any organization identification number issued to the Client; (c) Contain a notification that Client has granted a negative pledge to Triumph, and that any subsequent lienor may be tortiously interfering with Triumph's rights; (d) Advise third parties that any notification of Client's Account Debtors will interfere with Triumph's collection rights and (e) File any Information Statement under Section 9-518 of the Uniform Commercial Code that Triumph reasonably deems necessary to cure any inaccuracy or otherwise preserve its rights hereunder.

B-1-13

B-1-14

12. **Termination; Effective Date.**

12.1. **Term**. This Agreement will be effective on the date it is executed and accepted by Client ("Effective Date") and unless duly terminated shall continue for successive Terms from the later of the Effective Date or the date of any executed modification, unless Client shall provide at least thirty (30) days prior written notice to Triumph of its intention not to automatically renew. If Client wishes to terminate the Agreement, Client must submit a termination letter, hand signed by at least one business owner, to termination@tbcap.com at least thirty (30) days prior to the end of the current Term. Upon receipt of such notice, this Agreement will terminate on the last date of the current Term or, if prior to that date, on the specified "Early Termination Date." Triumph may terminate this Agreement at any time by giving Client thirty (30) days prior written notice of termination, or at any time without notice upon the occurrence of any Event of Default.

12.2. **No Lien Termination without Release**. In recognition of Triumph's right to have a Complete Termination, notwithstanding payment in full of all Obligations by Client, Triumph shall not be required to record any terminations of any Financing Statement or satisfactions of any of Triumph's ownership rights or Security Interest in the Collateral unless and until Complete Termination has occurred. Client understands that this provision constitutes a waiver of its rights under §9-513 of the Uniform Commercial Code.

13. **Account Stated**. Triumph may provide Client, electronically through a website or otherwise, with information on the Purchased Accounts and a monthly reconciliation of the factoring relationship relating to billing, collection, and Account maintenance such as aging, posting, error resolution and mailing of statements or make such information available. All of the foregoing shall be in a format and in such detail, as Triumph, in its Discretion, deems appropriate. Triumph's books and records or electronically stored information shall be admissible in evidence without objection as to authenticity, hearsay or otherwise and shall be admissible as prima facie evidence of the status of the Purchased Accounts and non-Purchased Accounts and Reserve Account between Triumph and Client. Each statement, report, or accounting rendered or issued by Triumph to Client and all electronically stored information shall be deemed conclusively accurate and binding on Client unless within fifteen (15) days after the date of issuance or, in the case of electronically stored information, the first of each month, Client notifies Triumph to the contrary by registered or certified mail, setting forth with specificity the reasons why Client believes such statement, report, or accounting or electronically stored information is inaccurate, as well as what Client believes to be correct. Client's failure to receive any monthly statement or access the electronically stored information shall not relieve it of the responsibility to request such information and Client's failure to do so shall nonetheless bind Client to whatever Triumph's records or electronically stored information report.

14. **Indemnification**. Client agrees to indemnify Triumph against and save Triumph harmless from any and all manner of suits, claims, liabilities, demands and expenses, whether directly or indirectly, resulting from or arising out of this Agreement including the transactions or relationships contemplated hereby and the enforcement of this Agreement, and any failure by Client to perform or observe its duties under this Agreement. In no event will Triumph be liable to Client for any lost profits or any form of consequential, incidental, or special damages resulting from or arising out of or in connection with this Agreement, the transactions or relationships contemplated hereby or Triumph's performance or failure to perform hereunder, even if Triumph has been advised of the possibility of such damages.

15. **Exposed Payments**. Upon termination of this Agreement and in addition to any other Obligations owing, Client shall pay to Triumph (or Triumph may retain in a non-segregated non-interest bearing account) an amount equal to the total of all Exposed Payments (the "Preference Reserve"). Triumph may charge the Preference Reserve with the amount of each Exposed Payment that Triumph pays to any bankruptcy estate of a Payor that made the Exposed Payment on account of a claim asserted under the Bankruptcy Code. Triumph shall, from time to time, refund to Client that portion of the Preference Reserve for which a claim under the Bankruptcy Code can no longer be asserted due to the passage of the statute of limitations, settlement with the bankruptcy estate of the Payor or otherwise.

16. **Successor Entity.** In the event, during the Term of this Agreement or while Client remains liable to Triumph for any Obligations under this Agreement, Client's principal(s), officer(s) or director(s) directly or in conjunction with any other person, causes to be formed a new entity or otherwise become associated with any newly formed or existing entity that provides goods or services similar to those of Client, whether corporate, partnership, limited liability company or otherwise, such entity shall be deemed to have expressly assumed the Obligations Client owes Triumph under this Agreement. With respect to each such entity, Triumph shall be deemed to have been granted an irrevocable power of

attorney with authority to file a new UCC-1 Financing Statement naming such newly formed or existing entity as Debtor, and to have it filed with any and all appropriate secretaries of state or other UCC filing offices. Triumph shall be held harmless by Client and its principals, officers or directors and be relieved of any liability as a result of Triumph's filing of any such Financing Statement or the resulting perfection of its Collateral and Security Interests in such entity's assets. In addition, Triumph shall have the right to notify such entity's Account Debtors of Triumph's rights, including without limitation, Triumph's right to collect all Accounts, and to notify any creditor of such entity that Triumph has rights in such entity's assets.

**17. Attorneys' Fees; Expenses**. Client agrees to reimburse Triumph, on demand, for the actual amount of all costs and expenses, including attorneys' fees, which Triumph may incur in: (a) enforcing this Agreement and any documents prepared in connection herewith, (b) protecting, preserving or enforcing any lien, Security Interest or other right granted by Client to Triumph or arising under applicable law, whether or not suit is brought, or defending Triumph's ownership rights in the Purchased Accounts or its Security Interest rights and/or priority in the Collateral; (c) the defense of any Avoidance Claims; or (d) connection with any federal or state insolvency proceeding commenced by or against Client, including, but not limited to, any subpoena or other legal process in any way relating to Client, including those arising out of the automatic stay, seeking dismissal or conversion of a bankruptcy proceeding, opposing confirmation of Client's plan there under. This provision shall survive termination of this Agreement. Notwithstanding the existence of any law, statute (including, but not limited to Tx. Civ. Prac. & Remedies Code Chapter 38) rule or otherwise, in any jurisdiction which may provide Client with a right to attorney's fees or costs, Client hereby waives any and all rights to seek such attorney's fees or costs and Client agrees that Triumph exclusively shall be entitled to indemnification and recovery of any and all attorney's fees or costs in respect to any litigation based hereon, arising out of, or related hereto, whether under, or in connection with, this and/or any agreement executed in conjunction herewith, or any course of conduct, course of dealing, statements (whether verbal or written) or actions of either Party so long as Triumph prevails in any respect and without having to segregate or identify the specific claims for which such fees were incurred.

**18. Entire Agreement**. Client acknowledges each of the following: (a) that no promise of any kind has been made by Triumph or any third party on behalf of Triumph to induce Client to execute this Agreement except to the extent expressly contained herein; (b) that this Agreement, and any other agreement executed in connection herewith, is the product of joint negotiations such that no portion of this Agreement shall be construed against or in favor of either Party; (c) no course of dealing, course of performance or trade usage, and no parole evidence of any nature, may be used to supplement, alter or modify any terms of this Agreement, and unless otherwise expressly stated in any other agreement between the Parties, if a conflict exists between the provisions of this Agreement and such other agreement, the provisions of this Agreement shall control. Parties acknowledge that there is no provision or subject matter in respect to this Agreement that either believes was negotiated and intended to be included herein but has been omitted and each agree that by executing this Agreement, the Parties each waive any right subsequent to the execution of this Agreement to seek reformation in any form.

**19. Amendment and Waiver**.

19.1. Only a writing signed by all Parties hereto may amend this Agreement except that if Triumph implements any procedural change in respect to which it delivers services or requires any changes to any form required by Triumph in connection with the performance of this Agreement, Triumph shall be entitled to electronically notify Client of the proposed change to be implemented and may effectuate the implementation without further consent by Client after Client is first given thirty (30) days' notice of such proposed change. No failure or delay in exercising any right hereunder shall impair any such right that Triumph may have, nor shall any waiver by Triumph hereunder be deemed a waiver of any default or breach subsequently occurring. Triumph's rights and remedies herein are cumulative and not exclusive of each other or of any rights or remedies that Triumph would otherwise have.

19.2. Client acknowledges that neither Triumph's determination that an Account qualifies as an Eligible Account nor any issuance or determination of the credit worthiness of an Account Debtor shall not excuse or otherwise limit in any way Client's obligations or otherwise entitle Client to assert against Triumph any form of recoupment, set-off, or any other form of claim, whether based on tort, statute, common law, or otherwise, in the event that an Account Debtor fails to pay. Client and Triumph acknowledge that any credit-worthiness determination made by Triumph shall at all times be solely for the purpose of and designed to establish the amount of Purchase Price payments that Triumph may elect to make available to Client and any underwriting in connection therewith

shall at no time be necessarily based upon any industry standard or subject to any standard of care. Client and Triumph acknowledge that they do not intend this section to be subject to modification or otherwise affected in any way by any form of an implied covenant or warranty, usage of trade, course of performance and/or course of dealing.

19.3.    Any claim or cause of action that Client may have or seek to assert against Triumph, whether predicated on this Agreement or otherwise, shall neither constitute a defense nor serve as any basis to excuse non-performance of Client's duty to hold in trust and turn over all proceeds of Purchased Accounts to Triumph. The Client's duties and Obligations contained herein shall at all times be deemed independent covenants such that Client's duty to honor the provisions of this section may at no time be excused or otherwise adversely affected due to, inter alia, any breach that Client may assert against Triumph.

19.4.    Client acknowledges that neither the relationship created by this Agreement nor any subsequent services that Triumph may offer to Client shall entitle Client to assert any form of tort claim, whether in the form of negligence or otherwise, against Triumph and whether supported by statute, common law, or otherwise. Client and Triumph acknowledge that unless the terms of this Agreement create an express duty, the Parties do not intend for any duty to be implied or deemed included within this Agreement except that to the extent that an implied covenant of good faith may exist and in respect thereto, both Triumph and Client agree that in respect thereto, such duty, for the purpose of this Agreement, shall be limited so that neither Party shall take any action to prevent the other Party from performing under this Agreement.

**20.  Severability**. In the event any one or more of the provisions contained in this Agreement is held to be invalid, illegal, or unenforceable in any respect, then such provision shall be ineffective only to the extent of such prohibition or invalidity, and the remaining provisions contained herein shall not in any way be affected or impaired.

**21.  Choice of Law; Account Purchase Transaction**. This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal substantive laws of the State of Texas without application of any choice of law doctrine. Client confirms and acknowledges that it does business as a commercial enterprise and that this Agreement is intended to be an "account purchase transaction," as defined by Texas Finance Code §306.001(1) and pursuant to Texas Finance Code 306.103, it is conclusively established that no amount charged under this Agreement shall constitute interest.  Client further acknowledges that in accordance with 9-318 of the UCC, Client will not retain any legal or equitable interest in any Purchased Account sold under this Agreement.

**22.  Venue; Jurisdiction; Service**. Any suit, action or proceeding arising hereunder, or the interpretation, performance, or breach hereof, shall, if Triumph so elects, be instituted in any court sitting in Dallas County, Texas or, if none, any court located in the State of Texas nearest the location of Triumph (the "Acceptable Forums"). Client agrees that the Acceptable Forums are convenient to it and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated by Client in any forum other than the Acceptable Forums, Client waives any right to oppose any motion or application made by Triumph to transfer such proceeding to an Acceptable Forum. Client agrees that Triumph may effect service of process upon Client by regular mail at the address set forth herein or at such other address as may be reflected in the records of Triumph, or by service upon Client's agent for the service of process.  For the purposes of computing Client's deadline within which to serve a response to any petition or complaint under any applicable statute or rules of court, the period of time shall, if served by regular mail, commence three (3) days after the delivery of the complaint or petition as to any post office or mail drop; one (1) day after Client's signed receipt or first refusal to accept any certified mail and two (2) days after Triumph's delivery of the petition or complaint to any overnight carrier.

**23.  Jury Trial Waiver**. THE PARTIES HERETO WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING UNDER OR IN ANY WAY RELATED OR INCIDENTAL TO THIS AGREEMENT, WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. EACH PARTY FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.

**24.  Assignment**. Triumph may, without notice, assign its rights and delegate its duties hereunder. Upon such assignment



or delegation, Client shall be deemed to have attorned to such assignee and shall owe the same duties and obligations to such assignee and shall accept performance hereunder by such assignee as if such assignee were Triumph.  Client may not, without Triumph's express written consent, delegate any of its duties under this Agreement to any other Person.

**25.**  **Counterparts**. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart of this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement, and any Party delivering such an executed counterpart shall thereafter also promptly deliver a manually executed counterpart, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

**26.**  **Notice.** All notices required to be given to any Party shall be deemed given upon the first to occur of (a) deposit thereof in a receptacle under the control of the U.S. Postal Service, (b) transmittal by electronic means to a receiver under the control of such Party, or (c) actual receipt by such Party or its employee or agent (in the case of Triumph, actual receipt by a responsible officer of Triumph). For the purposes hereof, notices hereunder shall be sent to the following addresses, or to such other addresses as each such Party may in writing hereafter indicate.

*[Signatures on the next page]*

B-1-18

| **Client** | **Triumph Business Capital** |
|---|---|
| Address: _3375 High Prairie Rd_ | 651 Canyon Drive, Suite 105 |
| _Grand Prairie, TX, 75050 US_ | Coppell, Texas 75019 |
| Officer: _Navraj Johal_ | George Thorson |
| Fax Number: _(904) 371-3488_ | (214) 513-9611 |
| Email: _raj@pridegrouplogistics.com_ | gthorson@triumphbcap.com |

IN WITNESS WHEREOF, the parties have executed this agreement on the date first written above.

Client: ARNOLD TRANSPORTATION SERVICES, INC.

By: _____    By: _____

Name: Navraj Johal    Name: _____

Title: President    Title: _____

Date: April 22, 2022    Date: _____


By: _____    By: _____

Name: _____    Name: _____

Title: _____    Title: _____

Date: _____    Date: _____


By: _____    By: _____

Name: _____    Name: _____

Title: _____    Title: _____

Date: _____    Date: _____


By: _____    **Triumph Business Capital**

Name: _____

Title: _____    By: _George A Thorson_

Date: _____    Name:   George A. Thorson

Title:    President



# FACTORING AND SECURITY AGREEMENT

## SCHEDULE A- PRICING AND TERMS

This Schedule A, as referenced in that Factoring and Security Agreement by and between Advance Business Capital LLC d/b/a Triumph Business Capital ("Triumph") and

ARNOLD TRANSPORTATION SERVICES, INC.                          ("Client"), shall govern in respect to the following Terms:

| | |
|---|---|
| Maximum Advance | $ 13,000,000 |
| Term | 1 year with annual renewals |
| Advance Rate | 95% of Eligible Accounts |
| Repurchase Period | 90   days |
| Required Reserve | N/A |
| Finance Rate | Prime Rate plus 2.00% (Prime Rate Floor        ) or <br> ☐ Not Applicable   (Prime Rate minimum not less than 4%) |

| Factoring Fee | | Percentage | Period |
|---|---|---|---|
| | Initial Period | 0.15% | days |
| | Subsequent Periods | | days |

| | |
|---|---|
| Setup Fee | $ Waived |
| Triumph Fuel Card | No Charge (for loading) |
| Electronic Fund Transfer (ACH) | $ 3.00 |
| Wire Transfer Fee | $ 18.00 |
| Buyout Fee (if applicable) | N/A |
| Monthly Minimum Fee | $600 |
| Special Considerations | |

| FREIGHT BROKERS ONLY | |
|---|---|
| Carrier Payment Period | |
| Quick Payment Discount | |



Initials- Acknowledged



651 Canyon Drive, Suite 105, Coppell, Texas 75019   |   214.365.6900   |   Fax: 214.513.9611   |   invoicefactoring.com

This is Exhibit "B" to the Affidavit of

Daniel Mourning, Sworn April 5, 2024

_____
Commissioner/Notary

DEANA MARIE MILLER
Notary ID #125450732
My Commission Expires
October 3, 2025
NOTARY PUBLIC
STATE OF TEXAS

**CSC**
www.cscglobal.com

B-1-21

CSC- New York
Suite 200
19 West 44th Street
New York, NY 10036
212-299-5600
212-299-5656 (Fax)

| | | | |
|---|---|---|---|
| **Matter#** | L-345621 | **Order#** | 377554-6 |
| **Project Id :** | | **Order Date** | 03/26/2024 |

| | |
|---|---|
| **Subject:** | **ARNOLD TRANSPORTATION SERVICES, INC.** |
| **Jurisdiction:** | **PA - DEPARTMENT OF STATE UNIFORM COMMERCIAL CODE SECTION** |
| **Request for:** | **UCC Debtor Search** |
| **Result:** | **Records found** |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 2013071608494 |
| **File Date :** | 07/16/2013 |
| **Current Secured Party of Record:** | DAIMLER TRUCK FINANCIAL SERVICES USA LLC |

| | |
|---|---|
| **File Type:** | Continuation |
| **File Number:** | 2018012300556 |
| **File Date :** | 01/23/2018 |
| **Original File Number:** | 2013071608494 |

| | |
|---|---|
| **File Type:** | Assignment |
| **File Number:** | 2021120701632 |
| **File Date :** | 12/03/2021 |
| **Original File Number:** | 2013071608494 |

| | |
|---|---|
| **File Type:** | Continuation |
| **File Number:** | 20230123014205 |
| **File Date :** | 01/23/2023 |
| **Original File Number:** | 2013071608494 |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 2019122400369 |
| **File Date :** | 12/24/2019 |
| **Current Secured Party of Record:** | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 2022051201715 |
| **File Date :** | 05/12/2022 |
| **Current Secured Party of Record:** | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE |

| | |
|---|---|
| **File Type:** | Amendment |
| **File Number:** | 20240110006663 |
| **File Date :** | 01/10/2024 |
| **Original File Number:** | 2022051201715 |

Ordered by SHAUIN WANG at LINKLATERS LLP

Thank you for using CSC. For real-time 24 hour access to the status of any order placed with CSC, access our website at www.cscglobal.com.

B-1-21

If you have any questions concerning this order or CSCGlobal, please feel free to contact us.

Jeffrey Boyle
Jeffrey.Boyle@cscglobal.com

**Corporation Service Company(R) Terms and Conditions**

You agree that all information that Corporation Service Company furnishes to you will be used solely as one factor in your credit, insurance, marketing or other business decisions and will not be used (i) in determining a consumer's eligibility for credit or insurance where such credit or insurance is to be used primarily for personal, family or household purposes, (ii) for employment purposes, or (iii) for governmental licenses. Use of the information in the above manner is a violation of the Fair Credit Reporting Act.

**File Number: 2013071608494**
**Date Filed: 07/16/2013 03:24 PM**
**Carol Aichele**
**Secretary of the Commonwealth**

B-1-23

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**CT Lien Solutions**

B. E-MAIL CONTACT AT FILER (optional)
**qiang.xu@wkglobal.com**

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

**CT Lien Solutions**
**PO Box 3248**
**Houston TX 77253**

Barcode too big to fit in this area

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME:   Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **ARNOLD TRANSPORTATION SERVICES, INC.** | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **3375 High Prairie Road** | **Grand Prairie** | **TX** | **75050** | **USA** |

2. DEBTOR'S NAME:   Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Mercedes-Benz Financial Services USA LLC** | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **13650 Heritage Parkway** | **Ft. Worth** | **TX** | **76177** | **USA** |

4. COLLATERAL : This financing statement covers the following collateral:

(i) All of the Debtor's new and used motor vehicles, trailers and/or chassis, whether now owned or hereafter acquired, which are or may hereafter be financed by, leased from or purchased through secured party  (or any of its affiliates), whether directly or indirectly, (ii) all accessions, attachments and other parts on any of the foregoing, together with all replacements thereto and substitutions therefor, and (iii) all proceeds and products of any of the foregoing, including, without limitation, all tangible chattel paper, electronic chattel paper, goods (including, without limitation, motor vehicles, chassis, trailers and equipment taken in trade), contract rights, leases, accounts, documents, instruments, promissory notes, general intangibles, payment intangibles, supporting obligations, claims and tort recoveries, money and insurance proceeds relating to or arising out of any of the foregoing and all proceeds of such proceeds.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)    ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b.  Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATE DESIGNATION (if applicable) :   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA
47608408 PA-0-38991733-47608408

B-1-23

**FILING OFFICE COPY -- UCC FINANCING STATEMENT (FORM UCC1) (REV 04/20/11)**

**B-1-24**

ADDITIONAL SECURED PARTY'S NAME or ASSIGNOR SECURED PARTY'S NAME: Provide only one name

| OR | ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | **Daimler Trust** | | | |
| | INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| | MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | **13650 Heritage Parkway** | **Ft. Worth** | **TX** | **76177** | **USA** |

**B-1-24**

Filling# : 2018012300556
Date Filed : 01/23/2018
Robert Torres
Acting Secretary of the Commonwealth

B-1-25

# UCC FINANCING STATEMENT AMENDMENT

**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

Lien Solutions-800-331-3282

**B. E-MAIL CONTACT AT FILER (optional)**

uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Lien Solutions P.O. Box 29071
Glendale
CA 91209-9071
United States

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| 2013071608494 | |

**2.** ☐ **TERMINATION:** Effectiveness of the financing Statement identified above is terminated with respect to the security interst(s) of the Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:**(Full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**5.** ☐ **PARTY INFORMATION CHANGE**

Check one of these two boxes:     AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record     ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c     ☐ ADD name: Complete item 7a or 7b, and item 7c     ☐ DELETE name: give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Completed for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's Name)

| 7a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c MAILING ADDRESS | CITY | STATE | POSTAL CODE | Country |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate Collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☒ and provide name of authorizing Debtor

| 9a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 9b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**

PA-0-62398446-54571377

**International Association of Commercial Administrators (IACA)**

B-1-25

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Filing# : 2021120701632
...27...03/2021
Pennsylvania Department of State

B-1-26

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)** 115471 -

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

83703381

PENN

TML211207MC1924

File with: Secretary of CommonWealth, PA

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2013071608494  7/16/2013  SS PA

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☒ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes: AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Daimler Truck Financial Services USA LLC | | | |
| 7b. INDIVIDUAL'S SURNAME | | | |
| | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 14372 Heritage Parkway, Suite 400 | Fort Worth | TX | 76177 | USA |

**8.** ☒ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☒ ASSIGN collateral

Indicate collateral:
All of the Debtor's (i) new and used motor vehicles, trailers and/or chassis, now owned or hereafter acquired, financed by, leased from or purchased through Mercedes-Benz Financial Services USA LLC, whether directly or indirectly, (ii) all accessions, attachments and other parts on any of the foregoing, together with all replacements thereto and substitutions therefore and (iii), and all proceeds and products of any of the foregoing, including, without limitation, all tangible chattel paper, electronic chattel paper, goods (including, without limitations, motor vehicles, chassis, trailers and equipment taken in trade), contract rights, leases, accounts, documents, instruments, promissory notes, general tangibles, payment intangibles, supporting obligations, claims and tort recoveries, money and insurance proceeds relating to or arising out of any of the foregoing and all proceeds of such

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Mercedes-Benz Financial Services USA LLC | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor Name: ARNOLD TRANSPORTATION SERVICES, INC.
83703381        Fleet Credit - 50500

B-1-26

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)**

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

B-1-27

## UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form

2013071608494  7/16/2013  SS PA

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

OR

12a. ORGANIZATION'S NAME

Mercedes-Benz Financial Services USA LLC

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)

SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

OR

13a. ORGANIZATION'S NAME

13b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)

SUFFIX

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

The complete information for Authorizer number 1
————————————————————————
Daimler Trust
13650 Heritage Parkway
Ft. Worth, TX  76177

proceeds.

NOTICE: NOTHING HEREIN ASSIGNS OR IN ANY WAY AFFECTS THE UCC-1 OF DAIMLER TRUST, WHICH SHALL REMAIN IN FULL FORCE AND EFFECT IN FAVOR OF DAIMLER TRUST.

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:

18. MISCELLANEOUS: 83703381-PA-0  115471 - MERCEDES-BENZ FINANC     Daimler Trust           File with: Secretary of Commonwealth, PA      Fleet Credit - 6000      B-1-27

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

Case 24-10632-CTG    Doc 886    Filed 04/24/24    Page 29 of 38



20230123014205

**B-1-28**



**COMMONWEALTH OF PENNSYLVANIA**
*Department of State*
*Bureau of Corporations and Charitable Organizations*
PO Box 8721
Harrisburg, Pennsylvania 17105-8721
**UCC FINANCING STATEMENT
AMENDMENT (UCC 3)**
Fee: $84

**Pennsylvania Department of State**

## -FILED-

Amendment #: 20230123014205
Date Filed: 1/23/2023

| Filer contact information | |
|---|---|
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Phone Number | 800-331-3282 |
| Email Address | uccfilingreturn@wolterskluwer.com |

| Submitter information | |
|---|---|
| Name | LIEN SOLUTIONS |
| Address | P.O. BOX 29071<br>GLENDALE, CA 912099071 |

**Amendment Actions**

☒ Continuation

**Name of SECURED PARTY of record authorizing this amendment**

☐ If this is an amendment authorized by a DEBTOR, check here and select the name of the authorizing debtor.

| | |
|---|---|
| Authorizing Secured Party Name | Mercedes-Benz Financial Services USA LLC |

**Optional Filer Reference Data**
PA-0-90987877-65761055

**B-1-28**

B0517-0104 01/23/2023 1:20 PM Received by Pennsylvania Department of State

Filling# : 2019122400369
Date Filed : 12/24/2019
Pennsylvania Department of State

B-1-29

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER(Optional)

Corporation Service Company-(800) 858-5294

B. E-MAIL CONTACT AT FILER(optional)

filingdept@cscinfo.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Corporation Service Company
COUNTER
Springfield
IL 62703
United States

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide the exact, full Debtor name.Do not omit,modify or abbreviate any part of Debtor's name.

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ARNOLD TRANSPORTATION SERVICES, INC. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 3375 High Prairie Rd | Grand Prairie | TX | 75050 | USA |

2. DEBTOR'S NAME: Provide the exact, full Debtor name. Do not omit, modify, or abbreviate any part of the Debtor's name.

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Corporation Service Company, as Representative | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O. Box 2576  uccsprep@cscinfo.com | Springfield | IL | 62708 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All now existing and future Accounts of the Debtor/Seller that are purchased by Purchaser/Secured Party and. All assets of the Debtor including, but not limited to: all now existing and future Accounts, Chattel Paper, Deposit Accounts, Inventory Equipment, Instruments Investment Property, Documents Letter of Credit Rights Commercial Tort Claims, General Intangibles, Supporting Obligations and any sums maintained by Purchaser that are identified as payable to Seller from the Reserve Account. NOTICE - PURSUANT TO AN AGREEMENT BETWEEN DEBTOR/SELLER AND SECURED PARTY/PURCHASER, DEBTOR HAS AGREED NOT TO SELL ANY OF ITS ACCOUNTS TO ANY OTHER PARTY OR ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER SALE OR ENCUMBRANCE OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHTS.

5. Check only if applicable and check only one box Collateral is ☐ held in a Trust (see UCC1Ad: item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

[174890314]

International Association of Commercial Administrators(IACA)

B-1-29

**Filling# : 2022051201715**
**Date Filed : 05/12/2022**   B-1-30
**Pennsylvania Department of State**

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER(Optional)**

Corporation Service Company-(800) 858-5294

**B. E-MAIL CONTACT AT FILER(optional)**

filingdept@cscinfo.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Corporation Service Company
COUNTER
Springfield
IL 62703
United States

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1. DEBTOR'S NAME:** Provide the exact ,full  Debtor name.Do not omit,modify or abbreviate any part of Debtor's  name.

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ARNOLD TRANSPORTATION SERVICES, INC. | | | |

| OR | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3375 High Prairie Rd | Grand Prairie | TX | 75050 | USA |

**2. DEBTOR'S NAME:** Provide the exact , full  Debtor name. Do not omit , modify, or abbreviate any part of the Debtor's name.

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| | Johal | Navraj | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3375 High Prairie Rd | Grand Prairie | TX | 75050 | USA |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Corporation Service Company, as Representative | | | |

| OR | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| PO Box 2576 uccsprep@cscinfo.com | Springfield | IL | 62708 | USA |

**4. COLLATERAL:**  This financing statement covers the following collateral:

All now existing and future Accounts of the Debtor/Seller that are purchased by Purchaser/Secured Party, and, All assets of the Debtor, including, but not limited to, all now existing and future Accounts, Chattel Paper, Deposit Accounts, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, General Intangibles, Supporting Obligations and any sums maintained by Purchaser that are identified as payable to Seller from the Reserve Account. NOTICE - PURSUANT TO AN AGREEMENT BETWEEN DEBTOR/SELLER AND SECURED PARTY/PURCHASER, DEBTOR HAS AGREED NOT TO SELL ANY OF ITS ACCOUNTS TO ANY OTHER PARTY OR ENCUMBER THE COLLATERAL DESCRIBED HEREIN, THE FURTHER SALE OR ENCUMBRANCE OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHTS.

**5.** Check only if applicable and check only one box:Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |

**7.** ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8.** OPTIONAL FILER REFERENCE DATA:

[231998956]

International Association of Commercial Administrators(IACA)

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/19/12)

B-1-30

**UCC FINANCING STATEMENT ADDENDUM**

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| OR | 9a. ORGANIZATION'S NAME | | |
|----|----|----|----|
| | 9b. INDIVIDUAL'S SURNAME | | |
| | FIRST PERSONAL NAME | | |
| | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (a or b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | a. ORGANIZATION'S NAME | | | | |
|----|----|----|----|----|----|
| OR | DVP Holdings, Corp. | | | | |
| | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | 30 N. Gould St. Suite R | Sheridan | WY | 82801 | USA |

**ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (a or b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | a. ORGANIZATION'S NAME | | | | |
|----|----|----|----|----|----|
| OR | PARKER GLOBAL ENTERPRISES, INC. | | | | |
| | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | 1313 N Market St Ste 5100 | Wilmington | DE | 19801 | USA |

**ADDITIONAL SECURED PARTY'S NAME** or ASSIGNOR SECURED PARTY'S NAME: Provide only one name (a or b)

| | a. ORGANIZATION'S NAME | | | | |
|----|----|----|----|----|----|
| OR | | | | | |
| | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral)

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

2024011000663

**B-1-32**

### COMMONWEALTH OF PENNSYLVANIA
*Department of State*
*Bureau of Corporations and Charitable Organizations*
PO Box 8721
Harrisburg, Pennsylvania 17105-8721
**UCC FINANCING STATEMENT AMENDMENT (UCC 3)**
Fee: $84



**Pennsylvania Department of State**

# -FILED-

Amendment #: 20240110006663
Date Filed: 1/10/2024

| Submitter contact information | |
|---|---|
| Contact Name | CORPORATION SERVICE COMPANY |
| Phone Number | 1-800-858-5294 |
| Email Address | SPRFiling@cscglobal.com |

| Submitter information | |
|---|---|
| Name | CORPORATION SERVICE COMPANY |
| Address | 801 ADLAI STEVENSON DRIVE SPRINGFIELD, IL 62703 |

**Amendment Actions**

☒ Debtor Amendment

Debtor Action                          Add Debtor(s)

**Debtor Add**

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| ARNOLD TRANSPORTATION SERVICES INC | 3375 HIGH PRAIRIE RD GRAND PRAIRIE, TX 75050 |

**Name of SECURED PARTY of record authorizing this amendment**

☐ If this is an amendment authorized by a DEBTOR, check here and select the name of the authorizing debtor.

Authorizing Secured Party Name          Corporation Service Company, as Representative

**Optional Filer Reference Data**
2733 64067

**B-1-32**

This  is Exhibit "C" to the Affidavit of

Daniel Mourning, Sworn April 5, 2024

_____

Commissioner/Notary

4/5/2024

DEANA MARIE MILLER
Notary ID #125450732
My Commission Expires
October 3, 2025

Filling# : 2022051201715
Date Filed : 05/12/2022    B 1-34
Pennsylvania Department of State

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER(Optional)

Corporation Service Company-(800) 858-5294

B. E-MAIL CONTACT AT FILER(optional)

filingdept@cscinfo.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Corporation Service Company
COUNTER
Springfield
IL 62703
United States

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide the exact ,full ,Debtor name.Do not omit,modify or abbreviate any part of Debtor's name.

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ARNOLD TRANSPORTATION SERVICES, INC. | | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3375 High Prairie Rd | Grand Prairie | TX | 75050 | USA |

2. DEBTOR'S NAME: Provide the exact , full ,Debtor name. Do not omit , modify , or abbreviate any part of the Debtor's name.

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| Johal | Navraj | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3375 High Prairie Rd | Grand Prairie | TX | 75050 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Corporation Service Company, as Representative | | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| PO Box 2576 uccsprep@cscinfo.com | Springfield | IL | 62708 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All now existing and future Accounts of the Debtor/Seller that are purchased by Purchaser/Secured Party, and, All assets of the Debtor, including, but not limited to, all now existing and future Accounts, Chattel Paper, Deposit Accounts, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, General Intangibles, Supporting Obligations and any sums maintained by Purchaser that are identified as payable to Seller from the Reserve Account. NOTICE - PURSUANT TO AN AGREEMENT BETWEEN DEBTOR/SELLER AND SECURED PARTY/PURCHASER, DEBTOR HAS AGREED NOT TO SELL ANY OF ITS ACCOUNTS TO ANY OTHER PARTY OR ENCUMBER THE COLLATERAL DESCRIBED HEREIN, THE FURTHER SALE OR ENCUMBRANCE OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHTS.

5. Check only if applicable and check only one box:Collateral is [ ] held in a Trust (see UCC1Ad, item 17 and Instructions) [ ] being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| [ ] Public-Finance Transaction   [ ] Manufactured-Home Transaction   [ ] A Debtor is a Transmitting Utility | [ ] Agricultural Lien   [ ] Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): [ ] Lessee/Lessor  [ ] Consignee/Consignor  [ ] Seller/Buyer  [ ] Bailee/Bailor  [ ] Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

[231998956]

**FILING OFFICE COPY —** UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/19/12)

B-1-34

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

**OR**

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (a or b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| DVP Holdings, Corp. | | | | | |
| **OR** b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 30 N. Gould St. Suite R | Sheridan | WY | 82801 | | USA |

---

**ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (a or b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| PARKER GLOBAL ENTERPRISES, INC. | | | | | |
| **OR** b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 1313 N Market St Ste 5100 | Wilmington | DE | 19801 | | USA |

---

**ADDITIONAL SECURED PARTY'S NAME or ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (a or b)

| a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| **OR** b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

---

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral)

---

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:



2024011006663

**B-1-36**

B0646-3405 01/10/2024 2:14 PM Received by Pennsylvania Department of State



**COMMONWEALTH OF PENNSYLVANIA**
*Department of State*
*Bureau of Corporations and Charitable Organizations*
PO Box 8721
Harrisburg, Pennsylvania 17105-8721
**UCC FINANCING STATEMENT**
**AMENDMENT (UCC 3)**
Fee: $84

**Pennsylvania Department of State**

**-FILED-**

Amendment #: 20240110006663
Date Filed: 1/10/2024

| Submitter contact information | |
|---|---|
| Contact Name | CORPORATION SERVICE COMPANY |
| Phone Number | 1-800-858-5294 |
| Email Address | SPRFiling@cscglobal.com |

| Submitter information | |
|---|---|
| Name | CORPORATION SERVICE COMPANY |
| Address | 801 ADLAI STEVENSON DRIVE<br>SPRINGFIELD, IL 62703 |

**Amendment Actions**

☒  Debtor Amendment

Debtor Action                          Add Debtor(s)

**Debtor Add**

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| ARNOLD TRANSPORTATION SERVICES INC | 3375 HIGH PRAIRIE RD<br>GRAND PRAIRIE, TX 75050 |

**Name of SECURED PARTY of record authorizing this amendment**

☐  If this is an amendment authorized by a DEBTOR, check here and select the name of the authorizing debtor.

Authorizing Secured Party Name              Corporation Service Company, as Representative

**Optional Filer Reference Data**
2733 64067

**B-1-36**

B-1-37

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c.C-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF PRIDE GROUP HOLDINGS INC. and those Applicants listed on Schedule "A" hereto (each, an Applicant, and collectively, the Applicants).

Court File No. CV-24-00717340-00CL

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

PROCEEDING COMMENCED AT
TORONTO

**AFFIDAVIT OF DANNY MOURNING**
**SWORN APRIL 5, 2024**

**DLA PIPER (CANADA)** LLP
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 6000
P.O. Box 367
Toronto ON  M5X 1E2

**Edmond Lamek** (LSUC#333338U)

Tel:  416-365-3444
edmond.lamek@dlapiper.com

Lawyers for Triumph Business Capital

B-1-37