## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 15 |
| Pride Group Holdings Inc., *et al.*[1] | Case No. 24-10632 (CTG) |
| Debtors in Foreign Proceedings. | Jointly Administered |

### FOREIGN REPRESENTATIVE'S REPLY
### IN SUPPORT OF AMENDED VERIFIED PETITION FOR
### (I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS,
### (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND
### (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE

Randall Benson, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors") in the Canadian proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"), hereby submits this reply (the "Reply") in further support of the *Amended Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 121] (the "Amended Verified Petition") and in response to the *Regions Bank's Limited Objection to Amended Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of*

---

[1]    The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

*Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I.

128] (the "Limited Objection")[2] filed by Regions Bank ("Regions").

**PRELIMINARY STATEMENT**

1.      Regions does not object to recognition of the CCAA Proceedings as "foreign main

proceedings" under Chapter 15 of the Bankruptcy Code.  *See* Limited Objection, ¶ 1.  Much of

Regions' Limited Objection is focused on the perceived infirmities of the Governance Proposal,[3]

which, as of the date hereof, is just that—a proposal.  The Governance Proposal is being negotiated

in Canada and will not be heard by the Canadian Court until May 15, 2024 at the earliest.  Regions

has been a party to, and will continue to be a part of, those negotiations in the CCAA Proceedings,

and it remains to be seen whether those negotiations will result in a consensual revised governance

protocol.  Because the Governance Proposal remains subject to ongoing negotiations and the

Canadian Court has not approved any relief with respect to such revised governance protocols, the

Foreign Representative submits that Regions' objection is not ripe for adjudication in this Court.

2.      Relatedly, Regions also objects on the basis that the Foreign Representative

inappropriately seeks prospective enforcement of Canadian Court orders that have not yet been

entered or approved by the Canadian Court.  To be clear, the Foreign Representative does not seek

enforcement of prospective orders that have not yet been granted by the Canadian Court.  To

alleviate those concerns, the Foreign Representative has proposed an amended Recognition Order,

attached hereto as **Exhibit A** (the "Amended Recognition Order"), which addresses these two

arguments raised in the Limited Objection, as well as other certain other informal objections raised

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Amended Verified
Petition or the Limited Objection.

[3]    As used herein, "Governance Proposal" refers to the draft revised Governance Protocol attached to the Second
Monitor Report, which has not yet been approved by the Canadian Court and continues to be negotiated among
the various stakeholders.

by stakeholders following the filing of the Amended Verified Petition. A redline of the Amended Recognition Order marked against the version that was attached to the Amended Verified Petition is attached hereto as **Exhibit B**.[4]

3.      The remainder of the Limited Objection is simply a regurgitation of the objection Regions previously raised at the provisional relief hearings that this Court cannot enforce an order of the Canadian Court that provides relief to non-Debtors in these Chapter 15 Cases. That objection was overruled by this Court once and should again be overruled because it is inconsistent with well-established principles of international comity, the breadth of relief available in Chapter 15 cases to enforce orders of a foreign insolvency court under sections 1521 and 1507 of the Bankruptcy Code, and the purpose of Chapter 15.

4.      Nevertheless, in an effort to achieve a consensual resolution and in response to the concerns raised by Regions and other stakeholders, the Foreign Representative has agreed to make a number of revisions to the Amended Recognition Order, including: (i) providing that any relief granted to non-Debtor entities shall be based solely on sections 1519 and 1521 of the Bankruptcy Code and principles of international comity (and not any other substantive relief available under the Bankruptcy Code) (*see* Amended Recognition Order at ¶ 20); (ii) the Pride Entities shall not make any intercompany advances to TPL (the entity that Regions faces) that result in an Intercompany Advances Charge (*see* Amended Recognition Order at ¶ 15); and (iii) in accordance with the provisions of the A&R Initial Order, requiring the consent of secured creditors before selling Securitization Party Assets (as defined in the A&R Initial Order) or any other vehicles, trailers, or other equipment located within the territorial jurisdiction of the United States (*see*

---

[4]     Contemporaneously herewith, the Foreign Representative has filed the *Notice of Filing of Second Amended Recognition Order*, which attaches the Amended Recognition Order and redline attached hereto as **Exhibit A** and **Exhibit B**, respectively.

Amended Recognition Order at ¶ 16).  In light of the circumstances, the Foreign Representative submits that these concessions should give sufficient comfort to Regions and other stakeholders that their rights are sufficiently protected.

## **REPLY**

5.      Regions incorrectly states that "no provision of the Bankruptcy Code on its face permits extending the relief sought in the Amended Petition to non-Debtor parties . . ."  Limited Objection at ¶ 10.  But that ignores the express provisions of sections 1521 and 1507 of the Bankruptcy Code and well-established principles of international comity, which provide ample authority for this Court to enforce the Canadian Orders.

### I.    Enforcement of the Canadian Orders is Warranted Under Section 1521.

6.      Section 1521(a) of the Bankruptcy Code authorizes the Court to grant "any appropriate relief" at the request of the foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors . . ." 11 U.S.C. 1521(a).  Section 1521(a)(6) of the Bankruptcy Code provides that the Court may extend relief granted under section 1519(a) upon recognition of a foreign proceeding.  *See* 11 U.S.C. § 1521(a)(6).  This Court previously granted relief under section 1519(a) of the Bankruptcy Code and principles of comity with respect to non-Debtor affiliates by the First Provisional Relief Order and Second Provisional Relief Order.  As set forth in the Amended Verified Petition, that relief can and should be extended by the Court upon recognition pursuant to section 1521 of the Bankruptcy Code.  Enforcement of the Canadian Orders is necessary to ensure that the Pride Group has a stable platform on which to negotiate the terms of a restructuring with its many stakeholders without disruption or adverse actions being brought against the Pride Group or its assets in the United States.  Without assistance from this Court, that goal would be fundamentally undermined to the detriment of all parties in interest.  The interests of creditors and other stakeholders are aligned

with the Foreign Representative's interests in pursuing an orderly restructuring process in the CCAA Proceedings under the supervision of the Canadian Court for the benefit of all parties in interest. Accordingly, the Court should enforce the Canadian Orders under section 1521(a) of the Bankruptcy Code.

## II.    Enforcement of the Canadian Orders is Also Authorized Under Section 1507 of the Bankruptcy Code.

7.      Section 1507(a) of the Bankruptcy Code further provides broad discretion for the Court to provide "additional assistance" to the foreign representative. *See* 11 U.S.C. § 1507(a). Pursuant to section 1507, the Court may grant such additional assistance to a foreign representative if it is "*consistent with principles of comity*" and satisfies the fairness considerations set forth in section 1507(b). 11 U.S.C. § 1507(b) (emphasis added); *In re Avanti Commc'ns Grp.*, 582 B.R. 603, 616 (Bankr. S.D.N.Y. 2018). Under section 1507(b) of the Bankruptcy Code, in considering a request for additional assistance consistent with principles of comity, the Court also considers whether the requested relief will ensure:

> (1)    just treatment of all holders of claims against or interests in the debtor's property;
>
> (2)    protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>
> (3)    prevention of preferential or fraudulent dispositions of property of the debtor;
>
> (4)    distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and
>
> (5)    if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 1507(b).

8.      Here, all of these factors are satisfied. *First*, the Canadian Orders adequately provide for the just treatment of all creditors. This factor "is satisfied upon a showing that the applicable law provides for a comprehensive procedure for the orderly and equitable distribution of [the debtor]'s assets among all of its creditors." *In re Bd. of Dirs. of Telecom Arg.*, 528 F.3d 162, 170 (2d Cir. 2008) (*quoting* 2 COLLIER ON BANKRUPTCY ¶ 304.08 (15th ed. 2007)). Enforcement of the Canadian Orders ensures the just treatment of all holders of claims against and interests in the Pride Group. Creditors were given notice of the relief requested in the Canadian Orders and many stakeholders—including Regions—actively participated in the extensive negotiations that resulted in the relief granted by the Canadian Court. Further, any party may seek relief from the Canadian Orders by motion to the Canadian Court. *Second*, the Canadian Orders do not unfairly prejudice U.S.-based creditors because they do not require U.S.-based creditors to undertake any procedures (including for filing claims or seeking relief from the Canadian Court) different than similarly situated non-U.S. creditors, nor do the Canadian Order provide for different treatment of claims or interests held by non-U.S. creditors and U.S.-based creditors. *Third*, the Canadian Orders do not provide preferential treatment to any creditors or authorize the preferential disposition of property. *Fourth*, the Canadian Orders are generally consistent with United States bankruptcy law. They provide for a stay of proceedings against the Pride Group, which was provisionally enforced by this Court, as well as protections for the Pride Group's lenders under its debtor-in-possession facility that are largely consistent with those available under the Bankruptcy Code (and are authorized under Canadian law).[5]

## III.    The Canadian Orders are Entitled to Enforcement as a Matter of Comity.

---

[5]    *Fifth*, the requirement under section 1507(b)(5) of the Bankruptcy Code that the requested relief include the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns is inapplicable here.

9.    Chapter 15 of the Bankruptcy Code empowers "courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objectives of the chapter in accordance with comity." *In re Rede Energia S.A.*, 515 B.R. 69, 91 (Bankr. S.D.N.Y. 2014) (*citing In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333-34 (S.D.N.Y. 2008)); *In re SPhinX, Ltd.*, 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006) ("[C]hapter 15 maintains—and in some respects enhances—the 'maximum flexibility' . . . that section 304 provided bankruptcy courts in handling ancillary cases in light of principles of international comity and respect for the laws and judgments of other nations.") (internal citations omitted).  Courts are "guided by the principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief." *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 696 (Bankr. S.D.N.Y. 2010) (*citing In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009)); *see also CT Inv. Mgmt v. Cozumel Caribe (In re Cozumel Caribe S.A. de C.V.)*, 482 B.R. 96, 113 (Bankr. S.D.N.Y. 2012) (noting that comity is a "central tenet" in chapter 15 proceedings); 11 U.S.C. § 1501 (stating that the purpose of chapter 15 is to provide mechanisms for cooperation and comity between courts dealing with cross-border insolvency cases).  As one court has explained:

> While recognition of the foreign proceeding turns on the objective criteria under §1517, relief [post-recognition] is largely discretionary and turns on subjective factors that embody principles of comity.  Once a case is recognized as a foreign main proceeding, chapter 15 specifically contemplates that the court will exercise its discretion consistent with principles of comity.

*In re Sino-Forest Corp.*, 501 B.R. 655, 664 (Bankr. S.D.N.Y 2013) (internal citations and quotations omitted).

10.    In determining whether to enforce a foreign judgment, courts also consider general comity principles.  *See In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. at 698 (*citing Hilton v.*

*Guyot*, 159 U.S. 113, 166 (1895)).  In *Hilton v. Guyot*, the Supreme Court held that if the foreign court provides "a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting," the foreign judgment should be enforced and not "tried afresh."  *Hilton*, 159 U.S. at 202-03.

11.    "Federal courts generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy."  *In re Atlas Shipping A/S*, 404 B.R. 726, 733 (Bankr. S.D.N.Y. 2009) (citations omitted); *see also JP Morgan Chase Bank v. Altos Hornos de Mexico S.A.*, 412 F.3d 418, 424 (2d Cir. 2005) ("[D]eference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and . . . do not contravene the laws or public policy of the United States."); *Universal Cas. & Sur. Co. v. Gee (In re Gee)*, 53 B.R. 891, 902, 904 (Bankr. S.D.N.Y. 1985) (noting that if the bankruptcy court is satisfied with the procedural fairness of the foreign proceeding, it "should not sit as an appellate court over the foreign proceedings.").

12.    Extending comity to foreign insolvency court orders is particularly significant given the importance of "assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization will fail."  *Atlas Shipping*, 404 B.R. at 737 (internal citation omitted); *see also Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly and systematic manner, rather than in a haphazard, erratic or piecemeal fashion").

13.    "[P]rinciples of enforcement of foreign judgments and comity in chapter 15 cases strongly counsel approval of enforcement in the United States of [provisions in foreign court orders], even if those provisions could not be entered in a plenary chapter 11 case." *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. at 696. The "relief granted in [a] foreign proceeding and the relief available in a U.S. proceeding need not be identical[,]" and U.S. bankruptcy courts are "not required to make an independent determination about the propriety of individual acts of a foreign court." *Id*. at 697 (*citing In re Bd. of Dirs. of Multicanal S.A.*, 307 B.R. 384, 391 (Bankr. S.D.N.Y. 2004)); *In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 238 B.R. 25, 56–61 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002) (extending comity to order confirming foreign plan and stating "[a]s long as the manner in which the scheme acquired statutory effect comports with our notions of procedural fairness, comity should be extended to it.") (citations omitted). Rather, the key determination required to be made by the U.S. bankruptcy court is whether the procedures in the foreign jurisdiction "meet our fundamental standards of fairness." *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. at 697-98 (holding that a Canadian order approving a release and injunction was enforceable in chapter 15 under principles of comity because Canadian courts afford creditors a full and fair opportunity to be heard in a manner consistent with standards of U.S. due process).

14.    As noted in the Amended Verified Petition, the CCAA Proceedings are conducted in an open and fair manner under the supervision of the Canadian Court pursuant to a well-established restructuring regime. All parties in interest—including Regions—had an opportunity to object to the relief granted by the Canadian Court in the Protocols Order and the A&R Initial Order. *See* Nicholson Declaration at ¶ 20. All parties, including Regions, also have the ability to seek relief from the Canadian Court to amend or vary the terms of the A&R Initial Order. *See* A&R Initial Order at ¶ 77. And parties will also have the ability to assert claims in the CCAA Proceedings

which will be adjudicated, if necessary, under a sophisticated insolvency regime before an impartial court, in accordance with fundamental standards of due process. Therefore, enforcement of the Canadian Orders, as they have been entered by the Canadian Court, is in line with the universalism approach embraced by chapter 15, where the chapter 15 court in the United States acts as an "adjunct or arm of a foreign bankruptcy court where the main proceedings are conducted." *In re ABC Leaning Centers, Ltd*., 728 F.3d 301, 306 (3d Cir. 2013).

15.    Indeed, courts in this district and others have enforced Canadian court orders that grant relief with respect to non-debtors in CCAA proceedings. *See, e.g.*, *In re Black Press Ltd.,* Case No. 24-10044 (MFW) (Bankr. D. Del. Feb 14, 2024) (granting stay relief under sections 362 and 364 with respect to the property of non-debtor parties); *In re Nexii Building Solutions Inc*., Case No. 24-10026 (JKS) (Bankr. D. Del. Feb. 9, 2024) (enforcing Canadian stay pursuant to section 362 with respect to non-debtor parties and their property in the United States); *In re Mood Media Corporation*, Case No. 17-11413 (MEW) (Bankr. D. Del. June 28, 2017) (granting relief with respect to non-debtor, non-applicant parties barring contract counterparties from invoking *ipso facto* clauses to terminate contracts).

16.    The Foreign Representative acknowledges that any relief granted in chapter 15 is subject to the limitations of section 1522 of the Bankruptcy Code, which provides that the Court may grant discretionary relief in chapter 15 "only if the interests of the creditors and other interested entities . . . are sufficiently protected." Courts in this district have held that "the analysis under section 1522 is one of balancing the respective interests based on the relative harms and benefits in light of the circumstances presented." *In re Better Place, Inc*., No. 13-11814, 2018 Bankr. LEXIS 322, *17 (Bankr. D. Del. Feb 5. 2018).

17.    As set forth in the Amended Verified Petition, the balancing of interests weighs in favor of the Debtors.  Absent enforcement of the Canadian Orders in the United States (including with respect to non-Debtor entities), the Debtors' restructuring efforts could be thwarted by the actions of disgruntled creditors that pursue piecemeal action against the Pride Group's property in the United States to the detriment of the Pride Group and all other stakeholders, a result that is inconsistent with one of the central purposes of Chapter 15 – to provide for the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor."  11 U.S.C. 1501(a)(3).[6]  It is also a condition precedent to further draws on the DIP Facility that the Court enter the recognition order and enforce the Canadian Orders on a final basis.  *See* Amended Benson Declaration at ¶ 74.  On the other hand, the relative harm, if any, to creditors is minimal.  The CCAA Proceedings provide a well-established restructuring regime in which the Debtors and their affiliates can pursue a restructuring for the benefit of all stakeholders, and Regions has had, and continues to have, a full and fair opportunity to participate in those proceedings.  Accordingly, Regions' rights are sufficiently protected.[7]

*[Remainder of Page Intentionally Left Blank]*

---

[6]    The relief requested herein is also consistent with section 1525(a) of the Bankruptcy Code, which provides that "[c]onsistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee."  11 U.S.C. § 1525(a).

[7]    In addition, as noted above, most of Regions' grievances are with provisions of the Governance Proposal, which are still being negotiated among the parties.  The Debtors and their professionals are working tirelessly to reach an agreement on the Governance Proposal that all stakeholders will support.  Until those negotiations conclude and the Canadian Court grants relief with respect to the Governance Proposal, Regions' objection is premature.

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that the Court overrule the

Limited Objection of Regions and enter the Amended Recognition Order, attached hereto as

**Exhibit A**.

Dated: April 30, 2024
       Wilmington, Delaware

                                        **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

                                        */s/ Derek C. Abbott*
                                        Derek C. Abbott (No. 3376)
                                        Andrew R. Remming (No. 5120)
                                        Austin T. Park (No. 7247)
                                        1201 North Market Street
                                        P.O. Box 1347
                                        Wilmington, DE 19899-1347
                                        Telephone: (302) 658-9200
                                        Facsimile: (302) 658-3989
                                        dabbott@morrisnichols.com
                                        aremming@morrisnichols.com
                                        apark@morrisnichols.com

                                        -and-

                                        **LINKLATERS LLP**
                                        Penelope J. Jensen
                                        Christopher J. Hunker
                                        Clark L. Xue
                                        1290 Avenue of the Americas
                                        New York, NY 10104
                                        Telephone: (212) 903-9000
                                        Facsimile: (212) 903-9100
                                        penelope.jensen@linklaters.com
                                        christopher.hunker@linklaters.com
                                        clark.xue@linklaters.com

                                        *Attorneys for the Foreign Representative*