# EXHIBIT A

**Third Amended Recognition Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | Chapter 15 |
| Pride Group Holdings Inc., *et al.*[1] | Case No. 24-10632 (CTG) |
| Debtors in Foreign Proceedings. | Jointly Administered |

**ORDER GRANTING AMENDED VERIFIED PETITION**
**FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS,**
**(II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III)**
**RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Upon consideration of the *Amended Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Amended Verified Petition")[2] and the *Chapter 15 Petition for Recognition of a Foreign Proceeding* for each of the Debtors (together with the Amended Verified Petition, the "Petitions"), filed by Randall Benson, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors,[3]" and together with their non-Debtor affiliates, the "Pride Group")[4] in the Canadian

---

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Amended Verified Petition.

[3] As used herein, the term "Debtors" does not include: 1000089137 Ontario Inc., DVP Holdings, Corp., Parker Global Enterprises, Inc., Parker Transport Co., and Arnold Transportation Services, Inc. (collectively, the "Arnold Entities").

[4] As used herein, "Pride Group" includes: (i) each of the Debtors; (ii) Pride Truck Sales L.P. ("PTS"), TPine Leasing Capital L.P. ("TPL"), and Sweet Home Hospitality L.P. ((i) and (ii) together, the "Pride Entities"); and (iii) Block 6 Holding Inc., 2500819 Ontario Inc., Pergola Holdings, Corp., and Pride Global Insurance Company Ltd. (the "Additional Stay Parties"). "Pride Group" does not include the following affiliated special-purpose securitization vehicles that do not engage in any business or activity other than acting as purchasers of securitized assets or issuers of asset-backed obligations under various securitization agreements: TPine USA Funding I LLC, TPine USA Funding II LLC, TPine USA Funding III LLC, TPine USA Funding IV LLC, TPine Canada Securitization L.P, and TPine Canada GP L.P. (collectively, the "Securitization SPVs"). The Securitization SPVs

proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act, pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"), for entry of an order (this "Order") pursuant to sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520, 1521 and 1522 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"): (i) granting recognition of the CCAA Proceedings as "foreign main proceedings," pursuant to chapter 15 of the Bankruptcy Code; (ii) granting recognition of the Foreign Representative as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code; (iii) recognizing, granting comity to, and giving full force and effect in the United States to the CCAA Proceedings and the Canadian Orders; (iv) enjoining parties from taking any action that is otherwise inconsistent with the CCAA Order; and (v) granting such other relief as the Court deems just and proper, all as more fully set forth in the Amended Verified Petition; and upon this Court's review and consideration of the Amended Benson Declaration, Nicholson Declaration, and all other pleadings filed by or on behalf of the Foreign Representative in support of the Petitions; and this Court having held a hearing to consider the relief requested in the Petitions (the "Recognition Hearing"); and due and proper notice of the Petitions and all pleadings in support of the Petitions having been provided and no other or further notice being necessary or required; and no objections or other responses having been filed that have not been overruled, withdrawn, or otherwise resolved; and all interested parties having had an opportunity to be heard at the Recognition Hearing; and after due deliberation and sufficient cause appearing therefor, **THIS COURT HEREBY FINDS AND DETERMINES THAT:**

---

are not applicants in the CCAA Proceedings, are not Debtors in these Chapter 15 Cases, and no relief is sought with respect to these entities. Further, as noted in the Amended Verified Petition, the Foreign Representative is also not seeking relief with respect to the Arnold Entities. As a result, the terms "Pride Group" and "Pride Entities" also do not include the Arnold Entities.

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.

C.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

D.      Venue is proper in this district pursuant to 28 U.S.C. § 1410.

E.      The Debtors have their domicile, principal place of business, and/or property in the United States, and the Debtors are each eligible to be a debtor in a chapter 15 case pursuant to, as applicable, sections 109 and 1501 of the Bankruptcy Code.

F.      These cases were properly commenced pursuant to sections 1504, 1509 and 1515 of the Bankruptcy Code.

G.      The CCAA Proceedings are "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code.

H.      The CCAA Proceedings are pending in Canada, which is the country in which each of the Debtors have its center of main interests and, as such, the CCAA Proceedings are "foreign main proceedings" within the meaning of sections 1502(4) and 1517(b)(1) of the Bankruptcy Code and are entitled to recognition as foreign main proceedings in respect of each of the Debtors.

I.      The Foreign Representative is a "person," as such term is defined in section 101(41) of the Bankruptcy Code, and has been duly appointed by the Canadian Court as authorized to act

as the "foreign representative" with respect to the CCAA Proceedings within the meaning of section 101(24) of the Bankruptcy Code.

J.      The Petitions satisfy all of the requirements set forth in section 1515 of the Bankruptcy Code and Bankruptcy Rules 1007(a)(4) and 2002(q).

K.      The CCAA Proceedings are entitled to recognition by the Court pursuant to section 1517(a) of the Bankruptcy Code.

L.      The Debtors and the Foreign Representative are entitled to all of the relief set forth in sections 1507, 1519, 1520 and 1521 of the Bankruptcy Code.

M.      Appropriate notice of the filing of, and the Recognition Hearing on, the Petitions and the pleadings in support of the Petitions was given, which notice is deemed adequate for all purposes, and no other or further notice need be given.

N.      The relief granted hereby is necessary and appropriate, in the interests of the public and of international comity, not inconsistent with the public policy of the United States, warranted pursuant to sections 105(a), 362, 363, 364, 365, 1507(a), 1509(b)(2)-(3), 1520, 1521, 1522 and 1525 of the Bankruptcy Code, and will not cause hardship to creditors of the Debtors or other parties in interest that is not outweighed by the benefits of granting that relief.

O.      The Foreign Representative has demonstrated that the borrowings under the DIP Facility as authorized by the A&R Initial Order and as approved on a provisional basis pursuant to the Second Provisional Relief Order with respect to the Pride Entities' assets, undertakings, and properties located within the territorial jurisdiction of the United States are necessary to preserve the value of the Debtors' business.

P.      Each of (i) the agent under the Syndicated Facility (the "Prepetition Syndicated Agent"), for itself and for the benefit of the lenders under the Syndicated Facility (the "Prepetition

Syndicated Lenders"), (ii) Mitsubishi HC Capital America, Inc., formerly known as Hitachi Capital America Corp. and successor by merger to ENGS Commercial Finance Co. ("MHCA U.S."), and (iii) certain other secured creditors who hold valid, enforceable, properly perfected secured loans as of the date of the Initial Order ((i) to (iii) collectively, the "Adequate Protection Parties"), are entitled to adequate protection of their interests in the collateral, including the proceeds thereof, securing their indebtedness pursuant to sections 362(d), 363 and 364(d) of the Bankruptcy Code (the "Adequate Protection") arising from Diminution in Value as a result of (x) the priming of their existing and validly perfected liens and security interests as a result of the grant of the Charges (the "Priming"); (y) the imposition or enforcement of the stay in these Chapter 15 Cases or the CCAA Proceedings; and (z) the use, sale or lease, or proposed use, sale or lease, of their interests in such collateral securing their indebtedness by the Pride Group.  Accordingly, the Debtors have agreed in their reasonable business judgment to provide the Adequate Protection as set forth in this Order, which terms and conditions are fair and reasonable.

Q.    The relief granted hereby is necessary to effectuate the purposes and objectives of chapter 15 and to protect the Debtors and the interests of their creditors and other parties in interest.

R.    Each of the injunctions contained in this Order (i) is within the Court's jurisdiction, (ii) is essential to the success of the CCAA Proceedings, (iii) confers material benefits on, and is in the best interests of, the Debtors, their creditors, and their parties in interest, and other stakeholders, (iv) is critical and integral to the overall objectives of the restructuring, and (v) meets the legal and factual requirements for issuing an injunction.

S.    The relief granted hereby is necessary to effectuate the purposes and objectives of chapter 15 and to protect the Debtors and the interests of their creditors and other parties in interest (and the Debtors' assets located within the United States), is in the interest of the public and

international comity, consistent with the public policy of the United States, and will not cause any hardship to any party in interest that is not outweighed by the benefits of the relief granted. Absent the requested relief, the efforts of the Debtors, the Canadian Court and the Foreign Representative in conducting the CCAA Proceedings may be frustrated by the actions of individual creditors, a result contrary to the purposes of chapter 15 of the Bankruptcy Code.

T.      All creditors and other parties in interest, including the Debtors, are sufficiently protected by the grant of relief ordered hereby in accordance with section 1522(a) of the Bankruptcy Code.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Petitions are granted as set forth herein, and any objections thereto are overruled with prejudice.

2.      The CCAA Proceedings are granted recognition with respect to each of the Debtors (other than the Arnold Entities) as foreign main proceedings (as defined in section 1502(4) of the Bankruptcy Code) pursuant to sections 1517(a) and (b)(1) of the Bankruptcy Code.

3.      The Foreign Representative is a duly appointed and authorized "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the CCAA Proceedings, is authorized to act on behalf of the Debtors in these chapter 15 cases and is established as the exclusive representative of the Debtors in the United States.

4.      The Foreign Representative is entrusted with the administration of any and all of the Debtors' assets within the territorial jurisdiction of the United States, including prosecution of any causes of action belonging to the Debtors.

5.      The Debtors and the Foreign Representative are granted all of the relief set forth in section 1520 of the Bankruptcy Code including, without limitation, the application of the protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to the

Debtors and their property that is now within or in the future is located within the territorial jurisdiction of the United States.

6. Pursuant to section 1521(a)(1)-(3) of the Bankruptcy Code, all persons and entities, other than the Foreign Representative and their representatives and agents, are hereby enjoined (to the extent they have not been stayed under section 1520(a), in each case from:

a. executing against the assets of the Pride Group or the Personal Guarantors;

b. commencing or continuing, including the issuance or employment of process, any judicial, quasi-judicial, administrative, regulatory, arbitral, or other action or proceeding, or to recover a claim, including, without limitation, any and all unpaid judgments, settlements or otherwise against the Pride Group or the Personal Guarantors, which in either case is in any way related to, or would interfere with, the administration of the Debtors' estates in the CCAA Proceedings;

c. taking or continuing any act to create, perfect or enforce a lien or other security interest, setoff or other claim against the Pride Group, the Personal Guarantors or any of their property or proceeds thereof;

d. transferring, relinquishing or disposing of any property of the Pride Group or the Personal Guarantors to any person or entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Foreign Representative;

e. commencing or continuing an individual action or proceeding concerning the assets, rights, obligations or liabilities of the Pride Group or the Personal Guarantors; and

f. declaring or considering the filing of the CCAA Proceedings or these chapter 15 cases a default or event of default under any contract or lease of the kind described in sections 365(e)(1) of the Bankruptcy Code.

provided, in each case, that such injunctions shall be effective solely within the territorial jurisdiction of the United States; provided further that nothing herein shall prevent any entity from: (i) filing any claims against the Debtors in the CCAA Proceedings; (ii) exercising rights or remedies or taking actions against the Pride Group, the Personal Guarantors or their property located within the territorial jurisdiction of the United States solely to the extent permitted under the Canadian Orders as given effect by this Court; or (iii) seeking relief from the Canadian Court

in the CCAA Proceedings or this Court in these Chapter 15 Cases, as applicable, for relief from the injunctions contained in the Order.

7.      Pursuant to section 1521(a)(6) of the Bankruptcy Code, all prior relief granted by this Court pursuant to the First Provisional Relief Order and Second Provisional Relief Order shall be extended and shall remain in full force and effect on a final basis; *provided*, *however*, *that* notwithstanding the foregoing or any stay provided in this Order, the First Provisional Relief Order or the Second Provisional Relief Order, the DIP Agent may, in its discretion, file or record this Order, the Second Provisional Relief Order, the A&R Initial Order, or any other order of this Court or any financing statement, mortgage, or other instrument or document in any office or jurisdiction to evidence any liens securing the DIP Facility.

8.      The Canadian Orders are hereby given full force and effect on a final basis with respect to (as applicable) the Pride Group, the Personal Guarantors, and their property that now or in the future is located within the territorial jurisdiction of the United States, including, without limitation, the provisions of the Canadian Orders (i) staying the commencement or continuation of any actions against the Pride Group, the Personal Guarantors, and their property located within the territorial jurisdiction of the United States through and including June 30, 2024; (ii) authorizing and empowering the Pride Entities to obtain credit under the DIP Facility pursuant to the terms of the DIP Term Sheet and DIP Documentation (as defined in the Second Provisional Relief Order); (iii) granting the Charges over the assets, undertakings, and properties of the Pride Entities located within the territorial jurisdiction of the United States to the extent and in the priority as set forth in the A&R Initial Order; (iv) authorizing the Pride Entities to disclaim certain leases and other contractual agreements; and (v) approving the Governance Protocol (as approved pursuant to the Protocols Order on April 5, 2024), Real Estate Monetization Plan, and Intercompany and

Unsecured Claims Preservation Protocol, in each case unless otherwise ordered by this Court; *provided*, that this Order shall only enforce the Canadian Orders as they have been entered by the Canadian Court, and shall not grant prospective enforcement of or relief with respect to any orders that have not been entered by the Canadian Court as of the date of this Order; *provided*, *further*, that the Foreign Representative reserves the right to seek enforcement by this Court of any future orders entered by the Canadian Court that amend, supersede, or otherwise replace the Canadian Orders in effect on the date of this Order. The rights of any party in interest to object to enforcement of future Canadian Court orders, and the rights of any party in interest to respond to such objections, are expressly reserved.

9.      The Adequate Protection Parties are entitled to receive Adequate Protection of their interests in their applicable collateral under their respective credit or other agreements (the "Adequate Protection Party Agreements") on a dollar-for-dollar basis from any Diminution in Value resulting from the Priming, the imposition or enforcement of the stay in these Chapter 15 Cases or the CCAA proceedings, or the use, sale or lease, or proposed use, sale or lease, of their interests in such collateral by the Pride Group. Accordingly, the Adequate Protection Parties are hereby granted valid, binding, enforceable and perfected liens as of the date of the Initial Order, without the necessity of execution by the Pride Group of, or the filing of, any mortgages, security agreements, pledge agreements, financing statements or other agreements, in all post-petition assets of the applicable member or members of the Pride Group of the same types as the applicable collateral under their respective Adequate Protection Party Agreements located within the territorial jurisdiction of the United States to secure an amount of their indebtedness equal to any Diminution in Value, which liens shall attach to such assets of the applicable member or members of the Pride Group under their respective Adequate Protection Party Agreements located within the territorial jurisdiction of the United States to

the same extent and priority on such applicable collateral as existed immediately prior to the date of the Initial Order, subject to the priority of the Charges set forth in the A&R Initial Order.

10.     No action, inaction, or acquiescence by the DIP Agent or the DIP Lenders, or the Prepetition Syndicated Agent or the Prepetition Syndicated Lenders, including, without limitation, funding the Pride Entities' ongoing operations under the Second Provisional Relief Order or this Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Agent or the DIP Lenders or the Prepetition Syndicated Agent or the Prepetition Syndicated Lenders to a charge against the collateral pursuant to sections 506(c), 552(b), or 105(a) of the Bankruptcy Code.  None of the DIP Agent,  the DIP Lenders, the Prepetition Syndicated Agent or the Prepetition Syndicated Lenders shall be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to their collateral.

11.     No person or entity shall be entitled, directly or indirectly, whether by operation of sections 506(c), 552(b), or 105 of the Bankruptcy Code or otherwise, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of any collateral or property by the DIP Agent, the DIP Lenders, the Prepetition Syndicated Agent or the Prepetition Syndicated Lenders after a breach under the DIP Facility, the DIP Documentation, the A&R Initial Order, or the Second Provisional Relief Order or this Order, and in no event shall the "equities of the case" exception of section 552(b) of the Bankruptcy Code apply to the secured claims of the DIP Agent, the DIP Lenders, the Prepetition Syndicated Agent or the Prepetition Syndicated Lenders.  No action, inaction, or acquiescence by MHCA U.S. shall be deemed to be or shall be considered as evidence of any alleged consent by MHCA U.S. to a charge against its collateral pursuant to sections 506(c), 552(b), or 105 of the Bankruptcy Code.

12.     Nothing in this Order shall authorize any secured party with a valid, perfected, and enforceable security interest in collateral or other property of the Pride Group located within the territorial jurisdiction of the United States to sell or otherwise dispose of such collateral or other property unless, solely with respect to collateral or other property that consists of vehicles, equipment, or vehicle or equipment leases, (i) the Monitor and CRO have determined, in their sole discretion, that such security interest is senior to the DIP Charge and such collateral or other property is not subject to competing security interests from other third-party creditors; (ii) the Monitor and CRO have agreed to return the collateral or other property to such secured party, and (iii) this Court or the Canadian Court has entered an order authorizing the respective secured party with a valid, perfected, and enforceable security interest in collateral or other property of the Pride Group located within the territorial jurisdiction of the United States to sell or otherwise dispose of such collateral or other property.  Notwithstanding anything to the contrary herein, nothing shall prevent a secured party from seeking relief from the automatic stay under section 362 of the Bankruptcy Code to exercise its rights and remedies with respect to its collateral, including disposition thereof, and the Foreign Representative and any other party in interest reserves the right to object to any such request for relief.

13.     Any advances made to the DIP Borrowers by the DIP Lenders pursuant to this Order, the A&R Initial Order, the DIP Term Sheet or the DIP Documentation shall, pursuant to sections 1507, 1519, 1521 and 105(a) of the Bankruptcy Code, be deemed to have been made by the DIP Lenders in good faith.  Notwithstanding (a) any stay, modification, amendment, supplement, vacatur, revocation or reversal of this Order, the Second Provisional Relief Order, the DIP Term Sheet, the DIP Documentation or any term hereunder or thereunder, or (b) the dismissal of one or more of the Chapter 15 Cases or the commencement of a case by any of the Debtors under another

chapter of the Bankruptcy Code or the conversion of a case of any of the Debtors from a case under one chapter of the Bankruptcy Code to a case under another chapter of the Bankruptcy Code (each, a "Subject Event"), (x) the acts taken by the DIP Agent and the DIP Lenders in accordance with this Order, and (y) the indebtedness incurred or arising prior to the DIP Agent's and the DIP Lenders' actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Order, and the acts taken by the DIP Agent and the DIP Lenders in accordance with this Order, and the liens granted to the DIP Agent for the benefit of the DIP Lenders, and all other rights, remedies, privileges, and benefits in favor of the DIP Agent and the DIP Lenders pursuant to this Order and the DIP Term Sheet and the DIP Loan Documents shall remain valid and in full force and effect to the extent provided in to section 364(e) of the Bankruptcy Code.

14.     Any obligations secured by a valid, enforceable, and perfected security interest upon or in respect of the property of the Pride Entities pursuant to a security agreement which includes as collateral thereunder any property acquired after the date of the applicable security agreement ("After-Acquired Property"), shall continue to be secured by the applicable property (including After Acquired Property that may be acquired by the applicable Pride Entity after the commencement of these proceedings) notwithstanding the commencement of these proceedings and notwithstanding anything set forth in section 552(a) of the Bankruptcy Code to the contrary, with the same priority, rights, and collateral as existed as of the date of the Initial Order, but subject to the senior liens, charges, and priorities granted by the A&R Initial Order, including but not limited to the Charges; provided that subject only to and effective upon entry of this Order, each prepetition secured creditor shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.

15.     Notwithstanding anything to the contrary in this Order or the A&R Initial Order, the Pride Entities shall not make any intercompany advances to TPL or PTS; *provided*, *that*, PTS may make intercompany transfers to TPL consisting of cash proceeds from sales of trucks owned by TPL, which sales are made by PTS on behalf of TPL (such transfers, "<u>PTS-TPL Intercompany Transfers</u>"), and no PTS-TPL Intercompany Transfers shall constitute an Intercompany Advances Charge.

16.     In accordance with paragraph 13 of the A&R Initial Order and subject to the Protocols Order, the Pride Entities shall not sell Securitization Party Assets (as defined in the A&R Initial Order) or any other vehicles, trailers, equipment or other equipment located within the territorial jurisdiction of the United States which a party or Securitization Party (as defined in the A&R Initial Order) has financed pursuant to the books and records of the Pride Entities without the written consent of the applicable Securitization Party or party.

17.     Nothing in this Order shall affect the rights of any secured party to request adequate protection pursuant to the Bankruptcy Code in addition to any adequate protection granted under this Order, or the rights of any party in interest to respond to such request, and all such rights are expressly reserved.

18.     MHCA U.S. expressly reserves its rights to (i) object in this Court to any enforcement of relief granted by the Canadian Court that impedes MHCA U.S.'s right to realize any net proceeds of its collateral and to request the adequate protection of its interest in cash collateral in accordance with the Bankruptcy Code; (ii) seek appropriate relief from this Court with respect to issues regarding U.S. law if a dispute arises between the Monitor, the Foreign Representatives, or the Pride Entities, on one hand, and MHCA U.S., on the other hand, regarding the validity, enforceability, perfection, or relative priority status of any U.S. security, ownership,

or other property interest granted by TPL and PTS under U.S. law governed facilities; and (iii) seek relief from this Court from the injunction granted in favor of the Personal Guarantors by this Order and to seek discovery in connection therewith, and nothing in this Order or the Canadian Orders shall prejudice the rights of MHCA U.S. from challenging the findings of fact made or conclusions or law reached in this Order regarding such injunction.

19.    Notwithstanding anything in this Order to the contrary, this Order does not grant any relief whatsoever with respect to any of the Arnold Entities, including, without limitation, with respect to recognition of the CCAA Proceedings,  enforcement of the Canadian Orders, and extension of the First Provisional Relief Order or the Second Provisional Relief Order.

20.    Notwithstanding anything in this Order to the contrary, any relief or protections granted by this Order with respect to the non-Debtor Pride Entities shall be solely pursuant to sections 1519 and 1521 of the Bankruptcy Code and the principles of comity, and expressly shall not be granted under section 364 of the Bankruptcy Code; *provided*, that, the relief granted in paragraph 57 of the A&R Initial Order is expressly incorporated herein and applied hereto, *mutatis mutandis*, and given effect by the Court including with respect to the Pride Entities and any of their property located in the United States.

21.    The Foreign Representative, the Debtors and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

22.    No action taken by the Foreign Representative, the Debtors, or their respective successors, agents, representatives, advisors, or counsel in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of or in connection with the CCAA Proceedings, this order, these chapter 15 cases, or any further proceeding commenced hereunder, shall be

deemed to constitute a waiver of the rights or benefits afforded such persons under sections 306 and 1510 of the Bankruptcy Code.

23.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, including, but not limited to, Bankruptcy Rules 7062 and 1018, (i) this Order shall be effective immediately and enforceable upon its entry; (ii) the Foreign Representative is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Foreign Representative and the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

24.    A copy of this Order shall be served in accordance with *Order Scheduling Hearing on Recognition of Chapter 15 Petitions for Recognition and Related Relief and Specifying Form and Manner of Service of Notice* [D.I. 56].  Such service shall be good and sufficient service and adequate notice for all purposes.

25.    The Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order, any request for additional relief and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of the Court.

26.    This Order shall be effective and enforceable immediately upon entry and shall constitute a final order within the meaning of 28 U.S.C. § 158(a).

Wilmington, Delaware
Dated: _____, 2024


_____
THE HONORABLE CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE