## Exhibit B

**Sale Agreement**

Authentisign ID: EDCD0F3D-7EEC-EE11-AAF0-6045BDDAA143

© Commercial Brokers
Association
ALL RIGHTS RESERVED



CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 1 of 16

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT

## SPECIFIC TERMS

**Reference Date**: March 27, 2024

**Offer Expiration Date:** 3/29/2024 _____ 5:00pm (the third day after Reference Date, if not completed)

1. **PROPERTY**: The Property is legally described on Exhibit A. Address: 1696      Bishop Rd
City of Chehalis _____ , Lewis _____ County, Washington. Tax Parcel No(s):017766-000-000
Included Personal Property: ☒ None; ☐ If on and used in connection with the Property, per Section 25 (None, if not completed).

2. **BUYER(S)**: Tyler Collins
a(n) _____

3. **SELLER(S)**: Bishop Road Holding Corp
a(n) _____

4. **PURCHASE PRICE**: $ 3,500,000.00                    **Three Million Five Hundred Thousand**   Dollars
Payable as: ☐ Cash; ☒ Financing (attach CBA Form PS_FIN); ☐ Other: _____

5. **EARNEST MONEY**: $ 30,000.00 _____ Dollars; Held by: ☐ Buyer Brokerage Firm; ☒ Closing Agent
Form of Earnest Money: ☒ Wire/Electronic Transfer; ☐ Check; ☐ Note (attach CBA Form PS_EMN); ☐ Other:_____
Earnest Money Due Date: ☒ 5 _____ days after Mutual Acceptance; ☐ _____ days after the Feasibility Contingency Date; or ☐
_____

6. **FEASIBILITY CONTINGENCY DATE**:  30 days after Mutual _____ (30 days after Mutual Acceptance if not completed.)

7. **CLOSING DATE**: ☒ 5/29/24 _____ ; ☐ _____ days after _____

8. **CLOSING AGENT**: Amber Higgins Lewis County Title Co

9. **TITLE INSURANCE COMPANY**: Lewis County Title Co

10. **DEED**: ☒ Statutory Warranty Deed; or ☐ Bargain and Sale Deed.

11. **POSSESSION**: ☒ on closing; ☐ Other: _____ (on closing if not completed).

12. **SELLER CITIZENSHIP (FIRPTA)**: Seller ☐ is; ☒ is not a foreign person for purposes of U.S. income taxation.

13. **BUYER'S DEFAULT**: (check only one) ☒ Forfeiture of Earnest Money; ☐ Seller's Election of Remedies.

14. **SELLER'S DEFAULT**: (check only one) ☒ Recover Earnest Money or Specific Enforcement; ☐ Buyer's Election of Remedies.

15. **UNPAID UTILITIES**: Buyer and Seller ☒ Do Not Waive (attach CBA Form UA); ☐ Waive

16. **AGENCY DISCLOSURE**: Buyer represented by: ☒ Buyer Broker; ☐ Buyer/Listing Broker (limited dual agent); ☐ Unrepresented
Seller represented by: ☒ Listing Broker; ☐ Buyer/Listing Broker (limited dual agent); ☐ Unrepresented

17. **BUYER BROKERAGE FIRM COMPENSATION**: 2.5 % of sale price or $ _____ ;

18. **EXHIBITS AND ADDENDA.** The following Exhibits and Addenda are made a part of this Agreement:

| | |
|---|---|
| ☐ Earnest Money Promissory Note, CBA Form EMN | ☐ FIRPTA Certification, CBA Form 22E |
| ☐ Blank Promissory Note, LPB Form No. 28A | ☐ Assignment and Assumption, CBA Form PS-AS |
| ☐ Blank Short Form Deed of Trust, LPB Form No. 20 | ☒ Addendum/Amendment, CBA Form PSA |
| ☐ Blank Deed of Trust Rider, CBA Form DTR | |
| ☒ Utility Charges Addendum, CBA Form UA | |

INITIALS:  Buyer _TC_ Date 03/27/2024   Seller _SJ_ Date 4/9/2024

Buyer _____ Date _____   Seller _____ Date _____

DocuSign Envelope ID: 0C90A7B0CEB348F2-A8C3-DA5F2EE7A13D
Authentisign ID: EDCD0F3D-7EEC-EE11-AAF0-6045BDDAA143

© Commercial Brokers
Association
ALL RIGHTS RESERVED



CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 2 of 16

### COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
(CONTINUED)

☐ Back-Up Addendum, CBA Form BU-A

☐ Vacant Land Addendum, CBA Form VLA

☒ Financing Addendum, CBA Form PS_FIN

☐ Tenant Estoppel Certificate, CBA Form PS_TEC

☐ Defeasance Addendum, CBA Form PS_D

☐ Lead-Based Paint Disclosure, CBA Form LP-LS

☐ Other _____

☐ Other _____

INITIALS:   Buyer _____*TC*_____   Date __03/27/2024__   Seller __SJ__   Date __4/9/2024__

            Buyer _____   Date _____   Seller _____   Date _____

Authentisign ID: EDCD6F3D-7EEC-EE11-AAF0-6045BDDAA143

© Commercial Brokers
Association
ALL RIGHTS RESERVED

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 3 of 16



## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

**19. IDENTIFICATION OF THE PARTIES.** The following is the contact information for the parties involved in this Agreement:

| Buyer(s): | Seller(s): |
|---|---|
| Contact: Tyler Collins | Contact: Bishop Road Holding Corp |
| Address: | Address: 1696  Bishop Rd    Chehalis    WA 98532-9745 |
| Business Phone: | Business Phone: |
| Cell Phone: (360) 623-9529 | Cell Phone: |
| Fax: | Fax: |
| Email: Tyler@safecoverroofing.com | Email: |

| Buyer Brokerage Firm | Listing Firm |
|---|---|
| Name: BHGRE - Northwest Home Team | Name: Kidder Matthews |
| Assumed Name: | Assumed Name: |
| Buyer Broker: Alyssa Rudolph | Listing Broker: Cramer Foster |
| Firm Address: 282 SW 13th Street Chehalis  WA 98532 | Firm Address: 1201 Pacific Ave Ste 1400 Tacoma  WA 98402 |
| Firm Phone: (360) 345-1006 | Firm Phone: (253) 722-1400 |
| Broker Phone: (360) 266-7387 | Broker Phone: (253) 722-1423 |
| Firm Email: chehalis@nwhometeam.com | Firm Email: |
| Broker Email: alyssarudolphrealestate@gmail.com | Broker Email: cramer.foster@kidder.com |
| Fax: (360) 529-0992 | Fax: |
| CBA Office No.: 4312              23000341 | CBA Office No.: |

| Copy of Notices to Buyer to: | Copy of Notices to Seller to: |
|---|---|
| Name: | Name: |
| Company: | Company: |
| Address: | Address: |
| Business Phone: | Business Phone: |
| Fax: | Fax: |
| Cell Phone: | Cell Phone: |
| Email: | Email: |

INITIALS: Buyer _TC_  Date _03/27/2024_  Seller _SJ_  Date _4/9/2024_

Buyer _____  Date _____  Seller _____  Date _____

AuthenSign Envelope ID: 0C90A7B6-9EB1-4BF2-A8C3-DA55F3EE7A13D
Authentisign ID: EDCD0F3D-7EEC-EE11-AAF0-6045BDDAA143

© Commercial Brokers
Association
ALL RIGHTS RESERVED

 CBA

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 4 of 16

### COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
(CONTINUED)

### GENERAL TERMS

20. **Purchase and Sale.** Buyer agrees to buy and Seller agrees to sell the commercial real estate identified in Section 1 as the Property and all improvements thereon. Unless expressly provided otherwise in this Agreement or its Addenda, the Property shall include (i) all of Seller's rights, title and interest in the Property, (ii) all easements and rights appurtenant to the Property, (iii) all buildings, fixtures, and improvements on the Property, (iv) all unexpired leases and subleases; and (v) all included personal property.

21. **Acceptance; Counteroffers.** If this offer is not timely accepted, it shall lapse and the Earnest Money shall be refunded to Buyer. If either party makes a future counteroffer, the other party shall have until 5:00 p.m. on the __2nd___ day (if not filled in, the second day) following receipt to accept the counteroffer, unless sooner withdrawn. If the counteroffer is not timely accepted or countered, this Agreement shall lapse and the Earnest Money shall be refunded to Buyer. No acceptance, offer or counteroffer from Buyer is effective until a signed copy is received by Seller, the Listing Broker or the licensed office of the Listing Broker. No acceptance, offer or counteroffer from Seller is effective until a signed copy is received by Buyer, the Buyer Broker or the licensed office of the Buyer Broker. "Mutual Acceptance" shall occur when the last counteroffer is signed by the offeree, and the fully-signed counteroffer has been received by the offeror, his or her broker, or the licensed office of the broker. If any party is not represented by a broker, then notices must be delivered to that party and shall be effective when received by that party.

22. **Earnest Money.** Buyer Broker and Buyer Brokerage Firm are authorized to transfer Earnest Money to Closing Agent as necessary. Buyer Brokerage Firm shall deposit any check to be held by Buyer Brokerage Firm within 3 days after receipt or Mutual Acceptance, whichever occurs later. If the Earnest Money is to be held by Buyer Brokerage Firm and is over $10,000, it shall be deposited to:☐ the Buyer Brokerage Firm's pooled trust account (with interest paid to the State Treasurer); or ☐ a separate interest bearing trust account in Buyer Brokerage Firm's name, provided that Buyer completes an IRS Form W-9 (if not completed, separate interest bearing trust account). The interest, if any, shall be credited at closing to Buyer. If this sale fails to close, whoever is entitled to the Earnest Money is entitled to interest. Unless otherwise provided in this Agreement, the Earnest Money shall be applicable to the Purchase Price.

23. **Title Insurance.**

    a. **Title Report.** Seller authorizes Buyer, its Lender, Listing Broker, Buyer Broker or Closing Agent, at Seller's expense, to apply for and deliver to Buyer a standard coverage owner's policy of title insurance from the Title Insurance Company. Buyer shall have the discretion to apply for an extended coverage owner's policy of title insurance and any endorsements, provided that Buyer shall pay the increased costs associated with an extended policy including the excess premium over that charged for a standard coverage policy, the cost of any endorsements requested by Buyer, and the cost of any survey required by the title insurer. If Seller previously received a preliminary commitment from a title insurer that Buyer declines to use, Buyer shall pay any cancellation fee owing to the original title insurer. Otherwise, the party applying for title insurance shall pay any title cancellation fee, in the event such a fee is assessed.

    b. **Permitted Exceptions.** Buyer shall notify Seller of any objectionable matters in the title report or any supplemental report within the earlier of: (a) __20____ days (20 days if not completed) after receipt of the preliminary commitment for title insurance; or (b) the *Feasibility Contingency Date*. This Agreement shall terminate and Buyer shall receive a refund of the Earnest Money, less any costs advanced or committed for Buyer, unless within five (5) days of Buyer's notice of such objections

| INITIALS: | Buyer | *TC* | Date | 03/27/2024 | Seller | *SJ* | Date | 4/9/2024 |
|-----------|-------|------|------|------------|--------|------|------|----------|
|           | Buyer |      | Date |            | Seller |      | Date |          |

DocuSign Envelope ID: 0C90A7B05SED834BF3_A8C3-DA552EE7A13D
Authentisign ID: EDCD0F3D-7EEC-EE11-AAF0-6045BDDAA143

© Commercial Brokers
Association
ALL RIGHTS RESERVED

 CBA

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 5 of 16

### COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
(CONTINUED)

Seller shall give notice, in writing, of its intent to remove all objectionable provisions before Closing. If Seller fails to give timely notice that it will clear all disapproved objections, this Agreement shall automatically terminate and Buyer shall receive a refund of the Earnest Money, less any costs advanced or committed for Buyer, unless Buyer notifies Seller within three (3) days that Buyer waives any objections which Seller does not agree to remove. If any new title matters are disclosed in a supplemental title report, then the preceding termination, objection and waiver provisions shall apply to the new title matters except that Buyer's notice of objections must be delivered within three (3) days of receipt of the supplemental report by Buyer and Seller's response or Buyer's waiver must be delivered within two (2) days of Buyer's notice of objections. The Closing Date shall be extended to the extent necessary to permit time for these notices. Buyer shall not be required to object to any mortgage or deed of trust liens, or the statutory lien for real property taxes, and the same shall not be deemed to be Permitted Exceptions; provided, however, that the lien securing any financing which Buyer has agreed to assume shall be a Permitted Exception. Except for the foregoing, those provisions not objected to or for which Buyer waived its objections shall be referred to collectively as the "Permitted Exceptions." Seller shall reasonably cooperate with Buyer and the title company to clear objectionable title matters and shall provide an affidavit containing the information and reasonable covenants requested by the title company. The title policy shall contain no exceptions other than the General Exclusions and Exceptions common to such form of policy and the Permitted Exceptions.

c.  **Title Policy**. At Closing, Buyer shall receive an ALTA Form 2006 Owner's Policy of Title Insurance with standard or extended coverage (as specified by Buyer) dated as of the Closing Date in the amount of the Purchase Price, insuring that fee simple title to the Property is vested in Buyer, subject only to the Permitted Exceptions ("Title Policy"), provided that Buyer acknowledges that obtaining extended coverage may be conditioned on the Title Company's receipt of a satisfactory survey paid for by Buyer. If Buyer elects extended coverage, then Seller shall execute and deliver to the Title Company on or before Closing the such affidavits and other documents as the Title Company reasonably and customarily requires to issue extended coverage.

24. **Feasibility Contingency.** Buyer's obligations under this Agreement are conditioned upon Buyer's satisfaction, in Buyer's sole discretion, concerning all aspects of the Property, including its physical condition; the presence of or absence of any hazardous substances; the contracts and leases affecting the Property; the potential financial performance of the Property; the availability of government permits and approvals; and the feasibility of the Property for Buyer's intended purpose. This Agreement shall terminate and Buyer shall receive a refund of the Earnest Money unless Buyer gives notice that the Feasibility Contingency is satisfied to Seller before 5:00pm on the Feasibility Contingency Date. If such notice is timely given, the feasibility contingency shall be deemed to be satisfied and Buyer shall be deemed to have accepted and waived any objection regarding any aspects of the Property as they exist on the Feasibility Contingency Date.

a.  **Books, Records, Leases, Agreements.** Within 3 _____ days (3 days if not filled in) Seller shall deliver to Buyer or post in an online database maintained by Seller or Listing Broker, to which Buyer has been given unlimited access, true, correct and complete copies of all documents in Seller's possession or control relating to the ownership, operation, renovation or development of the Property, excluding appraisals or other statements of value, and including the following: statements for real estate taxes, assessments, and utilities for the last three years and year to date; property management agreements and any other agreements with professionals or consultants; leases or other agreements relating to occupancy of all or a portion of the Property and a suite-by-suite schedule of tenants, rents, prepaid rents, deposits and fees; plans, specifications,

| INITIALS: | Buyer | _TC_ | Date | 03/27/2024 | Seller | _SJ_ | Date | 4/9/2024 |
|---|---|---|---|---|---|---|---|---|
| | Buyer | | Date | | Seller | | Date | |

AuthentiSign ID: EDCD9F3D-7EEC-EE11-AAF0-6045BDDAA143

© Commercial Brokers
Association
ALL RIGHTS RESERVED

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 6 of 16



### COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
(CONTINUED)

permits, applications, drawings, surveys, and studies; maintenance records, accounting records and audit reports for the last three years and year to date; any existing environmental reports; any existing surveys; any existing inspection reports; and "Vendor Contracts" which shall include maintenance or service contracts, and installments purchase contracts or leases of personal property or fixtures used in connection with the Property. Buyer shall determine by the Feasibility Contingency Date: (i) whether Seller will agree to terminate any objectionable Vendor Contracts; and (ii) whether Seller will agree to pay any damages or penalties resulting from the termination of objectionable Vendor Contracts. Buyer's waiver of the Feasibility Contingency shall be deemed Buyer's acceptance of all Vendor Contracts which Seller has not agreed in writing to terminate. Buyer shall be solely responsible for obtaining any required consents to such assumption and the payment of any assumption fees. Seller shall cooperate with Buyer's efforts to receive any such consents but shall not be required to incur any out-of-pocket expenses or liability in doing so. Any information provided or to be provided by Seller with respect to the Property is solely for Buyer's convenience and Seller has not made any independent investigation or verification of such information (other than that the documents are true, correct, and complete, as stated above) and makes no representations as to the accuracy or completeness of such information, except to the extent expressly provided otherwise in this Agreement. Seller shall transfer the Vendor Contracts as provided in Section 26.

b. **Access.** Seller shall permit Buyer and its agents, at Buyer's sole expense and risk, to enter the Property at reasonable times subject to the rights of and after legal notice to tenants, to conduct inspections concerning the Property, including without limitation, the structural condition of improvements, hazardous materials, pest infestation, soils conditions, sensitive areas, wetlands, or other matters affecting the feasibility of the Property for Buyer's intended use. Buyer shall schedule any entry onto the Property with Seller in advance and shall comply with Seller's reasonable requirements including those relating to security, confidentiality, and disruption of Seller's tenants. Buyer shall not perform any invasive testing including environmental inspections beyond a phase I assessment or contact the tenants or property management personnel without obtaining Seller's prior written consent, which shall not be unreasonably withheld, conditioned or delayed. Buyer shall restore the Property and all improvements to substantially the same condition they were in prior to inspection. Buyer shall be solely responsible for all costs of its inspections and feasibility analysis and has no authority to bind the Property for purposes of statutory liens. Buyer agrees to indemnify and defend Seller from all liens, costs, claims, and expenses, including attorneys' and experts' fees, arising from or relating to entry onto or inspection of the Property by Buyer and its agents, which obligation shall survive closing. Buyer may continue to enter the Property in accordance with the terms and conditions set forth in this Section 24 after removal or satisfaction of the Feasibility Contingency only for the purpose of leasing or to satisfy conditions of financing.

c. ☐ (check if applicable) **Access Insurance.** Notwithstanding anything in this Section 24 to the contrary, prior to entering the Property and while conducting any inspections pursuant to subsection (b) above, Buyer shall, at no cost or expense to Seller: (a) procure and maintain commercial general liability (occurrence) insurance in an amount no less than $2,000,000 on commercially reasonable terms adequate to insure against all liability arising out of any entry onto or inspections of the Property that lists Seller and Tenant as additional insureds; and (b) deliver to Seller prior to entry upon the Property certificates of insurance for Buyer and any applicable agents or representatives evidencing such required insurance.

INITIALS:   Buyer  _TC_   Date  03/27/2024   Seller  _SJ_   Date  4/9/2024

Buyer  _____  Date  _____  Seller  _____  Date  _____

AuthenticationID: EDCD0F3D-7EEC-EE11-AAF0-6045BCDAA143

© Commercial Brokers
Association
ALL RIGHTS RESERVED

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 7 of 16



### COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
#### (CONTINUED)

d. Buyer waives, to the fullest extent permissible by law, the right to receive a seller disclosure statement (e.g. "Form 17") if required by RCW 64.06 and its right to rescind this Agreement pursuant thereto. However, if Seller would otherwise be required to provide Buyer with a Form 17, and if the answer to any of the questions in the section of the Form 17 entitled "Environmental" would be "yes," then Buyer does not waive the receipt of the "Environmental" section of the Form 17 which shall be provided by Seller.

25. **Conveyance.** Title shall be conveyed subject only to the Permitted Exceptions. If this Agreement is for conveyance of Seller's vendee's interest in a Real Estate Contract, the deed shall include a contract vendee's assignment sufficient to convey after-acquired title. At Closing, Seller and Buyer shall execute and deliver to Closing Agent CBA Form PS-AS Assignment and Assumption Agreement transferring all leases and Vendor Contracts assumed by Buyer pursuant to Section 26(b) and all intangible property transferred pursuant to Section 26(b).

26. **Personal Property.**

   a. If this sale includes the personal property located on and used in connection with the Property, Seller will itemize such personal property in an Exhibit to be attached to this Agreement within ten (10) days of Mutual Acceptance. The value assigned to any personal property shall be $_____ (if not completed, the County-assessed value if available, and if not available, the fair market value determined by an appraiser selected by the Listing Broker and Buyer Broker). Seller warrants title to, but not the condition of, the personal property and shall convey it by bill of sale.

   b. In addition to the leases and Vendor Contracts assumed by Buyer pursuant to Section 25 above, this sale includes all right, title and interest of Seller to the following intangible property now or hereafter existing with respect to the Property including without limitation: all rights-of-way, rights of ingress or egress or other interests in, on, or to, any land, highway, street, road, or avenue, open or proposed, in, on, or across, in front of, abutting or adjoining the Property; all rights to utilities serving the Property; all drawings, plans, specifications and other architectural or engineering work product; all governmental permits, certificates, licenses, authorizations and approvals; all rights, claims, causes of action, and warranties under contracts with contractors, engineers, architects, consultants or other parties associated with the Property; all utility, security and other deposits and reserve accounts made as security for the fulfillment of any of Seller's obligations; any name of or telephone numbers for the Property and related trademarks, service marks or trade dress; and guaranties, warranties or other assurances of performance received.

27. **Seller's Underlying Financing.** Unless Buyer is assuming Seller's underlying financing, Seller shall be responsible for confirming the existing underlying financing is not subject to any "lock out" or similar covenant which would prevent the lender's lien from being released at closing. In addition, Seller shall provide Buyer notice prior to the Feasibility Contingency Date if Seller is required to substitute securities for the Property as collateral for the underlying financing (known as "defeasance"). If Seller provides this notice of defeasance to Buyer, then the parties shall close the transaction in accordance with the process described in CBA Form PS_D or any different process identified in Seller's defeasance notice to Buyer.

28. **Closing of Sale.** Buyer and Seller shall deposit with Closing Agent by 12:00 p.m. on the scheduled Closing Date all instruments and monies required to complete the purchase in accordance with this Agreement. Upon receipt of such instruments and monies, Closing Agent shall cause the deed to be recorded and shall pay to Seller, in immediately available funds, the Purchase Price less any costs or other amounts to be paid by Seller at Closing. "Closing" shall be deemed to have occurred when the deed is recorded and the sale

INITIALS: Buyer _TC_ Date _03/27/2024_ Seller _SJ_ Date _4/9/2024_

Buyer _____ Date _____ Seller _____ Date _____

Authentisign ID: EDCD0F3D-7EEC-EE11-AAF0-6045BDDAA143

© Commercial Brokers
Association
ALL RIGHTS RESERVED

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 8 of 16



### COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
(CONTINUED)

proceeds are available to Seller. Time is of the essence in the performance of this Agreement. Sale proceeds shall be considered available to Seller, even if they cannot be disbursed to Seller until the next business day after Closing. Notwithstanding the foregoing, if Seller informed Buyer before the Feasibility Contingency Date that Seller's underlying financing requires that it be defeased and may not be paid off, then Closing shall be conducted in accordance with the three (3)-day closing process described in CBA Form PS_D. This Agreement is intended to constitute escrow instructions to Closing Agent. Buyer and Seller will provide any supplemental instructions requested by Closing Agent provided the same are consistent with this Agreement.

29. **Closing Costs and Prorations.** Seller shall deliver an updated rent roll to Closing Agent not later than two (2) days before the scheduled Closing Date in the form required by Section 24(a) and any other information reasonably requested by Closing Agent to allow Closing Agent to prepare a settlement statement for Closing. Seller certifies that the information contained in the rent roll is correct as of the date submitted. Seller shall pay the premium for the owner's standard coverage title policy. Buyer shall pay the excess premium attributable to any extended coverage or endorsements requested by Buyer, and the cost of any survey required in connection with the same. Seller and Buyer shall each pay one-half of the escrow fees. Any real estate excise taxes shall be paid by the party who bears primary responsibility for payment under the applicable statute or code. Real and personal property taxes and assessments payable in the year of closing; collected rents on any existing tenancies; expenses already incurred by Seller that relate to services to be provided to the Property after the Closing Date; interest; utilities; and other operating expenses shall be pro-rated as of Closing. Seller will be charged and credited for the amounts of all of the pro-rated items relating to the period up to and including 11:59 pm Pacific Time on the day preceding the Closing Date, and Buyer will be charged and credited for all of the pro-rated items relating to the period on and after the Closing Date. If tenants pay any of the foregoing expenses directly, then Closing Agent shall only pro rate those expenses paid by Seller. Buyer shall pay to Seller at Closing an additional sum equal to any utility deposits or mortgage reserves for assumed financing for which Buyer receives the benefit after Closing. Buyer shall pay all costs of financing including the premium for the lender's title policy. If the Property was taxed under a deferred classification prior to Closing, then Seller shall pay all taxes, interest, penalties, deferred taxes or similar items which result from removal of the Property from the deferred classification. At Closing, all refundable deposits on tenancies shall be credited to Buyer or delivered to Buyer for deposit in a trust account if required by state or local law. Buyer shall pay any sales or use tax applicable to the transfer of personal property included in the sale.

30. **Post-Closing Adjustments, Collections, and Payments.** After Closing, Buyer and Seller shall reconcile the actual amount of revenues or liabilities upon receipt or payment thereof to the extent those items were prorated or credited at Closing based upon estimates. Any bills or invoices received by Buyer after Closing which relate to services rendered or goods delivered to the Seller or the Property prior to Closing shall be paid by Seller upon presentation of such bill or invoice. At Buyer's option, Buyer may pay such bill or invoice and be reimbursed the amount paid plus interest at the rate of 12% per annum beginning fifteen (15) days from the date of Buyer's written demand to Seller for reimbursement until such reimbursement is made. Notwithstanding the foregoing, if tenants pay certain expenses based on estimates subject to a post-closing reconciliation to the actual amount of those expenses, then Buyer shall be entitled to any surplus and shall be liable for any credit resulting from the reconciliation. Rents collected from each tenant after Closing shall be applied first to rentals due most recently from such tenant for the period after closing, and the balance shall be applied for the benefit of Seller for delinquent rentals owed for a period prior to closing. The amounts applied for the benefit of Seller shall be turned over by Buyer to Seller promptly after receipt. Seller shall be entitled to pursue any lawful methods of

| INITIALS: | Buyer | _TC_ | Date | 03/27/2024 | Seller | _SJ_ | Date | 4/9/2024 |
|---|---|---|---|---|---|---|---|---|
| | Buyer | | Date | | Seller | | Date | |

© Commercial Brokers
Association
ALL RIGHTS RESERVED



CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 9 of 16

### COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
#### (CONTINUED)

collection of delinquent rents but shall have no right to evict tenants after Closing. Any adjustment shall be made, if any, within 180 days of the Closing Date, and if a party fails to request an adjustment by notice delivered to the other party within the applicable period set forth above (such notice to specify in reasonable detail the items within the Closing Statement that such party desires to adjust and the reasons for such adjustment), then the allocations and prorations at Closing shall be binding and conclusive against such party.

**31. Operations Prior to Closing.** Prior to Closing, Seller shall continue to operate the Property in the ordinary course of its business and maintain the Property in the same or better condition than as existing on the date of Mutual Acceptance but shall not be required to repair material damage from casualty except as otherwise provided in this Agreement. After the Feasibility Contingency Date, Seller shall not enter into or modify existing rental agreements or leases (except that Seller may enter into, modify, extend, renew or terminate residential rental agreements or residential leases for periods of 12 months or less in the ordinary course of its business), service contracts, or other agreements affecting the Property which have terms extending beyond Closing without obtaining Buyer's consent, which shall not be withheld unreasonably.

**32. Possession.** Buyer shall accept possession subject to all tenancies disclosed to Buyer before the Feasibility Contingency Date.

**33. Seller's Representations.** Except as disclosed to or known by Buyer prior to the satisfaction or waiver of the Feasibility Contingency, including in the books, records and documents made available to Buyer, or in the title report or any supplemental report or documents referenced therein, Seller represents to Buyer that, to the best of Seller's actual knowledge, each of the following is true as of the date hereof: (a) Seller is authorized to enter into the Agreement, to sell the Property, and to perform its obligations under the Agreement, and no further consent, waiver, approval or authorization is required from any person or entity to execute and perform under this Agreement; (b) The books, records, leases, agreements and other items delivered to Buyer pursuant to this Agreement comprise all material documents in Seller's possession or control regarding the operation and condition of the Property, are true, accurate and complete to the best of Seller's knowledge, and no other contracts or agreements exist that will be binding on Buyer after Closing; (c) Seller has not received any written notices that the Property or any business conducted thereon violate any applicable laws, regulations, codes and ordinances; (d) Seller has all certificates of occupancy, permits, and other governmental consents necessary to own and operate the Property for its current use; (e) There is no pending or threatened litigation which would adversely affect the Property or Buyer's ownership thereof after Closing; (f) There is no pending or threatened condemnation or similar proceedings affecting the Property, and the Property is not within the boundaries of any planned or authorized local improvement district; (g) Seller has paid (except to the extent prorated at Closing) all local, state and federal taxes (other than real and personal property taxes and assessments described in Section 29 above) attributable to the period prior to closing which, if not paid, could constitute a lien on Property (including any personal property), or for which Buyer may be held liable after Closing; (h) Seller is not aware of any concealed material defects in the Property except as disclosed to Buyer before the Feasibility Contingency Date; (i) There are no Hazardous Substances (as defined below) currently located in, on, or under the Property in a manner or quantity that presently violates any Environmental Law (as defined below); there are no underground storage tanks located on the Property; and there is no pending or threatened investigation or remedial action by any governmental agency regarding the release of Hazardous Substances or the violation of Environmental Law at the Property; (j) Seller has not granted any options nor obligated itself in any matter whatsoever to sell the Property or any portion thereof to any party other than Buyer; and (k) Neither Seller nor any of its respective partners, members, shareholders or other equity owners, is a person or entity with whom U.S. persons or entities

INITIALS: Buyer _TC_ Date 03/27/2024  Seller _SJ_ Date 4/9/2024

Buyer _____ Date _____  Seller _____ Date _____

© Commercial Brokers
Association
ALL RIGHTS RESERVED

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 10 of 16



### COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
(CONTINUED)

are restricted from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute or executive order; and (l) the individual signing this Agreement on behalf of Seller represents and warrants to Buyer that he or she has the authority to act on behalf of and bind Seller. As used herein, the term "Hazardous Substances" shall mean any substance or material now or hereafter defined or regulated as a hazardous substance, hazardous waste, toxic substance, pollutant, or contaminant under any federal, state, or local law, regulation, or ordinance governing any substance that could cause actual or suspected harm to human health or the environment ("Environmental Law"). The term "Hazardous Substances" specifically includes, but is not limited to, petroleum, petroleum by-products, and asbestos.

If prior to Closing Seller or Buyer discovers any information which would cause any of the representations above to be false if the representations were deemed made as of the date of such discovery, then the party discovering the information shall promptly notify the other party in writing and Buyer, as its sole remedy, may elect to terminate this Agreement by giving Seller notice of such termination within five (5) days after Buyer first received actual notice (with the Closing Date extended to accommodate such five (5) day period), and in such event, the Earnest Money Deposit shall be returned to Buyer. Buyer shall give notice of termination within five (5) days of discovering or receiving written notice of the new information. Nothing in this paragraph shall prevent Buyer from pursuing its remedies against Seller if Seller had actual knowledge of the newly discovered information such that a representation provided for above was false.

34. **As-Is.** Except for the express representations and warranties in this Agreement, (a) Seller makes no representations or warranties regarding the Property; (b) Seller hereby disclaims, and Buyer hereby waives, any and all representations or warranties of any kind, express or implied, concerning the Property or any portion thereof, as to its condition, value, compliance with laws, status or permits or approvals, existence or absence of hazardous material on site, suitability for Buyer's intended use, occupancy rate or any other matter of similar or dissimilar nature relating in any way to the Property, including the warranties of fitness for a particular purpose, tenantability, habitability and use; (c) Buyer takes the Property "AS IS" and with all faults; and (d) Buyer represents and warrants to Seller that Buyer has sufficient experience and expertise such that it is reasonable for Buyer to rely on its own pre-closing inspections and investigations.

35. **Buyer's Representations.** Buyer represents that Buyer is authorized to enter into the Agreement; to buy the Property; to perform its obligations under the Agreement; and that neither the execution and delivery of this Agreement nor the consummation of the transaction contemplated hereby will: (a) conflict with or result in a breach of any law, regulation, writ, injunction or decree of any court or governmental instrumentality applicable to Buyer; or (b) constitute a breach of any agreement to which Buyer is a party or by which Buyer is bound. The individual signing this Agreement on behalf of Buyer represents that he or she has the authority to act on behalf of and bind Buyer.

36. **Claims.** Any claim or cause of action with respect to a breach of the representations and warranties set forth herein shall survive for a period of nine (9) months from the Closing Date, at which time such representations and warranties (and any cause of action resulting from a breach thereof not then in litigation, including indemnification claims) shall terminate. Notwithstanding anything to the contrary in this Agreement: (a) Buyer shall not make a claim against Seller for damages for breach or default of any representation or warranty, unless the amount of such claim is reasonably anticipated to exceed $25,000; and (b) under no circumstances shall Seller be liable to Buyer on account of any breach of any representation or warranty in the aggregate in excess of

INITIALS:  Buyer ___*TC*___  Date __03/27/2024__  Seller __SJ__  Date ____4/9/2024____

Buyer _____  Date _____  Seller _____  Date _____

© Commercial Brokers
Association
ALL RIGHTS RESERVED

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 11 of 16



### COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
### (CONTINUED)

the amount equal to $250,000, except in the event of Seller's fraud or intentional misrepresentation with respect to any representation or warranty regarding the environmental condition of the Property, in which case Buyer's damages shall be unlimited.

37. **Condemnation and Casualty.** Seller bears all risk of loss until Closing, and thereafter Buyer bears all risk of loss. Buyer may terminate this Agreement and obtain a refund of the Earnest Money if improvements on the Property are materially damaged or if condemnation proceedings are commenced against all or a portion of the Property before Closing, to be exercised by notice to Seller within ten (10) days after Seller's notice to Buyer of the occurrence of the damage or condemnation proceedings. Damage will be considered material if the cost of repair exceeds the lesser of $100,000 or five percent (5%) of the Purchase Price. Alternatively, Buyer may elect to proceed with closing, in which case, at Closing, Seller shall not be obligated to repair any damage, and shall assign to Buyer all claims and right to proceeds under any property insurance policy and shall credit to Buyer at Closing the amount of any deductible provided for in the policy.

38. **FIRPTA Tax Withholding at Closing.** Closing Agent is instructed to prepare a certification (CBA or NWMLS Form 22E, or equivalent) that Seller is not a "foreign person" within the meaning of the Foreign Investment in Real Property Tax Act, and Seller shall sign it on or before Closing. If Seller is a foreign person, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service.

39. **Notices.** Unless otherwise specified, any notice required or permitted in, or related to, this Agreement (including revocations of offers and counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and must be delivered to Seller and Listing Broker with a courtesy copy to any other party identified as a recipient of notices in Section 19. A notice to Seller shall be deemed delivered only when received by Seller and Listing Broker, or the licensed office of Listing Broker. Notices to Buyer must be signed by at least one Seller and must be delivered to Buyer, with a copy to Buyer Broker and a courtesy copy to any other party identified as a recipient of notices in Section 19. A notice to Buyer shall be deemed delivered only when received by Buyer and Buyer Broker, or the licensed office of Buyer Broker. Buyer Broker and Listing Broker otherwise have no responsibility to advise parties of receipt of a notice beyond either phoning the represented party or causing a copy of the notice to be delivered to the party's address provided in this Agreement. Buyer and Seller shall keep Buyer Broker and Listing Broker advised of their whereabouts in order to receive prompt notification of receipt of a notice. If any party is not represented by a licensee, then notices must be delivered to and shall be effective when received by that party at the address, fax number, or email indicated in Section 19.

Facsimile transmission of any notice or document shall constitute delivery. E-mail transmission of any notice or document (or a direct link to such notice or document) shall constitute delivery when: (i) the e-mail is sent to both Buyer Broker and Buyer Brokerage Firm or both Listing Broker and Listing Firm at the e-mail addresses specified on page two of this Agreement; or (ii) Buyer Broker or Listing Broker provide written acknowledgment of receipt of the e-mail (an automatic e-mail reply does not constitute written acknowledgment). At the request of either party, or the Closing Agent, the parties will confirm facsimile or e-mail transmitted signatures by signing an original document.

40. **Computation of Time.** Unless otherwise specified in this Agreement, any period of time in this Agreement shall mean Pacific Time and shall begin the day after the event starting the period and shall expire at 5:00 p.m. of the last calendar day of the specified period of time, unless the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, in which case the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal holiday. Any specified period of five (5) days or less shall not include Saturdays, Sundays or legal holidays. Notwithstanding the foregoing, references to specific dates or times or number of hours

| INITIALS: | Buyer | TC | Date | 03/27/2024 | Seller | SJ | Date | 4/9/2024 |
|-----------|-------|-----|------|------------|--------|-----|------|----------|
| | Buyer | | Date | | Seller | | Date | |

© Commercial Brokers
Association
ALL RIGHTS RESERVED



CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 12 of 16

### COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
#### (CONTINUED)

shall mean those dates, times or number of hours; provided, however, that if the Closing Date falls on a Saturday, Sunday, or legal holiday as defined in RCW 1.16.050, or a date when the county recording office is closed, then the Closing Date shall be the next regular business day. If the parties agree upon and attach a legal description after this Agreement is signed by the offeree and delivered to the offeror, then for the purposes of computing time, mutual acceptance shall be deemed to be on the date of delivery of an accepted offer or counteroffer to the offeror, rather than on the date the legal description is attached.

41. **Assignment.** Buyer's rights and obligations under this Agreement are not assignable without the prior written consent of Seller, which shall not be withheld unreasonably; provided, however, Buyer may assign this Agreement without the consent of Seller, but with notice to Seller, to any entity under common control and ownership of Buyer, provided no such assignment shall relieve Buyer of its obligations hereunder. If the words "and/or assigns" or similar words are used to identify Buyer in Section 2, then this Agreement may be assigned with notice to Seller but without need for Seller's consent. The party identified as the initial Buyer shall remain responsible for those obligations of Buyer stated in this Agreement notwithstanding any assignment and, if this Agreement provides for Seller to finance a portion of the purchase price, then the party identified as the initial Buyer shall guarantee payment of Seller financing.

42. **Default and Attorneys' Fees.**

    a.  **Buyer's default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then the applicable provision as identified in Section 13 shall apply:

        i.  **Forfeiture of Earnest Money.** Seller may terminate this Agreement and keep that portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price as liquidated damages as the sole and exclusive remedy available to Seller for such failure.

        ii.  **Seller's Election of Remedies.** Seller may, at its option, (a) terminate this Agreement and keep that portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price as liquidated damages as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity.

    b.  **Seller's default.** In the event Seller fails, without legal excuse, to complete the sale of the Property, then the applicable provision as identified in Section 14 shall apply:

        i.  **Recover Earnest Money or Specific Enforcement.** As Buyer's sole remedy, Buyer may either (a) terminate this Agreement and recover all Earnest Money or fees paid by Buyer whether or not the same are identified as refundable or applicable to the purchase price; or (b) bring suit to specifically enforce this Agreement and recover incidental damages, provided, however, Buyer must file suit within sixty (60) days from the Closing Date or from the date Seller has provided notice to Buyer that Seller will not proceed with closing, whichever is earlier.

        ii.  **Buyer's Election of Remedies.** Buyer may, at its option, (a) bring suit against Seller for Buyer's actual damages, (b) bring suit to specifically enforce this Agreement and recover any incidental damages, or (c) pursue any other rights or remedies available at law or equity.

    c.  Neither Buyer nor Seller may recover consequential damages such as lost profits. If Buyer or Seller institutes suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and costs. In the event of

INITIALS: Buyer ___TC___ Date _03/27/2024_ Seller __SJ__ Date _4/9/2024_

Buyer _____ Date _____ Seller _____ Date _____

© Commercial Brokers
Association
ALL RIGHTS RESERVED



CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 13 of 16

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

trial, the amount of the attorneys' fees shall be fixed by the court. The venue of any suit shall be the county in which the Property is located, and this Agreement shall be governed by the laws of the State of Washington without regard to its principles of conflicts of laws.

**43. Miscellaneous Provisions.**

   a. **Complete Agreement.** This Agreement and any addenda and exhibits thereto state the entire understanding of Buyer and Seller regarding the sale of the Property. There are no verbal or other written agreements which modify or affect the Agreement, and no modification of this Agreement shall be effective unless agreed in writing and signed by the parties.

   b. **Counterpart Signatures.** This Agreement may be signed in counterpart, each signed counterpart shall be deemed an original, and all counterparts together shall constitute one and the same agreement.

   c. **Electronic Delivery and Signatures.** Electronic delivery of documents (e.g., transmission by facsimile or email) including signed offers or counteroffers and notices shall be legally sufficient to bind the party the same as delivery of an original. At the request of either party, or the Closing Agent, the parties will replace electronically delivered offers or counteroffers with original documents. The parties acknowledge that a signature in electronic form has the same legal effect as a handwritten signature.

   d. **Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a Section 1031 like-kind exchange, then the other party agrees to cooperate in the completion of the like-kind exchange so long as the cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys' fees and costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating party at or prior to Closing. Notwithstanding this provision, no party shall be obligated to extend closing as part of its agreement to facilitate completion of a like-kind exchanged. In addition, notwithstanding Section 41 above, any party completing a Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the purposes of completing a reverse exchange.

**44. Information Transfer.** In the event this Agreement is terminated, Buyer agrees to deliver to Seller within ten (10) days of Seller's written request copies of all materials received from Seller and any non-privileged plans, studies, reports, inspections, appraisals, surveys, drawings, permits, applications or other development work product relating to the Property in Buyer's possession or control as of the date this Agreement is terminated.

**45. Confidentiality.** Until and unless closing has been consummated, Buyer and Seller shall follow reasonable measures to prevent unnecessary disclosure of information obtained in connection with the negotiation and performance of this Agreement. Neither party shall use or knowingly permit the use of any such information in any manner detrimental to the other party.

**46. Agency Disclosure.** Buyer Brokerage Firm, Buyer Brokerage Firm's Designated Broker, Buyer Brokerage Firm's Branch Manager (if any) and any of Buyer Brokerage's Firm's Managing Brokers who supervise Buyer Broker represent the same party that Buyer Broker represents. Listing Firm, Listing Firm's Designated Broker, Listing Broker's Branch Manager (if any), and any of Listing Firm's Managing Brokers who supervise Listing Broker represent the same party that the Listing Broker represents. All parties acknowledge receipt of the pamphlet entitled "Real Estate Brokerage in Washington."

**47. Buyer Broker's Compensation Disclosure.**

INITIALS: Buyer _TC_  Date _03/27/2024_  Seller _SJ_  Date _4/9/2024_

Buyer _____  Date _____  Seller _____  Date _____

DocuSign Envelope ID: DC30A7B04BEDB94EF3-A8G3-DA5F2SE7A12D
Authentisign ID: EDCD0F3D-7EEC-EE11-AAF0-60458DD8A143

© Commercial Brokers
Association
ALL RIGHTS RESERVED

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 14 of 16



## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

a. <u>Compensation from Seller</u>. The compensation offered to Buyer Brokerage Firm by Seller for providing buyer brokerage services to Buyer related to the Property is:

☐ _____ % of purchase price

☐ $ _____

☐ other: _____

b. <u>Compensation from Listing Firm</u>. The compensation offered to Buyer Brokerage Firm by the Listing Firm for providing buyer brokerage services to Buyer related to the Property is:

☒ 2.5____ % of purchase price

☐ $ _____

☐ other: _____

48. **Seller's Acceptance and Brokerage Agreement.** Seller agrees to sell the Property on the terms and conditions herein. The Listing Firm's compensation shall be paid as specified in the listing or commission agreement. If there is no written listing or commission agreement, Seller agrees to pay to Listing Firm compensation of _____% of the sales price or $_____. The compensation to Buyer Brokerage Firm shall be paid as set forth in this Agreement. Seller and Buyer consent to Listing Firm and Buyer Brokerage Firm receiving compensation from more than one party and to the sharing of compensation between firms. In any action by Listing Firm or Buyer Brokerage Firm to enforce this Section, the prevailing party is entitled to reasonable attorneys' fees and expenses. The Property described in attached Exhibit A is commercial real estate. Notwithstanding Section 45 above, the pages containing this Section, the parties' signatures and an attachment describing the Property may be recorded.

**Listing Broker and Buyer Broker Disclosure.** EXCEPT AS OTHERWISE DISCLOSED IN WRITING TO BUYER OR SELLER, THE BUYER BROKER, LISTING BROKER, AND FIRMS HAVE NOT MADE ANY REPRESENTATIONS OR WARRANTIES OR CONDUCTED ANY INDEPENDENT INVESTIGATION CONCERNING THE LEGAL EFFECT OF THIS AGREEMENT, BUYER'S OR SELLER'S FINANCIAL STRENGTH, BOOKS, RECORDS, REPORTS, STUDIES, OR OPERATING STATEMENTS; THE CONDITION OF THE PROPERTY OR ITS IMPROVEMENTS; THE FITNESS OF THE PROPERTY FOR BUYER'S INTENDED USE; OR OTHER MATTERS RELATING TO THE PROPERTY, INCLUDING WITHOUT LIMITATION, THE PROPERTY'S ZONING, BOUNDARIES, AREA, COMPLIANCE WITH APPLICABLE LAWS (INCLUDING LAWS REGARDING ACCESSIBILITY FOR DISABLED PERSONS), OR HAZARDOUS OR TOXIC MATERIALS INCLUDING MOLD OR OTHER ALLERGENS. SELLER AND BUYER ARE EACH ADVISED TO ENGAGE QUALIFIED EXPERTS TO ASSIST WITH THESE DUE DILIGENCE AND FEASIBILITY MATTERS, AND ARE FURTHER ADVISED TO SEEK INDEPENDENT LEGAL AND TAX ADVICE RELATED TO THIS AGREEMENT.

INITIALS:  Buyer __TC__    Date __03/27/2024__    Seller __SJ__    Date __4/9/2024__

          Buyer _____    Date _____    Seller _____    Date _____

DocuSign Envelope ID: 0C90A7B0-8ED8-4EF3-A8G3-DA5F2CE7A12D
Authentisign ID: EDCD0F3D-7EEC-EE11-AAF0-8045BDDAA143

© Commercial Brokers
Association
ALL RIGHTS RESERVED

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2024
Page 15 of 16



## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

IN WITNESS WHEREOF, the parties have signed this Agreement intending to be bound.

Buyer __Tyler Collins__
_____
Printed name and type of entity

Buyer _Tyler Collins_
_____
Signature and title

Date signed _____03/27/2024_____

Buyer _____
Printed name and type of entity

Buyer _____
Signature and title

Date signed _____

Seller __Bishop Road Holding Corp__
_____
Printed name and type of entity

Seller _Sulakhan Johal_          President
_____
Signature and title

Date signed __4/9/2024_____

Seller _____
Printed name and type of entity

Seller _____
Signature and title

Date signed _____

INITIALS:  Buyer __TC__  Date __03/27/2024__   Seller __SJ__  Date __4/9/2024__

Buyer _____  Date _____   Seller _____  Date _____

Authentisign ID: EDCD6F3D-7EEC-EE11-AAF0-6045BDDAA143

**EXHIBIT A \***

[Legal Description]

**Attached separately**

\*   To ensure accuracy in the legal description, consider substituting the legal description contained in the preliminary commitment for title insurance or a copy of the Property's last vesting deed for this page.  Do not neglect to label the substitution "Exhibit A."  You should avoid transcribing the legal description because any error in transcription may render the legal description inaccurate and this Agreement unenforceable.

INITIALS:   Buyer _____ TC _____ Date __03/27/2024__   Seller _____ SJ _____ Date __4/9/2024__

Buyer_____ Date _____   Seller _____ Date _____

Authentisign ID: EDC00F3D-7EEC-EE11-AAF0-6D456DDAA143

Form 22D
Optional Clauses Addendum
Rev. 3/21
Page 1 of 2

**Better Homes and Gardens REAL ESTATE** | **NORTHWEST HOME TEAM**

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

### OPTIONAL CLAUSES ADDENDUM TO PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated ___March 27, 2024___   1

between **Tyler Collins** _____ ("Buyer")   2
　　　　　Buyer　　　　　　　　　　　　　　　　　Buyer

and **Bishop Road Holding Corp** _____ ("Seller")   3
　　　Seller　　　　　　　　　　　　　　　　　　Seller

concerning **1696　Bishop Rd** 　　**Chehalis**　　**WA　98532**　(the "Property").   4
　　　　　Address　　　　　　　　City　　　　State　Zip

**CHECK IF INCLUDED:**   5

1. ☑ **Square Footage/Lot Size/Encroachments.** The Listing Broker and Buyer Broker make no representations   6
concerning: (a) the lot size or the accuracy of any information provided by the Seller; (b) the square footage of   7
any improvements on the Property; (c) whether there are any encroachments (fences, rockeries, buildings) on   8
the Property, or by the Property on adjacent properties. Buyer is advised to verify lot size, square footage and   9
encroachments to Buyer's own satisfaction.   10

2. **Title Insurance.** The Title Insurance clause in the Agreement provides Seller is to provide the then-current ALTA   11
form of Homeowner's Policy of Title Insurance. The parties have the option to provide less coverage by selecting   12
a Standard Owner's Policy or more coverage by selecting an Extended Coverage Policy:   13

　　☐ **Standard Owner's Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to   14
　　apply for the then-current ALTA form of Owner's Policy of Title Insurance, together with homeowner's   15
　　additional protection and inflation protection endorsements, if available at no additional cost, rather than   16
　　the Homeowner's Policy of Title Insurance.   17

　　☐ **Extended Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense to apply for   18
　　an ALTA or comparable Extended Coverage Policy of Title Insurance, rather than the Homeowner's   19
　　Policy of Title Insurance. Buyer shall pay the increased costs associated with the Extended Coverage   20
　　Policy, including the excess premium over that charged for Homeowner's Policy of Title Insurance and   21
　　the cost of any survey required by the title insurer.   22

3. ☐ **Seller Cleaning.** Seller shall clean the interiors of any structures and remove all trash, debris and rubbish   23
from the Property prior to Buyer taking possession.   24

4. ☐ **Personal Property.** Unless otherwise agreed, Seller shall remove all personal property from the Property   25
not later than the Possession Date. Any personal property remaining on the Property thereafter shall become   26
the property of Buyer, and may be retained or disposed of as Buyer determines.   27

5. ☑ **Utilities.** To the best of Seller's knowledge, Seller represents that the Property is connected to:   28
☐ public water main; ☐ public sewer main; ☐ septic tank; ☐ well (specify type) _____ ;   29
☐ irrigation water (specify provider) _____; ☐ natural gas; ☐ telephone; ☐ electricity;   30
☐ cable (specify provider) _____; ☐ internet (specify provider) _____;   31
☐ other _____ .   32

6. ☐ **Insulation - New Construction**. If this is new construction, Federal Trade Commission Regulations require   33
the following to be filled in. If insulation has not yet been selected, FTC regulations require Seller to furnish   34
Buyer the information below in writing as soon as available:   35

WALL INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____   36

CEILING INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____   37

OTHER INSULATION DATA: _____   38

_TC_ 03/27/2024　　　　　　　　　　　SJ  4/9/2024

Buyer's Initials　Date　Buyer's Initials　Date　　Seller's Initials　Date　Seller's Initials　Date

Authentisign ID: EDC0DF3D-7EEC-EE11-AAF0-6045BD0A4143

Form 22D
Optional Clauses Addendum
Rev. 3/21
Page 2 of 2

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**OPTIONAL CLAUSES ADDENDUM TO
PURCHASE & SALE AGREEMENT**
*Continued*

7. ☐ **Leased Property Review Period and Assumption.** Buyer acknowledges that Seller leases the following    39
items of personal property that are included with the sale: ☐ propane tank;  ☐ security system;  ☐ satellite    40
dish and operating equipment;  ☐ other _____ .    41

Seller shall provide Buyer a copy of the lease for the selected items within _____ days (5 days if not filled    42
in) of mutual acceptance. If Buyer, in Buyer's sole discretion, does not give notice of disapproval within    43
_____ days (5 days if not filled in) of receipt of the lease(s) or the date that the lease(s) are due, whichever    44
is earlier, then this lease review period shall conclusively be deemed satisfied (waived) and at Closing, Buyer    45
shall assume the lease(s) for the selected item(s) and hold Seller harmless from and against any further    46
obligation, liability, or claim arising from the lease(s), if the lease(s) can be assumed. If Buyer gives timely    47
notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer.    48

8. ☐ **Homeowners' Association Review Period.** If the Property is subject to a homeowners' association or any    49
other association, then Seller shall, at Seller's expense, provide Buyer a copy of the following documents (if    50
available from the Association) within _____ days (10 days if not filled in) of mutual acceptance:    51

   a. Association rules and regulations, including, but not limited to architectural guidelines;    52
   b. Association bylaws and covenants, conditions, and restrictions (CC&Rs);    53
   c. Association meeting minutes from the prior two (2) years;    54
   d. Association Board of Directors meeting minutes from the prior six (6) months; and    55
   e. Association financial statements from the prior two (2) years and current operating budget.    56

If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (5 days if not    57
filled in) of receipt of the above documents or the date that the above documents are due, whichever is    58
earlier, then this homeowners' association review period shall conclusively be deemed satisfied (waived). If    59
Buyer gives timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be    60
refunded to Buyer.    61

9. ☐ **Homeowners' Association Transfer Fee.** If there is a transfer fee imposed by the homeowners' association    62
or any other association (e.g. a "move-in" or "move-out" fee), the fee shall be paid by the party as provided for    63
in the association documents. If the association documents do not provide which party pays the fee, the fee    64
shall be paid by ☐ Buyer; ☐ Seller (Seller if not filled in).    65

10. ☐ **Excluded Item(s).** The following item(s), that would otherwise be included in the sale of the Property, is    66
excluded from the sale ("Excluded Item(s)"). Seller shall repair any damage to the Property caused by the    67
removal of the Excluded Item(s). Excluded Item(s):    68

     69
     70

11. ☐ **Home Warranty.** Buyer and Seller acknowledge that home warranty plans are available which may provide    71
additional protection and benefits to Buyer and Seller. Buyer shall order a one-year home warranty as follows:    72

   a. Home warranty provider: _____    73
   b. Seller shall pay up to $_____ ($0.00 if not filled in) of the cost for the home warranty, together    74
     with any included options, and Buyer shall pay any balance.    75
   c. Options to be included: _____    76
     _____ (none, if not filled in).    77
   d. Other: _____ .    78

12. ☐ **Other.**    79
     80
     81
     82
     83
     84
     85

*TC* 03/27/2024

Buyer's Initials    Date    Buyer's Initials    Date

—DS
SJ   4/9/2024

Seller's Initials    Date    Seller's Initials    Date

AuthenSign Envelope ID: 0C90A7B05EDDAA143
DocuSign Envelope ID: EDCD0F3D-7EEC-EE11-AAF0-6045EDDAA143
Authentisign ID: EDCD0F3D-7EEC-EE11-AAF0-6045EDDAA143



© Commercial Brokers
Association 2020
ALL RIGHTS RESERVED



CBA Form PS_FIN
Financing Addendum
Rev. 9/2020
Page 1 of 3

## FINANCING ADDENDUM

The following is part of the Purchase and Sale Agreement with Reference Date  **March 27, 2024**

(the "Agreement"), between  **Tyler Collins**                                                                ("Buyer")

and  **Bishop Road Holding Corp**                                                          ("Seller"),

regarding the sale of the Property located at                                                    (the "Property").

IT IS AGREED BETWEEN THE BUYER AND SELLER AS FOLLOWS

☑ **1. NEW FINANCING.**  Buyer's obligations under the Agreement are contingent on Buyer obtaining new financing. Buyer shall submit a complete written application for financing for the Property within five (5) days after waiver or satisfaction of the Feasibility Contingency in Section 23 of the Agreement, pay required costs and make a good faith effort to procure such financing. Buyer shall not reject those terms of a commitment which provide for a loan amount of at least $_____ or **20**_____ % of the purchase price, interest not to exceed **9**_____ % per annum, a term of **240**_____ months, a payment schedule calling for monthly payments amortized over not less than **20**___ years, and total placement fees and points of not more than **2**_____ % of the loan amount. The Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives notice that this condition is satisfied or waived on or before **30**____ days (30 days, if not completed) following waiver or satisfaction of the Feasibility Contingency in Section 23 of the Agreement. If Buyer fails to timely submit a complete written application for financing, this condition shall be deemed waived.

☐ **2. ASSUMPTION OF EXISTING FINANCING.**

   a. **Approval of Documents.** Buyer's obligations under the Agreement are contingent on Buyer's assumption of a note and mortgage or deed of trust, or a real estate contract. Seller shall deliver to Buyer within five (5) days after mutual acceptance of the Agreement a copy of all documents relating to the obligations that Buyer will assume, including the note, deed of trust, mortgage or real estate contract (or any other underlying debt instruments); any guaranties, non-recourse carve-outs, or indemnity agreements; and any fixture filings or financing statements (the "Underlying Loan Documents"). Buyer shall be deemed to have approved the Underlying Loan Documents unless Buyer gives notice of disapproval during the Feasibility Period.

   b. **Consent to Assumption.** Buyer shall submit a complete application for assumption of the Underlying Loan Documents together with any required application fee no later than five (5) days after the Feasibility Contingency Date. Upon Buyer's request, Seller shall assist Buyer by requesting the lender's consent to the assumption on Buyer's behalf. Buyer's principals shall be required to execute any reasonable guaranties and indemnities required by the lender. Unless Buyer has obtained consent or waived this condition within _____ days (30 days, if not completed) after the Feasibility Contingency Date and provided Buyer has timely complied with its obligations under this Addendum, this Agreement shall terminate and, Buyer shall receive a refund of the earnest money.

   c. **Assumption Fees and Expenses.** Buyer shall pay all costs and expenses attributable to the assumption of the underlying indebtedness including all application fees, processing charges, and assumption fees.

   d. **Release of Seller and Principals.** Seller's obligations under the Agreement ☐ shall be ☐ shall not be (shall not be, if not completed) conditioned upon Seller and all guarantors or indemnitors being released from their obligations arising under the Underlying Loan Documents for the period on and after Closing.

INITIALS:  Buyer _**TC**___ Date _03/27/2024_   Seller _**SJ**___ Date _4/9/2024_

          Buyer _____ Date _____   Seller _____ Date _____

DocuSign Envelope ID: DC90A7B9-5ED9-48EF-A8C3-DA5F2EE7A12D
Authentisign ID: EDCD0F3D-7EEC-EE11-AAF0-6D45BD0AA143

© Commercial Brokers
Association 2020
ALL RIGHTS RESERVED



CBA Form PS_FIN
Financing Addendum
Rev. 9/2020
Page 2 of 3

## FINANCING ADDENDUM
### (CONTINUED)

☐ **3. SELLER FINANCING.**

a. **Debt Instruments.** If Seller is financing a portion of the Purchase Price, unless different forms are attached to this Agreement, Buyer shall execute and submit to the Closing Agent: (i) LPB Form No. 28A-05 Promissory Note (CBA Form N-1A) and the DUE ON SALE and COMMERCIAL PROPERTY optional clauses in that form shall apply; (ii) LPB Form No. 20-05 Short Form Deed of Trust; and (iii) CBA Form DTR Deed of Trust Rider. In addition, Buyer authorizes Seller and Closing Agent to file a financing statement to perfect Seller's security interest in the personal property described in the Deed of Trust Rider.

b. **Payment Terms.** Buyer shall pay a down payment in the total amount (including the Earnest Money) of ☐ $_____ , or ☐ _____ % of the Purchase Price (check and complete only one box). The balance of the Purchase Price shall be paid in accordance with the terms of the Promissory Note, which shall bear interest at the rate of _____ % per annum, and shall be payable as follows:

**Installment Payments (choose one):**

☐ No installment payments are required;

☐ Monthly principal and interest installment payments in equal amounts sufficient to fully amortize the outstanding principal balance at the stated interest rate over_____years;

☐ Monthly principal and interest installment payments totaling $_____;

☐ Monthly installment payments of interest only;

☐ other _____.

**Payment Schedule (choose one, if applicable):**

The installment payments shall commence on the first day of the first month after closing and shall continue on the same day of each succeeding month until:

☐ _____ months from the date of closing;

☐ _____ on which date all outstanding principal and interest shall be due.

Buyer ☐ may ☐ may not (may, if not completed) prepay the outstanding principal balance without premium or penalty. If Seller receives any monthly payment more than _____days (15 days if not filled in) after its due date, then Buyer shall be in default and a late payment charge of $_____ or _____% of the delinquent amount (5% of the delinquent amount if not filled in) shall be added to the scheduled payment. The principal shall, at Seller's option, bear interest at the rate of _____% per annum (18% or the maximum rate allowed by law, whichever is less, if not filled in) during any period of Buyer's default. Buyer shall have _____ days (5 days if not filled in) after written notice from Seller to cure a *default before Seller may declare all outstanding sums to be immediately due and payable.*

**(Note to Buyer and Seller**: If the Property is currently used primarily for agricultural purposes, then a non-judicial foreclosure/forfeiture remedy is available to Seller only by using a real estate contract and is not available with a deed of trust.)

**4. ESTOPPELS/SNDAS.** If Buyer or its lender require estoppel certificates or subordination, nondisturbance, and attornment agreements ("Estoppel/SNDAs") from some or all of the non-residential tenants at the Property, then Seller shall cooperate with Buyer to obtain them. The form of the Estoppels/SNDAs shall be CBA Form PS_TEC, or any different form required by Buyer's lender which Buyer has delivered to Seller during the Feasibility Period. Promptly after the Feasibility Period, Seller shall use commercially reasonable efforts and diligence to obtain the Estoppel/SNDAs from affected tenants; provided, however, Seller shall not be required to incur any liability or out-of-pocket expenses which are not reimbursed by Buyer. Buyer shall have no separate contingency for receipt of the Estoppels/SNDAs other than as otherwise agreed by Seller in writing.

| INITIALS: | Buyer | *TC* | Date | 03/27/2024 | Seller | *SJ* | Date | 4/9/2024 |
|---|---|---|---|---|---|---|---|---|
| | Buyer | | Date | | Seller | | Date | |

Authentisign ID: EDCD0F3D-7EEC-EE11-AAF0-6045BDDAA143

© Commercial Brokers
Association 2020
ALL RIGHTS RESERVED



CBA Form PS_FIN
Financing Addendum
Rev. 9/2020
Page 3 of 3

### FINANCING ADDENDUM
(CONTINUED)

5. **ADDITIONAL PROVISIONS.** The terms of the Agreement remain unchanged except as supplemented in this Addendum or provided below:

INITIALS:    Buyer _____ TC _____ Date ___ 03/27/2024 ___    Seller _____ SJ _____ Date ___ 4/9/2024 ___

Buyer _____ Date _____    Seller _____ Date _____

Authentisign ID: EDCD0F3D-7EEC-EE11-AAF0-6045BDDAA143

© Commercial Brokers
Association 2020
ALL RIGHTS RESERVED



CBA Form UA
Utility Addendum
Rev. 7/2020
Page 1 of 2



NORTHWEST
HOME TEAM

## UTILITY CHARGES ADDENDUM

The following is part of the Purchase and Sale Agreement with Reference Date **March 27, 2024**

between **Tyler Collins** ("Buyer")

and **Bishop Road Holding Corp** ("Seller")

regarding the sale of property located at **1696 Bishop Rd, Chehalis, WA 98532** (the "Property").

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds necessary to satisfy unpaid utility charges affecting the Property. The names and addresses of all utilities providing service to the Property and having lien rights are as follows:

Water District:

Name                                    e-mail or website (optional)

Address

City, State, Zip

Sewer District:

Name                                    e-mail or website (optional)

Address

City, State, Zip

Irrigation District:

Name                                    e-mail or website (optional)

Address

City, State, Zip

Garbage:

Name                                    e-mail or website (optional)

Address

City, State, Zip

Electricity:

Name                                    e-mail or website (optional)

Address

City, State, Zip

INITIALS:  Buyer _TC_  Date _03/27/2024_  Seller _SJ_  Date _4/9/2024_

Buyer _____  Date _____  Seller _____  Date _____



TRANSACTIONS

Authentisign ID: EDCD0F3D-7EEC-EE11-AAF0-6045BDDAA143

© Commercial Brokers
Association 2020
ALL RIGHTS RESERVED



CBA Form UA
Utility Addendum
Rev. 7/2020
Page 2 of 2

## UTILITY CHARGES ADDENDUM
(CONTINUED)

Gas:

_____
Name                                  e-mail or website (optional)

_____
Address

_____
City, State, Zip

Special District(s):
(local improvement districts
or utility local improvement)

_____
Name                                  e-mail or website (optional)

_____
Address

_____
City, State, Zip

IF THE ABOVE INFORMATION HAS NOT BEEN FILLED IN AT THE TIME OF MUTUAL ACCEPTANCE OF THIS AGREEMENT, THEN (1) WITHIN_____ DAYS (5 DAYS IF NOT FILLED IN) OF MUTUAL ACCEPTANCE OF THIS AGREEMENT, SELLER SHALL PROVIDE THE LISTING BROKER, SELLING BROKER, OR CLOSING AGENT WITH THE NAMES AND ADDRESSES OF ALL UTILITY PROVIDERS HAVING LIEN RIGHTS AFFECTING THE PROPERTY AND (2) BUYER AND SELLER AUTHORIZE LISTING BROKER, SELLING BROKER OR CLOSING AGENT TO INSERT INTO THIS ADDENDUM THE NAMES AND ADDRESSES OF THE UTILITY PROVIDERS IDENTIFIED BY SELLER. SELLER ACKNOWLEDGES THAT THIS ADDENDUM DOES NOT RELIEVE SELLER OF ITS OBLIGATION TO PAY UTILITY CHARGES, BILLED OR UNBILLED OR EVIDENCED BY A RECORDED LIEN OR NOT. THE PARTIES UNDERSTAND THAT NEITHER LISTING BROKER NOR SELLING BROKER IS RESPONSIBLE FOR PAYING UTILITY CHARGES OR FOR INSURING THAT THEY ARE PAID BY ANY OTHER PERSON.

INITIALS: Buyer_____ Date_____   *TC*   03/27/2024   Seller____ *SJ* ____ Date____ 4/9/2024 ____

           Buyer_____ Date_____        Seller_____ Date _____



© Commercial Brokers
Association 2020
ALL RIGHTS
RESERVED

CBA



CBA Form PSA
Addendum/Amendment
to PSA
Rev. 7/2020
Page 1 of 1

### ADDENDUM/AMENDMENT TO
### PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement with Reference Date **March 27, 2024**

(the "Agreement") between **Tyler Collins** ("Buyer")

and **Bishop Road Holding Corp** ("Seller") regarding the sale

of the property located at **1696 Bishop Rd, Chehalis, WA 98532** (the "Property").

IT IS AGREED BETWEEN THE BUYER AND SELLER AS FOLLOWS:

~~Upon mutual acceptance and delivery of earnest money to escrow. The earnest money shall be immediately released to the seller and shall be non-refundable.~~

*S. J* 4-9-24     *TC* 04/09/24

*S. J*
4-9-24

*TC* 04/09/24

1. Upon mutual acceptance of the PSA, and delivery of the Earnest Money to Escrow, the Earnest Money shall become immediately non-refundable, but applicable to the purchase price and held in Escrow. The sole condition the Earnest Money would be refundable to the Buyer is if the Seller is unable to obtain Court Approval, per the clause below. Immediately upon Court Approval, the Earnest Money shall be released to the Seller.

*S. J*
4-9-24

*TC* 04/09/24

2. **Court Approval:** The completion of the sale is conditional upon receiving a vesting order from the court as the seller has entered CCAA ("Companies' Creditors Arrangement Act") protection in Canada. The CCAA order is being recognized under Chapter 15 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware.

*S. J* 4-9-24

*TC* 04/09/24

Buyer and Seller agree that the offer
expiration date shall be April 9, 2024.

ALL OTHER TERMS AND CONDITIONS of the Agreement remain unchanged.

INITIALS: Buyer _*TC*_ Date _03/27/2024_ Seller _SJ_ Date _4/9/2024_

Buyer _____ Date _____ Seller _____ Date _____



**TAX ACCOUNT 017766-000-000**

**"EXHIBIT A"**

TRACT B OF BOUNDARY LINE AGREEMENT RECORDED JULY 11, 2014 UNDER AUDITOR'S FILE NO. 3417155 AND AS SHOWN ON BOUNDARY LINE AGREEMENT SURVEY RECORDED JULY 11, 2014 UNDER AUDITOR'S FILE NO. 3417156, BEING A PORTION OF THE SOUTHWEST QUARTER IN SECTION 10, TOWNSHIP 13 NORTH, RANGE 2 WEST, W.M.

LEWIS COUNTY, WASHINGTON

*TC* 03/27/24     SJ  4/9/2024