# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>Pride Group Holdings Inc., *et al.*[1]<br>Debtors in Foreign Proceedings. | Chapter 15<br>Case No. 24-10632 (CTG)<br>Jointly Administered |

**DECLARATION OF AMRINDER JOHAL IN SUPPORT
OF MOTION OF THE FOREIGN REPRESENTATIVE FOR
ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF
PROPERTY OF DEBTOR BISHOP ROAD HOLDING CORP.
FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF**

I, Amrinder Johal, pursuant to 28 U.S.C. § 1746, hereby declare (this "Declaration") under penalty of perjury under the laws of the United States, as follows:

1. I am the Vice President of the Pride Group, a group of related companies comprising a trucking and logistics conglomerate that operates in Canada and the United States headquartered in Mississauga, Ontario, Canada (the "Pride Group"). The Pride Group includes Pride Group Holdings Inc. and its affiliates that are debtors (the "Debtors") in these chapter 15 cases (the "Chapter 15 Cases"). The Debtors and certain of their affiliates are the subject of proceedings (the "CCAA Proceedings") under the Companies' Creditors Arrangement Act, pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court").

2. I am an individual over the age of 18 and, if called upon, could and would testify to the facts set forth in this Declaration. Except as otherwise indicated, all facts set forth in this

---

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

Declaration are based upon my personal knowledge, information supplied to me by members of the Pride Group's management and professionals or learned from my review of relevant documents, or my opinion based upon my experience and knowledge of the Pride Group's industry, operations, and financial condition.

3. I submit this Declaration in support of the *Motion of the Foreign Representative for Entry of an Order (I) Authorizing the Sale of Property of Debtor Bishop Road Holding Corp. Free and Clear of Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* (the "Motion"),[2] filed contemporaneously herewith.

## THE SALE PROCESS FOR THE BISHOP PROPERTY

4. In November 2021, Debtor Bishop Road Holding Corp. ("Bishop") purchased a parcel of real property located at 1696 Bishop Road, Chehalis, Washington 98532 (the "Property"). The Property is located on a major interstate highway in Washington state, and the Pride Group operated the Property as a secondary dealership location that provided ancillary services to its customers. Given the relative remoteness of its location, the Property was never intended to be a primary dealership location for the Pride Group. Following the commencement of the CCAA Proceedings and these Chapter 15 Cases, the Pride Group has been in the process of restructuring its business and downsizing to focus on operating fewer, more central dealership locations. As a result, Bishop no longer intends to use the Property and has decided to sell the Property.

5. Accordingly, Bishop retained a licensed commercial real estate broker (the "Broker") on January 9, 2024 to publicly list the Property for sale. The Broker formally marketed the Property following its retention for a total of approximately 90 days. Bishop received several

---

[2] Capitalized terms used in this Declaration but not otherwise defined shall have the meanings ascribed to them in the Motion.

2

informal indications of interest and conducted two showings of the Property, and ultimately received one offer from Tyler Collins (the "Purchaser"), which was accepted by Bishop and culminated in the Sale Agreement between the parties thereto. Bishop believes that entry into, and consummation of the transactions contemplated by, the Sale Agreement represents the highest and best value for the Purchased Assets (defined below) under the circumstances in its business judgement and is in the best interests of the Debtors, their creditors, and other stakeholders.

## THE SALE AGREEMENT

6.     On April 9, 2024, Bishop, as the seller, and the Purchaser entered into the Sale Agreement pursuant to which the Purchaser agreed to purchase from Bishop all of Bishop's right, title and interest in the Property, along with (i) all easements and rights appurtenant to the Property, (ii) all buildings, fixtures and improvements on the Property, (iii) all unexpired leases and subleases; and (iv) all included personal property (collectively, the "Purchased Assets").

7.     I understand that the Foreign Representative is submitting the Motion on the date hereof to provide notice to parties in interest as required by Local Rule 9006-1 to enable Bishop to close the transactions contemplated by the Sale Agreement by the Closing Date, scheduled to occur on May 29, 2024.

8.     The following is a summary of certain material provisions of the Sale Agreement.[3]

| Provision | Description | Location in Sale Agreement |
|---|---|---|
| ***Purchased Assets*** | Buyer agrees to buy and Seller agrees to sell the commercial real estate located at 696 Bishop Rd., Chehalis, WA 98532 (the "Property") and all improvements thereon. Unless expressly provided otherwise in the Sale Agreement or its addenda, the Property shall include (i) all of Seller's rights, title and interest in the Property, (ii) all easements and rights | Sale Agreement ¶ 20 |

---

[3] Capitalized terms used in this table but not otherwise defined herein shall have the meanings ascribed to them in the Sale Agreement.

3

| Provision | Description | Location in Sale Agreement |
|---|---|---|
|  | appurtenant to the Property, (iii) all buildings, fixtures, and improvements on the Property, (iv) all unexpired leases and subleases; and (v) all included personal property. |  |
| *Purchase Price* | $3,500,000 | Sale Agreement ¶ 4 |
| *Sale to Insider* Local Bankr. R. 6004-1(b)(iv)(A) | The Purchaser is not an insider as defined by section 101(31) of the Bankruptcy Code. | N/A |
| *Agreements with Management* Local Bankr. R. 6004-1(b)(iv)(B) | N/A | N/A |
| *Releases* Local Bankr. R. 6004-1(b)(iv)(C) | N/A | N/A |
| *Private Sale/No Competitive Bidding* Local Bankr. R. 6004-1(b)(iv)(D) | The sale of the Purchased Assets is fair and reasonable under the circumstances, is the result of good-faith, arm's length negotiations, and is in the best interests of the Debtors, their creditors, and other stakeholders. | N/A |
| *Closing and Other Deadlines* Local Bankr. R. 6004-1(b)(iv)(E) | The Closing Date is scheduled to occur on May 29, 2024. | Sale Agreement ¶¶ 7 and 28 |
| *Good Faith Deposit* Local Bankr. R. 6004-1(b)(iv)(F) | Buyer Broker and Buyer Brokerage Firm are authorized to transfer $30,000 (the "Earnest Money") to Closing Agent as necessary. Buyer Brokerage Firm shall deposit any check to be held by Buyer Brokerage Firm within 3 days after receipt or Mutual Acceptance, whichever occurs later. The interest, if any, shall be credited at closing to Buyer. If the sale fails to close, whoever is entitled to the Earnest Money is entitled to interest thereon. Unless otherwise provided in the Sale Agreement, the Earnest Money shall be applicable to the Purchase Price. | Sale Agreement ¶¶ 5 and 22 |
| *Interim Arrangements with Purchaser* Local Bankr. R. 6004-1(b)(iv)(G) | N/A | N/A |
| *Use of Proceeds* Local Bankr. R. 6004-1(b)(iv)(H) | N/A | N/A |
| *Tax Exemption* Local Bankr. R. 6004-1(b)(iv)(I) | N/A | N/A |

| Provision | Description | Location in Sale Agreement |
|---|---|---|
| *Record Retention* Local Bankr. R. 6004-1(b)(iv)(J) | N/A | N/A |
| *Sale of Avoidance Actions* Local Bankr. R. 6004-1(b)(iv)(K) | N/A | N/A |
| *Requested Findings as to Successor Liability* Local Bankr. R. 6004-1(b)(iv)(L) | N/A | N/A |
| *Sale Free and Clear of Unexpired Leases* Local Bankr. R. 6004-1(b)(iv)(M) | N/A | N/A |
| *Credit Bid* Local Bankr. R. 6004-1(b)(iv)(N) | N/A | N/A |
| *Relief from Bankruptcy Rule 6004(h)* Local Bankr. R. 6004-1(b)(iv)(O) | Time is of the essence given the Closing Date. Accordingly, the Foreign Representative requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h). | N/A |

9. I believe there is a sound business reason to consummate the Sale Agreement. Bishop no longer intends to use the Property for operational or any other business purposes and therefore no longer requires the Property. Accordingly, Bishop marketed the Property for sale and engaged parties that were interested in purchasing the Purchased Assets. Bishop ultimately accepted Purchaser's offer and believes that entry into, and consummation of the transactions contemplated by, the Sale Agreement represents the highest and best value for such assets under the circumstances in its business judgment.

10. I believe that the Purchase Price provided in the Sale Agreement is fair and reasonable. The Purchased Assets were publicly listed for sale by the Broker in Washington state, and the Purchase Price was the result of several rounds of negotiations between Bishop and the

Purchaser, and is the highest and best offer received to date. Thus, I believe the consideration provided constitutes a fair and reasonable price for the Purchased Assets.

11.     The Sale Agreement was entered into without fraud or collusion, and is the result of a marketing process undertaken by Bishop and the product of arm's-length, good-faith negotiations between the parties thereto. Bishop also did not enter into the Sale Agreement for the purpose of hindering, delaying, or defrauding present or future creditors of Bishop. As such, I believe the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and has not violated section 363(n) of the Bankruptcy Code.

12.     I understand that no party holding a lien, claim, encumbrance or other interest has objected to the sale of the Purchased Assets (I believe the only parties that have a lien on the Purchased Assets are Roynat Inc., as the mortgagee, and the DIP Lenders), and all such parties will have an opportunity to object at the hearing on the Motion. I further understand that to the extent any liens, claims, encumbrances, or other interests exist, those liens, claims, encumbrances and other interests will attach to the proceeds of the Purchased Assets in the order of priority and with the same validity, force and effect that they have as against the Purchased Assets immediately prior to the Sale Agreement. Accordingly, I believe that the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and other interests satisfies the statutory requirements of section 363(f) of the Bankruptcy Code.

13.     Accordingly, I submit that the sale of the Purchased Assets pursuant to the Sale Agreement is in the best interests of their estates, creditors and other parties in interest, and is a sound exercise of Bishop's business judgment.

[*Remainder of page left intentionally blank*]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.


Dated: May 3, 2024
      Toronto, Canada

                                      */s/ Amrinder Johal*
                                      Amrinder Johal