1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
2

3   IN RE:                        .  Chapter 15
                                  .  Case No. 24-10632 (CTG)
4   PRIDE GROUP HOLDINGS, INC., .
    *et al.,*                     .  (Jointly Administered)
5                                 .
                                  .  Courtroom No. 7
6                                 .  824 North Market Street
                                  .  Wilmington, Delaware 19801
7        Debtors in a Foreign     .
         Proceeding.              .  Thursday, May 2, 2024
8   . . . . . . . . . . . . . . .  9:00 a.m.

9                        TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE CRAIG T. GOLDBLATT
10                 UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:

12  For the Debtors:          Derek Abbott, Esquire
                              Andrew Remming, Esquire
13                            MORRIS, NICHOLS, ARSHT
                                & TUNNELL LLP
14                            1201 North Market Street
                              16th Floor
15                            Wilmington, Delaware 19801

16                            Christopher Hunker, Esquire
                              LINKLATERS LLP
17                            1290 Avenue of the Americas
                              New York, New York 10104
18
    (APPEARANCES CONTINUED)
19
    Audio Operator:           Ian Willoughby, ECRO
20

21  Transcription Company:    Reliable
                              The Nemours Building
22                            1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
23                            Telephone: (302)654-8080
                              Email:  gmatthews@reliable-co.com
24
    Proceedings recorded by electronic sound recording,
25  transcript produced by transcription service.

1    <u>APPEARANCES (CONTINUED)</u>:

2    For Triumph Financial
     Services:                  Jami Nimeroff, Esquire
3                               BROWN MCGARRY NIMEROFF LLC
                                Two Penn Center, Suite 610
4                               1500 John F. Kennedy Boulevard
                                Philadelphia, Pennsylvania 19102
5
     For Royal Bank of
6    Canada, as Agent:          Stephen Tetro, II, Esquire
                                CHAPMAN & CUTLER LLP
7                               320 South Canal Street
                                27th Floor
8                               Chicago, Illinois 60606

9    For the U.S. Trustee:      Timothy Fox, Esquire
                                OFFICE OF THE UNITED STATES TRUSTEE
10                              844 King Street, Suite 2207
                                Lockbox 35
11                              Wilmington, Delaware 19801

12   For Regions:               Sean Scott, Esquire
                                MAYER BROWN LLP
13                              71 South Wacker Drive
                                Chicago, Illinois 60606

14

15

16

17

18

19

20

21

22

23

24

25

1                                    INDEX

2  MOTION:                                                        PAGE

3  Agenda
   Item 1: Verified Petition for (I) Recognition of          4
4          Foreign Main Proceedings, (II) Recognition
           of Foreign Representative, and (III)
5          Related Relief Under Chapter 15 of the
           Bankruptcy Code (D.I. 2, filed 4/1/24)
6
           Court's Ruling:                                      25
7


8  STATUS CONFERENCE:                                           PAGE
9
   Agenda
10 Item 2: Motion to Shorten Notice with Respect to           27
           the Motion of Triumph Financial Services,
11         LLC to Dismiss or Terminate Chapter 15 Case
           of Arnold Transportation Services, Inc. and
12         Vacate Provisional Orders as to Arnold
           Transportation Services, Inc. or, in the
13         Alternative, for Relief From Such Orders to
           the Extent Necessary or Appropriate
14         (D.I. 137, filed 4/29/24)


15 DECLARATIONS:                                                PAGE
16
   1) Rachel Nicholson                                         6
17

18

19

20

21

22

23

24

25

1      (Proceedings commenced at 9:00 a.m.)

2           THE COURT:  Please be seated.  So, good morning.

3  We're here in In Re Pride Group Holdings Inc., which is Case

4  Number 24-10632.

5           You can proceed.

6           MR. HUNKER:  Good morning, Your Honor.

7  Christopher Hunker from Linklaters on behalf of the foreign

8  representative.  I'm joined today in the courtroom by my

9  colleagues from Morris Nichols and my partner Penelope

10 Jenson.  We also have our declarants Mr. Benson and Ms.

11 Nicholson on the Zoom today, and we would like to thank the

12 Court for permitting them to appear telephonically at today's

13 hearing.

14          Your Honor, we have just two matters going forward

15 today.  The first is our Chapter 15 petition for recognition

16 of the CCAA proceedings as foreign main proceedings and

17 related relief.  And the second is Triumph's motion to

18 shorten notice which was carried to today following Tuesday's

19 status conference.  Your Honor, we've been working tirelessly

20 with the parties over the past week or so to reach an

21 agreement on a consensual recognition order and I'm pleased

22 to report that we have made significant progress over that

23 time and we are here today on what I believe is a largely

24 uncontested basis.

25

1        Last night, we filed a revised form of recognition

2   order that appears at Docket Number 149 which we believe

3   resolves Regions Banks limited objection and informal

4   comments we received from the United States Trustees office,

5   the DIP lenders, Mitsubishi, Daimler, PACCAR, and Triumph.

6        If it's okay with Your Honor, I'll first start

7   with the summary of the Chapter 15 petitions of the

8   declarations and then perhaps we can walk through the revised

9   proposed order.

10       THE COURT:  Very well.

11       MR. HUNKER:  Thank you, Your Honor.  On April 1st,

12  2024, the foreign representative filed the Chapter 15

13  petitions for Prides Canadian and U.S. operating companies

14  and non-real estate holding companies.  On the same date, the

15  foreign representative filed the verified petition requesting

16  recognition of the CCAA proceedings as foreign main

17  proceedings and related relief which appears at Docket Number

18  2.  We also filed Mr. Benson's declaration in support of the

19  verified petition which appears at Docket Number 3 and Ms.

20  Nicholson's declaration on Canadian law issues which appears

21  at Docket Number 4.

22       Following the initial petition date, the foreign

23  representative filed additional Chapter 15 petitions for

24  Prides Real Estate Holding Companies on April 15th.  The

25  foreign representative also filed an amended verified

1   petition, which appears at Docket Number 121, and an amended

2   version of Mr. Benson's declaration in support of the

3   verified petition which appears at Docket Number 120.

4           Taking those in turn, Your Honor, at this time, I

5   would like to move into evidence Ms. Nicholson's declaration

6   which appears at Docket Number 4.

7           THE COURT:  Okay.  Is there any party that would

8   like to be heard in opposition to the motion to admit into

9   evidence the Nicholson declaration that is at D.I. 4.

10       (No verbal response)

11          THE COURT:  I'm seeing none.  It will be admitted.

12       (Nicholson declaration received into evidence)

13          THE COURT:  Does any party in interest wish to

14  cross examine Ms. Nicholson with respect to the matters set

15  forth in that declaration?

16       (No verbal response)

17          THE COURT:  Okay.  Seeing none.  You can proceed.

18          MR. HUNKER:  Thank you, Your Honor.  I would also

19  like to move Mr. Benson's amended declaration into evidence

20  which appears at Docket Number 120.

21          THE COURT:  Okay.  Is there any party that would

22  like to be heard with respect to the admission into evidence

23  of the amended Benson declaration that is at D.I. 120?

24       (No verbal response)

25          THE COURT:  Seeing none, that will be admitted

1        (Benson declaration received into evidence)

2            THE COURT:  Is there any party in interest that

3   wishes to cross examine the declarant with respect to the

4   matters set forth in the declaration?

5        (No verbal response)

6            THE COURT:  Okay.  Seeing none, Mr. Hunker, you

7   can proceed.

8            MR. HUNKER:  Thank you, Your Honor.  I'm pleased

9   to report that we did not receive any objections for

10  recognition of the CCAA proceedings as foreign main

11  proceedings other than Regions Banks limited objection which,

12  I believe, we have now resolved.

13          Your Honor, we believe the Chapter 15 recognition

14  of the CCAA proceedings is appropriate under the facts and

15  circumstances of this case.  The CCAA proceedings satisfied

16  the statutory definition of a foreign proceedings under

17  Section 10123 of the Bankruptcy Code. They're foreign main

18  proceedings because they are pending in Canada which is where

19  the debtors center of main interest is located.

20          Mr. Benson was properly appointed and authorized

21  to act as the foreign representative pursuant to the Canadian

22  courts initial order and the foreign petitions were properly

23  filed and satisfy the statutory requirements under Section

24  1515(c) of the Bankruptcy Code.

25          Your Honor, the amended verified petition also

1 requests relief under Section 1521 and 1507 of the Bankruptcy

2 Code including enforcement on a final basis of the Canadian

3 orders that have already been entered that this Court

4 enforced on a provisional basis; approval of an injunction

5 against any action in the United States that is inconsistent

6 with those Canadian orders; approval on a final basis of the

7 DIP charge and other charges that this Court previously

8 approved on a provisional basis; approval of adequate

9 protection replacement liens on property of the applicable

10 Pride entities located in the United States, and approval of

11 506(c), 552(b), and marshalling waivers.

12        We believe the relief requested is consistent with

13 Section 1521 of the Bankruptcy Code as it will help

14 effectuate the purpose of Chapter 15 by enforcing Canadian

15 court orders in the United States which will enable the

16 foreign representative to pursue an orderly restructuring

17 process in Canada under the supervision of the Canadian

18 Court.  We also believe that additional assistance under

19 Section 1507 is appropriate as we satisfy all of the relevant

20 factors set forth in Section 1507(b).  And the requested

21 relief is consistent with principles of comity and relief

22 granted to foreign debtors in other Chapter 15 cases.

23        Unless Your Honor has any questions, I'm happy to

24 walk through the changes to the revised proposed recognition

25 order at Docket Number 149.

1          THE COURT:  Okay.  Hold on one second.  I don't

2   have -- I was able to look at the revised form of order this

3   morning.  I'm happy to give you a chance to explain what the

4   revisions are, but I don't independently have questions.

5          MR. HUNKER:  Okay.  Thank you, Your Honor.  Does

6   Your Honor need a copy of the revised order?

7          THE COURT:  No.  I've got it in front of me.

8          MR. HUNKER:  Okay.  Great.  Thank you, Your Honor.

9   So, working off of the redline that we filed at Docket Number

10  149-2, the first change I would highlight is on page 8 at the

11  end Paragraph 6.  We've agreed that the injunction in the

12  order does not apply to the exercise of rights and remedies

13  to the extent they are permitted by the Canadian Court

14  orders.

15          On page 9, the changes made to the end of

16  Paragraph 8 clarify that we are not seeking relief with

17  respect to perspective orders entered by the Canadian Court

18  but we reserve the right to seek that relief and parties, of

19  course, reserve their right to object to that relief.  And

20  that was one of the points that Regions Bank raised in their

21  limited objection that we were able to resolve with this

22  language.

23          THE COURT:  Terrific.

24          MR. HUNKER:  On page 10, the changes to the

25  adequate protection provisions are designed to clarify that

1  adequate protection liens attached to the assets of the

2  applicable Pride entity or entities on the same collateral

3  located in the United States against the same entities as

4  existed under the applicable credit or other documents, and

5  attached to the same extent and priority as existed as the

6  date of the initial order.

7           THE COURT:  Okay.

8           MR. HUNKER:  The next change I would highlight is

9  on page 11, Paragraph 11, that deals with the waivers that we

10 are seeking under Section 506(c) and 552(b).  There are no

11 significant changes to this provision but I would like to

12 note, for the record, that we have extensive discussions with

13 the United States Trustee on the inclusion of this provision.

14           I've agreed to note for the record that the

15 Canadian Court amended and restated initial order does not

16 permit Pride or anyone else to seek to surcharge collateral

17 without the DIP lenders consent, nor is there any ability in

18 Canada to seek equitable relief akin to Section 552(b) with

19 respect to liens on post-petition assets or proceeds of

20 collateral.

21           On that basis, I believe Mr. Fox has agreed that

22 the relief we are seeking is appropriate under the facts and

23 circumstances of this case.  We have also agreed with Mr. Fox

24 to note, for the record, that the U.S. Trustees agreement to

25 the inclusion of this provision, in this case, is not binding

1  on the U.S. Trustee and other cases but, nevertheless, is

2  appropriate here.

3         THE COURT:  Okay.

4         MR. HUNKER:  Turning to page 12, Your Honor.  The

5  edition of Paragraph 12 is intended to note circumstances in

6  which a secured creditor may be entitled to sell or otherwise

7  dispose of truck collateral or equipment and those are

8  limited to circumstances in which the monitor and the CRO

9  have concluded that the applicable lender has a senior

10  security interest in the relevant truck collateral or

11  equipment.  The monitor and the CRO have agreed to surrender

12  that collateral to the applicable lender and this Court or

13  the Canadian Court has entered an order authorizing the

14  lender to dispose of that collateral.

15         Your Honor, on page 13, we've agreed to delete the

16  last sentence of Paragraph 13 at the request of the United

17  States Trustee.

18         THE COURT:  Okay.

19         MR. HUNKER:  On page 14, Paragraph 15, or new

20  Paragraph 15, we have agreed to prohibit intercompany

21  advances to two of the U.S. LP entities which is consistent

22  with the relief we agreed to as part of the provisional

23  relief order.  And again, addresses one of the issues that

24  Regions raised in its limited objection.

25         New Paragraph 16 is designed to be coextensive

1  with the relief already granted in the amended and restated

2  initial order and restricts sales of certain assets without

3  the consent of the relevant secured party.

4          New Paragraph 17 and 18 are essentially in the

5  nature of reservation of rights for parties to request

6  adequate protection and for Mitsubishi to seek certain relief

7  from this Court if it believes that is necessary or

8  appropriate.

9          Paragraph 19 -- I should say the changes to

10  Paragraph 19 are consistent with the amended petition in

11  which we state that we are not seeking any relief with

12  respect to the Arnold entities.  We've incorporated Ms.

13  Nimeroff's comments to this paragraph and other provisions of

14  the order to clarify that we are not seeking any relief with

15  respect to those entities in this order.

16          Your Honor, as previewed at Tuesday's status

17  conference, we have now filed Chapter 7 petitions for the

18  four Arnold entities and we can talk about that when we get

19  to the motion to shorten.

20          THE COURT:  Okay.

21          MR. HUNKER:  New Paragraph 20 is consistent with

22  the prior provision or relief order and clarifies that the

23  only relief granted with respect to non-debtor entities, so

24  the entities that are not Chapter 15 debtors and not

25  applicants in the CCAA proceedings, is based on Sections 1519

1  and 1521 of the Bankruptcy Code and principles of comity, and

2  specifically not Section 364, but does enforce the relevant

3  provisions of the Canadian Court orders consistent with the

4  previous provision or relief order.

5          THE COURT:  Okay.

6          MR. HUNKER:  Your Honor, I know that was a lot.  I

7  think it reflects the hard work that's gone into this revised

8  order.  And we would like to thank the parties for working

9  constructively with us to achieve what, we think, is a

10  consensual recognition order.  I believe all these changes

11  address any issues that have been brought to our attention.

12  And so, on that basis, unless Your Honor has any questions,

13  we would ask that the recognition order be approved.

14          THE COURT:  Okay.  Thank you very much.  I don't

15  independently have questions but obviously wanted to make

16  sure that anyone who wants to be heard with respect to the

17  entry of this order has that opportunity.  So, let me see, is

18  there any party interest that would like to be heard?

19          MR. SCOTT:  Good morning, Your Honor.  Sean Scott

20  of Mayer Brown on behalf of Regions Bank.

21          I did want to amplify a few comments made by Mr.

22  Hunker with respect to the resolution of our limited

23  objection.  I do want to reiterate the point that, as Mr.

24  Hunker said, the order is meant to reflect no recognition of

25  future orders.  The governance protocol in particular in

1   Canada remains a highly negotiated issue that is not set for

2   hearing for another two weeks basically.  The securitization

3   funders, including my client, are continuing to negotiate

4   that in Canada.  And whether that will be the subject of

5   consensual relief or contested proceedings in Canada remains

6   to be seen.  So, certainly we don't want any prospective

7   recognition of an order that deals with our parties' assets.

8           With respect to the code relief, you heard from

9   Mr. Bartley at the last hearing and from myself at the first

10  day, we remain concerned with respect to TPine Capital

11  Leasing LP.  It's status as a non-applicant in Canada, as a

12  non-debtor here.  That entity is the originator of assets

13  that were sold into our securitization vehicle.  It's also

14  the servicer of those assets.

15          We entered into an amendment immediately

16  proceeding the bankruptcy with the parties to ensure,

17  amongst other things, proper servicing of our assets.  That

18  continues to be an issue.  The stay relief that's granted --

19  I'm sorry, the stay that is granted here, amongst other

20  things, extends the potential ipso facto provisions with

21  respect to that non-debtor, but we reserve the rights to

22  come back both in Canada or here to seek appropriate relief

23  including to seek determining those servicing arrangements.

24  And as a result, we wanted that to be clear on the record.

25          Lastly, I think --

1        THE COURT:  Just to make sure I'm following, so

2   the language we have now, in fact, resolves your limited

3   objection but your right, basically, to seek stay relief on

4   whatever circumstances you deem appropriate to file such a

5   motion in the future are preserved.  But as to the relief

6   today, you're not opposing it subject to the revisions that

7   have been made to the order.  Do I understand that correctly?

8        MR. SCOTT:  You do understand that correctly.

9        THE COURT:  Okay.  Terrific.

10       MR. SCOTT:  And then I think on the substantive

11  Bankruptcy Code relief, as Mr. Hunker said, we tried to be

12  mindful of Your Honors comments at the last hearing and we

13  tried to hue to what we view as the principles of -- you said

14  particular with respect to the DIP charges that you will

15  recognize the Canadian order under principles of comity.

16       On the flip side, as I think we pointed out at the

17  last hearing, we don't think there should be substantive

18  Bankruptcy Code relied that's granted particular under

19  Section 364 to that non-debtor TPine Capital Leasing LP.  So,

20  it just reflects the same state of affairs to the extent we

21  are able to push back on that in Canada.

22       THE COURT:  Right.

23       MR. SCOTT:  And then the last point that I --

24       THE COURT:  And let me just say -- not to

25  interrupt but that was what I said, you know, during the

1  prior hearing without having, you know, the opportunity to

2  have really thought it through.  It remains my view that that

3  seems correct.  That said, I didn't intend and hope no one

4  took those observations to bully anyone.  If you disagree

5  with that, you know, obviously I don't want to preclude

6  anyone from making whatever arguments they wanted to make now

7  or later.  But that was just my -- and I will say, you know,

8  having thought more about it, it continues to strike me as

9  correct but I didn't want to suggest that the parties had to

10  fall in line because that was what occurred to me at the

11  time.

12       MR. SCOTT:  Thank you, Your Honor.  And I think

13  where we landed -- particularly on the adequate protection

14  point, I just wanted to reiterate something that Mr. Hunker

15  said and make clear on the record because it is an area that

16  is of concern to us whether adequate protection can be

17  granted with respect to a non-debtor.  What the language now

18  says is that the liens attached with the same validity,

19  priority to the applicable or applicable member or members of

20  the Pride Group.

21       And just so there's no confusion later and we find

22  out that we're fighting on something that was meant to be

23  helping, that is not meant to allow parties that are not

24  secured creditors of TPine Leasing LP, TPine Capital Leasing

25  LP, to get adequate protection liens against that particular

1  entity if they're not already secured creditors of that

2  entity.  The language is a bit tortured.  That is the nature

3  of all these negotiations, but I do want it to be reflected

4  on the record.  And the example I use, for instance, Your

5  Honor, is to the extent there is a secured claim against

6  Pride Group Holdings of some entity.

7           And there's a diminution in value.  We don't want

8  to find out two months from now that they were saying, you

9  know, that that diminution in value claim attaches because

10  that was first priority against Pride Group Holdings as a

11  first priority lien against TPine Capital Leasing LP.  I

12  think any adequate protection diminution in value claims are

13  very hard to posit in this situation particularly when you

14  have Canadian proceedings.  And I do think that is an area

15  where overall I would say, Your Honor, the challenges of

16  running what I think Mr. Fox has referred to at times as a

17  parallel Chapter 11 get complicated particularly with respect

18  to TPine Capital Leasing LP, a non-debtor entity.

19           You know, we'll see what happens in Canada, but I

20  did just want to make sure that, on that point, you know,

21  that the main goal is not to give anyone a greater land grab

22  particularly with respect to collateral interest in that non-

23  debtor entity.

24           THE COURT:  Okay.  Very well.  I understand that.

25  Thank you very much.

1          MR. SCOTT:  Thank you, Your Honor.

2          THE COURT:  Okay.  Ms. Nimeroff.

3          MS. NIMEROFF:  Good morning, Your Honor.  Jami

4   Nimeroff, counsel for Triumph financial services.

5          Your Honor, we did work with Mr. Hunker and his

6   colleagues on language in the order.  And I just wanted to

7   note a couple of things, Your Honor, for the record.  The

8   amended -- the declaration that was introduced into evidence

9   in support of recognition is the amended declaration of Mr.

10  Benson, Docket Number 120, which is the declaration that

11  makes clear that no relief is being sought as to Arnold

12  Transportation Services and the other Arnold entities that

13  are now in Chapter 7's; although, it remains unclear to me if

14  there is a Chapter 15 as well and what the implications of

15  that are especially given that the corporate resolution that

16  was submitted with the Arnold Transportation Chapter 7

17  petition authorizes the company to seek to withdraw or

18  dismiss the Chapter 15's.

19          THE COURT:  Okay.

20          MS. NIMEROFF:  But be that as it may --

21          THE COURT:  But that's presumably up to the

22  Chapter 7 Trustee at some level.

23          MS. NIMEROFF:  Perhaps, Your Honor.

24          THE COURT:  Okay.

25          MS. NIMEROFF:  My point being is that the factual

1  support for recognition right now does not relate, in any

2  way, to the Arnold entities.  And so, we added language to

3  the order that Mr. Hunker noted, Paragraph 19, to make that

4  very clear that there is nothing in this order that proports

5  to do that.  You Honor, I just wanted to highlight we asked

6  for language specifically defining the Arnold entities in

7  this order.  I know the defined terms related back to other

8  documents, but I ask that it be made clear.  It was in

9  footnote 3.

10           And we also asked for language making clear that

11  the terms, the debtors in this order, and Pride Group and

12  Pride entities that none of those terms include the Arnold

13  entities particularly because, again, I think with the

14  Chapter 15 kind of being hanging out there, there's an

15  argument that the term debtors could capture the Arnold

16  entities when, I believe, that was not was intended.

17           So, Your Honor, with that, I have no -- Triumph

18  does not have objections to the entry of this order because I

19  believe it fully kicks the can down the road so to speak as

20  to the other issues.

21           THE COURT:  Okay.

22           MS. NIMEROFF:  And I will sit for now and then --

23           THE COURT:  We'll address the other issues.  Yes.

24  Absolutely.

25           MS. NIMEROFF:  Yes.  Correct.  Thank you, Your

1  Honor.

2           THE COURT:  Okay.  Thank you, Ms. Nimeroff.

3           Is there any other -- Mr. Fox.  Absolutely.

4           MR. FOX:  Good morning, Your Honor.  May I please

5  the Court, Tim Fox on behalf of the United States Trustee.

6           I just wanted to rise and confirm that the foreign

7  representative and foreign debtors counsel's comments with

8  respect to the resolution of the United States Trustees

9  informal comments are accurate.  We appreciate the work done

10 by the foreign representative and foreign debtors to identify

11 the relief in Canada that they've viewed as supporting the

12 relief under the Bankruptcy Code provisions that were

13 outlined for Your Honor on the record today.  And with the

14 reservations that were discussed by counsel to the foreign

15 representative on the record, the U.S. Trustee does not

16 object to the relief sought here today for purposes of

17 recognition.

18          As counsel to Regions Bank noted, some of these

19 issues remain to be a concern for the U.S. Trustee.  And to

20 the extent Your Honor draws other Chapter 15 cases in the

21 near future, you may be hearing from the U.S. Trustee on

22 those points in those future matters.  We appreciate Your

23 Honors patience as we all go through the growing pains on

24 some of these issues which, again, seem to be a spike in

25 activity in this sector of the Court's docket.  So, thank

1  you, Your Honor.

2          THE COURT:  Okay.  Thank you, Mr. Fox.

3          Any other party in interest wish to be heard?  Mr.

4  Tetro.

5          MR. TETRO:  Good morning, Your Honor.  Stephen

6  Tetro of Chapman And Cutler on behalf of the pre-petition

7  agent for the syndicate facility and the DIP agent.

8          I'm virtually rising just to clarify one point to

9  make sure I understand it correctly.  With respect to Mr.

10  Scott's comments on the adequate protection, I heard him say

11  -- and I agree with the point that the adequate protection

12  should not be used as an opportunity to turn an unsecured

13  creditor against an entity into a secured creditor and that

14  certainly makes sense to me.

15          What I just want to clarify and make sure of, Your

16  Honor, because our client is situated, I think, a little

17  differently than many of the secured creditors in that we, of

18  course, had prepetition claims against a large group of

19  entities.  Most, if not all of these entities and collateral

20  granted by most, if not all, these entities which, of course,

21  secures all of those claims.

22          So, with respect to our adequate protection claim,

23  you know, we would have an adequate protection claim against

24  TPine Leasing Capital to the extent of diminution of value of

25  our collateral against any of these entities.  TPine Leasing

1  Capital is already a --

2      THE COURT:  They're an obligor and granted you a

3  security interest under your credit facility.

4      MR. TETRO:  Correct, Your Honor.  So, I just

5  wanted to make that point.  I don't think that's any

6  different than what Mr. Scott is saying, but I just didn't

7  want there to be --

8      THE COURT:  Okay.  That struck me as consistent

9  with what I understand Mr. Scott to say, but Mr. Scott can

10 tell us himself.

11     MR. SCOTT:  Again, for the record, Sean Scott on

12 behalf of Regions Bank.

13     Your Honor, I think that is accurate with respect

14 to Mr. Tetro.  What I would say there is I'm actually not

15 sure exactly how the cross collateralization works here

16 because the language proports to grant diminution in value

17 claims that are not priming.  It's the same extent priority

18 as existing liens.  TPine Capital Leasing, for instance, has

19 19, I think, financing statements filed against it.  It has

20 fallback security interests that are filed by securitization

21 funders.

22     And then, in the instance of Mr. Tetro, I'm not

23 actually sure how that works to the extent there's diminution

24 in value with respect to certain entities where, for

25 instance, they may be -- first priority, they may be 19th

1  priority on TPine Capital Leasing LP.  If there's a

2  diminution in value claim, how that gets allocated, where

3  they fall in the rights of distribution, I would say this is

4  why I want to know whether we are fighting about something --

5           THE COURT:  I understand that basically -- tell me

6  if either of you disagree with this that everyone's rights

7  with respect to the brain damage you've just described are

8  all preserved and we can all figure that out if and when we

9  get there but nothing today changes anyone's rights in that

10 regard.

11          MR. SCOTT:  That is our goal and intent, Your

12 Honor.  And to just clarify the last point, we also want to

13 make clear that to the extent there is a secured creditor of

14 any other entity out there that it is not effectively getting

15 cross collateral as now through this claim.

16          THE COURT:  If it didn't already have -- if it

17 didn't have a lien that ran against your clients' assets then

18 nothing in this order creates a lien that didn't otherwise

19 exist.

20          MR. SCOTT:  That is our belief as of the substance

21 of the order and what it says, but we did want that clear on

22 the record.

23          THE COURT:  Okay.  That's how I read it.  If

24 someone wants to tell me later I said something different,

25 they're allowed to come in and tell me what they think the

1  order says.  But I understand it the way you just described

2  it.

3          MR. SCOTT:  Okay.  With that, I think Mr. Tetro

4  and I are then in agreement on the language that we've

5  reached.

6          THE COURT:  Okay.  Then I am going to get out of

7  the way then.

8          MR. TETRO:  Your Honor.

9          THE COURT:  Go ahead, Mr. Tetro.

10          MR. TETRO:  I would just add, just to sort of

11  provide a little more context, and I think this is probably

12  clear to everybody but the idea, of course, with these

13  adequate protection replacement liens is that upon

14  recognition 552 becomes applicable, you know 552 under the

15  Bankruptcy Code becomes applicable, in these cases.  Of

16  course, in Canada there isn't a similar concept.  They don't

17  have an adequate protection concept.  They don't have the

18  concept of prepetition liens being cut off by a filing.

19          So, the prepetition liens continue to attach to

20  post-petition assets generated. We just don't want a

21  different result in this Court then in Canada.  We would end

22  up with inconsistencies and it wouldn't make sense.  So, that

23  is, sort of, the context and the point behind this.  I think

24  the way we all just collectively described it makes it work

25  that way.

1          THE COURT:  So, let me suggest the following: you

2    have agreed on the language of the order.  The issues are

3    delicate, I appreciate.  Unless someone thinks otherwise, I

4    propose that I not say anything further about the agreed

5    language. If there is a dispute about that agreed language,

6    the meaning of that agreed language later, you have all said

7    what you have said, the order says what it says, and we will

8    cross that bridge if and when we get there. Is that agreeable

9    to the parties?

10          MR. HUNKER:  Yes.  Thank you, Your Honor.

11          THE COURT:  Okay.  Any other party in interest

12    want the opportunity to be heard with respect to the question

13    of recognition?

14      (No verbal response)

15          THE COURT:  So, I am satisfied that the relief

16    sought is appropriate. I appreciate the complexities here

17    both, sort of, on the merits of the questions, the

18    complicating considerations that everyone has described to

19    me, I don't want to say too much more about, and Mr. Fox's

20    point about just the evolution of practice and the way in

21    which the compromises reached today are compromises for today

22    and everyone's rights with respect to those questions are

23    what they are and that by agreeing to this form of order no

24    one is precluded from tomorrow from taking a different

25    position.

1         I will say that the very hard and good work by the

2    parties to reach the resolution reflected in this order

3    strikes me as eminently sensible, sort of commercial,

4    practical manner of, sort of, working one's way through the

5    thicket by making the smallest ripple in the law that one

6    needed to make in order to preserve everybody's rights as

7    appropriate under complicated circumstances.

8         So, I do want to congratulate and thank the

9    parties for that very good work. I have to say I can't

10   believe that if you had all stuck to your litigation

11   positions and argued this, this would have ended in -- the

12   difference would have been that the language wouldn't have

13   been as good, but the substance, I think, would have come out

14   exactly where it did.  So, you all improved your positions by

15   having the chance to work through the language yourselves.

16        So, I am a happy to enter that order and, I guess,

17   is the third amended order yet been uploaded or is that to

18   follow?

19        MR. HUNKER:  Yes, Your Honor.  I believe it has

20   been updated.

21        THE COURT:  So, if that -- we will go ahead and

22   enter that order after this hearing and I guess let me, Mr.

23   Hunker, let you allow to continue through the proceeding.

24        MR. HUNKER:  Thank you, Your, Honor. The only

25   other item on today's agenda is Triumph's motion to shorten

1  notice with respect to the motion to dismiss the Chapter 15

2  cases of the Arnold entities.  As Your Honor recalled, we had

3  a status conference on this on Tuesday and the motion was

4  carried to today's hearing.  As I mentioned earlier, we have

5  now filed Chapter 7 cases for those entities and my

6  understanding is Mr. Burch has been appointed as the Chapter

7  7 Trustee.

8          Your Honor, before I turn it over to Ms. Nimeroff,

9  obviously its her motion, we do think it makes sense to set

10 Triumph's motion on for a hearing on regular notice so that

11 all parties, including the newly appointed Chapter 7 Trustee,

12 have an opportunity to consider the relief that is requested

13 and respond to it appropriately, but with that I will turn

14 the podium over to Ms. Nimeroff.

15         THE COURT:  Thank you.

16         MR. HUNKER:  Thank you, Your Honor.

17         THE COURT:  Ms. Nimeroff.

18         MS. NIMEROFF:  Good morning, again, Your Honor.

19 Jami Nimeroff, counsel for Triumph Financial.

20         Your Honor, I guess I want to raise a few points,

21 one of which is that as we noted in our motion itself the

22 provisional relief that was granted by this Court, Your

23 Honor, in the orders you retained jurisdiction specifically

24 to modify or to reconsider that relief as well as provisions

25 of Chapter 15 that allow Your Honor to do that on your own

1  motion, if you will.  We specifically asked for, you know,

2  relief and brought it in the form of a motion, but I do think

3  that it is something that Your Honor can do sua sponte.

4        Your Honor, I would press the Court to consider

5  today vacating the provisional orders that we believe should

6  have never been granted as to Arnold.  The premise of those

7  orders was the satisfaction of a preliminary injunction

8  standard, the need to prevent irreparable harm as well as

9  likelihood of success on the merits of a recognition petition

10 that has now been, we believe, readily admitted by the

11 foreign representative to not have had a basis, in fact, as

12 to the Arnold entities.

13       So, Your Honor, I believe while I recognize that

14 the motion itself is not on today and that we did argue it in

15 the form of an affirmative motion and relief request to this

16 Court, we would ask that Your Honor consider that today.

17       THE COURT:  So, I am not going to consider it

18 today.

19       MS. NIMEROFF:  Understood.

20       THE COURT:  But I -- so let me ask you this

21 question: Have you had a chance to reach out to the Chapter 7

22 Truste?

23       MS. NIMEROFF:  I have, Your Honor.  As to the --

24 so, I will pivot then to the, sort of, motion to shorten

25 which is the thing that technically Your Honor has on his

1   agenda today.  Your Honor, for the reasons that we noted in

2   there, as well as in our motion, we remain very concerned

3   about our receivable collections.

4         As recently as yesterday we received communication

5   from Arnold debtors that said that they had been told to

6   remit proceeds to Arnold. I have names, I have people which I

7   am not testifying, but we do have that and we remain very

8   concerned about diversion.

9         THE COURT:  So, let's proceed on the assumption

10  that you have a claim that you would like the relief you are

11  seeking promptly and we have got a Chapter 7 Trustee who is

12  just appointed and is trying to wrap his arms around the

13  situation. So, what do I do about that?

14        MS. NIMEROFF:  So, to your question, Your Honor, I

15  did reach out to Mr. Burch yesterday and asked him if he was

16  retaining counsel or could we speak.  He said I am just

17  trying to figure out what day it is and at the time schedules

18  and a list of creditors had not even been filed.  Those came

19  late last night at some point.

20        He put me in touch with Mark Felger who he often

21  hires in these cases, and I have known Mark for a long time.

22  So, we spoke late yesterday. He is -- you know, I will be

23  honest, they are trying to figure it out, Your Honor.  They

24  didn't have any list of schedules -- you know, didn't have

25  any schedules or list of creditors.  We talked through the

1  issues and I explained my concerns.  I said are you showing

2  up today and the answer was no.  I said, well, I am just

3  letting you know, I am going to press the Court on this.

4          THE COURT:  Okay.  I understand.

5          MS. NIMEROFF:  To answer your question, I have

6  reached out. I am not aware that they are in a position to

7  take a position yet.  Your Honor, the other thing that I just

8  want to note that raises the level of concern for our client

9  and in terms of the timing is the schedules that were filed

10  last night, Your Honor, as to Arnold list Arnold as entirely

11  an unsecured creditor who granted a line of credit and that

12  it appears that Arnold is taking a position that they own the

13  receivables.

14          So, Your Honor, there is clearly a concern there,

15  a disconnect there, and we asked for dismissal or termination

16  of the Chapter 15 as part of our relief.  We asked for

17  vacating of the provisional orders as second.  Your Honor,

18  alternatively, we did ask for relief from the automatic stay

19  to the extent that it is applicable and, of course, at the

20  time it was applicable based on the provisional orders.

21          THE COURT:  Right.

22          MS. NIMEROFF:  That is -- so that has all kind of

23  been teed up and I recognize the idea that the Trustee is

24  going to need some time, but, Your Honor, respectfully I

25  don't think it needs to be full time.

1        THE COURT:  I understand.  Under the circumstances

2   I am prepared to require the Trustee to move, you know, with

3   greater alacrity then in a world in which nothing was

4   happening in the meantime.  Look, I understand the Trustee

5   not being at this hearing today.  The case was filed

6   yesterday.  That doesn't strike me as unreasonable in any

7   way.

8        MS. NIMEROFF:  Of course.

9        THE COURT:  I do think that I would be -- here is

10  what I am going to do, I am going to say on the record that I

11  think it appropriate to have this matter heard as soon as is

12  reasonably practical in a way that is respectful of both the

13  right of the Chapter 7 Trustee and his soon to be counsel to

14  understand what the issue is while also respecting the fact

15  that you are facing a situation in which you have

16  represented, and I take the representation, of course, at

17  face value that receivables that you think belong to you are

18  being misdirected.

19        So, striking the appropriate balance between those

20  things is a challenge, but it is particularly challenging in

21  which I don't have -- I haven't' had the chance to hear from

22  the Chapter 7 Trustee about when they can be heard.

23        MS. NIMEROFF:  Understood.

24        THE COURT:  So, what I am going to say is I would

25  like to give you the chance to be heard on this as soon as

1  possible, but before I decide what that is I want you to have

2  a conversation with the Chapter 7 Trustee.  If you could

3  agree on a date that's fine.  If you can't agree on a date I

4  am happy, the beginning of next week, to get on a status

5  conference and hear from both sides about what is an

6  appropriate date. I think that -- I don't think it would be

7  appropriate for me to do more than that today.

8            Does that offend anybody's sense of justice?

9            MS. NIMEROFF:  Well since Your Honor set aside my

10  immediate request that you vacate the provisional orders

11  immediately, barring that, Your Honor, I think that plan --

12            THE COURT:  Did that surprise you, Ms. Nimeroff?

13        (Laughter)

14            MS. NIMEROFF:  No.  I am not one to give up, Your

15  Honor.  With that framework, Your Honor, I will certainly

16  reach back out and try to get a --

17            THE COURT:  If you can agree on a date terrific,

18  if you can't agree on a date -- I am not requiring you to

19  agree, if you disagree I am happy next week as soon as

20  reasonably practical to get on a Zoom and hear from both of

21  you about what is an appropriate date. I think the Trustee is

22  entitled to be heard on how much time he needs.

23            MS. NIMEROFF:  Understood, Your Honor.  I will

24  reach back out again to attempt to come up with something

25  consensual. If not, we will let Chambers know and look to try

1    and get a Zoom conference.

2              THE COURT:  Thank you very much.

3              MS. NIMEROFF:  Thank you, Your Honor.

4              THE COURT:  So, in that case -- Mr. Fox.

5              MR. FOX:  Yes.  May I be heard, Your Honor?

6              THE COURT:  You certainly may.

7              MR. FOX:  Good morning, Your Honor.  May I please

8    the Court, Tim Fox on behalf of the United States Trustee.

9              I just wanted to rise briefly to indicate that

10   upon Trustee Burch's appointment I did reach out to have a

11   conversation and inform him of the very peculiar set of facts

12   that he was dropped into.  He did advise me that he would not

13   be able to attend today's hearing as well.  I did indicate to

14   him that I would stand up and state on the record that, you

15   know, he is still in the process of running conflicts and

16   that could result in a further change in the appointment. If

17   that does happen, again, everyone's rights are what Your

18   Honor has articulated and we will work through those.

19   Fingers crossed, this can move as quickly as the

20   circumstances permit and would benefit all of the parties,

21   but I did want to note that for the record and to thank Mr.

22   Burch for his prompt attention to the matter given the filing

23   late on Tuesday and today's hearing today.

24             THE COURT:  I appreciate that, Mr. Fox.  Thank

25   you.

1        Mr. Hunker.

2        MR. HUNKER:  Your Honor, Christopher Hunker for

3   the foreign representative.

4        Your Honor, we would just request that we be kept

5   in the loop with respect to those discussions on timing for

6   the motion to shorten notice. Just one point of clarification

7   I would like to make for the record.  As Mr. Abbott noted at

8   Tuesday's status conference, we are not aware of any

9   instances in which receivables have been redirected.

10        To the extent that Arnold may be having

11   communications with account debtors there are significant

12   receivables that were not factored by Triumph.  Triumph cut

13   off our factoring shortly after the CCAA proceedings

14   commenced and Arnold obviously operated for some period of

15   time after that generating receivables.  So, there are

16   receivables that are not factored here.

17     *2R  THE COURT:  So, I understand the parties take

18   different positions on the question of what the facts on the

19   ground are and what is happening.  All I intended to say was

20   to recognize that the parties have taken those positions. It

21   seems to me I don't need to decide who is right about that in

22   order to say it makes sense to get it resolved as soon as

23   possible and that is all I intended to say.

24        So, Ms. Nimeroff, if you want the opportunity to

25   respond you may, but to the extent there is -- I understand

1  there is a dispute about what is going on, that's fine. I

2  think the fact of the dispute is sufficient reason to try to

3  get it resolved as quickly as reasonably possible consistent

4  with respecting everyone's procedural rights and as to the

5  merits of what is actually happening everyone's rights are

6  fully reserved.

7          MR. HUNKER:  Completely agree, Your Honor.  Thank

8  you.

9          THE COURT:  Okay.  Thank you.

10          MR. TETRO:  Your Honor?

11          THE COURT:  Yes, Mr. Tetro.

12          MR. TETRO:  Your Honor, on this point we would

13  like to be looped into those discussions on timing as well.

14  We expect that we will be -- we would like the opportunity to

15  consider and I expect we will be filing an objection to that

16  request to vacate.  As I understand it, following the entry

17  of the provisional order and during the CCAA millions of

18  dollars of intercompany advances have been made to these

19  Arnold entities with the expectation that they have, you

20  know, the protections granted in the CCAA and under the

21  provisional order.  So, I expect that we will be taking a

22  position on that. We want to make sure that we have

23  sufficient time to --

24          THE COURT:  Fair ask.  So, Ms. Nimeroff, is it --

25  let me just tweak where I was.  Can you reach out -- here is

1   my direction.  I would like you to reach out to counsel or to

2   the Chapter 7 Trustee and/or the Trustee's counsel to counsel

3   for the foreign representative and to Mr. Tetro, and if all

4   of you can agree on a date of when this should be heard

5   happy, subject to availability, to set it then.  If you all

6   can't agree on when it can be heard all of your rights are

7   fully preserved and I am happy to have a status by Zoom to

8   set a date and to do that, you know, early next week.

9          I want to give you a chance to talk, but once you

10  have spoken if you could agree, great.  Again, this is not

11  asking you to agree on the merits. If you disagree on the

12  merits I am more then happy to resolve the dispute. I just

13  want to do it in a manner that gives everyone the chance to

14  be heard and appropriately balances the claim -- you know,

15  the exigencies against the right to respond to your motion.

16         MS. NIMEROFF:  Understood, Your Honor.

17         THE COURT:  Okay.  Very well.  So, Mr. Hunker, I

18  believe that takes us to the end of your agenda.

19         MR. HUNKER:  Yes, Your Honor.  Nothing further for

20  today.

21         THE COURT:  While we are here, is there any other

22  way in which the Court can be helpful to the parties?

23      (No verbal response)

24         THE COURT:  If not, let me again express my

25  appreciation to the really terrific work done all around. I

1  understand that reaching compromises isn't always easy, but I

2  -- it is much appreciated here.

3          I guess I will see everyone again whenever we are

4  next gathered.  So, with that and with -- **(AUDIO STOPS)**

1                           CERTIFICATION

2              I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    /s/ William J. Garling                    May 6, 2024

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable