# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Pride Group Holdings Inc., *et al.*[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 24-10632 (CTG)<br><br>Jointly Administered<br><br>**Hearing Date:**<br>June 11, 2024 at 3:00 p.m. (ET)<br><br>**Objection Deadline:**<br>June 4, 2024 at 4:00 p.m. (ET) |

**MOTION OF THE FOREIGN REPRESENTATIVE FOR
ENTRY OF AN ORDER (I) APPROVING THE SALE PROCEDURES
AND SALE NOTICE, (II) AUTHORIZING THE SALE OF THE DEBTORS'
U.S. ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS, AND (III) GRANTING RELATED RELIEF**

Randall Benson, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors") in the Canadian proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"), respectfully submits this motion (the "Motion"), pursuant to sections 105(a), 363, 1501, 1507, 1514, 1520 and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order (the "Sale

---

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

Procedures Order"), substantially in the form attached hereto as **Exhibit B**, (i) approving (a) procedures (the "Sale Procedures") for the sale of the Debtors' assets located within the territorial jurisdiction of the United States (each such sale, a "Sale") and (b) the form and manner of notice of a Sale attached as **Exhibit 1** to the Sale Procedures Order (the "Sale Notice"), (ii) authorizing the sale of the Debtors' assets located within the territorial jurisdiction of the United States free and clear of liens, claims, encumbrances and other interests (collectively, the "Liens"); and (iii) granting related relief.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under 28 U.S.C. § 157(b)(2)(P).

2. The Foreign Representative, solely in his capacity as such, consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue is proper in this Court and this District pursuant to 28 U.S.C. § 1410.

4. The statutory predicates for the relief requested herein are sections 105(a), 363, 1501, 1507, 1514, 1520, and 1521 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1.

## BACKGROUND

**I.    Commencement of the CCAA Proceedings and the Chapter 15 Cases**

5. The Debtors and their non-Debtor affiliates (collectively, the "Pride Group") operate a trucking and logistics conglomerate based in Canada with operations in Canada and the

United States. The Pride Group's businesses are managed from their headquarters in Mississauga, Ontario, and they maintain facilities and operations in both Canada and the United States. The Pride Group owns substantial assets located within the territorial jurisdiction of the United States, including, among other things, real estate properties, bank accounts, equipment, and trucks.

6. On March 27, 2024, the Debtors commenced the CCAA Proceedings in the Canadian Court, and the Canadian Court issued the initial order on the following day (the "Initial Order") authorizing, among other things, Randall Benson of RC Benson Consulting Inc. (the "CRO") to act as the Foreign Representative and file these chapter 15 cases (collectively, the "Chapter 15 Cases").

7. On April 1, 2024, the Foreign Representative filed petitions for the Pride Group's 26 Canadian and U.S. operating companies and non-real estate holding companies (the "Initial Debtors"), thereby commencing the Initial Debtors' Chapter 15 Cases. On the same day, the Foreign Representative filed the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 2] (the "Verified Petition") seeking, among other things, recognition of the CCAA Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code and certain related relief.

8. On April 5, 2024, the Canadian Court signed an amended and restated Initial Order (the "A&R Initial Order") and the Protocols Order (the "Protocols Order," and together with the A&R Initial Order, the "Canadian Orders"). The A&R Initial Order authorizes, among other things, the Debtors to list for sale all of their real property, subject to the Protocols Order, and provided that the applicable Debtor shall seek an order from the Canadian Court approving any such sale. The Protocols Order approves, among other things, a real estate monetization plan,

3

which is intended to bring structure, oversight, and transparency to the monetization of the Debtors' real estate (the "Real Estate Monetization Plan"). Following the Canadian Court's signing of the Canadian Orders, the Foreign Representative sought and obtained enforcement of those orders in the United States on a provisional basis pursuant to this Court's *Order Granting Provisional Relief in Connection with Debtors-In-Possession Financing and Certain Protocols Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 110] (the "Second Provisional Relief Order").

9. On April 15, 2024, the Foreign Representative filed additional petitions (together with the petitions filed by the Initial Debtors, the "Petitions") for the Pride Group's 45 Canadian and U.S. single-asset real estate holding companies (the "Additional Debtors"), thereby commencing the Additional Debtors' Chapter 15 Cases.

10. On April 23, 2024, the Debtors filed an amended Verified Petition [D.I. 121] (the "Amended Verified Petition, and together with the Petitions, the "Chapter 15 Petitions") seeking, among other things, recognition of the CCAA Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code, enforcement of the Canadian Orders in the United States on a final basis, and related relief.

11. On May 2, 2024, the Court entered an order [D.I. 152] (the "Recognition Order") granting recognition of the CCAA Proceedings and the related relief sought in the Chapter 15 Petitions, including, among other things, extending the relief granted in the Second Provisional Relief Order in the United States on a final basis.

**II.     The Sale Procedures**

12. The Pride Group began pursuing strategic opportunities for asset sales even prior to the commencement of the CCAA Proceedings and these Chapter 15 Cases. Since the filing of the CCAA Proceedings and the Chapter 15 Cases, the Debtors, with the oversight of Ernst &

Young Inc., in its capacity as the Debtors' Canadian Court-appointed monitor (the "Monitor") and the CRO, have continued to market, and identify sale opportunities for, their non-core assets located within the territorial jurisdiction of the United States, including real property, trucks and equipment (the "Available U.S. Assets").

13. Pursuant to the Real Estate Monetization Plan, the DIP Borrowers[2] were required to list for sale all of their real property by no later than May 1, 2024 (unless otherwise extended), including all real property owned by the U.S. Real Estate HoldCos (as defined below). The listing for sale of such real property is directed by the CRO in consultation with the Monitor, relevant third-party mortgagees and the Royal Bank of Canada, as administrative agent (the "DIP Agent") under the DIP Facility (as defined in the Recognition Order) (collectively, the "Consultation Parties").

14. In connection therewith, the Foreign Representative, in consultation with his advisors and the Monitor, has determined that it is in the best interests of the Debtors, their creditors and other parties in interest to develop transparent, efficient and comprehensive Court-approved sale procedures in the United States governing the sale of the Available U.S. Assets. Accordingly, the Foreign Representative has developed the proposed Sale Procedures to govern the sale of the Available U.S. Assets.

15. The Available U.S. Assets include, but are not limited to, real property located in the territorial jurisdiction of the United States owned by certain of the single asset real estate holding companies (collectively, the "U.S. Real Estate HoldCos")[3] that are Debtors in these Chapter 15 Cases.

---

[2] As used herein, "DIP Borrowers" includes: (i) each of the Debtors and (ii) non-Debtor affiliates Pride Truck Sales L.P., TPine Leasing Capital L.P., and Sweet Home Hospitality L.P.

[3] A list of the U.S. Real Estate HoldCos and their real property is attached hereto as **Exhibit A**.

16. As of December 31, 2023, the properties owned by the U.S. Real Estate HoldCos had a total aggregate book value of approximately US$125,000,000.

17. The Foreign Representative proposes to sell the Available U.S. Assets in any individual transaction or series of related transactions to a purchaser or group of related purchasers (each, a "Purchaser") under the following Sale Procedures:

  a. **Marketing of the Available U.S. Assets**. The Debtors will publicly list, or have already publicly listed, for sale the Available U.S. Assets to solicit offers for the purchase of such assets in accordance with, and subject to, the Canadian Orders and any other applicable order of the Canadian Court.

  b. **Superior Bid**. The Debtors will review all offers submitted for any of the Available U.S. Assets and discuss those bids with the applicable offeror. If there is more than one acceptable offer for any of the Available U.S. Assets, the Debtors, having consulted with the Consultation Parties, will determine the offer that, in the Debtors' view, is superior (the "Superior Offer") by considering, among other things:

      i. the total value offered;

      ii. the terms and conditions of the offer; and

      iii. the Debtors' opinion of the likelihood of successfully completing the transaction contemplated by the offer.

     The Debtors will (i) inform the offeror of the Superior Offer that its offer has been selected as the Superior Offer; (ii) negotiate and execute a form asset purchase agreement (the "APA") with the offeror of the Superior Offer that will be contingent on approval by the Canadian Court; and (iii) subject to the Sale Procedures and approval by the Canadian Court, close the transaction.

  c. **Sale Notice**. Once a Debtor has successfully entered into an APA with a Purchaser in respect of any Available U.S Assets, the Foreign Representative will file on the docket and serve a copy of the applicable Sale Notice on (i) the United States Trustee; (ii) any party known to have asserted a Lien on the Available U.S. Assets for the applicable Sale; and (iii) any party that has filed a notice of appearance in these Chapter 15 Cases (collectively, the "Sale Notice Parties"). The Sale Notice will provide the following information for the applicable Sale of Available U.S. Assets: (i) identification of the Available U.S. Assets being sold; (ii) identification of the Purchaser; (iii) the purchase price and other material terms of the Sale; (iv) a copy of the APA evidencing the Sale; (v) the material terms of any marketing or sales process undertaken with respect to the applicable Available U.S. Assets; (vi) a statement regarding any

      party known to have asserted a Lien on the applicable Available U.S. Assets; and (vii) the applicable objection deadline.

  d. **Proposed Sale Order**. For Sales with an aggregate sale price greater than US$1,000,000, the Foreign Representative will attach to the applicable Sale Notice a proposed form of sale order (the "Sale Order") for the Sale of the applicable Available U.S. Assets.  For *de minimis* Sales with an aggregate sale price less than or equal to US$1,000,000, the Foreign Representative requests authority for the Debtors to consummate such Sales without further order of the Court following the expiration of the applicable objection deadline.

  e. **Declaration**. The Foreign Representative will attach to the applicable Sale Notice a declaration in support of the Sale containing statements sufficient for the Court to find that: (i) the Sale constitutes a prudent exercise of the applicable Debtor's business judgment; (ii) the Sale may be consummated free and clear of all Liens under section 363(f) of the Bankruptcy Code; and (iii) the purchaser is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code; *provided*, *however*, that this paragraph (e) will not apply to any *de minimis* Sale with an aggregate sale price less than or equal to US$1,000,000 (which the Foreign Representative requests authority for the Debtors to consummate without further order of the Court following the expiration of the applicable objection deadline) unless a finding of (i)-(iii) in this paragraph (e) is requested by the Debtors as a condition in the relevant APA.

  f. **Objection Deadlines**.

      i. The Foreign Representative requests that objections, if any, with respect to a *de minimis* Sale with an aggregate sale price less than or equal to US$1,000,000 be filed with this Court and served on the Foreign Representative and his counsel so as to be actually received on or before the date that is seven (7) calendar days following the date that the applicable Sale Notice is filed on the docket and served on the parties as required herein.  If no written objection is filed with the Court and served in accordance with this paragraph (f)(i) on or before the objection deadline, the Debtors may close the transaction without further order of the Court, notice or a hearing.

     ii. The Foreign Representative requests that objections, if any, with respect to a Sale with an aggregate sale price greater than US$1,000,000 but less than US$7,000,000 be filed with this Court and served on the Foreign Representative and his counsel so as to be actually received on or before the date that is seven (7) calendar days following the date that the applicable Sale Notice is filed on the docket and served on the parties as required herein.  If no written objection is filed with the Court and served in accordance with this paragraph (f)(ii) on or before the

     objection deadline, the applicable Sale Order may be entered by the Court without further notice or a hearing.

    iii. The Foreign Representative requests that objections, if any, with respect to a Sale with an aggregate sale price greater than or equal to US$7,000,000 be filed with this Court and served on the Foreign Representative and his counsel so as to be actually received on or before the date that is twenty-one (21) calendar days following the date that the applicable Sale Notice is filed on the docket and served on the parties as required herein. If no written objection is filed with the Court and served in accordance with this paragraph (f)(iii) on or before the objection deadline, the applicable Sale Order may be entered by the Court without further notice or a hearing.

  g. **Sale Hearing**. In the event an objection to a Sale is filed and served in accordance with paragraph (f) by the applicable objection deadline, a hearing to consider the applicable Sale (the "Sale Hearing") will be held at a date and time established by the Court.

  h. **As is, Where is**. All Sales pursuant to these Sale Procedures shall be on an "as is, where is" basis and without representations or warranties of any kind or nature by the Debtors, their agents and advisors, unless otherwise provided in the applicable APA.

18.  The Sale Procedures are designed to generate the highest or otherwise best available recoveries to the Debtors' estates, their creditors, and all parties in interest by encouraging potential Purchasers to submit competitive, value-maximizing bids on the Available U.S. Assets. The Foreign Representative believes that the Sale Procedures are in the best interests of the Debtors' estates, will establish whether and to what extent a market for the Available U.S. Assets exists, and provide interested parties with sufficient opportunity to participate in the sale process.

## RELIEF REQUESTED

19.  By this Motion, the Foreign Representative respectfully requests entry of the Sale Procedures Order, substantially in the form attached hereto as **Exhibit B**, pursuant to sections 105(a), 363, 1501, 1507, 1514, 1520 and 1521 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1: (i) approving (a) the Sale Procedures for a Sale of the Available U.S. Assets and (b) the form and manner of the Sale Notice attached as **Exhibit 1** to the

Sale Procedures Order, (ii) authorizing the sale of the Debtors' assets that are located within the territorial jurisdiction of the United States free and clear of all Liens, and (iii) granting related relief.

**BASIS FOR RELIEF REQUESTED**

I.  **The Sale Procedures Should be Approved.**

   A.  *The Sale Procedures are Fair, Reasonable and in the Best Interests of the Debtors, Their Creditors and Other Parties in Interest*

20.  Section 363(b) of the Bankruptcy Code provides that "[t]he [debtor in possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

21.  Courts uniformly recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing the value of a debtor's estate. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 537 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide a benefit to a debtor's estate); *Official Comm. of Subordinated Bondholders v.*

*Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (observing that sale procedures "encourage bidding and…maximize the value of the debtor's assets").

22. The Sale Procedures described herein are designed to maximize the value of the Available U.S. Assets by establishing a framework for facilitating a competitive and open sale process. The Debtors' marketing process will target a range of parties that may be interested in purchasing any of the Available U.S. Assets and allow such parties the opportunity to submit their highest and best offer to purchase any of the Available U.S. Assets. The Debtors will select the Superior Offer and execute an APA for the Sale of the applicable Available U.S. Assets that will yield the highest and best value for such assets under the circumstances.

23. Requiring the Foreign Representative to file a motion with the Court each time the Debtors seek to sell Available U.S. Assets would distract from their restructuring efforts and force the Debtors to incur unnecessary costs that would reduce the value that might be realized from the sale of such assets. In addition, the Sale Procedures afford those creditors with an interest in the Available U.S. Assets the opportunity to object to any sale and obtain a hearing if necessary, and the relief requested will not apply to sales of assets to "insiders," as that term is defined in section 101(31) of the Bankruptcy Code.

24. Accordingly, the Foreign Representative submits that the Sale Procedures should be approved by the Court because they provide for the efficient disposition of the Available U.S. Assets, maximize the value of such assets, and are in the best interests of the Debtors, their creditors and other parties in interest.

**B.  *The Sale Notice Should be Approved.***

25. Bankruptcy Rules 2002 and 6004 and Local Rule 6004-1 require the Foreign Representative to provide notice of any proposed sale of assets, including the terms and conditions of such sale and the deadline for objections.

26. The Foreign Representative submits that the notice of the Sale of the applicable Available U.S. Assets in accordance with the Sale Procedures, including the form and manner of service of the Sale Notice and the other notice procedures set forth herein, is reasonably designed to (i) provide good and sufficient notice of the Sale Procedures, the applicable objection deadlines thereunder, and the proposed Sale of the applicable Available U.S. Assets pursuant to the Sale Notice (including a description of the Available U.S. Assets being sold and the material terms of the Sale) and (ii) enable interested parties to participate in the sale process with respect to any Sale of Available U.S. Assets.

27. Generally, Bankruptcy Rule 2002(a)(2) requires that a minimum of 21 days' notice of proposed sales of property outside the ordinary course of business be provided to parties by mail "*unless the court for cause shortens the time or directs another method of giving notice*." Fed. R. Bankr. 2002(a)(2) (emphasis added).

28. As set forth herein, sufficient cause exists for this Court to exercise its discretion and shorten the notice period for Sales with an aggregate sale price less than US$7,000,000 to 7 days. The Foreign Representative submits that approval of the applicable notice periods will (i) avoid the unnecessary costs and administrative burdens that may undermine or eliminate the economic benefits of the underlying transactions and (ii) enable the Debtors to take advantage of transaction opportunities that are available only for a limited time. Given the compressed

timeframe, the Sale Procedures will provide sufficient notice of the Sales, while preserving parties' rights to be heard in connection with, and object to, such Sales.

29. Therefore, the Foreign Representative submits that the Sale Notice satisfies the requirements of the Bankruptcy Code, Bankruptcy Rules and the Local Rules and respectfully requests that the Court approve such notice.

## II. The Court Should Authorize the Sale of the Available U.S. Assets Pursuant to Section 363 of the Bankruptcy Code.

30. Upon a bankruptcy court's granting recognition of a foreign proceeding as a foreign main proceeding, relief is available to the petitioner under section 1520 of the Bankruptcy Code. *See* 11 U.S.C. § 1520. Section 1520(a)(2) of the Bankruptcy Code provides, in relevant part, that, "upon recognition of a foreign proceeding that is a foreign main proceeding . . . section[] 363 appl[ies] to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the section[] would apply to property of an estate." 11 U.S.C. § 1520(a)(2). Moreover, section 1520(a)(3) provides that upon recognition of a foreign main proceeding, "unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by section[] 363." 11 U.S.C § 1520(a)(3); *see also In re Elpida Memory, Inc.*, 2012 Bankr. LEXIS 5367, at *18 (CSS) (Bankr. D. Del. Nov. 16, 2012) (holding that section 363 of the Bankruptcy Code applies to transfers of assets located within the United States outside of the ordinary course of business in connection with cases commenced under chapter 15 of the Bankruptcy Code); *In re Atrimm, S.r.L.*, 335 B.R. 149, 159 (Bankr. C.D. Cal. 2005) ("[U]nder chapter 15, § 363 (governing sale, use or lease of property of the estate) . . . appl[ies] to any transfer of an interest of the debtor in property within

the territorial jurisdiction of the United States to the same extent that the section[] would apply to property of a domestic bankruptcy estate.") (citing 11 U.S.C. § 1520(a)(2)).

31. Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve a sale under section 363(b)(1) of the Bankruptcy Code, the Third Circuit requires a debtor to show that the decision to sell the property outside of the ordinary course of business was based on a sound exercise of the debtor's business judgment and that there is a sound business purpose for the proposed transaction. *See, e.g.*, *In re Martin*, 91 F.3d at 395 (3d Cir. 1996) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *see also In re Schipper*, 933 F.2d at 515 (7th Cir. 1991) (same); *In re Lionel Corp.*, 722 F.2d at 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale or lease of property outside of the ordinary course of business).

32. In determining whether a sale is a sound exercise of a debtor's business judgment, Delaware Bankruptcy Courts require that the sale satisfy four requirements: "(1) a sound business reason exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith." *In re Decora Indus., Inc.*, 2002 WL 32332749, at *7−8 (D. Del. May 20, 2002) (citing *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 150 (3d Cir. 1986); *In re Exaeris Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). The "sound business reason" factor is similar to the 'business judgment rule,' which provides significant

deference to a debtor's determination of its own best interests. *In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997). The Foreign Representative submits that all of these requirements will be met for each Sale.

### A. *Sufficient Business Justification Exists for the Consummation of a Sale of the Available U.S. Assets under Section 363 of the Bankruptcy Code.*

33. The Foreign Representative believes that the Sale Procedures will provide for a robust sales process that will ensure not only that fair and reasonable value for the Available U.S. Assets will be received, but that the purchase price will be the highest and best under the circumstances. As noted above, once the Foreign Representative selects the Superior Offer and the Debtors execute an APA for any Sale with an aggregate sale price greater than US$1,000,000, the Foreign Representative intends to submit a proposed order and declaration for the Sale demonstrating facts sufficient to show that (i) the Sale constitutes a prudent exercise of the Foreign Representative's business judgment; (ii) the Sale may be consummated free and clear of all Liens under section 363(f) of the Bankruptcy Code; and (iii) the purchaser is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code because the Sale for the applicable Available U.S. Assets is the product of arm's-length and good-faith negotiations between the parties thereto. Accordingly, the Foreign Representative respectfully submits that the Court should approve any Sale conducted pursuant to the Sale Procedures following the Court's review of the Foreign Representative's declaration submitted in connection with such Sale.

34. Furthermore, fair and reasonable notice of any Sale pursuant to a Sale Notice will be provided to all parties in interest in accordance with the Bankruptcy Code, Bankruptcy Rules

and Local Rules. All parties in interest will have an opportunity to object to such sales and be heard at the Sale Hearing.

35. Accordingly, the Foreign Representative has determined in the exercise of his business judgment that selling the Available U.S. Assets pursuant to the Sale Procedures is in the best interests of the Debtors, their creditors and other parties in interest.

> **B.** *The Court Should Authorize and Approve any Sale of the Available U.S. Assets Free and Clear of Interests and Successor Liability Pursuant to Section 363(f) of the Bankruptcy Code.*

36. Under section 363(f) of the Bankruptcy Code, a trustee or a debtor in possession may sell all or any part of a debtor's property free and clear of any interest in such property if: (1) such a sale is permitted under applicable non-bankruptcy law; (2) the party asserting such interest consents to such sale; (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting such interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. *See* 11 U.S.C. § 363(f); *In re P.K.R. Convalescent Ctrs.*, Inc., 189 B.R. 90, 93–94 (Bankr. E.D. Va. 1995) ("[Section] 363 covers more situations than just sales involving liens. . . . Section 363(f) addresses sales free and clear of any interest . . . ."). In addition, a court may authorize the sale of a debtor's assets free and clear of any liens, claims or encumbrances under section 105 of the Bankruptcy Code. *See Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

37. Here, the Foreign Representative believes that one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code will apply to each Sale of Available U.S. Assets. Specifically, the Foreign Representative believes that section 363(f)(5) will be satisfied because

(i) any entity holding a valid and perfected Lien on the applicable Available U.S. Assets could be compelled to accept a money satisfaction of its Lien and (ii) the Lien on the applicable Available U.S. Assets will attach to the sale proceeds. Accordingly, any holders of Liens on the Available U.S. Assets being sold will be sufficiently protected. Further, all parties in interest will be given a sufficient opportunity to object to the relief requested, and any entity that does not object to a sale should be deemed to have consented.

38. Courts in this district routinely grant relief similar to that requested in this Motion. *See, e.g.*, *In re Nextpoint Fin. Inc.*, No. 23-10983 (TMH) (Bankr. D. Del. Dec. 11, 2023) (authorizing and approving the sale free and clear of any and all liens, claims, encumbrances and other interests under section 363 of the Bankruptcy Code); *In re Thane Int'l, Inc.*, No. 15-12186 (KG) (Bankr. D. Del. Dec. 1, 2015) (same); *In re Xchange Tech. Group LLC*, No. 13-12809 (KG) (Bankr. D. Del. Nov. 25, 2013) (same); *Arctic Glacier Int'l Inc.*, No. 12-10605 (KG) (Bankr. D. Del. July 17, 2012) (same); *In re EarthRenew IP Holdings LLC*, No. 10-13363 (CSS) (Bankr. D. Del. Feb. 18, 2011) (same); *In re Grant Forest Prods.*, No. 10-11132 (PJW) (Bankr. D. Del. April 26, 2010) (same); *In re Destinator Techs. Inc.*, No. 08-11003 (CSS) (Bankr. D. Del. July 8, 2008) (same).

39. Accordingly, the Foreign Representative submits that sufficient cause exists to approve the Sale of the Available U.S. Assets free and clear of all Liens.

C. ***The Court Should Afford Purchasers All Protections under Sections 363(m) of the Bankruptcy Code***.

40. The Foreign Representative also requests that each Purchaser of Available U.S. Assets receive the protections set forth in sections 363(m) and (n) of the Bankruptcy Code for sales greater than US$1,000,000. Specifically, section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does

> not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," courts have stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbots Dairies of Pa.*, 788 F.2d at 147. Courts have held that in order to demonstrate a lack of good faith, a party would have to show "fraud or collusion between the purchaser and [seller] or an attempt to take grossly unfair advantage [of other potential purchasers.]" *Id*.

41. Here, the Foreign Representative expects that each Purchaser of Available U.S. Assets will satisfy the requirements of section 363(m) of the Bankruptcy Code. The Foreign Representative's declaration in support of a Sale that generates a purchase price greater than US$1,000,000 will contain information relevant to the Court's evaluation of whether the purchaser is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code and entitled to the protections thereof. Parties in interest will have the opportunity to review the declaration and all materials filed in connection with a Sale of Available U.S. Assets. Furthermore, the Foreign Representative expects that any APA between the Foreign Representative and a Purchaser will be the result of arms'-length, good faith negotiations between the Debtors and the Purchaser. Accordingly, the Foreign Representative will request that the Court find that any Purchaser of Available U.S. Assets is entitled to the protections of section 363(m) of the Bankruptcy Code.

### **WAIVER OF BANKRUPTCY RULE 6004(h)**

42. The Foreign Representative also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of

property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Foreign Representative seeks in this Motion is necessary for the Debtors to consummate the sales of their assets to preserve and maximize the value of the estates for the benefit of all stakeholders. Accordingly, the Foreign Representative respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h).

## **NOTICE**

43. The Foreign Representative has provided notice of this Motion consistent with the Bankruptcy Code, Bankruptcy Rules and Local Rules. The Foreign Representative submits that such notice is sufficient in view of the facts and circumstances, and no other or further notice need be provided.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests that the Court enter the Sale Procedures Order, substantially in the form attached as **Exhibit B**, granting the requested relief and such other and further relief as may be just and proper.

Dated: May 21, 2024
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Austin T. Park*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Austin T. Park (No. 7247)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
aremming@morrisnichols.com
apark@morrisnichols.com

-and-

**LINKLATERS LLP**
Penelope J. Jensen
Christopher J. Hunker
Clark L. Xue
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 903-9000
Facsimile: (212) 903-9100
penelope.jensen@linklaters.com
christopher.hunker@linklaters.com
clark.xue@linklaters.com

*Attorneys for the Foreign Representative*