## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | Case No. 24-10632 (CTG) |
| Pride Group Holdings Inc., *et al.,* | ) | |
| | ) | **Hearing Date: June 11, 2024 at 3:00 p.m.** |
| Debtors. | ) | **Objection Deadline: June 4, 2024 at 4:00 p.m.** |

### MOTION OF PAUL TORRES FOR RELIEF FROM
### AUTOMATIC STAY UNDER 11 U.S.C. § 362

Paul Torres ("Movant") moves (the "Motion") pursuant to section 362 of title 11 of the United States Code (the "Bankruptcy Code") for relief from the automatic stay to pursue a State Court Action against the above-captioned debtors (collectively, the "Debtors"). In support of this Motion, Movant states as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334(a). This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein include, without limitation, sections 362(b)(3) and 362(d) of the Bankruptcy Code, Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-1 of the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

### Background

2.      The Debtors and their non-Debtor affiliates (collectively, the "Pride Group") operate a trucking and logistics conglomerate based in Canada with operations in Canada and the United States. The Pride Group's businesses are managed from their headquarters in Mississauga, Ontario, and they maintain facilities and operations in both Canada and the United States. The Pride Group own substantial assets within the territorial jurisdiction of the United

States, including, among other things, real estate properties, bank accounts, equipment, and trucks.

3.      On or about May 4, 2020, in Beaumont, Texas, the Movant was involved in a collision with an employee of Debtors while the employee was driving an 18-wheeler owned by Debtor Arnold Transportation Services, Inc., and sustained injuries and damages.

4.      On July 14, 2020, Movant filed a Petition captioned as *Paul Torres v. Arnold Transportation Services, Inc. and Laurel* LeBeouf, Case No. A-205999, now pending in the District Court of Jefferson County, Texas (the "State Court Action"). A copy of the Petition is attached hereto as **Exhibit A**.

5.      In the State Court Action, Movant has asserted negligence, negligent entrustment, and negligent hiring/negligence per se claims against Debtor Arnold Transportation Services, Inc. and other defendants for the personal injuries he sustained from the collision.

6.      Movant believes that Debtors carry a policy or policies of insurance which would provide coverage for Debtors' liability, if any, in connection with the damages sustained by Movant.

7.      On March 27, 2024, the Debtors commenced the CCAA Proceedings in the Canadian Court, and the Canadian Court issued the initial order on the following day (the "Initial Order,") authorizing, among other things, Randall Benson to act as the Foreign Representative for the Debtors and to file these chapter 15 cases (collectively, the "Chapter 15 Cases").

8.      On April 1, 2024 (the "Initial Petition Date"), the Foreign Representative filed form petitions for the Pride Group's 26 Canadian and U.S. operating companies and non-real estate holding companies (the "Initial Debtors"), thereby commencing the Initial Debtors' Chapter 15 Cases. On the same day, the Foreign Representative filed the Verified Petition for (I)

Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code [D.I. 2], ("Verified Petition") seeking, among other things, recognition of the CCAA Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code, and certain related relief. The *Order Granting Amended Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* was entered on May 2, 2024 [D.I. 152].

## Relief Requested

9.      Movant seeks to modify the automatic stay for the limited purpose of continuing the State Court Action to adjudicate Debtors' liability in connection with the injuries and damages sustained by Movant to judgment or settlement.  Movant also seeks authority, to the extent it may be necessary, to execute, levy, and collect upon such judgment or settlement as may be obtained by Movant from third parties and the Debtors' insurance carrier or carriers, only.  Movant agrees to limit the extent of Movants' recovery efforts against the Debtors to the funds available under any and all insurance policies which may provide coverage for Debtors' liability.

## Basis for Relief Requested

10.      Movant is entitled to relief from the automatic stay under section 362(d) of the Bankruptcy Code.  Subsection (d)(1) provides:

(d)      On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay . . .

3

(1)    for cause, including the lack of adequate protection of an interest in property of such party in interest.

U.S.C. § 362(d)(1).

11.    At a hearing for relief from the automatic stay under Bankruptcy Code section 362(d), the party opposing stay relief bears the burden of proof on all issues except debtor's equity in property.  *See In re Domestic Fuel Corp.*, 70 B.R. 455, 462-63 (Bankr. S.D.N.Y. 1987); 11 U.S.C. § 362(g).  If a creditor seeking relief from the automatic stay makes a prima facie case of "cause" for lifting the stay, the burden of going forward shifts to the trustee or debtor pursuant to Bankruptcy Code section 362(g).  *See In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997).

12.    The term "cause" is not defined in the Bankruptcy Code, and whether cause to lift the stay exists should be determined on a case-by-case basis. *See Izzarelli v. Rexene Prod. Co. (In re Rexene Prod. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992); *Sonnax Indus. v. Tri Compoenent Prod. Corp. (In re Sonnax Ind., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).  "Cause" for modification of the automatic stay "is an intentionally broad and flexible concept that permits . . . [a] [b]ankruptcy [c]ourt, as a court of equity, to respond to inherently fact-sensitive situations."  *See In re Texas State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995). Accordingly, courts determine what constitutes "cause" based on the totality of the circumstances in each particular case.  *Baldino v. Wilson (In re Wilson),* 116 F.3d 87, 90 (3d Cir. 1997) *(citing Trident Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co. (In re Trident Assocs. Ltd. P'ship),* 52 F.3d 127, 131 (6th Cir. 1995)).

13.    Under the totality of circumstances standard, courts often consider the hardship or prejudice to the non-debtor in determining whether to lift the automatic stay. *See In re Bock*

*Laundry Mach. Co.*, 37 B.R. 564, 566 (Bankr. N.D. Ohio 1984).  The court in *Bock* pointed out that "[c]ourts have developed a balancing test, whereby the interests of the estate are weighed against the hardships that will be incurred by the creditor-plaintiff." *Id*. at 566.  *See also Milne v. Johnson (In re Milne)*, 185 B.R. 280, 283 (N.D. Ill. 1995) (stating that a court should look into whether, *inter alia,* there will be injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and weigh the proportionality of harms).

14.    The legislative history to section 362(d)(1) indicates that cause may be established by a single factor such as "a desire to permit an action to proceed . . . in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case." *In re Rexene Products Co.*, 141 B.R. at 576 (*citing* H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977) U.S. Code Cong. & Admin. News pp. 5787, 6300).

15.    The legislative history emphasizes the section's applicability to proceedings in another tribunal.  *Id*.  "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." *Id., citing* H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977).

16.    This Court has previously applied an equitable balancing test to determine, if "cause" exists to lift the automatic stay to allow litigation to go forward in a non-bankruptcy forum.  *In re Rexene Products Co.*, 141 B.R. at 576.  Under the equitable balancing test, the Court reviews three factors:

> (1)    whether prejudice will be caused to either the bankrupt estate or the debtor as a result of the suit,

> (2)    whether the hardship to the movant by maintenance of the automatic stay outweighs the hardship caused to the debtor;

(3)    whether the movant has a reasonable probability of prevailing on the merits of the suit. *Id*.

17.    Application of the equitable balancing test to the present case clearly demonstrates that relief from the automatic stay is warranted.

18.    The purpose of chapter 15 of the Bankruptcy Code is to incorporate the Model Law on Cross-Border Insolvency promulgated by the United Nations Commission on International Trade Law so as to provide "effective mechanisms for dealing with cases of cross border insolvency." 11 U.S.C. § 1501(a). The Model Law reflects a "universalism" approach to cross-border insolvency and "treats the multinational bankruptcy as a single process in the foreign main proceeding, with other courts assisting in that single proceeding." *In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 306 (3d Cir. 2013) (citing Jay Lawrence Westbrook, *Chapter 15 at Last*, 79 AM. BANKR. L.J., 713, 715 (2005)), cert. *denied sub nom. RCS Cap. Dev., LLC v. ABC Learning Ctrs. Ltd.*, 571 U.S. 1198, 134 S. Ct. 1283, 188 L. Ed. 2d 300 (2014); *see also* 11 U.S.C. § 1508 ("In interpreting [*28] this chapter, the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions.").

19.    Chapter 15 cases are "ancillary" cases where a U.S. bankruptcy court acts "'in aid of the [foreign] main proceedings' to avoid 'a system of full bankruptcies . . . in each state where assets are found.'" *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 678 (S.D.N.Y. 2011) (alteration and omission in original) (quoting H.R. Rep. No. 109-31(I), at 108 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 171). "Thus, a Chapter 15 court in the United States acts as an adjunct or arm of a foreign bankruptcy court where the main proceedings are conducted." Id. at 678-79; *accord Hosking v. TPG Cap. Mgmt., L.P. (In re Hellas Telecomms. (Lux.) II SCA)*, 555 B.R. 323, 344 (Bankr. S.D.N.Y. 2016) ("the function of this Court is to provide assistance to the U.K.

6

court" and this Court "will not supplant the U.K. court on matters properly pending before the U.K. court"). Consistent with the purpose of chapter 15, the U.S. bankruptcy court must "cooperate to the maximum extent possible with a foreign court or a foreign representative." 11 U.S.C. § 1525(a).

20.     Upon recognition as a foreign main proceeding, certain relief is automatically granted to the foreign debtor and the foreign representative pursuant to 11 U.S.C. § 1520(a). The automatic stay becomes applicable with respect to the debtor's property within the territorial jurisdiction of the United States. 11 U.S.C. § 1520(a)(1). Further, section 363 of the Bankruptcy Code applies to the transfer of the debtors' U.S.-based property, and the foreign representative may exercise the rights and powers of a bankruptcy trustee under and to the extent provided by section 363. 11 U.S.C. § 1520(a)(2)-(3). Upon the commencement of a plenary bankruptcy case, "the trustee succeeds to a debtor's rights, including the ability to sue and be sued." *Grubin v. Rattet (In re Food Mgmt. Grp., LLC*), 380 B.R. 677, 693 (Bankr. S.D.N.Y. 2008) (citing 11 U.S.C. § 323); see also 11 U.S.C. § 1509(b)(1) (upon recognition of a foreign proceeding, "the foreign representative has the capacity to sue and be sued in a court in the United States").

21.     Unlike a plenary bankruptcy case under chapter 7, 11 or 13 of the Bankruptcy Code in which the provisions of chapters 1, 3, and 5 have general application, the following subset apply in a chapter 15 case: (i) the entirety of chapter 1 of the Bankruptcy Code, (ii) sections 307 and 362(o), and (iii) sections 555 through 557, and 559 through 562. 11 U.S.C. § 103(a) (outlining applicability of chapters). Upon recognition as a foreign main proceeding, sections 361, 362, 549, and 552 of the Bankruptcy Code also become applicable in a chapter 15 case pursuant to 11 U.S.C. § 1520(a).

22.     When this Court granted recognition of the Chapter 15 Cases with the CCAA Proceedings as a foreign main proceeding, the automatic stay became applicable to the Debtors' U.S.-based property by operation of 11 U.S.C. § 1520(a)(1).

**The Estates Will Not Be Prejudiced if Relief from the Automatic Stay is Granted**

23.     The estates will not be prejudiced if the automatic stay is lifted to permit the State Court Action to continue against the Debtors to conclusion, because: (i) the State Court Action is the most expeditious means of liquidating the Movant's claims against the Debtors, and (ii) the State Court Action will not burden the estates financially or operationally.

24.     This Court's jurisdiction over Movant's claims arises only under section 1334 of title 28.  Although this Court can assign the adjudication of Movant's claims to the United States District Court for the District of Delaware (the "District Court"), it is not customary for personal injury actions to be so assigned in this District.   Rather, in this District, such claims are customarily tried in the forum where the action is commenced.

25.     Liquidating the Movant's claims will not prejudice the estates.  In fact, allowing the State Court Action to conclude may be the most expeditious way to accomplish a quantification of the Movant's claims.  *See In re Wheeler Group, Inc.*, 75 B.R. 200, 210 (Bankr. S.D. Ohio 1987).   In *Wheeler Group*, the Bankruptcy Court lifted the automatic stay after recognizing the benefits of allowing an employment discrimination case, commenced pre-petition, to conclude.  The Court observed, "the most expeditious way to liquidate the claim is to allow it to proceed to its conclusion in the District Court."  *Id.*

26.     Liquidating the Movant's claims will minimize the estates' litigation costs because it will likely cost less to conclude the State Court Action than to start a new trial in the

District Court.[1]    Debtors, and their respective counsel, have expended time and effort in connection with the State Court Action, which should not be unnecessarily duplicated.

27.    Finally, liquidating the Movant's claims will not prejudice the Debtors' estates because, upon information and belief, there are insurance policies in place, and the Movant will agree to limit any recovery to non-Debtor sources, such as the insurance policies.  Further, the Debtors' insurers have a duty to defend the State Court Action.  Participation in the State Court Action simply will not prejudice the estates.

**Balancing the Hardships Weighs Heavily in Favor of Modifying the Stay to Allow the State Court Action to Continue**

28.    Liquidating the Movant's claims is the most efficacious, least burdensome, and least costly way for both the estates and the Movant to resolve Movant's claims.  "[O]ne of the primary purposes in granting relief from the stay to permit claim liquidation is to economize judicial resources." *Peterson v. Cundy (In re Peterson)*, 116 B.R. 247, 250 (D. Col. 1990); *see also, Murray Ind., Inc. v. Aristech Chem. Corp. (In re Murray Ind., Inc.),* 121 B.R. 635, 637 (Bankr. M.D. Fla. 1990) ("[T]his Court is of the opinion that to begin this litigation anew in this Bankruptcy Court would result in more of a hardship to the Movant and would certainly result in a waste of judicial resources.").

29.    As set forth above, liquidating the Movant's claims creates little or no hardship or prejudice to the estates.  However, liquidating the claims in District Court would unnecessarily duplicate Movant's efforts, causing a financial hardship to be imposed upon the Movant.  In addition, starting anew in the District Court risks the aging and loss of evidence and the unavailability of witnesses.

---

[1] Title 28, United States Code, Section 157(b)(2)(B) prohibits a bankruptcy judge from liquidating unliquidated state Court actions.

30.    Finally, the State Court Action includes a jury demand and involves claims based upon only state law.  The trial court is more familiar with the State Court Action and its issues, as well as the applicable state law.  Principles of judicial economy are better served by a trial in state court involving the Debtors' insurers and the jury demanded by Movant.  Under these circumstances, the balancing of the burdens clearly favors relief from the automatic stay so that the Movant may liquidate his claims pursuant to state law.

### **Probability of Success on the Merits**

31.    When a party seeks to lift an automatic stay, the required showing for the movant's probability of success is "very slight."  *In re Rexene Products,* 141 B.R. at 578; see also In re Continental Airlines, Inc., 152 B.R. 420, 426 (D. Del. 1993) ("Even a slight probability on the merits may be sufficient to support lifting an automatic stay in an appropriate case.").  It "merely requires a showing that [the movant's] claim is not frivolous."  *Levitz Furniture Inc. v. T. Rowe Price Recovery Fund L.P.* (In re Levitz), 267 B.R. 516, 523 (Bankr. D. Del. 2000).  Movant has a significant probability of success on the merits that warrants relief from the automatic stay.

32.    The State Court Action includes claims against the Debtors for negligent entrustment and negligent hiring/negligence per se.  The Debtors owed a duty to the Movant to hire competent drivers.  As a direct result of the Debtors' negligence in hiring and/or training its employee, the Movant suffered injury.  Movant's claims are supported by documentary evidence, witnesses, and, accordingly, have substantial merit.

33.    In sum, the Movant clearly has meritorious claims of value which must be liquidated.  Since the estates will not be prejudiced by the liquidation of such claims, and the relative hardships weigh heavily in favor of the Movant, this Court should permit the State Court

Action to continue to conclusion against the Debtors.  Indeed, allowing the State Court Action to proceed against the Debtors would benefit both the Debtors and the Movant by minimizing costs and avoiding the risk of inconsistent adjudication.

WHEREFORE, the Movant respectfully requests relief from the automatic stay so he may pursue his claims against the Debtors to final, non-appealable judgment or settlement and collect any such judgment or settlement.


Dated:  May 22, 2024                    HOGAN♦McDANIEL


                                        */s/ Daniel K. Hogan*
                                        Daniel K. Hogan (No. 2814)
                                        1311 Delaware Ave.
                                        Wilmington, DE  19806
                                        Telephone:  302-656-7540
                                        Facsimile:  302-656-7599
                                        Email: dkhogan@dkhogan.com

                                        *Attorney for Movant*