## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Pride Group Holdings Inc., *et al.*[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 24-10632 (CTG)<br><br>Jointly Administered<br><br>**Hearing Date:**<br>**August 15, 2024 at 2:00 p.m. (ET)**<br><br>**Objection Deadline:**<br>**August 8, 2024 at 4:00 p.m. (ET)** |

### MOTION OF THE FOREIGN REPRESENTATIVE
### FOR ENTRY OF AN ORDER (I) ENFORCING THE TURN-OVER
### AND RETRIEVAL ORDERS AND (II) GRANTING RELATED RELIEF

Randall Benson, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors")[2], in the Canadian proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"), respectfully submits this motion (the "Motion") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, granting relief under section 1521(a)(7) of Title 11 of the United States Code (the "Bankruptcy Code").

---

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

[2] The term "Debtors" does not include: 1000089137 Ontario Inc., DVP Holdings, Corp., Parker Global Enterprises, Inc., Parker Transport Co., and Arnold Transportation Services, Inc. (collectively, the "Arnold Entities").

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

2.      Venue is proper in this Court and this District pursuant to 28 U.S.C. § 1410.

3.      The Foreign Representative, in his capacity as authorized foreign representative, has properly commenced these chapter 15 cases pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code and rules 2002 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      The statutory predicates for the relief requested herein are section 105(a) and 1521 of the Bankruptcy Code.

**BACKGROUND**

**I.      Commencement of the CCAA Proceedings and the Chapter 15 Cases**

5.      The Debtors and certain of their non-Debtor affiliates (collectively, the "Pride Group")[3] operate a trucking and logistics conglomerate based in Canada with operations in Canada and the United States.  The Pride Group's businesses are managed from their headquarters in Mississauga, Ontario, and they maintain facilities and operations in both Canada and the United States.  The Pride Group owns substantial assets located within the territorial jurisdiction of the

---

[3]   As used herein, "Pride Group" includes: (i) each of the "Applicants" listed in Schedule "A" to each of the Turn-Over and Retrieval Orders (as defined below); (ii) Pride Truck Sales L.P., TPine Leasing Capital L.P., and Sweet Home Hospitality L.P. ((i) and (ii) together, the "Pride Entities"); and (iii) Block 6 Holding Inc., 2500819 Ontario Inc., Pergola Holdings, Corp., and Pride Global Insurance Company Ltd.  Further, as noted in the Recognition Order (as defined below), the Foreign Representative is not seeking relief with respect to the Arnold Entities. As a result, the terms "Pride Group" and "Pride Entities" do not include the Arnold Entities.

United States, including, among other things, real estate properties, bank accounts, equipment, and trucks.

6.      On March 27, 2024, the Debtors commenced the CCAA Proceedings in the Canadian Court, and the Canadian Court issued the initial order on the following day (the "Initial Order") authorizing, among other things, Randall Benson of RC Benson Consulting Inc. to act as the Foreign Representative and file these chapter 15 cases (collectively, the "Chapter 15 Cases").

7.      On April 1, 2024 (the "Petition Date"), and on April 15, 2024, the Foreign Representative filed petitions for the Pride Group's Canadian and U.S. operating companies, single-asset real estate holding companies, and non-real estate holding companies (the "Petitions"), thereby commencing the Debtors' Chapter 15 Cases.  Also on the Petition Date, the Foreign Representative filed the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 2] (the "Verified Petition") seeking, among other things, recognition of the CCAA Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code and certain related relief.

8.      On April 5, 2024, the Canadian Court held a further hearing and granted an Amended and Restated Initial Order (the "A&R Initial Order").  Among other things, the A&R Initial Order directed and empowered Ernst & Young Inc., the Debtors' Canadian Court-appointed monitor (in such capacity, the "Monitor") to assist the Pride Entities and the Canadian Court in assessing the validity, enforceability and relative priority of any security, ownership or other interest which any person (including a Securitization Counterparty (as defined below)) may assert in or to any property, including property purportedly transferred under a Securitization Program (as defined below) (the "Validation Mandate").  Following entry of the A&R Initial Order, the Foreign Representative sought and obtained enforcement of that order in the United States on a

3

provisional basis pursuant to this Court's *Order Granting Provisional Relief in Connection with Debtors-In-Possession Financing and Certain Protocols Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 110] (the "Second Provisional Relief Order").

9.      On April 23, 2024, the Debtors filed an amended Verified Petition [D.I. 121] (the "Amended Verified Petition, and together with the Petitions, the "Chapter 15 Petitions") seeking, among other things, recognition of the CCAA Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code, enforcement of the A&R Initial Order in the United States on a final basis, and related relief.

10.      On April 30, 2024, the Arnold Entities (except for 1000089137 Ontario Inc.) filed cases under chapter 7 of the Bankruptcy Code pending in the United States Bankruptcy Court for the District of Delaware.[4]    As described in the Amended Verified Petition, the Foreign Representative is not seeking further relief with respect to the Arnold Entities in the Chapter 15 Cases.

11.      On May 2, 2024, the Court entered an order [D.I. 152] (the "Recognition Order") granting recognition of the CCAA Proceedings and the related relief sought in the Chapter 15 Petitions, including, among other things, extending the relief granted in the Second Provisional Relief Order on a final basis.

## II.      The Securitization Programs and the Monitor's Review

12.      The Pride Entities own or administer a fleet of approximately 21,600 trucks and trailers, the majority of which is leased to customers.  Approximately 13,100, or 61%, of these trucks and trailers are subject to the Pride Entities' 11 securitization programs (each, a

---

[4]      *See In re Arnold Transportation Services, Inc.*, Case No. 24-10928 (CTG) (Bankr. D. Del. 2024); *In re DVP Holdings Corp.*, Case No. 24-10931 (CTG) (Bankr. D. Del. 2024); *In re Parker Global Enterprises, Inc.*, Case No. 24-10929 (CTG) (Bankr. D. Del. 2024); *In re Parker Transport Co.*, Case No. 24-10930 (CTG) (Bankr. D. Del. 2024).

"Securitization Program," and collectively, the "Securitization Programs"). Six of the Securitization Programs are governed by Canadian law, and five are governed by New York or Illinois law (as applicable).

13.     Four of the Securitization Programs provide for transfers of securitized assets from Pride Entities to a corresponding "special purpose vehicle" (an "SPV"), which in turn funds its acquisition of securitized assets by selling such securitized assets to, or using them as collateral for, corresponding financing transactions with one or more securitization funders (a "Two-Step Structure"). The remaining seven Securitization Programs provide for transfers of securitized assets from Pride Entities directly to a corresponding securitization funder (a "One-Step Structure").

14.     The counterparties to the Securitization Programs (the "Securitization Counterparties") are the entities that have acquired a transferred interest in the applicable securitized assets from a Pride Entity under the applicable Securitization Program, including either the (i) Securitization Counterparty and any securitization funder to an SPV in a Two-Step Structure or (ii) securitization funder that acquires interests in securitized assets directly from a Pride Entity in a One-Step Structure (each of the entities described in the foregoing clauses (i) or (ii), a "Securitization Party," and collectively, the "Securitization Parties").

15.     Each Securitization Program is intended to share the common attributes of (i) transferring ownership of certain financial assets (including receivables arising under leases and/or loans) to the applicable Securitization Counterparty, and (ii) the initial retention of certain servicing responsibilities by the Pride Entities.

16.     Since the commencement of the CCAA proceedings and these Chapter 15 Cases, several Securitization Parties have asserted security, ownership, consent rights and/or other

remedies or rights in respect of securitized assets pursuant to the relevant Securitization Programs. Additionally, several Securitization Parties have filed motions in the CCAA Proceedings seeking to lift the stay of proceedings and exercise their rights under the Securitization Program documents, including the transitioning of servicers that are responsible for payments, distributions and remittances as specified in such agreements.

17.     The Pride Entities and their chief restructuring officer (the "CRO") desire to transition and relinquish servicing and other duties of the Pride Entities under the Securitization Programs to, or as directed by, a Securitization Counterparty (a "Turn-Over") in respect of the applicable securitized assets (the "Subject Assets") on an expedited basis, including appointing replacement servicers over the Subject Assets.

18.     The A&R Initial Order (as enforced in the United States pursuant to the Recognition Order) provides that the Pride Entities shall remain in possession and control of their property, wherever situated.  To the extent that the Subject Assets are the property of a Securitization Counterparty, such assets would not be "Property" (as defined in the A&R Initial Order) of the Pride Entities.  On this basis, and except for Multiple Collateral Vehicles (as defined in the Tenth Report (as defined below)), the removal of the Subject Assets from the CCAA Proceedings is dependent on the Monitor being satisfied as to a Securitization Counterparty's ownership entitlements in the applicable Subject Assets.

19.     In discharging the Validation Mandate, the Monitor instructed its counsel to undertake a review of the Securitization Programs to inform the Canadian Court of the Monitor's interim Turn-Over recommendations based on its counsel's findings.  Over the last several months the Monitor and its counsel have reviewed over 13,600 securitized assets and 1,500 security interest waivers, acknowledgements, estoppels or release agreements.  As a result, the Monitor has

made Turn-Over recommendations that are set forth in detail and subject to the limitations, qualifications, and standard of review in the Tenth Report of the Monitor, dated July 21, 2024, attached hereto as **Exhibit B** (the "Tenth Report").

20.    The Turn-Over recommendations in the Tenth Report are made based on the form of "Undertaking," which was shared with the DIP Agent (as defined in the Recognition Order) and counsel to each of the Securitization Parties that participated in a meeting with the Monitor and its counsel and incorporates comments received from such parties. Certain terms of the Undertaking, which are included in the proposed Turn-Over Order, are designed to restore the interests of or otherwise compensate persons adversely affected by a favorable Turn-Over recommendation if it is subsequently determined that the applicable Securitization Party did not have a valid and enforceable ownership interest in the Subject Assets or that such ownership interest is subject to a priority lien registration.

## III.    The Turn-Over and Retrieval Orders

### A.    The Turn-Over Order

21.    Based on the Monitor's preliminary findings and recommendations, the Debtors filed a motion (the "Securitization Motion") on July 22, 2024 in the CCAA Proceedings seeking entry of an order (the proposed "Turn-Over Order") by the Canadian Court that, among other things, enables each Securitization Party under a Specified Securitization Program[5] to exercise all rights and take any and all steps or actions, in each case that are permitted and enforceable under the documents for the applicable Specified Securitization Program (the "Securitization Documents"), in order to effectuate a Turn-Over of the Subject Assets for the Specified Securitization Program to, or as directed by, the Securitization Counterparty, together with the

---

[5]    Each Specified Securitization Program is described in Schedule "B" to the proposed Turn-Over Order.

proceeds thereof, including to replace a Pride Entity as the servicer thereunder and to appoint a successor servicer, substitute servicer or replacement servicer to the extent permitted thereunder (a "Replacement Servicer").

22.     Consistent with the form of Undertaking, the proposed Turn-Over Order also, among other things: (i) requires that each Securitization Party and any Replacement Servicer comply with the Securitization Documents, including the provisions relating to the application of collections, proceeds and assets derived from the Subject Assets in accordance with the payment, distribution and remittance priorities and requirements specified in such Securitization Agreements; (ii) provides for the termination of certain Canadian tax elections and related obligations of the Pride Entities following a Turn-Over; and (iii) includes a process to restore the interests of or otherwise compensate the beneficial owner of Subject Assets following the Turn-Over of such Subject Asset to the extent that is later determined by the Canadian Court to not (a) have belonged to the Securitization Counterparty at the time of the related Turn-Over or (b) have priority over other security interests, ownership interests or other proprietary interests in such Subject Asset, in each case, together with all identifiable proceeds therefrom.

23.     A copy of the proposed form of Turn-Over Order, which has not yet been granted by the Canadian Court, is attached hereto as **Exhibit C**.  A hearing before the Canadian Court on the relief sought in the proposed Turn-Over Order is scheduled for August 7, 2024.  The Foreign Representative intends to supplement this Motion by filing the as-granted Turn-Over Order shortly after it is granted by the Canadian Court, along with a redline reflecting any changes.

### B.  The Retrieval Order

24.     The Securitization Motion also seeks entry of an order (the "Retrieval Order," and together with the Turn-Over Order, the "Turn-Over and Retrieval Orders") by the Canadian Court that, among other things, sets forth the terms and conditions for the retrieval of the Subject Assets

consisting of motor vehicles and trailers without a related performing lease and in the possession of a Pride Entity.

25.     A copy of the proposed form of Retrieval Order, which has not yet been granted by the Canadian Court, is attached hereto as **Exhibit D**.  The relief sought in the proposed Retrieval Order is also scheduled to be heard by the Canadian Court on August 7, 2024.  The Foreign Representative intends to supplement this Motion by filing the as-granted Retrieval Order shortly after it is granted by the Canadian Court, along with a redline reflecting any changes.

### RELIEF REQUESTED

26.     By this Motion, the Foreign Representative seeks entry of the Proposed Order enforcing each of the Turn-Over and Retrieval Orders in the United States after such orders are granted by the Canadian Court, and granting such other and further relief as the Court deems just and proper.

### BASIS FOR RELIEF REQUESTED

27.     Upon recognition of a foreign proceeding, section 1521(a) of the Bankruptcy Code authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors."  Such relief may include "granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) of the Bankruptcy Code." 11 U.S.C. § 1521(a)(7).  The Court may grant relief under section 1521(a) of the Bankruptcy Code if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).

28.     Here, it is in the best interests of the Pride Entities, the Securitization Parties, and other parties in interest to effectuate a Turn-Over of the Subject Assets to the applicable

Securitization Counterparties and transition servicing duties from the Pride Entities given that the Pride Entities are unable to continue servicing the Subject Assets.

29.    Based on an extensive review of the Securitization Programs and related security, the Monitor and its advisors have determined on a preliminary basis that each applicable Securitization Counterparty most likely acquired a valid and enforceable ownership interest in the Subject Assets. Moreover, under the proposed Turn-Over and Retrieval Orders, each Securitization Counterparty receiving the Subject Assets on a Turn-Over and certain other persons, including any other related Securitization Party and any Replacement Servicer, are required to restore the interests of or otherwise compensate persons adversely affected by a Turn-Over if it is subsequently determined that the applicable Securitization Party did not have a valid and enforceable ownership interest in the Subject Assets or that such ownership interest is subject to a priority lien registration. Accordingly, pursuant to the proposed Turn-Over and Retrieval Orders, the Securitization Parties may receive and maximize the value their property on an expedited basis without compromising the interests that other parties may have in the Subject Assets.

30.    Further, the relief sought in the Turn-Over and Retrieval Orders generally comports with the U.S. due process standards. On notice to creditors, the Canadian Court will review the proposed Turn-Over and Retrieval Orders, hold a hearing, and all creditors and other parties will have a full and fair opportunity to participate. By granting the relief requested herein, the Court would enforce the Turn-Over and Retrieval Orders on a coextensive basis in the United States, which will allow the Pride Group to settle its ongoing disputes with the Securitization Parties and continue to operate its businesses and effectuate its restructuring efforts.

31.    Granting the requested relief is also in the public interest because it will facilitate the Foreign Representative's efforts to complete a court-supervised restructuring process (i.e., the

CCAA Proceedings) for the benefit of all creditors and other stakeholders (including those in the United States). Additionally, granting the relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15 of the Bankruptcy Code. *See* 11 U.S.C. § 1501(a).

### NOTICE

32. The Foreign Representative has provided notice of this Motion consistent with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). The Foreign Representative submits that such notice is sufficient in view of the facts and circumstances, and no other or further notice need be provided.

*[Remainder of page left intentionally blank]*

**CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit A**, granting the requested relief and such other and further relief as may be just and proper.

Dated: August 1, 2024
      Wilmington, Delaware

      **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

      */s/ Austin T. Park*
      Derek C. Abbott (No. 3376)
      Andrew R. Remming (No. 5120)
      Austin T. Park (No. 7247)
      1201 North Market Street
      P.O. Box 1347
      Wilmington, DE 19899-1347
      Telephone: (302) 658-9200
      Facsimile: (302) 658-3989
      dabbott@morrisnichols.com
      aremming@morrisnichols.com
      apark@morrisnichols.com

      -and-

      **LINKLATERS LLP**
      Penelope J. Jensen
      Christopher J. Hunker
      Clark L. Xue
      1290 Avenue of the Americas
      New York, NY 10104
      Telephone: (212) 903-9000
      Facsimile: (212) 903-9100
      penelope.jensen@linklaters.com
      christopher.hunker@linklaters.com
      clark.xue@linklaters.com

      *Attorneys for the Foreign Representative*