**<u>Exhibit C</u>**

**Proposed Turn-Over Order**

Court File No. CV-24-00717340-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| THE HONOURABLE | ) | WEDNESDAY, THE 7TH |
|---|---|---|
| | ) | |
| JUSTICE OSBORNE | ) | DAY OF AUGUST, 2024 |
| | ) | |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF **PRIDE GROUP HOLDINGS INC.** and those Applicants listed on Schedule "A" hereto (each, an "**Applicant**", and collectively, the "**Applicants**")

**ORDER**

**(Re: Turn-Over of Securitized Assets)**

**THIS MOTION**, made by the Applicants, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. c-36, as amended (the "**CCAA**") for an order, *inter alia*, authorizing the Pride Entities (as defined below) to give up possession of and control over Subject Assets (as defined below) and transition and relinquish administrative and servicing duties, responsibilities and obligations with respect to such Subject Assets, in each case in accordance with the terms and requirements of a Specified Securitization Program (as defined below), to, or as directed by, the Securitization Counterparty (as defined below) and to permit a Securitization Party (as defined below) to exercise rights related thereto against the Pride Entities, in each case, to the extent provided under such Specified Securitization Program (in respect of a Specified Securitization Program, a "**Turn-Over**"), and to set out the terms and conditions upon which such Turn-Over may occur, was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the Tenth Report of Ernst & Young Inc., in its capacity as Monitor (the "**Monitor**") dated July 21, 2024, and on hearing the submissions of respective counsel for the Applicants and those limited partnerships set out in Schedule "A" hereto (collectively, the "**Pride Entities**"), the Monitor, the DIP Agent (as defined in the Second Amended and Restated Initial

Order dated May 6, 2024, as may be amended and/or restated from time to time, the "**Initial Order**"), the Securitization Counterparties and such other counsel as were present, no one else appearing although duly served as appears from the Affidavit of Service of [●] sworn July [●], 2024:

## SERVICE

1.    **THIS COURT ORDERS** that the time for service of the Notice of Motion is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

## DEFINITIONS AND INTERPRETATION

2.    **THIS COURT ORDERS** that any capitalized term used and not defined herein shall have the meaning ascribed thereto in the Initial Order.

3.    For the purposes of this Order, the following terms shall have the following meanings:

(a)    "**Business Day**" means, except as otherwise specified herein, a day, other than a Saturday, Sunday or a statutory holiday, on which banks are generally open for business in Toronto, Ontario;

(b)    "**Determination Motion Bar Date**" has the meaning set out in paragraph 21 herein.

(c)    "**One-Step Structure**" means a Securitization Program that contemplates a transfer of securitized assets from a Pride Entity directly to a corresponding Securitization Funder.

(d)    "**Return Asset**" means a Subject Asset that is later determined by Court order in these CCAA Proceedings to not (i) have belonged to the Securitization Counterparty at the time of the related Turn-Over or (ii) have priority over other security interests, ownership interests or other proprietary interests in such Subject Assets, in each case, together with all identifiable proceeds therefrom.

(e)    "**Securitization Counterparty**" means the entity identified under a Securitization Program as the Person who would acquire an ownership or other proprietary

interest in securitized assets from a Pride Entity under the Securitization Program, being either the SPV in a Two-Step Structure or the Securitization Funder in a One-Step Structure, and in this Order refers to the Securitization Counterparties identified in Schedule "B" hereto, as the context requires.

(f)     "**Securitization Funder**" means, in respect of a Securitization Program, each entity who (i) is contemplated to acquire an ownership or other proprietary interest in securitized assets from a Pride Entity in consideration of the payment of a purchase price therefor, other than an SPV, (ii) has provided funding in any form to an SPV to enable such SPV to acquire an ownership or other proprietary interest in securitized assets from a Pride Entity in consideration of the payment of a purchase price therefor, including pursuant to any debt, equity or acquisition funding arrangement, and (iii) if the Person in paragraphs (i) or (ii) above is itself a special purpose vehicle, each entity who has provided funding in any form to such Person in respect of the funding of the acquired securitized assets.

(g)     "**Securitization Party**" means in relation to a Securitization Program, the Securitization Counterparty and each Securitization Funder thereunder.

(h)     "**Securitization Program**" means the transactions and arrangements under which a Pride Entity would transfer ownership or other proprietary interests in specified financial and other assets to a Securitization Counterparty, together with any related funding transaction under which an SPV would fund its acquisition of such financial or other assets, in each case as identified and described in the Tenth Report.

(i)     "**Specified Securitization Program**" means a Securitization Program specified in Schedule "B".

(j)     "**SPV**" means a special purpose vehicle established by, at the direction or for the benefit of one or more Pride Entities in connection with a Specified Securitization Program.

(k)     "**Subject Assets**" means, in respect of a Specified Securitization Program, the ownership and other proprietary interests in financial and other assets contemplated

- 4 -

to be acquired by the Securitization Counterparty from a Pride Entity pursuant to the Specified Securitization Program, in each case as such financial and other assets exist as of the date of this Order and are identified by reference to the vehicles and other equipment listed in the applicable Subject Asset Schedule for the Specified Securitization Program, together with all proceeds thereof.

(l)     "**Subject Asset Schedule**" means, in respect of a Specified Securitization Program, the "Subject Asset Schedule" identified by reference to the Specified Securitization Program from among Schedules "[●] through [●]" hereto.

(m)    "**Two-Step Structure**" means a Securitization Program that contemplates a transfer of securitized assets from Pride Entities to a corresponding SPV, which in turn funds its acquisition of securitized assets by selling the securitized assets to, or using them as collateral for, matching financing transactions with, one or more Securitization Funders.

**TURN-OVER AND SERVICING**

4.      **THIS COURT ORDERS** that the stay of proceedings provided for in the Initial Order in respect of the Pride Entities be and is hereby lifted for the purpose and to the extent of permitting each Securitization Party under a Specified Securitization Program to exercise all rights and to take any and all steps or actions, in each case that are permitted and enforceable under the documents for the Specified Securitization Program (the "**Securitization Agreements**") described in Schedule "B" beside the name of each Securitization Counterparty, as applicable, in order to effectuate a Turn-Over of the Subject Assets for the Specified Securitization Program to, or as directed by, the Securitization Counterparty, together with the proceeds thereof, including to replace a Pride Entity as the servicer thereunder and to appoint a successor servicer, substitute servicer or replacement servicer to the extent permitted thereunder (a "**Replacement Servicer**") and to permit the Securitization Party or its designee to exercise any powers of attorney granted by a Pride Entity for the purposes thereof, subject to the terms of this Order.

5.      **THIS COURT ORDERS** that each Pride Entity that is subject to a Securitization Agreement entered into in respect of a Specified Securitization Program shall provide the Securitization Counterparty and any Replacement Servicer, together with their respective agents,

reasonable access to its premises, books, documents, contracts, including any agreements purporting to amend a Subject Asset, corporate records, accounting records and any other papers, records, data, including data in electronic form, and other financial documents and information of any kind, in each case as and to the extent they relate to the applicable Subject Assets for the Specified Securitization Program, and any computer programs, computer tapes, computer disks, or other data storage media containing such information in such Pride Entities' possession or control (including providing any passwords necessary therefor), and shall permit such Securitization Counterparty and any Replacement Servicer and their respective agents to make, retain and take away copies thereof and grant to such Securitization Counterparty reasonable access to and use of such Pride Entities' accounting, computer software and physical facilities relating thereto, subject to such licensing, confidentiality or other restrictions as are applicable to such access and use and subject to such actions as the Pride Entities may require to preserve privilege attaching to solicitor-client communication or to comply with any applicable statutory or regulatory requirements applicable thereto.

6.     **THIS COURT ORDERS** that the Pride Entities shall reasonably cooperate with the Securitization Counterparty and any Replacement Servicer, together with their respective agents, in connection with the appointment of such Replacement Servicer in accordance with applicable Securitization Agreements for a Specified Securitization Program, and in respect of the transition of servicing of the applicable Subject Assets to the Securitization Counterparty or such Replacement Servicer pursuant to such Securitization Agreements (including, without limitation, transferring to, or as directed by, the Securitization Counterparty or its designee any certificates of title relating to vehicles included within such Subject Assets or registering the Securitization Counterparty or its designee as the owner of such vehicles on the records maintained by the applicable governmental agency on which ownership of vehicles may be required, in each case, if and to the extent that the Securitization Agreements provide for a transfer of the beneficial ownership thereof to the Securitization Counterparty, and executing any additional documentation reasonably required to give effect to the foregoing).

7.     **THIS COURT ORDERS** that each Securitization Party shall reasonably cooperate with the Pride Entities to ensure the transition of servicing in respect of the applicable Subject Assets occurs in an orderly manner.

8.    **THIS COURT ORDERS** that the Turn-Over(s) ordered and directed herein do not in any way confirm or validate an ownership or priority right or interests of an applicable Securitization Counterparty in any Subject Assets and this order is without prejudice to any rights, interests, claims and entitlements that the Pride Entities, the Monitor, or any other affected Person may have in respect of the Subject Assets.

**ONGOING OBLIGATIONS FOLLOWING TURN-OVER**

9.    **THIS COURT ORDERS** that any Turn-Over in respect of a Specified Securitization Program will be subject to the following:

(a)    <u>On Going Compliance with Securitization Agreements</u>. Each Securitization Party and any Replacement Servicer shall comply with all terms of the Securitization Agreements applicable to it under the Specified Securitization Program, including the provisions relating to the application of collections, proceeds and assets derived from the applicable Subject Assets in accordance with the payment, distribution and remittance priorities and requirements specified in such Securitization Agreements, including with respect to any amounts required to be paid, distributed or remitted to or on behalf of a Pride Entity or to an insurer or taxation authority on behalf of the obligor under an applicable Subject Asset.

(b)    <u>Termination of Tax Elections</u>. Each Securitization Party acknowledges and agrees that (i) the applicable Pride Entity under the Securitization Agreements for the Specified Securitization Program and the related Securitization Counterparty have jointly revoked, terminated and cancelled, or will revoke, terminate and cancel, effective as of the effective date of the Turn-Over, any election made by them (including any joint election) under Part IX of the *Excise Tax Act* (Canada) or *An Act Respecting the Québec Sales Tax* and (ii) notwithstanding any provision of such Securitization Agreements, from and after the revocation, termination or cancelation of such election, no Pride Entity shall be responsible to remit under its name and sales tax registration numbers any sales taxes payable by obligors in respect of any Subject Assets following the effective date of the Turn-Over.

(c)    <u>Other Assets Affected</u>.  If following the Turn-Over of the Subject Assets to, or as directed by, the Securitization Counterparty under the Specified Securitization Program, a Securitization Party under such Specified Securitization Party receives assets not related to or derived from such Subject Assets, it shall forthwith return such assets to the Person who the Monitor or the Court identifies, confirms or directs is the proper owner of such assets.

(d)    <u>Notification Requirements</u>.  If any Securitization Party or any Replacement Servicer under the Specified Securitization Program provides notice to any obligor under one or more related Subject Assets or to any insurer of vehicles forming part of such Subject Assets, including to pay, distribute or remit amounts due under a related lease, loan or insurance policy to or on behalf of the related Securitization Party or Replacement Servicer, it shall ensure (including by causing any Replacement Servicer to act) that such notice specifically identifies and relates only to such Subject Asset or Subject Assets.

(e)    <u>Return of Return Assets</u>.  If following the Turn-Over of a Subject Asset under the Specified Securitization Program, subject to the Determination Motion Bar Date, it is determined by the Court that such Subject Asset is a Return Asset, the Securitization Counterparty and each other related Securitization Party shall ensure (including by causing any Replacement Servicer to act) that:

(i)    such Return Asset is, as soon as reasonably practicable, returned by it to the Person or Persons who the Monitor or the Court identifies or confirms is the beneficial owner thereof or entitled Person thereunder (the "**Entitled Person**");

(ii)    registered ownership of any vehicle or equipment forming part of the Return Asset is, as soon as reasonably practicable, transferred back to the Entitled Person;

(iii)    copies of all records maintained by it following the Turn-Over relating to the Return Asset are, as soon as reasonably practicable, delivered by it to the Entitled Person;

(iv)     any notice given to an obligor directing payment in respect of the Return Asset to any Securitization Party or any Replacement Servicer is, as soon as reasonably practicable, withdrawn and suspended and such obligor is directed to pay amounts in respect of the Return Asset to the Entitled Person;

(v)     any amounts received by a Securitization Party in respect of the Return Asset are remitted to the Entitled Person and until so remitted are held by it in trust for the benefit of the Entitled Person;

(vi)     if the Subject Asset became a Return Asset because a Securitization Counterparty is determined by the Court not to have a beneficial ownership interest in the Subject Asset or not to otherwise have a first-ranking interest in the Subject Asset then:

(1)     any collections or other proceeds of or derived from the Return Asset from and after the date of the Turn-Over that are held in an account for the benefit of, or that have otherwise been paid, distributed or remitted to, a Securitization Party (including any sale proceeds or recoveries) shall be, as soon as reasonably practicable, remitted to the Entitled Person (net of any out-of-pocket costs incurred by the Securitization Party in collecting and maintaining the Return Asset);

(2)     any amount previously received by a Securitization Party from or with respect to the Return Asset from the date of the Turn-Over shall, as soon as reasonably practicable, be returned or reimbursed to the Entitled Person (net of any out-of-pocket costs incurred by the Securitization Party in collecting and maintaining the Return Asset); and

(3)     to the extent the Return Asset has not been sold or otherwise disposed of, the Return Asset shall be, as soon as reasonably practicable, returned to the Entitled Person; and

(vii)    if the Subject Asset became a Return Asset because it was subject to a prior-ranking claim, trust, security interest, lien or other adverse claim (a "**Lien Claim**"), such Lien Claim:

(1)    is discharged from and to the extent of proceeds realized by a Securitization Party from the Return Asset and/or its proceeds; and

(2)    the beneficiary of such Lien Claim is reimbursed to the extent of any reduction in the value of the Return Asset and/or its proceeds resulting from actions taken or permitted or omissions by a Securitization Party, if and to the extent that such actions or omissions were deficient having regard to the standards reasonably applicable to the holding and administration of assets of a similar type or character on behalf of another person in similar circumstances.

Without limiting the foregoing, the Securitization Party shall reimburse any Person that had an ownership interest or a prior ranking Lien Claim in the Return Asset for any losses, costs and expenses incurred by such Person as a result of the Turn-Over of such Return Asset to the related Securitization Counterparty and/or its proceeds to, or as directed by, the Securitization Party.

(f)    <u>Dealing with Unallocated Amounts</u>.  If any collections or other proceeds of assets that are held in an account for the benefit of, or that have otherwise been paid, distributed or remitted to, a Securitization Party under the Specified Securitization Program (including any sale proceeds or recoveries) were allocated by the payor to the payment of or in respect of an asset other than a Subject Asset under the Specified Securitization Program, each related Securitization Party shall (including by causing the Replacement Servicer to act) ensure that the related deposits and amounts (net of any out-of-pocket cost incurred by the Securitization party in collecting or maintaining the asset) are, as soon as reasonably practicable, paid over to the Monitor or as the Court may direct, to be applied in accordance with the

Entitlement Claims Process Order of The Honourable Mr. Justice Osbourne, dated as of June 14, 2024 or as the Court may otherwise order.

10.    **THIS COURT ORDERS** that except in connection with gross negligence, fraud or willful misconduct, each Securitization Party and Replacement Servicer shall not be liable for any losses, costs and expenses incurred or suffered by an Entitled Person or by the Pride Entities as a result of the Turn-Over of a Return Asset, except as set-out in this Order.

11.    **THIS COURT ORDERS** that no Securitization Party under a Specified Securitization Program shall amend, modify, supplement, waive or vary, or permit an amendment, modification, supplement, waiver or variation of, the related Securitization Agreements if the result thereof would be to reduce, impair, limit, restrict or adversely affect in any material respect the continuing rights, interests or entitlements of any Pride Entity thereunder, in each case without the prior written consent of such Pride Entity or the Monitor, or with leave of the Court.

12.    **THIS COURT ORDERS** that no Securitization Party shall have any right or ability to set-off, apply against, deduct or reduce any amounts or claims owing to it by any Pride Entity against any obligation of the Securitization Party to remit to the Pride Entity or reimburse the Pride Entity in respect of any property of the Pride Entity, any property entitlement or claim arising under a related Securitization Program or any amount payable by the Securitization Party to the Pride Entity hereunder.

**PRESERVATION OF DOCUMENTS**

13.    **THIS COURT ORDERS** that each of the Pride Entities (which includes their respective employees, agents, advisors, representatives, and affiliates) shall, until further order of this Court, take reasonable and good faith steps to identify and preserve all documents in their possession, control, or power (which term includes electronically-stored information) that are that are relevant or potentially relevant to (i) any Securitization Program, or (ii) the "Factual Inquiries" as such term is defined in paragraph 47 of the Tenth Report and further particularized in paragraph 48 thereof (collectively, the "**Relevant Documents**"). Such reasonable and good faith steps shall include, without limitation:

(a)    taking steps to prevent the partial or full destruction, alteration, testing, deletion, overwriting, shredding, incineration, wiping, relocation, migration, theft or

mutation of documents, as well as to prevent any action that would make the documents unreadable, incomplete or inaccessible; and

(b)     within [●] days from the date of this Order, circulating a document preservation notice, in form and substance satisfactory to the Monitor, to all potential custodians of the Relevant Documents notifying them of this Order and their obligation to preserve the Relevant Documents.

**SERVICE AND NOTICE**

14.     **THIS COURT ORDERS** that, unless otherwise specified by this Order, any notice or document hereunder shall be served and delivered or cause to be served and delivered by providing a copy of same to Canadian and/or U.S. counsel of record for the applicable Person at the email address(es) listed for such counsel on the Service List. Notices or documents sent by email in accordance with this paragraph shall be deemed to be received on the day that such email is sent, if sent before 5:00 p.m. (Toronto Time) on a Business Day, or on the next following Business Day if sent after 5:00 p.m. (Toronto Time) on a Business Day or on a day that is not a Business Day.

**COST ALLOCATION**

15.     Each Securitization Counterparty shall pay the Monitor on or before **[TIME PERIOD]** following the date of this Order, and before such Securitization Counterparty shall have any ability to retrieve any Repossessed Subject Assets, an amount equal to their respective allocation of the costs associated with the Monitor's review of the Securitization Programs and related security in accordance with the Initial Order, as set out in the Supplement to the Tenth Report.

**MISCELLANEOUS**

16.     **THIS COURT ORDERS** that any Securitization Counterparty, the Monitor or the Pride Entities may from time to time apply to this Court for advice and directions concerning the discharge of their respective powers and duties under this Order or the interpretation or application of this Order by filing a motion with this Court on not less than seven (7) calendar days' notice to all other affected Persons.

17.     **THIS COURT ORDERS** that any affected Person may challenge a Turn-Over on the basis that a Subject Asset is a Return Asset by filing a motion with this Court on not less than

seven (7) calendar days' notice to all other affected Persons (a "**Determination Motion**").  Any Determination Motion must be brought within **[TIME PERIOD]** following the date of this Order (the "**Determination Motion Bar Date**").  Notwithstanding anything to the contrary contained herein, a Determination Motion may not be brought by the Pride Entities or the Monitor.

18.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body or agency having jurisdiction in Canada or in the United States of America, including the United States Bankruptcy Court for the District of Delaware, or in any other foreign jurisdiction, to give effect to this Order and to assist the Pride Entities, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies and agencies are hereby respectfully requested to make such orders and to provide such assistance to the Pride Entities and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order or to assist the Pride Entities and the Monitor and their respective agents in carrying out the terms of this Order.

_____

## SCHEDULE "A"

### A.  APPLICANTS

**Operating Entities**
*Canadian Operating Entities*
- PRIDE TRUCK SALES LTD.
- TPINE TRUCK RENTAL INC.
- PRIDE GROUP LOGISTICS LTD.
- PRIDE GROUP LOGISTICS INTERNATIONAL LTD.
- TPINE LEASING CAPITAL CORPORATION
- DIXIE TRUCK PARTS INC.
- PRIDE FLEET SOLUTIONS INC.
- TPINE FINANCIAL SERVICES INC.
- PRIDE GROUP EV SALES LTD.

*U.S. Operating Entities*
- TPINE RENTAL USA, INC.
- PRIDE GROUP LOGISTICS USA, CO.
- ARNOLD TRANSPORTATION SERVICES, INC.
- DIXIE TRUCK PARTS INC.
- TPINE FINANCIAL SERVICES CORP.
- PARKER TRANSPORT CO.
- PRIDE FLEET SOLUTIONS USA INC.

**Real Estate Holding Companies**
*Canadian Real Estate Holding Companies*
- 2029909 ONTARIO INC.
- 2076401 ONTARIO INC.
- 1450 MEYERSIDE HOLDING INC.
- 933 HELENA HOLDINGS INC.
- 30530 MATSQUI ABBOTSFORD HOLDING INC.
- 2863283 ONTARIO INC.
- 2837229 ONTARIO INC.
- 2108184 ALBERTA LTD.
- 12944154 CANADA INC.
- 13184633 CANADA INC.
- 13761983 CANADA INC.
- 102098416 SASKATCHEWAN LTD.
- 177A STREET SURREY HOLDING INC.
- 52 STREET EDMONTON HOLDING INC.
- 84 ST SE CALGARY HOLDINGS INC.
- 68TH STREET SASKATOON HOLDING INC.
- 3000 PITFIELD HOLDING INC.

- 14 -

*U.S. Real Estate Holding Companies*
- PGED HOLDING, CORP.
- HIGH PRAIRIE TEXAS HOLDING CORP.
- 131 INDUSTRIAL BLVD HOLDING CORP.
- 59TH AVE PHOENIX HOLDING CORP.
- DI MILLER DRIVE BAKERSFIELD HOLDING CORP.
- FRONTAGE ROAD HOLDING CORP.
- ALEXIS INVESTMENTS, LLC
- TERNES DRIVE HOLDING CORP.
- VALLEY BOULEVARD FONTANA HOLDING CORP.
- HIGHWAY 46 MCFARLAND HOLDING CORP.
- TERMINAL ROAD HOLDING, CORP.
- BISHOP ROAD HOLDING CORP.
- OLD NATIONAL HIGHWAY HOLDING CORP.
- 11670 INTERSTATE HOLDING, CORP.
- 401 SOUTH MERIDIAN OKC HOLDING CORP.
- 8201 HWY 66 TULSA HOLDING CORP.
- EASTGATE MISSOURI HOLDING CORP.
- FRENCH CAMP HOLDING CORP.
- 87TH AVENUE MEDLEY FL HOLDING CORP.
- LOOP 820 FORT WORTH HOLDING CORP.
- 162 ROUTE ROAD TROY HOLDING CORP.
- CRESCENTVILLE ROAD CINCINNATI HOLDING CORP.
- MANHEIM ROAD HOLDING CORP.
- 13TH STREET POMPANO BEACH FL HOLDING CORP.
- EAST BRUNDAGE LANE BAKERSFIELD HOLDING CORP.
- CORRINGTON MISSOURI HOLDING CORP.
- 963 SWEETWATER HOLDING CORP.
- OAKMONT DRIVE IN HOLDING CORP.

**Other Holding Companies**
*Other Canadian Holding Companies*
- 2692293 ONTARIO LTD.
- 2043002 ONTARIO INC.
- PRIDE GROUP HOLDINGS INC.
- 2554193 ONTARIO INC.
- 2554194 ONTARIO INC.
- PRIDE GROUP REAL ESTATE HOLDINGS INC.
- 1000089137 ONTARIO INC.

*Other U.S. Holding Companies*
- COASTLINE HOLDINGS, CORP.
- PARKER GLOBAL ENTERPRISES, INC.
- DVP HOLDINGS, CORP.

- 15 -

**B. LIMITED PARTNERSHIPS**

*U.S. Limited Partnerships*
- PRIDE TRUCK SALES L.P.
- TPINE LEASING CAPITAL L.P.
- SWEET HOME HOSPITALITY L.P.

**C. ADDITIONAL STAY PARTIES**

*Canadian Additional Stay Parties*
- BLOCK 6 HOLDING INC.
- 2500819 ONTARIO INC.

*U.S. and Other Additional Stay Parties*
- PERGOLA HOLDINGS, CORP.
- PRIDE GLOBAL INSURANCE COMPANY LTD.

**SCHEDULE "B"**

| SECURITIZATION COUNTERPARTY | SECURITIZATION PROGRAM DOCUMENTS |
|---|---|
| Coast Capital Equipment Finance Ltd., Travelers Finance Ltd. and Travelers Leasing Ltd. ("**Coast**") | Master Purchase and Servicing Agreement dated as of August 4, 2020 among TPine Leasing Capital Corporation, as seller and initial servicer and Coast, as purchaser (the "**Coast MPSA**");<br><br>Account Application and Blocked Account Agreement dated as of May 5, 2020 among TPine Leasing Capital Corporation and Coast Capital Savings Credit Union; and<br><br>Cash Management Agreement dated as of August 12, 2020 among TPine Leasing Capital Corporation and Coast Capital Savings Credit Union. |
| CWB Maxium Financial Inc. ("**CWB Maxium**") | Master Purchase and Servicing Agreement dated as of November 2, 2018 among TPine Leasing Capital Corporation, as seller and initial servicer and CWB Maxium, as purchaser, as amended by a first amending agreement dated as of July 4, 2019, a second amending agreement dated as of January 2, 2020, a third amending agreement dated as of June 30, 2020, a fourth amending agreement dated as of September 30, 2020, a fifth amending agreement dated as of November 9, 2020, a sixth amending agreement dated as of November 17, 2021 and a seventh amending agreement dated as of October 31, 2022 (the "**CWB MPSA**"). |
| BNY Trust Company of Canada, in its capacity as trustee of MOVE | Master Leasing Agreement dated as of August 27, 2020 among TPine Leasing Capital Corporation, as originator, |

| | |
|---|---|
| Trust ("**MOVE**") | Pride Truck Sales Ltd., TPine Truck Rental Inc., Pride Group Logistics Ltd., Pride Group Holdings Inc., 2043002 Ontario Inc., 2076401 Ontario Inc., Pride Truck Sales L.P., TPine Leasing Capital L.P., Pride Fleet Solutions Inc. (formerly Pride Diesel Inc.) and TPine Rental USA, Inc., each as performance guarantors, and BNY Trust Company of Canada, in its capacity as trustee of MOVE, as amended by amending agreement no. 1 dated as of February 17, 2021, amending agreement no. 2 dated as of October 14, 2021, amending agreement no. 3 dated as of September 21, 2022 and amending agreement no. 4 dated as of November 8, 2022 (the "**MOVE MLA**"). |
| TPine Canada Securitization LP, as purchaser ("**RBC Program SPV**") | Sale and Servicing Agreement dated as of January 21, 2022 among TPine Leasing Capital Corporation, as seller and servicer, Pride Truck Sales L.P., TPine Rental USA Inc., Coastline Holdings, Corp., Pride Group Holdings Inc., Pride Group Logistics Ltd., 2043002 Ontario Inc., Pride Fleet Solutions Inc., Pride Truck Sales Ltd., TPine Truck Rental Inc., 2076401 Ontario Inc., 2043002 Ontario Inc. and TPine Leasing Capital L.P., each as performance guarantors, RBC Program SPV, as purchaser, Royal Bank of Canada, as financial services agent ("**RBC**") and Global Securitization Services, LLC, as paying agent (the "**Paying Agent**"), as amended by a first amending agreement dated as of December 7, 2022 and a second amending agreement dated as of February 22, 2024 (the "**RBC SSA**"); <br><br> Amended and Restated Loan and Security Agreement dated as of December 7, 2022 among RBC Program SPV, TPine Canada GP Inc., TPine Leasing Capital |

| | Corporation, RBC, the Paying Agent and the lenders from time to time party thereto; and<br><br>Backup Servicing Agreement dated as of January 21, 2022, among RBC Program SPV, TPine Canada GP Inc., TPine Leasing Capital Corporation, RBC and Vervent Inc. |
|---|---|
| TPine USA Funding I LLC, as buyer, ("**NBC Program SPV**") | Sale and Contribution Agreement, dated as of October 29, 2021, between TPine Leasing Capital L.P., as originator, and NBC Program SPV, as buyer (the "**NBC SCA**");<br><br>Note Issuance and Purchase Agreement, dated as of October 29, 2021, between TPine Leasing Capital L.P., as initial servicer and originator, NBC Program SPV, as issuer, National Bank of Canada, as note purchaser, National Bank Financial Inc., as administrative agent, and Vervent Inc., as backup servicer;<br><br>Vehicle Trust Agreement, dated October 29, 2021, between TPine Leasing Capital L.P., as registered owner or lienholder, as the case may be, on specified certificates of title, NBC Program SPV, as issuer, and National Bank of Canada, as administrative agent; and<br><br>Deposit Account Control Agreement, among TPine Leasing Capital L.P. as company, National Bank Financial Inc. as administrative agent, and Bank of America, N.A., as bank, dated as of October 29, 2021. |
| TPine USA Funding II LLC ("**Regions Program SPV**") | Sale and Contribution Agreement, dated as of February 11, 2022, between TPine Leasing Capital L.P., as originator, and Regions Program SPV,  as buyer (the "**Regions SCA**"); |

| | Receivables Loan and Security Agreement, dated as of February 11, 2022, among Regions Program SPV, as borrower, TPine Leasing Capital L.P., as initial servicer and originator, Regions Bank, as administrative agent and a lender, the other lenders from time party thereto, Vervent Inc., as the backup servicer, and Pride Group Holdings Inc. and other Pride Entities, as performance guarantors; and<br><br>Lienholder Nominee Agreement, dated as of February 11, 2022, among TPine Leasing Capital L.P., as lienholder and as servicer, Regions Program SPV and Regions Bank, as administrative agent under the Receivables Loan and Security Agreement. |
|---|---|
| TPine USA Funding III LLC ("**Aviator Program SPV**") | Master Sale Agreement, dated as of March 30, 2022, between Aviator Program SPV, as purchaser, and TPine Leasing Capital L.P., as originator (the "**Aviator MSA**");<br><br>Master Purchase and Sale Agreement, dated as of March 30, 2022, among the Aviator Program SPV, as seller, TPine Leasing Capital L.P., as initial servicer, Aviator Financial Inc., as purchaser, and Versafinace US Corp., as custodian; and<br><br>Pledge Agreement, dated as of March 30, 2022, among TPine Leasing Capital L.P., as pledgor, and Aviator Financial Inc., as pledgee. |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF **PRIDE GROUP HOLDINGS INC.** et al (each, an "**Applicant**", and collectively, the "**Applicants**")

Court File No.: CV-24-00717340-00CL

|  | |
|---|---|
|  | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br>Proceedings commenced at Toronto, Ontario |
|  | **TURN-OVER ORDER** |
|  | **THORNTON GROUT FINNIGAN LLP**<br>TD West Tower, Toronto-Dominion Centre<br>100 Wellington Street West, Suite 3200<br>Toronto, ON  M5K 1K7<br><br>**Leanne Williams (LSO #41877E)**<br>Tel:  (416) 304-0060 / Email:  lwilliams@tgf.ca<br><br>**Rachel Nicholson (LSO #68348V)**<br>Tel:  (416) 304-1153 / Email:  rnicholson@tgf.ca<br><br>**Puya Fesharaki (LSO #70588L)**<br>Tel:  (416) 304-7979 / Email:  pfesharaki@tgf.ca<br><br>**Ines Ferreira (LSO #81472A)**<br>Tel:  (416) 304-0461 / Email: iferreira@tgf.ca<br><br>Lawyers for the Applicants |