## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| Pride Group Holdings Inc., *et al.*[1] | Case No. 24-10632 (CTG) |
| Debtors in Foreign Proceedings. | (Jointly Administered) |
| | **Hearing Date:**    **TBD**[2] |
| | **Obj. Deadline:**    **TBD** |

### <u>EMERGENCY</u> MOTION OF MITSUBISHI HC CAPITAL AMERICA INC. F/K/A HITACHI CAPITAL AMERICA CORP. FOR AN ORDER GRANTING (I) ADEQUATE PROTECTION PAYMENTS PURSUANT <u>TO 11 U.S.C. §§ 361(a) and 363(e)</u> AND (II) RELATED RELIEF

Mitsubishi HC Capital America Inc. f/k/a Hitachi Capital America Corp. ("<u>MHCA</u>"), through its undersigned counsel, respectfully submits this emergency motion (the "<u>Motion</u>") for entry of an order in the above-captioned chapter 15 cases (these "<u>Chapter 15 Cases</u>") of Pride Group Holdings Inc. and its affiliated debtors (collectively, the "<u>Debtors</u>"),[3] pursuant to sections 105(a) and 361(a) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "<u>Bankruptcy Code</u>"):  (i) granting MHCA adequate protection payments from the Debtors to protect the diminution in value of its Collateral[4] under the Floorplan Agreement (as defined herein); and (ii) granting such further relief to MHCA as is appropriate.

---

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399.  Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup.  The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

[2] MHCA is filing a motion to shorten the notice and objection periods for, and scheduling an expedited hearing on, the Motion contemporaneously with the filing of the Motion.

[3] The Debtors are also debtors in the Canadian proceedings (the "<u>CCAA Proceedings</u>") commenced under the Companies' Creditors Arrangement Act (the "<u>CCAA</u>"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "<u>Canadian Court</u>").

[4] Capitalized terms not otherwise defined in this Motion have the meanings given to such terms in the Floorplan Agreement, the Second A&R Initial Order, or the A&R Protocols Order (each term as defined herein), as the context requires.

## PRELIMINARY STATEMENT[5]

1.      In the four months since this Court recognized CCAA Proceedings of the Debtors and their non-debtor affiliates (the "Pride Group"), the Pride Group has squandered $36 million of DIP Financing with nothing to show for it, other than the payment of professionals' fees and other expenses, none of which benefitted lenders.  They were unable to propose a viable restructuring plan.  Numerous lenders have sought, and some have obtained, relief from the stay granted in the CCAA Proceedings to retrieve and liquidate vehicle collateral themselves.  On July 5 and July 16, MHCA moved for relief from the stay in the CCAA Proceedings and the Chapter 15 Cases, respectively.  On July 31, the Pride Group's DIP Financing matured and has not been repaid.  On August 2, the DIP Agent moved for relief from the stay granted in the CCAA Proceedings to appoint its financial advisor as collateral manager over assets of the Pride Group comprising "Management Property."  All the while, market conditions have continued to deteriorate.

2.      And yet, instead of accepting the implication of their admission that there is no prospect for the Pride Group to reorganize as a going concern and working with their stakeholders to allow them to retrieve and liquidate their collateral, on August 7, the Pride Group "doubled-down" and filed an emergency motion in the CCAA Proceedings seeking authority to amend the Governance Protocol and approve an Indicative Term Sheet on two days' notice for a second DIP financing facility.  In their motion, the Pride Group revealed that they intend to enter into a term sheet to obtain up to an *additional $50 million of DIP financing* secured by a priming lien on MHCA's collateral to finance their liquidation.  In addition, the Pride Group seeks authority to use $21 million of Lease Payments and Soft Collections—cash collateral that had been earmarked to

---

[5]  Capitalized terms not otherwise defined in this *Preliminary Statement* have the meaning given to such terms in the body of the Motion.

be returned to pre-petition financiers—for working capital purposes to bridge to a liquidation while they provide the potential new DIP lender exclusivity to conduct diligence.

3.    To be clear, MHCA will vigorously oppose the Pride Group's entry into a priming DIP facility.  And MHCA does not consent to the Pride Group's proposed use of its cash collateral to fund working capital over the next four weeks.  Accordingly, MHCA files this emergency motion for adequate protection from any diminution in value of its interest in collateral, including cash collateral, resulting from the Debtors' use or proposed use thereof.

4.    Specifically with respect to MHCA, the Debtors (through non-debtor counterparty Pride Truck Sales L.P.)[6] plan to grant priming liens on, and sell a significant portion of, MHCA's Floorplan Collateral.  Indeed, of the 3,500 units to be sold, approximately 35% of such units are MHCA's Collateral, with the majority of them being located in the United States, which means MHCA would bear a disproportionate share of the cost without *any* corresponding benefit.

5.    Moreover, MHCA is undersecured, so there is no value in MHCA's Collateral for the Debtors other than permitted fees allowed in the CCAA Proceedings.  The Debtors' proposed action is unnecessary, value destructive, and counterproductive given the current posture of the case, which all stakeholders, including the Debtors and Monitor, agree is a liquidation.  Indeed, MHCA is negotiating with a buyer for the purchase of substantially all of the Floorplan Collateral. The sale would allow MHCA to realize the highest net sales proceeds for the Floorplan Collateral and remove immediately an administrative burden from the Debtors' estates.

6.    But the greatest irony of all is that the Debtors seek authority to hire a liquidator to do exactly what MHCA has offered and is equipped to do:  sell trucks and trailers.  The requested

---

[6] Pride Truck Sales L.P. ("Pride Truck") is a Delaware limited partnership and therefore is ineligible to seek relief under the CCAA.  Because Pride Truck is not a debtor in the CCAA Proceedings, it is not a debtor in these Chapter 15 Cases.

relief is duplicative of the efforts (and successes) that the secured lenders can have selling their collateral and comes at the sole expense of secured lenders that are already significantly undersecured and being forced to finance the Chapter 15 Cases and the CCAA Proceedings. Accordingly, the Debtors must provide adequate protection to MHCA to protect the continued diminution in value of its Collateral.

## JURISDICTION AND VENUE

7.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Chapter 15 Cases under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is and other proceedings under chapter 15 of the Bankruptcy Code are core matters within the meaning of 28 U.S.C. § 157(b)(2)(P).

8.      Pursuant to Local Rule 9013-1(f), MHCA consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

9.      Venue of these Chapter 15 Cases is proper in the Court pursuant to 28 U.S.C. § 1410.

10.     The statutory predicates for the relief requested in this Motion are sections 361(a), 363(e), and 1520 of the Bankruptcy Code.

## BACKGROUND

### A.    The Floorplan Agreement

11.     MHCA provides customized financing solutions to businesses to help meet their capital needs.  MHCA offers vehicles, trading, structure, and commercial vehicle finance services.

Prior to the commencement of the CCAA Proceedings and these Chapter 15 Cases, MHCA provided such financing to non-debtor entity Pride Truck.

12.     Pursuant to that certain *Floorplan and Security Agreement* (the "Floorplan Agreement"),[7] dated as of November 21, 2018, by and between MHCA and Pride Truck, MHCA agreed to finance Pride Truck's purchase of inventory in the ordinary course of Pride Truck's business in the United States.

13.     Under the Floorplan Agreement, Pride Truck granted MHCA an "absolute and cross-collateralized security interest in and to all of the Collateral hereby or otherwise pledged as security for all of the Obligations."  Additionally, the Obligations under the Floorplan Agreement are guaranteed by, among others (including other Debtor entities), Pride Group, Sulakhan Johal, and Jasvir Johal.

14.     Pride Truck also is (i) obligated to "keep all Collateral at permitted locations and keep all tangible Collateral safe and secure, in good order, repair and operating condition and insured as required by" MHCA, and (ii) prohibited from using (except for demonstration of sale), renting, leasing, selling, transferring, consigning, licensing, encumbering, or otherwise disposing of the Floorplan Collateral without prior written consistent (and with only certain limited exceptions).

15.     MHCA perfected its first-priority security interest in the Floorplan Collateral pursuant to the UCC-1 Financing Statement filed with the Delaware Department of State on October 9, 2020, at Filing No. 20207000690, and pursuant to that certain "No Interest" letter dated

---

[7] A copy of the Floorplan Agreement is attached as Exhibit 1 to the *Transmittal Declaration of Jason D. Angelo, Esquire in Support of the Motion of Mitsubishi HC Capital America Inc. f/k/a Hitachi Capital America Corp. for an Order Granting (I) Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and (II) Related Relief* [D.I. 218].

October 30, 2020, from the Royal Bank of Canada ("RBC") to MHCA, RBC acknowledged the first-priority nature of MHCA's security interest.

16.     Pride Truck defaulted under the Floorplan Agreement by mid-December 2023 when MHCA, in good faith, believed the prospect of payment of any Obligations (as defined in the Floorplan Agreement) was impaired.  Specifically, on December 21, 2023, Pride Truck notified MHCA that it had sold or assigned certain Floorplan Collateral to another third-party purchaser or lender, thereby triggering a Default under Section 7(n) of the Floorplan Agreement.

17.     On December 21, 2023, MHCA issued a *Notice of Defaults and Reservation of Rights* ("Notice of Default") to Pride Truck and their non-party companies that the Default under the Floorplan Agreement was continuing and remain uncured.  Following the Notice of Default, Pride Truck has never been able to tell MHCA how many vehicles it sold out of trust and the resulting proceeds that it misappropriated.

**B.    Pride Group's CCAA Proceedings and Chapter 15 Cases**

18.     On March 27, 2024, the Debtors commenced the CCAA Proceedings in the Canadian Court, which thereafter issued an initial order (the "Initial Order") authorizing (among other things) Randall Benson (the "Foreign Representative") to act as the foreign representative for the Debtors and file these Chapter 15 Cases.

19.     On April 1, 2024, the Foreign Representative commenced chapter 15 cases for 26 Canadian and U.S. operating companies and non-real estate holding companies by filing petitions for relief under chapter 15 of the Bankruptcy Code.  That same day, the Foreign Representative filed the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the*

*Bankruptcy Code* [D.I. 2] (the "<u>Verified Petition</u>") seeking recognition of the CCAA Proceedings as "foreign main proceedings" under Bankruptcy Code section 1517 and related relief.

20.     On April 5, 2024, the Canadian Court signed an amended and restated version of the Initial Order (the "<u>A&R Initial Order</u>") and an order regarding protocols for real estate sale transactions *(*the "Canadian Protocols Order").  The Foreign Representative thereafter sought and obtained enforcement of such orders in the United States on a provisional basis pursuant to this Court's *Order Granting Provisional Relief in Connection with Debtors-In-Possession Financing and Certain Protocols Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 110].

21.     On April 15, 2024, the Foreign Representative commenced chapter 15 cases for the 45 Canadian and U.S. single-asset real estate holding companies by filing additional petitions for relief under chapter 15 of the Bankruptcy Code.

22.     On April 23, 2024, the Debtors filed an amended version of the Verified Petition [D.I. 121] seeking recognition of the CCAA Proceedings as "foreign main proceedings" under Bankruptcy Code section 1517 and related relief.

23.     On May 2, 2024, the Court entered an order [D.I. 152] (the "<u>Recognition Order</u>") granting recognition of the CCAA Proceedings, enforcement of the A&R Initial Order and Canadian Protocols Order in the United States on a final basis, and related relief.  Paragraph 9 of the Recognition Order provides that MHCA, as an Adequate Protection Party "[is] entitled to receive Adequate Protection of [its] interest in [its] applicable collateral under [its] respective credit or other agreements . . . on a dollar-for-dollar basis from any Diminution in Value resulting from the Priming, the imposition or enforcement of the stay in these Chapter 15 Cases or the CCAA proceedings, or the use, sale or lease, or proposed use, sale or lease, of [its] interests in such collateral by the Pride Group."  Paragraph 17 of the Recognition Order provides that nothing in

therein "shall affect the rights of any secured party to request adequate protection to the Bankruptcy Code in addition to any adequate protection granted under [the Recognition Order] and all such rights are expressly preserved."

24.     On May 6, 2024, the Canadian Court entered the *Second Amended and Restated Initial Order* (the "Second A&R Initial Order") authorizing the Debtors (subject to the Canadian Protocols Order) to list for sale all their vehicles, trailers, equipment, and other personal property. *See* Second A&R Initial Order ¶ 13.

25.     On May 15, 2024, the Canadian Court entered the *Amended and Restated Protocols Order* (the "A&R Protocols Order").

26.     On July 5, 2024, MHCA, Mitsubishi HC Capital Canada, Inc. ("MHCCC"), and Mitsubishi HC Capital Canada Leasing, Inc. ("MHCCCL" and together with MHCA and MHCCC, "Mitsubishi Capital") filed their *Motion to Amend the Amended and Restated Protocols Order, Release Funds, and Transfer Certain Leases in the CCAA Proceedings* (the "Motion to Amend").

27.     On July 16, 2024, MHCA filed its *Motion for an Order Granting (I) Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and (II) Related Relief* [D.I. 216] (the "Stay Relief Motion") in which MHCA seeks approval to exercise its rights and remedies against approximately 650 trucks located in the U.S. that serve as its Collateral.

### C.    The Debtors Lose DIP Financing

28.     RBC serves as the administrative agent for and on behalf of itself and other syndicate lenders under the fourth amended and restated credit agreement dated May 10, 2024, pursuant to which RBC made the DIP Facility available to the Debtors.  Because the Debtors could not meet certain milestones required under the DIP Facility, the DIP Facility matured on July 31, 2024, leaving the Debtors without access to a lending facility.

29.     Within days of the DIP Facility maturing, RBC filed the *Motion of Royal Bank of Canada as Administrative Agent for the Syndicate Collateral Management Order* (the "Manager Motion") by which it seeks the appoint of Alvarez & Marsal as the manager over its assets.  While the details of the Manager Motion are unclear, it clearly is not a vote of confidence in the Pride Group's management and advisory team.

30.     Following the maturity of the DIP Facility, the Debtors filed the *Motion to Amend Governance Protocol; Approve Indicative Term Sheet* (the "Term Sheet Motion") on August 7, 2024, with a hearing proposed on August 9, 2024 at 2:00 p.m. (Eastern).  The Term Sheet Motion seeks (a) authority to apply any Lease Payments and Soft Collections (as both terms are defined in the Term Sheet Motion) to "pay their ordinary course working capital needs and for other general cooperate purposes…."; and (b) an order "approving the Pride Entities' execution of the non-binding indicative term sheet … to facilitate a proposed interim financing facility."

31.     In the Term Sheet Motion, the Debtors admit that they cannot continue as a going concern and that their "intention is to effect an orderly and centralized wind-down of their operations…."  The Debtors seek authority to "finance the orderly wind-down" with a $50 million senior secured revolving loan that is secured by a first ranking charge on the assets to be sold.  By another name, the Term Sheet Motion is a request to use cash collateral to fund ongoing case operations and layer more debt onto an administratively insolvent debtor.

32.     The Lease Payments are derived from MHCA's collateral and should be remitted to MHCA, not used for the operation of a failed business.  MHCA does not consent to the Debtors' proposed use of its cash collateral to fund operations.  The Debtors had an opportunity—more than four months—to manage the cases as they deemed appropriate.  After four months, creditors are worse—not better—off than when the cases started.  Collateral values continue to drop,

administrative fees continue to rise, and the Debtors have never offered a viable path out of bankruptcy.  Indeed, only because the DIP Facility matured did the Debtors finally recognize that a complete liquidation is the only path forward.

33.     As detailed in the Motion to Amend and Stay Relief Motion, MHCA has a buyer for substantially all of its collateral that is not subject to multiple liens.  It is appropriate, fair, and reasonable that, upon confirmation of its first-priority security interest in its Collateral, MHCA should sell its Collateral without involving the Debtors' estate, and Pride Group suffers no prejudice under this framework.  Under the framework of the Term Sheet Motion; however, MHCA and the other secured lenders stand to suffer harm by being further subordinated without any protection of their interests.  Accordingly, if the Debtors wish to proceed with the Term Sheet Motion, they must provide adequate protection to MHCA in the form of weekly cash payments to MHCA to protect MHCA from the ongoing diminution in value of its Collateral, which is estimated to be about 5% per month, or approximately $2,400,000, plus the value of the Lease Payments subject to MHCA's liens.[8]

## RELIEF REQUESTED

34.     MHCA respectfully requests entry of the Proposed Order:  (i) ordering the Debtors to make weekly adequate assurance payments MHCA pursuant to sections 361(a) and 363(e) of the Bankruptcy code; and (ii) granting such further relief to MHCA as is appropriate.

## BASIS FOR REQUESTED RELIEF

### A.  The Bankruptcy Code Protects Secured Creditors.

35.     Upon this Court's recognition of the CCAA Proceedings as a foreign main proceeding, section 1520(a) of the Bankruptcy Code provides that certain provisions of the

---

[8]  *See Declaration of Sue Santos*, filed contemporaneously herewith, at ¶¶ 12-13.

Bankruptcy Code automatically come into force, including: (i) the right of any entity asserting an interest in the Debtors' U.S. assets to "adequate protection" of that interest pursuant to section 361 of the Bankruptcy Code, and (ii) restrictions on use, sale, lease, transfer, or encumbrance of the Debtors' U.S. assets pursuant to section 363 of the Bankruptcy Code. *See* 11 U.S.C. § 1520(a).[9]

36.    Adequate protection is meant to insulate a secured creditor from the negative effects of a decline, or threatened decline, in the market value of its collateral as a result of, among other things, the imposition of the automatic stay. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc's., Ltd*., 484 U.S. 365, 370 (1988); *see also In re Price*, 370 F.3d 362, 373 (3d Cir. 2004) ("If the value of collateral is threatened, creditors may seek adequate protection and relief from the automatic stay…"); *In re Energy Future Holdings Corp*., 546 B.R. 566, 581 (Bankr. D. Del. 2016) ("Where a Creditor is threatened with a decline in the value of its collateral, the Bankruptcy Code *must protect the creditor's interest* either by periodic payments or substitute liens covering the decline, or by some other means that provides the 'indubitable equivalent' of the creditor's interest.") (emphasis added).

37.    Section 363(e) of the Bankruptcy Code provides, in relevant part, that "notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."    11 U.S.C. § 363(e); *see also Metromedia Fiber Network Servs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.)*,

---

[9] Courts recognize that secured creditors enjoy special protections under U.S. law and that those protections do not disappear in the context of a cross-border insolvency case. *In re Hamilton*, 240 F.3d 148 (2d Cir. 2000) ("[O]ur observation that security interests enjoy constitutional protection supports our conclusion that United States law affords strong protection to secured creditors and treats those protections very seriously, a conclusion that, in turn, amplifies the significance of the difference in the way secured claims are treated under Bahamian law.").

290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary – it states that the court 'shall' grant the relief specified, at any time, on the request of secured entity."); *Travelers Life Ins. & Annuity Co. v. Ritz-Carlton of D.C., Inc. (In re Ritz-Carlton of D.C. Inc.)*, 98 B.R. 170, 173 (S.D.N.Y. 1989) (holding that "the general rule is that for adequate protection purposes a secured creditor's position as of the *petition date* is entitled to adequate protection against deterioration.") (citing to *Metropolitan Life Ins. v. Monroe*, 17 B.R. 934, 939 (D. Del. 1982)).   The focus of the requirement to provide adequate protection is to protect a secured creditor from the diminution in the value of its interest in the particular collateral during the period of use.   *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.").

38.     The legislative history makes clear that the concept of adequate protection is rooted in the Fifth Amendment protection of property interests; it is intended to ensure that secured creditors are not "deprived of the benefit of their bargain" simply because the debtor decided to file for bankruptcy.  *See* H.R. REP. No. 95-595, 95th Cong., 1st Sess. 339.  A secured creditor should receive the same measure of protection in bankruptcy that they would have received outside bankruptcy and their interest in the collateral should not be harmed as a result of the debtors' bankruptcy cases.  *See In re Bobroff*, 32 B.R. 930, 932 (Bankr. E.D. Pa. 1983).

39.     Section 361 of the Bankruptcy Code is clear that adequate protection may take one of three forms: a debtor may (i) tender an upfront cash payment or periodic cash payments, (ii) grant replacement liens, or (iii) grant other related relief (other than an administrative claim under section 503(b)(1) of the Bankruptcy Code) amounting to the indubitable equivalent of the protected party's interest in the property.  Section 361(3) of the Bankruptcy Code is also clear that

adequate protection *may not* take the form of a deferred administrative claim.  Under section 361

of the Bankruptcy Code, only a contemporaneous transfer of value satisfies the requirements of

adequate protection.

40.     Here, the Debtors declared in the Term Sheet Motion their intention to (a) finance

the ongoing operations of the cases with cash collateral and (b) finance the orderly wind-down of

their operations, including the liquidation of substantially all of their assets (which encompasses a

significant portion of MHCA's Floorplan Collateral) and the delivery of those sale proceeds to

Gordon Brothers.  To use MHCA's cash collateral (*i.e.*, the Lease Proceeds), the Debtors *must*

provide adequate protection in the form of regular payments to protect the diminution in value of

MHCA's collateral.

41.     Further, the prospect of a complete depletion of the Debtors' estates via the

liquidation of a portion of the Floorplan Collateral in favor of secured creditors *other than* MHCA

constitutes a lack of adequate protection.  The Term Sheet Motion provides that the priming lien

granted to Gordon Brothers is *in addition to* the liens already granted to RBC, as the DIP Agent.

The Debtors want to stack nearly $90 million of priority debt on a liquidating business, which is

completely unacceptable.  MHCA cannot be forced to have its liens primed by a new financing

facility that is entirely unnecessary.

42.     Further, the rapid and continual depreciation in the value of the Floorplan Collateral

(approximately $2,400,000 per month) while sitting idly in the Debtors' possession during the

pendency of these cases gives rise to the requirement of the Debtors' to provide adequate

protection.  *See Timbers of Inwood Forest Assocs.*, 484 U.S. at 370 (holding that an interest in

property is not adequately protected if the security is depreciating during the term of the automatic

stay).  Additionally, a threatened decline in the value of the Floorplan Collateral has the same

effect. *In re Price*, 370 F.3d at 373 ("If the value of collateral is threatened, creditors may seek adequate protection and relief from the automatic stay…"); *In re Energy Future Holdings*, 546 B.R. at 581 ("Where a creditor is threatened with a decline in the value of its collateral, the Bankruptcy Code provides that the estate must protect the creditor's interest, either by periodic payments or substitute liens covering the decline, or by some other means that provides the 'indubitable equivalent' of the creditor's interest in the estate's property." (citation omitted)).

43.     Here, the Debtors' commencement of these cases itself has resulted in the diminution in value of the Floorplan Collateral and, moreover, the intention of Debtors to liquidate a significant portion of the Floorplan Collateral threatens to depreciate the value of the Floorplan Collateral even further, giving rise to the Debtors' requirement to provide adequate protection to MHCA. The *Declaration of Sue Santos*, filed contemporaneously herewith, makes clear that MHCA's Floorplan Collateral is depreciating at approximately five percent (5%) per month, or approximately $2,400,000. Such value loss correlates directly to the Debtors' mismanagement and ongoing failure to implement a viable path out of bankruptcy.

44.     The burden of proof falls to the Debtors to prove the sufficiency of the adequate protection under Section 363 of the Bankruptcy Code. *See* 11 U.S.C. § 363(p)(1). As of the date hereof, the Debtors have neither provided adequate protection nor offered adequate protection related to the relief now sought in the Term Sheet Motion.

**B.  MHCA has Identified an Avenue to Liquidate its Collateral.**

45.     As discussed above, through the Stay Relief Motion and the Motion to Amend, Mitsubishi Capital is proceeding on parallel paths in these Chapter 15 Cases and the CCAA Proceedings to liquidate its collateral. The Debtors' Motion is unnecessary given MHCA's progress towards seeking the return of its Collateral. Further delay will only cause additional harm to MHCA, which is also disproportionately impacted by the Term Sheet Motion because

approximately 35% of MHCA's collateral is subject to the Term Sheet Motion—a far greater percentage than other lenders, even though other lenders would allegedly benefit equally.

46.    Throughout the CCAA Proceedings and these Chapter 15 Cases, the Debtors have failed to make any progress.  Now, facing the reality that lenders knew would occur from early in the cases, it is clear—and the Debtors admit—that these cases are proceeding as a liquidation.  If the Debtors want to retain control, they must comply with their obligations under the Bankruptcy Code and make adequate protection payments to MHCA.  Absent such adequate protection, no further relief should be granted.

## NOTICE

47.    Notice of this Motion will be provided to:  (i) the Foreign Representative and his counsel; (ii) counsel to the Debtors; (iii) the Office of the United States Trustee for the District of Delaware; and (iv) those parties entitled to receive notice pursuant to Bankruptcy Rule 2002.  MHCA submits that no other or further notice is necessary or required.

## RESERVATION OF RIGHTS

48.    MHCA reserves all of its rights to amend, modify, or supplement this Motion in any manner, at any time, and for any purpose, and to assert and file any and all additional claims of whatever kind or nature that it has or may hereafter have against the Debtors, which may be based on the respective rights and obligations arising under the relationship and agreements discussed in this Motion or the same events and circumstances described in this Motion.  MHCA further reserves the right to bring forth additional documentation supporting all of its claims including, but not limited to, any documents that may become available after further investigation and discovery.

WHEREFORE, MHCA respectfully requests entry of the Proposed Order, substantially in

the form attached as **Exhibit A**, granting MHCA: (i) adequate protection payments pursuant to

sections 361(a) and 363(e) of the Bankruptcy Code; and (ii) such further relief as is appropriate.

Dated: August 9, 2024
      Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By:    */s/ Jason D. Angelo*
       Jason D. Angelo (No. 6009)
       1201 North Market Street, Suite 1500
       Wilmington, DE 19801
       Telephone:  (302) 778-7500
       Facsimile:  (302) 778-7575
       E-mail:  jangelo@reedsmith.com

       - and -

       Aaron Javian, Esq.(admitted *pro hac vice*)
       REED SMITH LLP
       599 Lexington Avenue, 22nd Floor
       New York, NY 10022
       Telephone:  +1.212.521.5400
       Facsimile:  +1.121.521.5450
       E-mail:  ajavian@reedsmith.com

       *Counsel to Mitsubishi HC Capital America Inc.*
       *f/k/a Hitachi Capital America Corp.*