## EXHIBIT B

**Redline**

Court File No. CV-24-00717340-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| | | |
|---|---|---|
| THE HONOURABLE | ) | ~~WEDNESDAY~~THURSDAY, THE |
| | ) | ~~7~~8TH |
| JUSTICE OSBORNE | ) | |
| | ) | DAY OF AUGUST, 2024 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF **PRIDE GROUP HOLDINGS INC.** and those Applicants listed on Schedule "A" hereto (each, an "**Applicant**", and collectively, the "**Applicants**")

**ORDER**

**(Re: Turn-Over of Securitized Assets)**

**THIS MOTION**, made by the Applicants, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. c-36, as amended (the "**CCAA**") for an order, *inter alia*, authorizing the Pride Entities (as defined below), in respect of each Specified Securitization Program (as defined below), to :

(a) in respect of each related Subject Asset (as defined below):

(i) give up possession of and control over the Subject ~~Assets (as defined below)~~Asset and transition and relinquish administrative and servicing duties, responsibilities and obligations with respect to ~~such~~the Subject ~~Assets~~Asset, in each case in accordance with the terms and requirements of ~~a Specified~~the applicable Securitization ~~Program~~Agreements (as defined below), to~~, or as directed by,~~ the applicable Securitization Counterparty (as defined below) or the applicable Replacement Servicer (as defined below); and~~to~~

(ii) permit a Securitization Party (as defined below) to exercise its rights and remedies related thereto against the Pride Entities in respect of such giving up, transition and relinquishment, in each case, to the extent provided under such ~~Specified~~ Securitization ~~Program (in respect of a Specified~~Agreements; and

(b) in respect of each related MCV Asset (as defined below), subject to satisfaction of the MCV Turn-Over Conditions (as defined below) with respect thereto:

(i) give up possession of and control over such MCV Asset and transition and relinquish administrative and servicing duties, responsibilities and obligations with respect to such MCV Asset, in each case in accordance with the terms and requirements of the applicable Securitization Agreements, to the applicable Securitization Counterparty or the applicable Replacement Servicer; and

(ii) permit a relevant Securitization Party to exercise its rights and remedies related thereto against the Pride Entities in respect of such giving up, transition and relinquishment, in each case to the extent provided under such Securitization ~~Program~~Agreements,

(such giving up, transition and relinquishment in respect of a Subject Asset or an MCV Asset, as applicable, each a "**Turn-Over**"),

and to set out the terms and conditions upon which each such Turn-Over may occur, was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the Notice of Motion of the Applicants and those limited partnerships set out in Schedule "A" hereto (collectively, the "**Pride Entities**"), Tenth Report of Ernst & Young Inc., in its capacity as Monitor (the "**Monitor**") dated July 21, 2024 (the "**Tenth Report**"), the motion records filed by Move Trust and Boat Capital LP, Royal Bank of Canada, as Financial Services Agent, Regions Bank, VersaFinance US Corp., and National Bank of Canada and National Bank Financial Inc., the Supplement to the Tenth Report dated August 1, 2024, and the Eleventh Report of the Monitor dated August 2, 2024, and on hearing the submissions of respective counsel for the ~~Applicants and those limited partnerships set out in Schedule "A" hereto (collectively, the "~~Pride Entities~~"),~~. the Monitor, the DIP Agent (as defined in the Second Amended and Restated Initial Order dated May 6, 2024, as may be amended and/or restated from

time to time, the "**Initial Order**"), the Securitization ~~Counterparties~~Funders and such other counsel as were present, no one else appearing although duly served as appears from the Affidavit of Service of [●]Puya Fesharaki sworn July [●]23, 2024:

**SERVICE**

1.      **THIS COURT ORDERS** that the time for service of the Notice of Motion is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

**DEFINITIONS AND INTERPRETATION**

2.      **THIS COURT ORDERS** that any capitalized term used and not defined herein shall have the meaning ascribed thereto in the Initial Order.

3.      For the purposes of this Order, the following terms shall have the following meanings:

(a)     "**Business Day**" means, except as otherwise specified herein, a day, other than a Saturday, Sunday or a statutory holiday, on which banks are generally open for business in Toronto, Ontario; or in the United States.

(b)     "**Determination Motion Bar Date**" has the meaning set out in paragraph 2123 herein.

(c)     "**Effective Turn-Over Time**" means the effective time of the Turn-Over.

(d)     "**Entitlement Claims Process**" has the meaning given to it in the Entitlement Claims Process Order.

(e)     "**Entitlement Claims Process Order**" means the Entitlement Claims Process Order of The Honourable Mr. Justice Osborne, dated as of June 14, 2024.

(f)     "**MCV Asset**" means, in respect of a Specified Securitization Program, the ownership and other proprietary interests in vehicles, equipment, vehicle leases, equipment leases, financial and other assets acquired by the Securitization Counterparty from a Pride Entity pursuant to the Specified Securitization Program

and which are identified by reference to a Multiple Collateral Vehicle listed as such in the Monitor's Database, in each case as such asset exists and in respect of which the relevant Pride Entity has possession and control (or in which a customer of the relevant Pride Entity has possession and control) as of the date of this Order, as applicable, together with all proceeds thereof, including related insurance proceeds and buyout proceeds, where the MCV Turn-Over Conditions are satisfied.

(g)     **"MCV Turn-Over Conditions"** means, in respect of an MCV Asset that was acquired by the Securitization Counterparty under the related Specified Securitization Program, that either (i) an MCV Servicing Agreement has been entered into with respect to the Turn-Over of such MCV Asset and the terms thereof are not inconsistent with the applicable Securitization Agreements, or (ii) such Securitization Counterparty has been finally determined in accordance with the Entitlement Claims Process Order to have a successful Entitlement Claim (as defined in the Entitlement Claims Process Order) with respect to the related Multiple Collateral Vehicle.

(h)     **"MCV Servicing Agreement"** means, in respect of an MCV Asset subject to a Turn-Over, a written agreement, a copy of which is provided to the Monitor, made between or among each Financier (as defined in the Entitlement Claims Process Order), who is identified pursuant to the Monitor's Database as potentially having an interest in the Multiple Collateral Vehicle, setting forth, among other things, (a) all of the material terms and conditions for the administration and servicing of the MCV Asset (including the manner in which proceeds of the MCV Asset shall be held in trust pending determination of entitlement to such MCV Asset in accordance with the Entitlement Claims Process Order), (b) the designation and appointment of a person to act as the servicer of the MCV Asset and of each Financier's other ownership or proprietary interest in and to assets identified by reference to the related Multiple Collateral Vehicle, and (c) the agreement of such person to act as the servicer with respect to

the MCV Asset and to such other assets in accordance with the terms of such written agreement.

(i)    "**Monitor's Database**" has the same meaning as set out in the Entitlement Claims Process Order.

(j)    "**Multiple Collateral Vehicle**" has the same meaning as set out in the Entitlement Claims Process Order.

(k)    (c)    "**One-Step Structure**"    means    a    Securitization    Program    that contemplatesresulted in a transfer of securitized assets from a Pride Entity directly to a corresponding Securitization FunderCounterparty.

(l)    "**Replacement Servicer**" means, with respect to a Specified Securitization Program, one or more successor servicer(s), substitute servicer(s), replacement servicer(s) or other agent(s), including any court-appointed or privately appointed receiver(s), in each case who is designated and duly appointed to replace a Pride Entity as the servicer under and in compliance with the relevant Securitization Agreements, and, in the context of a Turn-Over of an MCV Asset on the basis of an MCV Servicing Agreement, such designee will also be the designated and appointed servicer of such MCV Asset under such MCV Servicing Agreement.

(m)    "**Repossessed Asset**" means a vehicle or trailer that is a Subject Asset or an MCV Asset where each Financier (as defined in the Entitlement Claims Process Order) asserting an Entitlement Claim (as defined in the Entitlement Claims Process Order) is a Securitization Counterparty, and, as of its Effective Turn-Over Time, is in the possession of a Pride Entity.

(n)    "**Retrieval Deadline**" means, in respect of a Repossessed Asset, the date agreed to by the applicable Securitization Party, any applicable Replacement Servicer, the Pride Entities and the Monitor as the date by which the Securitization Counterparty or the Replacement Servicer will retrieve and take possession of the Repossessed Asset from the applicable Pride Entity, or such retrieval date as may be specified for this purpose pursuant to a further Order of this Court.

(o)    (d) "**Return Asset**" means  a Subject Asset or an MCV Asset that is later determined by final Order of the Court order in these CCAA Proceedings to notpursuant to the Entitlement Claims Process or on a Determination Motion to (i) have not belonged to the Securitization Counterparty at the time of the related Effective Turn-Over Time; or (ii) have priority over other security interestsbeen the subject of any security interest, ownership interest or other proprietary interest that at the related Effective Turn-Over Time ranked ahead of the ownership interest or other proprietary interest (including those perfected under applicable personal property security or similar legislation in Canada or the United States of America) of the Securitization Counterparty therein (and such security interest, ownership interestsinterest or other proprietary interestsinterest has not otherwise been waived or estopped in favour of such Subject AssetsSecuritization Counterparty), in each case, together with all identifiable proceeds therefromthereof which a Securitization Party received or otherwise derived a benefit in after the related Effective Turn-Over Time; provided however, that in either case, if the Securitization Counterparty has a security interest in the Subject Asset or MCV Asset at the Effective Turn-Over Time that is in priority to the other interest asserted in the Entitlement Claims Process or on a Determination Motion, then it shall only be a Return Asset if the Court so directs.

(p)    (e) "**Securitization Counterparty**" means, in respect of a Securitization Program, the entity identified under athe applicable Securitization ProgramAgreements as the Personperson who would acquireacquired an ownership or other proprietary interest in securitized assets from a Pride Entity under the Securitization Program, being either thean SPV in a Two-Step Structure or the Securitization Funder in a One-Step Structure, and in this Order refers to the Securitization Counterparties identified in Schedule "B" hereto, as the context requires, in each case solely in its capacity as a Securitization Counterparty.

(q)    (f) "**Securitization Funder**" means, in respect of a Securitization Program, each entity who (i) is contemplated to acquireacquired an ownership or other proprietary interest in securitized assets from a Pride Entity in consideration of the payment of a purchase price therefor, other than an SPV, or (ii) has provided

funding in any form to an SPV to enable such SPV to acquire an ownership or other proprietary interest in securitized assets from a Pride Entity in consideration of the payment of a purchase price therefor, including pursuant to any debt, equity or acquisition funding arrangement, ~~and~~or (iii) if the ~~Person~~person in paragraphs (i) or (ii) above is itself a special purpose vehicle, ~~each entity who~~ has provided funding in any form to such ~~Person~~person in respect of the funding of the acquired securitized assets, in each case solely in its capacity as a Securitization Funder.

(r)    ~~(g)~~ "**Securitization Party**" means, in ~~relation to~~respect of a Securitization Program, the Securitization Counterparty and each Securitization Funder thereunder, as the context requires.

(s)    ~~(h)~~ "**Securitization Program**" means the transactions and arrangements under which a Pride Entity ~~would transfer~~transferred ownership or other proprietary interests in specified financial and other assets to a Securitization Counterparty, together with any related funding transaction under which an SPV ~~would fund its~~funded the acquisition of such financial or other assets, in each case as identified and described in the Tenth Report.

(t)    ~~(i)~~ "**Specified Securitization Program**" means a Securitization Program specified in Schedule "B".

(u)    ~~(j)~~ "**SPV**" means a special purpose vehicle established by, at the direction, or for the benefit of one or more Pride Entities, in connection with a ~~Specified~~ Securitization Program.

(v)    ~~(k)~~ "**Subject ~~Assets~~Asset**" means, in respect of a Specified Securitization Program, the ownership and other proprietary interests in vehicles, equipment, vehicle leases, equipment leases, financial and other assets ~~contemplated to be~~ acquired by the Securitization Counterparty from a Pride Entity pursuant to the Specified Securitization Program~~, in each case as such financial and other assets exist as of the date of this Order and~~ and which are identified by reference to ~~the vehicles and~~a vehicle or other equipment listed in the applicable Subject Asset

Schedule for the Specified Securitization Program, in each case as such asset exists and in respect of which the relevant Pride Entity has possession and control as of the date of this Order, together with all proceeds thereof, including related insurance proceeds and buyout proceeds, and "**Subject Asset**s" in respect of the Specified Securitization Program means and includes each such Subject Asset.

(w)    (l) "**Subject Asset Schedule**" means, in respect of a Specified Securitization Program, the "Subject Asset Schedule" identifiedAppendix "A-1", "B-1", "C-1", "D-1", "E-1", "F-1", or "G-1", as applicable, attached to the Tenth Report, in each case, as amended pursuant to Schedule "C" hereto and as may be further updated from time to time by reference to the SpecifiedMonitor and agreed to by the respective Securitization Program from among Schedules "[●] through [●]" heretoParty following the date of this Order.

(x)    (m) "**Two-Step Structure**" means a Securitization Program that contemplates a transfer oftransferred securitized assets from Pride Entities to a corresponding SPV, which in turn fundsfunded its acquisition of such securitized assets by selling the securitized assets to, or using them as collateral for, matching financing transactions with, one or more Securitization Funders.

**TURN-OVER AND SERVICING**

4.    **THIS COURT ORDERS** that the stay of proceedings provided for in the Initial Order in respect of the Pride Entities be and is hereby lifted for the purpose and to the extent of permitting each Securitization Party under a Specified Securitization Program (or its agents) to exercise all rights and remedies and to take any and all steps orand actions, in each case to the extent that arethe exercise of such rights and remedies is permitted and enforceable against the Pride Entities under the agreements and documents for the Specified Securitization Program (the "**Securitization Agreements**") described in Schedule "B" besidedescribed in Schedule "B" beside the name of each Securitization Counterparty, as applicable, (in order to effectuateeach case, as amended, modified and/or supplemented from time to time, and as may be further amended, modified and/or supplemented to the extent permitted pursuant to this Order, together with all related agreements and documents entered into in respect thereof, and as provided to the

Monitor by the Securitization Parties in connection with the Monitor's review of the Specified Securitization Programs, prior to the date of the Tenth Report, collectively, the "**Securitization Agreements**"), for the purpose of effectuating a Turn-Over of the Subject Assets for the Specified Securitization Program to, or as directed by, the Securitization Counterparty, together with the proceeds thereof, including to replace a Pride Entity as the servicer thereunder and to appoint a successor servicer, substitute servicer or replacement servicer to the extent permitted thereunder (a " the Securitization Counterparty or the applicable Replacement Servicer"). Such rights and to permitremedies will include any right of the Securitization Party or its designee (including any Replacement Servicer) to exercise any powers of attorney granted to it by a Pride Entity for the purposes thereof, in each case subject to the terms of this Order. For purposes of this Order, such rights and remedies will not include any right or remedy contemplated under any Securitization Agreement that would result in the enforcement of any security interest granted by a Pride Entity in its property pursuant to such Securitization Agreement, other than a security interest included in or comprising a Subject Asset.

5.      **THIS COURT ORDERS** that, subject to satisfaction of the MCV Turn-Over Conditions with respect to an MCV Asset, the stay of proceedings provided for in the Initial Order in respect of the Pride Entities shall, and thereupon will automatically, be lifted for the purpose and to the extent of permitting each Securitization Party under a Specified Securitization Program (or its agents) to exercise its rights and remedies and to take any and all steps and actions, in each case to the extent that the exercise of such rights and remedies and the taking of such steps and actions by such Securitization Party is permitted and enforceable under the Securitization Agreements, for the purpose of effectuating a Turn-Over of the MCV Asset to the Securitization Party or the applicable Replacement Servicer. Such rights and remedies will include any right of the Securitization Party or its designee (including any Replacement Servicer) to exercise any powers of attorney granted by a Pride Entity for the purposes thereof, in each case subject to the terms of any applicable MCV Servicing Agreement and this Order. For purposes of this Order, such rights and remedies will not include any right or remedy contemplated under any Securitization Agreement that would result in the enforcement of any security interest granted by a Pride Entity in its property pursuant to such Securitization Agreement, other than a security interest included in or comprising the MCV Asset.

6.      5. **THIS COURT ORDERS** that each Pride Entity that is subject to a Securitization

Agreement entered into in respect of a Specified Securitization Program shall, as soon as reasonably practicable and in any event no later than seven (7) days from the date of this Order, at their sole cost and expense, provide ~~the~~such Securitization ~~Counterparty~~Party and any Replacement Servicer, together with their respective agents, reasonable access to its premises, books, documents, contracts, including any amending agreements ~~purporting to amend a Subject Asset~~, side letters, corporate records, accounting records and any other papers, records, data, including data in electronic form, and other financial documents and information of any kind, in each case as and to the extent ~~they relate~~such relates to ~~the~~an applicable Subject ~~Assets~~Asset or MCV Asset for the Specified Securitization Program, and any computer programs, computer tapes, computer disks, or other data storage media containing such information in such Pride Entities' possession or control (including providing any passwords necessary therefor), and shall, upon receipt, permit such Securitization ~~Counterparty~~Party and any Replacement Servicer and their respective agents to make, retain and take away copies and/or if applicable originals thereof and ~~to~~ grant to such Securitization ~~Counterparty~~Party and any Replacement Servicer and their respective agents reasonable access to and use of such Pride Entities' accounting~~,~~ and computer software and physical facilities relating thereto, in each case subject to such licensing, confidentiality or other restrictions as are applicable to such access and use and subject to such actions as the Pride Entities may require to preserve privilege attaching to solicitor-client communication or to comply with any applicable statutory or regulatory requirements applicable thereto.

7. ~~6. **THIS COURT ORDERS**~~**THIS COURT ORDERS** that the Pride Entities shall ~~reasonably~~ cooperate with ~~the~~each Securitization ~~Counterparty~~Party and any Replacement Servicer, together with their respective agents, in connection with the Turn-Over and/or the appointment of ~~such~~the Replacement Servicer in accordance with the applicable Securitization Agreements for a Specified Securitization Program, ~~and~~ including (without limitation), if requested by the Securitization Party or the Replacement Servicer:

   (a)   in ~~respect of~~ the context of a transition of servicing of ~~the applicable~~a Subject ~~Assets~~Asset under the Specified Securitization Program to the Securitization Counterparty or ~~such~~the Replacement Servicer pursuant to ~~such~~and in accordance with the terms of the related Securitization Agreements, (~~including, without limitation,~~i) transferring to the Securitization Counterparty, or as otherwise

directed by~~,~~ the Securitization ~~Counterparty~~Party, or its designee~~any,~~ all certificates of title or registration relating to ~~vehicles~~any vehicle included within such Subject ~~Assets or~~Asset, (ii) registering the Securitization Counterparty or its designee as the owner of such vehicle in relation to any insurance-related matter, and (iii) registering the Securitization Counterparty or its designee as the owner of such vehicle on the records maintained by the applicable governmental agency on which ownership of vehicles may be required; and

(b) in the context of a transition of servicing of an MCV Asset under the Specified Securitization Program to the Securitization Party or the applicable Replacement Servicer pursuant to and in accordance with the terms of the related Securitization Agreements, (i) transferring the certificates of title or registration relating to any vehicle included within such MCV Assets to the person contemplated by the MCV Servicing Agreement, (ii) registering the person contemplated by the MCV Servicing Agreement as the owner of such vehicle in relation to any insurance-related matter, and (iii) registering the person contemplated by the MCV Servicing Agreement as the owner of such vehicle on the records maintained by the applicable governmental agency on which ownership of vehicles may be required,

and in each case~~, if and to the extent that the Securitization Agreements provide for a transfer of the beneficial ownership thereof to the Securitization Counterparty, and~~ executing any additional documentation ~~reasonably~~ required to give effect to the foregoing~~)~~.

8. ~~7. **THIS COURT ORDERS**~~**THIS COURT ORDERS** that each Securitization Party in respect of a Specified Securitization Program shall reasonably cooperate with the Pride Entities to ensure ~~the transition of servicing in respect~~that any Turn-Over of the ~~applicable~~ Subject Assets and any MCV Assets under the Specified Securitization Program occurs in ~~an~~a timely and orderly manner in accordance with this Order.

9. **THIS COURT ORDERS** that each Pride Entity that is subject to a Securitization Agreement entered into in respect of a Specified Securitization Program shall (a) comply with its obligations under such Securitization Agreement as required to give full and proper effect to a

Turn-Over of Subject Assets and MCV Assets permitted to be made pursuant to this Order; and (b) take all reasonable steps and actions to service all Subject Assets, MCV Assets and Multiple Collateral Vehicles in respect of which a Securitization Counterparty has asserted an interest, as reflected in the Monitor's Database, until the Effective Turn-Over Time.  Notwithstanding anything to the contrary in this Order, in the event of a conflict between any Securitization Agreement and the terms of this Order, the terms of this Order shall govern.

10.    8.  **THIS COURT ORDERS** that the Turn-Over(s) ordered and directed hereinOvers permitted hereby do not in any way confirm or validate anany ownership or proprietary interests in any Subject Asset or MCV Asset or any priority right or interests of an applicable Securitization Counterparty in any Subject Assets andAsset or MCV Asset and, subject to paragraphs 12, 13, and 23 hereof, this orderOrder is without prejudice to any rights, interests, claims and entitlements that the Pride Entities, the Monitor, or any other affected Personperson, including each Securitization Party, may have in respect of the Subject Assetsany Subject Asset or MCV Asset pursuant to any Securitization Agreement, provided nothing in this paragraph shall limit the Entitlement Claims Process Order or the application of paragraph 23 of this Order, including the applicable bar dates established therein.  For purposes of a Determination Motion or the Entitlement Claims Process, nothing in this Order, excluding paragraph 23 hereof, shall be determinative of the validity, effectiveness, enforceability or priority of any entitlement of any person in or to any Subject Assets or any other property, nor shall the validity, effectiveness, enforceability or priority of entitlement asserted by any person in or to any Subject Assets or any other property be enhanced or impaired in any way by the provisions of or carrying out of this Order.

11.    **THIS COURT ORDERS** that nothing herein shall restrict or limit the rights and remedies of the Securitization Parties arising under their respective Securitization Agreements to the extent related, incidental or otherwise applicable to a Turn-Over or the servicing of the Subject Assets or the MCV Assets to which a Turn-Over applies, provided that the stay of proceedings provided for in the Initial Order in respect of the Pride Entities shall otherwise continue to apply with respect to the exercise of rights and remedies against the Pride Entities that are unrelated to such a Turn-Over or the servicing of such Subject Assets or MCV Assets, including a Securitization Party to exercise any rights or remedies under any security interest granted by a Pride Entity in its property pursuant to such Securitization Agreement, excluding for

this purpose the exercise of any rights or remedies in respect of any security interest included in or comprising a Subject Asset or MCV Asset.

**ONGOING OBLIGATIONS FOLLOWING TURN-OVER**

12.   9.   **THIS COURT ORDERS** that ~~any~~each Turn-Over in respect of a Specified Securitization Program will be subject to the following:

(a)   On Going Compliance with applicable Securitization Agreements. ~~Each~~Subject to the terms herein, the Securitization Party ~~and any Replacement Servicer~~ shall comply with all terms of the Securitization Agreements ~~applicable to it~~under the Specified Securitization Program and shall direct the Replacement Servicer to comply with obligations the Replacement Servicer may have under Securitization Agreements under the Specified Securitization Program, including the provisions relating to the application of collections, proceeds and assets derived from the applicable Subject Assets and MCV Assets in accordance with the payment, distribution and remittance priorities and requirements specified in such Securitization Agreements, including with respect to any amounts required to be paid, distributed or remitted to or on behalf of a Pride Entity or to an insurer or taxation authority on behalf of the obligor under an applicable Subject Asset or MCV Asset; provided, for greater certainty, that if any Pride Entity shall disclaim a Securitization Agreement, this paragraph 12(a) shall cease to be effective in relation to such Securitization Agreement to the extent that such disclaimer by a Pride Entity would result in such Securitization Agreement not being applicable to such Securitization Party.

(b)   Termination of Tax Elections. Each Securitization Party and the applicable Pride Entity acknowledges and agrees that (i) the applicable Pride Entity under the Securitization Agreements for the Specified Securitization Program and the related Securitization Counterparty ~~have jointly revoked, terminated and cancelled, or will~~may revoke, terminate and cancel~~, effective as of the effective date of the Turn-Over,~~ any election made by them (including any joint election) under Part IX of the *Excise Tax Act* (Canada) or *An Act Respecting the Québec*

*Sales Tax* and (ii) notwithstanding any provision of such Securitization Agreements, ~~from and after the revocation, termination or cancelation of such election,~~ no Pride Entity shall be responsible to remit under its name and sales tax registration numbers any sales taxes accruing after and payable by obligors in respect of any Subject Assets or MCV Assets following the ~~effective date~~Effective Turn-Over Time thereof (except to the extent such taxes are received by any Pride Entity following the Effective Turn-Over Time). To the extent that amounts are owed to a taxing authority or insurer, the Pride Entities shall confirm in writing, as of the applicable Effective Turn-Over Time, the amounts that the Pride Entities have failed to remit or pay in accordance with applicable law.

(c)     <u>Other Assets Affected</u>.   If following the Effective Turn-Over Time of the Turn-Over of the Subject Assets ~~to, or~~ ~~as directed by, the Securitization Counterparty~~MCV Assets to a Replacement Servicer under the Specified Securitization Program, ~~a~~the Replacement Servicer or any Securitization Party under such Specified Securitization ~~Party~~Program receives assets identified by it as not being related to or derived from, or otherwise having been determined by final Order of the Court to be not related to or derived from, such Subject Assets~~,~~ ~~it~~ or MCV Assets, each Securitization Party under the Specified Securitization Program shall forthwith ~~return~~make such assets ~~to~~available for retrieval by the ~~Person~~person who ~~the Monitor or~~is determined by final Order of the Court ~~identifies, confirms or directs~~ is the proper owner of such assets, provided such person compensates the Securitization Party for any out-of-pocket costs incurred by the Securitization Party or the Replacement Servicer in connection with collecting and maintaining and otherwise servicing such assets since the applicable Effective Turn-Over Time and returning such asset to such person or on such other arrangements as may be agreed to by such person and the Securitization Party.

(d)     <u>Notification Requirements</u>.   If any Securitization Party or any Replacement Servicer under the Specified Securitization Program provides a notice to any obligor under ~~one~~ or ~~more related~~in respect of a Subject ~~Assets~~Asset or MCV

Asset or to any insurer of ~~vehicles~~a vehicle forming part of such Subject ~~Assets~~Asset or MCV Asset, including to pay, distribute or remit amounts due under a related lease, loan or insurance policy to or on behalf of the related Securitization Party or Replacement Servicer, ~~it~~the applicable Securitization Party shall use reasonable steps to ensure (including by ~~causing~~directing any Replacement Servicer to) that such notice specifically identifies and relates only to such Subject Asset or ~~Subject Assets~~MCV Asset, as the context requires.

(e)     Return of Return Assets.  If following the Effective Turn-Over Time of a Subject Asset or an MCV Asset under the Specified Securitization Program, subject to the Determination Motion Bar Date or the Entitlement Claims Process, as applicable, it is determined by final Order of the Court that such Subject Asset or MCV Asset is a Return Asset, the Securitization Counterparty and each other related Securitization Party shall ensure (including by ~~causing~~directing any Replacement Servicer to act) that:

(i)     to the extent the Return Asset has not been sold or otherwise disposed of, ~~(i)~~such Return Asset is, as soon as reasonably practicable, ~~returned~~made available for retrieval by ~~it to~~the ~~Person~~person or ~~Persons~~persons who ~~the Monitor or the Court identifies or confirms is the beneficial owner thereof or~~is entitled ~~Person thereunder~~to the Return Asset pursuant to a final Order of the Court (the "**Entitled Person**");

(ii)    to the extent the Return Asset has not been sold or otherwise disposed of, registered ownership of any vehicle or equipment forming part of the Return Asset is, as soon as reasonably practicable, transferred ~~back~~to the Entitled Person at such Entitled Person's cost and expense;

(iii)   copies of all records maintained by it following the Turn-Over relating to the Return Asset are, as soon as reasonably practicable, ~~delivered~~made available for retrieval by ~~it to~~the Entitled Person;

(iv)    any notice given to an obligor by a Securitization Party or Replacement Servicer directing payment in respect of the Return Asset to any

Securitization Party or any Replacement Servicer is, as soon as reasonably practicable, withdrawn and suspended and ~~such~~the Securitization Party or Replacement Servicer shall cooperate so that the Entitled Person may advise and direct the applicable obligor ~~is directed~~ to pay future amounts in respect of the Return Asset to the Entitled Person;

(v)     any amounts received by a Securitization Party or any Replacement Servicer in respect of the Return Asset following the applicable Effective Turn-Over Time are remitted, as soon as reasonably practicable, to the Entitled Person (net of any out-of-pocket costs incurred by the Securitization Party in collecting and maintaining and otherwise servicing the Return Asset) and until so remitted ~~are~~such net amounts are hereby deemed to be held by it in trust for the benefit of the Entitled Person;

(vi)    if the Subject Asset ~~became a Return Asset because a Securitization Counterparty is determined by the Court not to have a beneficial ownership interest in the Subject Asset or not to otherwise have a first-ranking interest in the Subject~~or the MCV Asset becomes a Return Asset then:

(1)     any collections or other proceeds of or derived from the Return Asset from and after the ~~date of the~~Effective Turn-Over Time that are held in an account for the benefit of, or that have otherwise been paid, distributed or remitted to, a Securitization Party (including any sale proceeds or recoveries)~~,~~ shall be, as soon as reasonably practicable, remitted or otherwise paid to the Entitled Person (net of any reasonable out-of-pocket costs incurred by the Securitization Party in collecting and maintaining and otherwise servicing the Return Asset);

(2)     any amount ~~previously~~ received by a Securitization Party from or with respect to the Return Asset from ~~the date~~

~~of~~and after the Effective Turn-Over Time shall, as soon as reasonably practicable, be ~~returned~~remitted or ~~reimbursed~~otherwise paid to the Entitled Person (net of any reasonable out-of-pocket costs incurred by the Securitization Party in collecting and maintaining and otherwise servicing the Return Asset); and

(3) to the extent the Return Asset has not been sold or otherwise disposed of, the Return Asset (and any relevant documents) shall be, as soon as reasonably practicable, ~~returned to~~made available for retrieval by the Entitled Person, at such Entitled Person's cost and expense; and

(vii) if the Subject Asset or the MCV Asset became a Return Asset ~~because it was subject to a prior ranking~~as result of a person asserting a priority claim, trust, security interest, lien or other adverse claim (a "**Lien Claim**"), the holder of such Lien Claim~~:~~

~~(1)        is~~ shall, if such Lien Claim is not paid and discharged in full from ~~and to~~ the ~~extent of~~ proceeds realized by a Securitization Party from the Return Asset ~~and/or its proceeds; and~~ be entitled as the Entitled Person to the relief and benefits set out in paragraph 12(e)(i) – (vi) of this Order.

~~(2)        the beneficiary of such Lien Claim is reimbursed to the extent of any reduction in the value of the Return Asset and/or its proceeds resulting from actions taken or permitted or omissions by a Securitization Party, if and to the extent that such actions or omissions were deficient having regard to the standards reasonably applicable to the holding and administration of assets of a similar type or character on behalf of another person in similar circumstances.~~

~~Without limiting the foregoing, the Securitization Party shall reimburse any Person that had an ownership interest or a prior ranking Lien Claim in~~

the Return Asset for any losses, costs and expenses incurred by such Person as a result of the Turn-Over of such Return Asset to the related Securitization Counterparty and/or its proceeds to, or as directed by, the Securitization Party.

(f)     <u>Dealing with Unallocated Amounts</u>.  If any collections or other proceeds of assets that are held in an account for the benefit of, or that have otherwise been paid, distributed or remitted to, a Securitization Party under the Specified Securitization Program (including any sale proceeds or recoveries) were from and after the applicable Effective Turn-Over Time identified as having been properly allocated by the payor to the payment of or in respect of an asset other than athe Subject Asset underor the SpecifiedMCV Asset subject to a Turn-Over in accordance with the applicable Securitization ProgramAgreements, each related Securitization Party shall (including by causingdirecting the Replacement Servicer to act) ensure that the related deposits and amounts (net of any out-of-pocket cost incurred by the Securitization partyParty in collecting or, maintaining and otherwise servicing the asset) are, as soon as reasonably practicable, paid over to the Monitor or as the Court may direct, to be applied in accordance with the Amended and Restated Protocols Order dated May 15, 2024, the Entitlement Claims Process Order of The Honourable Mr. Justice Osborne, dated as of June 14, 2024, or as the Court may otherwise order.

13.     10. **THIS COURT ORDERS** that except in connection with gross negligence, fraud or willful misconduct, each Securitization Party and any Replacement Servicer, and their respective employees, agents, advisors, representatives, and affiliates, shall not be liable for any losses, costs and expenses incurred or suffered by an Entitled Person or by the Pride Entities as a result of thea Turn-Over of a Return Asset, except as set out in(a) as a result of the Securitization Party's or Replacement Servicer's gross negligence, fraud or wilful misconduct, or (b) as a result of a breach by such Securitization Party of any provision of this Order applicable to it.

14.     11. **THIS COURT ORDERS** that, except as permitted by this Order, no Securitization Party under a Specified Securitization Program shall amend, modify, supplement, waive or vary, or permit an amendment, modification, supplement, waiver or variation of, the related

Securitization Agreements if the result thereof would be to reduce, impair, limit, restrict or adversely affect in any material respect the continuing rights, interests or entitlements of any Pride Entity thereunder, in each case, unless permitted under the terms of such Securitization Agreements, without the prior written consent of such Pride Entity orand the Monitor, or otherwise with leave of the Court.

15.    12. **THIS COURT ORDERS** that no Securitization Party shall have any right or ability to set-off, apply against, deduct from, withhold or reduce any amounts or claims owing to it byobligations to remit property belonging to any Pride Entity against any obligation of thepursuant to a Securitization Party to remit to the Pride Entity or reimburse the Pride Entity in respect of any property of the Pride Entity, any property entitlement or claim arising under a relatedAgreement, including on the basis of set off, except in accordance with the Securitization Program or any amount payable by the Securitization Party to the Pride Entity hereunderAgreements or otherwise under applicable law, absent further Order of the Court.

**PRESERVATION OF DOCUMENTS**

16.    13. **THIS COURT ORDERS** that each of the Pride Entities (which includes their respective employees, agents, advisors, representatives, and affiliates), at their sole cost and expense, shall, until further orderOrder of this Court, take reasonable and good faith steps to identify and preserve all documents in their possession, control, or power (which term includes electronically-stored information, including, without limitation, within the Pride Entities' Casitron or Simplicity software) that are that are relevant or potentially relevant to (ia) facilitating a Turn-Over, (b) any Securitization Program, (c) the Subject Assets, (d) the MCV Assets, or (iic) the "Factual Inquiries" as such term is defined in paragraph 47 of the Tenth Report and further particularized in paragraph 48 thereof (collectively, the "**Relevant Documents**"). Such reasonable and good faith steps shall include, without limitation:

(a)    taking steps to prevent the partial or full destruction, alteration, testing, deletion, overwriting, shredding, incineration, wiping, relocation, migration, theft or mutation of documents, as well as to prevent any action that would make the documents unreadable, incomplete or inaccessible; and

(b)     within [●]10 days from the date of this Order, circulating a document preservation notice, in form and substance satisfactory to the Monitor, to all potential custodians of the Relevant Documents notifying them of this Order and their obligation to preserve the Relevant Documents.

**SERVICE AND NOTICE**

17.    14. **THIS COURT ORDERS** that, unless otherwise specified by this Order, any notice or document hereunder shall be served and delivered or cause to be served and delivered by providing a copy of same to Canadian and/or U.S. counsel of record for the applicable Personperson at the email address(es) listed for such counsel on the Service List. Notices or documents sent by email in accordance with this paragraph shall be deemed to be received on the day that such email is sent, if sent before 5:00 p.m. (Toronto Time) on a Business Day, or on the next following Business Day if sent after 5:00 p.m. (Toronto Time) on a Business Day or on a day that is not a Business Day.

**COST ALLOCATION**

15.    Each Securitization Counterparty shall pay the Monitor on or before **[TIME PERIOD]** following the date of this Order, and before such Securitization Counterparty shall have any ability to retrieve any Repossessed Subject Assets, an amount equal to their respective allocation of the costs associated with the Monitor's review of the Securitization Programs and related security in accordance with the Initial Order, as set out in the Supplement to the Tenth Report

**RETRIEVAL OF REPOSSESSED ASSETS**

18.    **THIS COURT ORDERS** that the Pride Entities shall, as soon as reasonably practicable and in any event no later than 10 days prior to making Repossessed Assets available for retrieval, provide a list of locations for the Repossessed Assets (including the complete address and, where available, GPS coordinates) to the relevant Securitization Counterparty or Replacement Servicer, as applicable.

19.    **THIS COURT ORDERS** that, as soon as practicable following the Effective Turn-Over Time of a Subject Asset or an MCV Asset that is a Repossessed Asset, the Pride Entities shall (a) provide written notice to the applicable Securitization Party and the Replacement Servicer, as

applicable, in accordance with paragraph 17 herein when such Repossessed Asset is available and accessible for retrieval, specifying the location of such Repossessed Asset (including the complete address and, where available, GPS coordinates) and the applicable contact information of an individual who is designated for the purpose of granting such Securitization Party, its designee, or the Replacement Servicer access to such location; and (b) make the Repossessed Asset available and accessible for retrieval by the applicable Securitization Counterparty or its designee or the Replacement Servicer. Upon receipt of such notice, the Securitization Counterparty, its designee or Replacement Servicer shall retrieve and remove such Repossessed Asset from the applicable location(s) by the Retrieval Deadline with respect to such Repossessed Asset.

20.    **THIS COURT ORDERS** that, provided the Pride Entities have complied with their obligations set forth in paragraph 19 with respect to a Repossessed Asset, the applicable Securitization Party shall pay to the Pride Entities $35.00 per day for storage costs in respect of the Repossessed Asset if it is not retrieved or removed by such Securitization Party, or its designate, by the relevant Retrieval Deadline.

21.    **THIS COURT ORDERS** that the each Securitization Party shall pay any actual, documented out-of-pocket costs incurred by the Pride Entities or the Monitor, or their respective counsel or agents, after the date of this Order, associated with the retrieval or relocation of a Repossessed Asset by the Securitization Party, its designee or the applicable Replacement Servicer, provided that such costs (a) result from actions by the Pride Entities and/or the Monitor, or their respective counsel or agents, that are requested in writing by the Securitization Party, and (b) are in an amount that is approved in advance by the Securitization Party, in writing.

**MISCELLANEOUS**

22.    16. **THIS COURT ORDERS** that, subject to paragraph 23 hereof, any Securitization CounterpartyParty, any Replacement Servicer, the Monitor or, the Pride Entities, or any Entitled Person may from time to time apply to this Court for advice and directions concerning the exercise and discharge of their respective powers and, duties and obligations under this Order or the interpretation or application of this Order by filing a motion with this Court on not less than

seven (7) calendar days' notice to all other affected ~~Persons~~persons.  Without limiting the generality of the foregoing, and notwithstanding anything to the contrary herein, the Securitization Parties may from time to time apply to this Court to seek relief regarding servicing of any vehicles, equipment, vehicle leases, equipment leases, financial and other assets constituting Multiple Collateral Vehicles where the Securitization Counterparty has asserted an Entitlement Claim (as defined in the Entitlement Claims Process Order), including MCV Assets that do not constitute a Repossessed Asset hereunder.

23.    ~~17.~~ **THIS COURT ORDERS** that, subject to the last sentence of this paragraph and the Entitlement Claims Process Order, any affected ~~Person~~person may challenge a Turn-Over on the basis that a Subject Asset or an MCV Asset subject to such Turn-Over is a Return Asset by filing a motion with this Court on not less than seven (7) calendar days' notice to all other affected ~~Persons~~persons (a ~~"~~ "**Determination Motion**").  Any Determination Motion with respect to a Subject Asset or an MCV Asset must be brought within **~~[TIME PERIOD]~~**120 days following the date of this Order or such later date as may be agreed to in writing by a Securitization Party and an affected person that may file a Determination Motion (the ~~"~~ "**Determination Motion Bar Date**").  Notwithstanding anything to the contrary contained herein, a Determination Motion may not be brought by the Monitor or the Pride Entities ~~or the Monitor~~and no receiver, receiver manager, manager, trustee-in-bankruptcy, trustee, collateral manager or custodian appointed in respect of any of the Pride Entities or any of their assets, property or undertakings shall be entitled to assert in any Determination Motion any property interests of the Pride Entities or claims on behalf of the Pride Entities. Other than Entitlement Claims (as defined in the Entitlement Claims Process Order) which shall be addressed pursuant to the Entitlement Claims Process Order, any affected person who has not brought a Determination Motion with respect to the Turn-Over of a Subject Asset or an MCV Asset by its Determination Motion Bar Date shall be forever barred from challenging the Turn-Over of or entitlement of the Securitization Party to such Subject Asset or MCV Asset, as applicable, and any such challenge by an affected person in respect of a Subject Asset or an MCV Asset shall be forever extinguished and barred without further act or notification.

24.    ~~18.~~ **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body or agency having jurisdiction in Canada or in the United States of America, including the United States Bankruptcy Court for the District of

Delaware, or in any other foreign jurisdiction, to give effect to this Order and to assist the Pride Entities, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies and agencies are hereby respectfully requested to make such orders and to provide such assistance to the Pride Entities and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order or to assist the Pride Entities and the Monitor and their respective agents in carrying out the terms of this Order.

_____

- 24 -

## SCHEDULE "A"

### A.  APPLICANTS

**Operating Entities**
*Canadian Operating Entities*
- PRIDE TRUCK SALES LTD.
- TPINE TRUCK RENTAL INC.
- PRIDE GROUP LOGISTICS LTD.
- PRIDE GROUP LOGISTICS INTERNATIONAL LTD.
- TPINE LEASING CAPITAL CORPORATION
- DIXIE TRUCK PARTS INC.
- PRIDE FLEET SOLUTIONS INC.
- TPINE FINANCIAL SERVICES INC.
- PRIDE GROUP EV SALES LTD.

*U.S. Operating Entities*
- TPINE RENTAL USA, INC.
- PRIDE GROUP LOGISTICS USA, CO.
- ARNOLD TRANSPORTATION SERVICES, INC.
- DIXIE TRUCK PARTS INC.
- TPINE FINANCIAL SERVICES CORP.
- PARKER TRANSPORT CO.
- PRIDE FLEET SOLUTIONS USA INC.

**Real Estate Holding Companies**
*Canadian Real Estate Holding Companies*
- 2029909 ONTARIO INC.
- 2076401 ONTARIO INC.
- 1450 MEYERSIDE HOLDING INC.
- 933 HELENA HOLDINGS INC.
- 30530 MATSQUI ABBOTSFORD HOLDING INC.
- 2863283 ONTARIO INC.
- 2837229 ONTARIO INC.
- 2108184 ALBERTA LTD.
- 12944154 CANADA INC.
- 13184633 CANADA INC.
- 13761983 CANADA INC.
- 102098416 SASKATCHEWAN LTD.
- 177A STREET SURREY HOLDING INC.
- 52 STREET EDMONTON HOLDING INC.
- 84 ST SE CALGARY HOLDINGS INC.
- 68TH STREET SASKATOON HOLDING INC.
- 3000 PITFIELD HOLDING INC.

*U.S. Real Estate Holding Companies*
- PGED HOLDING, CORP.
- HIGH PRAIRIE TEXAS HOLDING CORP.
- 131 INDUSTRIAL BLVD HOLDING CORP.
- 59TH AVE PHOENIX HOLDING CORP.
- DI MILLER DRIVE BAKERSFIELD HOLDING CORP.
- FRONTAGE ROAD HOLDING CORP.
- ALEXIS INVESTMENTS, LLC
- TERNES DRIVE HOLDING CORP.
- VALLEY BOULEVARD FONTANA HOLDING CORP.
- HIGHWAY 46 MCFARLAND HOLDING CORP.
- TERMINAL ROAD HOLDING, CORP.
- BISHOP ROAD HOLDING CORP.
- OLD NATIONAL HIGHWAY HOLDING CORP.
- 11670 INTERSTATE HOLDING, CORP.
- 401 SOUTH MERIDIAN OKC HOLDING CORP.
- 8201 HWY 66 TULSA HOLDING CORP.
- EASTGATE MISSOURI HOLDING CORP.
- FRENCH CAMP HOLDING CORP.
- 87TH AVENUE MEDLEY FL HOLDING CORP.
- LOOP 820 FORT WORTH HOLDING CORP.
- 162 ROUTE ROAD TROY HOLDING CORP.
- CRESCENTVILLE ROAD CINCINNATI HOLDING CORP.
- MANHEIM ROAD HOLDING CORP.
- 13TH STREET POMPANO BEACH FL HOLDING CORP.
- EAST BRUNDAGE LANE BAKERSFIELD HOLDING CORP.
- CORRINGTON MISSOURI HOLDING CORP.
- 963 SWEETWATER HOLDING CORP.
- OAKMONT DRIVE IN HOLDING CORP.

**Other Holding Companies**
*Other Canadian Holding Companies*
- 2692293 ONTARIO LTD.
- 2043002 ONTARIO INC.
- PRIDE GROUP HOLDINGS INC.
- 2554193 ONTARIO INC.
- 2554194 ONTARIO INC.
- PRIDE GROUP REAL ESTATE HOLDINGS INC.
- 1000089137 ONTARIO INC.

*Other U.S. Holding Companies*
- COASTLINE HOLDINGS, CORP.
- PARKER GLOBAL ENTERPRISES, INC.
- DVP HOLDINGS, CORP.

**B. LIMITED PARTNERSHIPS**

*U.S. Limited Partnerships*
- PRIDE TRUCK SALES L.P.
- TPINE LEASING CAPITAL L.P.
- SWEET HOME HOSPITALITY L.P.

**C. ADDITIONAL STAY PARTIES**

*Canadian Additional Stay Parties*
- BLOCK 6 HOLDING INC.
- 2500819 ONTARIO INC.

*U.S. and Other Additional Stay Parties*
- PERGOLA HOLDINGS, CORP.
- PRIDE GLOBAL INSURANCE COMPANY LTD.

**SCHEDULE "B"**

| SECURITIZATION COUNTERPARTY | SECURITIZATION PROGRAM DOCUMENTS |
|---|---|
| Coast Capital Equipment Finance Ltd., Travelers Finance Ltd. and Travelers Leasing Ltd. ("**Coast**") | Master Purchase and Servicing Agreement dated as of August 4, 2020 among TPine Leasing Capital Corporation, as seller and initial servicer and Coast, as purchaser (the "**Coast MPSA**"); <br><br> Account Application and Blocked Account Agreement dated as of May 5, 2020 among TPine Leasing Capital Corporation and Coast Capital Savings Credit Union; and <br><br> Cash Management Agreement dated as of August 12, 2020 among TPine Leasing Capital Corporation and Coast Capital Savings Credit Union. |
| CWB Maxium Financial Inc. ("**CWB Maxium**") | Master Purchase and Servicing Agreement dated as of November 2, 2018 among TPine Leasing Capital Corporation, as seller and initial servicer and CWB Maxium, as purchaser, as amended by a first amending agreement dated as of July 4, 2019, a second amending agreement dated as of January 2, 2020, a third amending agreement dated as of June 30, 2020, a fourth amending agreement dated as of September 30, 2020, a fifth amending agreement dated as of November 9, 2020, a sixth amending agreement dated as of November 17, 2021 and a seventh amending agreement dated as of October 31, 2022 (the "**CWB MPSA**"). |
| BNY Trust Company of Canada, | Master Leasing Agreement dated as of August 27, 2020 |

| | |
|---|---|
| in its capacity as trustee of MOVE Trust ("**MOVE**") | among TPine Leasing Capital Corporation, as originator, Pride Truck Sales Ltd., TPine Truck Rental Inc., Pride Group Logistics Ltd., Pride Group Holdings Inc., 2043002 Ontario Inc., 2076401 Ontario Inc., Pride Truck Sales L.P., TPine Leasing Capital L.P., Pride Fleet Solutions Inc. (formerly Pride Diesel Inc.) and TPine Rental USA, Inc., each as performance guarantors, and BNY Trust Company of Canada, in its capacity as trustee of MOVE, as amended by amending agreement no. 1 dated as of February 17, 2021, amending agreement no. 2 dated as of October 14, 2021, amending agreement no. 3 dated as of September 21, 2022 and amending agreement no. 4 dated as of November 8, 2022 (the "**MOVE MLA**"). |
| TPine Canada Securitization LP, as purchaser ("**RBC Program SPV**") | Sale and Servicing Agreement dated as of January 21, 2022 among TPine Leasing Capital Corporation, as seller and servicer, Pride Truck Sales L.P., TPine Rental USA Inc., Coastline Holdings, Corp., Pride Group Holdings Inc., Pride Group Logistics Ltd., 2043002 Ontario Inc., Pride Fleet Solutions Inc., Pride Truck Sales Ltd., TPine Truck Rental Inc., 2076401 Ontario Inc., 2043002 Ontario Inc. and TPine Leasing Capital L.P., each as performance guarantors, RBC Program SPV, as purchaser, Royal Bank of Canada, as financial services agent ("**RBC**") and Global Securitization Services, LLC, as paying agent (the "**Paying Agent**"), as amended by a first amending agreement dated as of December 7, 2022 and a second amending agreement dated as of February 22, 2024 (the "**RBC SSA**");<br><br>Amended and Restated Loan and Security Agreement dated as of December 7, 2022 among RBC Program |

| | |
|---|---|
| | SPV, TPine Canada GP Inc., TPine Leasing Capital Corporation, RBC, the Paying Agent and the lenders from time to time party thereto; and<br><br>Backup Servicing Agreement dated as of January 21, 2022, among RBC Program SPV, TPine Canada GP Inc., TPine Leasing Capital Corporation, RBC and Vervent Inc. |
| TPine USA Funding I LLC, as buyer, ("**NBC Program SPV**") | Sale and Contribution Agreement, dated as of October 29, 2021, between TPine Leasing Capital L.P., as originator, and NBC Program SPV, as buyer (the "**NBC SCA**");<br><br>Note Issuance and Purchase Agreement, dated as of October 29, 2021, between TPine Leasing Capital L.P., as initial servicer and originator, NBC Program SPV, as issuer, National Bank of Canada, as note purchaser, National Bank Financial Inc., as administrative agent, and Vervent Inc., as backup servicer;<br><br>Vehicle Trust Agreement, dated October 29, 2021, between TPine Leasing Capital L.P., as registered owner or lienholder, as the case may be, on specified certificates of title, NBC Program SPV, as issuer, and National Bank of Canada, as administrative agent; and<br><br>Deposit Account Control Agreement, among TPine Leasing Capital L.P. as company, National Bank Financial Inc. as administrative agent, and Bank of America, N.A., as bank, dated as of October 29, 2021. |
| TPine USA Funding II LLC ("**Regions Program SPV**") | Sale and Contribution Agreement, dated as of February 11, 2022, between TPine Leasing Capital L.P., as |

|  | originator, and Regions Program SPV, as buyer (the "**Regions SCA**"); <br><br> Receivables Loan and Security Agreement, dated as of February 11, 2022, among Regions Program SPV, as borrower, TPine Leasing Capital L.P., as initial servicer and originator, Regions Bank, as administrative agent and a lender, the other lenders from time party thereto, Vervent Inc., as the backup servicer, and Pride Group Holdings Inc. and other Pride Entities, as performance guarantors; and <br><br> Lienholder Nominee Agreement, dated as of February 11, 2022, among TPine Leasing Capital L.P., as lienholder and as servicer, Regions Program SPV and Regions Bank, as administrative agent under the Receivables Loan and Security Agreement. |
|---|---|
| TPine USA Funding III LLC ("**Aviator Program SPV**") | Master Sale Agreement, dated as of March 30, 2022, between Aviator Program SPV, as purchaser, and TPine Leasing Capital L.P., as originator (the "**Aviator MSA**"); <br><br> Master Purchase and Sale Agreement, dated as of March 30, 2022, among the Aviator Program SPV, as seller, TPine Leasing Capital L.P., as initial servicer, Aviator Financial Inc., as purchaser, and Versafinace US Corp., as custodian; and <br><br> Pledge Agreement, dated as of March 30, 2022, among TPine Leasing Capital L.P., as pledgor, and Aviator Financial Inc., as pledgee. |

**SCHEDULE "C"**

Appendix "A-1" attached to the Tenth Report is amended for purposes of this Order to include the following preamble at the beginning thereof:

> The Purchased Assets (as defined in the Coast MPSA), which assets include leases and equipment, each identified by reference to the vehicle identification number ("**VIN**") of the underlying vehicle or equipment set out below.

Appendix "B-1" attached to the Tenth Report is amended for purposes of this Order to include the following preamble at the beginning thereof:

> The Purchased Assets (as defined in the CWB MPSA), which assets include all amounts payable under a relevant lease, identified by reference to the VIN of the underlying vehicle or equipment set out below, including the rights of TPine Leasing Capital Corporation under such lease to demand, collect and otherwise enforcement payment of any and all such amounts payable. For greater certainty, the Purchased Assets do not include the leases and equipment.

Appendix "B-1" attached to the Tenth Report is also amended for purposes of this Order to add the following rows at the end of the table therein:

| | |
|---|---|
| 2020190 | 1XPBD49X5LD674659 |
| 2020308 | 1XPXD49X0LD675059 |
| 2021094 | 1FUJHHDR9MLML4449 |
| 2021203 | 1FUJHHDR9MLMM2194 |
| 30326 | 4V4NC9EH2MN285104 |
| 30647 | 4V4NC9EH2NN292751 |
| 30646 | 1FUJHHDR2NLMW7469 |
| 30869 | 4V4NC9EH2NN292510 |
| 30925 | 1UYVS2534N6461920 |

Appendix "C-1" attached to the Tenth Report is amended for purposes of this Order to include the following preamble at the beginning thereof:

> The Leases and Related Equipment, together with the related Receivables and related Rights (each as defined in the MOVE MLA), identified by reference to the VIN of the underlying vehicle or equipment set out below.

Appendix "C-1" attached to the Tenth Report is also amended for purposes of this Order to delete the three rows set out first below and replacing them with the three rows set out second below:

| | |
|---|---|
| 30233D | 1JJV532D4NL280933 |
| 31972B | 1FUJGLDR8HLHM09626 |
| 35894 | 3HSDZTZR6EN196884 |

- 2 -

| 30233D | 1JJV532D1NL280937 |
| 31972B | 1FUJGLDR8HLHM0962 |
| 35894 | 3HSDZTZR6PN196884 |

Appendix "D-1" attached to the Tenth Report is amended for purposes of this Order to include the following preamble at the beginning thereof:

The Purchased Assets (as defined in the RBC SSA), which assets include the leases and equipment, identified by reference to the VIN of the underlying vehicle or equipment set out below.

Appendix "D-1" attached to the Tenth Report is also amended for the purposes of this Order to revise the lease contract numbers from the "Previous Contract Numbers" to the "Revised Contract Numbers", identified by reference to the VIN of the underlying vehicle or equipment set out below:

| Appendix "D-1" Specific VINs | Previous Contract Number | Revised Contract Number (Based on Securitization Program documents) |
| --- | --- | --- |
| 1XPBD49X8RD640885 | 3175 | 37837 |
| 1M1AN4GY9PM036832 | 3176 | 37937 |
| 4V4NC9EH3LN225296 | 3177 | 38271 |
| 1XPBD49X0RD639391 | 3178 | 38274 |
| 4V4NC9EJ3RN629257 | 3179 | 38328 |
| 4V4NC9EH9LN218806 | 3180 | 38405 |
| 2AYNF7AV7P3T10536 | 3181 | 38453 |
| 3AKJHHDR4NSMW4674 | 3182 | 38457 |
| 5V8VC5323PT307787 | 3184 | 38464 |
| 5V8VC5324PT307801 | 3185 | 38464 |
| 5V8VC5326PT307802 | 3186 | 38464 |
| 5V8VC5328PT307803 | 3187 | 38464 |
| 5V8VC532XPT307804 | 3188 | 38464 |
| 5V8VC5321PT307805 | 3189 | 38464 |
| 2DM42JAA2PS199105 | 3190 | 38490 |
| 2DM42JAA0PS199104 | 3191 | 38490 |
| 1UYVS2532P6962727 | 3192 | 38527 |
| 1UYVS2534P6962728 | 3193 | 38527 |
| 1UYVS2536P6962729 | 3194 | 38527 |
| 1UYVS2532P6962730 | 3195 | 38528 |
| 1UYVS253XP6962720 | 3196 | 38528 |
| 1NPCX4TX8PD884371 | 3197 | 38533 |
| 1M1AN4GY7PM036828 | 3198 | 38577 |
| 3HSDZTZRXPN200516 | 3199 | 38581 |
| 1M1AN4GY1PM036825 | 3200 | 38607 |
| 2TX1FMB21PE360073 | 3201 | 38614 |
| 2TX1FMB28PE360071 | 3202 | 38614 |
| 5V8VC5321PT307853 | 3203 | 38623 |

| Appendix "D-1"<br><br>Specific VINs | Previous Contract Number | Revised Contract Number (Based on Securitization Program documents) |
|---|---|---|
| 5V8VC5323PT307854 | 3204 | 38623 |
| 5V8VC5325PT307855 | 3205 | 38623 |
| 5V8VC5327PT307856 | 3206 | 38623 |
| 5V8VC5328PT307798 | 3207 | 38623 |
| 5V8VC5324PT307684 | 3208 | 38623 |
| 5V8VC5322PT307800 | 3209 | 38623 |
| 1XPBD49X3RD850455 | 3211 | 38637 |
| 5DN115346LB001330 | 3213 | 38639 |
| 1XPBD49X1RD640887 | 3214 | 38647 |
| 1XPBD49X5RD850473 | 3215 | 38648 |
| 1XPBD49X7RD850474 | 3216 | 38649 |
| 1XPBD49X2RD850477 | 3217 | 38650 |
| 4V4NC9EH9KN219677 | 3218 | 38651 |
| 1XPBD49X4RD850478 | 3219 | 38652 |
| 3AKJHHDR6NSNG6134 | 3220 | 38656 |
| 1JJV532D7PL361394 | 3222 | 38668 |
| 1JJV532D9PL361395 | 3223 | 38668 |
| 1JJV532D0PL361396 | 3224 | 38668 |
| 1JJV532D2PL361397 | 3225 | 38668 |
| 1JJV532D4PL361398 | 3226 | 38668 |
| 3AKJHHDR5KSJY6640 | 3227 | 38673 |
| 1JJV532D6PL361399 | 3229 | 38681 |
| 1JJV532D9PL361400 | 3230 | 38681 |
| 1JJV532D0PL361401 | 3231 | 38681 |
| 1JJV532D2PL361402 | 3232 | 38681 |
| 1JJV532D4PL361403 | 3233 | 38681 |
| 1JJV532D6PL361404 | 3234 | 38682 |
| 1JJV532D8PL361405 | 3235 | 38682 |
| 1JJV532DXPL361406 | 3236 | 38682 |
| 1JJV532D1PL361407 | 3237 | 38682 |
| 1JJV532D3PL361408 | 3238 | 38682 |
| 1UYVS2537P2876501 | 3239 | 38686 |
| 1XKYD49X5RJ327083 | 3240 | 38703 |
| 1XKYD49X3NJ148714 | 3241 | 38707 |
| 1UYVS2530R7126301 | 3244 | 38723 |
| 1UYVS2534R7126303 | 3245 | 38723 |
| 1UYVS2536R7126304 | 3246 | 38723 |
| 1UYVS2535R7126309 | 3247 | 38723 |
| 1UYVS2531R7126310 | 3248 | 38723 |
| 1FUJHHDR1PLNV7764 | 3249 | 38724 |
| 3AKJHHDR3JSJW8247 | 3250 | 38725 |
| 1XPBD49X3RD639370 | 3251 | 38727 |
| 1XPBD49X4RD850528 | 3252 | 38743 |
| 3AKJHHDR4KSKJ0443 | 3253 | 38745 |

- 4 -

| Appendix "D-1"<br><br>Specific VINs | Previous Contract Number | Revised Contract Number (Based on Securitization Program documents) |
|---|---|---|
| 3AKJGLDR0KDKH9961 | 3254 | 38750 |
| 2AYNF7AV2P3T10539 | 3256 | 38755 |
| 4V4NC9EH3MN278517 | 3258 | 38758 |
| 1FUJHHDR2MLMT9508 | 3259 | 38759 |
| 4V4NC9EH1LN258233 | 3261 | 38770 |
| 4V4NC9EJ0LN222441 | 3262 | 38771 |
| 1XKYD49X8NJ151091 | 3263 | 38773 |
| 1XKYD49X0NJ499810 | 3264 | 38774 |
| 3AKJHHDR5NSNC3386 | 3265 | 38777 |
| 4V4NC9EH4KN903939 | 3266 | 38778 |
| 3AKJHHDR6KSKM7302 | 3269 | 38784 |
| 1W1K55348R6634159 | 3270 | 38785 |
| 1FUJHHDR4MLMM2099 | 3272 | 38790 |
| 3AKJHHDR9NSNC3410 | 3273 | 38791 |
| 3AKJHHDR8NSNC3446 | 3274 | 38792 |
| 4V4NC9EH2NN310956 | 3279 | 38799 |
| 4V4NC9EH9KN903984 | 3280 | 38809 |
| 4V4NC9EH2KN214921 | 3281 | 38810 |
| 4V4NC9EJ0LN222455 | 3282 | 38811 |
| 1RNF53A28JR043993 | 3283 | 38812 |
| 4V4NC9EH9KN201356 | 3284 | 38813 |
| 4V4NC9EH2KN903972 | 3285 | 38814 |
| 1XPBD49X6RD639394 | 3286 | 38815 |
| 3AKJHHDRXKSJZ8878 | 3288 | 38836 |
| 3AKJHLDR0JSJK6301 | 3289 | 38837 |
| 4V4NC9EH4LN238459 | 3290 | 38838 |
| 1NKDX4TX5LJ961977 | 3291 | 38844 |
| 3AKJHHDR5KSKM7288 | 3294 | 38852 |
| 3AKJHHDRXJSJT9568 | 3295 | 38854 |
| 3AKJHHDR7NSMX0422 | 3296 | 38867 |
| 1RNF53A38RR059485 | 3297 | 38870 |
| 4V4NC9EH3KN200137 | 3298 | 38873 |
| 4V4NC9EH0LN230133 | 3300 | 38876 |
| 3AKJHHDR7NSNG6076 | 3302 | 38878 |
| 1FUJHHDRXNLMW8885 | 3304 | 38883 |
| 1FUJHHDR0NLMW8460 | 3305 | 38884 |
| 3AKJHHDR2NSMV7559 | 3308 | 38887 |
| 1XKYD49X4NJ151086 | 3311 | 38890 |
| 2S9PS5277RW134371 | 3312 | 38892 |
| 2S9PS5276RW134538 | 3313 | 38892 |
| 4V4NC9EH7MN242152 | 3315 | 38901 |
| 4V4NC9EH6LN228158 | 3316 | 38903 |
| 4V4NC9EH1KN209709 | 3317 | 38910 |

- 5 -

| Appendix "D-1" Specific VINs | Previous Contract Number | Revised Contract Number (Based on Securitization Program documents) |
|---|---|---|
| 1XPBD49X1RD850471 | 3318 | 38918 |
| 1FUJHHDR5LLKU7269 | 3319 | 38926 |
| 4V4NC9EH6KN201427 | 3320 | 38926 |
| 1XPBD49X5RD850523 | 3321 | 38937 |
| 4V4NC9EJ6JN999008 | 3322 | 38939 |
| 3AKJHHDR5KSKF3555 | 3323 | 38952 |
| 1M1AN4GY6PM038022 | 3324 | 38954 |
| 3AKJHHDR9NSMX0423 | 3325 | 38955 |
| 1M1AN4GY8PM038023 | 3326 | 38956 |
| 2SHSR5332RS004043 | 3327 | 38966 |
| 3AKJHHFG2KSKM3503 | 3328 | 38973 |
| 4V4NC9EH8JN993031 | 3329 | 38981 |
| 4V4NC9EH0LN241911 | 3330 | 38982 |
| 1FUJHHDR3MLMA7369 | 3331 | 38984 |
| 1UYVS2536P7711218 | 3332 | 38987 |
| 1UYVS253XP7711206 | 3333 | 38994 |
| 3AKJHLDR4JSJJ1610 | 3334 | 38996 |
| 3AKJHLDR9JSJL4204 | 3335 | 38996 |
| 1XPBD49XXRD640886 | 3336 | 38998 |
| 1UYVS2530P7967418 | 3337 | 39001 |
| 1UYVS2532P7967419 | 3338 | 39001 |
| 1UYVS2539P7967420 | 3339 | 39001 |
| 1XPBD49X8ND772586 | 3340 | 39008 |
| 1XKYD49X6RJ327092 | 3341 | 39009 |
| 1M1AN4GY5PM036827 | 3342 | 39010 |
| 1XKYD49X7RJ346525 | 3343 | 39015 |
| 1XKYD49X9RJ346526 | 3344 | 39015 |
| 1XPBD49X5RD639404 | 3345 | 39016 |
| 1XPBD49X7RD639405 | 3346 | 39016 |
| 1XPBD49X9RD639406 | 3347 | 39016 |
| 1JJV532D1KL136090 | 3349 | 39021 |
| 1JJV532D8KL136104 | 3350 | 39021 |
| 1JJV532DXKL136105 | 3351 | 39022 |
| 1JJV532D1KL136106 | 3352 | 39022 |
| 4V4NC9EH2LN253168 | 3353 | 39023 |
| 1UYVS2537P7967416 | 3356 | 39030 |
| 1JJV532D5PL361412 | 3357 | 39033 |
| 1JJV532D7PL361413 | 3358 | 39033 |
| 1JJV532D9PL361414 | 3359 | 39033 |
| 1JJV532D0PL361415 | 3360 | 39033 |
| 1JJV532D2PL361416 | 3361 | 39033 |
| 3AKJHHDR3KSKA1194 | 3362 | 39040 |
| 4V4NC9EH2NN320306 | 3363 | 39049 |
| 1XPBD49X8RD639395 | 3364 | 39050 |

| Appendix "D-1"<br><br>Specific VINs | Previous Contract Number | Revised Contract Number (Based on Securitization Program documents) |
|---|---|---|
| 1JJV532D6PL361418 | 3366 | 39058 |
| 1JJV532D8PL361419 | 3367 | 39058 |
| 1JJV532D4PL361420 | 3368 | 39058 |
| 1JJV532D6PL361421 | 3369 | 39058 |
| 1JJV532D4PL361417 | 3370 | 39058 |
| 1UYVS2536P2709305 | 3371 | 39063 |
| 1UYVS2538P2709306 | 3372 | 39063 |
| 1UYVS2533P2709309 | 3373 | 39063 |
| 1UYVS253XP2709310 | 3374 | 39063 |
| 4V4NC9EH2MN271655 | 3375 | 39074 |
| 4V4NC9EH1NN310950 | 3376 | 39110 |
| 1XKYD49X3RJ346523 | 3377 | 39066 |
| 1XKYD49X5RJ346524 | 3378 | 39066 |
| 1XKYD49X2RJ326960 | 3379 | 39066 |
| 1UYVS2534P7711203 | 3380 | 39099 |
| 1UYVS2535P7711209 | 3381 | 39099 |
| 1UYVS2534P7711220 | 3382 | 39100 |
| 1UYVS2536P7711221 | 3383 | 39100 |
| 1UYVS2538P7711205 | 3384 | 39101 |
| 1UYVS2530P7711201 | 3385 | 39101 |
| 3AKJHHDR0JSJT9563 | 3387 | 39103 |
| 4V4NC9EH7KN903983 | 3388 | 39121 |
| 1M1AN4GY2PM038017 | 3389 | 39128 |
| 3AKJHHDR0LSLP3625 | 3392 | 38797 |
| 1UYVS2530P6964427 | 3393 | 38928 |
| 1UYVS2532P6964428 | 3394 | 38928 |
| 1UYVS253XP6962703 | 3395 | 38928 |
| 3AKJHHDR7LSKW9200 | 3397 | 39031 |
| 4V4NC9EH4NN305466 | 3398 | 39038 |
| 4V4NC9EH8NN305454 | 3399 | 39038 |
| 4V4NC9EH7JN993036 | 3400 | 39044 |
| 4V4NC9EH8NN305468 | 3401 | 39045 |
| 4V4NC9EH3NN305457 | 3402 | 39045 |
| 4V4NC9EH0NN305478 | 3403 | 39046 |
| 4V4WC9EGXLN261496 | 3404 | 39065 |
| 4V4WC9EGXLN241846 | 3405 | 39065 |
| 1XKYD49X3PJ264949 | 3406 | 39073 |
| 1XKYD49X7RJ327084 | 3408 | 39078 |
| 4V4NC9EH1NN295494 | 3409 | 39079 |
| 1FUJHHDR5NLMW8339 | 3410 | 39086 |
| 3AKJHHDR7KSJX9351 | 3411 | 39091 |
| 1UYVS2532R7126302 | 3412 | 39134 |
| 1UYVS2538R7126305 | 3413 | 39134 |
| 1UYVS253XR7126306 | 3414 | 39134 |

| Appendix "D-1"<br><br>Specific VINs | Previous Contract Number | Revised Contract Number (Based on Securitization Program documents) |
|---|---|---|
| 3AKJHHDR8LSLP8703 | 3417 | 39142 |
| 3AKJHHDR6LSKX0614 | 3419 | 39155 |
| 3AKJHHDR8LSKX0615 | 3420 | 39156 |
| 3AKJHHDR3LSKX0389 | 3421 | 39157 |
| 1FUJHHDR6KLKM7263 | 3422 | 39160 |
| 4V4NC9EHXKN211300 | 3423 | 39175 |
| 1UYVS2531R7126307 | 3424 | 39182 |
| 1UYVS2533R7126308 | 3425 | 39182 |
| 4V4WC9EH2LN234995 | 3426 | 39184 |
| 1JJV532D3RL437521 | 3427 | 39196 |
| 1M1AN4GY1PM038025 | 3429 | 39200 |
| 4V4NC9EH1KN200749 | 3433 | 39219 |
| 4V4NC9EH8KN904589 | 3434 | 39219 |
| 1UYVS2533P6962719 | 3436 | 39275 |
| 1UYVS2533P6962722 | 3437 | 39275 |

Appendix "E-1" attached to the Tenth Report is amended for purposes of this Order to include the following preamble at the beginning thereof:

The Contract Assets (as defined in the NBC SCA), which assets include the leases and equipment, identified by reference to the VIN of the underlying vehicle or equipment set out below.

Appendix "F-1" attached to the Tenth Report is amended for purposes of this Order to include the following preamble at the beginning thereof:

The Contract Assets (as defined in the Regions SCA), which assets include the leases and equipment, identified by reference to the VIN of the underlying vehicle or equipment set out below.

Appendix "G-1" attached to the Tenth Report is amended for purposes of this Order to include the following preamble at the beginning thereof:

The Sold Assets (as defined in the Versa MSA), which assets include the leases and equipment, identified by reference to the VIN of the underlying vehicle or equipment set out below.

1396-8643-6365.3

- IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED
- AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF **PRIDE GROUP HOLDINGS**
  "**Applicant**", and collectively, the "**Applicants**")

Court File No.: CV

| | |
|---|---|
| | ***ONTARIO***<br>**SUPERIOR COURT OF**<br>**(COMMERCIAL I**<br>Proceedings commenced at To |
| | **TURN-OVER OR** |
| | **THORNTON GROUT FINNI**<br>TD West Tower, Toronto-Domin<br>100 Wellington Street West, Sui<br>Toronto, ON  M5K 1K7<br><br>**Leanne Williams (LSO #41877**<br>Tel:  (416) 304-0060 / Email:  lv<br><br>**Rachel Nicholson (LSO #68348**<br>Tel:  (416) 304-1153 / Email:  rn<br><br>**Puya Fesharaki (LSO #70588L**<br>Tel:  (416) 304-7979 / Email:  pf<br><br>**Ines Ferreira (LSO #81472A)**<br>Tel:  (416) 304-0461 / Email: ife<br><br>Lawyers for the Applicants |

- 2 -

1408-0376-7309.6