**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 15 |
| Pride Group Holdings Inc., *et al.* | Case No. 24-10632 (CTG) |
| Debtors in Foreign Proceedings. | (Jointly Administered) |

**DECLARATION OF KORNELJIA MARINKOVIK-SHIVERS IN SUPPORT OF MOTION OF DAIMLER TRUCK FINANCIAL SERVICES USA LLC, FOR AN ORDER (I) GRANTING RELIEF FROM THE INJUNCTION AND STAY IMPOSED UNDER 11 U.S.C. §§1519, 1520 AND 1521 BY CERTAIN ORDERS OF THIS COURT AS TO NON-APPLICANT AND NON-DEBTOR THIRD PARTY TPINE LEASING CAPITAL LP, (II) GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d) TO THE EXTENT OF ITS APPLICATION TO NON-APPLICANT AND NON-DEBTOR THIRD PARTY TPINE LEASING CAPITAL LP AND (III) FOR RELATED RELIEF WITH RESPECT TO FIVE HUNDRED AND FOUR (504) TRUCKS ALL OF WHICH ARE THE PROPERTY OF NON-APPLICANT AND NON-DEBTOR THIRD PARTY TPINE LEASING CAPITAL LP AND WHICH WERE FINANCED AND ARE <u>LOCATED IN THE CONTINENTAL UNITED STATES</u>**

I, KORNELJIA MARINKOVIK-SHIVERS, declare:

1.      I am a Manager, Fleet Workout and Collections for Daimler Truck Financial Services USA LLC ("<u>DTFS</u>") and I am authorized to make the following declaration.

2.      I am one of the custodians of the books, records and files of Movant as to those books, records, and files that pertain to loans, leases and extensions of credit given to the Debtor concerning the Vehicle.  I have worked on Movant's books, records and files, and as to the following facts, I know them to be true or I have gained knowledge of them from the business records of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business by a person who had knowledge of the event being recorded and had or has a business duty to accurately

record such.  I am responsible for handling collection activity in connection with Debtor's account, and I have reviewed Movant's books and records in connection with this matter.  I have knowledge of the facts contained herein and, if called upon to testify, I could and would competently testify thereto.

3.      Prior to the commencement of this case and Debtors' Canadian CCAA proceedings, DTFS entered into 92 Notes and Security Agreements (the "Contracts") with non-Debtor, third party TPine Leasing Capital LP ("TPine") to finance the purchase by TPine of 650 Freightliner trucks of various models and model years. TPine granted DTFS a cross-collateralized, cross-defaulted security interest in all 650 trucks to secure repayment under the Contracts. DTFS is the assignee of certain Contracts that were assigned to DTFS by Mercedes-Benz Financial Services USA LLC ("MBFS") as part of the "demerger" of DTFS from MBFS. TPine is in default of each of the Contracts for purchase of the Vehicles by its failure to make multiple monthly payments coming due under those Contracts.

4.       TPine is not a Debtor in this case. In addition, TPine is not an Applicant in Debtors' Canadian CCAA proceedings. TPine is organized as a Delaware limited partnership. Since it is a limited partnership, TPine is ineligible under Canadian law to be an Applicant in a CCAA proceeding.

5.      This Motion concerns a portion of DTFS' collateral, specifically, 504 Vehicles purchased pre-petition by non-Debtor TPine (the "Vehicles"). The Vehicles are not Debtors' property. The Vehicles are owned by non-Debtor TPine. The Vehicles are not physically located in Canada. The Vehicles are all physically located in the United States and were purchased under Contracts executed in the United States. A true and correct list of the Vehicles by year, make, model

and vehicle identification number ("VIN") is attached hereto as **Exhibit "2"** and is incorporated herein by this reference.

6.    DTFS properly perfected its security interests in the Vehicles by the notation of its liens on the Vehicles' title certificates. During the course of the Debtors' CCAA proceedings, Debtors engaged a third-party auditor to determine whether any of the liens of Debtors' equipment lenders were unperfected. That audit determined that Debtors were in possession of documents to confirm DTFS had properly perfected its security interest pre-petition in each of DTFS's 650 collateral Vehicles with the exception of one vehicle. That vehicle is not the subject of this Motion.

7.    The results of Debtors' securitization audit with respect to DTFS's collateral are set forth at paragraph 29 of the 11th Report of Debtor's Monitor to the Canadian Court dated August 2, 2024 filed in the CCAA proceedings and in the Exhibit 25A thereto. A true and correct copy of the 11th Report of Debtor's Monitor with the described exhibit is attached hereto as **Exhibit "3"** and is incorporated herein by this reference.

8.    The Contracts are substantially the same but for the description of the Vehicles subject of each Contract. A true and correct copy of an exemplar copy of one of the Contracts setting forth the terms thereof is attached hereto as **Exhibit "4"** and is incorporated herein by this reference.

9.    Each of the Contracts contains an unnumbered paragraph on the first page of the same entitled "Security Agreement." That paragraph provides, in pertinent part:

> "In order to secure the prompt and punctual payment and satisfaction of my Indebtedness (as defined herein), I am granting Lender a security interest in the Equipment, … and in all leases and chattel paper of the Equipment, and in all lease payments, rentals, and rights thereto, and in all proceeds derived from the Equipment…I also agree that, to the extent permitted by applicable

3

law, collateral securing other loans, credit sales and leases that I may have with Lender or any affiliate of Lender, whether now or in the future, additionally will secure my Indebtedness under this Note. The Equipment, all leases and chattel paper of the Equipment, all lease payments, rentals, and rights thereto, proceeds, and my additional collateral securing other loans, credit sales, and leases with Lender or any affiliate of Lender, are individually, collectively and interchangeably referred to under this Note as my 'Collateral'."

10.     That same unnumbered paragraph defines "Indebtedness" as:

"For purposes of this Note, the term "Indebtedness" means: (1) my indebtedness under this Note for payment of principal, interest, late charges, returned check fees, liquidated damages and any other amounts due hereunder; (2) … my indebtedness under any other loans, leases or other obligations that I may now and in the future owe to Lender or any affiliate of Lender …"

11.     As such, to secure TPine's indebtedness to DTFS TPine granted DTFS a first priority security interest not only in the vehicle or vehicles subject of any specific Contract, but also in all other vehicles securing any other loans, credit sales and leases TPine may have entered into with DTFS, whether then existing or in the future, and in all proceeds of those vehicles.

12.     On March 27, 2024, the Debtors commenced the Canadian CCAA Proceedings. In connection therewith, Randall Benson was authorized to act as the foreign representative for the Debtors and to file these Chapter 15 Cases.  These Chapter 15 Cases were filed on April 1, 2024.

13.     On April 3, 2024, this Court entered that certain Order Granting Motion of the Foreign Representative for Provisional Relief Pursuant to Sections 105(a) and 1519 of the

Bankruptcy Code as docket number 49 (the "Provisional Order"). A true and correct copy of the Provisional Order is attached hereto as **Exhibit "5"** and is incorporated herein by this reference.

14.     Pursuant to Paragraph 1.b. of the Provisional Order, DTFS was enjoined and stayed pursuant to 11 U.S.C. §1519(a)(1) from, among other things, taking any action to enforce its security interests in its collateral vehicles in possession of TPine including, but not limited to, any action to enforce its security interests in the Vehicles subject of this Motion.  Paragraph 1.b. of the Provisional Order expressly authorizes DTFS to seek relief from the injunction and stay created by the Provisional Order "in accordance with Section 362 of the Bankruptcy Code and the Bankruptcy Rules."  Paragraph 12 of the Provisional Order provides for the Court's retention of jurisdiction with respect to any party's request for relief from the Provisional Order for "cause shown."

15.     On May 2, 2024, the Court entered that certain Order Granting Amended Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code as docket number 110 (the "Recognition Order"). A true and correct copy of the Recognition Order is attached hereto as **Exhibit "6"** and is incorporated herein by this reference.

16.     Pursuant to Paragraph 6 of the Recognition Order, the Court enjoined DTFS pursuant to 11 U.S.C. §1521(a)(1)-(3) from, among other things, taking any action to enforce its security interests in its collateral in TPine's possession, including the Vehicles subject of this Motion, to the extent not already stayed by 11 U.S.C. §1520.  Under paragraph 7 of the Recognition Order, the Court extended and continued in effect the prior relief granted under the Provisional Order. Under Paragraph 12 of the Recognition Order, the Court preserved DTFS' right to seek

relief from the injunction and stay as per the Provisional Order notwithstanding any other term of the Recognition Order.

17.    As such, under the Provisional Order and the Recognition Order DTFS may seek relief from the injunction and stay protecting TPine upon a showing of its entitlement to relief from stay under 11 U.S.C. §362(d) for "cause shown."

18.    There is no equity in the Vehicles for the benefit of TPine or any other party. TPine's indebtedness to DTFS with respect to the Vehicles is $57,573,264.47. This amount does not take into account the deficiency balances incurred as the result of sales of vehicles previously surrendered by TPine and sold by DTFS.  When those deficiency balances are fully liquidated, the above indebtedness will be greater than $57,573,264.47.

19.    According to the JD Power (formerly NADA) online Market Guide, the Vehicles have a retail value book value, in the aggregate, of $47,014,000.00 and a wholesale value, in the aggregate, of $35,629,500.00. The amount owed to DTFS is approximately $10 million more than the Vehicles' retail book value and approximately $22 million more than the Vehicles' wholesale book value. Given that the Vehicles are so dramatically over-encumbered, a sale of the Vehicles by TPine would generate no return over and above the secured amount owed to DTFS. A true and correct Spreadsheet of the values of the Vehicles on a per VIN basis, as well as true and correct copies of the relevant pages from the JD Power online Market Guide concerning the retail and wholesale values of the Vehicles, are attached as **Exhibit "7"** and are incorporated herein by this reference.

20.    Presuming for the sake of argument Debtors would have the right to sell TPine's property, such a sale would also generate nothing for the benefit of TPine or the Debtors' Canadian estates given the degree to which the Vehicles are over-encumbered. The sale would result only in

the unnecessary incurrence of administrative costs and expenses in attempting to sell the Vehicles thereby pushing other unsecured creditors even further off the table than they are at present. TPine's continued possession of the Vehicles is, by itself, contributing to the Debtors' administrative costs. Debtors' estates are presently incurring the cost to insure the Vehicles and to store and safeguard those Vehicles that have been turned back in by, or repossessed from, TPine's lessees.

21.     Certain of the Debtors have executed guarantees of TPine's debt to DTFS. Any sale of the Vehicles at a loss after more time passes and more value is lost would increase the size of DTFS's unsecured claim and dilute the share of recovery unsecured creditors could hope to receive in the CCAA proceedings.

22.     DTFS is in, by far, the best position to minimize its losses and to obtain maximum value for the Vehicles. DTFS is an expert at the repossession and sale of its collateral and has access to a nationwide network of heavy truck dealers who routinely bid on vehicles sold at online auctions conducted by DTFS. The sale of truck collateral is a major aspect of DTFS's routine operations. By way of example, TPine voluntarily surrendered 137 vehicles to DTFS prior to the filing of the Debtors' CCAA proceedings. On July 2, 2024, this Court entered an Agreed Order dissolving this Court's injunction and stay as to those 137 vehicles. DTFS has already sold and been paid for 101 of those vehicles.

23.     By contrast, TPine and Debtors are not experts at the repossession and sale of vehicle collateral as exemplified by their efforts to date. On August 8, 2024, Britt Roberts, DTFS's Chief Operating Officer of its Canadian operations, received an email from Rupinder Singh, TPine's Vice President of Sales & Operations. Attached to that email was a Receivables Report with regard to TPine's leases of the Vehicles to its lessees. The Receivables Report shows that TPine's lessees of 30 of DTFS's collateral Vehicles are between 90 and 120 days past due in making lease payments

to TPine for a total delinquency of $4,782,186.10.  The Receivables Report also shows that lease

payments due from TPine's lessees on an additional 71 DTFS collateral Vehicles are more than 120

days past due for a total additional delinquency of $14,490,675.24. In total, TPine's lessees are

$19,272,861.34 in default under their leases with TPine as to 101 of DTFS's collateral Vehicles, all

of which is 90 days or more past due. The Receivables Report contains no bucket for receivables

aged beyond "120 +" days.  As such, the true age of the receivables in the "120 + day" bucket of

the Receivables Report is knowable only by TPine. A true and correct copy of the August 8, 2024

email from Rupinder Singh to Britt Roberts and the attached Receivables Report is attached hereto

as **Exhibit "8"** and is incorporated herein by this reference.

24.     Despite the massive and long-standing delinquencies described above, TPine has not

repossessed the Vehicles from its delinquent lessees more than 90 days in default much less

liquidated those Vehicles.

25.     TPine's Receivables Report also shows that TPine's lessees in the United States are

delinquent in making lease payments to TPine at a staggeringly high rate of 38.32%. By contrast,

the delinquency rate of DTFS's small business loan and lease portfolio, company-wide, is only 5.8%

and decreasing. It is apparent from TPine's Receivables Report that TPine is not particularly adept

at collecting its delinquent lease receivables or taking possession of vehicles under leases that are in

serious default.

26.     DTFS has every incentive to obtain the highest and best values from the sale of its

collateral Vehicles before it suffers from further depreciation, as DTFS has very little confidence

there will be a meaningful recovery on any unsecured claim it may have in Debtors' CCAA

proceeding.

27.     The Vehicles are also not necessary to TPine's—or Debtors'—effective reorganization. TPine is not an Applicant in the CCAA proceedings and is not a Debtor in this case. It is simply an entity in whose favor a Court ordered injunction and stay flows. No reorganization of TPine is underway or is in prospect. Since TPine is neither a Debtor in this case nor an Applicant in the CCAA proceeding, TPine's reorganization is not legally possible in either matter.

28.     Debtors' CCAA proceedings in Canada are no longer in a reorganization posture. After expending nearly $36 million in DIP financing since the filing of the CCAA proceedings on March 27, 2024 without producing a viable reorganization plan, Debtors' DIP facility expired on July 31, 2024 and has not been renewed.  At the present time, Debtors have no source of DIP financing and are surviving only because they are diverting cash collateral of their secured lenders to pay their operating expenses.

29.     In its Thirteenth Report to the Canadian Court dated August 8, 2024, the Monitor concluded (1) the Debtors lacked sufficient liquidity to satisfy their working capital requirements and other needs going forward, and (2) Debtors would be unable to satisfy their payroll, operating expenses and professional fees through September 8, 2024 unless Debtors were allowed to apply lease payments and soft collections—that is, the secured creditors' cash collateral—to Debtors' working capital needs.  The collapse of Debtors' CCAA proceedings has been delayed only by the Canadian Court's grant of Debtors' request to divert lease payments and soft collections that are the cash collateral of Debtors' secured lenders to Debtor's use as working capital through September 8, 2024. A true and correct copy of the Monitor's Thirteenth Report to the Canadian Court dated August 8, 2024 is attached hereto as **Exhibit "9"** and is incorporated herein by this reference.

30.     In its Thirteenth Report to the Canadian Court, the Monitor also admitted that as of August 8, 2024: "Given the feedback it has received to date, the Monitor no longer views a going-

concern Restructuring Plan as a feasible option given the lack of stakeholder support for it. Accordingly, the [Debtors] and the CRO, in consultation with the Monitor, intend to continue to move forward with a centralized, coordinated and controlled disposition and wind-up of the remaining [Debtors] assets…and the CRO, in consultation with the Monitor and subject to direction from the Court intends to continue to move forward with a going concern sale or wind-down of the PGL Entities." (Emphasis added.)

31.    On August 9, 2024, the Canadian Court issued an order amending Debtors' Revised Governance Protocol and stated in the Endorsement Slip thereto, "…I direct that the Chief Restructuring Officer and the [Debtors], in consultation with the Monitor, shall immediately engage with the [Debtors'] significant financiers in an effort to develop an orderly wind-down proposal in respect of the [Debtors], including the funding required in respect to such proposal and completion of the CCAA proceedings" (Emphasis added). A true and correct copy of the Canadian Court's August 9, 2024 Order and attached Endorsement Slip is attached hereto as **Exhibit "10"** and is incorporated herein by this reference.

32.    Despite the Canadian Court's August 9, 2024 Order, neither Debtors, Debtors' Chief Restructuring Officer nor Debtors' court-appointed Monitor have taken any meaningful substantive steps to date to engage with DTFS or its other significant equipment lenders regarding a wind-down proposal as ordered.

33.    Having heard nothing from Debtors regarding a wind-down proposal after August 9, 2024, on August 21, 2024 a correspondence was sent to Debtors' and the Monitor's counsel on behalf of Debtors' major equipment lenders, including DTFS.  That correspondence (1) noted that Debtors' equipment lenders had been excluded from the process of formulating a wind-down proposal, (2) requested return of those units of the equipment lenders' vehicle collateral that are not

subject to multiple liens, and (3) requested a meeting with the equipment lenders to discuss Debtor's wind-down.  A true and correct copy of said August 21, 2024 letter is attached hereto as **Exhibit "11"** and is incorporated herein by this reference.

34.    After the CCAA proceedings were filed, it was discovered that Debtors had pledged at least 1839 trucks as collateral to multiple lenders thus leading to situations where Debtors had, in an enormous number of instances, obtained financing from multiple lenders secured by the same truck. These vehicles have been referred to in the CCAA proceedings as the MCV Vehicles. See, 11th Report of Debtor's Monitor attached to the Shivers Declaration as Exhibit "3" at ¶29, pp. 9-12. One vehicle financed by DTFS is an MCV vehicle subject to multiple liens. DTFS is not seeking relief from the injunction and stay as to that Vehicle in this Motion since issues of priority concerning that vehicle have not been resolved.

35.    In response to the above-described August 21, 2024 correspondence, counsel for the Monitor addressed a correspondence to Debtors' creditors stating:

"It is impossible from a band width and cost perspective for the Applicants, the Monitor and the CRO to respond to each motion [for relief from stay] individually or to negotiate separately with each secured lender. The intention is that there will be a single, coordinated response contained in a report of the Monitor and an affidavit of the CRO, which will outline the recommended path forward: an orderly wind-down of the Pride Entities under the direction and supervision of the CRO and the Monitor, considering the interests of employees, customers, lenders and other stakeholders. The Monitor also anticipates that its report will propose a going concern sale of the PGL business. It is the Monitor's intention to communicate with all PGL lenders in advance of the hearing with respect to the benefits of the going concern sale and alternatives available."

36.     In addition, the Monitor indicated in its August 21, 2024 correspondence that it intended to request that the Court extend the period during which Debtors could divert secured creditors' cash collateral lease payments and soft collections from September 8, 2024 to September 30, 2024. The Monitor has now formerly made that request of the Canadian Court.  A true and correct copy of the Monitor's August 23, 2024 letter is attached hereto as **Exhibit "12"** and is incorporated herein by this reference.

37.     Simply put, on August 9, 2024 the Canadian Court ordered Debtors and Debtors' Chief Restructuring Officer to "immediately engage" with Debtors' significant financiers regarding wind-down of Debtors' operations. Debtors ignored that Order and did not engage with Debtors' equipment lenders or involve those lenders in the formulation of a wind-down proposal. Approximately two weeks after Debtors had been ordered to engage, Debtors' major equipment lenders reached out to Debtors to jump start discussions regarding wind-down. Two days later, Debtor's court-appointed Monitor made clear that Debtors would not engage with Debtors' equipment lenders, despite the Canadian Court's Order, and would instead present a unilateral wind-down proposal directly to the Canadian Court without the lenders' input.

38.     TPine did not acquire the Vehicles for its own use.  TPine is a leasing company in the business of leasing trucks and trailers to end users. The Vehicles serve as DTFS's collateral for repayment of TPine's debt to DTFS, as does the stream of lease payments TPine receives from the lease of the Vehicles. For some period of time during the pendency of the CCAA proceedings and these cases, DTFS was receiving a portion of those lease payments as a minimal hedge against the depreciation of its Vehicle collateral.  However, after termination of Debtor's DIP facility in the CCAA proceedings, those lease payments have now all been diverted to Debtors' use to pay Debtors' operating expenses without DTFS's permission. DTFS is presently receiving nothing in the way of

adequate protection or other compensation to offset the diminution of the value of its Vehicle collateral or the Debtors' use of its cash collateral lease payments.

39.    Further, neither TPine nor any other any entity has offered any form of adequate protection or other compensation to DTFS for the diminution of its Vehicle collateral or the use of its cash collateral. Given that Debtors and TPine have no current source of working capital financing, it is evident neither TPine nor Debtors have any realistic ability to provide adequate protection or other compensation to DTFS.

40.    The Vehicles are depreciating assets.  Between April 1 and July 31, 2024, the Vehicles have been depreciating, in the aggregate, at a rate of between 2.5% to 3% of retail replacement value per month.  Based on the JD Power (formerly NADA) online Market Guide, the retail replacement value of the Vehicles is $47,014,000.00. The Vehicles are depreciating at between $1,175,350.00 and $1,410,240.00 per month. Again, DTFS has been offered nothing to offset this depreciation. A true and correct copy of DTFS's historical depreciation analysis along with the JD Power online Market Guide pages on which that analysis is based is attached hereto as **Exhibit "13"** and is incorporated herein by this reference.

41.    TPine, a non-debtor, has had the benefit of the injunction and stay ordered by this Court long enough. DTFS is prepared to take possession of the Vehicles at its own expense and to begin the process of liquidating the Vehicles. DTFS has already demonstrated a proven track record of timely liquidating its collateral vehicles where the Court has previously lifted the injunction and stay.  TPine, on the other hand, is not repossessing Vehicles in instances where its lessees are dramatically past due on lease payments and is not taking reasonable steps to collect past due receivables as exemplified by its 38.32% lease delinquency rate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 29, 2024, in Fort Worth, TX.

_/s/ Korneljia Marinkovik-Shivers_____
KORNELJIA MARINKOVIK-SHIVERS

# Exhibit "2"

| # | Model Year | Make | Model Name | VIN |
|---|---|---|---|---|
| 1 | 2019 | FREIGHTLINER | PT126SLP | 3AKJHHDR4KSKG4272 |
| 2 | 2019 | FREIGHTLINER | PT126SLP | 3AKJHHDR4KSKG4319 |
| 3 | 2019 | FREIGHTLINER | PT126SLP | 3AKJHHDR9KSKG4252 |
| 4 | 2017 | FREIGHTLINER | CA125SLP | 3AKJGLDR3HSHT2157 |
| 5 | 2017 | FREIGHTLINER | CA125SLP | 3AKJGLDR7HSHT2274 |
| 6 | 2020 | FREIGHTLINER | PT126SLP | 1FUJHHDR2LLLA0425 |
| 7 | 2020 | FREIGHTLINER | PT126SLP | 1FUJHHDR3LLLA0420 |
| 8 | 2020 | FREIGHTLINER | PT126SLP | 1FUJHHDR6LLLA0427 |
| 9 | 2020 | FREIGHTLINER | PT126SLP | 1FUJHHDR7LLLA0422 |
| 10 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR3LSKW9176 |
| 11 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR4LSKW9106 |
| 12 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR5LSKW9101 |
| 13 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR5LSKW9132 |
| 14 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR6LSKW9107 |
| 15 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR8LSKW9108 |
| 16 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDRXLSKW9109 |
| 17 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDRXLSKW9157 |
| 18 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR9LSKW9179 |
| 19 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR1MLMJ2154 |
| 20 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR7MLMJ2157 |
| 21 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR7MLMJ2160 |
| 22 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR9MLMJ2158 |
| 23 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR0MLMJ2159 |
| 24 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR0MLMJ2162 |
| 25 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR1MLMJ2168 |
| 26 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR3MLMJ2169 |
| 27 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR4MLMJ2164 |
| 28 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR6MLMJ2165 |
| 29 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR8MLMJ2166 |
| 30 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR9MLMJ2161 |
| 31 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDRXMLMJ2170 |
| 32 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR1LSKW9189 |
| 33 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR1LSKW9242 |
| 34 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR2LSKW9203 |
| 35 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR3LSKW9193 |
| 36 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR3LSKW9243 |
| 37 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR5LSKW9194 |
| 38 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDRXLSKW9191 |
| 39 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDRXLSKW9241 |
| 40 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR2MLMA7394 |
| 41 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR4MLMA7395 |
| 42 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR5MLMA7390 |
| 43 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR6MLMA7396 |
| 44 | 2021 | FREIGHTLINER | PT126SLP | 1FUJHHDR7MLMA7391 |
| 45 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR2LSKU7816 |
| 46 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR8LSKU7819 |
| 47 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR9LSKU7957 |
| 48 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR4LSKU7980 |

| 49 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR5LSKU7969 |
|----|------|--------------|----------|-------------------|
| 50 | 2020 | FREIGHTLINER | PT126SLP | 3AKJHHDR8LSKU7979 |
| 51 | 2021 | FREIGHTLINER | PT126SLP | 3AKJHHDR4MSMY3448 |
| 52 | 2021 | FREIGHTLINER | PT126SLP | 3AKJHHDR5MSMY3460 |
| 53 | 2021 | FREIGHTLINER | PT126SLP | 3AKJHHDR2MSMY3447 |
| 54 | 2021 | FREIGHTLINER | PT126SLP | 3AKJHHDR4MSMY3465 |
| 55 | 2021 | FREIGHTLINER | PT126SLP | 3AKJHHDRXMSMY3454 |
| 56 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR0NSMZ3668 |
| 57 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR1NSMZ3663 |
| 58 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR3NSMZ3681 |
| 59 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR5NSMZ3682 |
| 60 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR8NSMZ3661 |
| 61 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR9NSMZ3667 |
| 62 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR3NSNA6375 |
| 63 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR7NSNA6363 |
| 64 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR0NLMW8717 |
| 65 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR0NLMW8720 |
| 66 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR0NLMW8751 |
| 67 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR1NLMW8757 |
| 68 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR1NLMW8760 |
| 69 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR2NLMW8752 |
| 70 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR4NLMW8753 |
| 71 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR8NLMW8755 |
| 72 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR3NSMW5525 |
| 73 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR5NSMW5526 |
| 74 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR7NSMW5527 |
| 75 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR5NLMW8759 |
| 76 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR0NSNC3358 |
| 77 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR1NSNC3384 |
| 78 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR2NSNC3359 |
| 79 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR2NSNC3393 |
| 80 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR3NSNC3354 |
| 81 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR3NSNC3371 |
| 82 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR5NSNC3369 |
| 83 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR5NSNC3372 |
| 84 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR6NSNC3364 |
| 85 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR6NSNC3395 |
| 86 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR7NSNC3356 |
| 87 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR7NSNC3373 |
| 88 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR7NSNC3390 |
| 89 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR8NSNC3365 |
| 90 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR9NSNC3374 |
| 91 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDRXNSNC3366 |
| 92 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR7NLMW8813 |
| 93 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR2NSNC3443 |
| 94 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR5NSNC3405 |
| 95 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR6NSNC3381 |
| 96 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR6NSNC3400 |
| 97 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR9NSNC3424 |

| 98 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDRXNSNC3397 |
| 99 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR0NLMW8815 |
| 100 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR4NLMW8817 |
| 101 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR4NLMW8820 |
| 102 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR6NLMW8818 |
| 103 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR6NLMW8821 |
| 104 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR8NLMW8819 |
| 105 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR8NLMW8822 |
| 106 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR0NSNC3389 |
| 107 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR1NSNC3417 |
| 108 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR4NSNC3363 |
| 109 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR7NSNC3440 |
| 110 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDRXNSNC3349 |
| 111 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR0NLMW8863 |
| 112 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR0NLMW8913 |
| 113 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR4NLMW8865 |
| 114 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR6NLMW8866 |
| 115 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR7NLMW8861 |
| 116 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR9NLMW8862 |
| 117 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDRXNLMW8868 |
| 118 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR0NSNC3392 |
| 119 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR1NSNC3398 |
| 120 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR3NSNC3368 |
| 121 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR8NSNC3351 |
| 122 | 2019 | FREIGHTLINER | PT126SLP | 3AKJHHDR7KSJX0858 |
| 123 | 2018 | FREIGHTLINER | PT126SLP | 3AKJHHDR9JSJW7121 |
| 124 | 2019 | FREIGHTLINER | PE116DC | 3AKJHTDV1KSKN2844 |
| 125 | 2019 | FREIGHTLINER | PE116DC | 3AKJHTDV8KSKN2842 |
| 126 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR7NLMW8911 |
| 127 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR9NLMW8814 |
| 128 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR9NLMW8912 |
| 129 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR0NSNC3361 |
| 130 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR0NSNC3375 |
| 131 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR0NSNC3408 |
| 132 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR0NSNC3411 |
| 133 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR2NSNC3376 |
| 134 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR4NSNC3377 |
| 135 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR4NSNC3394 |
| 136 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR4NSNC3444 |
| 137 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR6NSNC3445 |
| 138 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR8NSNC3396 |
| 139 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR9NSNC3357 |
| 140 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR9NSNC3391 |
| 141 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDRXNSNC3402 |
| 142 | 2022 | FREIGHTLINER | PT126SLP | 1FUJHHDR6NLMW8916 |
| 143 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR1NSNC3367 |
| 144 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR1NSNC3420 |
| 145 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR2NSNC3362 |
| 146 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR3NSNC3421 |

| 147 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR8NSNC3348 |
|-----|------|--------------|----------|-------------------|
| 148 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDRXNSNC3447 |
| 149 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR4NSNC3427 |
| 150 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR8NSNC3401 |
| 151 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR8NSNC3432 |
| 152 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR5NSNC3419 |
| 153 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR6NSNC3431 |
| 154 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR9NSNC3360 |
| 155 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR9NSNC3438 |
| 156 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR0NSNC3442 |
| 157 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR5NSNC3422 |
| 158 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR5NSNC3436 |
| 159 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR6NSNC3428 |
| 160 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR7NSNC3387 |
| 161 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR7NSNC3423 |
| 162 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR8NSNC3429 |
| 163 | 2023 | FREIGHTLINER | M2106 | 1FVACXFC5PHNU8954 |
| 164 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8463 |
| 165 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8464 |
| 166 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8465 |
| 167 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8467 |
| 168 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8470 |
| 169 | 2023 | FREIGHTLINER | M2106 | 1FVACXFCXPHNU8951 |
| 170 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR1NSNC3403 |
| 171 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8468 |
| 172 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8451 |
| 173 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8459 |
| 174 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8486 |
| 175 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8473 |
| 176 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8487 |
| 177 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8490 |
| 178 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8479 |
| 179 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8457 |
| 180 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8484 |
| 181 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8454 |
| 182 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8448 |
| 183 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8529 |
| 184 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8449 |
| 185 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8446 |
| 186 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8447 |
| 187 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8450 |
| 188 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8456 |
| 189 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8460 |
| 190 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8510 |
| 191 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8458 |
| 192 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8461 |
| 193 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8453 |
| 194 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8520 |
| 195 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8471 |

| 196 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8472 |
|-----|------|--------------|----------|-------------------|
| 197 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8482 |
| 198 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8483 |
| 199 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8499 |
| 200 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8504 |
| 201 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8535 |
| 202 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8505 |
| 203 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8495 |
| 204 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8501 |
| 205 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8491 |
| 206 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8538 |
| 207 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8466 |
| 208 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8497 |
| 209 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8498 |
| 210 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8503 |
| 211 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8551 |
| 212 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8526 |
| 213 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8494 |
| 214 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8527 |
| 215 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8544 |
| 216 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8522 |
| 217 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8555 |
| 218 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8533 |
| 219 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8550 |
| 220 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8614 |
| 221 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8492 |
| 222 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8539 |
| 223 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8548 |
| 224 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8624 |
| 225 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8611 |
| 226 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8553 |
| 227 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8576 |
| 228 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8609 |
| 229 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8604 |
| 230 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8618 |
| 231 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8546 |
| 232 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8630 |
| 233 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8541 |
| 234 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8622 |
| 235 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8508 |
| 236 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8606 |
| 237 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8629 |
| 238 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8512 |
| 239 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8557 |
| 240 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8549 |
| 241 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8566 |
| 242 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8616 |
| 243 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8530 |
| 244 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8558 |

| 245 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8561 |
|-----|------|--------------|----------|-------------------|
| 246 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8514 |
| 247 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8506 |
| 248 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8563 |
| 249 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8605 |
| 250 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8628 |
| 251 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8511 |
| 252 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8565 |
| 253 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8596 |
| 254 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8615 |
| 255 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8493 |
| 256 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8509 |
| 257 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8620 |
| 258 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8528 |
| 259 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8562 |
| 260 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8532 |
| 261 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8474 |
| 262 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8524 |
| 263 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8516 |
| 264 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8564 |
| 265 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8590 |
| 266 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8543 |
| 267 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8591 |
| 268 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8583 |
| 269 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8597 |
| 270 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8602 |
| 271 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8575 |
| 272 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8589 |
| 273 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8625 |
| 274 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8706 |
| 275 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8531 |
| 276 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8688 |
| 277 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8707 |
| 278 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8568 |
| 279 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8697 |
| 280 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8689 |
| 281 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8586 |
| 282 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8636 |
| 283 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8670 |
| 284 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8703 |
| 285 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8502 |
| 286 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8595 |
| 287 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8631 |
| 288 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8659 |
| 289 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8587 |
| 290 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8623 |
| 291 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8579 |
| 292 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8582 |
| 293 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8632 |

| 294 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8686 |
| 295 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8722 |
| 296 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8650 |
| 297 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8664 |
| 298 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8681 |
| 299 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8695 |
| 300 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8642 |
| 301 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8598 |
| 302 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8682 |
| 303 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8696 |
| 304 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8701 |
| 305 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8674 |
| 306 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8691 |
| 307 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8649 |
| 308 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8675 |
| 309 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8692 |
| 310 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8756 |
| 311 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8653 |
| 312 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8720 |
| 313 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8645 |
| 314 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8662 |
| 315 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8693 |
| 316 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8640 |
| 317 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8685 |
| 318 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8704 |
| 319 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8721 |
| 320 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8655 |
| 321 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8669 |
| 322 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8705 |
| 323 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8767 |
| 324 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8678 |
| 325 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8728 |
| 326 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8759 |
| 327 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8639 |
| 328 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8656 |
| 329 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8673 |
| 330 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8687 |
| 331 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8690 |
| 332 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8768 |
| 333 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8665 |
| 334 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8679 |
| 335 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8729 |
| 336 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8657 |
| 337 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8710 |
| 338 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8724 |
| 339 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8769 |
| 340 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8554 |
| 341 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8716 |
| 342 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8725 |

| 343 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8717 |
| 344 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8581 |
| 345 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8676 |
| 346 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8709 |
| 347 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8712 |
| 348 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8726 |
| 349 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8757 |
| 350 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8760 |
| 351 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8699 |
| 352 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8718 |
| 353 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8646 |
| 354 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8663 |
| 355 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8680 |
| 356 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8713 |
| 357 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8727 |
| 358 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8758 |
| 359 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8761 |
| 360 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8672 |
| 361 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8714 |
| 362 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8643 |
| 363 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8684 |
| 364 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8698 |
| 365 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8668 |
| 366 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8633 |
| 367 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8666 |
| 368 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8764 |
| 369 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8647 |
| 370 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8715 |
| 371 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8763 |
| 372 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8711 |
| 373 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8683 |
| 374 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8574 |
| 375 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8834 |
| 376 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR1PSNU8843 |
| 377 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8849 |
| 378 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR2PSNU8852 |
| 379 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8844 |
| 380 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8853 |
| 381 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8838 |
| 382 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8833 |
| 383 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8851 |
| 384 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR3PSNU8830 |
| 385 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR4PSNU8836 |
| 386 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8831 |
| 387 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8837 |
| 388 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8840 |
| 389 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8832 |
| 390 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8846 |
| 391 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR8PSNU8841 |

| 392 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8850 |
| 393 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8842 |
| 394 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR0PSNU8848 |
| 395 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR5PSNU8845 |
| 396 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR9PSNU8847 |
| 397 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDRXPSNU8839 |
| 398 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR6PSNU8854 |
| 399 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR1RSUV2522 |
| 400 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR2RSUV2514 |
| 401 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR3RSUV2523 |
| 402 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR4RSUV2515 |
| 403 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR5RSUV2507 |
| 404 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR5RSUV2510 |
| 405 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR7RSUV2508 |
| 406 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR7RSUV2511 |
| 407 | 2024 | FREIGHTLINER | CA126 | 3AKJHHDR7RSUV2525 |
| 408 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR8RSUV2520 |
| 409 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR9RSUV2509 |
| 410 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR9RSUV2512 |
| 411 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDRXRSUV2518 |
| 412 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDRXRSUV2521 |
| 413 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR0RSUV2513 |
| 414 | 2023 | FREIGHTLINER | PT126SLP | 3AKJHHDR7PSNU8667 |
| 415 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR0RSUV0731 |
| 416 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR1RSUV0737 |
| 417 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR2RSUV0732 |
| 418 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR4RSUV0733 |
| 419 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR5RSUV2524 |
| 420 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR8RSUV0735 |
| 421 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDRXRSUV0736 |
| 422 | 2024 | FREIGHTLINER | M2106 | 3ALACWFCXRDUV3017 |
| 423 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR9RSUV0744 |
| 424 | 2024 | FREIGHTLINER | M2106 | 3ALACWFC1RDUV3021 |
| 425 | 2024 | FREIGHTLINER | M2106 | 3ALACWFCXRDUV3020 |
| 426 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR0RSVA7506 |
| 427 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR1RSUV0740 |
| 428 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR2RSVA7507 |
| 429 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR2RSVA7510 |
| 430 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR3RSUV0738 |
| 431 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR3RSUV0741 |
| 432 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR4RSVA7508 |
| 433 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR5RSUV0742 |
| 434 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR5RSVA7503 |
| 435 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR6RSVA7509 |
| 436 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR7RSVA7504 |
| 437 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR9RSVA7505 |
| 438 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR5RSUV0739 |
| 439 | 2024 | FREIGHTLINER | M2106 | 3ALACWFC5RDUV3023 |
| 440 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDRXRSUZ0122 |

| 441 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDRXRSVA7514 |
| 442 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR1RSVA7515 |
| 443 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR3RSVA7516 |
| 444 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR7RSVA7518 |
| 445 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR7RSVA7521 |
| 446 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR8RSVA7513 |
| 447 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR9RSVA7519 |
| 448 | 2024 | FREIGHTLINER | EP116 | 1FUJH4F71RPUX9521 |
| 449 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR2RSVA7524 |
| 450 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR4RSVA7525 |
| 451 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR6RSVA7526 |
| 452 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR3RSVE2749 |
| 453 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR5RSVA7517 |
| 454 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR1RSVE2748 |
| 455 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDRXRSVE2747 |
| 456 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDRXRSVE2750 |
| 457 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR1RSVE2751 |
| 458 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR3RSVE2752 |
| 459 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR5RSVE2753 |
| 460 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR0RSVF4177 |
| 461 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR0RSVF4180 |
| 462 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR2RSVF4178 |
| 463 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR4RSVF4179 |
| 464 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR5RSVF4174 |
| 465 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR7RSVF4175 |
| 466 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR9RSVF4176 |
| 467 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR4RSVG4436 |
| 468 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR6RSVG4437 |
| 469 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR6RSVG4440 |
| 470 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR8RSVG4438 |
| 471 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDRXRSVG4439 |
| 472 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR1RSUU6526 |
| 473 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR3RSUU6527 |
| 474 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR3RSUU6530 |
| 475 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR4RSUU6519 |
| 476 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR5RSUU6531 |
| 477 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR7RSUU6529 |
| 478 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR2NSMX5933 |
| 479 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR3NSMX5956 |
| 480 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR3NSMX5875 |
| 481 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR4NSMX5996 |
| 482 | 2022 | FREIGHTLINER | PT126SLP | 3AKJHHDR5NSMX5957 |
| 483 | 2021 | FREIGHTLINER | PT126SLP | 3AKJHHDR1MSMH8770 |
| 484 | 2021 | FREIGHTLINER | PT126SLP | 3AKJHHDR1MSMH8977 |
| 485 | 2021 | FREIGHTLINER | PT126SLP | 3AKJHHDR4MSMH8861 |
| 486 | 2021 | FREIGHTLINER | PT126SLP | 3AKJHHDR5MSMH8741 |
| 487 | 2021 | FREIGHTLINER | PT126SLP | 3AKJHHDR5MSMH8934 |
| 488 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR2RSVG4435 |
| 489 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR0RSVH9709 |

| 490 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR0RSVH9712 |
| 491 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR2RSVH9713 |
| 492 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR7RSVH9707 |
| 493 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR7RSVH9710 |
| 494 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR9RSVH9708 |
| 495 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR0RSVJ4590 |
| 496 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR2RSVJ4591 |
| 497 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR4RSVJ4592 |
| 498 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR6RSVJ4593 |
| 499 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR8RSVJ4594 |
| 500 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR2RSVJ4588 |
| 501 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR4RSVJ4589 |
| 502 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR3RSVJ9895 |
| 503 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR4RSVJ9890 |
| 504 | 2024 | FREIGHTLINER | PT126SLP | 3AKJHHDR6RSVJ9891 |

# Exhibit "3"

Court File No. CV-24-00717340-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE** *COMPANIES' CREDITORS*
*ARRANGEMENT ACT***, R.S.C. 1985, c. C-36, AS AMENDED**

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF **PRIDE GROUP HOLDINGS INC.** and
those Applicants listed on **Schedule "A"** hereto

**ELEVENTH REPORT OF THE MONITOR**

**DATED August 2, 2024**

**INTRODUCTION**

1.    On March 27, 2024, Pride Group Holdings Inc. and those entities listed as "Applicants" in **Schedule "A"** hereto (each an "**Applicant**" and, collectively, the "**Applicants**") brought an application (the "**CCAA Application**") before the Ontario Superior Court of Justice (Commercial List) (the "**Court**") under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (the "**CCAA**") to, among other things, obtain a stay of proceedings to allow them an opportunity to restructure their business and affairs.

2.    On the same day, the Court granted an initial order in these CCAA proceedings (the "**CCAA Proceedings**") that, among other things, (i) appointed Ernst & Young Inc. as Monitor (in such capacity, the "**Monitor**"), and (ii) appointed RC Benson Consulting Inc. as Chief Restructuring Officer of the Pride Entities (in such capacity, the "**CRO**"). The Monitor filed a Pre-Filing Report dated March 27, 2024 in connection with the CCAA Application.

3.    In addition to the Applicants, the entities listed as "Limited Partnerships" and "Additional Stay Parties" in **Schedule "A"** hereto also obtained the benefit of the stay of proceedings until and including April 6, 2024, which stay expired the next business day, April 8, 2024 (the "**Stay Period**"). The Applicants together with the Limited Partnerships are referred to

- 2 -

herein as the "**Pride Entities**" (and together with the Additional Stay Parties, the "**Pride Group**").

4.    The comeback hearing was heard on Friday, April 5, 2024 (the "**Comeback Hearing**"), where the Pride Entities sought and obtained an amended and restated initial order (the "**ARIO**"). The Monitor filed its First Report to Court, dated April 4, 2024 (the "**First Report**") in connection with the Comeback Hearing. The ARIO, among other things, extended the Stay Period to June 30, 2024, approved the DIP Term Sheet (as defined in the ARIO) and granted other relief as further described in the First Report.

5.    At the Comeback Hearing, the Court also granted an order approving certain protocols, including the Governance Protocol (as defined in the First Report). The Governance Protocol was approved subject to parties returning to Court on a without prejudice basis on April 19, 2024, for the approval of a revised Governance Protocol (the "**Revised Governance Protocol**"), which was subsequently adjourned to April 25, 2024, on consent. The Monitor filed its Second Report to Court, dated April 24, 2024 (the "**Second Report**") in connection with this April 19, 2024 return date, which was further adjourned to May 15, 2024, on consent, to give the Monitor, the Pride Entities, and the CRO additional time to negotiate the Revised Governance Protocol with affected stakeholders.

6.    The Monitor filed its Supplement to the Second Report to Court on May 6, 2024, to provide information to the Court in respect of ongoing negotiations and terms of the Revised Governance Protocol from the date of the Second Report.

7.    On May 6, 2024, the Pride Entities brought a motion for an approval and vesting order in respect of the sale of certain real property in Bolingbrook, Illinois (the "**Bolingbrook Property**") and to amend and restate the ARIO. The Monitor filed its Third Report to Court, dated May 2, 2024, in connection with such motion. The Court granted orders approving the sale of the Bolingbrook Property and amending and restating the ARIO (the "**Second ARIO**").

8.    On May 5, 2024, the Pride Entities brought a motion, seeking, among other things, (i) an order approving a sale and marketing process for the business, operations, and assets

- 3 -

("**PGL Sale Process**") of Pride Group Logistics Ltd. ("**PGLL**"), Pride Group Logistics USA, Co., Pride Global Insurance Company Ltd.[1] (collectively, the "**PGL Entities**"), and (ii) an approval and vesting order in respect of the sale of certain property in Chehalis, Washington (the "**Chehalis Property**"). The Monitor filed its Fourth Report to Court, dated May 10, 2024, in connection with same.

9.  On May 13, 2024, the Monitor filed its Fifth Report to Court (the "**Fifth Report**"), which provided the Court and stakeholders with an update on the status and ongoing work with respect to: (i) secured facility reviews, (ii) securitization facility reviews, and (iii) the entitlement claims process. On May 15, 2024, the Court granted orders approving, among other things, the PGL Sale Process, the sale of the Chehalis Property, and the Amended and Restated Protocols Order, which included the Revised Governance Protocol.

10. On June 14, 2024, the Pride Entities brought a motion seeking approval of the entitlement claims process (the "**Entitlement Claims Process**"). The Monitor filed its Sixth Report to Court, dated June 13, 2024 (the "**Sixth Report**"), in connection with same. On June 14, 2024, the Court granted an Order approving the Entitlement Claims Process (the "**Entitlement Claims Process Order**").

11. On June 27, 2024, the Pride Entities brought motions seeking (i) the extension of the Stay Period (as defined in the Second ARIO) to and including September 30, 2024, (ii) the entry of a consent order authorizing Regions Equipment Finance Corporation ("**REFCO**") and Regions Commercial Equipment Finance, LLC ("**RCEF**", and together with REFCO, "**Regions Equipment Finance**") to sell certain vehicles surrendered to Regions Equipment Finance pre-filing, and (iii) the entry of a consent order authorizing Daimler Truck Financial Services Canada Corporation ("**DTF Canada**") and Daimler Truck Financial Services USA LLC ("**DTF US**", and together with DTF Canada, "**Daimler**") to sell certain vehicles surrendered to Daimler pre-filing. The Monitor filed its Seventh Report to Court, dated June 26, 2024 in connection with these motions. On June 27, 2024, the Court granted the order extending the Stay Period as well as the consent orders referred to above.

---

[1] Pride Global Insurance Company Ltd. is not an Applicant in these CCAA Proceedings and is an Additional Stay Party as listed in Schedule "A" to the Second ARIO.

- 4 -

12.  On July 3, 2024, the Pride Entities brought a motion seeking (i) an order approving the amendment and extension of the Fourth Amended and Restated Credit Agreement executed on May 10, 2024 ("**FARCA**"), and (ii) the entry of a consent order authorizing VFS Canada Inc. ("**VFS Canada**") and VFS U.S. LLC ("**VFS US**", and together with VFS Canada, "**VFS**") to sell certain vehicles surrendered to VFS pre-filing. The Monitor filed its Eighth Report to the Court, dated July 2, 2024 (the "**Eighth Report**") in connection with this motion. On July 3, 2024, the Court granted the orders referred to above.

13.  On July 16, 2024, the Pride Entities brought a motion seeking, among other things, (i) entry of an order in respect of certain unreturned collateral financed by Regions Equipment Finance, (ii) an order approving the distribution of net proceeds of sale of the Chehalis Property to Roynat Inc., and (iii) an order approving a transaction contemplated by a factoring portfolio purchase agreement (the "**Factoring Transaction**") between TPine Financial Services Inc., as vendor, and J D Factors Corporation / Corporation D'affacturage J D, as purchaser. The Monitor filed its Ninth Report to Court, dated July 13, 2024, in connection with same. Separately, the Monitor filed a Supplement to the Ninth Report of the Monitor on July 15, 2024 (the "**Supplement to the Ninth Report**"), which Supplement to the Ninth Report included an update on the Monitor's review of the Securitization Programs. On July 16, 2024, the Court granted the orders referred to in points (i) and (ii) above. The motion seeking the approval of the Factoring Transaction was adjourned until August 7, 2024.

14.  On July 21, 2024, the Pride Entities brought a motion seeking, among other things, (i) an order respecting the transition and relinquishment of servicing and other duties under certain Securitization Programs where the outcome of the Monitor's proprietary interest assessment with respect to an applicable Securitization Party's ownership entitlement to such assets is favourable, and (ii) set out the terms and conditions upon which such turn-over may occur.  The Monitor filed its Tenth Report to Court, dated July 21, 2024 (the "**Tenth Report**"), in connection with same, which Tenth Report included the Monitor's recommendations with respect to certain of the Securitization Programs.

- 5 -

15.    This report (the "**Eleventh Report**") should be read in conjunction with the Fifth Report, the Sixth Report, the Eighth Report, the Supplement to the Ninth Report and the Tenth Report for additional background and information.

**TERMS OF REFERENCE**

16.    In preparing this Eleventh Report and making the comments herein, the Monitor has been provided with, and has relied upon, unaudited financial information, books and records prepared by the Applicants, discussions with management of the Applicants ("**Management**"), and information from other third-party sources, including Financiers and personal property security registries (collectively, the "**Information**"). In its preparation of this Eleventh Report the Monitor has reviewed the Information for reasonableness, internal consistency and use in the context in which it was provided. However, the Monitor has not audited or otherwise attempted to verify the accuracy or completeness of such Information in a manner that would wholly or partially comply with Canadian Auditing Standards ("**CAS**") pursuant to the Chartered Professional Accountants Canada Handbook and, accordingly, the Monitor expresses no opinion or other form of assurance contemplated under CAS in respect of the Information.

17.    Unless otherwise indicated, the Monitor's understanding of factual matters expressed in this Eleventh Report concerning the Pride Group and their business is based on the Information, and not independent factual determinations made by the Monitor.

18.    Capitalized terms not otherwise defined herein have the meaning given to them in the Fifth Report or Second ARIO, as applicable.

**PURPOSE**

19.    The purpose of this Eleventh Report is to provide the Court with information pertaining to the Monitor's security review of the security interests asserted by Secured Creditors (as defined below), including, but not limited to, the Monitor's view as to whether each Secured Creditor has provided sufficient evidence of a perfected and priority interest in specific vehicles (and leases thereof) identified and tracked by vehicle identification

- 6 -

numbers or "**VINs**" which are owned by the Pride Entities (with the exception of Multiple Collateral Vehicles, which are subject to the Entitlement Claims Process).

## OVERVIEW: REPORT ON SECURITY REVIEW

20.     As at the date of this Eleventh Report, the Pride Entities have or administer a fleet of many thousand trucks and trailers, the majority of which is inventory leased to customers (and of which approximately 39% is subject to secured interests and approximately 61% is subject to Securitization Programs). At any given time, these vehicles (identified and tracked by VINs) are located across Canada and the United States. While some leased vehicles have been repossessed and remain within the possession of the Pride Group, the majority of the fleet is constantly in transit.

21.     As discussed in the Fifth Report, in Canada and the United States, the Monitor's Canadian and U.S. counsel has reviewed approximately 18,500 pages of raw security search results disclosing approximately 1,430 individual lien registrations (pursuant to centralized filings by or in respect of a named debtor under applicable law) by in excess of 170 different iterations of potential secured creditors (excluding Securitization Parties, each, a "**Secured Creditor**" and collectively, the "**Secured Creditors**").

22.     Since the commencement of these CCAA Proceedings, the Pride Entities and the Monitor have received numerous and frequent requests from Secured Creditors and Securitization Parties, among other things, (i) asserting security or ownership interests in equipment, inventory and leases related thereto together with proceeds thereof ("**Inventory or Equipment**"), (ii) demanding the return of Inventory or Equipment which they assert is their collateral or property, (iii) asserting consent rights over the disposition of Inventory or Equipment, (iv) demanding that proceeds from the sale of Inventory or Equipment be remitted to them, and/or (v) asserting other remedies or rights available to secured lenders and/or owners. Additionally, a number of these Secured Creditors and Securitization Parties have brought or have indicated that they intend to bring, motions seeking the foregoing relief.

- 7 -

23.     Pursuant to the Second ARIO, the Monitor was directed and empowered to assist the Pride Entities and the Court in assessing the validity, enforceability and relative priority of any security, ownership or other interest which any person (including a Secured Creditor) may assert in or to any property, including property purportedly pledged to Secured Creditors (the "**Validation Mandate**"). In discharging the Validation Mandate, immediately following its appointment, the Monitor instructed its Canadian counsel to begin a review of Canadian assets and other property subject to Canadian law governed security documents. The Monitor also engaged U.S. counsel to review security governed by U.S. law.[2]

24.     Accordingly, a review by the Monitor of conventional personal property security of the Secured Creditors as well as the Securitization Programs of the Securitization Parties is a critical step in these CCAA Proceedings, which will facilitate a determination as to the appropriate manner in which the Inventory or Equipment and other personal property that is subject to these CCAA Proceedings should be dealt with. As reiterated in prior reports, there must be a transparent and objective process to determine entitlement which ensures that all parties of interest are being treated in a fair and even manner, have an opportunity to raise concerns with the proposed treatment of any Inventory or Equipment in which they assert an interest and, ultimately, that no one party is prejudiced by the rights sought to be exercised by another. Furthermore and importantly, such a review directly relates to the identification of assets and collateral in respect of which the DIP Lenders' Charge may be subordinate to the validly perfected and priority interests of other Secured Creditors.

25.     In the Fifth and Sixth Reports, the Monitor disclosed to the Court and all the stakeholders the process by which it would review and make findings as to the validity and priority of the security interests of the Secured Creditors. To ensure that the Monitor's counsel was reviewing the most accurate and compete loan and security documents for each potential Secured Creditor, counsel to the Monitor and counsel to the Pride Entities have, since May 2024, sent numerous formal requests for information to each Secured Creditor, including

---

[2] U.S. counsel has assumed for the purposes of its review, the enforcement by the Court of all choice of law provisions of the documents reviewed by U.S. counsel and the application of U.S. laws, including all applicable Uniform Commercial Codes and mandatory choice of law provisions therein and motor vehicle laws and regulations of the States of the United States in which VINs are titled or any debtor is located as provided in such laws.

- 8 -

requests that they provide all relevant debt and security documents for the Monitor's review.

26.    Additionally, following delivery of the Summaries (as defined in the Sixth Report) and the "Monitor's Database" (as defined in the Entitlement Claims Process Order) to Secured Creditors, counsel to the Monitor has (i) made in excess of 30 separate additional requests for information and or documents, including documents evidencing "Purchase Money Security Interests" and other required notifications, releases, subordination agreements, estoppels, no-interest letters, acknowledgments or information concerning deemed or constructive notifications or acknowledgments with respect thereto (each, an "**Acknowledgment**"), (ii) frequently and periodically received additional documentation and information from Secured Creditors and their counsel, and (iii) responded to numerous inquiries from various Secured Creditors and their counsel relating to the Monitor's Database and the Validation Mandate, including seeking information in respect of individual VINs.

27.    As of the date of this Eleventh Report, the Monitor's review has involved a review of security interests asserted by Secured Creditors in more than 26,195 VINs[3] in 34 unique financing facilities and in excess of 2,300 loan and security agreements and various Acknowledgments.

28.    The extraordinary volume of the documentation and magnitude of the Monitor's review of the interests asserted by each Secured Creditor, is illustrated below. This extensive review has been complicated, time consuming and critical to the fair and orderly conduct of these CCAA Proceedings for the benefit of all stakeholders.

29.    Based on the information and documents received through July 31, 2024[4] and subject to the qualifications, limitations and assumptions in the Security Opinions (as defined below),

---

[3] As noted below, the actual number of VINs which are, as at the date of this Eleventh Report, reflected in the books and records of the Pride Group as currently being owned by them and in their fleet is approximately 24,377.

[4] As noted in paragraph 10 of the Entitlement Claims Process Order, any dispute with the VIN information contained in the Monitor's Database had to be lodged with the Monitor on or before July 11, 2024. The information of interests asserted by Secured Creditors in VINs used to complete the below table is current as of July 11, 2024 other than taking into account any specific information the Monitor has received from a Financier since such date that such Financier is not claiming an interest in a specific VIN.

- 9 -

the Summaries and security memoranda delivered to the Monitor by its counsel in connection with same (as the same are supplemented from time to time), the Explanatory Note (as defined below) and herein[5], the following table summarizes, by Secured Creditor, the Monitor's best view on validity and priority of such the security interest asserted by the named Secured Creditor in respect of VINs (other than Multiple Collateral Vehicles which are not dealt with below)[6]:

| Secured Creditor[7] | Number of VINs in which security interest is asserted[8] | Number of VINs where Secured Creditor has provided sufficient evidence of a perfected security interest and priority | Number of VINs where Secured Creditor has not provided sufficient evidence of a perfected security interest and priority | Number of Applicable Multiple Collateral Vehicles[9] |
|---|---|---|---|---|
| Canada | | | | |
| Audi Mississauga Airport d/b/a Audi of Mississauga ("Audi Mississauga") | 1 | 0 | 1 | 0 |

---

[5] It is noted that 2 key assumptions of the Monitor and its counsel are that (i) each Pride Entity which is party to a security agreement and identified as a debtor (or otherwise as the relevant counterparty to any such arrangement) in respect of a particular VIN (or group of VINs) on a schedule accompanying such security agreement (or in the noted Summaries or other security memoranda) had title to each such VIN at the time that it granted a security interest to that applicable Secured Creditor and continues to own each such VIN or VINs, and (ii) in the U.S., no lienholder other than the Secured Creditor that has been granted a security interest under a security agreement appears as a lienholder on any certificate of title issued with respect to such VIN. The Pride Entities are presently in the process of confirming the foregoing assumptions and, as of July 17, 2024, have been able to provide such confirmation for approximately 13,000 VINs, as detailed in the Monitor's Database. As this is a labour intensive and costly exercise requiring review of title for each VIN, this process is ongoing. It is also noted that in a small number of instances, certificates of titles for TPine Leasing Capital L.P. include additional suffixes and/or letters (i.e., "Inc."), and it is assumed that such certificates of title are intended to refer to TPine Leasing Capital L.P. as titleholder.

[6] In undertaking its review, the Monitor and the Monitor's counsel (i) have not considered or provided any view as to the potential validity or quantum of any non-Secured Creditor priority liens (i.e. statutory, judgment or other liens arising by operation of law) which may be applicable in the circumstances, and (ii) have assumed that notwithstanding the existence of certain security registrations by Pride Entities as against other Pride Entities, they do not have any validly perfected security interests, as the Monitor and its counsel have requested but have not received from the Pride Entities, any documents or information to evidence same. Nothing herein or below is intended to extend to or otherwise replace the process for determination of entitlement to Multiple Collateral Vehicles that is set out in the Entitlement Claims Process Order.

[7] Where a Secured Creditor is not listed, it is because it has not provided any loan or security documentation, nor has it asserted a security interest in any VINs.

[8] These figures include VINs in respect of which a claim has been asserted or registered but which VINs are not reflected in the books and records of the Pride Group as currently being owned by them and in their fleet.

[9] This is the total number of Multiple Collateral Vehicles with respect to all Secured Creditors. Accordingly, there is inherent double counting (i.e. where 1 MCV impacts 2 Secured Creditors, the MCV is counted twice). The total number of MCVs, without duplication, is set out at paragraph 37.

- 10 -

| Secured Creditor[7] | Number of VINs in which security interest is asserted[8] | Number of VINs where Secured Creditor has provided sufficient evidence of a perfected security interest and priority | Number of VINs where Secured Creditor has not provided sufficient evidence of a perfected security interest and priority | Number of Applicable Multiple Collateral Vehicles[9] |
|---|---|---|---|---|
| Bank of Montreal ("BMO") | 79 | 51 | 0 | 28 |
| Bank of Nova Scotia ("BNS") | 332 | 303 | 5 | 24 |
| Bennington Financial Corp. ("Bennington")[10] | 1,574 | 603 | 602 | 369 |
| Canadian Western Bank ("CWB") | 20 | 20 | 0 | 0 |
| CWB Maxium Financial Inc. ("CWB Maxium") | 266 | 262 | 0 | 4 |
| Coast Capital Equipment Finance Ltd. and Travellers Leasing Ltd. (collectively, "Coast") | 21 | 21 | 0 | 0 |
| Concentra Bank ("Concentra") | 12 | 12 | 0 | 0 |
| Daimler Truck Financial Services Canada Corporation | 1,198 | 1,180 | 18 | 0 |
| De Lage Landen Financial Services Canada Inc. ("De Lage") | 23 | 23 | 0 | 0 |
| Ford Credit Canada Company ("Ford") | 4 | 0 | 4 | 0 |
| GM Financial Canada Leasing Ltd. ("GM") | 2 | 0 | 2 | 0 |
| HSBC Bank Canada ("HSBC") | 299 | 235 | 49 | 15 |
| Mercedes-Benz Financial Services Canada Corporation ("Mercedes") | 1 | 1 | 0 | 0 |
| Meridian OneCap Credit Corp. ("Meridian") | 15 | 11 | 3 | 1 |
| Mitsubishi HC Capital Canada, Inc. and Mitsubishi HC Capital America, Inc. (collectively, "Mitsubishi Canada")[11] | 278 | 262 | 0 | 16 |
| Paccar Financial Ltd. ("PACCAR Canada") | 106 | 96 | 0 | 10 |

[10] This number includes leases (identified by reference to applicable VIN) which Bennington has indicated are "inactive" leases (i.e. no longer valid). The difference between the 1,574 VINs referenced herein and the 1,406 VINs referenced in the Tenth Report are 168 VINs listed as Multiple Collateral Vehicles which are in respect of "inactive" leases.

[11] Mitsubishi Canada and Mitsubishi US, as referred to in this Eleventh Report, are in reference to their capacity as Secured Creditor under Floorplan and Security Agreements dated as of June 5, 2018 and March 23, 2023. These entities are also party to a Securitization Program which is discussed in the Tenth Report and not dealt with in this Eleventh Report.

- 11 -

| Secured Creditor[7] | Number of VINs in which security interest is asserted[8] | Number of VINs where Secured Creditor has provided sufficient evidence of a perfected security interest and priority | Number of VINs where Secured Creditor has not provided sufficient evidence of a perfected security interest and priority | Number of Applicable Multiple Collateral Vehicles[9] |
|---|---|---|---|---|
| Royal Bank of Canada[12] ("FARCA Administrative Agent") | 3,392 | 2,607 | 0 | 785 |
| Royal Bank of Canada[13] ("RBC Bilat") | 587 | 0 | 587 | 0 |
| TD Equipment Finance Canada ("TD Equipment") | 436 | 379 | 31 | 26 |
| VFS Canada Inc. | 122 | 82 | 2 | 38 |
| Total | 8,768 | 6,148 | 1,304 | 1,316 |
| **United States** | | | | |
| BMO Harris Bank N.A. ("BMO Harris") | 420 | 58 | 339 | 23 |
| Daimler Truck Financial Services USA LLC | 650 | 648 | 1 | 1 |
| First American Commercial Bancorp, Inc. ("First American") | 138 | 3 | 83 | 52 |
| Flagstar Financial & Leasing, LLC ("Flagstar") | 82 | 56 | 8 | 18 |
| PACCAR Financial Corp. ("PACCAR US") | 287 | 242 | 31 | 14 |
| Mitsubishi HC Capital America Inc. ("Mitsubishi US") | 1,379 | 916 | 148 | 315 |
| M&T Capital and Leasing Corporation ("M&T") | 7 | 4 | 2 | 1 |
| Republic Bank of Chicago ("RBOC") | 34 | 24 | 2 | 8 |
| Regions Commercial Equipment Finance, LLC | 244 | 227 | 13 | 4 |
| Stoughton Trailers Canada Corp. ("Stoughton") | 11 | 0 | 7 | 4 |
| TBK Bank, SSB ("TBK") | 369 | 0 | 364 | 5 |
| VFS U.S. LLC | 243 | 112 | 54 | 77 |

[12] These are specific VINs that were financed by Pride Entities pursuant to a floorplan facility and a lease line facility provided for under the FARCA. As these VINs were specifically financed VINs, they are subject to the Entitlement Claims Process.

[13] The "RBC Bilat" facility is not related to the FARCA Administrative Agent financing arrangements. These VINs are in connection with: (i) the master lease agreement dated as of January 5, 2021 between Royal Bank of Canada and TLCC (as defined below) and the associated leasing schedules, and (ii) 6 conditional sales contracts dated as of August 1, 2019, August 26, 2019, December 17, 2019, April 20, 2020, June 8, 2020 and September 9, 2020, respectively, between TPine Truck Rental Inc., as seller, and TLCC, as purchaser, as assigned by TPine Truck Rental Inc. to the Royal Bank of Canada.

- 12 -

| Secured Creditor[7] | Number of VINs in which security interest is asserted[8] | Number of VINs where Secured Creditor has provided sufficient evidence of a perfected security interest and priority | Number of VINs where Secured Creditor has not provided sufficient evidence of a perfected security interest and priority | Number of Applicable Multiple Collateral Vehicles[9] |
|---|---|---|---|---|
| Webster Capital Finance, Inc. ("Webster") | 13 | 0 | 12 | 1 |
| Total | 3,877 | 2,290 | 1,064 | 523 |

## SECURITY REVIEW & VIEWS ON PRIORITY

### *Review of Syndicate Lenders' Pre-Filing Security*

30.     As required by and in satisfaction of the DIP Term Sheet and the FARCA, a review of the Syndicate Lenders' (as defined in the First Report) pre-filing security was completed on a priority basis and the Monitor was provided with written opinions from Canadian and U.S. counsel (collectively, the "**Security Opinions**"), that subject to the qualifications and assumptions set out therein, (i) the personal property security granted by certain of the Pride Group entities to the Administrative Agent under the FARCA constitutes a valid security interest in the collateral specified therein and enforceable in accordance with its terms, and (ii) the Canadian and U.S. real property security granted by certain of the Pride Group entities to the Administrative Agent under the FARCA constitutes a valid security interest in the real property specified therein and enforceable in accordance with its terms.

### *Monitor's Database, Missing VINs & Multiple Collateral Vehicles*

31.     The Monitor's Database was established by the Monitor to include the VIN information of the Pride Entities' trucks, trailers or other motor vehicles in respect of which Financiers (being Secured Creditors and Securitization Parties) assert or have registered competing claims pursuant to a specific security or securitization document. The purpose of the Monitor's Database was to, among other things, (i) provide Financiers with a centralized source of information on all of the Pride Entities' VINs, (ii) provide a mechanism to

- 13 -

identify Multiple Collateral Vehicles, and (iii) help facilitate the processes and objectives set out in the Entitlement Claims Process Order. [14]

32.    Between June 11, 2024 and June 13, 2024, the Monitor's Canadian and U.S. counsel provided to each Securitization Party and Secured Creditor who has provided loan and security documents to the Monitor's Canadian or U.S. counsel, access to the Monitor's Database together with the Explanatory Note and FAQ regarding the Monitor's Database (the "**Explanatory Note**").  A copy of the Explanatory Note is included on **Appendix "1"** hereto.

33.    The Monitor's Database current as of June 14, 2024, as referenced in paragraph 10 of the Entitlement Claims Process Order, along with a version current as of June 24, 2024 (given the receipt of additional information from Financiers between June 15 and June 24, 2024) was circulated in accordance with the Entitlement Claims Process Order on June 26, 2024. In accordance with paragraph 10 of the Entitlement Claims Process Order, any dispute with the VIN information contained therein had to be lodged with the Monitor on or before July 11, 2024.[15]

34.    Since that time, the Monitor's Canadian and U.S. counsel have received additional information and in excess of 150 additional documents from Secured Creditors and have held numerous meetings with Secured Creditors and their counsel relating to the Summaries, the Monitor's Database and the Monitor's Validation Mandate.  Pursuant to the Entitlement Claims Process Order, (i) Secured Creditors may also request the Monitor to provide any loan and security or securitization documentation provided to it by any other

---

[14] As set out in greater detail at footnote 15 below, the Entitlement Claims Process Order only addresses Multiple Collateral Vehicles, being those <u>specific</u> VINs that are the subject of more than one asserted or registered claim and is not intended to govern the process for determination of general security claims such as those of the DIP Lenders and Syndicate Lenders over all personal property, including motor vehicles.

[15] The Monitor notes that it has been advised by certain Secured Creditors that in their view, the Entitlement Claims Process Order required general secured creditors, being those which have been granted a general security interest from the Pride Entities (including the Syndicate Lenders and DIP Lenders) to also lodge any disputes with the Monitor in respect of the information contained in the Monitor's Database by July 11, 2024. In the Monitor's view, this is not accurate or intended by the Entitlement Claims Process. In this regard, the Monitor notes that the Entitlement Claims Process defines "Multiple Collateral Vehicles" being those <u>specific</u> VINs that are the subject of more than one asserted or registered claim and is not intended to govern the process for determination of the validity and priority of general security interests.  Additionally, the Explanatory Note which accompanied the Monitor's Database lists "all asset" and similar registrations and expressly provides that the Monitor's Database does not take them into account.

- 14 -

Financier who, based on the Monitor's Database, appears to have a competing claim in any Multiple Collateral Vehicles, and (ii) any Financier whose documentation is being requested may elect to redact certain financial terms within 4 Business Days' of receiving a notice of request for disclosure from the Monitor. As of July 31, 2024, the Monitor has received and processed requests for documentation from 9 Financiers, which relates to documentation requested on over 50 separate occasions from 23 competing financing facilities.

35.    The Monitor's counsel has reviewed the additional information and documents received to date and updated the Monitor's Database, which can be found at the following URL: https://blakes.sharefile.com/public/share/web-s7b13b600f8424c0980ebd1cb59c70bd3

36.    As detailed within the Monitor's Database with the notation "No" under the column "On Pride's Records", there are approximately 2,876 VINs in which Financiers have asserted an interest, but which are not reflected as currently being owned by the Pride Entities and in their fleet. The Monitor understands that this is the result of such VINs (i) having never been acquired by the Pride Entities, (ii) having been disposed of by the Pride Entities, or (iii) having been voluntarily surrendered by the Pride Entities to Financiers prior to the commencement of these CCAA Proceedings.

37.    As further detailed within the Monitor's Database, 1,798[16] VINs comprise Multiple Collateral Vehicles. A stand-alone list of all such Multiple Collateral Vehicles, current as at July 31, 2024, with the applicable Financiers asserting an interest therein is set out in **Appendix "2"** (the "**MCV List**")[17].

*Monitor's Views on Validity and Priority of Security Interests*

38.    Based on the information and documents received to date and subject to the qualifications, limitations and assumptions in the Security Opinions, the Summaries and security

---

[16] This is the total number of Multiple Collateral Vehicles, including those that are subject to claims by Securitization Parties but excluding any duplication (i.e. where 1 MCV impacts 2 Financiers, the MCV is only counted once). This total number includes reference to VINS (identified on the Monitor's Database) which are not reflected in the books and records of the Pride Group as currently being owned by them.
[17] Certain Financiers provided additional claims to VINs following the July 11, 2024 deadline and such VINs are identified on the MCV List.

- 15 -

memoranda delivered to the Monitor by its counsel in connection with same, the Explanatory Note and herein, the Monitor's best view on perfection and priority of the security interests of each Secured Creditor identified below follows.

<u>Canada</u>

(a)     Audi Mississauga

    (i)     Audi Mississauga has asserted an interest in 1 VIN (the "**Audi Mississauga Asserted VIN**"), as detailed in the Monitor's Database.

    (ii)    The Monitor is of the view that Audi Mississauga has not provided sufficient evidence of a perfected and priority interest in the Audi Mississauga Asserted VIN, which is listed on **Appendix "3"**.

    (iii)   The Monitor is of the view that the Audi Mississauga Asserted VIN is not a Multiple Collateral Vehicle.

(b)     BMO

    (i)     BMO has asserted an interest in 79 VINs (the "**BMO Asserted VINs**"), as detailed in the Monitor's Database.

    (ii)    Out of the BMO Asserted VINs, the Monitor is of the view that BMO has provided sufficient evidence of a perfected and priority interest in 51 VINs, which are listed on **Appendix "4"**.

    (iii)   Out of the BMO Asserted VINs, the Monitor is of the view that 28 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

(c)     BNS

    (i)     BNS has asserted an interest in 332 VINs (the "**BNS Asserted VINs**"), as detailed in the Monitor's Database.

- 16 -

(ii)   Out of the BNS Asserted VINs, the Monitor is of the view that BNS has provided sufficient evidence of a perfected and priority interest in 303 VINs, which are listed on **Appendix "5A"**.

(iii)  Out of the BNS Asserted VINs, the Monitor is of the view that BNS has not provided sufficient evidence of a perfected and priority interest in 5 VINs, which are listed on **Appendix "5B"**.

(iv)   Out of the BNS Asserted VINs, the Monitor is of the view that 24 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

(d)   Bennington (*Securitization Party*)

(i)    As set out in greater detail at paragraph 29 of the Tenth Report, based on Best Available Information (as defined in the Tenth Report), a total of 1,406 leases and related vehicles or equipment (the "**Bennington Subject Assets**") are claimed under Bennington Securitization Program documents.

(ii)   As further set out in paragraph 72 of the Tenth Report, the Monitor has not been able to confidently form a view, based on Best Available Information, as to whether the Tranches (as defined in the Tenth Report) under Bennington's Securitization Program would most likely be characterized as "true sales".

(iii)  Based on Best Available Information and the Bennington Securitization Program documents, the Monitor understands that, since prior to the commencement of the CCAA Proceedings, (a) Bennington has been performing and continues to perform certain servicing activities with respect to the Bennington Subject Assets, including the collection of payments under the leases included in the Bennington Subject Assets that are paid by pre-authorized payment, and (b) TPine Leasing Capital Corporation ("**TLCC**") is responsible for the balance of the servicing with respect to the Bennington Subject Assets.

- 17 -

(iv)    Since the Monitor has not been able to confidently come to a determination as to ownership, the Monitor has also considered whether, in the event that the Court were to ultimately find that (i) Bennington has not acquired an ownership interest in the Bennington Subject Assets and (ii) in the alternative, the Bennington Securitization Program ought to be recharacterized as a loan to TLCC with a corresponding security interest granted in favour of Bennington, in such case, the Monitor would view such security interest as being a perfected and priority interest.

(v)    In this scenario:

(1)    The Monitor is of the view that Bennington has provided sufficient evidence of a perfected and priority security interest in the Bennington Subject Assets constituting "equipment", "accounts" or "motor vehicles" (in each case, as defined in the *Personal Property Security Act* (Ontario)) ("**Ontario PPSA**") listed in **Appendix 6A** and identified by reference to the VIN of the corresponding leased equipment or vehicle. Such Bennington Subject Assets include the leases, which are described in the Bennington Securitization Program (as defined in the Tenth Report) documents as "Security Agreements". There are 603 VINs listed in **Appendix 6A**; and

(2)    The Monitor is of the view that Bennington has not provided sufficient evidence of a priority security interest in the Bennington Subject Assets constituting "equipment", "accounts" or "motor vehicles" listed in **Appendix 6B** and identified by reference to the VIN of the corresponding leased equipment or vehicle. There are 602 VINs listed in **Appendix 6B**.

(3)    The Monitor is of the view that Bennington has not provided sufficient evidence of a perfected security interest in the Bennington Subject Assets constituting "inventory" (as defined in the Ontario PPSA). Given the Monitor's understanding that all of the underlying

- 18 -

vehicles which are included in the Bennington Subject Assets are leased (rather than operated by the relevant Pride Entities), these vehicles would be considered "inventory" and not subject to a perfected and priority interest of Bennington.[18] However, to the extent that Bennington does in fact have a perfected and priority interest in leases included in the Bennington Subject Assets, Bennington would be able to effectively exercise TLCC's rights under such leases, including any of TLCC's rights to repossess from lessees and sell the subject vehicles and apply the proceeds therefrom as provided under the applicable lease.

(vi)    Out of the Bennington Subject Assets, the Monitor is of the view that 369 are or are in respect of Multiple Collateral Vehicles, as detailed in the MCV List.

(e)    CWB

(i)    CWB has asserted an interest in 20 VINs (the "**CWB Asserted VINs**"), as detailed in the Monitor's Database.

(ii)    Out of the CWB Asserted VINs, the Monitor is of the view that CWB has provided sufficient evidence of a perfected and priority interest in all 20 CWB Asserted VINs, which are listed on **Appendix "7"**.

(iii)    The Monitor is of the view that none of the CWB Asserted VINs are Multiple Collateral Vehicles.

(f)    CWB Maxium (*Securitization Party*)

(i)    As set out in the Tenth Report, the Monitor has been able to validate, based on Best Available Information (as defined in the Tenth Report), that CWB Maxium most likely acquired an ownership interest in amounts payable

---

[18] The Monitor notes that counsel to Bennington has advised that Bennington continues to work with the Pride Entities to locate Acknowledgments which would effect the Monitor's views in respect of such Bennington Subject Assets.

- 19 -

(other than certain excluded amounts) under each lease set out in Appendix "A-3, Part I" of the Tenth Report (identified by reference to the VIN of the corresponding leased equipment or vehicle), including the rights of TLCC under such lease to demand, collect and otherwise enforce payment of such payments.  There are 266 VINs subject to such leases listed in Appendix "A-3, Part I". The CWB Maxium Securitization Program documents do not purport to sell TLCC's interest in the lease agreements and underlying vehicles, to CWB Maxium.

(ii)     The documents for the CWB Securitization Program (as defined in the Tenth Report) provide that, in addition to the ownership interests in the payments under the leases, CWB Maxium has a security interest, not a property interest, in TLCC's continuing interest in corresponding lease agreements and underlying vehicles or equipment (the "**CWB Maxium Underlying Assets**").  Accordingly, the Monitor has also considered whether, in its view, such security interest is a perfected and priority interest.

(iii)    The Monitor is of the view that CWB Maxium has provided sufficient evidence of a perfected and priority security interest in all but 4 CWB Maxium Underlying Assets, which are listed in **Appendix 8** and identified by reference to the VIN of the corresponding leased equipment or vehicle.

(iv)     Out of the 4 remaining CWB Maxium Underlying Assets, the Monitor is of the view that all of them are in respect of Multiple Collateral Vehicles, as detailed in the MCV List.

(v)      Since the date of the Tenth Report, the Monitor has been advised by the Pride Entities that up to 20 of the vehicles comprising CWB Maxium Underlying Assets have been repossessed and are currently in the possession of the Pride Entities (together with any other vehicles comprising CWB Maxium Underlying Assets which may be repossessed from time to time, the "**Repossessed CWB Maxium Vehicles**"). As the

- 20 -

Monitor has not been able to validate, based on Best Available Information, that CWB Maxium most likely acquired an ownership interest in the Repossessed CWB Maxium Vehicles themselves, it cannot recommend the Turn-Over of the Repossessed CWB Maxium Vehicles to CWB Maxium at this time, as contemplated for other securitized assets in the Tenth Report.

(g)    Coast

    (i)    Coast has asserted an interest in 21 VINs (the "**Coast Asserted VINs**"), as detailed in the Monitor's Database.

    (ii)    Out of the Coast Asserted VINs, the Monitor is of the view that Coast has provided sufficient evidence of a perfected and priority interest in all 21 Coast Asserted VINs, which are listed on **Appendix "9"**.

    (iii)    The Monitor is of the view that none of the Coast Asserted VINs are Multiple Collateral Vehicles.

(h)    Concentra

    (i)    Concentra has asserted an interest in 12 VINs (the "**Concentra Asserted VINs**"), as detailed in the Monitor's Database.

    (ii)    Out of the Concentra Asserted VINs, the Monitor is of the view that Concentra has provided sufficient evidence of a perfected and priority interest in all 12 Concentra Asserted VINs, which are listed on **Appendix "10"**.

    (iii)    The Monitor is of the view that none of the Concentra Asserted VINs are Multiple Collateral Vehicles.

(i)    DTF Canada

    (i)    DTF Canada has asserted an interest in 1,198 VINs (the "**DTF Canada Asserted VINs**"), as detailed in the Monitor's Database.

- 21 -

(ii)     Out of the DTF Canada Asserted VINs, the Monitor is of the view that DTF Canada has provided sufficient evidence of a perfected and priority interest in 1,180 VINs, which are listed on **Appendix "11A"**.

(iii)    Out of the DTF Canada Asserted VINs, the Monitor is of the view that DTF Canada has not provided sufficient evidence of a perfected and priority interest in 18 VINs, which are listed on **Appendix "11B"**.

(iv)    The Monitor is of the view that none of the DTF Canada Asserted VINs are Multiple Collateral Vehicles.

(j)    De Lage

(i)     De Lage has asserted an interest in 23 VINs (the "**De Lage Asserted VINs**"), as detailed in the Monitor's Database.

(ii)    Out of the De Lage Asserted VINs, the Monitor is of the view that De Lage has provided sufficient evidence of a perfected and priority interest in all 23 De Lage Asserted VINs, which are listed on **Appendix "12"**.

(iii)   The Monitor is of the view that none of the De Lage Asserted VINs are Multiple Collateral Vehicles.

(k)    Ford

(i)     Ford has asserted an interest in 4 VINs (the "**Ford Asserted VINs**"), as detailed in the Monitor's Database.

(ii)    Out of the Ford Asserted VINs, the Monitor is of the view that Ford has not provided sufficient evidence of a perfected and priority interest in any of the Ford Asserted VINs, which are listed on **Appendix "13"**.

(iii)   The Monitor is of the view that none of Ford Asserted VINs are Multiple Collateral Vehicles.

- 22 -

(l)   GM

    (i)   GM has asserted an interest in 2 VINs (the "**GM Asserted VINs**"), as detailed in the Monitor's Database.

    (ii)   Out of the GM Asserted VINs, the Monitor is of the view that GM has not provided sufficient evidence of a perfected and priority interest in any of the GM Asserted VINs, which are listed on **Appendix "14"**.

    (iii)   The Monitor is of the view that none of GM Asserted VINs are Multiple Collateral Vehicles.

(m)   HSBC

    (i)   HSBC has asserted an interest in 299 VINs (the "**HSBC Asserted VINs**"), as detailed in the Monitor's Database.

    (ii)   Out of the HSBC Asserted VINs, the Monitor is of the view that HSBC has provided sufficient evidence of a perfected and priority interest in 235 VINs, which are listed on **Appendix "15A"**.

    (iii)   Out of the HSBC Asserted VINs, the Monitor is of the view that HSBC has not provided sufficient evidence of a perfected and priority interest in 49 VINs, which are listed on **Appendix "15B"**.

    (iv)   Out of the HSBC Asserted VINs, the Monitor is of the view that 15 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

(n)   Mercedes

    (i)   Mercedes has asserted an interest in 1 VIN (the "**Mercedes Asserted VIN**"), as detailed in the Monitor's Database.

    (ii)   The Monitor is of the view that Mercedes has provided sufficient evidence of a perfected and priority interest in the Mercedes Asserted VIN, which is listed on **Appendix "16"**.

- 23 -

(iii)    The Monitor is of the view that the Mercedes Asserted VIN is not a Multiple Collateral Vehicle.

(o)    Meridian

(i)    Meridian has asserted an interest in 15 VINs (the "**Meridian Asserted VINs**"), as detailed in the Monitor's Database.

(ii)    Out of the Meridian Asserted VINs, the Monitor is of the view that Meridian has provided sufficient evidence of a perfected and priority interest in 11 VINs, which are listed on **Appendix "17A"**.

(iii)    Out of the Meridian Asserted VINs, the Monitor is of the view that Meridian has not provided sufficient evidence of a perfected and priority interest in 3 VINs, which are listed on **Appendix "17B"**

(iv)    Out of the Meridian Asserted VINs, the Monitor is of the view that 1 Meridian Asserted VIN is a Multiple Collateral Vehicle, as detailed in the MCV List.

(p)    Mitsubishi Canada

(i)    Mitsubishi Canada has asserted an interest in 278 VINs (the "**Mitsubishi Canada Asserted VINs**"), as detailed in the Monitor's Database.

(ii)    Out of the Mitsubishi Canada Asserted VINs, the Monitor is of the view that Mitsubishi Canada has provided sufficient evidence of a perfected and priority interest in 262 VINs, which are listed on **Appendix "18"**.

(iii)    Out of the Mitsubishi Canada Asserted VINs, the Monitor is of the view that 16 of the Mitsubishi Canada Asserted VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

- 24 -

(q)  PACCAR Canada

    (i)  PACCAR Canada has asserted an interest in 106 VINs (the "**PACCAR Canada Asserted VINs**"), as detailed in the Monitor's Database.

    (ii)  Out of the PACCAR Canada Asserted VINs, the Monitor is of the view that PACCAR Canada has provided sufficient evidence of a perfected and priority interest in 96 VINs, which are listed on **Appendix "19"**.

    (iii)  Out of the PACCAR Canada Asserted VINs, the Monitor is of the view that 10 of the PACCAR Canada Asserted VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

(r)  FARCA Administrative Agent[19]

    (i)  In addition to its general claim against all assets of certain Pride Entities, FARCA Administrative Agent has asserted an interest in 3,392 specific VINs (the "**FARCA Administrative Agent Asserted VINs**"), as detailed in the Monitor's Database.

    (ii)  Out of the FARCA Administrative Agent Asserted VINs, the Monitor is of the view that FARCA Administrative Agent has provided sufficient evidence of a perfected and priority interest in 2,607 VINs, which are listed on **Appendix "20"**.[20]

---

[19] As noted in footnote 12 above, the associated VINs are in connection with the floorplan and lease line facilities provided for under the FARCA. The foregoing referenced VINs are VINs which have been specifically financed under either the floorplan facility or the lease line facility and therefore subject to the Entitlement Claims Process. Notwithstanding any specific interests in any VINs that the Syndicate Lenders may have financed pursuant to the floorplan facility or the lease line facility, FARCA Administrative Agent has an all-asset charge against all assets of the Pride Entities pursuant to the general security granted by them in connection with all of their obligations under the FARCA.

[20] Maxium Financial Services Inc. and CWB Maxium Financial Inc. have prior registered all asset security registrations against TPine Leasing Capital Corporation under the Ontario PPSA. Based on the information received by the Monitor, the Monitor has not been able to substantiate such creditors' all asset security registrations and is therefore of the view that FARCA Administrative Agent has established a priority interest in these VINs.

- 25 -

       (iii)    Out of the FARCA Administrative Agent Asserted VINs, the Monitor is of the view that 785 of the FARCA Administrative Agent Asserted VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

(s)    RBC Bilat

       (i)    RBC Bilat has asserted an interest in 587 VINs (the "**RBC Bilat Asserted VINs**"), as detailed in the Monitor's Database.

       (ii)    Out of the RBC Bilat Asserted VINs, the Monitor is of the view that RBC Bilat has not provided sufficient evidence of a perfected and priority interest in any of the 587 RBC Bilat Asserted VINs, which are listed on **Appendix "21"**.

       (iii)    Out of the RBC Bilat Asserted VINs, the Monitor is of the view that none of them are Multiple Collateral Vehicles.

(t)    TD Equipment

       (i)    TD Equipment has asserted an interest in 436 VINs (the "**TD Equipment Asserted VINs**"), as detailed in the Monitor's Database.

       (ii)    Out of the TD Equipment Asserted VINs, the Monitor is of the view that TD Equipment has provided sufficient evidence of a perfected and priority interest in 379 VINs, which are listed on **Appendix "22A"**.

       (iii)    Out of the TD Equipment Asserted VINs, the Monitor is of the view that TD Equipment has not provided sufficient evidence of a perfected and priority interest in 31 VINs, which are listed on **Appendix "22B"**.

       (iv)    Out of the TD Equipment Asserted VINs, the Monitor is of the view that 26 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

- 26 -

(u)    VFS Canada

    (i)    VFS Canada has asserted an interest in 122 VINs (the "**VFS Canada Asserted VINs**"), as detailed in the Monitor's Database.

    (ii)    Out of the VFS Canada Asserted VINs, the Monitor is of the view that VFS Canada has provided sufficient evidence of a perfected and priority interest in 82 VINs, which are listed on **Appendix "23A"**.

    (iii)    Out of the VFS Canada Asserted VINs, the Monitor is of the view that VFS Canada has not provided sufficient evidence of a perfected and priority interest in 2 VINs, which are listed on **Appendix "23B"**.

    (iv)    Out of the VFS Canada Asserted VINs, the Monitor is of the view that 38 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

<u>United States</u>

(v)    BMO Harris

    (i)    BMO Harris has asserted an interest in 420 VINs (the "**BMO Harris Asserted VINs**"), as detailed in the Monitor's Database.

    (ii)    Out of the BMO Harris Asserted VINs, the Monitor is of the view that, on the basis of BMO Harris being the only identified lienholder on certificates of title or effective filings under applicable law that cover or include the BMO Harris Asserted VINs, and, in the case of filings, that predate other such filings (or that are the subject of effective Acknowledgments that subordinate any interest in such VINs), BMO Harris has provided sufficient evidence of a perfected and priority interest in 58 VINs, which are listed on **Appendix "24A"**.[21]

---

[21] The Monitor notes that counsel to BMO Harris provided copies of additional intercreditor agreements and Acknowledgments shortly before this Eleventh Report was finalized the effects of which, if any, are not reflected herein.

- 27 -

(iii) Out of the BMO Harris Asserted VINs, the Monitor is of the view that BMO Harris has not provided sufficient evidence of a perfected and priority interest in 339 VINs, which are listed on **Appendix "24B"**.

(iv) Out of the BMO Harris Asserted VINs, the Monitor is of the view that 23 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

(w) DTF US

(i) DTF US has asserted an interest in 650 VINs (the "**DTF US Asserted VINs**"), as detailed in the Monitor's Database.

(ii) Out of the DTF US Asserted VINs, the Monitor is of the view that, on the basis of DTF US being the only identified lienholder on certificates of title or effective filings under applicable law that cover or include the DTF US Asserted VINs, and, in the case of filings, that predate other such filings (or that are the subject of effective Acknowledgments that subordinate any interest in such VINs), DTF US has provided sufficient evidence of a perfected and priority interest in 648 VINs, which are listed on **Appendix "25A"**.

(iii) Out of the DTF US Asserted VINs, the Monitor is of the view that DTF US has not provided sufficient evidence of a perfected and priority interest in 1 VIN, which is listed on **Appendix "25B"**.

(iv) Out of the DTF US Asserted VINs, the Monitor is of the view that 1 VIN is a Multiple Collateral Vehicle, as detailed in the MCV List.

(x) First American

(i) First American has asserted an interest in 138 VINs (the "**First American Asserted VINs**"), as detailed in the Monitor's Database.

(ii) Out of the First American Asserted VINs, the Monitor is of the view that, on the basis of First American being the only identified lienholder on

- 28 -

certificates of title or effective filings under applicable law that cover or include the First American Asserted VINs, and, in the case of filings, that predate other such filings (or that are the subject of effective Acknowledgments that subordinate any interest in such VINs), First American has provided sufficient evidence of a perfected and priority interest in 3 VINs, which are listed on **Appendix "26A"**.

(iii)    Out of the First American Asserted VINs, the Monitor is of the view that First American has not provided sufficient evidence of a perfected and priority interest in 83 VINs, which are listed on **Appendix "26B"**.

(iv)    Out of the First American Asserted VINs, the Monitor is of the view that 52 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

(y)    Flagstar

(i)    Flagstar has asserted an interest in 82 VINs (the "**Flagstar Asserted VINs**"), as detailed in the Monitor's Database.

(ii)    Out of the Flagstar Asserted VINs, the Monitor is of the view that, on the basis of Flagstar being the only identified lienholder on certificates of title or effective filings under applicable law that cover or include the Flagstar Asserted VINs, and, in the case of filings, that predate other such filings (or that are the subject of effective Acknowledgments that subordinate any interest in such VINs), Flagstar has provided sufficient evidence of a perfected and priority interest in 56 VINs, which are listed on **Appendix "27A"**.

(iii)    Out of the Flagstar Asserted VINs, the Monitor is of the view that Flagstar has not provided sufficient evidence of a perfected and priority interest in 8 VINs, which are listed on **Appendix "27B"**.

(iv)    Out of the Flagstar Asserted VINs, the Monitor is of the view that 18 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

- 29 -

(z)     PACCAR US

    (i)     PACCAR US has asserted an interest in 287 VINs (the "**PACCAR US Asserted VINs**"), as detailed in the Monitor's Database.

    (ii)     Out of the PACCAR US Asserted VINs, the Monitor is of the view that, on the basis of PACCAR US being the only identified lienholder on certificates of title or effective filings under applicable law that cover or include the PACCAR US Asserted VINs, and, in the case of filings, that predate other such filings (or that are the subject of effective Acknowledgments that subordinate any interest in such VINs), PACCAR US has provided sufficient evidence of a perfected and priority interest in 242 VINs, which are listed on **Appendix "28A"**.

    (iii)     Out of the PACCAR US Asserted VINs, the Monitor is of the view that PACCAR US has not provided sufficient evidence of a perfected and priority interest in 31 VINs, which are listed on **Appendix "28B"**.

    (iv)     Out of the PACCAR US Asserted VINs, the Monitor is of the view that 14 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

(aa)     Mitsubishi US

    (i)     Mitsubishi US has asserted an interest in 1,379 VINs (the "**Mitsubishi US Asserted VINs**"), as detailed in the Monitor's Database.

    (ii)     Out of the Mitsubishi US Asserted VINs, the Monitor is of the view that, on the basis of Mitsubishi US being the only identified lienholder on certificates of title or effective filings under applicable law that cover or include the Mitsubishi Asserted VINs, and, in the case of filings, that predate other such filings (or that are the subject of effective Acknowledgments that subordinate any interest in such VINs), Mitsubishi US has provided sufficient evidence of a perfected and priority interest in 916 VINs, which are listed on **Appendix "29A"**.

- 30 -

    (iii)    Out of the Mitsubishi US Asserted VINs, the Monitor is of the view that Mitsubishi US has not provided sufficient evidence of a perfected and priority interest in 148 VINs, which are listed on **Appendix "29B"**.

    (iv)    Out of the Mitsubishi US Asserted VINs, the Monitor is of the view that 315 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

(bb)    M&T

    (i)    M&T has asserted an interest in 7 VINs (the "**M&T Asserted VINs**"), as detailed in the Monitor's Database.

    (ii)    Out of the M&T Asserted VINs, the Monitor is of the view that, on the basis of M&T being the only identified lienholder on certificates of title or effective filings under applicable law that cover or include the M&T Asserted VINs, and, in the case of filings, that predate other such filings (or that are the subject of effective Acknowledgments that subordinate any interest in such VINs), M&T has provided sufficient evidence of a perfected and priority interest in 4 VINs, which are listed on **Appendix "30A"**.

    (iii)    Out of the M&T Asserted VINs, the Monitor is of the view that M&T has not provided sufficient evidence of a perfected and priority interest in 2 VINs, which are listed on **Appendix "30B"**.

    (iv)    Out of the M&T Asserted VINs, the Monitor is of the view that 1 VIN is a Multiple Collateral Vehicle, as detailed in the MCV List.

(cc)    RBOC

    (i)    RBOC has asserted an interest in 34 VINs (the "**RBOC Asserted VINs**"), as detailed in the Monitor's Database.

    (ii)    Out of the RBOC Asserted VINs, the Monitor is of the view that, on the basis of RBOC being the only identified lienholder on certificates of title or effective filings under applicable law that cover or include the RBOC

- 31 -

Asserted VINs, and, in the case of filings, that predate other such filings (or that are the subject of effective Acknowledgments that subordinate any interest in such VINs), RBOC has provided sufficient evidence of a perfected and priority interest in 24 VINs, which are listed on **Appendix "31A"**.

(iii)    Out of the RBOC Asserted VINs, the Monitor is of the view that RBOC has not provided sufficient evidence of a perfected and priority interest in 2 VINs, which are listed on **Appendix "31B"**.

(iv)    Out of the RBOC Asserted VINs, the Monitor is of the view that 8 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

(dd)    RCEF

(i)    RCEF has asserted an interest in 244 VINs (the "**RCEF Asserted VINs**"), as detailed in the Monitor's Database.

(ii)    Out of the RCEF Asserted VINs, the Monitor is of the view that, on the basis of RCEF being the only identified lienholder on certificates of title or effective filings under applicable law that cover or include the Regions Asserted VINs, and, in the case of filings, that predate other such filings (or that are the subject of effective Acknowledgments that subordinate any interest in such VINs), RCEF has provided sufficient evidence of a perfected and priority interest in 227 VINs, which are listed on **Appendix "32A"**.

(iii)    Out of the RCEF Asserted VINs, the Monitor is of the view that RCEF has not provided sufficient evidence of a perfected and priority interest in 13 VINs, which are listed on **Appendix "32B"**.

(iv)    Out of the RCEF Asserted VINs, the Monitor is of the view that 4 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

- 32 -

(ee)   Stoughton

     (i)    Stoughton has asserted an interest in 11 VINs (the "**Stoughton Asserted VINs**"), as detailed in the Monitor's Database.

     (ii)    Based on the information and documentation the Monitor has received with respect to the Stoughton Asserted VINs (portions of which are missing), the Monitor is not able to confidently form a view as to whether the leases governing the Stoughton Asserted VINs are "true leases" under applicable law. To the extent that the Court determines that such leases are "true leases" under applicable law, then the Monitor is of the view that Stoughton has provided sufficient evidence of a perfected and priority interest in 7 VINs, which are listed on **Appendix "33"**. However, to the extent that the Court determines that such leases are "financing leases", then the Monitor is of the view that Stoughton has not provided sufficient evidence of a perfected and priority interest in the same 7 VINs, which are listed on **Appendix "33"**.

     (iii)    Out of the Stoughton Asserted VINs, the Monitor is of the view that 4 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

(ff)   TBK

     (i)    TBK has asserted an interest in 369 VINs (the "**TBK Asserted VINs**"), as detailed in the Monitor's Database.

     (ii)    Out of the TBK Asserted VINs, the Monitor is of the view that TBK has not provided sufficient evidence of a perfected and priority interest in 364 VINs, which are listed on **Appendix "34"**.

     (iii)    Out of the TBK Asserted VINs, the Monitor is of the view that 5 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

- 33 -

(gg)  VFS US

 (i) VFS US has asserted an interest in 243 VINs (the "**VFS US Asserted VINs**"), as detailed in the Monitor's Database.

 (ii) Out of the VFS US Asserted VINs, the Monitor is of the view that, on the basis of VFS US being the only identified lienholder on certificates of title or effective filings under applicable law that cover or include the VFS US Asserted VINs, and, in the case of filings, that predate other such filings (or that are the subject of effective Acknowledgments that subordinate any interest in such VINs), VFS US has provided sufficient evidence of a perfected and priority interest in 112 VINs, which are listed on **Appendix "35A"**.

 (iii) Out of the VFS US Asserted VINs, the Monitor is of the view that VFS US has not provided sufficient evidence of a perfected and priority interest in 54 VINs, which are listed on **Appendix "35B"**.

 (iv) Out of the VFS US Asserted VINs, the Monitor is of the view that 77 VINs are Multiple Collateral Vehicles, as detailed in the MCV List.

(hh)  Webster

 (i) Webster has asserted an interest in 13 VINs (the "**Webster Asserted VINs**"), as detailed in the Monitor's Database.

 (ii) Out of the Webster Asserted VINs, the Monitor is of the view that Webster has not provided sufficient evidence of a perfected and priority interest in 12 VINs, which are listed on **Appendix "36"**.

 (iii) Out of the Webster Asserted VINs, the Monitor is of the view that 1 VIN is a Multiple Collateral Vehicle, as detailed in the MCV List.

- 34 -

*DIP Lenders & Syndicate Lenders*

39.   As set out above, (i) the Monitor is of the view that the personal property security granted
      by certain of the Pride Group entities to the Administrative Agent in connection with the
      FARCA constitutes a valid security interest in the collateral specified therein and
      enforceable in accordance with its terms, and (ii) the DIP Lenders' Charge ranks in priority
      to all Encumbrances and is only subordinate to (a) the Administration Charge; (b) the
      Intercompany Advances Charge; (c) any validly perfected and enforceable security
      interests of other third party Financiers in specific vehicle and lease collateral and proceeds
      of such collateral which, as of April 5, 2024, ranks in priority to the Security (as defined in
      the FARCA).

40.   To the extent that any VIN that is owned by the Pride Entities[22] is not subject to a perfected
      and priority security interest of another Financier, as noted in paragraphs 38(a) through
      38(hh) above, then, the DIP Lenders' Charge and the Syndicate Lenders' pre-filing security
      interests in such VIN rank in priority to all such Encumbrances (other than the
      Administration Charge and the Intercompany Advances Charge).[23]

41.   Accordingly, the Monitor is of the view that the DIP Lenders' Charge and the Syndicate
      Lenders' pre-filing security interests are perfected and priority interests in 5,829 VINs,
      which are listed on **Appendix "37"**, comprised of (i) 2,607 FARCA Administrative Agent
      Asserted VINs, (ii) 2,243 VINs in which Secured Parties have asserted an interest but have
      not been able to provide sufficient evidence of a perfected and priority interest, and (iii)
      979 of VINs which are (A) owned by the Pride Entities, and (B) are not subject to an
      asserted interest by any other Secured Creditors.

---

[22] For greater certainty, excluding any VIN where the Monitor has, based on Best Available Information, formed a
view that such VIN is the subject of a "true sale" and is therefore not owned by the Pride Entities, as set out in greater
detail in the Tenth Report.
[23] While there are other prior in time "all asset" type registrations under the Ontario PPSA to such registrations made
in respect of the Syndicate Lenders' pre-filing security, the Monitor either (i) received and reviewed waivers or priority
documentation relating to such prior in time registrations, (ii) was advised by the registering party that it no longer
had any interest, or (ii) did not receive any supporting agreements or documentation to establish a general security
interest in the assets of the related Pride Entities.

- 35 -

*PGL Entities*

42.    As set out above, the Pride Entities are currently carrying out the PGL Sale Process with respect to the PGL Entities.

43.    In order to assist the Court and stakeholders in connection with any potential transaction involving the PGL Entities, below is a summary of the security interests asserted by Secured Creditors against the VINs owned by the PGL Entities and the Monitor's best view on perfection and priority of same.[24]

**Security Interests Asserted Against PGLL**

(a)    BMO:

(i)    BMO has asserted an interest in 15 VINs financed to PGLL (the "**BMO PGLL Asserted VINs**"), which are listed on **Appendix "38"**.

(ii)    Out of the BMO PGLL Asserted VINs, the Monitor is of the view that BMO has provided sufficient evidence of a perfected and priority interest in all 15 BMO PGLL Asserted VINs.

(iii)    Out of the BMO PGLL Asserted VINs, the Monitor is of the view that none are Multiple Collateral Vehicles.

(b)    BNS

(i)    BNS has asserted an interest in 327 VINs financed to PGLL (the "**BNS PGLL Asserted VINs**"), which are listed on **Appendix "39A"**.

(ii)    Out of the BNS PGLL Asserted VINs, the Monitor is of the view that BNS has provided sufficient evidence of a perfected and priority interest in 303 VINs, which are listed on **Appendix "39B"**.

---

[24] This view is based on the information and documents received to date and subject to the qualifications, limitations and assumptions in the Security Opinions, the Summaries and security memoranda delivered to the Monitor by its counsel in connection with same, the Explanatory Note and herein. The VINs referenced in this "*PGL Entities*" section are a subset of the VINs included in the summary table contained at paragraph 29 herein and at paragraph 38 herein.

- 36 -

    (iii)    Out of the BNS PGLL Asserted VINs, the Monitor is of the view that 24 VINs are Multiple Collateral Vehicles as detailed in **Appendix 40** (the "**PGLL MCV List**").

(c)    Coast

    (i)    Coast has asserted an interest in 21 VINs financed to PGLL (the "**Coast PGLL Asserted VINs**"), which are listed on **Appendix "41"**.

    (ii)    Out of the Coast PGLL Asserted VINs, the Monitor is of the view that Coast has provided sufficient evidence of a perfected and priority interest in all 21 Coast PGLL Asserted VINS.

    (iii)    The Monitor is of the view that none of the Coast PGLL Asserted VINs are Multiple Collateral Vehicles.

(d)    Concentra

    (i)    Concentra has asserted an interest in 12 VINs financed to PGLL (the "**Concentra PGLL Asserted VINs**"), which are listed on **Appendix "42"**.

    (ii)    Out of the Concentra PGLL Asserted VINs, the Monitor is of the view that Concentra has provided sufficient evidence of a perfected and priority interest in all 12 Concentra PGLL Asserted VINs.

    (iii)    The Monitor is of the view that none of the Concentra PGLL Asserted VINs are Multiple Collateral Vehicles.

(e)    CWB

    (i)    CWB has asserted an interest in 20 VINs financed to PGLL (the "**CWB PGLL Asserted VINs**"), which are listed on **Appendix "43"**.

    (ii)    Out of the CWB PGLL Asserted VINs, the Monitor is of the view that CWB has provided sufficient evidence of a perfected and priority interest in all 20 CWB PGLL Asserted VINs.

- 37 -

        (iii)    The Monitor is of the view that none of the CWB PGLL Asserted VINs are Multiple Collateral Vehicles.

(f)    De Lage

        (i)    De Lage has asserted an interest in 23 VINs financed to PGLL (the "**De Lage PGLL Asserted VINs**"), which are listed on **Appendix "44"**.

        (ii)    Out of the De Lage PGLL Asserted VINs, the Monitor is of the view that De Lage has provided sufficient evidence of a perfected and priority interest in all 23 De Lage PGLL Asserted VINs.

        (iii)    The Monitor is of the view that none of the De Lage PGLL Asserted VINs are Multiple Collateral Vehicles.

(g)    DTF Canada

        (i)    DTF Canada has asserted an interest in 55 VINs financed to PGLL (the "**DTF Canada PGLL Asserted VINs**"), which are listed on **Appendix "45"**.

        (ii)    Out of the DTF Canada PGLL Asserted VINs, the Monitor is of the view that DTF Canada has provided sufficient evidence of a perfected and priority interest in all 55 DTF Canada PGLL Asserted VINs.

        (iii)    Out of the DTF Canada PGLL Asserted VINs, the Monitor is of the view that none are Multiple Collateral Vehicles.

(h)    HSBC

        (i)    HSBC has asserted an interest in 249 VINs financed to PGLL (the "**HSBC PGLL Asserted VINs**"), which are listed on **Appendix "46A"**.

        (ii)    Out of the HSBC PGLL Asserted VINs, the Monitor is of the view that HSBC has provided sufficient evidence of a perfected and priority interest in all 235 VINs, which are listed on **Appendix "46B"**.

- 38 -

    (iii)    Out of the HSBC PGLL Asserted VINs, the Monitor is of the view that 14 VINs are Multiple Collateral Vehicles, as detailed in the PGLL MCV List.

(i)    TD Equipment

    (i)    TD Equipment has asserted an interest in 405 VINs financed to PGLL (the "**TD PGLL Asserted VINs**"), which are listed on **Appendix "47A"**.

    (ii)    Out of the TD PGLL Asserted VINs, the Monitor is of the view that TD Equipment has provided sufficient evidence of a perfected and priority interest in 379 VINs, which are listed on **Appendix "47B"**.

    (iii)    Out of the TD PGLL Asserted VINs, the Monitor is of the view that 26 VINs are Multiple Collateral Vehicles, as detailed in the PGLL MCV List.

44.    To the extent that any VIN that is owned by the PGL Entities is not subject to a perfected and priority security interest of another Financier, as noted in paragraphs 43(a) through 43(i) above, then, the DIP Lenders' Charge and the Syndicate Lenders' pre-filing security interests in such VIN rank in priority to all such Encumbrances (other than the Administration Charge and the Intercompany Advances Charge).

45.    As it relates to the PGL Entities, the DIP Lenders' Charge and the Syndicate Lenders' pre-filing security interests are not priority interests in any of the VINs owned by the PGL Entities but are perfected and priority interests in all other assets of the PGL Entities.

- 39 -

All of which is respectfully submitted this 2nd day of August 2024.

**ERNST & YOUNG INC.,**
solely in its role as Court-appointed
Monitor of Pride Group Holdings Inc. and
certain affiliates and not in its personal or
corporate capacity

**per:**

**Alex Morrison, CPA, CA, LIT, CIRP**
**Senior Vice President**

**Karen Fung, CPA, CA, LIT, CIRP**
**Senior Vice President**

*Current as at July 31, 2024*

**APPENDIX 25A**
**DAIMLER US**
*(VINS where sufficient evidence of a perfected and priority interest provided)*

| | VIN | Pride Entity | On Pride's Records |
|---|---|---|---|
| 1. | 3AKJHHDR4KSKG4272 | TPINE LEASING CAPITAL L.P. | Yes |
| 2. | 3AKJHHDR4KSKG4319 | TPINE LEASING CAPITAL L.P. | Yes |
| 3. | 3AKJHHDR9KSKG4252 | TPINE LEASING CAPITAL L.P. | No |
| 4. | 3AKJGLDR3HSHT2157 | TPINE LEASING CAPITAL L.P. | No |
| 5. | 3AKJGLDR7HSHT2274 | TPINE LEASING CAPITAL L.P. | No |
| 6. | 3AKJHHDR1LSKW9158 | TPINE LEASING CAPITAL L.P. | Yes |
| 7. | 3AKJHHDR8LSKW9142 | TPINE LEASING CAPITAL L.P. | Yes |
| 8. | 1FUJHHDR2LLLA0425 | TPINE LEASING CAPITAL L.P. | Yes |
| 9. | 1FUJHHDR3LLLA0420 | TPINE LEASING CAPITAL L.P. | Yes |
| 10. | 1FUJHHDR6LLLA0427 | TPINE LEASING CAPITAL L.P. | Yes |
| 11. | 1FUJHHDR7LLLA0422 | TPINE LEASING CAPITAL L.P. | Yes |
| 12. | 3AKJHHDR3LSKW9176 | TPINE LEASING CAPITAL L.P. | Yes |
| 13. | 3AKJHHDR4LSKW9106 | TPINE LEASING CAPITAL L.P. | Yes |
| 14. | 3AKJHHDR5LSKW9101 | TPINE LEASING CAPITAL L.P. | Yes |
| 15. | 3AKJHHDR5LSKW9132 | TPINE LEASING CAPITAL L.P. | Yes |
| 16. | 3AKJHHDR6LSKW9107 | TPINE LEASING CAPITAL L.P. | Yes |
| 17. | 3AKJHHDR7LSKW9178 | TPINE LEASING CAPITAL L.P. | Yes |
| 18. | 3AKJHHDR8LSKW9108 | TPINE LEASING CAPITAL L.P. | Yes |
| 19. | 3AKJHHDRXLSKW9109 | TPINE LEASING CAPITAL L.P. | Yes |
| 20. | 3AKJHHDRXLSKW9157 | TPINE LEASING CAPITAL L.P. | Yes |
| 21. | 3AKJHHDR9LSKW9179 | TPINE LEASING CAPITAL L.P. | Yes |
| 22. | 1FUJHHDR1MLMJ2154 | TPINE LEASING CAPITAL L.P. | Yes |
| 23. | 1FUJHHDR7MLMJ2157 | TPINE LEASING CAPITAL L.P. | Yes |
| 24. | 1FUJHHDR7MLMJ2160 | TPINE LEASING CAPITAL L.P. | Yes |
| 25. | 1FUJHHDR9MLMJ2158 | TPINE LEASING CAPITAL L.P. | Yes |
| 26. | 1FUJHHDR0MLMJ2159 | TPINE LEASING CAPITAL L.P. | Yes |
| 27. | 1FUJHHDR0MLMJ2162 | TPINE LEASING CAPITAL L.P. | Yes |
| 28. | 1FUJHHDR1MLMJ2168 | TPINE LEASING CAPITAL L.P. | Yes |
| 29. | 1FUJHHDR3MLMJ2169 | TPINE LEASING CAPITAL L.P. | Yes |
| 30. | 1FUJHHDR4MLMJ2164 | TPINE LEASING CAPITAL L.P. | Yes |
| 31. | 1FUJHHDR6MLMJ2165 | TPINE LEASING CAPITAL L.P. | Yes |
| 32. | 1FUJHHDR8MLMJ2166 | TPINE LEASING CAPITAL L.P. | Yes |
| 33. | 1FUJHHDR9MLMJ2161 | TPINE LEASING CAPITAL L.P. | Yes |
| 34. | 1FUJHHDRXMLMJ2170 | TPINE LEASING CAPITAL L.P. | Yes |
| 35. | 3AKJHHDR1LSKW9189 | TPINE LEASING CAPITAL L.P. | Yes |
| 36. | 3AKJHHDR1LSKW9242 | TPINE LEASING CAPITAL L.P. | Yes |
| 37. | 3AKJHHDR2LSKW9203 | TPINE LEASING CAPITAL L.P. | Yes |
| 38. | 3AKJHHDR3LSKW9193 | TPINE LEASING CAPITAL L.P. | Yes |
| 39. | 3AKJHHDR3LSKW9243 | TPINE LEASING CAPITAL L.P. | Yes |
| 40. | 3AKJHHDR5LSKW9194 | TPINE LEASING CAPITAL L.P. | Yes |
| 41. | 3AKJHHDR5LSKW9244 | TPINE LEASING CAPITAL L.P. | Yes |
| 42. | 3AKJHHDRXLSKW9191 | TPINE LEASING CAPITAL L.P. | Yes |
| 43. | 3AKJHHDRXLSKW9241 | TPINE LEASING CAPITAL L.P. | Yes |

1

*Current as at July 31, 2024*

| | VIN | Pride Entity | On Pride's Records |
|---|---|---|---|
| 44. | 1FUJHHDR0MLMA7393 | TPINE LEASING CAPITAL L.P. | Yes |
| 45. | 1FUJHHDR0MLMA7412 | TPINE LEASING CAPITAL L.P. | Yes |
| 46. | 1FUJHHDR2MLMA7394 | TPINE LEASING CAPITAL L.P. | Yes |
| 47. | 1FUJHHDR4MLMA7395 | TPINE LEASING CAPITAL L.P. | Yes |
| 48. | 1FUJHHDR5MLMA7390 | TPINE LEASING CAPITAL L.P. | Yes |
| 49. | 1FUJHHDR6MLMA7396 | TPINE LEASING CAPITAL L.P. | Yes |
| 50. | 1FUJHHDR7MLMA7391 | TPINE LEASING CAPITAL L.P. | Yes |
| 51. | 3AKJHHDR1LSKU7922 | TPINE LEASING CAPITAL L.P. | Yes |
| 52. | 3AKJHHDR2LSKU7816 | TPINE LEASING CAPITAL L.P. | Yes |
| 53. | 3AKJHHDR8LSKU7819 | TPINE LEASING CAPITAL L.P. | Yes |
| 54. | 3AKJHHDR9LSKU7957 | TPINE LEASING CAPITAL L.P. | Yes |
| 55. | 3AKJHHDR4LSKU7980 | TPINE LEASING CAPITAL L.P. | Yes |
| 56. | 3AKJHHDR5LSKU7969 | TPINE LEASING CAPITAL L.P. | Yes |
| 57. | 3AKJHHDR8LSKU7979 | TPINE LEASING CAPITAL L.P. | Yes |
| 58. | 3AKJHHDR3MSMY3456 | TPINE LEASING CAPITAL L.P. | Yes |
| 59. | 3AKJHHDR4MSMY3448 | TPINE LEASING CAPITAL L.P. | Yes |
| 60. | 3AKJHHDR5MSMY3460 | TPINE LEASING CAPITAL L.P. | Yes |
| 61. | 3AKJHHDR8MSMY3453 | TPINE LEASING CAPITAL L.P. | Yes |
| 62. | 3AKJHHDR2MSMY3447 | TPINE LEASING CAPITAL L.P. | Yes |
| 63. | 3AKJHHDR4MSMY3465 | TPINE LEASING CAPITAL L.P. | Yes |
| 64. | 3AKJHHDRXMSMY3454 | TPINE LEASING CAPITAL L.P. | Yes |
| 65. | 3AKJHHDR0NSMZ3668 | TPINE LEASING CAPITAL L.P. | Yes |
| 66. | 3AKJHHDR1NSMZ3663 | TPINE LEASING CAPITAL L.P. | Yes |
| 67. | 3AKJHHDR3NSMZ3681 | TPINE LEASING CAPITAL L.P. | Yes |
| 68. | 3AKJHHDR5NSMZ3682 | TPINE LEASING CAPITAL L.P. | Yes |
| 69. | 3AKJHHDR8NSMZ3661 | TPINE LEASING CAPITAL L.P. | Yes |
| 70. | 3AKJHHDR9NSMZ3667 | TPINE LEASING CAPITAL L.P. | No |
| 71. | 3AKJHHDRXNSMZ3662 | TPINE LEASING CAPITAL L.P. | Yes |
| 72. | 3AKJHHDR3NSNA6375 | TPINE LEASING CAPITAL L.P. | Yes |
| 73. | 3AKJHHDR7NSNA6363 | TPINE LEASING CAPITAL L.P. | Yes |
| 74. | 3AKJHHDR7NSNA6377 | TPINE LEASING CAPITAL L.P. | Yes |
| 75. | 3AKJHHDR8NSNA6372 | TPINE LEASING CAPITAL L.P. | Yes |
| 76. | 1FUJHHDR0NLMW8717 | TPINE LEASING CAPITAL L.P. | Yes |
| 77. | 1FUJHHDR0NLMW8720 | TPINE LEASING CAPITAL L.P. | Yes |
| 78. | 1FUJHHDR0NLMW8751 | TPINE LEASING CAPITAL L.P. | Yes |
| 79. | 1FUJHHDR1NLMW8757 | TPINE LEASING CAPITAL L.P. | Yes |
| 80. | 1FUJHHDR1NLMW8760 | TPINE LEASING CAPITAL L.P. | Yes |
| 81. | 1FUJHHDR2NLMW8752 | TPINE LEASING CAPITAL L.P. | Yes |
| 82. | 1FUJHHDR4NLMW8753 | TPINE LEASING CAPITAL L.P. | Yes |
| 83. | 1FUJHHDR6NLMW8754 | TPINE LEASING CAPITAL L.P. | Yes |
| 84. | 1FUJHHDR8NLMW8755 | TPINE LEASING CAPITAL L.P. | Yes |
| 85. | 3AKJHHDR3NSMW5525 | TPINE LEASING CAPITAL L.P. | Yes |
| 86. | 3AKJHHDR5NSMW5526 | TPINE LEASING CAPITAL L.P. | Yes |
| 87. | 3AKJHHDR7NSMW5527 | TPINE LEASING CAPITAL L.P. | Yes |
| 88. | 1FUJHHDR5NLMW8759 | TPINE LEASING CAPITAL L.P. | Yes |
| 89. | 3AKJHHDR0NSNC3358 | TPINE LEASING CAPITAL L.P. | Yes |
| 90. | 3AKJHHDR1NSNC3353 | TPINE LEASING CAPITAL L.P. | Yes |

*Current as at July 31, 2024*

| | VIN | Pride Entity | On Pride's Records |
|---|---|---|---|
| 91. | 3AKJHHDR1NSNC3384 | TPINE LEASING CAPITAL L.P. | Yes |
| 92. | 3AKJHHDR2NSNC3359 | TPINE LEASING CAPITAL L.P. | Yes |
| 93. | 3AKJHHDR2NSNC3393 | TPINE LEASING CAPITAL L.P. | Yes |
| 94. | 3AKJHHDR3NSNC3354 | TPINE LEASING CAPITAL L.P. | Yes |
| 95. | 3AKJHHDR3NSNC3371 | TPINE LEASING CAPITAL L.P. | Yes |
| 96. | 3AKJHHDR5NSNC3369 | TPINE LEASING CAPITAL L.P. | Yes |
| 97. | 3AKJHHDR5NSNC3372 | TPINE LEASING CAPITAL L.P. | Yes |
| 98. | 3AKJHHDR6NSNC3364 | TPINE LEASING CAPITAL L.P. | Yes |
| 99. | 3AKJHHDR6NSNC3395 | TPINE LEASING CAPITAL L.P. | Yes |
| 100. | 3AKJHHDR7NSNC3356 | TPINE LEASING CAPITAL L.P. | Yes |
| 101. | 3AKJHHDR7NSNC3373 | TPINE LEASING CAPITAL L.P. | Yes |
| 102. | 3AKJHHDR7NSNC3390 | TPINE LEASING CAPITAL L.P. | Yes |
| 103. | 3AKJHHDR8NSNC3365 | TPINE LEASING CAPITAL L.P. | Yes |
| 104. | 3AKJHHDR9NSNC3374 | TPINE LEASING CAPITAL L.P. | Yes |
| 105. | 3AKJHHDRXNSNC3366 | TPINE LEASING CAPITAL L.P. | Yes |
| 106. | 1FUJHHDR7NLMW8813 | TPINE LEASING CAPITAL L.P. | Yes |
| 107. | 3AKJHHDR2NSNC3412 | TPINE LEASING CAPITAL L.P. | Yes |
| 108. | 3AKJHHDR2NSNC3443 | TPINE LEASING CAPITAL L.P. | Yes |
| 109. | 3AKJHHDR4NSNC3413 | TPINE LEASING CAPITAL L.P. | Yes |
| 110. | 3AKJHHDR5NSNC3405 | TPINE LEASING CAPITAL L.P. | Yes |
| 111. | 3AKJHHDR6NSNC3381 | TPINE LEASING CAPITAL L.P. | Yes |
| 112. | 3AKJHHDR6NSNC3400 | TPINE LEASING CAPITAL L.P. | Yes |
| 113. | 3AKJHHDR7NSNC3406 | TPINE LEASING CAPITAL L.P. | Yes |
| 114. | 3AKJHHDR9NSNC3424 | TPINE LEASING CAPITAL L.P. | Yes |
| 115. | 3AKJHHDRXNSNC3397 | TPINE LEASING CAPITAL L.P. | Yes |
| 116. | 1FUJHHDR0NLMW8815 | TPINE LEASING CAPITAL L.P. | Yes |
| 117. | 1FUJHHDR4NLMW8817 | TPINE LEASING CAPITAL L.P. | Yes |
| 118. | 1FUJHHDR4NLMW8820 | TPINE LEASING CAPITAL L.P. | Yes |
| 119. | 1FUJHHDR6NLMW8818 | TPINE LEASING CAPITAL L.P. | Yes |
| 120. | 1FUJHHDR6NLMW8821 | TPINE LEASING CAPITAL L.P. | Yes |
| 121. | 1FUJHHDR8NLMW8819 | TPINE LEASING CAPITAL L.P. | Yes |
| 122. | 1FUJHHDR8NLMW8822 | TPINE LEASING CAPITAL L.P. | Yes |
| 123. | 3AKJHHDR0NSNC3389 | TPINE LEASING CAPITAL L.P. | Yes |
| 124. | 3AKJHHDR1NSNC3417 | TPINE LEASING CAPITAL L.P. | Yes |
| 125. | 3AKJHHDR4NSNC3363 | TPINE LEASING CAPITAL L.P. | Yes |
| 126. | 3AKJHHDR7NSNC3440 | TPINE LEASING CAPITAL L.P. | Yes |
| 127. | 3AKJHHDR9NSNC3388 | TPINE LEASING CAPITAL L.P. | Yes |
| 128. | 3AKJHHDRXNSNC3349 | TPINE LEASING CAPITAL L.P. | Yes |
| 129. | 3AKJHHDRXNSNC3416 | TPINE LEASING CAPITAL L.P. | Yes |
| 130. | 1FUJHHDR0NLMW8863 | TPINE LEASING CAPITAL L.P. | Yes |
| 131. | 1FUJHHDR0NLMW8913 | TPINE LEASING CAPITAL L.P. | Yes |
| 132. | 1FUJHHDR2NLMW8864 | TPINE LEASING CAPITAL L.P. | Yes |
| 133. | 1FUJHHDR4NLMW8865 | TPINE LEASING CAPITAL L.P. | Yes |
| 134. | 1FUJHHDR6NLMW8866 | TPINE LEASING CAPITAL L.P. | Yes |
| 135. | 1FUJHHDR7NLMW8861 | TPINE LEASING CAPITAL L.P. | Yes |
| 136. | 1FUJHHDR8NLMW8867 | TPINE LEASING CAPITAL L.P. | Yes |
| 137. | 1FUJHHDR9NLMW8862 | TPINE LEASING CAPITAL L.P. | Yes |

3

*Current as at July 31, 2024*

|     | VIN | Pride Entity | On Pride's Records |
|-----|-----|--------------|--------------------|
| 138. | 1FUJHHDRXNLMW8868 | TPINE LEASING CAPITAL L.P. | Yes |
| 139. | 3AKJHHDR0NSNC3392 | TPINE LEASING CAPITAL L.P. | Yes |
| 140. | 3AKJHHDR1NSNC3398 | TPINE LEASING CAPITAL L.P. | Yes |
| 141. | 3AKJHHDR3NSNC3368 | TPINE LEASING CAPITAL L.P. | Yes |
| 142. | 3AKJHHDR8NSNC3351 | TPINE LEASING CAPITAL L.P. | Yes |
| 143. | 3AKJHHDR2KSJX1299 | TPINE LEASING CAPITAL L.P. | Yes |
| 144. | 3AKJHHDR7KSJX0858 | TPINE LEASING CAPITAL L.P. | Yes |
| 145. | 3AKJHHDR9JSJW7121 | TPINE LEASING CAPITAL L.P. | Yes |
| 146. | 3AKJHTDV1KSKN2844 | TPINE LEASING CAPITAL L.P. | Yes |
| 147. | 3AKJHTDV8KSKN2842 | TPINE LEASING CAPITAL L.P. | Yes |
| 148. | 1FUJHHDR7NLMW8911 | TPINE LEASING CAPITAL L.P. | Yes |
| 149. | 1FUJHHDR9NLMW8814 | TPINE LEASING CAPITAL L.P. | Yes |
| 150. | 1FUJHHDR9NLMW8912 | TPINE LEASING CAPITAL L.P. | Yes |
| 151. | 3AKJHHDR0NSNC3361 | TPINE LEASING CAPITAL L.P. | Yes |
| 152. | 3AKJHHDR0NSNC3375 | TPINE LEASING CAPITAL L.P. | Yes |
| 153. | 3AKJHHDR0NSNC3408 | TPINE LEASING CAPITAL L.P. | Yes |
| 154. | 3AKJHHDR0NSNC3411 | TPINE LEASING CAPITAL L.P. | Yes |
| 155. | 3AKJHHDR2NSNC3376 | TPINE LEASING CAPITAL L.P. | Yes |
| 156. | 3AKJHHDR4NSNC3377 | TPINE LEASING CAPITAL L.P. | Yes |
| 157. | 3AKJHHDR4NSNC3380 | TPINE LEASING CAPITAL L.P. | Yes |
| 158. | 3AKJHHDR4NSNC3394 | TPINE LEASING CAPITAL L.P. | Yes |
| 159. | 3AKJHHDR4NSNC3444 | TPINE LEASING CAPITAL L.P. | Yes |
| 160. | 3AKJHHDR6NSNC3378 | TPINE LEASING CAPITAL L.P. | Yes |
| 161. | 3AKJHHDR6NSNC3445 | TPINE LEASING CAPITAL L.P. | Yes |
| 162. | 3AKJHHDR8NSNC3396 | TPINE LEASING CAPITAL L.P. | Yes |
| 163. | 3AKJHHDR8NSNC3415 | TPINE LEASING CAPITAL L.P. | Yes |
| 164. | 3AKJHHDR9NSNC3357 | TPINE LEASING CAPITAL L.P. | Yes |
| 165. | 3AKJHHDR9NSNC3391 | TPINE LEASING CAPITAL L.P. | Yes |
| 166. | 3AKJHHDRXNSNC3402 | TPINE LEASING CAPITAL L.P. | Yes |
| 167. | 1FUJHHDR6NLMW8916 | TPINE LEASING CAPITAL L.P. | Yes |
| 168. | 3AKJHHDR0NSNC3425 | TPINE LEASING CAPITAL L.P. | Yes |
| 169. | 3AKJHHDR1NSNC3367 | TPINE LEASING CAPITAL L.P. | Yes |
| 170. | 3AKJHHDR1NSNC3420 | TPINE LEASING CAPITAL L.P. | Yes |
| 171. | 3AKJHHDR2NSNC3362 | TPINE LEASING CAPITAL L.P. | Yes |
| 172. | 3AKJHHDR3NSNC3421 | TPINE LEASING CAPITAL L.P. | No |
| 173. | 3AKJHHDR8NSNC3348 | TPINE LEASING CAPITAL L.P. | Yes |
| 174. | 3AKJHHDRXNSNC3447 | TPINE LEASING CAPITAL L.P. | Yes |
| 175. | 3AKJHHDR3NSNC3418 | TPINE LEASING CAPITAL L.P. | Yes |
| 176. | 3AKJHHDR4NSNC3427 | TPINE LEASING CAPITAL L.P. | Yes |
| 177. | 3AKJHHDR8NSNC3401 | TPINE LEASING CAPITAL L.P. | Yes |
| 178. | 3AKJHHDR8NSNC3432 | TPINE LEASING CAPITAL L.P. | Yes |
| 179. | 3AKJHHDR3NSNC3399 | TPINE LEASING CAPITAL L.P. | Yes |
| 180. | 3AKJHHDR5NSNC3419 | TPINE LEASING CAPITAL L.P. | Yes |
| 181. | 3AKJHHDR6NSNC3431 | TPINE LEASING CAPITAL L.P. | Yes |
| 182. | 3AKJHHDR9NSNC3360 | TPINE LEASING CAPITAL L.P. | Yes |
| 183. | 3AKJHHDR9NSNC3438 | TPINE LEASING CAPITAL L.P. | Yes |
| 184. | 3AKJHHDR0NSNC3442 | TPINE LEASING CAPITAL L.P. | Yes |

| | VIN | Pride Entity | On Pride's Records |
|------|-----|--------------|--------------------|
| 185. | 3AKJHHDR5NSNC3422 | TPINE LEASING CAPITAL L.P. | Yes |
| 186. | 3AKJHHDR5NSNC3436 | TPINE LEASING CAPITAL L.P. | Yes |
| 187. | 3AKJHHDR6NSNC3428 | TPINE LEASING CAPITAL L.P. | Yes |
| 188. | 3AKJHHDR7NSNC3387 | TPINE LEASING CAPITAL L.P. | Yes |
| 189. | 3AKJHHDR7NSNC3423 | TPINE LEASING CAPITAL L.P. | Yes |
| 190. | 3AKJHHDR8NSNC3429 | TPINE LEASING CAPITAL L.P. | Yes |
| 191. | 1FVACXFC5PHNU8954 | TPINE LEASING CAPITAL L.P. | Yes |
| 192. | 3AKJHHDR2PSNU8463 | TPINE LEASING CAPITAL L.P. | Yes |
| 193. | 3AKJHHDR3PSNU8469 | TPINE LEASING CAPITAL L.P. | Yes |
| 194. | 3AKJHHDR4PSNU8464 | TPINE LEASING CAPITAL L.P. | Yes |
| 195. | 3AKJHHDR6NSNC3350 | TPINE LEASING CAPITAL L.P. | Yes |
| 196. | 3AKJHHDR6PSNU8465 | TPINE LEASING CAPITAL L.P. | Yes |
| 197. | 3AKJHHDR8PSNU8452 | TPINE LEASING CAPITAL L.P. | Yes |
| 198. | 3AKJHHDRXPSNU8467 | TPINE LEASING CAPITAL L.P. | Yes |
| 199. | 3AKJHHDRXPSNU8470 | TPINE LEASING CAPITAL L.P. | Yes |
| 200. | 1FVACXFCXPHNU8951 | TPINE LEASING CAPITAL L.P. | Yes |
| 201. | 3AKJHHDR1NSNC3403 | TPINE LEASING CAPITAL L.P. | Yes |
| 202. | 3AKJHHDR1PSNU8468 | TPINE LEASING CAPITAL L.P. | Yes |
| 203. | 3AKJHHDR6PSNU8451 | TPINE LEASING CAPITAL L.P. | Yes |
| 204. | 3AKJHHDR0PSNU8459 | TPINE LEASING CAPITAL L.P. | Yes |
| 205. | 3AKJHHDR3PSNU8486 | TPINE LEASING CAPITAL L.P. | Yes |
| 206. | 3AKJHHDR4PSNU8478 | TPINE LEASING CAPITAL L.P. | Yes |
| 207. | 3AKJHHDR4PSNU8481 | TPINE LEASING CAPITAL L.P. | Yes |
| 208. | 3AKJHHDR5PSNU8473 | TPINE LEASING CAPITAL L.P. | Yes |
| 209. | 3AKJHHDR5PSNU8487 | TPINE LEASING CAPITAL L.P. | Yes |
| 210. | 3AKJHHDR5PSNU8490 | TPINE LEASING CAPITAL L.P. | Yes |
| 211. | 3AKJHHDR6PSNU8479 | TPINE LEASING CAPITAL L.P. | Yes |
| 212. | 3AKJHHDR7PSNU8457 | TPINE LEASING CAPITAL L.P. | Yes |
| 213. | 3AKJHHDRXPSNU8484 | TPINE LEASING CAPITAL L.P. | Yes |
| 214. | 3AKJHHDR1PSNU8454 | TPINE LEASING CAPITAL L.P. | Yes |
| 215. | 3AKJHHDR2PSNU8480 | TPINE LEASING CAPITAL L.P. | Yes |
| 216. | 3AKJHHDR6PSNU8448 | TPINE LEASING CAPITAL L.P. | Yes |
| 217. | 3AKJHHDR6PSNU8529 | TPINE LEASING CAPITAL L.P. | Yes |
| 218. | 3AKJHHDR8PSNU8449 | TPINE LEASING CAPITAL L.P. | Yes |
| 219. | 3AKJHHDR9PSNU8475 | TPINE LEASING CAPITAL L.P. | Yes |
| 220. | 3AKJHHDR2PSNU8446 | TPINE LEASING CAPITAL L.P. | Yes |
| 221. | 3AKJHHDR3PSNU8455 | TPINE LEASING CAPITAL L.P. | Yes |
| 222. | 3AKJHHDR4PSNU8447 | TPINE LEASING CAPITAL L.P. | Yes |
| 223. | 3AKJHHDR4PSNU8450 | TPINE LEASING CAPITAL L.P. | Yes |
| 224. | 3AKJHHDR5PSNU8456 | TPINE LEASING CAPITAL L.P. | Yes |
| 225. | 3AKJHHDR7PSNU8460 | TPINE LEASING CAPITAL L.P. | No |
| 226. | 3AKJHHDR7PSNU8510 | TPINE LEASING CAPITAL L.P. | Yes |
| 227. | 3AKJHHDR9PSNU8458 | TPINE LEASING CAPITAL L.P. | Yes |
| 228. | 3AKJHHDR9PSNU8461 | TPINE LEASING CAPITAL L.P. | Yes |
| 229. | 3AKJHHDRXPSNU8453 | TPINE LEASING CAPITAL L.P. | Yes |
| 230. | 3AKJHHDRXPSNU8520 | TPINE LEASING CAPITAL L.P. | Yes |
| 231. | 3AKJHHDR1PSNU8471 | TPINE LEASING CAPITAL L.P. | Yes |

| | VIN | Pride Entity | On Pride's Records |
|---|---|---|---|
| 232. | 3AKJHHDR1PSNU8485 | TPINE LEASING CAPITAL L.P. | Yes |
| 233. | 3AKJHHDR3PSNU8472 | TPINE LEASING CAPITAL L.P. | Yes |
| 234. | 3AKJHHDR6PSNU8482 | TPINE LEASING CAPITAL L.P. | Yes |
| 235. | 3AKJHHDR8PSNU8483 | TPINE LEASING CAPITAL L.P. | Yes |
| 236. | 3AKJHHDR0PSNU8462 | TPINE LEASING CAPITAL L.P. | Yes |
| 237. | 3AKJHHDR1PSNU8499 | TPINE LEASING CAPITAL L.P. | Yes |
| 238. | 3AKJHHDR1PSNU8504 | TPINE LEASING CAPITAL L.P. | Yes |
| 239. | 3AKJHHDR1PSNU8535 | TPINE LEASING CAPITAL L.P. | Yes |
| 240. | 3AKJHHDR3PSNU8505 | TPINE LEASING CAPITAL L.P. | Yes |
| 241. | 3AKJHHDR4PSNU8495 | TPINE LEASING CAPITAL L.P. | Yes |
| 242. | 3AKJHHDR4PSNU8545 | TPINE LEASING CAPITAL L.P. | Yes |
| 243. | 3AKJHHDR6PSNU8501 | TPINE LEASING CAPITAL L.P. | Yes |
| 244. | 3AKJHHDR7PSNU8491 | TPINE LEASING CAPITAL L.P. | Yes |
| 245. | 3AKJHHDR7PSNU8538 | TPINE LEASING CAPITAL L.P. | Yes |
| 246. | 3AKJHHDR8PSNU8466 | TPINE LEASING CAPITAL L.P. | Yes |
| 247. | 3AKJHHDR8PSNU8497 | TPINE LEASING CAPITAL L.P. | Yes |
| 248. | 3AKJHHDR8PSNU8547 | TPINE LEASING CAPITAL L.P. | Yes |
| 249. | 3AKJHHDR9PSNU8542 | TPINE LEASING CAPITAL L.P. | Yes |
| 250. | 3AKJHHDRXPSNU8498 | TPINE LEASING CAPITAL L.P. | Yes |
| 251. | 3AKJHHDRXPSNU8503 | TPINE LEASING CAPITAL L.P. | Yes |
| 252. | 3AKJHHDRXPSNU8551 | TPINE LEASING CAPITAL L.P. | Yes |
| 253. | 3AKJHHDR0PSNU8526 | TPINE LEASING CAPITAL L.P. | Yes |
| 254. | 3AKJHHDR1PSNU8518 | TPINE LEASING CAPITAL L.P. | Yes |
| 255. | 3AKJHHDR2PSNU8494 | TPINE LEASING CAPITAL L.P. | Yes |
| 256. | 3AKJHHDR2PSNU8527 | TPINE LEASING CAPITAL L.P. | Yes |
| 257. | 3AKJHHDR2PSNU8544 | TPINE LEASING CAPITAL L.P. | Yes |
| 258. | 3AKJHHDR3PSNU8519 | TPINE LEASING CAPITAL L.P. | Yes |
| 259. | 3AKJHHDR3PSNU8522 | TPINE LEASING CAPITAL L.P. | Yes |
| 260. | 3AKJHHDR5PSNU8537 | TPINE LEASING CAPITAL L.P. | Yes |
| 261. | 3AKJHHDR6PSNU8515 | TPINE LEASING CAPITAL L.P. | Yes |
| 262. | 3AKJHHDR7PSNU8555 | TPINE LEASING CAPITAL L.P. | Yes |
| 263. | 3AKJHHDR8PSNU8533 | TPINE LEASING CAPITAL L.P. | Yes |
| 264. | 3AKJHHDR8PSNU8550 | TPINE LEASING CAPITAL L.P. | Yes |
| 265. | 3AKJHHDR8PSNU8614 | TPINE LEASING CAPITAL L.P. | Yes |
| 266. | 3AKJHHDR9PSNU8492 | TPINE LEASING CAPITAL L.P. | Yes |
| 267. | 3AKJHHDR9PSNU8539 | TPINE LEASING CAPITAL L.P. | Yes |
| 268. | 3AKJHHDR9PSNU8556 | TPINE LEASING CAPITAL L.P. | Yes |
| 269. | 3AKJHHDRXPSNU8548 | TPINE LEASING CAPITAL L.P. | Yes |
| 270. | 3AKJHHDR0PSNU8607 | TPINE LEASING CAPITAL L.P. | Yes |
| 271. | 3AKJHHDR0PSNU8624 | TPINE LEASING CAPITAL L.P. | Yes |
| 272. | 3AKJHHDR2PSNU8611 | TPINE LEASING CAPITAL L.P. | Yes |
| 273. | 3AKJHHDR3PSNU8553 | TPINE LEASING CAPITAL L.P. | Yes |
| 274. | 3AKJHHDR4PSNU8576 | TPINE LEASING CAPITAL L.P. | Yes |
| 275. | 3AKJHHDR4PSNU8609 | TPINE LEASING CAPITAL L.P. | Yes |
| 276. | 3AKJHHDR5PSNU8604 | TPINE LEASING CAPITAL L.P. | Yes |
| 277. | 3AKJHHDR5PSNU8618 | TPINE LEASING CAPITAL L.P. | Yes |
| 278. | 3AKJHHDR6PSNU8496 | TPINE LEASING CAPITAL L.P. | Yes |

|  | VIN | Pride Entity | On Pride's Records |
|---|---|---|---|
| 279. | 3AKJHHDR6PSNU8546 | TPINE LEASING CAPITAL L.P. | Yes |
| 280. | 3AKJHHDR6PSNU8627 | TPINE LEASING CAPITAL L.P. | Yes |
| 281. | 3AKJHHDR6PSNU8630 | TPINE LEASING CAPITAL L.P. | Yes |
| 282. | 3AKJHHDR7PSNU8488 | TPINE LEASING CAPITAL L.P. | Yes |
| 283. | 3AKJHHDR7PSNU8541 | TPINE LEASING CAPITAL L.P. | Yes |
| 284. | 3AKJHHDR7PSNU8622 | TPINE LEASING CAPITAL L.P. | Yes |
| 285. | 3AKJHHDR9PSNU8508 | TPINE LEASING CAPITAL L.P. | Yes |
| 286. | 3AKJHHDR9PSNU8573 | TPINE LEASING CAPITAL L.P. | Yes |
| 287. | 3AKJHHDR9PSNU8606 | TPINE LEASING CAPITAL L.P. | Yes |
| 288. | 3AKJHHDRXPSNU8517 | TPINE LEASING CAPITAL L.P. | Yes |
| 289. | 3AKJHHDRXPSNU8601 | TPINE LEASING CAPITAL L.P. | Yes |
| 290. | 3AKJHHDRXPSNU8629 | TPINE LEASING CAPITAL L.P. | Yes |
| 291. | 3AKJHHDR0PSNU8512 | TPINE LEASING CAPITAL L.P. | Yes |
| 292. | 3AKJHHDR0PSNU8557 | TPINE LEASING CAPITAL L.P. | Yes |
| 293. | 3AKJHHDR1PSNU8549 | TPINE LEASING CAPITAL L.P. | Yes |
| 294. | 3AKJHHDR1PSNU8566 | TPINE LEASING CAPITAL L.P. | Yes |
| 295. | 3AKJHHDR1PSNU8616 | TPINE LEASING CAPITAL L.P. | Yes |
| 296. | 3AKJHHDR2PSNU8530 | TPINE LEASING CAPITAL L.P. | Yes |
| 297. | 3AKJHHDR2PSNU8558 | TPINE LEASING CAPITAL L.P. | Yes |
| 298. | 3AKJHHDR2PSNU8561 | TPINE LEASING CAPITAL L.P. | Yes |
| 299. | 3AKJHHDR3PSNU8603 | TPINE LEASING CAPITAL L.P. | Yes |
| 300. | 3AKJHHDR3PSNU8617 | TPINE LEASING CAPITAL L.P. | Yes |
| 301. | 3AKJHHDR4PSNU8514 | TPINE LEASING CAPITAL L.P. | Yes |
| 302. | 3AKJHHDR4PSNU8612 | TPINE LEASING CAPITAL L.P. | Yes |
| 303. | 3AKJHHDR4PSNU8626 | TPINE LEASING CAPITAL L.P. | Yes |
| 304. | 3AKJHHDR5PSNU8506 | TPINE LEASING CAPITAL L.P. | Yes |
| 305. | 3AKJHHDR6PSNU8563 | TPINE LEASING CAPITAL L.P. | Yes |
| 306. | 3AKJHHDR7PSNU8605 | TPINE LEASING CAPITAL L.P. | Yes |
| 307. | 3AKJHHDR7PSNU8619 | TPINE LEASING CAPITAL L.P. | Yes |
| 308. | 3AKJHHDR8PSNU8628 | TPINE LEASING CAPITAL L.P. | Yes |
| 309. | 3AKJHHDR9PSNU8511 | TPINE LEASING CAPITAL L.P. | Yes |
| 310. | 3AKJHHDRXPSNU8565 | TPINE LEASING CAPITAL L.P. | Yes |
| 311. | 3AKJHHDRXPSNU8596 | TPINE LEASING CAPITAL L.P. | Yes |
| 312. | 3AKJHHDRXPSNU8615 | TPINE LEASING CAPITAL L.P. | Yes |
| 313. | 3AKJHHDR0PSNU8493 | TPINE LEASING CAPITAL L.P. | Yes |
| 314. | 3AKJHHDR0PSNU8509 | TPINE LEASING CAPITAL L.P. | Yes |
| 315. | 3AKJHHDR3PSNU8620 | TPINE LEASING CAPITAL L.P. | Yes |
| 316. | 3AKJHHDR4PSNU8528 | TPINE LEASING CAPITAL L.P. | Yes |
| 317. | 3AKJHHDR4PSNU8562 | TPINE LEASING CAPITAL L.P. | Yes |
| 318. | 3AKJHHDR6PSNU8532 | TPINE LEASING CAPITAL L.P. | Yes |
| 319. | 3AKJHHDR6PSNU8613 | TPINE LEASING CAPITAL L.P. | Yes |
| 320. | 3AKJHHDR7PSNU8474 | TPINE LEASING CAPITAL L.P. | Yes |
| 321. | 3AKJHHDR7PSNU8507 | TPINE LEASING CAPITAL L.P. | Yes |
| 322. | 3AKJHHDR7PSNU8524 | TPINE LEASING CAPITAL L.P. | Yes |
| 323. | 3AKJHHDR8PSNU8516 | TPINE LEASING CAPITAL L.P. | Yes |
| 324. | 3AKJHHDR8PSNU8564 | TPINE LEASING CAPITAL L.P. | Yes |
| 325. | 3AKJHHDR9PSNU8525 | TPINE LEASING CAPITAL L.P. | Yes |

*Current as at July 31, 2024*

| | VIN | Pride Entity | On Pride's Records |
|---|---|---|---|
| 326. | 3AKJHHDR9PSNU8590 | TPINE LEASING CAPITAL L.P. | Yes |
| 327. | 3AKJHHDRXPSNU8534 | TPINE LEASING CAPITAL L.P. | Yes |
| 328. | 3AKJHHDR0PSNU8543 | TPINE LEASING CAPITAL L.P. | Yes |
| 329. | 3AKJHHDR0PSNU8560 | TPINE LEASING CAPITAL L.P. | Yes |
| 330. | 3AKJHHDR0PSNU8591 | TPINE LEASING CAPITAL L.P. | Yes |
| 331. | 3AKJHHDR0PSNU8638 | TPINE LEASING CAPITAL L.P. | Yes |
| 332. | 3AKJHHDR1PSNU8583 | TPINE LEASING CAPITAL L.P. | Yes |
| 333. | 3AKJHHDR1PSNU8597 | TPINE LEASING CAPITAL L.P. | Yes |
| 334. | 3AKJHHDR1PSNU8602 | TPINE LEASING CAPITAL L.P. | Yes |
| 335. | 3AKJHHDR2PSNU8575 | TPINE LEASING CAPITAL L.P. | Yes |
| 336. | 3AKJHHDR2PSNU8589 | TPINE LEASING CAPITAL L.P. | Yes |
| 337. | 3AKJHHDR2PSNU8625 | TPINE LEASING CAPITAL L.P. | Yes |
| 338. | 3AKJHHDR2PSNU8706 | TPINE LEASING CAPITAL L.P. | Yes |
| 339. | 3AKJHHDR3PSNU8584 | TPINE LEASING CAPITAL L.P. | Yes |
| 340. | 3AKJHHDR3PSNU8651 | TPINE LEASING CAPITAL L.P. | Yes |
| 341. | 3AKJHHDR4PSNU8531 | TPINE LEASING CAPITAL L.P. | Yes |
| 342. | 3AKJHHDR4PSNU8593 | TPINE LEASING CAPITAL L.P. | Yes |
| 343. | 3AKJHHDR4PSNU8688 | TPINE LEASING CAPITAL L.P. | Yes |
| 344. | 3AKJHHDR4PSNU8707 | TPINE LEASING CAPITAL L.P. | Yes |
| 345. | 3AKJHHDR5PSNU8568 | TPINE LEASING CAPITAL L.P. | Yes |
| 346. | 3AKJHHDR5PSNU8571 | TPINE LEASING CAPITAL L.P. | Yes |
| 347. | 3AKJHHDR5PSNU8585 | TPINE LEASING CAPITAL L.P. | Yes |
| 348. | 3AKJHHDR5PSNU8697 | TPINE LEASING CAPITAL L.P. | Yes |
| 349. | 3AKJHHDR6PSNU8689 | TPINE LEASING CAPITAL L.P. | Yes |
| 350. | 3AKJHHDR7PSNU8586 | TPINE LEASING CAPITAL L.P. | Yes |
| 351. | 3AKJHHDR7PSNU8636 | TPINE LEASING CAPITAL L.P. | Yes |
| 352. | 3AKJHHDR7PSNU8670 | TPINE LEASING CAPITAL L.P. | Yes |
| 353. | 3AKJHHDR7PSNU8703 | TPINE LEASING CAPITAL L.P. | Yes |
| 354. | 3AKJHHDR8PSNU8502 | TPINE LEASING CAPITAL L.P. | Yes |
| 355. | 3AKJHHDR8PSNU8595 | TPINE LEASING CAPITAL L.P. | Yes |
| 356. | 3AKJHHDR8PSNU8631 | TPINE LEASING CAPITAL L.P. | Yes |
| 357. | 3AKJHHDR9PSNU8587 | TPINE LEASING CAPITAL L.P. | Yes |
| 358. | 3AKJHHDR9PSNU8623 | TPINE LEASING CAPITAL L.P. | Yes |
| 359. | 3AKJHHDR9PSNU8654 | TPINE LEASING CAPITAL L.P. | Yes |
| 360. | 3AKJHHDRXPSNU8579 | TPINE LEASING CAPITAL L.P. | Yes |
| 361. | 3AKJHHDRXPSNU8582 | TPINE LEASING CAPITAL L.P. | Yes |
| 362. | 3AKJHHDRXPSNU8632 | TPINE LEASING CAPITAL L.P. | Yes |
| 363. | 3AKJHHDR0PSNU8641 | TPINE LEASING CAPITAL L.P. | Yes |
| 364. | 3AKJHHDR0PSNU8686 | TPINE LEASING CAPITAL L.P. | Yes |
| 365. | 3AKJHHDR0PSNU8722 | TPINE LEASING CAPITAL L.P. | Yes |
| 366. | 3AKJHHDR1PSNU8650 | TPINE LEASING CAPITAL L.P. | Yes |
| 367. | 3AKJHHDR1PSNU8664 | TPINE LEASING CAPITAL L.P. | Yes |
| 368. | 3AKJHHDR1PSNU8681 | TPINE LEASING CAPITAL L.P. | Yes |
| 369. | 3AKJHHDR1PSNU8695 | TPINE LEASING CAPITAL L.P. | Yes |
| 370. | 3AKJHHDR2PSNU8642 | TPINE LEASING CAPITAL L.P. | Yes |
| 371. | 3AKJHHDR3PSNU8598 | TPINE LEASING CAPITAL L.P. | Yes |
| 372. | 3AKJHHDR3PSNU8648 | TPINE LEASING CAPITAL L.P. | Yes |

8

| | VIN | Pride Entity | On Pride's Records |
|---|---|---|---|
| 373. | 3AKJHHDR3PSNU8682 | TPINE LEASING CAPITAL L.P. | Yes |
| 374. | 3AKJHHDR3PSNU8696 | TPINE LEASING CAPITAL L.P. | Yes |
| 375. | 3AKJHHDR3PSNU8701 | TPINE LEASING CAPITAL L.P. | Yes |
| 376. | 3AKJHHDR4PSNU8674 | TPINE LEASING CAPITAL L.P. | Yes |
| 377. | 3AKJHHDR4PSNU8691 | TPINE LEASING CAPITAL L.P. | Yes |
| 378. | 3AKJHHDR5PSNU8649 | TPINE LEASING CAPITAL L.P. | Yes |
| 379. | 3AKJHHDR5PSNU8702 | TPINE LEASING CAPITAL L.P. | Yes |
| 380. | 3AKJHHDR6PSNU8594 | TPINE LEASING CAPITAL L.P. | Yes |
| 381. | 3AKJHHDR6PSNU8675 | TPINE LEASING CAPITAL L.P. | Yes |
| 382. | 3AKJHHDR6PSNU8692 | TPINE LEASING CAPITAL L.P. | Yes |
| 383. | 3AKJHHDR6PSNU8756 | TPINE LEASING CAPITAL L.P. | Yes |
| 384. | 3AKJHHDR7PSNU8653 | TPINE LEASING CAPITAL L.P. | Yes |
| 385. | 3AKJHHDR7PSNU8720 | TPINE LEASING CAPITAL L.P. | Yes |
| 386. | 3AKJHHDR8PSNU8645 | TPINE LEASING CAPITAL L.P. | Yes |
| 387. | 3AKJHHDR8PSNU8662 | TPINE LEASING CAPITAL L.P. | Yes |
| 388. | 3AKJHHDR8PSNU8693 | TPINE LEASING CAPITAL L.P. | Yes |
| 389. | 3AKJHHDR9PSNU8640 | TPINE LEASING CAPITAL L.P. | Yes |
| 390. | 3AKJHHDR9PSNU8685 | TPINE LEASING CAPITAL L.P. | Yes |
| 391. | 3AKJHHDR9PSNU8704 | TPINE LEASING CAPITAL L.P. | Yes |
| 392. | 3AKJHHDR9PSNU8721 | TPINE LEASING CAPITAL L.P. | Yes |
| 393. | 3AKJHHDR1PSUM7849 | TPINE LEASING CAPITAL L.P. | Yes |
| 394. | 3AKJHHDR2PSUM7844 | TPINE LEASING CAPITAL L.P. | Yes |
| 395. | 3AKJHHDR3PSUM7853 | TPINE LEASING CAPITAL L.P. | Yes |
| 396. | 3AKJHHDR4PSUM7845 | TPINE LEASING CAPITAL L.P. | Yes |
| 397. | 3AKJHHDR5PSUM7840 | TPINE LEASING CAPITAL L.P. | Yes |
| 398. | 3AKJHHDR5PSUM7854 | TPINE LEASING CAPITAL L.P. | Yes |
| 399. | 3AKJHHDR6PSUM7846 | TPINE LEASING CAPITAL L.P. | Yes |
| 400. | 3AKJHHDR7PSUM7841 | TPINE LEASING CAPITAL L.P. | Yes |
| 401. | 3AKJHHDR7PSUM7855 | TPINE LEASING CAPITAL L.P. | Yes |
| 402. | 3AKJHHDR8PSUM7847 | TPINE LEASING CAPITAL L.P. | Yes |
| 403. | 3AKJHHDR9PSUM7842 | TPINE LEASING CAPITAL L.P. | Yes |
| 404. | 3AKJHHDRXPSUM7848 | TPINE LEASING CAPITAL L.P. | Yes |
| 405. | 3AKJHHDRXPSUM7851 | TPINE LEASING CAPITAL L.P. | Yes |
| 406. | 3AKJHHDR0PSNU8655 | TPINE LEASING CAPITAL L.P. | Yes |
| 407. | 3AKJHHDR0PSNU8669 | TPINE LEASING CAPITAL L.P. | Yes |
| 408. | 3AKJHHDR0PSNU8705 | TPINE LEASING CAPITAL L.P. | Yes |
| 409. | 3AKJHHDR0PSNU8767 | TPINE LEASING CAPITAL L.P. | Yes |
| 410. | 3AKJHHDR1PSNU8678 | TPINE LEASING CAPITAL L.P. | Yes |
| 411. | 3AKJHHDR1PSNU8728 | TPINE LEASING CAPITAL L.P. | Yes |
| 412. | 3AKJHHDR1PSNU8759 | TPINE LEASING CAPITAL L.P. | Yes |
| 413. | 3AKJHHDR1PSNU8762 | TPINE LEASING CAPITAL L.P. | Yes |
| 414. | 3AKJHHDR2PSNU8639 | TPINE LEASING CAPITAL L.P. | Yes |
| 415. | 3AKJHHDR2PSNU8656 | TPINE LEASING CAPITAL L.P. | Yes |
| 416. | 3AKJHHDR2PSNU8673 | TPINE LEASING CAPITAL L.P. | Yes |
| 417. | 3AKJHHDR2PSNU8687 | TPINE LEASING CAPITAL L.P. | Yes |
| 418. | 3AKJHHDR2PSNU8690 | TPINE LEASING CAPITAL L.P. | Yes |
| 419. | 3AKJHHDR2PSNU8768 | TPINE LEASING CAPITAL L.P. | Yes |

| | VIN | Pride Entity | On Pride's Records |
|---|---|---|---|
| 420. | 3AKJHHDR3PSNU8665 | TPINE LEASING CAPITAL L.P. | Yes |
| 421. | 3AKJHHDR3PSNU8679 | TPINE LEASING CAPITAL L.P. | Yes |
| 422. | 3AKJHHDR3PSNU8729 | TPINE LEASING CAPITAL L.P. | Yes |
| 423. | 3AKJHHDR4PSNU8657 | TPINE LEASING CAPITAL L.P. | Yes |
| 424. | 3AKJHHDR4PSNU8660 | TPINE LEASING CAPITAL L.P. | Yes |
| 425. | 3AKJHHDR4PSNU8710 | TPINE LEASING CAPITAL L.P. | Yes |
| 426. | 3AKJHHDR4PSNU8724 | TPINE LEASING CAPITAL L.P. | Yes |
| 427. | 3AKJHHDR4PSNU8769 | TPINE LEASING CAPITAL L.P. | Yes |
| 428. | 3AKJHHDR5PSNU8554 | TPINE LEASING CAPITAL L.P. | Yes |
| 429. | 3AKJHHDR5PSNU8716 | TPINE LEASING CAPITAL L.P. | Yes |
| 430. | 3AKJHHDR6PSNU8644 | TPINE LEASING CAPITAL L.P. | Yes |
| 431. | 3AKJHHDR6PSNU8661 | TPINE LEASING CAPITAL L.P. | Yes |
| 432. | 3AKJHHDR6PSNU8708 | TPINE LEASING CAPITAL L.P. | Yes |
| 433. | 3AKJHHDR6PSNU8725 | TPINE LEASING CAPITAL L.P. | Yes |
| 434. | 3AKJHHDR7PSNU8717 | TPINE LEASING CAPITAL L.P. | Yes |
| 435. | 3AKJHHDR7PSNU8765 | TPINE LEASING CAPITAL L.P. | Yes |
| 436. | 3AKJHHDR8PSNU8581 | TPINE LEASING CAPITAL L.P. | Yes |
| 437. | 3AKJHHDR8PSNU8676 | TPINE LEASING CAPITAL L.P. | Yes |
| 438. | 3AKJHHDR8PSNU8709 | TPINE LEASING CAPITAL L.P. | Yes |
| 439. | 3AKJHHDR8PSNU8712 | TPINE LEASING CAPITAL L.P. | Yes |
| 440. | 3AKJHHDR8PSNU8726 | TPINE LEASING CAPITAL L.P. | Yes |
| 441. | 3AKJHHDR8PSNU8757 | TPINE LEASING CAPITAL L.P. | Yes |
| 442. | 3AKJHHDR8PSNU8760 | TPINE LEASING CAPITAL L.P. | Yes |
| 443. | 3AKJHHDR9PSNU8637 | TPINE LEASING CAPITAL L.P. | Yes |
| 444. | 3AKJHHDR9PSNU8699 | TPINE LEASING CAPITAL L.P. | Yes |
| 445. | 3AKJHHDR9PSNU8718 | TPINE LEASING CAPITAL L.P. | Yes |
| 446. | 3AKJHHDRXPSNU8646 | TPINE LEASING CAPITAL L.P. | Yes |
| 447. | 3AKJHHDRXPSNU8663 | TPINE LEASING CAPITAL L.P. | Yes |
| 448. | 3AKJHHDRXPSNU8680 | TPINE LEASING CAPITAL L.P. | Yes |
| 449. | 3AKJHHDRXPSNU8713 | TPINE LEASING CAPITAL L.P. | Yes |
| 450. | 3AKJHHDRXPSNU8727 | TPINE LEASING CAPITAL L.P. | Yes |
| 451. | 3AKJHHDRXPSNU8758 | TPINE LEASING CAPITAL L.P. | Yes |
| 452. | 3AKJHHDRXPSNU8761 | TPINE LEASING CAPITAL L.P. | Yes |
| 453. | 3AKJHHDR0PSNU8672 | TPINE LEASING CAPITAL L.P. | Yes |
| 454. | 3AKJHHDR0PSNU8719 | TPINE LEASING CAPITAL L.P. | No |
| 455. | 3AKJHHDR1PSNU8714 | TPINE LEASING CAPITAL L.P. | Yes |
| 456. | 3AKJHHDR4PSNU8643 | TPINE LEASING CAPITAL L.P. | Yes |
| 457. | 3AKJHHDR5PSNU8652 | TPINE LEASING CAPITAL L.P. | Yes |
| 458. | 3AKJHHDR7PSNU8684 | TPINE LEASING CAPITAL L.P. | Yes |
| 459. | 3AKJHHDR7PSNU8698 | TPINE LEASING CAPITAL L.P. | Yes |
| 460. | 3AKJHHDR9PSNU8668 | TPINE LEASING CAPITAL L.P. | Yes |
| 461. | 3AKJHHDRXPSNU8730 | TPINE LEASING CAPITAL L.P. | Yes |
| 462. | 3AKJHHDR4PSUM7859 | TPINE LEASING CAPITAL L.P. | Yes |
| 463. | 3AKJHHDR0PSUM7857 | TPINE LEASING CAPITAL L.P. | Yes |
| 464. | 3AKJHHDR8PSUM7850 | TPINE LEASING CAPITAL L.P. | No |
| 465. | 3AKJHHDR9PSUM7856 | TPINE LEASING CAPITAL L.P. | Yes |
| 466. | 3AKJHHDR1PSNU8633 | TPINE LEASING CAPITAL L.P. | Yes |

*Current as at July 31, 2024*

| | VIN | Pride Entity | On Pride's Records |
|---|---|---|---|
| 467. | 3AKJHHDR5PSNU8666 | TPINE LEASING CAPITAL L.P. | Yes |
| 468. | 3AKJHHDR5PSNU8764 | TPINE LEASING CAPITAL L.P. | Yes |
| 469. | 3AKJHHDR1PSNU8647 | TPINE LEASING CAPITAL L.P. | Yes |
| 470. | 3AKJHHDR3PSNU8634 | TPINE LEASING CAPITAL L.P. | Yes |
| 471. | 3AKJHHDR3PSNU8715 | TPINE LEASING CAPITAL L.P. | Yes |
| 472. | 3AKJHHDR3PSNU8763 | TPINE LEASING CAPITAL L.P. | Yes |
| 473. | 3AKJHHDR6PSNU8711 | TPINE LEASING CAPITAL L.P. | Yes |
| 474. | 3AKJHHDR0PSUM7843 | TPINE LEASING CAPITAL L.P. | Yes |
| 475. | 3AKJHHDR5PSNU8683 | TPINE LEASING CAPITAL L.P. | Yes |
| 476. | 3AKJHHDR0PSNU8574 | TPINE LEASING CAPITAL L.P. | Yes |
| 477. | 3AKJHHDR0PSNU8834 | TPINE LEASING CAPITAL L.P. | Yes |
| 478. | 3AKJHHDR1PSNU8843 | TPINE LEASING CAPITAL L.P. | Yes |
| 479. | 3AKJHHDR2PSNU8835 | TPINE LEASING CAPITAL L.P. | Yes |
| 480. | 3AKJHHDR2PSNU8849 | TPINE LEASING CAPITAL L.P. | Yes |
| 481. | 3AKJHHDR2PSNU8852 | TPINE LEASING CAPITAL L.P. | Yes |
| 482. | 3AKJHHDR3PSNU8844 | TPINE LEASING CAPITAL L.P. | Yes |
| 483. | 3AKJHHDR4PSNU8853 | TPINE LEASING CAPITAL L.P. | Yes |
| 484. | 3AKJHHDR8PSNU8838 | TPINE LEASING CAPITAL L.P. | Yes |
| 485. | 3AKJHHDR9PSNU8833 | TPINE LEASING CAPITAL L.P. | Yes |
| 486. | 3AKJHHDR2PSUM7858 | TPINE LEASING CAPITAL L.P. | Yes |
| 487. | 3AKJHHDR0PSNU8851 | TPINE LEASING CAPITAL L.P. | Yes |
| 488. | 3AKJHHDR3PSNU8830 | TPINE LEASING CAPITAL L.P. | Yes |
| 489. | 3AKJHHDR4PSNU8836 | TPINE LEASING CAPITAL L.P. | Yes |
| 490. | 3AKJHHDR5PSNU8831 | TPINE LEASING CAPITAL L.P. | Yes |
| 491. | 3AKJHHDR6PSNU8837 | TPINE LEASING CAPITAL L.P. | Yes |
| 492. | 3AKJHHDR6PSNU8840 | TPINE LEASING CAPITAL L.P. | Yes |
| 493. | 3AKJHHDR7PSNU8832 | TPINE LEASING CAPITAL L.P. | Yes |
| 494. | 3AKJHHDR7PSNU8846 | TPINE LEASING CAPITAL L.P. | Yes |
| 495. | 3AKJHHDR8PSNU8841 | TPINE LEASING CAPITAL L.P. | Yes |
| 496. | 3AKJHHDR9PSNU8850 | TPINE LEASING CAPITAL L.P. | Yes |
| 497. | 3AKJHHDRXPSNU8842 | TPINE LEASING CAPITAL L.P. | Yes |
| 498. | 3AKJHHDR0PSNU8848 | TPINE LEASING CAPITAL L.P. | Yes |
| 499. | 3AKJHHDR5PSNU8845 | TPINE LEASING CAPITAL L.P. | Yes |
| 500. | 3AKJHHDR9PSNU8847 | TPINE LEASING CAPITAL L.P. | Yes |
| 501. | 3AKJHHDRXPSNU8839 | TPINE LEASING CAPITAL L.P. | Yes |
| 502. | 3AKJHHDR6PSNU8854 | TPINE LEASING CAPITAL L.P. | Yes |
| 503. | 1FVACWFC7PHNU9002 | TPINE LEASING CAPITAL L.P. | Yes |
| 504. | 3AKJHHDR1RSUV2522 | TPINE LEASING CAPITAL L.P. | Yes |
| 505. | 3AKJHHDR2RSUV2514 | TPINE LEASING CAPITAL L.P. | Yes |
| 506. | 3AKJHHDR3RSUV2523 | TPINE LEASING CAPITAL L.P. | Yes |
| 507. | 3AKJHHDR4RSUV2515 | TPINE LEASING CAPITAL L.P. | Yes |
| 508. | 3AKJHHDR5RSUV2507 | TPINE LEASING CAPITAL L.P. | Yes |
| 509. | 3AKJHHDR5RSUV2510 | TPINE LEASING CAPITAL L.P. | Yes |
| 510. | 3AKJHHDR7RSUV2508 | TPINE LEASING CAPITAL L.P. | Yes |
| 511. | 3AKJHHDR7RSUV2511 | TPINE LEASING CAPITAL L.P. | Yes |
| 512. | 3AKJHHDR7RSUV2525 | TPINE LEASING CAPITAL L.P. | Yes |
| 513. | 3AKJHHDR8RSUV2517 | TPINE LEASING CAPITAL L.P. | Yes |

*Current as at July 31, 2024*

|  | VIN | Pride Entity | On Pride's Records |
|---|---|---|---|
| 514. | 3AKJHHDR8RSUV2520 | TPINE LEASING CAPITAL L.P. | Yes |
| 515. | 3AKJHHDR9RSUV2509 | TPINE LEASING CAPITAL L.P. | Yes |
| 516. | 3AKJHHDR9RSUV2512 | TPINE LEASING CAPITAL L.P. | Yes |
| 517. | 3AKJHHDR9RSUV2526 | TPINE LEASING CAPITAL L.P. | Yes |
| 518. | 3AKJHHDRXRSUV2518 | TPINE LEASING CAPITAL L.P. | Yes |
| 519. | 3AKJHHDRXRSUV2521 | TPINE LEASING CAPITAL L.P. | Yes |
| 520. | 3AKJHHDR1PSUM7852 | TPINE LEASING CAPITAL L.P. | Yes |
| 521. | 3AKJHHDR0RSUV2513 | TPINE LEASING CAPITAL L.P. | Yes |
| 522. | 3AKJHHDR1RSUV2519 | TPINE LEASING CAPITAL L.P. | Yes |
| 523. | 3AKJHHDR7PSNU8667 | TPINE LEASING CAPITAL L.P. | Yes |
| 524. | 3AKJHHDR2RSUZ0115 | TPINE LEASING CAPITAL L.P. | Yes |
| 525. | 3AKJHHDR4RSUZ0116 | TPINE LEASING CAPITAL L.P. | Yes |
| 526. | 3AKJHHDR6RSUZ0117 | TPINE LEASING CAPITAL L.P. | Yes |
| 527. | 3AKJHHDR6RSUZ0120 | TPINE LEASING CAPITAL L.P. | Yes |
| 528. | 3AKJHHDR8RSUZ0118 | TPINE LEASING CAPITAL L.P. | Yes |
| 529. | 3AKJHHDR8RSUZ0121 | TPINE LEASING CAPITAL L.P. | Yes |
| 530. | 3AKJHHDRXRSUZ0119 | TPINE LEASING CAPITAL L.P. | Yes |
| 531. | 3AKJHHDR0RSUV0731 | TPINE LEASING CAPITAL L.P. | Yes |
| 532. | 3AKJHHDR1RSUV0737 | TPINE LEASING CAPITAL L.P. | Yes |
| 533. | 3AKJHHDR2RSUV0732 | TPINE LEASING CAPITAL L.P. | Yes |
| 534. | 3AKJHHDR4RSUV0733 | TPINE LEASING CAPITAL L.P. | Yes |
| 535. | 3AKJHHDR5RSUV2524 | TPINE LEASING CAPITAL L.P. | Yes |
| 536. | 3AKJHHDR6RSUV0734 | TPINE LEASING CAPITAL L.P. | Yes |
| 537. | 3AKJHHDR8RSUV0735 | TPINE LEASING CAPITAL L.P. | Yes |
| 538. | 3AKJHHDRXRSUV0736 | TPINE LEASING CAPITAL L.P. | Yes |
| 539. | 3ALACWFCXRDUV3017 | TPINE LEASING CAPITAL L.P. | Yes |
| 540. | 3AKJHHDR9RSUV0744 | TPINE LEASING CAPITAL L.P. | Yes |
| 541. | 3ALACWFC1RDUV3021 | TPINE LEASING CAPITAL L.P. | Yes |
| 542. | 3ALACWFCXRDUV3020 | TPINE LEASING CAPITAL L.P. | Yes |
| 543. | 3AKJHHDR0RSVA7506 | TPINE LEASING CAPITAL L.P. | Yes |
| 544. | 3AKJHHDR1RSUV0740 | TPINE LEASING CAPITAL L.P. | Yes |
| 545. | 3AKJHHDR2RSVA7507 | TPINE LEASING CAPITAL L.P. | Yes |
| 546. | 3AKJHHDR2RSVA7510 | TPINE LEASING CAPITAL L.P. | Yes |
| 547. | 3AKJHHDR3RSUV0738 | TPINE LEASING CAPITAL L.P. | Yes |
| 548. | 3AKJHHDR3RSUV0741 | TPINE LEASING CAPITAL L.P. | Yes |
| 549. | 3AKJHHDR4RSVA7508 | TPINE LEASING CAPITAL L.P. | Yes |
| 550. | 3AKJHHDR5RSUV0742 | TPINE LEASING CAPITAL L.P. | Yes |
| 551. | 3AKJHHDR5RSVA7503 | TPINE LEASING CAPITAL L.P. | Yes |
| 552. | 3AKJHHDR6RSVA7509 | TPINE LEASING CAPITAL L.P. | Yes |
| 553. | 3AKJHHDR7RSVA7504 | TPINE LEASING CAPITAL L.P. | Yes |
| 554. | 3AKJHHDR9RSVA7505 | TPINE LEASING CAPITAL L.P. | Yes |
| 555. | 3AKJHHDR5RSUV0739 | TPINE LEASING CAPITAL L.P. | Yes |
| 556. | 3ALACWFC1RDUV3018 | TPINE LEASING CAPITAL L.P. | Yes |
| 557. | 3ALACWFC5RDUV3023 | TPINE LEASING CAPITAL L.P. | Yes |
| 558. | 3AKJHHDR1RSUZ0123 | TPINE LEASING CAPITAL L.P. | Yes |
| 559. | 3AKJHHDR3RSUZ0124 | TPINE LEASING CAPITAL L.P. | Yes |
| 560. | 3AKJHHDR7RSUZ0126 | TPINE LEASING CAPITAL L.P. | Yes |

*Current as at July 31, 2024*

|      | VIN                | Pride Entity              | On Pride's Records |
|------|--------------------|---------------------------|--------------------|
| 561. | 3AKJHHDRXRSUZ0122  | TPINE LEASING CAPITAL L.P. | No                 |
| 562. | 3AKJHHDRXRSVA7514  | TPINE LEASING CAPITAL L.P. | Yes                |
| 563. | 3AKJHHDR5RSUZ0125  | TPINE LEASING CAPITAL L.P. | Yes                |
| 564. | 3AKJHHDR9RSUZ0127  | TPINE LEASING CAPITAL L.P. | Yes                |
| 565. | 3AKJHHDR1RSVA7515  | TPINE LEASING CAPITAL L.P. | Yes                |
| 566. | 3AKJHHDR3RSVA7516  | TPINE LEASING CAPITAL L.P. | Yes                |
| 567. | 3AKJHHDR7RSVA7518  | TPINE LEASING CAPITAL L.P. | Yes                |
| 568. | 3AKJHHDR7RSVA7521  | TPINE LEASING CAPITAL L.P. | Yes                |
| 569. | 3AKJHHDR8RSVA7513  | TPINE LEASING CAPITAL L.P. | Yes                |
| 570. | 3AKJHHDR9RSVA7519  | TPINE LEASING CAPITAL L.P. | Yes                |
| 571. | 1FUJH4F71RPUX9521  | TPINE LEASING CAPITAL L.P. | Yes                |
| 572. | 3AKJHHDR0RSVA7523  | TPINE LEASING CAPITAL L.P. | Yes                |
| 573. | 3AKJHHDR2RSVA7524  | TPINE LEASING CAPITAL L.P. | Yes                |
| 574. | 3AKJHHDR4RSVA7511  | TPINE LEASING CAPITAL L.P. | Yes                |
| 575. | 3AKJHHDR4RSVA7525  | TPINE LEASING CAPITAL L.P. | Yes                |
| 576. | 3AKJHHDR6RSVA7526  | TPINE LEASING CAPITAL L.P. | Yes                |
| 577. | 3AKJHHDR3RSVE2749  | TPINE LEASING CAPITAL L.P. | Yes                |
| 578. | 3AKJHHDR5RSVA7517  | TPINE LEASING CAPITAL L.P. | Yes                |
| 579. | 3AKJHHDR1RSVE2748  | TPINE LEASING CAPITAL L.P. | Yes                |
| 580. | 3AKJHHDRXRSVE2747  | TPINE LEASING CAPITAL L.P. | Yes                |
| 581. | 3AKJHHDRXRSVE2750  | TPINE LEASING CAPITAL L.P. | Yes                |
| 582. | 3AKJHHDR1RSVE2751  | TPINE LEASING CAPITAL L.P. | Yes                |
| 583. | 3AKJHHDR3RSVE2752  | TPINE LEASING CAPITAL L.P. | Yes                |
| 584. | 3AKJHHDR5RSVE2753  | TPINE LEASING CAPITAL L.P. | Yes                |
| 585. | 3AKJHHDR0RSVF4177  | TPINE LEASING CAPITAL L.P. | Yes                |
| 586. | 3AKJHHDR0RSVF4180  | TPINE LEASING CAPITAL L.P. | Yes                |
| 587. | 3AKJHHDR2RSVF4178  | TPINE LEASING CAPITAL L.P. | Yes                |
| 588. | 3AKJHHDR4RSVF4179  | TPINE LEASING CAPITAL L.P. | Yes                |
| 589. | 3AKJHHDR5RSVF4174  | TPINE LEASING CAPITAL L.P. | Yes                |
| 590. | 3AKJHHDR7RSVF4175  | TPINE LEASING CAPITAL L.P. | Yes                |
| 591. | 3AKJHHDR9RSVF4176  | TPINE LEASING CAPITAL L.P. | Yes                |
| 592. | 3AKJHHDR4RSVG4436  | TPINE LEASING CAPITAL L.P. | Yes                |
| 593. | 3AKJHHDR6RSVG4437  | TPINE LEASING CAPITAL L.P. | Yes                |
| 594. | 3AKJHHDR6RSVG4440  | TPINE LEASING CAPITAL L.P. | Yes                |
| 595. | 3AKJHHDR8RSVG4438  | TPINE LEASING CAPITAL L.P. | Yes                |
| 596. | 3AKJHHDRXRSVG4439  | TPINE LEASING CAPITAL L.P. | Yes                |
| 597. | 3AKJHHDR1RSUU6526  | TPINE LEASING CAPITAL L.P. | Yes                |
| 598. | 3AKJHHDR3RSUU6527  | TPINE LEASING CAPITAL L.P. | Yes                |
| 599. | 3AKJHHDR3RSUU6530  | TPINE LEASING CAPITAL L.P. | Yes                |
| 600. | 3AKJHHDR4RSUU6519  | TPINE LEASING CAPITAL L.P. | Yes                |
| 601. | 3AKJHHDR5RSUU6528  | TPINE LEASING CAPITAL L.P. | Yes                |
| 602. | 3AKJHHDR5RSUU6531  | TPINE LEASING CAPITAL L.P. | Yes                |
| 603. | 3AKJHHDR7RSUU6529  | TPINE LEASING CAPITAL L.P. | Yes                |
| 604. | 3AKJHHDR7RSUU6532  | TPINE LEASING CAPITAL L.P. | Yes                |
| 605. | 3AKJHHDRXRSUU6525  | TPINE LEASING CAPITAL L.P. | Yes                |
| 606. | 1FUJH4F71RPUL2750  | TPINE LEASING CAPITAL L.P. | Yes                |
| 607. | 3AKJHHDR1NSMX5941  | TPINE LEASING CAPITAL L.P. | Yes                |

| | VIN | Pride Entity | On Pride's Records |
|---|---|---|---|
| 608. | 3AKJHHDR2NSMX5933 | TPINE LEASING CAPITAL L.P. | Yes |
| 609. | 3AKJHHDR3NSMX5956 | TPINE LEASING CAPITAL L.P. | Yes |
| 610. | 3AKJHHDR8NSMX5953 | TPINE LEASING CAPITAL L.P. | Yes |
| 611. | 3AKJHHDR2NSMX5902 | TPINE LEASING CAPITAL L.P. | Yes |
| 612. | 3AKJHHDR3NSMX5875 | TPINE LEASING CAPITAL L.P. | Yes |
| 613. | 3AKJHHDR3NSMX5939 | TPINE LEASING CAPITAL L.P. | Yes |
| 614. | 3AKJHHDR4NSMX5996 | TPINE LEASING CAPITAL L.P. | Yes |
| 615. | 3AKJHHDR5NSMX5957 | TPINE LEASING CAPITAL L.P. | Yes |
| 616. | 3AKJHHDR9NSMX5847 | TPINE LEASING CAPITAL L.P. | Yes |
| 617. | 3AKJHHDR9NSMX5895 | TPINE LEASING CAPITAL L.P. | Yes |
| 618. | 3AKJHHDR9NSMX5931 | TPINE LEASING CAPITAL L.P. | Yes |
| 619. | 3AKJHHDR9NSMX5959 | TPINE LEASING CAPITAL L.P. | Yes |
| 620. | 3AKJHHDR9NSMX6044 | TPINE LEASING CAPITAL L.P. | Yes |
| 621. | 3AKJHHDR1MSMH8770 | TPINE LEASING CAPITAL L.P. | Yes |
| 622. | 3AKJHHDR1MSMH8977 | TPINE LEASING CAPITAL L.P. | Yes |
| 623. | 3AKJHHDR2MSMH9006 | TPINE LEASING CAPITAL L.P. | Yes |
| 624. | 3AKJHHDR4MSMH8861 | TPINE LEASING CAPITAL L.P. | Yes |
| 625. | 3AKJHHDR4MSMH8889 | TPINE LEASING CAPITAL L.P. | Yes |
| 626. | 3AKJHHDR5MSMH8741 | TPINE LEASING CAPITAL L.P. | Yes |
| 627. | 3AKJHHDR9MSMH8869 | TPINE LEASING CAPITAL L.P. | Yes |
| 628. | 3AKJHHDR5MSMH8934 | TPINE LEASING CAPITAL L.P. | Yes |
| 629. | 3AKJHHDR2RSVG4435 | TPINE LEASING CAPITAL L.P. | Yes |
| 630. | 3AKJHHDR0RSVH9709 | TPINE LEASING CAPITAL L.P. | Yes |
| 631. | 3AKJHHDR0RSVH9712 | TPINE LEASING CAPITAL L.P. | Yes |
| 632. | 3AKJHHDR2RSVH9713 | TPINE LEASING CAPITAL L.P. | Yes |
| 633. | 3AKJHHDR7RSVH9707 | TPINE LEASING CAPITAL L.P. | Yes |
| 634. | 3AKJHHDR7RSVH9710 | TPINE LEASING CAPITAL L.P. | Yes |
| 635. | 3AKJHHDR9RSVH9708 | TPINE LEASING CAPITAL L.P. | Yes |
| 636. | 3AKJHHDR9RSVH9711 | TPINE LEASING CAPITAL L.P. | Yes |
| 637. | 3AKJHHDR0RSVJ4590 | TPINE LEASING CAPITAL L.P. | Yes |
| 638. | 3AKJHHDR2RSVJ4591 | TPINE LEASING CAPITAL L.P. | Yes |
| 639. | 3AKJHHDR4RSVJ4592 | TPINE LEASING CAPITAL L.P. | Yes |
| 640. | 3AKJHHDR6RSVJ4593 | TPINE LEASING CAPITAL L.P. | Yes |
| 641. | 3AKJHHDR8RSVJ4594 | TPINE LEASING CAPITAL L.P. | Yes |
| 642. | 3AKJHHDR2RSVJ4588 | TPINE LEASING CAPITAL L.P. | Yes |
| 643. | 3AKJHHDR4RSVJ4589 | TPINE LEASING CAPITAL L.P. | Yes |
| 644. | 3AKJHHDR3RSVJ9895 | TPINE LEASING CAPITAL L.P. | Yes |
| 645. | 3AKJHHDR4RSVJ9890 | TPINE LEASING CAPITAL L.P. | Yes |
| 646. | 3AKJHHDR6RSVJ9891 | TPINE LEASING CAPITAL L.P. | Yes |
| 647. | 3AKJHHDR8RSVJ9892 | TPINE LEASING CAPITAL L.P. | Yes |
| 648. | 3AKJHHDR8PSNU8659 | TPINE LEASING CAPITAL L.P. | Yes |

*Current as at July 31, 2024*

**APPENDIX 25B**
**DAIMLER US**
(*VINS where sufficient evidence of a perfected and priority interest **not** provided*)

|    | VIN | Pride Entity | On Pride's Records |
|----|-----|--------------|--------------------|
| 1. | 3AKJHHDR0MSMH8968 | TPINE LEASING CAPITAL L.P. | Yes |

1

# Exhibit "4"

DocuSign Envelope ID: 137CE130-7619-4404-8DF0-DD96D3694D2A

This is a copy view of the Authoritative Copy held by the designated custodian.

Date: 04/25/2023
Quote #: 307822

# Daimler
Truck Financial

## Note and Security Agreement (Multi-State) TPine Leasing

TFFF4675  D

| BORROWER: | DBA: | CO-BORROWER: |
|---|---|---|

TPine Leasing Capital L.P.
1125 E Alexis Rd
Toledo  **OH**  436123907  Lucas

**LENDER: Daimler Truck Financial Services USA LLC (14372 Heritage Parkway, Suite 400, Fort Worth, Texas 76177), *and its successors, transferees and assigns.***

I (meaning individually, collectively, and interchangeably, all Borrowers named above, jointly and severally) have entered into this Note and Security Agreement ("Note") with Lender in the original principal amount of $1,138,426.80 ("Loan Amount") to borrow funds to be used to purchase the following described equipment ("Equipment"). I acknowledge that I have accepted delivery of the Equipment in good order without reservation of rights and without implied warranty as to condition, merchantability, and suitability for any purpose. I further acknowledge and certify that I have entered into this Note with Lender, and I intend to use the purchased Equipment, primarily for business or commercial purposes, and not for personal, family, household or agricultural purposes.

**DESCRIPTION OF EQUIPMENT: ***See attached Property Schedule Addendum*** | List Payoff to:**

| New//Used | Make | Model | Serial Number | Body Type | Model Year | Cash Sale Price |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

**PROMISE TO PAY:** I promise to pay to the order of Lender the Loan Amount together with daily simple interest thereon at the rate set forth on page 2 of this Note from the date of this Note until all of my obligations under this Note are fully paid and satisfied.

**PAYMENT TERMS:** My loan is payable in ___60___ payments of ___$22,999.65___ each, commencing on ___07/24/2023___ and continuing on the ___24th___ day of each successive month thereafter, which includes a final payment of the then unpaid principal and interest in the estimated amount of ___$22,999.65___ due on ___06/24/2028___ (except as otherwise stated on the Payment Schedule Addendum attached hereto and made a part hereof). The amount of my final payment may vary depending upon when Lender receives my periodic loan payments, and will include the unpaid principal balance, interest and any other amounts owed as of the final payment due date.

**SECURITY AGREEMENT:** In order to secure the prompt and punctual payment and satisfaction of my Indebtedness (as defined herein), I am granting Lender a security interest in the Equipment, and in all accessions, replacements and additions to the Equipment, and in all leases and chattel paper of the Equipment, and in all lease payments, rentals, and rights thereto, and in all proceeds derived from the Equipment, including insurance proceeds and refunds of insurance premiums. If Lender permits me to allow others to use or lease the Equipment, I agree to stamp any agreement between me and my lessee with language approved by Lender and to provide and update Lender with all current contact information of user or lessee. I also agree that, to the extent permitted by applicable law, collateral securing other loans, credit sales and leases that I may have with Lender or any affiliate of Lender, whether now or in the future, additionally will secure my Indebtedness under this Note. The Equipment, all leases and chattel paper of the Equipment, all lease payments, rentals, and rights thereto, proceeds, and my additional collateral securing other loans, credit sales, and leases with Lender or any affiliate of Lender, are individually, collectively and interchangeably referred to under this Note as my "Collateral." For purposes of this Note, the term "Indebtedness" means: (1) my indebtedness under this Note for payment of principal, interest, late charges, returned check fees, liquidated damages and any other amounts due hereunder; (2) to the extent permitted by applicable law, my indebtedness under any other loans, leases or other obligations that I may now and in the future owe to Lender or any affiliate of Lender, other than loans, leases or other obligations secured by vehicles or other goods which I represent on the loan, lease or other obligation documents are used or to be used by me primarily for personal, family or household purposes; (3) all additional funds that Lender or any affiliate of Lender may advance on my behalf as provided in this Note; and (4) Lender's costs and expenses incurred in enforcing Lender's rights under this Note, and in protecting and preserving the Collateral, including, to the extent permitted by applicable law, reimbursement of Lender's reasonable attorneys' fees, court costs, and collection expenses.

**ACKNOWLEDGEMENT:** I (we) have read, accepted and acknowledge receipt of a completed copy of the Note, including the Terms and Conditions on the reverse side or following pages which are made a part hereof and I (we) agree to all its terms.

| Borrower: TPine Leasing Capital L.P. DBA: | Co-Borrower: |
|---|---|
| Signature: *Sam Johal* | Signature: _____ |
| Title: Pride Truck Sales LP by: Coastline Holdings it's GP by: Sulkhan Johal it's President | Title: _____ |

## GUARANTY

I (we) hereby, jointly, severally and unconditionally guarantee payment of all Indebtedness under this Note, and all extensions, substitutions and refinancings thereof, and agree to the Note's terms and conditions. I (we) waive any rights that I (we) may have to require Lender to first exhaust its remedies against the Borrower(s), the Collateral, or any other guarantor, before collecting under this Guaranty. If I (we) default under this Guaranty and you refer this Guaranty to an attorney for collection, I (we) will pay your attorneys' fees, court costs and disbursements to the extent permitted by law.

| Guarantor Name: | Guarantor Name: |
|---|---|
| Signature: _____ | Signature: _____ |

DocuSign Envelope ID: 137CE150-7619-4041-8UF5-6D96D3694D2A

# Daimler
**Truck Financial**

## Note and Security Agreement (Multi-State)

This is a copy viewed... representative copy by the designated ...
Date: 04/25/2023
TFFF4675   D   307822

1. **Interest Rate:** Daily simple interest will be assessed on the Loan Amount at the following rate from the date of this Note until all of my obligations under this Note are fully paid and satisfied: ___7.34%___ per annum . Interest will be computed on the basis of the actual number of days elapsed in a 365 day year, or a 366 day year if a leap year.

2. **Late Payment/Additional Charges:** If I fail to make any payment within ten (10) days of the due date, I agree to pay Lender a late payment fee in an amount equal to 5% of the unpaid amount, or such lesser amount as may be limited by law. In addition, I agree to pay a charge of $30, or such lesser amount as may be limited by law, for each check, draft or similar instrument presented to Lender that is returned or dishonored for any reason.

3. **Prepayment:** To the extent permitted by applicable law, I understand that if I prepay what I owe Lender under this Note or if Lender accelerates payment as a result of my default, at any time before the first twelve (12) payments, Lender has the right to charge me, and I agree to pay Lender, liquidated damages in an amount equal to three percent (3%) of my then unpaid principal balance. After the first twelve (12) payments and until all of my obligations under this Note are fully paid and satisfied, I understand that if I prepay what I owe Lender under this Note or if Lender accelerates payment as a result of my default, Lender has the right to charge me liquidated damages in an amount equal to seven hundred fifty dollars ($750) per each item of Equipment.

4. **Perfection of Security Interest:** I authorize Lender to perfect its security interest in the Collateral. I agree to reimburse Lender for all filing costs and perfection expenses, as well as for all costs of amending, continuing and terminating such filings.

5. **Covenants:** I agree: (1) not to sell, lease, transfer or assign the Collateral without Lender's prior written consent; (2) not to allow any other security interest or lien to be placed on or to attach to the Collateral; (3) not to make any material changes or alterations to the Equipment without Lender's prior written consent (including replacements, additions, accessories or substitutions); (4) not to remove the Equipment from the state in which I reside or have my principal offices, other than in the ordinary course of business, for a period in excess of sixty (60) consecutive days, without first obtaining Lender's prior written consent; (5) not to re-title the Equipment in another state without first notifying Lender; and (6) if I am a business entity, not to change my name or form or state of organization without first notifying Lender at least thirty (30) days in advance of such change. I further agree: (a) that anything that may be attached to the Equipment will become an accession to the Equipment, and will become part of the Collateral; (b) to make all necessary repairs to, and not to abandon the Equipment; (c) to abide by all laws and rules and regulations with respect to the use and operation of the Equipment, and to obtain all necessary permits and licenses in those jurisdictions where required; (d) to pay all taxes and assessments levied against the Equipment and to furnish Lender with proof of such payments; and (e) to permit Lender to inspect the Equipment at reasonable times.

6. **Insurance:** I agree to keep the Equipment continuously insured by an insurance company and with deductible approved by Lender, with comprehensive and collision coverage, and with coverage for any other hazards Lender may specify from time to time for coverage amounts not less than the actual cash value of the Equipment or the outstanding principal balance of my Indebtedness. I may purchase this insurance from any insurance company reasonably acceptable to Lender. I agree to provide Lender with written proof of a paid insurance policy, and subsequent renewals, showing Lender as a lender's loss payee and additional insured under my insurance policy, which policy will require at least thirty (30) days advance written notice to Lender before it may lapse, be reduced, canceled or terminated for any reason. I agree that all insurance proceeds, including any premium refunds, are payable first to Lender to the extent of its interest in the Equipment, and I assign my interest in same to Lender. Lender may apply any insurance proceeds and any premium refunds received to the unpaid balance of my Indebtedness. Should I fail to purchase and maintain adequate insurance on the Equipment, as determined by Lender (at Lender's sole discretion), then Lender may (at Lender's sole option, and without any responsibility or liability to do so) purchase such insurance as Lender deems necessary to protect its interest. The amount advanced by Lender for said insurance shall be immediately due and repaid to Lender, together with interest with a rate up to 18% per annum, as limited by law, from the date of such advance. I authorize Lender to release to third parties any information necessary to facilitate insurance and tax monitoring and insurance placement. If there is a total loss on any item of Equipment, I agree to immediately pay to Lender all insurance proceeds and amounts needed to retire the unpaid principal balance plus accrued interest and any other allocable amounts then due and owing on such item of Equipment. All insurance policies financed under this Note, unless a shorter period is specified in the policy, and upon the original due date of the last payment due under this Note, if I am due any insurance refund, I will seek same from my insurance company. Lender does not require me to have credit life insurance.

**THE INSURANCE REQUIRED UNDER THIS NOTE IS NOT PUBLIC LIABILITY INSURANCE AND DOES NOT COVER LIABILITY FOR INJURY TO ANY PERSONS OR DAMAGES TO PROPERTY.**

7. **Default and Acceleration:** Lender has the right at its sole option to insist on immediate payment in full of all Indebtedness that I may owe to Lender upon the occurrence of any one or more of the following events, in each case to the extent permitted by applicable law: (1) if I fail to make any payment under this Note when due; or (2) if I am in default under any other provision of this Note; or (3) if I am in default under any other loan, lease, extension of credit, or obligation that I may then owe to Lender or any affiliate of Lender other than loans, leases, extensions of credit or obligations secured by vehicles or other goods which I represent on the loan, lease or other credit or obligation documents are used or to be used by me primarily for personal, family or household purposes; or (4) if an other than an individual and I, without Lender's consent, (a) make a significant change in my management, ownership or control, or (b) merge, transfer, acquire or consolidate with any other entity; or (5) if I should become insolvent, or the subject of a bankruptcy or other relief from creditors; or (6) if any of the Equipment is seized under process of law; or (7) if any guaranty of my obligations under this Note is withdrawn or becomes unenforceable for any reason; or (8) if Lender reasonably believes itself to be insecure in the repayment of this Note. After default and acceleration, I agree to continue to pay Lender interest on the then unpaid balance of my Indebtedness at the rate of eighteen (18%) percent per annum, or such lesser rate as may be limited by law.

8. **Default Remedies:** Should I default under this Note, and Lender elects to accelerate payment of my Indebtedness, Lender may exercise all of the rights and remedies available to secured creditors generally under the Uniform Commercial Code. I agree to turn over and deliver the Collateral to Lender at my expense, at the time and at the location Lender may demand of me. Alternatively, to the extent permitted by applicable law, Lender may enter any premises or other place where the Collateral may be located, and take possession of the Collateral, and all other property then located on or in the Collateral, provided that Lender is able to do so without breach of the peace. To the extent permitted by applicable law, Lender may then sell the Collateral without warranty at public or private sale, and apply the sale proceeds to the satisfaction of my Indebtedness. Unless otherwise required by applicable law, Lender has no obligation to clean-up, repair, or prepare the Collateral for sale. I hereby agree that Lender may advertise and sell repossessed Collateral through www.usedtruckinventory.com or other internal websites through which equipment or motor vehicles similar to the Collateral is sold and that such sale shall be deemed a commercially reasonable disposition of the Collateral. Any requirement that Lender notify me of the sale or other disposition of the Collateral will be satisfied if Lender sends me a written communication at least ten (10) days in advance of the date on which a public sale is scheduled, or within ten (10) days in advance of the time after which a private sale or other disposition may take place. Furthermore, to the extent permitted by applicable law, upon default Lender may cancel any insurance

financed under this Note and apply the refunded premium to my Indebtedness and I authorize Lender to notify anyone using equipment to pay Lender directly for my Indebtedness.

9. **Waivers:** All Borrowers and Guarantors waive presentment, notice, and demand for payment, and agree that our liability under this Note shall be joint and several with each other. We further agree that discharge or release of any party, or Collateral, or any extension of time for payment, or any delay in enforcing Lender's rights, will not cause Lender to lose any of its rights. **TO THE EXTENT PERMITTED BY APPLICABLE LAW, I EXPRESSLY WAIVE ANY RIGHT TO A JURY TRIAL IN ANY DISPUTE REGARDING OR ARISING OUT OF THIS NOTE, THE SALE OF THE EQUIPMENT, OR MY RELATIONSHIP WITH LENDER OR EQUIPMENT SELLER.**

10. **Collection/Attorneys' Fees and Expenses:** If Lender sues me, or if Lender refers my loan to an attorney for collection, to the extent permitted by applicable law, I agree to pay Lender reasonable attorneys' fees actually incurred. I further agree to reimburse Lender for its court costs and reasonable collection expenses incurred in enforcing Lender's rights under this Note.

11. **Savings Clause:** It is Lender's intent to fully comply with all laws and regulations limiting imposition and collection of interest and other fees and charges in connection with my loan. Should I be called upon, or should I ever pay interest or other fees and charges to Lender in excess of the amount(s) and rate(s) permitted, I agree that Lender may cure such violation by crediting any excess amount that I have paid against my then outstanding principal balance under this Note.

12. **No Agency Relationship; No Right to Assert Claims and Defenses:** I fully understand and unconditionally agree that neither the Equipment manufacturer and distributor, nor their employees, are Lender's partners, agents, or representatives, and have no right to commit, bind or obligate Lender in any way. I further understand and unconditionally agree that, except for the limited purpose of assisting in the completion of this Note, neither the Equipment seller nor its employees are Lender's partners, agents, or representatives, and have no right to commit, bind or obligate Lender in any way. **TO THE EXTENT PERMITTED BY APPLICABLE LAW, MY OBLIGATIONS TO LENDER UNDER THIS NOTE ARE IRREVOCABLE, ABSOLUTE, AND UNCONDITIONAL AND ARE TO BE PAID OR PERFORMED IN ACCORDANCE WITH THEIR TERMS WITH NO RIGHT OF OFFSET, COUNTERCLAIM OR DEFENSE AGAINST LENDER OR ANY ASSIGNEE, INCLUDING BUT NOT LIMITED TO ANY RIGHT OF OFFSET, COUNTERCLAIM OR DEFENSE ARISING FROM ANY EXPRESS OR IMPLIED WARRANTY RELATING TO THE EQUIPMENT INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

13. **Representations and Warranties:** I represent and warrant to Lender that: (1) my correct legal name and state of residence or organization are listed on page 1 of this Note, and I am properly authorized, licensed and in good standing to conduct business in each applicable jurisdiction; (2) none of the imprinted provisions of this Note have been altered, modified, or stricken by me or by anyone else; (3) I or my authorized representative properly executed this Note in my name and my signature on this Note, or that of my authorized representative, is genuine; and (4) I have and intend to license, title, and register the Equipment in the proper state or jurisdiction.

14. **Power of Attorney:** To the extent permitted by law, I hereby appoint Lender as my attorney-in-fact. My grant of this power of attorney is coupled with an interest and is irrevocable until all obligations I owe under this Note are paid in full. As my attorney-in-fact, Lender can, in my name or Lender's name: (a) sign on my behalf all certificates of ownership, registration cards, financing statements, applications, affidavits or any other documents required to register and properly perfect Lender's security interest in the Collateral; (b) transfer my entire interest in the Collateral as part of a repossession and sale; (c) act on my behalf in insurance matters relating to the Collateral, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf and cancel any credit life, credit disability, guaranteed automotive protection coverage, extended warranty or other optional insurance financed under this Note and apply the refunded premium or cost to my outstanding balance if I am in default; and (d) make claims on my behalf under any such insurance policies related to the Collateral.

15. **Governing Law:** This Note shall be deemed received and accepted by Lender in Fort Worth, Texas on the date of funding. Furthermore this Note shall be governed and construed under the laws of the State of the Borrower's address at the time of execution of this Note, as indicated on Page 1, irrespective of the conflict of laws principles of that state.

16. **Miscellaneous:** In this Note, the words "I", "me", "my", "we", "us" and "our" individually, collectively and interchangeably mean each person or entity signing this Note as a Borrower, Co-Borrower or Guarantor, their successors and assigns, and all other persons that may be or become obligated under this Note. All schedules executed in connection with this Note are part of this Note. This Note and any such schedules constitute the entire Note between the parties. No modification or amendment of this Note shall be effective unless in writing signed by all parties. All provisions of this Note that are prohibited by applicable law shall be ineffective solely to the extent of such prohibition without invalidating the other provisions of this Note. Any waiver of Lender's rights and remedies under this Note shall be effective only if specifically agreed by Lender in writing. To the extent permitted by law, I give Lender permission to monitor and record any telephone conversation between Lender and me, including my representatives, service providers and agents.

17. **ACH Authorization:** From time to time I may contact Lender by telephone or otherwise to initiate single or reoccurring electronic debit entries to a specified business bank account held at the financial institution I designate through the Automated Clearing House (ACH) network. I hereby authorize Lender to initiate all such debit entries in the amount of my monthly payment or payments under this Agreement, plus all other amounts due at the time not exceeding $100.00, for in such other amount as I specify from time to time) and agree to be bound by the rules and regulations of the National Automated Clearing House Association, as they may change from time to time, applicable thereto.

18. **Authorization to Share Information:** Lender may collect non-public information about Borrowers and any Guarantor. Such information may be obtained through credit applications, credit reporting agencies, financial statements or other forms or documents. Lender will also have account status information related to my loans and lease agreements Borrowers and any Guarantor have with Lender (collectively, the "Information"). Borrowers and any Guarantor agree that Lender may disclose any of the Information to any of its affiliates, assigns, or agents, and to any dealerships authorized by Daimler Truck North America LLC or any of its subsidiaries.

19. **Telematics Consent and Acknowledgment:** The Equipment may be equipped with telematics devices installed by the manufacturer. The devices may collect and transmit to the manufacturer, or to a company providing services to the manufacturer, information relating to the Equipment, including but not limited to, location, speed, travel history, stop and idle time, fuel consumption, fault and diagnostic codes, airbag deployment and seatbelt usage information, and other information relating to the performance, operation and health of the Equipment. Borrower(s) agrees that Lender and its successors and assigns, agents, representatives, affiliates and service providers, may obtain and use that collected data to evaluate Borrowers' compliance with this Note, to determine the location of the Equipment, to repossess and enforce Lender's legal rights in the Equipment, to evaluate the condition of the Equipment and for marketing purposes, and to respond to subpoenas, court orders, and other demands under applicable law.

DocuSign Envelope ID: 137CE150-7619-4041-8UF5-6D98D3694D2A

This is a copy view of the Authoritative Copy k
by the designated custodian

# Daimler
## Truck Financial

### Pricing Worksheet
### (Note and Security Agreement)

Date: 04/25/2023
Quote #: 307822
D

| BORROWER: | CO-BORROWER | DEALER: |
|---|---|---|
| TPine Leasing Capital L.P. | | THE AROUND THE CLOCK FREIGHTLINER GROUP, L |
| 1125 E Alexis Rd | | 4200 PORT BLVD |
| Toledo      OH 4361239CLucas | | DALLAS      TX  75241763 |

**DESCRIPTION OF EQUIPMENT:**      List Payoff to:

| New/Used | Make | Model | Serial Number | Body Type | Model Year | Cash Sale Price |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | Total: | $1,056,654.28 |

**TRADE-IN & DOWNPAYMENT:**

| Make | Model | Serial Number | Body-Type | Model-Year | Allowance |
|---|---|---|---|---|---|
| | | | | 0.0 | $0.00 |

| | |
|---|---|
| Payoff Amount | $0.00 |
| Net Trade-In Allowance | $0.00 |
| Cash Down Payment | $0.00 |
| TOTAL DOWN PAYMENT | $0.00 |

**ITEMIZATION OF LOAN PROCEEDS:**

| | | |
|---|---|---|
| 1.  Total Cash Sale Price | | $1,056,654.28 |
| 2.  Less Total Down Payment | | $0.00 |
| 3.  Unpaid Balance of Sale Price | (Subtract Line 2 from Line 1) | $1,056,654.28 |
| A.  Physical Damage Insurance | | $0.00 |
| B.  Credit Life/Disability Insurance | | $0.00 |
| C.  Non-Trucking Liability Insurance | | $0.00 |
| D.  Guaranteed Auto Protection Waiver | | $0.00 |
| E.  Guaranteed Auto Protection Insurance | | $0.00 |
| F.  Registration/License/Title Fees | | $0.00 |
| G.  Documentary Fee | | $0.00 |
| H.  Federal Excise Tax | | $32,851.52 |
| I.  Sales Tax | | $0.00 |
| J.  Misc. Tax | | $0.00 |
| K.  Battery Fee | | $0.00 |
| L.  Vehicle Inspection Fee | | $0.00 |
| M.  Diesel Emissions Fee | | $0.00 |
| N.  Florida Doc Stamp Tax | | $0.00 |
| O.  Misc./Other Fee | | $0.00 |
| P.  Prepaid Maintenance | | $0.00 |
| Q.  Temp Tag | | $0.00 |
| R.  Tire Rec. Fee | | $0.00 |
| S.  UCC Fee | | $0.00 |
| T.  Warranty | | $48,921.00 |
| U.  DTF Title Services Fee | | $0.00 |
| 4.  Total Itemized Charges | | $81,772.52 |
| 5.  Loan Amount (Add line 3 and line 4) | | $1,138,426.80 |

Pricing Worksheet – Note & Security Agreement (TFFF2524) – 12/01/21

DocuSign Envelope ID: 137CE150-7619-4041-8DF9-0D96D3694D2A

**Daimler**
**Truck Financial**

**Property Schedule Addendum**
**(Four or More Units)**

This is a true and correct copy of the Authoritative Copy held by the designated custodian

## This Schedule must be attached to the original Contract and to the copy of the Contract delivered to the customer

| | | |
|---|---|---|
| Borrower: | TPine Leasing Capital L.P. | Contract Date: 04/25/2023 |
| Address: | 1125 E Alexis Rd | |
| City: Toledo | County: Lucas    State: OH | Zip: 436123907    Quote Id.: 307822 |

**EQUIPMENT:**

| N /U | Make | Model | Serial Number | Body Type | Year | Cash Sale Price |
|---|---|---|---|---|---|---|
| N | FREIGHTLINER | PT126SLP | 3AKJHDR9RSUV0744 | TR | 2024 | $144,459.14 |
| N | FREIGHTLINER | PT126SLP | 3AKJHHDR0RSUV0745 | TR | 2024 | $143,294.14 |
| N | FREIGHTLINER | M2106 | 3ALACWFC9RDUV3011 | TR | 2024 | $109,843.00 |
| N | FREIGHTLINER | M2106 | 3ALACWFC0RDUV3012 | TR | 2024 | $109,843.00 |
| N | FREIGHTLINER | M2106 | 3ALACWFC2RDUV3013 | TR | 2024 | $109,843.00 |
| N | FREIGHTLINER | M2106 | 3ALACWFC6RDUV3015 | TR | 2024 | $109,843.00 |
| N | FREIGHTLINER | M2106 | 3ALACWFC8RDUV3016 | TR | 2024 | $109,843.00 |
| N | FREIGHTLINER | M2106 | 3ALACWFCXRDUV3020 | TR | 2024 | $109,843.00 |
| N | FREIGHTLINER | M2106 | 3ALACWFC1RDUV3021 | TR | 2024 | $109,843.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | |
|---|---|
| Borrower: | TPine Leasing Capital L.P. |
| By (signature): | Sam Johal |
| | E0677F3DDA13463 |
| Title: | Pride Truck Sales LP by: Coastline Holdings it's GP by: Suikhan Johal it's President |

DocuSign Envelope ID: E0DDB2CF-ADA3-40E8-BD3A-6144E1EF0AA3

This is a copy view of the Authoritative Copy
by the designated custodian

# Daimler
Truck Financial

**Dealer Agreement – Direct Loans**

LOAN AGREEMENT DATE:   04/25/2023
BORROWER:            TPine Leasing Capital L.P.                          DBA:
                    (Print Full Name)                                   (DBA)
                    1125 E Alexis Rd              Toledo      Lucas           OH       436123907
                    (Street No.)                 (City)      (County)         (State)  (Zip)

**Description of Equipment: \*See Property Schedule if 4 or more units\***

| New/Used | Make | Model | Serial Number | Body Type | Model Year | Cash Sale Price | Titling Source |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

In consideration of and for Daimler Truck Financial Services USA LLC, and its successors, transferees and assigns ("Lender") making a direct loan (the "Loan") to the Borrower named above to purchase the described Equipment, the undersigned Dealer agrees as follows:

1. **Incorporation of Certain Provisions of Dealer's Equipment Retail Finance Agreement by Reference.** The following provisions of Dealer's existing Equipment Retail Finance Agreement (the "ERFA") with Lender (appropriately modified as the context may require to reflect that Lender has made a direct Loan to the Borrower evidenced under a Note and Security Agreement (the "Note"), as opposed to the Borrower purchasing the Equipment from Dealer on a credit sales basis, with the Borrower's retail installment contract ("Contract") then being assigned to Lender) are hereby incorporated under this Agreement by reference: (A) Section 3 of the ERFA under which Dealer agrees to provide certain original documents to Lender within fourteen (14) days following execution of the Borrower's Note; (B) Section 4 of the ERFA under which Dealer makes certain representations and warranties to Lender in connection with the Borrower's Loan and Dealer's sale of the Equipment, as well as Dealer's obligations to purchase the Note from Lender should any of Dealer's representations and warranties prove to be untrue or incorrect; (C) Dealer's obligations under Sections 9 and 13 of the ERFA; and (D) Dealer's indemnity obligations in favor of Lender under Sections 4, 13, and 14 of the ERFA. Notwithstanding any terms to the contrary in these provisions, Dealer is not liable for Lender's acts or omissions based on Lender's failure to abide by any applicable laws or regulations, but only to the extent that such laws or regulations apply to Lender.

2. **Dealer's Guaranty Obligations.** In addition to Dealer's purchase and indemnity obligations in favor of Lender, Dealer unconditionally agrees to guarantee the prompt and punctual payment and satisfaction of the Note, in principal, interest, fees, costs, and expenses (including Lender's reasonable collection attorney's fees), subject to the following provisions (check as applicable):

☒   No Guaranty.

☐   Full Guaranty of the net payoff balance then due and owing under the Note, without limitation.

☐   Fixed Percentage Guaranty of _____% of the net payoff balance then due and owing under the Note at the time of and following default.

☐   Limited Dollar Amount Guaranty of the net payoff balance then due and owing under the Note at the time of and following default, limited to a maximum amount of $_____.

Dealer unconditionally and irrevocably agrees to pay the foregoing guaranteed amounts to Lender immediately on demand, without defense. Dealer's obligations in favor of Lender shall be that of a co-primary obligor under the Note, and not that of a surety.

3. **Dealer's Refund Obligations.** In the event that the Borrower prepays the Loan in full prior to maturity, or if Lender accelerates payment of the Loan as a result of the Borrower's default, Dealer agrees to refund and to pay to Lender, immediately on demand, the then unearned amount of any credit life, credit disability and property insurance premiums paid with the proceeds from the Note that are required by agreement to be rebated or refunded by Dealer to Borrower. Dealer agrees that Lender may set-off Dealer's refund obligations against any reserve account or accounts that Dealer may maintain with Lender, and/or against any credits or amounts that Lender may owe to Dealer either as a result of the funding of a separate loan to another borrower, or for any other reason.

4. **Titling Source.** Dealer agrees to provide Lender with a copy of the completed title application, copy of the vehicle MSO or previous title, and proof of tax exemption or payment of sales taxes (if not funded under the Loan Agreement). Lender's failure to receive such title documentation shall not alleviate Dealer's titling responsibilities in favor of Lender.

5. **Dealer is Not Lender's Agent.** Neither this Agreement, nor any action taken by Dealer with respect to the Note, except for the limited purpose of assisting in the completion of the Note, shall be deemed to create a principal-agency relationship between Dealer and Lender, or to authorize Dealer, or Dealer's employees, to act as Lender's representative.

6. **Miscellaneous.** This Agreement is subject to the substantive laws of the State of Texas for all purposes irrespective of the conflict of laws principles of that state. This Agreement is binding upon the parties thereto and their respective successors and assigns. Should any provision of this Agreement be deemed to be unenforceable, that provision shall be deemed as stricken, with all other provisions of this Agreement remaining in full force and effect. Dealer agrees to pay Lender's reasonable attorney's fees incurred in enforcing Lender's rights against Dealer under this Agreement. BOTH DEALER AND LENDER WAIVE THE RIGHT TO A TRIAL BY JURY AS TO ALL MATTERS ARISING DIRECTLY OR INDIRECTLY OUT OF THIS AGREEMENT.

Dealer has executed this Agreement as of this  25th  day of _____April_____, 2023

Dealer Name:     THE AROUND THE CLOCK FREIGHTLINER GROUP, LLC

By (signature):  X  _FANY RUIZ_
                    DB9A2DA62E50472...

Title:           Finance Manager

# Exhibit "5"

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re

Pride Group Holdings Inc., *et al.*[1]

    Debtors in Foreign Proceedings.

Chapter 15

Case No. 24-10632 (CTG)

Jointly Administered

## ORDER GRANTING MOTION OF THE
## FOREIGN REPRESENTATIVE FOR PROVISIONAL RELIEF
## PURSUANT TO SECTIONS 105(a) AND 1519 OF THE BANKRUPTCY CODE

Upon the motion (the "Motion")[2] filed by Randall Benson, solely in his capacity as the foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors") seeking entry of a provisional relief order (this "Order") under the Bankruptcy Code to protect the Debtors and their non-Debtor affiliates (collectively, the "Pride Group")[3] and their property within the territorial jurisdiction of the United States pending recognition of the Debtors' Canadian proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"); and upon this Court's review and consideration of the Motion, the Verified Petition, the Benson Declaration, and the Nicholson Declaration; and this

---

[1]    The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

[2]    Capitalized terms not defined herein are used as defined in the Motion.

[3]    As used herein, "Pride Group" does not include the following affiliated special-purpose securitization vehicles that do not engage in any business or activity other than acting as purchasers of securitized assets or issuers of asset-backed obligations under various securitization agreements: TPine USA Funding I LLC, TPine USA Funding II LLC, TPine USA Funding III LLC, TPine USA Funding IV LLC, TPine Canada Securitization L.P., and TPine Canada GP L.P. (collectively, the "Securitization SPVs"). The Securitization SPVs are not applicants in the CCAA Proceedings, are not Debtors in these Chapter 15 Cases, and no relief is sought with respect to these entities.

Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 109 and 1501; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P); and venue being proper before this Court pursuant to 28 U.S.C. § 1410(1) and (3); and appropriate, sufficient and timely notice of the Motion and the hearing thereon having been given pursuant to Bankruptcy Rules 1011(b) and 2002(q); and upon the record established at such hearing (the "Hearing"); and it appearing that the relief requested in the Motion is necessary to preserve the value of the Pride Group's assets and business and in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having determined that the relief requested in the Motion is consistent with the purpose of chapter 15 of the Bankruptcy Code and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and no objections or other responses having been filed that have not been overruled, withdrawn or otherwise resolved; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      There is a substantial likelihood that the Foreign Representative will successfully demonstrate that the CCAA Proceedings constitute "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code and that the Court will determine the additional relief sought herein, including the relief under sections 362, 364 and 365 of the

Bankruptcy Code, is necessary to effectuate the purpose of chapter 15 and to protect the assets of the Pride Group and the interests of creditors as contemplated by section 1521 of the Bankruptcy Code.

C.      As evidenced by the Initial Order, the Canadian Court has determined that the commencement or continuation of any action or proceeding in Canada against the Pride Group, the Personal Guarantors, or any of their assets should be enjoined pursuant to applicable Canadian law to permit the expeditious and economical administration of the CCAA Proceedings, and such relief will either (a) not cause an undue hardship to any creditors or other parties-in-interest or (b) any hardship to such creditors or parties is outweighed by the benefits of the relief requested. This Court similarly determines that, consistent with the Initial Order, the commencement or continuation of any action or proceeding in the United States against the Pride Group, the Personal Guarantors, or any of their assets located within the United States should be enjoined pursuant to sections 105 and 1519(a) of the Bankruptcy Code to permit the expeditious and economical administration of the CCAA Proceedings, and such relief will either (a) not cause an undue hardship to any creditors or other parties-in-interest or (b) any hardship to such creditors or parties is outweighed by the benefits of the relief requested.

D.      Unless a preliminary injunction is issued, and unless the Debtors are immediately authorized to comply with the Initial Order, and unless all creditors, persons, parties in interest, contract parties, lenders and governmental units and agencies located within the territory of the United States (collectively, the "U.S. Chapter 15 Parties") are bound by the terms of the Initial Order pending the entry of the Recognition Order, there is a material risk that the U.S. Chapter 15 Parties may take certain actions against the Pride Group or the Personal Guarantors, including (i) initiating or prosecuting lawsuits against the Pride Group or the Personal Guarantors; or (ii)

exercising certain remedies under existing debt obligations, executory contracts, or unexpired leases or under applicable law. Such actions could interfere with the jurisdictional mandate of this Court under chapter 15 of the Bankruptcy Code, interfere with and cause harm to the Debtors' efforts to administer and implement the CCAA Proceedings, interfere with the Pride Group's operations, and undermine its efforts to achieve an equitable result for the benefit of all of its stakeholders. Accordingly, there is a material risk that the Pride Group may suffer immediate and irreparable injury (with no adequate remedy at law), and it is therefore necessary that the Court grant the relief set forth in this Order.

E.      The Foreign Representative has demonstrated that, in the interest of comity, the purpose of chapter 15 is carried out by granting recognition and giving effect to the Initial Order.

F.      All creditors and other parties in interest are sufficiently protected by the grant of the relief ordered hereby in compliance with section 1522(a) of the Bankruptcy Code.

G.      The Foreign Representative and the Debtors are entitled to the full protections and rights available pursuant to section 1519(a)(1)-(3) of the Bankruptcy Code.

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED THAT:**

1.      Beginning on the Petition Date and continuing until the date of the entry of an order of this Court recognizing the CCAA Proceedings as "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code and the Foreign Representative as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code (unless otherwise extended pursuant to section 1519(b) of the Bankruptcy Code), with respect to the Debtors:

        a.  The Foreign Representative is recognized as, and shall be, the representative of the Debtors with full authority to administer the Debtors' property and affairs in the United States on a provisional basis.

b. The Pride Group, the Personal Guarantors, and their property located within the United States shall be entitled to the full protections and rights pursuant to section 1519(a)(1), which protections shall be coextensive with the provisions of section 362 of the Bankruptcy Code, *provided*, *however*, that nothing in this Order shall preclude any party from moving for relief from the stay in accordance with section 362 of the Bankruptcy Code and the Bankruptcy Rules, and the Foreign Representative reserves all rights to oppose such motion. Without limiting the generality of the foregoing, and except as permitted in the Initial Order or authorized by the Foreign Representative in his sole discretion, this Order shall impose a stay within the territorial jurisdiction of the United States of:

   i. the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the Pride Group or the Personal Guarantors, or any of their assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative or other judgment, assessment, order, lien or arbitration award against the Pride Group, the Personal Guarantors, or any of their assets or proceeds thereof; *provided,* that this Order shall not in any way limit the Pride Group from initiating, prosecuting, or continuing any lawsuits or other actions in the United States in which they are plaintiffs, and any defendants in such lawsuits or other actions shall not be prevented from taking any actions to defend against such lawsuits or other actions;

   ii. the enforcement, against the Pride Group, the Personal Guarantors, or any of their property, of any judgment obtained before the commencement of these Chapter 15 Cases;

   iii. any act to obtain possession of, exercise control over, or create, perfect, or enforce any lien against, any property of the Pride Group or the Personal Guarantors;

   iv. any act to collect, assess, or recover a claim against the Pride Group, the Personal Guarantors, or any of their property that arose before the commencement of these Chapter 15 Cases; including, without limitation, any act to collect cash payments from the Pride Group's lessees on account of unexpired equipment leases; and

   v. the setoff of any debt owing to the Pride Group or the Personal Guarantors that arose before the commencement of these Chapter 15 Cases against any claim of the Pride Group or the Personal Guarantors, as applicable.

c. Section 364 of the Bankruptcy Code shall be applicable with respect to each of the entities within the Pride Group, and their property within the United States.

d.  Section 365(e) of the Bankruptcy Code shall apply with respect to the executory contracts and unexpired leases of the Pride Group such that, notwithstanding any provision in any such contract or lease or under applicable law, no executory contract or unexpired lease with any Pride Group entity may be terminated, cancelled, or modified (and any rights or obligations in such leases or contracts cannot be terminated or modified) solely because of a provision in any contract or lease of the kind described in sections 365(e)(1) of the Bankruptcy Code, and all contract and lease counterparties located within the United States shall be prohibited from taking any steps to terminate, modify, or cancel any contracts or leases with the Pride Group arising from or relating in any way to any so-called "*ipso facto*" or similar clauses.

e.  The Foreign Representative shall have the rights and protections to which the Foreign Representative is entitled under chapter 15 of the Bankruptcy Code, including, but not limited to, the protections limiting the jurisdiction of U.S. Courts over the Foreign Representative in accordance with section 1510 of the Bankruptcy Code and the granting of additional relief in accordance with sections 1519(a) and 1521 of the Bankruptcy Code.

f.  Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) this Order shall be effective immediately and enforceable upon entry, (ii) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order, and (iii) the Foreign Representative is authorized and empowered, and may, in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

2.      The Foreign Representative, in connection with his appointment as a "foreign representative" in these cases, and the Debtors, are hereby granted the full protections and rights available pursuant to section 1519(a)(1)-(3) of the Bankruptcy Code on a provisional basis.

3.      Pursuant to sections 1519 and 364 of the Bankruptcy Code, to the extent authorized under the Initial Order, the Court recognizes and grants, on a provisional basis, the Administration Charge and the Directors' and Officers' Charge, on all of the Debtors' assets located in the territorial jurisdiction of the United States with the same priority as granted under the Initial Order.

4.      This Order shall serve, on a provisional basis, as sufficient and conclusive notice and evidence of the grant, validity, perfection, and priority of the liens and charges granted in the CCAA Proceedings as they apply to the Debtors and their property located in the territorial

jurisdiction of the United States in respect of the Administration Charge and the Directors' and Officers' Charge without the necessity of filing or recording this Order or any financing statement, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction.

5.      Service in accordance with the procedures set forth in the Notice Procedures Motion shall be deemed good and sufficient service and adequate notice for all purposes.  The Foreign Representative, the Debtors, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or Local Rules.

6.      Consistent with paragraph 4 of the Initial Order, the banks and financial institutions in the United States with which the Debtors maintain bank accounts or on which checks are drawn or electronic payment requests made in payment of prepetition or postpetition obligations are authorized and directed to continue to service and administer the Debtors' bank accounts without interruption and in the ordinary course and to receive, process, honor and pay any and all such checks, drafts, wires and automatic clearing house transfers issued, whether before or after the Petition Date, and draw on the Debtors' bank accounts by respective holders and makers thereof and at the direction of the Foreign Representative or the Debtors, as the case may be.

7.      The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

8.      Nothing in this Order shall affect the right of (i) Mitsubishi HC Capital America, Inc. and its affiliates (collectively, "MHCA") or (ii) Royal Bank of Canada, in its capacity as the administrative agent under the Syndicated Facility, to file a motion requesting adequate protection of their interest in property with the Pride Group as of the Petition Date pursuant to the Bankruptcy

Code, or the rights of the Foreign Representative or any other party-in-interest to respond to such request, and all such rights are expressly preserved.

9.    MHCA reserves the right to seek discovery relating to (i) the recognition of the CCAA Proceedings as foreign main or non-main proceedings, and (ii) the provisional relief sought or to be sought by the Foreign Representative.   Discovery may include, without limitation, the deposition of the Foreign Representative.   The Foreign Representative will not object to a deposition being permissible discovery, and will make Mr. Benson reasonably available to sit for a deposition before the objection deadline for the recognition hearing, but otherwise reserves all rights and objections, including with respect to the permissible scope of discovery.

10.    Notwithstanding anything to the contrary herein, this Order shall be without prejudice to any party-in-interest's right to object to (i) the Foreign Representative's request for supplemental provisional relief, which is scheduled to be heard by this Court on April 11, 2024, at 2 p.m. (Eastern time), and (ii) recognition of the CCAA Proceedings as foreign main or non-main proceedings ((i) and (ii) together, the "Chapter 15 Relief"), on any grounds, and the Foreign Representative's and all other parties-in-interests' rights are expressly reserved.   No findings of fact made or conclusions of law reached in this Order or on the record at the Hearing shall preclude or prejudice any party-in-interest from challenging such findings of fact or conclusions of law in any subsequent hearing relating to the Chapter 15 Relief.

11.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.    This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through these Chapter 15 Cases, and any request by an entity for relief from the provisions

of this Order, for cause shown, that is properly commenced and within the jurisdiction of this

Court.

Dated: April 3rd, 2024                    CRAIG T. GOLDBLATT
Wilmington, Delaware                      UNITED STATES BANKRUPTCY JUDGE

# Exhibit "6"

6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| Pride Group Holdings Inc., *et al.*[1] | Case No. 24-10632 (CTG) |
| Debtors in Foreign Proceedings. | Jointly Administered |

## ORDER GRANTING AMENDED VERIFIED PETITION
## FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS,
## (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III)
## RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE

Upon consideration of the *Amended Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Amended Verified Petition")[2] and the *Chapter 15 Petition for Recognition of a Foreign Proceeding* for each of the Debtors (together with the Amended Verified Petition, the "Petitions"), filed by Randall Benson, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors,[3]" and together with their non-Debtor affiliates, the "Pride Group")[4] in the Canadian

---

[1]  The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Amended Verified Petition.

[3]  As used herein, the term "Debtors" does not include: 1000089137 Ontario Inc., DVP Holdings, Corp., Parker Global Enterprises, Inc., Parker Transport Co., and Arnold Transportation Services, Inc. (collectively, the "Arnold Entities").

[4]  As used herein, "Pride Group" includes: (i) each of the Debtors; (ii) Pride Truck Sales L.P. ("PTS"), TPine Leasing Capital L.P. ("TPL"), and Sweet Home Hospitality L.P. ((i) and (ii) together, the "Pride Entities"); and (iii) Block 6 Holding Inc., 2500819 Ontario Inc., Pergola Holdings, Corp., and Pride Global Insurance Company Ltd. (the "Additional Stay Parties"). "Pride Group" does not include the following affiliated special-purpose securitization vehicles that do not engage in any business or activity other than acting as purchasers of securitized assets or issuers of asset-backed obligations under various securitization agreements: TPine USA Funding I LLC, TPine USA Funding II LLC, TPine USA Funding III LLC, TPine USA Funding IV LLC, TPine Canada Securitization L.P, and TPine Canada GP L.P. (collectively, the "Securitization SPVs"). The Securitization SPVs

proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act, pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"), for entry of an order (this "Order") pursuant to sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520, 1521 and 1522 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"): (i) granting recognition of the CCAA Proceedings as "foreign main proceedings," pursuant to chapter 15 of the Bankruptcy Code; (ii) granting recognition of the Foreign Representative as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code; (iii) recognizing, granting comity to, and giving full force and effect in the United States to the CCAA Proceedings and the Canadian Orders; (iv) enjoining parties from taking any action that is otherwise inconsistent with the CCAA Order; and (v) granting such other relief as the Court deems just and proper, all as more fully set forth in the Amended Verified Petition; and upon this Court's review and consideration of the Amended Benson Declaration, Nicholson Declaration, and all other pleadings filed by or on behalf of the Foreign Representative in support of the Petitions; and this Court having held a hearing to consider the relief requested in the Petitions (the "Recognition Hearing"); and due and proper notice of the Petitions and all pleadings in support of the Petitions having been provided and no other or further notice being necessary or required; and no objections or other responses having been filed that have not been overruled, withdrawn, or otherwise resolved; and all interested parties having had an opportunity to be heard at the Recognition Hearing; and after due deliberation and sufficient cause appearing therefor, **THIS COURT HEREBY FINDS AND DETERMINES THAT:**

---

are not applicants in the CCAA Proceedings, are not Debtors in these Chapter 15 Cases, and no relief is sought with respect to these entities. Further, as noted in the Amended Verified Petition, the Foreign Representative is also not seeking relief with respect to the Arnold Entities. As a result, the terms "Pride Group" and "Pride Entities" also do not include the Arnold Entities.

A.     The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.

C.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

D.     Venue is proper in this district pursuant to 28 U.S.C. § 1410.

E.     The Debtors have their domicile, principal place of business, and/or property in the United States, and the Debtors are each eligible to be a debtor in a chapter 15 case pursuant to, as applicable, sections 109 and 1501 of the Bankruptcy Code.

F.     These cases were properly commenced pursuant to sections 1504, 1509 and 1515 of the Bankruptcy Code.

G.     The CCAA Proceedings are "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code.

H.     The CCAA Proceedings are pending in Canada, which is the country in which each of the Debtors have its center of main interests and, as such, the CCAA Proceedings are "foreign main proceedings" within the meaning of sections 1502(4) and 1517(b)(1) of the Bankruptcy Code and are entitled to recognition as foreign main proceedings in respect of each of the Debtors.

I.     The Foreign Representative is a "person," as such term is defined in section 101(41) of the Bankruptcy Code, and has been duly appointed by the Canadian Court as authorized to act

as the "foreign representative" with respect to the CCAA Proceedings within the meaning of section 101(24) of the Bankruptcy Code.

J.      The Petitions satisfy all of the requirements set forth in section 1515 of the Bankruptcy Code and Bankruptcy Rules 1007(a)(4) and 2002(q).

K.      The CCAA Proceedings are entitled to recognition by the Court pursuant to section 1517(a) of the Bankruptcy Code.

L.      The Debtors and the Foreign Representative are entitled to all of the relief set forth in sections 1507, 1519, 1520 and 1521 of the Bankruptcy Code.

M.      Appropriate notice of the filing of, and the Recognition Hearing on, the Petitions and the pleadings in support of the Petitions was given, which notice is deemed adequate for all purposes, and no other or further notice need be given.

N.      The relief granted hereby is necessary and appropriate, in the interests of the public and of international comity, not inconsistent with the public policy of the United States, warranted pursuant to sections 105(a), 362, 363, 364, 365, 1507(a), 1509(b)(2)-(3), 1520, 1521, 1522 and 1525 of the Bankruptcy Code, and will not cause hardship to creditors of the Debtors or other parties in interest that is not outweighed by the benefits of granting that relief.

O.      The Foreign Representative has demonstrated that the borrowings under the DIP Facility as authorized by the A&R Initial Order and as approved on a provisional basis pursuant to the Second Provisional Relief Order with respect to the Pride Entities' assets, undertakings, and properties located within the territorial jurisdiction of the United States are necessary to preserve the value of the Debtors' business.

P.      Each of (i) the agent under the Syndicated Facility (the "Prepetition Syndicated Agent"), for itself and for the benefit of the lenders under the Syndicated Facility (the "Prepetition

Syndicated Lenders"), (ii) Mitsubishi HC Capital America, Inc., formerly known as Hitachi Capital America Corp. and successor by merger to ENGS Commercial Finance Co. ("MHCA U.S."), and (iii) certain other secured creditors who hold valid, enforceable, properly perfected secured loans as of the date of the Initial Order ((i) to (iii) collectively, the "Adequate Protection Parties"), are entitled to adequate protection of their interests in the collateral, including the proceeds thereof, securing their indebtedness pursuant to sections 362(d), 363 and 364(d) of the Bankruptcy Code (the "Adequate Protection") arising from Diminution in Value as a result of (x) the priming of their existing and validly perfected liens and security interests as a result of the grant of the Charges (the "Priming"); (y) the imposition or enforcement of the stay in these Chapter 15 Cases or the CCAA Proceedings; and (z) the use, sale or lease, or proposed use, sale or lease, of their interests in such collateral securing their indebtedness by the Pride Group. Accordingly, the Debtors have agreed in their reasonable business judgment to provide the Adequate Protection as set forth in this Order, which terms and conditions are fair and reasonable.

Q.      The relief granted hereby is necessary to effectuate the purposes and objectives of chapter 15 and to protect the Debtors and the interests of their creditors and other parties in interest.

R.      Each of the injunctions contained in this Order (i) is within the Court's jurisdiction, (ii) is essential to the success of the CCAA Proceedings, (iii) confers material benefits on, and is in the best interests of, the Debtors, their creditors, and their parties in interest, and other stakeholders, (iv) is critical and integral to the overall objectives of the restructuring, and (v) meets the legal and factual requirements for issuing an injunction.

S.      The relief granted hereby is necessary to effectuate the purposes and objectives of chapter 15 and to protect the Debtors and the interests of their creditors and other parties in interest (and the Debtors' assets located within the United States), is in the interest of the public and

international comity, consistent with the public policy of the United States, and will not cause any

hardship to any party in interest that is not outweighed by the benefits of the relief granted. Absent

the requested relief, the efforts of the Debtors, the Canadian Court and the Foreign Representative

in conducting the CCAA Proceedings may be frustrated by the actions of individual creditors, a

result contrary to the purposes of chapter 15 of the Bankruptcy Code.

T.       All creditors and other parties in interest, including the Debtors, are sufficiently

protected by the grant of relief ordered hereby in accordance with section 1522(a) of the

Bankruptcy Code.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.       The Petitions are granted as set forth herein, and any objections thereto are overruled

with prejudice.

2.       The CCAA Proceedings are granted recognition with respect to each of the Debtors

(other than the Arnold Entities) as foreign main proceedings (as defined in section 1502(4) of the

Bankruptcy Code) pursuant to sections 1517(a) and (b)(1) of the Bankruptcy Code.

3.       The Foreign Representative is a duly appointed and authorized "foreign

representative" as defined in section 101(24) of the Bankruptcy Code in respect of the CCAA

Proceedings, is authorized to act on behalf of the Debtors in these chapter 15 cases and is

established as the exclusive representative of the Debtors in the United States.

4.       The Foreign Representative is entrusted with the administration of any and all of the

Debtors' assets within the territorial jurisdiction of the United States, including prosecution of any

causes of action belonging to the Debtors.

5.       The Debtors and the Foreign Representative are granted all of the relief set forth in

section 1520 of the Bankruptcy Code including, without limitation, the application of the

protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to the

Debtors and their property that is now within or in the future is located within the territorial jurisdiction of the United States.

6.      Pursuant to section 1521(a)(1)-(3) of the Bankruptcy Code, all persons and entities, other than the Foreign Representative and their representatives and agents, are hereby enjoined (to the extent they have not been stayed under section 1520(a), in each case from:

    a.   executing against the assets of the Pride Group or the Personal Guarantors;

    b.   commencing or continuing, including the issuance or employment of process, any judicial, quasi-judicial, administrative, regulatory, arbitral, or other action or proceeding, or to recover a claim, including, without limitation, any and all unpaid judgments, settlements or otherwise against the Pride Group or the Personal Guarantors, which in either case is in any way related to, or would interfere with, the administration of the Debtors' estates in the CCAA Proceedings;

    c.   taking or continuing any act to create, perfect or enforce a lien or other security interest, setoff or other claim against the Pride Group, the Personal Guarantors or any of their property or proceeds thereof;

    d.   transferring, relinquishing or disposing of any property of the Pride Group or the Personal Guarantors to any person or entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Foreign Representative;

    e.   commencing or continuing an individual action or proceeding concerning the assets, rights, obligations or liabilities of the Pride Group or the Personal Guarantors; and

    f.   declaring or considering the filing of the CCAA Proceedings or these chapter 15 cases a default or event of default under any contract or lease of the kind described in sections 365(e)(1) of the Bankruptcy Code.

*provided*, in each case, that such injunctions shall be effective solely within the territorial jurisdiction of the United States; *provided further* that nothing herein shall prevent any entity from: (i) filing any claims against the Debtors in the CCAA Proceedings; (ii) exercising rights or remedies or taking actions against the Pride Group, the Personal Guarantors or their property located within the territorial jurisdiction of the United States solely to the extent permitted under the Canadian Orders as given effect by this Court; or (iii) seeking relief from the Canadian Court

in the CCAA Proceedings or this Court in these Chapter 15 Cases, as applicable, for relief from the injunctions contained in the Order.

7.      Pursuant to section 1521(a)(6) of the Bankruptcy Code, all prior relief granted by this Court pursuant to the First Provisional Relief Order and Second Provisional Relief Order shall be extended and shall remain in full force and effect on a final basis; *provided*, *however*, *that* notwithstanding the foregoing or any stay provided in this Order, the First Provisional Relief Order or the Second Provisional Relief Order, the DIP Agent may, in its discretion, file or record this Order, the Second Provisional Relief Order, the A&R Initial Order, or any other order of this Court or any financing statement, mortgage, or other instrument or document in any office or jurisdiction to evidence any liens securing the DIP Facility.

8.      The Canadian Orders are hereby given full force and effect on a final basis with respect to (as applicable) the Pride Group, the Personal Guarantors, and their property that now or in the future is located within the territorial jurisdiction of the United States, including, without limitation, the provisions of the Canadian Orders (i) staying the commencement or continuation of any actions against the Pride Group, the Personal Guarantors, and their property located within the territorial jurisdiction of the United States through and including June 30, 2024; (ii) authorizing and empowering the Pride Entities to obtain credit under the DIP Facility pursuant to the terms of the DIP Term Sheet and DIP Documentation (as defined in the Second Provisional Relief Order); (iii) granting the Charges over the assets, undertakings, and properties of the Pride Entities located within the territorial jurisdiction of the United States to the extent and in the priority as set forth in the A&R Initial Order; (iv) authorizing the Pride Entities to disclaim certain leases and other contractual agreements; and (v) approving the Governance Protocol (as approved pursuant to the Protocols Order on April 5, 2024), Real Estate Monetization Plan, and Intercompany and

Unsecured Claims Preservation Protocol, in each case unless otherwise ordered by this Court; *provided*, that this Order shall only enforce the Canadian Orders as they have been entered by the Canadian Court, and shall not grant prospective enforcement of or relief with respect to any orders that have not been entered by the Canadian Court as of the date of this Order; *provided*, *further*, that the Foreign Representative reserves the right to seek enforcement by this Court of any future orders entered by the Canadian Court that amend, supersede, or otherwise replace the Canadian Orders in effect on the date of this Order. The rights of any party in interest to object to enforcement of future Canadian Court orders, and the rights of any party in interest to respond to such objections, are expressly reserved.

9. The Adequate Protection Parties are entitled to receive Adequate Protection of their interests in their applicable collateral under their respective credit or other agreements (the "Adequate Protection Party Agreements") on a dollar-for-dollar basis from any Diminution in Value resulting from the Priming, the imposition or enforcement of the stay in these Chapter 15 Cases or the CCAA proceedings, or the use, sale or lease, or proposed use, sale or lease, of their interests in such collateral by the Pride Group. Accordingly, the Adequate Protection Parties are hereby granted valid, binding, enforceable and perfected liens as of the date of the Initial Order, without the necessity of execution by the Pride Group of, or the filing of, any mortgages, security agreements, pledge agreements, financing statements or other agreements, in all post-petition assets of the applicable member or members of the Pride Group of the same types as the applicable collateral under their respective Adequate Protection Party Agreements located within the territorial jurisdiction of the United States to secure an amount of their indebtedness equal to any Diminution in Value, which liens shall attach to such assets of the applicable member or members of the Pride Group under their respective Adequate Protection Party Agreements located within the territorial jurisdiction of the United States to

the same extent and priority on such applicable collateral as existed immediately prior to the date of the Initial Order, subject to the priority of the Charges set forth in the A&R Initial Order.

10.     No action, inaction, or acquiescence by the DIP Agent or the DIP Lenders, or the Prepetition Syndicated Agent or the Prepetition Syndicated Lenders, including, without limitation, funding the Pride Entities' ongoing operations under the Second Provisional Relief Order or this Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Agent or the DIP Lenders or the Prepetition Syndicated Agent or the Prepetition Syndicated Lenders to a charge against the collateral pursuant to sections 506(c), 552(b), or 105(a) of the Bankruptcy Code.  None of the DIP Agent,  the DIP Lenders, the Prepetition Syndicated Agent or the Prepetition Syndicated Lenders shall be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to their collateral.

11.     No person or entity shall be entitled, directly or indirectly, whether by operation of sections 506(c), 552(b), or 105 of the Bankruptcy Code or otherwise, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of any collateral or property by the DIP Agent, the DIP Lenders, the Prepetition Syndicated Agent or the Prepetition Syndicated Lenders after a breach under the DIP Facility, the DIP Documentation, the A&R Initial Order, or the Second Provisional Relief Order or this Order, and in no event shall the "equities of the case" exception of section 552(b) of the Bankruptcy Code apply to the secured claims of the DIP Agent, the DIP Lenders, the Prepetition Syndicated Agent or the Prepetition Syndicated Lenders.  No action, inaction, or acquiescence by MHCA U.S. shall be deemed to be or shall be considered as evidence of any alleged consent by MHCA U.S. to a charge against its collateral pursuant to sections 506(c), 552(b), or 105 of the Bankruptcy Code.

12. Nothing in this Order shall authorize any secured party with a valid, perfected, and enforceable security interest in collateral or other property of the Pride Group located within the territorial jurisdiction of the United States to sell or otherwise dispose of such collateral or other property unless, solely with respect to collateral or other property that consists of vehicles, equipment, or vehicle or equipment leases, (i) the Monitor and CRO have determined, in their sole discretion, that such security interest is senior to the DIP Charge and such collateral or other property is not subject to competing security interests from other third-party creditors; (ii) the Monitor and CRO have agreed to return the collateral or other property to such secured party, and (iii) this Court or the Canadian Court has entered an order authorizing the respective secured party with a valid, perfected, and enforceable security interest in collateral or other property of the Pride Group located within the territorial jurisdiction of the United States to sell or otherwise dispose of such collateral or other property. Notwithstanding anything to the contrary herein, nothing shall prevent a secured party from seeking relief from the automatic stay under section 362 of the Bankruptcy Code to exercise its rights and remedies with respect to its collateral, including disposition thereof, and the Foreign Representative and any other party in interest reserves the right to object to any such request for relief.

13. Any advances made to the DIP Borrowers by the DIP Lenders pursuant to this Order, the A&R Initial Order, the DIP Term Sheet or the DIP Documentation shall, pursuant to sections 1507, 1519, 1521 and 105(a) of the Bankruptcy Code, be deemed to have been made by the DIP Lenders in good faith. Notwithstanding (a) any stay, modification, amendment, supplement, vacatur, revocation or reversal of this Order, the Second Provisional Relief Order, the DIP Term Sheet, the DIP Documentation or any term hereunder or thereunder, or (b) the dismissal of one or more of the Chapter 15 Cases or the commencement of a case by any of the Debtors under another

chapter of the Bankruptcy Code or the conversion of a case of any of the Debtors from a case under one chapter of the Bankruptcy Code to a case under another chapter of the Bankruptcy Code (each, a "Subject Event"), (x) the acts taken by the DIP Agent and the DIP Lenders in accordance with this Order, and (y) the indebtedness incurred or arising prior to the DIP Agent's and the DIP Lenders' actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Order, and the acts taken by the DIP Agent and the DIP Lenders in accordance with this Order, and the liens granted to the DIP Agent for the benefit of the DIP Lenders, and all other rights, remedies, privileges, and benefits in favor of the DIP Agent and the DIP Lenders pursuant to this Order and the DIP Term Sheet and the DIP Loan Documents shall remain valid and in full force and effect to the extent provided in to section 364(e) of the Bankruptcy Code.

14.     Any obligations secured by a valid, enforceable, and perfected security interest upon or in respect of the property of the Pride Entities pursuant to a security agreement which includes as collateral thereunder any property acquired after the date of the applicable security agreement ("After-Acquired Property"), shall continue to be secured by the applicable property (including After Acquired Property that may be acquired by the applicable Pride Entity after the commencement of these proceedings) notwithstanding the commencement of these proceedings and notwithstanding anything set forth in section 552(a) of the Bankruptcy Code to the contrary, with the same priority, rights, and collateral as existed as of the date of the Initial Order, but subject to the senior liens, charges, and priorities granted by the A&R Initial Order, including but not limited to the Charges; provided that subject only to and effective upon entry of this Order, each prepetition secured creditor shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.

15.     Notwithstanding anything to the contrary in this Order or the A&R Initial Order, the Pride Entities shall not make any intercompany advances to TPL or PTS; *provided*, *that*, PTS may make intercompany transfers to TPL consisting of cash proceeds from sales of trucks owned by TPL, which sales are made by PTS on behalf of TPL (such transfers, "<u>PTS-TPL Intercompany Transfers</u>"), and no PTS-TPL Intercompany Transfers shall constitute an Intercompany Advances Charge.

16.     In accordance with paragraph 13 of the A&R Initial Order and subject to the Protocols Order, the Pride Entities shall not sell Securitization Party Assets (as defined in the A&R Initial Order) or any other vehicles, trailers, equipment or other equipment located within the territorial jurisdiction of the United States which a party or Securitization Party (as defined in the A&R Initial Order) has financed pursuant to the books and records of the Pride Entities without the written consent of the applicable Securitization Party or party.

17.     Nothing in this Order shall affect the rights of any secured party to request adequate protection pursuant to the Bankruptcy Code in addition to any adequate protection granted under this Order, or the rights of any party in interest to respond to such request, and all such rights are expressly reserved.

18.     MHCA U.S. expressly reserves its rights to (i) object in this Court to any enforcement of relief granted by the Canadian Court that impedes MHCA U.S.'s right to realize any net proceeds of its collateral and to request the adequate protection of its interest in cash collateral in accordance with the Bankruptcy Code; (ii) seek appropriate relief from this Court with respect to issues regarding U.S. law if a dispute arises between the Monitor, the Foreign Representatives, or the Pride Entities, on one hand, and MHCA U.S., on the other hand, regarding the validity, enforceability, perfection, or relative priority status of any U.S. security, ownership,

or other property interest granted by TPL and PTS under U.S. law governed facilities; and (iii) seek relief from this Court from the injunction granted in favor of the Personal Guarantors by this Order and to seek discovery in connection therewith, and nothing in this Order or the Canadian Orders shall prejudice the rights of MHCA U.S. from challenging the findings of fact made or conclusions or law reached in this Order regarding such injunction.

19.     Notwithstanding anything in this Order to the contrary, this Order does not grant any relief whatsoever with respect to any of the Arnold Entities, including, without limitation, with respect to recognition of the CCAA Proceedings,  enforcement of the Canadian Orders, and extension of the First Provisional Relief Order or the Second Provisional Relief Order.

20.     Notwithstanding anything in this Order to the contrary, any relief or protections granted by this Order with respect to the non-Debtor Pride Entities shall be solely pursuant to sections 1519 and 1521 of the Bankruptcy Code and the principles of comity, and expressly shall not be granted under section 364 of the Bankruptcy Code; *provided*, that, the relief granted in paragraph 57 of the A&R Initial Order is expressly incorporated herein and applied hereto, *mutatis mutandis*, and given effect by the Court including with respect to the Pride Entities and any of their property located in the United States.

21.     The Foreign Representative, the Debtors and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

22.     No action taken by the Foreign Representative, the Debtors, or their respective successors, agents, representatives, advisors, or counsel in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of or in connection with the CCAA Proceedings, this order, these chapter 15 cases, or any further proceeding commenced hereunder, shall be

deemed to constitute a waiver of the rights or benefits afforded such persons under sections 306 and 1510 of the Bankruptcy Code.

23.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, including, but not limited to, Bankruptcy Rules 7062 and 1018, (i) this Order shall be effective immediately and enforceable upon its entry; (ii) the Foreign Representative is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Foreign Representative and the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

24.     A copy of this Order shall be served in accordance with *Order Scheduling Hearing on Recognition of Chapter 15 Petitions for Recognition and Related Relief and Specifying Form and Manner of Service of Notice* [D.I. 56].  Such service shall be good and sufficient service and adequate notice for all purposes.

25.     The Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order, any request for additional relief and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of the Court.

26.     This Order shall be effective and enforceable immediately upon entry and shall constitute a final order within the meaning of 28 U.S.C. § 158(a).

**Dated: May 2nd, 2024**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

15

# Exhibit "7"

## Negative Equity Analysis

Fleet ID: 9997001248    Fleet Name: TPINE LEASING CAPITAL L.P.

| # | Model Year | Make | Model Name | New Used Code | Serial Num | Contract Effective Date | Loan Balance | July 22, 2024 Retail Value | July 22, 2024 Wholesale Value |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 2019 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR4KSKG4272 | 12/12/2019 | $7,869.16 | $42,725.00 | $31,750.00 |
| 2 | 2019 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR4KSKG4319 | 12/12/2019 | $27,249.77 | $42,725.00 | $31,750.00 |
| 3 | 2019 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR9KSKG4252 | 12/12/2019 | $7,869.16 | $42,725.00 | $31,750.00 |
| 4 | 2017 | FREIGHTLINER | CA125SLP | USED | 3AKJGLDR3HSHT2157 | 12/12/2019 | $5,525.78 | $28,600.00 | $22,400.00 |
| 5 | 2017 | FREIGHTLINER | CA125SLP | USED | 3AKJGLDR7HSHT2274 | 12/12/2019 | $5,450.19 | $28,600.00 | $22,400.00 |
| 6 | 2020 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR2LLLA0425 | 12/13/2019 | $35,950.72 | $48,675.00 | $36,350.00 |
| 7 | 2020 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR3LLLA0420 | 12/13/2019 | $35,950.72 | $48,675.00 | $36,350.00 |
| 8 | 2020 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR6LLLA0427 | 12/13/2019 | $35,950.72 | $48,675.00 | $36,350.00 |
| 9 | 2020 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR7LLLA0422 | 12/13/2019 | $35,950.72 | $48,675.00 | $36,350.00 |
| 10 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3LSKW9176 | 12/31/2019 | $39,605.88 | $48,675.00 | $36,350.00 |
| 11 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4LSKW9106 | 12/31/2019 | $39,605.88 | $48,675.00 | $36,350.00 |
| 12 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5LSKW9101 | 12/31/2019 | $39,605.88 | $48,675.00 | $36,350.00 |
| 13 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5LSKW9132 | 12/31/2019 | $39,605.88 | $48,675.00 | $36,350.00 |
| 14 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6LSKW9107 | 12/31/2019 | $39,605.88 | $48,675.00 | $36,350.00 |
| 15 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8LSKW9108 | 12/31/2019 | $39,605.88 | $48,675.00 | $36,350.00 |
| 16 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXLSKW9109 | 12/31/2019 | $39,605.88 | $48,675.00 | $36,350.00 |
| 17 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXLSKW9157 | 12/31/2019 | $39,605.88 | $48,675.00 | $36,350.00 |
| 18 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9LSKW9179 | 02/03/2020 | $40,821.70 | $48,675.00 | $36,350.00 |
| 19 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR1MLMJ2154 | 02/06/2020 | $42,286.36 | $60,950.00 | $44,900.00 |
| 20 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR7MLMJ2157 | 02/06/2020 | $42,286.36 | $60,950.00 | $44,900.00 |
| 21 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR7MLMJ2160 | 02/06/2020 | $42,286.36 | $60,950.00 | $44,900.00 |
| 22 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR9MLMJ2158 | 02/06/2020 | $42,286.36 | $60,950.00 | $44,900.00 |
| 23 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR0MLMJ2159 | 02/24/2020 | $44,295.27 | $60,950.00 | $44,900.00 |
| 24 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR0MLMJ2162 | 02/24/2020 | $44,295.27 | $60,950.00 | $44,900.00 |
| 25 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR1MLMJ2168 | 02/24/2020 | $44,295.27 | $60,950.00 | $44,900.00 |
| 26 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR3MLMJ2169 | 02/24/2020 | $44,295.27 | $60,950.00 | $44,900.00 |
| 27 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR4MLMJ2164 | 02/24/2020 | $44,295.27 | $60,950.00 | $44,900.00 |
| 28 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR6MLMJ2165 | 02/24/2020 | $44,295.27 | $60,950.00 | $44,900.00 |
| 29 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR8MLMJ2166 | 02/24/2020 | $44,295.27 | $60,950.00 | $44,900.00 |
| 30 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR9MLMJ2161 | 02/24/2020 | $44,295.27 | $60,950.00 | $44,900.00 |
| 31 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDRXMLMJ2170 | 02/24/2020 | $44,295.27 | $60,950.00 | $44,900.00 |
| 32 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1LSKW9189 | 04/07/2020 | $40,666.27 | $48,675.00 | $36,350.00 |
| 33 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1LSKW9242 | 04/07/2020 | $40,666.27 | $48,675.00 | $36,350.00 |
| 34 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2LSKW9203 | 04/07/2020 | $40,666.27 | $48,675.00 | $36,350.00 |
| 35 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3LSKW9193 | 04/07/2020 | $40,666.27 | $48,675.00 | $36,350.00 |
| 36 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3LSKW9243 | 04/07/2020 | $40,666.27 | $48,675.00 | $36,350.00 |
| 37 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5LSKW9194 | 04/07/2020 | $40,666.27 | $48,675.00 | $36,350.00 |
| 38 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXLSKW9191 | 04/07/2020 | $40,666.27 | $48,675.00 | $36,350.00 |
| 39 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXLSKW9241 | 04/07/2020 | $40,666.27 | $48,675.00 | $36,350.00 |
| 40 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR2MLMA7394 | 05/13/2020 | $43,321.47 | $60,950.00 | $44,900.00 |
| 41 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR4MLMA7395 | 05/13/2020 | $43,321.47 | $60,950.00 | $44,900.00 |
| 42 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR6MLMA7390 | 05/13/2020 | $43,321.47 | $60,950.00 | $44,900.00 |
| 43 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR6MLMA7396 | 05/13/2020 | $43,321.47 | $60,950.00 | $44,900.00 |
| 44 | 2021 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR7MLMA7391 | 05/13/2020 | $43,321.47 | $60,950.00 | $44,900.00 |
| 45 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2LSKU7816 | 07/17/2020 | $50,531.87 | $48,675.00 | $36,350.00 |
| 46 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8LSKU7819 | 07/17/2020 | $50,531.87 | $48,675.00 | $36,350.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 47 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9LSKU7957 | 07/17/2020 | | $50,531.87 | $48,675.00 | $36,350.00 |
| 48 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4LSKU7980 | 07/29/2020 | | $51,100.22 | $48,675.00 | $36,350.00 |
| 49 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5LSKU7969 | 07/29/2020 | | $51,100.18 | $48,675.00 | $36,350.00 |
| 50 | 2020 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8LSKU7979 | 07/29/2020 | | $51,100.18 | $48,675.00 | $36,350.00 |
| 51 | 2021 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4MSMY3448 | 12/31/2020 | | $51,317.22 | $60,950.00 | $44,900.00 |
| 52 | 2021 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5MSMY3460 | 12/31/2020 | | $51,317.22 | $60,950.00 | $44,900.00 |
| 53 | 2021 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2MSMY3447 | 01/11/2021 | | $60,632.48 | $60,950.00 | $44,900.00 |
| 54 | 2021 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4MSMY3465 | 01/11/2021 | | $60,632.51 | $60,950.00 | $44,900.00 |
| 55 | 2021 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXMSMY3454 | 01/11/2021 | | $60,632.48 | $60,950.00 | $44,900.00 |
| 56 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0NSMZ3668 | 01/29/2021 | | $62,425.26 | $75,000.00 | $54,450.00 |
| 57 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1NSMZ3663 | 01/29/2021 | | $62,425.26 | $75,000.00 | $54,450.00 |
| 58 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3NSMZ3681 | 01/29/2021 | | $62,425.26 | $75,000.00 | $54,450.00 |
| 59 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5NSMZ3682 | 01/29/2021 | | $62,425.26 | $75,000.00 | $54,450.00 |
| 60 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8NSMZ3661 | 01/29/2021 | | $62,425.26 | $75,000.00 | $54,450.00 |
| 61 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9NSMZ3667 | 01/29/2021 | | $62,425.26 | $75,000.00 | $54,450.00 |
| 62 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3NSNA6375 | 02/26/2021 | | $68,085.14 | $75,000.00 | $54,450.00 |
| 63 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7NSNA6363 | 02/26/2021 | | $68,085.14 | $75,000.00 | $54,450.00 |
| 64 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR0NLMW8717 | 08/19/2021 | | $76,593.40 | $75,000.00 | $54,450.00 |
| 65 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR0NLMW8720 | 08/19/2021 | | $76,593.40 | $75,000.00 | $54,450.00 |
| 66 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR0NLMW8751 | 09/21/2021 | | $81,387.01 | $75,000.00 | $54,450.00 |
| 67 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR1NLMW8757 | 09/21/2021 | | $81,758.11 | $75,000.00 | $54,450.00 |
| 68 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR1NLMW8760 | 09/21/2021 | | $81,758.11 | $75,000.00 | $54,450.00 |
| 69 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR2NLMW8752 | 09/21/2021 | | $81,387.01 | $75,000.00 | $54,450.00 |
| 70 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR4NLMW8753 | 09/21/2021 | | $81,387.01 | $75,000.00 | $54,450.00 |
| 71 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR8NLMW8755 | 09/21/2021 | | $81,387.01 | $75,000.00 | $54,450.00 |
| 72 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3NSMW5525 | 09/21/2021 | | $81,387.01 | $75,000.00 | $54,450.00 |
| 73 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5NSMW5526 | 09/21/2021 | | $81,758.11 | $75,000.00 | $54,450.00 |
| 74 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7NSMW5527 | 09/21/2021 | | $81,758.05 | $75,000.00 | $54,450.00 |
| 75 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR5NLMW8759 | 10/26/2021 | | $83,698.59 | $75,000.00 | $54,450.00 |
| 76 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0NSNC3358 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 77 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1NSNC3384 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 78 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2NSNC3359 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 79 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2NSNC3393 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 80 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3NSNC3354 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 81 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3NSNC3371 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 82 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5NSNC3369 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 83 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5NSNC3372 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 84 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6NSNC3364 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 85 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6NSNC3395 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 86 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7NSNC3356 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 87 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7NSNC3373 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 88 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7NSNC3390 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 89 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8NSNC3365 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 90 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9NSNC3374 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 91 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXNSNC3366 | 10/26/2021 | | $83,318.68 | $75,000.00 | $54,450.00 |
| 92 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR7NLMW8813 | 11/16/2021 | | $85,401.14 | $75,000.00 | $54,450.00 |
| 93 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2NSNC3443 | 11/16/2021 | | $85,790.54 | $75,000.00 | $54,450.00 |
| 94 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5NSNC3405 | 11/16/2021 | | $85,401.14 | $75,000.00 | $54,450.00 |
| 95 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6NSNC3381 | 11/16/2021 | | $85,401.14 | $75,000.00 | $54,450.00 |
| 96 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6NSNC3400 | 11/16/2021 | | $85,401.14 | $75,000.00 | $54,450.00 |
| 97 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9NSNC3424 | 11/16/2021 | | $85,790.54 | $75,000.00 | $54,450.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 98 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXNSNC3397 | 11/16/2021 | $85,401.14 | $75,000.00 | $54,450.00 |
| 99 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR0NLMW8815 | 12/13/2021 | $91,089.96 | $75,000.00 | $54,450.00 |
| 100 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR4NLMW8817 | 12/13/2021 | $91,089.96 | $75,000.00 | $54,450.00 |
| 101 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR6NLMW8820 | 12/13/2021 | $91,488.37 | $75,000.00 | $54,450.00 |
| 102 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR6NLMW8818 | 12/13/2021 | $91,089.96 | $75,000.00 | $54,450.00 |
| 103 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR6NLMW8821 | 12/13/2021 | $91,488.37 | $75,000.00 | $54,450.00 |
| 104 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR8NLMW8819 | 12/13/2021 | $91,089.96 | $75,000.00 | $54,450.00 |
| 105 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR8NLMW8822 | 12/13/2021 | $91,488.37 | $75,000.00 | $54,450.00 |
| 106 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0NSNC3389 | 12/13/2021 | $91,089.96 | $75,000.00 | $54,450.00 |
| 107 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1NSNC3417 | 12/13/2021 | $91,488.37 | $75,000.00 | $54,450.00 |
| 108 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4NSNC3363 | 12/13/2021 | $91,089.96 | $75,000.00 | $54,450.00 |
| 109 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7NSNC3440 | 12/13/2021 | $91,089.96 | $75,000.00 | $54,450.00 |
| 110 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXNSNC3349 | 12/13/2021 | $91,089.96 | $75,000.00 | $54,450.00 |
| 111 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR0NLMW8863 | 01/11/2022 | $93,725.93 | $75,000.00 | $54,450.00 |
| 112 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR0NLMW8913 | 01/11/2022 | $93,725.93 | $75,000.00 | $54,450.00 |
| 113 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR1NLMW8865 | 01/11/2022 | $93,725.93 | $75,000.00 | $54,450.00 |
| 114 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR6NLMW8866 | 01/11/2022 | $93,725.93 | $75,000.00 | $54,450.00 |
| 115 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR7NLMW8861 | 01/11/2022 | $93,804.37 | $75,000.00 | $54,450.00 |
| 116 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR9NLMW8862 | 01/11/2022 | $93,725.93 | $75,000.00 | $54,450.00 |
| 117 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDRXNLMW8868 | 01/11/2022 | $94,153.29 | $75,000.00 | $54,450.00 |
| 118 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0NSNC3392 | 01/11/2022 | $93,725.93 | $75,000.00 | $54,450.00 |
| 119 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1NSNC3398 | 01/11/2022 | $93,725.93 | $75,000.00 | $54,450.00 |
| 120 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3NSNC3368 | 01/11/2022 | $93,725.93 | $75,000.00 | $54,450.00 |
| 121 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8NSNC3351 | 01/11/2022 | $93,725.93 | $75,000.00 | $54,450.00 |
| 122 | 2019 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR7KSJX0858 | 01/17/2022 | $60,606.82 | $42,725.00 | $31,750.00 |
| 123 | 2018 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR9JSJW7121 | 01/17/2022 | $57,686.01 | $36,500.00 | $27,750.00 |
| 124 | 2019 | FREIGHTLINER | PE116DC | USED | 3AKJHTDV1KSKN2844 | 01/17/2022 | $40,842.67 | $38,550.00 | $27,750.00 |
| 125 | 2019 | FREIGHTLINER | PE116DC | USED | 3AKJHTDV8KSKN2842 | 01/17/2022 | $40,842.67 | $38,550.00 | $27,750.00 |
| 126 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR7NLMW8911 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 127 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR9NLMW8814 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 128 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR9NLMW8912 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 129 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0NSNC3361 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 130 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0NSNC3375 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 131 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0NSNC3408 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 132 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0NSNC3411 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 133 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2NSNC3376 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 134 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4NSNC3377 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 135 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4NSNC3394 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 136 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4NSNC3444 | 01/25/2022 | $93,106.73 | $75,000.00 | $54,450.00 |
| 137 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4NSNC3445 | 01/25/2022 | $93,106.73 | $75,000.00 | $54,450.00 |
| 138 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8NSNC3396 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 139 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9NSNC3357 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 140 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9NSNC3391 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 141 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXNSNC3402 | 01/25/2022 | $92,684.12 | $75,000.00 | $54,450.00 |
| 142 | 2022 | FREIGHTLINER | PT126SLP | NEW | 1FUJHHDR6NLMW8916 | 02/16/2022 | $97,563.26 | $75,000.00 | $54,450.00 |
| 143 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1NSNC3367 | 02/16/2022 | $97,120.42 | $75,000.00 | $54,450.00 |
| 144 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1NSNC3420 | 02/16/2022 | $97,563.26 | $75,000.00 | $54,450.00 |
| 145 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2NSNC3362 | 02/16/2022 | $97,120.42 | $75,000.00 | $54,450.00 |
| 146 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3NSNC3421 | 02/16/2022 | $97,563.26 | $75,000.00 | $54,450.00 |
| 147 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8NSNC3348 | 02/16/2022 | $97,120.42 | $75,000.00 | $54,450.00 |
| 148 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXNSNC3447 | 02/16/2022 | $97,563.26 | $75,000.00 | $54,450.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 149 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4NSNC3427 | 02/24/2022 | | $97,717.59 | $75,000.00 | $54,450.00 |
| 150 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8NSNC3401 | 02/24/2022 | | $97,274.05 | $75,000.00 | $54,450.00 |
| 151 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8NSNC3432 | 02/24/2022 | | $97,717.59 | $75,000.00 | $54,450.00 |
| 152 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5NSNC3419 | 02/28/2022 | | $97,448.59 | $75,000.00 | $54,450.00 |
| 153 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6NSNC3431 | 02/28/2022 | | $97,448.59 | $75,000.00 | $54,450.00 |
| 154 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9NSNC3360 | 02/28/2022 | | $97,006.27 | $75,000.00 | $54,450.00 |
| 155 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9NSNC3438 | 02/28/2022 | | $97,448.59 | $75,000.00 | $54,450.00 |
| 156 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0NSNC3442 | 03/14/2022 | | $99,838.23 | $75,000.00 | $54,450.00 |
| 157 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5NSNC3422 | 03/14/2022 | | $99,838.23 | $75,000.00 | $54,450.00 |
| 158 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6NSNC3436 | 03/14/2022 | | $99,838.23 | $75,000.00 | $54,450.00 |
| 159 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6NSNC3428 | 03/14/2022 | | $99,838.23 | $75,000.00 | $54,450.00 |
| 160 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7NSNC3387 | 03/14/2022 | | $99,385.26 | $75,000.00 | $54,450.00 |
| 161 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7NSNC3423 | 03/14/2022 | | $99,838.23 | $75,000.00 | $54,450.00 |
| 162 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8NSNC3429 | 03/14/2022 | | $99,838.23 | $75,000.00 | $54,450.00 |
| 163 | 2023 | FREIGHTLINER | M2106 | NEW | 1FVACXFC5PHNU8954 | 04/22/2022 | | $75,404.04 | $85,525.00 | $73,500.00 |
| 164 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8463 | 04/22/2022 | | $106,473.73 | $99,850.00 | $75,500.00 |
| 165 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8464 | 04/22/2022 | | $106,473.73 | $99,850.00 | $75,500.00 |
| 166 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8465 | 04/22/2022 | | $106,473.73 | $99,850.00 | $75,500.00 |
| 167 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8467 | 04/22/2022 | | $106,473.73 | $99,850.00 | $75,500.00 |
| 168 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8470 | 04/22/2022 | | $106,947.60 | $99,850.00 | $75,500.00 |
| 169 | 2023 | FREIGHTLINER | M2106 | NEW | 1FVACXFCXPHNU8951 | 04/28/2022 | | $74,066.12 | $85,525.00 | $73,500.00 |
| 170 | 2022 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1NSNC3403 | 04/28/2022 | | $101,882.16 | $75,000.00 | $54,450.00 |
| 171 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8468 | 04/28/2022 | | $105,050.00 | $99,850.00 | $75,500.00 |
| 172 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8451 | 04/28/2022 | | $104,584.54 | $99,850.00 | $75,500.00 |
| 173 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8459 | 05/10/2022 | | $109,611.41 | $99,850.00 | $75,500.00 |
| 174 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8486 | 05/10/2022 | | $109,611.41 | $99,850.00 | $75,500.00 |
| 175 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8473 | 05/10/2022 | | $110,099.24 | $99,850.00 | $75,500.00 |
| 176 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8487 | 05/10/2022 | | $109,611.41 | $99,850.00 | $75,500.00 |
| 177 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8490 | 05/10/2022 | | $109,611.41 | $99,850.00 | $75,500.00 |
| 178 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8479 | 05/10/2022 | | $109,611.41 | $99,850.00 | $75,500.00 |
| 179 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8457 | 05/10/2022 | | $109,611.41 | $99,850.00 | $75,500.00 |
| 180 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8484 | 05/10/2022 | | $109,611.41 | $99,850.00 | $75,500.00 |
| 181 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8454 | 05/26/2022 | | $110,836.81 | $99,850.00 | $75,500.00 |
| 182 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8448 | 05/26/2022 | | $111,330.09 | $99,850.00 | $75,500.00 |
| 183 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8529 | 05/26/2022 | | $111,330.09 | $99,850.00 | $75,500.00 |
| 184 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8449 | 05/26/2022 | | $111,330.09 | $99,850.00 | $75,500.00 |
| 185 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8446 | 06/16/2022 | | $110,333.19 | $99,850.00 | $75,500.00 |
| 186 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8447 | 06/16/2022 | | $110,333.19 | $99,850.00 | $75,500.00 |
| 187 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8450 | 06/16/2022 | | $110,822.90 | $99,850.00 | $75,500.00 |
| 188 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8456 | 06/16/2022 | | $110,333.19 | $99,850.00 | $75,500.00 |
| 189 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8460 | 06/16/2022 | | $110,333.19 | $99,850.00 | $75,500.00 |
| 190 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8510 | 06/16/2022 | | $110,822.90 | $99,850.00 | $75,500.00 |
| 191 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8458 | 06/16/2022 | | $110,333.19 | $99,850.00 | $75,500.00 |
| 192 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8461 | 06/16/2022 | | $110,333.19 | $99,850.00 | $75,500.00 |
| 193 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8453 | 06/16/2022 | | $110,333.19 | $99,850.00 | $75,500.00 |
| 194 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8520 | 06/16/2022 | | $110,333.19 | $99,850.00 | $75,500.00 |
| 195 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8471 | 06/28/2022 | | $112,218.37 | $99,850.00 | $75,500.00 |
| 196 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8472 | 06/28/2022 | | $112,218.37 | $99,850.00 | $75,500.00 |
| 197 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8482 | 06/28/2022 | | $112,218.37 | $99,850.00 | $75,500.00 |
| 198 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8483 | 06/28/2022 | | $112,218.37 | $99,850.00 | $75,500.00 |
| 199 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8499 | 07/08/2022 | | $115,916.60 | $99,850.00 | $75,500.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 200 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8504 | 07/08/2022 | | $115,404.37 | $99,850.00 | $75,500.00 |
| 201 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8535 | 07/08/2022 | | $120,918.20 | $99,850.00 | $75,500.00 |
| 202 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8505 | 07/08/2022 | | $115,404.37 | $99,850.00 | $75,500.00 |
| 203 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8495 | 07/08/2022 | | $115,916.60 | $99,850.00 | $75,500.00 |
| 204 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8501 | 07/08/2022 | | $115,404.37 | $99,850.00 | $75,500.00 |
| 205 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8491 | 07/08/2022 | | $115,404.37 | $99,850.00 | $75,500.00 |
| 206 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8538 | 07/08/2022 | | $120,405.98 | $99,850.00 | $75,500.00 |
| 207 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8466 | 07/08/2022 | | $115,404.38 | $99,850.00 | $75,500.00 |
| 208 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8497 | 07/08/2022 | | $115,404.37 | $99,850.00 | $75,500.00 |
| 209 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8498 | 07/08/2022 | | $115,916.60 | $99,850.00 | $75,500.00 |
| 210 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8503 | 07/08/2022 | | $115,404.37 | $99,850.00 | $75,500.00 |
| 211 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8551 | 07/08/2022 | | $120,405.98 | $99,850.00 | $75,500.00 |
| 212 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8526 | 07/19/2022 | | $115,716.67 | $99,850.00 | $75,500.00 |
| 213 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8494 | 07/19/2022 | | $116,230.28 | $99,850.00 | $75,500.00 |
| 214 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8527 | 07/19/2022 | | $115,716.67 | $99,850.00 | $75,500.00 |
| 215 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8544 | 07/19/2022 | | $120,731.81 | $99,850.00 | $75,500.00 |
| 216 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8522 | 07/19/2022 | | $115,716.67 | $99,850.00 | $75,500.00 |
| 217 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8555 | 07/19/2022 | | $120,731.80 | $99,850.00 | $75,500.00 |
| 218 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8533 | 07/19/2022 | | $116,230.28 | $99,850.00 | $75,500.00 |
| 219 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8550 | 07/19/2022 | | $120,731.81 | $99,850.00 | $75,500.00 |
| 220 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8614 | 07/19/2022 | | $121,245.43 | $99,850.00 | $75,500.00 |
| 221 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8492 | 07/19/2022 | | $115,716.67 | $99,850.00 | $75,500.00 |
| 222 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8539 | 07/19/2022 | | $120,731.81 | $99,850.00 | $75,500.00 |
| 223 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8548 | 07/19/2022 | | $120,731.81 | $99,850.00 | $75,500.00 |
| 224 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8624 | 07/26/2022 | | $119,812.78 | $99,850.00 | $75,500.00 |
| 225 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8611 | 07/26/2022 | | $120,322.39 | $99,850.00 | $75,500.00 |
| 226 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8553 | 07/26/2022 | | $119,812.71 | $99,850.00 | $75,500.00 |
| 227 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8576 | 07/26/2022 | | $119,812.71 | $99,850.00 | $75,500.00 |
| 228 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8609 | 07/26/2022 | | $120,322.41 | $99,850.00 | $75,500.00 |
| 229 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8604 | 07/26/2022 | | $120,322.41 | $99,850.00 | $75,500.00 |
| 230 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8618 | 07/26/2022 | | $119,812.71 | $99,850.00 | $75,500.00 |
| 231 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8546 | 07/26/2022 | | $119,812.56 | $99,850.00 | $75,500.00 |
| 232 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8630 | 07/26/2022 | | $120,322.41 | $99,850.00 | $75,500.00 |
| 233 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8541 | 07/26/2022 | | $119,812.71 | $99,850.00 | $75,500.00 |
| 234 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8622 | 07/26/2022 | | $119,812.78 | $99,850.00 | $75,500.00 |
| 235 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8508 | 07/26/2022 | | $115,345.45 | $99,850.00 | $75,500.00 |
| 236 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8606 | 07/26/2022 | | $120,322.41 | $99,850.00 | $75,500.00 |
| 237 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8629 | 07/26/2022 | | $120,322.41 | $99,850.00 | $75,500.00 |
| 238 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8512 | 08/05/2022 | | $117,148.17 | $99,850.00 | $75,500.00 |
| 239 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8557 | 08/05/2022 | | $122,225.20 | $99,850.00 | $75,500.00 |
| 240 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8549 | 08/05/2022 | | $122,225.35 | $99,850.00 | $75,500.00 |
| 241 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8566 | 08/05/2022 | | $122,745.32 | $99,850.00 | $75,500.00 |
| 242 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8616 | 08/05/2022 | | $122,225.20 | $99,850.00 | $75,500.00 |
| 243 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8530 | 08/05/2022 | | $117,668.13 | $99,850.00 | $75,500.00 |
| 244 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8558 | 08/05/2022 | | $122,225.20 | $99,850.00 | $75,500.00 |
| 245 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8561 | 08/05/2022 | | $122,225.20 | $99,850.00 | $75,500.00 |
| 246 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8514 | 08/05/2022 | | $117,139.42 | $99,850.00 | $75,500.00 |
| 247 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8506 | 08/05/2022 | | $117,148.17 | $99,850.00 | $75,500.00 |
| 248 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8563 | 08/05/2022 | | $122,225.20 | $99,850.00 | $75,500.00 |
| 249 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8605 | 08/05/2022 | | $122,745.32 | $99,850.00 | $75,500.00 |
| 250 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8628 | 08/05/2022 | | $122,745.32 | $99,850.00 | $75,500.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 251 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8511 | 08/05/2022 | $117,148.17 | $99,850.00 | $75,500.00 |
| 252 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8585 | 08/05/2022 | $122,745.32 | $99,850.00 | $75,500.00 |
| 253 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8596 | 08/05/2022 | $122,225.20 | $99,850.00 | $75,500.00 |
| 254 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8615 | 08/05/2022 | $122,745.32 | $99,850.00 | $75,500.00 |
| 255 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8493 | 08/11/2022 | $118,789.72 | $99,850.00 | $75,500.00 |
| 256 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8509 | 08/11/2022 | $118,264.79 | $99,850.00 | $75,500.00 |
| 257 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8620 | 08/11/2022 | $123,390.22 | $99,850.00 | $75,500.00 |
| 258 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8528 | 08/11/2022 | $118,789.72 | $99,850.00 | $75,500.00 |
| 259 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8562 | 08/11/2022 | $123,390.37 | $99,850.00 | $75,500.00 |
| 260 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8532 | 08/11/2022 | $118,264.79 | $99,850.00 | $75,500.00 |
| 261 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8474 | 08/11/2022 | $118,789.72 | $99,850.00 | $75,500.00 |
| 262 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8524 | 08/11/2022 | $118,264.79 | $99,850.00 | $75,500.00 |
| 263 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8516 | 08/11/2022 | $118,264.79 | $99,850.00 | $75,500.00 |
| 264 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8564 | 08/11/2022 | $123,915.29 | $99,850.00 | $75,500.00 |
| 265 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8590 | 08/11/2022 | $123,390.45 | $99,850.00 | $75,500.00 |
| 266 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8543 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 267 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8591 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 268 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8583 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 269 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8597 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 270 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8602 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 271 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8575 | 09/15/2022 | $126,245.90 | $99,850.00 | $75,500.00 |
| 272 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8589 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 273 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8625 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 274 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8706 | 09/15/2022 | $125,434.26 | $99,850.00 | $75,500.00 |
| 275 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8531 | 09/15/2022 | $120,474.26 | $99,850.00 | $75,500.00 |
| 276 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8688 | 09/15/2022 | $125,434.26 | $99,850.00 | $75,500.00 |
| 277 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8707 | 09/15/2022 | $125,434.26 | $99,850.00 | $75,500.00 |
| 278 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8568 | 09/15/2022 | $126,245.90 | $99,850.00 | $75,500.00 |
| 279 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8697 | 09/15/2022 | $125,434.26 | $99,850.00 | $75,500.00 |
| 280 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8689 | 09/15/2022 | $125,434.26 | $99,850.00 | $75,500.00 |
| 281 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8586 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 282 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8636 | 09/15/2022 | $125,434.26 | $99,850.00 | $75,500.00 |
| 283 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8670 | 09/15/2022 | $125,434.26 | $99,850.00 | $75,500.00 |
| 284 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8703 | 09/15/2022 | $125,434.26 | $99,850.00 | $75,500.00 |
| 285 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8502 | 09/15/2022 | $120,474.26 | $99,850.00 | $75,500.00 |
| 286 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8595 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 287 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8631 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 288 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8659 | 09/15/2022 | $125,434.26 | $99,850.00 | $75,500.00 |
| 289 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8587 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 290 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8623 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 291 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8579 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 292 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8582 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 293 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8632 | 09/15/2022 | $125,709.81 | $99,850.00 | $75,500.00 |
| 294 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8686 | 09/28/2022 | $125,440.65 | $99,850.00 | $75,500.00 |
| 295 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8722 | 09/28/2022 | $125,440.65 | $99,850.00 | $75,500.00 |
| 296 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8650 | 09/28/2022 | $125,440.65 | $99,850.00 | $75,500.00 |
| 297 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8664 | 09/28/2022 | $125,440.65 | $99,850.00 | $75,500.00 |
| 298 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8681 | 09/28/2022 | $125,440.65 | $99,850.00 | $75,500.00 |
| 299 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8695 | 09/28/2022 | $125,440.65 | $99,850.00 | $75,500.00 |
| 300 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8642 | 09/28/2022 | $125,440.65 | $99,850.00 | $75,500.00 |
| 301 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8598 | 09/28/2022 | $125,440.65 | $99,850.00 | $75,500.00 |

| 302 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8682 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 303 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8696 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 304 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8701 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 305 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8674 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 306 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8691 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 307 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8649 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 308 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8675 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 309 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8692 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 310 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8756 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 311 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8653 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 312 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8720 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 313 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8645 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 314 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8662 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 315 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8693 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 316 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8640 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 317 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8685 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 318 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8704 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 319 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8721 | 09/28/2022 | | $125,440.65 | $99,850.00 | | $75,500.00 |
| 320 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8655 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 321 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8669 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 322 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8705 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 323 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8767 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 324 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8678 | 10/11/2022 | | $129,214.77 | $99,850.00 | | $75,500.00 |
| 325 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8728 | 10/11/2022 | | $129,214.77 | $99,850.00 | | $75,500.00 |
| 326 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8759 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 327 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8639 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 328 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8656 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 329 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8673 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 330 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8687 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 331 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8690 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 332 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8768 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 333 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8665 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 334 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8679 | 10/11/2022 | | $129,214.77 | $99,850.00 | | $75,500.00 |
| 335 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8729 | 10/11/2022 | | $129,214.77 | $99,850.00 | | $75,500.00 |
| 336 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8657 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 337 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8710 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 338 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8724 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 339 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8769 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 340 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8554 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 341 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8716 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 342 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8725 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 343 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8717 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 344 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8581 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 345 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8676 | 10/11/2022 | | $129,214.76 | $99,850.00 | | $75,500.00 |
| 346 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8709 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 347 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8712 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 348 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8726 | 10/11/2022 | | $129,214.76 | $99,850.00 | | $75,500.00 |
| 349 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8757 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 350 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8760 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 351 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8699 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |
| 352 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8718 | 10/11/2022 | | $128,665.01 | $99,850.00 | | $75,500.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 353 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8646 | 10/11/2022 | $128,665.01 | $99,850.00 | $75,500.00 |
| 354 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8663 | 10/11/2022 | $128,665.01 | $99,850.00 | $75,500.00 |
| 355 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8680 | 10/11/2022 | $129,214.76 | $99,850.00 | $75,500.00 |
| 356 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8713 | 10/11/2022 | $128,665.01 | $99,850.00 | $75,500.00 |
| 357 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8727 | 10/11/2022 | $129,214.76 | $99,850.00 | $75,500.00 |
| 358 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8758 | 10/11/2022 | $128,665.01 | $99,850.00 | $75,500.00 |
| 359 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8761 | 10/11/2022 | $128,665.01 | $99,850.00 | $75,500.00 |
| 360 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8672 | 10/21/2022 | $129,172.57 | $99,850.00 | $75,500.00 |
| 361 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8714 | 10/21/2022 | $129,172.57 | $99,850.00 | $75,500.00 |
| 362 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8643 | 10/21/2022 | $129,172.57 | $99,850.00 | $75,500.00 |
| 363 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8684 | 10/21/2022 | $129,172.57 | $99,850.00 | $75,500.00 |
| 364 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8698 | 10/21/2022 | $129,172.57 | $99,850.00 | $75,500.00 |
| 365 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8668 | 10/21/2022 | $129,172.57 | $99,850.00 | $75,500.00 |
| 366 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8633 | 11/28/2022 | $132,240.63 | $99,850.00 | $75,500.00 |
| 367 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8666 | 11/28/2022 | $132,240.63 | $99,850.00 | $75,500.00 |
| 368 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8764 | 11/28/2022 | $132,240.63 | $99,850.00 | $75,500.00 |
| 369 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8647 | 11/21/2022 | $132,292.50 | $99,850.00 | $75,500.00 |
| 370 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8715 | 11/21/2022 | $132,033.59 | $99,850.00 | $75,500.00 |
| 371 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8763 | 11/21/2022 | $132,033.59 | $99,850.00 | $75,500.00 |
| 372 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8711 | 11/21/2022 | $132,033.59 | $99,850.00 | $75,500.00 |
| 373 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8683 | 12/07/2022 | $130,869.35 | $99,850.00 | $75,500.00 |
| 374 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8574 | 12/21/2022 | $143,231.28 | $99,850.00 | $75,500.00 |
| 375 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8834 | 12/21/2022 | $151,754.15 | $99,850.00 | $75,500.00 |
| 376 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1PSNU8843 | 12/21/2022 | $151,754.15 | $99,850.00 | $75,500.00 |
| 377 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8849 | 12/21/2022 | $151,754.15 | $99,850.00 | $75,500.00 |
| 378 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2PSNU8852 | 12/21/2022 | $151,754.24 | $99,850.00 | $75,500.00 |
| 379 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8844 | 12/21/2022 | $151,754.15 | $99,850.00 | $75,500.00 |
| 380 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8853 | 12/21/2022 | $151,754.15 | $99,850.00 | $75,500.00 |
| 381 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8838 | 12/21/2022 | $151,754.15 | $99,850.00 | $75,500.00 |
| 382 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8833 | 12/21/2022 | $151,754.15 | $99,850.00 | $75,500.00 |
| 383 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8851 | 01/18/2023 | $157,935.31 | $99,850.00 | $75,500.00 |
| 384 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3PSNU8830 | 01/18/2023 | $157,935.31 | $99,850.00 | $75,500.00 |
| 385 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4PSNU8836 | 01/18/2023 | $157,935.31 | $99,850.00 | $75,500.00 |
| 386 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8831 | 01/18/2023 | $157,935.31 | $99,850.00 | $75,500.00 |
| 387 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8837 | 01/18/2023 | $157,935.31 | $99,850.00 | $75,500.00 |
| 388 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8840 | 01/18/2023 | $157,935.31 | $99,850.00 | $75,500.00 |
| 389 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8832 | 01/18/2023 | $157,935.31 | $99,850.00 | $75,500.00 |
| 390 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8846 | 01/18/2023 | $157,935.31 | $99,850.00 | $75,500.00 |
| 391 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8PSNU8841 | 01/18/2023 | $157,935.31 | $99,850.00 | $75,500.00 |
| 392 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8850 | 01/18/2023 | $157,935.31 | $99,850.00 | $75,500.00 |
| 393 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8842 | 01/18/2023 | $157,935.31 | $99,850.00 | $75,500.00 |
| 394 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0PSNU8848 | 01/27/2023 | $159,197.41 | $99,850.00 | $75,500.00 |
| 395 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5PSNU8845 | 01/27/2023 | $159,197.41 | $99,850.00 | $75,500.00 |
| 396 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9PSNU8847 | 01/27/2023 | $159,197.41 | $99,850.00 | $75,500.00 |
| 397 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXPSNU8839 | 01/27/2023 | $159,197.41 | $99,850.00 | $75,500.00 |
| 398 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6PSNU8854 | 02/06/2023 | $158,947.60 | $99,850.00 | $75,500.00 |
| 399 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1RSUV2522 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |
| 400 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2RSUV2514 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |
| 401 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3RSUV2523 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |
| 402 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4RSUV2515 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |
| 403 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5RSUV2507 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |

| 404 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5RSUV2510 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |
| 405 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7RSUV2508 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |
| 406 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7RSUV2511 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |
| 407 | 2024 | FREIGHTLINER | CA126 | NEW | 3AKJHHDR7RSUV2525 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |
| 408 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8RSUV2520 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |
| 409 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9RSUV2509 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |
| 410 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9RSUV2512 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |
| 411 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXRSUV2518 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |
| 412 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXRSUV2521 | 02/09/2023 | $147,469.52 | $126,400.00 | $98,000.00 |
| 413 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0RSUV2513 | 03/07/2023 | $155,930.77 | $126,400.00 | $98,000.00 |
| 414 | 2023 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7PSNU8667 | 03/16/2023 | $143,083.57 | $99,850.00 | $75,500.00 |
| 415 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0RSUV0731 | 04/19/2023 | $154,029.39 | $126,400.00 | $98,000.00 |
| 416 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1RSUV0737 | 04/19/2023 | $154,029.39 | $126,400.00 | $98,000.00 |
| 417 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2RSUV0732 | 04/19/2023 | $154,029.39 | $126,400.00 | $98,000.00 |
| 418 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4RSUV0733 | 04/19/2023 | $154,029.39 | $126,400.00 | $98,000.00 |
| 419 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5RSUV2524 | 04/19/2023 | $147,189.33 | $126,400.00 | $98,000.00 |
| 420 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8RSUV0735 | 04/19/2023 | $154,029.39 | $126,400.00 | $98,000.00 |
| 421 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXRSUV0736 | 04/19/2023 | $154,253.10 | $126,400.00 | $98,000.00 |
| 422 | 2024 | FREIGHTLINER | M2106 | NEW | 3ALACWFCXRDUV3017 | 04/19/2023 | $101,355.33 | $85,525.00 | $98,000.00 |
| 423 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9RSUV0744 | 04/25/2023 | $159,883.40 | $126,400.00 | $98,000.00 |
| 424 | 2024 | FREIGHTLINER | M2106 | NEW | 3ALACWFC1RDUV3021 | 04/25/2023 | $109,111.83 | $91,000.00 | $81,000.00 |
| 425 | 2024 | FREIGHTLINER | M2106 | NEW | 3ALACWFCXRDUV3020 | 04/25/2023 | $109,111.83 | $91,000.00 | $81,000.00 |
| 426 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0RSVA7506 | 05/11/2023 | $165,525.71 | $126,400.00 | $98,000.00 |
| 427 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1RSUV0740 | 05/11/2023 | $165,525.71 | $126,400.00 | $98,000.00 |
| 428 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2RSVA7507 | 05/11/2023 | $165,525.71 | $126,400.00 | $98,000.00 |
| 429 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2RSUV7510 | 05/11/2023 | $165,525.71 | $126,400.00 | $98,000.00 |
| 430 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3RSUV0738 | 05/11/2023 | $165,525.71 | $126,400.00 | $98,000.00 |
| 431 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3RSUV0741 | 05/11/2023 | $165,525.71 | $126,400.00 | $98,000.00 |
| 432 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4RSUV7508 | 05/11/2023 | $165,525.71 | $126,400.00 | $98,000.00 |
| 433 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5RSUV0742 | 05/11/2023 | $165,525.71 | $126,400.00 | $98,000.00 |
| 434 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6RSVA7503 | 05/11/2023 | $165,525.71 | $126,400.00 | $98,000.00 |
| 435 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6RSVA7509 | 05/11/2023 | $165,525.71 | $126,400.00 | $98,000.00 |
| 436 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7RSVA7504 | 05/11/2023 | $165,525.71 | $126,400.00 | $98,000.00 |
| 437 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9RSVA7505 | 05/11/2023 | $165,525.71 | $126,400.00 | $98,000.00 |
| 438 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9RSUV0739 | 05/30/2023 | $168,059.04 | $126,400.00 | $98,000.00 |
| 439 | 2024 | FREIGHTLINER | M2106 | NEW | 3ALACWFC5RDUV3023 | 05/30/2023 | $111,164.02 | $91,000.00 | $81,000.00 |
| 440 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXRSUZ0122 | 06/15/2023 | $162,045.22 | $126,400.00 | $98,000.00 |
| 441 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXRSVA7514 | 06/15/2023 | $157,332.99 | $126,400.00 | $98,000.00 |
| 442 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1RSVA7515 | 06/22/2023 | $163,162.48 | $126,400.00 | $98,000.00 |
| 443 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3RSVA7516 | 06/22/2023 | $163,162.48 | $126,400.00 | $98,000.00 |
| 444 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7RSVA7518 | 06/22/2023 | $163,162.48 | $126,400.00 | $98,000.00 |
| 445 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7RSVA7521 | 06/22/2023 | $163,162.48 | $126,400.00 | $98,000.00 |
| 446 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8RSVA7513 | 06/22/2023 | $163,162.48 | $126,400.00 | $98,000.00 |
| 447 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9RSVA7519 | 06/22/2023 | $163,162.48 | $126,400.00 | $98,000.00 |
| 448 | 2024 | FREIGHTLINER | EP116 | NEW | 1FUJH4H71RPUX9521 | 06/23/2023 | $455,623.99 | $179,000.00 | $159,000.00 |
| 449 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4RSVA7524 | 07/06/2023 | $162,446.25 | $126,400.00 | $98,000.00 |
| 450 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4RSVA7525 | 07/06/2023 | $162,446.25 | $126,400.00 | $98,000.00 |
| 451 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6RSVA7526 | 07/06/2023 | $162,446.25 | $126,400.00 | $98,000.00 |
| 452 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3RSVE2749 | 07/26/2023 | $163,649.79 | $126,400.00 | $98,000.00 |
| 453 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5RSVA7517 | 07/26/2023 | $166,548.39 | $126,400.00 | $98,000.00 |
| 454 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1RSVE2748 | 08/03/2023 | $161,023.29 | $126,400.00 | $98,000.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 455 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXRSVE2747 | 08/03/2023 | $161,023.29 | $126,400.00 | $98,000.00 |
| 456 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXRSVE2750 | 08/03/2023 | $161,023.29 | $126,400.00 | $98,000.00 |
| 457 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1RSVE2751 | 08/22/2023 | $162,685.57 | $126,400.00 | $98,000.00 |
| 458 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3RSVE2752 | 08/22/2023 | $162,845.75 | $126,400.00 | $98,000.00 |
| 459 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5RSVE2753 | 08/24/2023 | $162,873.25 | $126,400.00 | $98,000.00 |
| 460 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0RSVF4177 | 09/01/2023 | $161,068.12 | $126,400.00 | $98,000.00 |
| 461 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0RSVF4180 | 09/01/2023 | $161,590.52 | $126,400.00 | $98,000.00 |
| 462 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2RSVF4178 | 09/01/2023 | $161,068.12 | $126,400.00 | $98,000.00 |
| 463 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4RSVF4179 | 09/01/2023 | $161,590.52 | $126,400.00 | $98,000.00 |
| 464 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5RSVF4174 | 09/01/2023 | $161,068.12 | $126,400.00 | $98,000.00 |
| 465 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7RSVF4175 | 09/01/2023 | $161,068.12 | $126,400.00 | $98,000.00 |
| 466 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9RSVF4176 | 09/01/2023 | $161,068.12 | $126,400.00 | $98,000.00 |
| 467 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4RSVG4436 | 09/25/2023 | $165,953.87 | $126,400.00 | $98,000.00 |
| 468 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6RSVG4437 | 09/25/2023 | $165,953.87 | $126,400.00 | $98,000.00 |
| 469 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6RSVG4440 | 09/25/2023 | $166,492.12 | $126,400.00 | $98,000.00 |
| 470 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8RSVG4438 | 09/28/2023 | $164,788.41 | $126,400.00 | $98,000.00 |
| 471 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDRXRSVG4439 | 09/28/2023 | $164,788.41 | $126,400.00 | $98,000.00 |
| 472 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR1RSUU6526 | 10/03/2023 | $188,895.03 | $126,400.00 | $98,000.00 |
| 473 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3RSUU6527 | 10/03/2023 | $188,895.03 | $126,400.00 | $98,000.00 |
| 474 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3RSUU6530 | 10/03/2023 | $188,895.03 | $126,400.00 | $98,000.00 |
| 475 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4RSUU6519 | 10/03/2023 | $188,895.03 | $126,400.00 | $98,000.00 |
| 476 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR5RSUU6531 | 10/03/2023 | $188,895.03 | $126,400.00 | $98,000.00 |
| 477 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7RSUU6529 | 10/03/2023 | $188,895.03 | $126,400.00 | $98,000.00 |
| 478 | 2022 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR2NSMX5933 | 10/06/2023 | $85,582.70 | $80,400.00 | $67,800.00 |
| 479 | 2022 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR3NSMX5956 | 10/06/2023 | $81,407.94 | $80,400.00 | $67,800.00 |
| 480 | 2022 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR3NSMX5875 | 10/06/2023 | $81,060.52 | $80,400.00 | $67,800.00 |
| 481 | 2022 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR4NSMX5996 | 10/06/2023 | $85,217.48 | $80,400.00 | $67,800.00 |
| 482 | 2022 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR5NSMX5957 | 10/06/2023 | $81,060.52 | $80,400.00 | $67,800.00 |
| 483 | 2021 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR1MSMH8770 | 10/10/2023 | $90,730.67 | $60,950.00 | $44,900.00 |
| 484 | 2021 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR1MSMH8977 | 10/10/2023 | $90,476.36 | $60,950.00 | $44,900.00 |
| 485 | 2021 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR4MSMH8861 | 10/10/2023 | $85,623.99 | $60,950.00 | $44,900.00 |
| 486 | 2021 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR5MSMH8741 | 10/10/2023 | $90,479.44 | $60,950.00 | $44,900.00 |
| 487 | 2021 | FREIGHTLINER | PT126SLP | USED | 3AKJHHDR5MSMH8934 | 10/13/2023 | $85,797.12 | $60,950.00 | $44,900.00 |
| 488 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2RSVG4435 | 10/18/2023 | $163,940.42 | $126,400.00 | $98,000.00 |
| 489 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0RSVH9709 | 11/13/2023 | $169,941.47 | $126,400.00 | $98,000.00 |
| 490 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0RSVH9712 | 11/13/2023 | $170,492.65 | $126,400.00 | $98,000.00 |
| 491 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2RSVH9713 | 11/13/2023 | $170,492.65 | $126,400.00 | $98,000.00 |
| 492 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR7RSVH9707 | 11/13/2023 | $169,941.47 | $126,400.00 | $98,000.00 |
| 493 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9RSVH9710 | 11/13/2023 | $169,941.47 | $126,400.00 | $98,000.00 |
| 494 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR9RSVH9708 | 11/13/2023 | $169,941.47 | $126,400.00 | $98,000.00 |
| 495 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR0RSVJ4590 | 11/30/2023 | $166,914.48 | $126,400.00 | $98,000.00 |
| 496 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2RSVJ4591 | 11/30/2023 | $166,914.48 | $126,400.00 | $98,000.00 |
| 497 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4RSVJ4592 | 11/30/2023 | $166,914.48 | $126,400.00 | $98,000.00 |
| 498 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6RSVJ4593 | 11/30/2023 | $166,914.48 | $126,400.00 | $98,000.00 |
| 499 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR8RSVJ4594 | 11/30/2023 | $167,455.84 | $126,400.00 | $98,000.00 |
| 500 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR2RSVJ4588 | 12/05/2023 | $165,313.27 | $126,400.00 | $98,000.00 |
| 501 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4RSVJ4589 | 12/05/2023 | $165,313.27 | $126,400.00 | $98,000.00 |
| 502 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR3RSVJ9895 | 12/19/2023 | $170,005.46 | $126,400.00 | $98,000.00 |
| 503 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR4RSVJ9890 | 12/19/2023 | $169,455.86 | $126,400.00 | $98,000.00 |
| 504 | 2024 | FREIGHTLINER | PT126SLP | NEW | 3AKJHHDR6RSVJ9891 | 12/19/2023 | $169,455.86 | $126,400.00 | $98,000.00 |

| | Totals: | $57,573,264.47 | $47,014,000.00 | $35,629,500.00 |
|---|---|---|---|---|

**Note:**

NADA values were not available for the 2024 M2106 models. Wholesale value of M2106 models based on DTFS' recent sale data from sale of TPine M2106 models. $10,000 per unit was added to estimate retail values.

There is no NADA value for the 2024 EP116 and DTFS know of no market data on the value. The values are DTFS' best estimate based on the failure of the market to electric heavy trucks.

# J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2017 Freightliner Cascadia CA125SLP Sleeper** |
| Period: | July 22, 2024 |
| VIN: | 3AKJGLDR3HSHT2157 |
| Mileage: | 900,000 |
| Base MSRP: | $194,715 |
| GVW: | 52,000 |
| GCW: | 80,000 |

J.D. POWER

No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $22,400 | N/A | N/A | **$22,400** |
| Loan | $20,175 | N/A | N/A | **$20,175** |
| Retail | $28,600 | N/A | N/A | **$28,600** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power

**J.D. POWER**

8/21/2024

J.D. POWER Commercial Trucks

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2018 Freightliner Cascadia New Cascadia 126" BBC** |
| Period: | July 22, 2024 |
| VIN: | 3AKJHHDR9JSJW7121 |
| Mileage: | 787,500 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |



## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $27,750 | N/A | N/A | **$27,750** |
| Loan | $24,975 | N/A | N/A | **$24,975** |
| Retail | $36,500 | N/A | N/A | **$36,500** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

# J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2019 Freightliner Cascadia New Cascadia 126" BBC |
| Period: | July 22, 2024 |
| VIN: | 3AKJHHDR4KSKG4272 |
| Mileage: | 675,000 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |

J.D. POWER
No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $31,750 | N/A | N/A | **$31,750** |
| Loan | $28,575 | N/A | N/A | **$28,575** |
| Retail | $42,725 | N/A | N/A | **$42,725** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

# J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2020 Freightliner Cascadia New Cascadia 126" BBC** |
| Period: | July 22, 2024 |
| VIN: | 1FUJHHDR2LLLA0425 |
| Mileage: | 562,500 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |

**J.D. POWER**
**No Image Available**

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $36,350 | N/A | N/A | **$36,350** |
| Loan | $32,725 | N/A | N/A | **$32,725** |
| Retail | $48,675 | N/A | N/A | **$48,675** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power

# J.D. POWER

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2021 Freightliner Cascadia New Cascadia 126" BBC |
| Period: | July 22, 2024 |
| VIN: | 1FUJHHDR1MLMJ2154 |
| Mileage: | 450,000 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |

J.D. POWER
No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $44,900 | N/A | N/A | $44,900 |
| Loan | $40,425 | N/A | N/A | $40,425 |
| Retail | $60,950 | N/A | N/A | $60,950 |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

# J.D. POWER

8/22/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2022 Freightliner Cascadia New Cascadia 126" BBC |
| Period: | July 22, 2024 |
| Mileage: | 337,500 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $54,450 | N/A | N/A | $54,450 |
| Loan | $49,025 | N/A | N/A | $49,025 |
| Retail | $75,000 | N/A | N/A | $75,000 |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power

# J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2023 Freightliner Cascadia New Cascadia 126" BBC** |
| Period: | July 22, 2024 |
| VIN: | 3AKJHHDR1PSNU8499 |
| Mileage: | 225,000 |
| Base MSRP: | N/A |
| GVW: | 0 |
| GCW: | 0 |

J.D. POWER
No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $75,500 | N/A | N/A | **$75,500** |
| Loan | $67,950 | N/A | N/A | **$67,950** |
| Retail | $99,850 | N/A | N/A | **$99,850** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D. Power

# J.D. POWER

**J.D. POWER Commercial Trucks**

## Vehicle Information

| Vehicle: | 2024 Freightliner Cascadia New Cascadia 126" BBC |
|---|---|
| Period: | July 22, 2024 |
| VIN: | 3AKJHHDR7RSUV2525 |
| Mileage: | 112,500 |
| Base MSRP: | N/A |
| GVW: | 0 |
| GCW: | 0 |

J.D. POWER
No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $98,000 | N/A | N/A | **$98,000** |
| Loan | $88,200 | N/A | N/A | **$88,200** |
| Retail | $126,400 | N/A | N/A | **$126,400** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D. Power

# J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2023 Freightliner M106 M2 106 Business Class Regular Cab** |
| Period: | July 22, 2024 |
| VIN: | 1FVACXFC5PHNU8954 |
| Mileage: | 60,000 |
| Base MSRP: | N/A |
| GVW: | 0 |
| GCW: | 0 |

J.D. POWER

No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $73,500 | N/A | N/A | **$73,500** |
| Loan | $66,150 | N/A | N/A | **$66,150** |
| Retail | $85,525 | N/A | N/A | **$85,525** |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power

# Exhibit "8"

**From:** Rupinder Singh <<rupinder@tpinecapital.com>>
**Sent:** August 8, 2024 11:00 AM
**To:** Roberts, Britt (713) <<britt.roberts@daimlertruck.com>>
**Subject:** Daimler Upadated Data

Hello Britt,

Please find attached the report we discussed the other day when you were at Tpine's office.

Thanks.


Best Regards,

Rupinder Singh

**Vice President of Sales & Operations**



1450 Meyerside Dr, Mississauga, ON,  L5T 2N6

Ph. 416-913-9602, Cell. 416-919-4218



If you are not the addressee, please inform us immediately that you have received this e-mail by mistake, and delete it. We thank you for your support.

| Casitron Portfolio | Sum of Current Unrec Cost | Sum of Current Contract Receivable | Count of VIN | Sum of 0- 30 days | Sum of 31 - 60 | Sum of 61 - 90 | Sum of 91 - 120 | Sum of 120+DAY | Number of VINs in 91 - 120 days | Number of Vins in 120+DAY | Units In Inventory | % in Inventory | Total Delinquency 30+ days | NBV of Contracts over 30 days delinquent | Delinquency % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TPNLCC-DP | 149,370,646.00 | 181,155,017.16 | 826 | 3,040,813.28 | 1,984,460.94 | 1,035,857.82 | 757,528.73 | 269,141.23 | 63 | 37 | 116 | 14.04% | 4,046,988.72 | 48,310,694.77 | 32.34% |
| TPNUSA-DP | 62,248,611.09 | 78,663,773.31 | 526 | 1,298,214.80 | 967,927.58 | 681,049.24 | 427,118.09 | 703,636.12 | 30 | 71 | 76 | 14.45% | 2,779,731.03 | 23,851,579.28 | 38.32% |

| Country | Sum of Current Unrec Cost | Sum of Current Contract Receivable | Count of VIN | Sum of 0- 30 days | Sum of 31 - 60 | Sum of 61 - 90 | Sum of 91 - 120 | Sum of 120+DAY |
|---|---|---|---|---|---|---|---|---|
| CANADA | 1,026,207,302.80 | 1,205,386,673.97 | 11374 | 14,364,833.43 | 10,620,386.08 | 7,019,349.22 | 6,623,353.71 | 16,784,065.03 |
| US | 523,516,051.62 | 644,831,543.42 | 8422 | 11,009,103.36 | 7,423,288.09 | 5,047,393.05 | 4,782,186.10 | 14,490,675.24 |

# Exhibit "9"

Court File No. CV-24-00717340-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF **PRIDE GROUP HOLDINGS INC.** and
those Applicants listed on **Schedule "A"** hereto

**THIRTEENTH REPORT OF THE MONITOR**

**DATED August 8, 2024**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

TERMS OF REFERENCE ........................................................................................ 6

PURPOSE ................................................................................................................... 7

VALIDATION MANDATE UPDATE ....................................................................... 8

DIP FACILITY UPDATE ......................................................................................... 10

LIQUIDITY UPDATE .............................................................................................. 19

AMENDMENT TO REVISED GOVERNANCE PROTOCOL ............................. 20

CONCLUSIONS AND RECOMMENDATIONS...................................................... 21

<u>**Appendices**</u>                                                                                    <u>**Tab**</u>

Payment Procedure Agreement………………………..…………………………A

August 1 Letter……………..…………………………………………………..B

Cash Flow Forecast…………………………………………………....................C

Court File No. CV-24-00717340-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF **PRIDE GROUP HOLDINGS INC.** and
those Applicants listed on **Schedule "A"** hereto

**THIRTEENTH REPORT OF THE MONITOR**

**DATED August 8, 2024**

**INTRODUCTION**

1.      On March 27, 2024, Pride Group Holdings Inc. and those entities listed as "Applicants" in
**Schedule "A"** hereto (each an "**Applicant**" and, collectively, the "**Applicants**") brought
an application (the "**CCAA Application**") before the Ontario Superior Court of Justice
(Commercial List) (the "**Court**") under the *Companies' Creditors Arrangement Act*,
R.S.C. 1985, c. C-36 (the "**CCAA**") to, among other things, obtain a stay of proceedings
to allow them an opportunity to restructure their business and affairs.

2.      On the same day, the Court granted an initial order in these CCAA proceedings (the
"**CCAA Proceedings**") that, among other things, (i) appointed Ernst & Young Inc. as
Monitor (in such capacity, the "**Monitor**"), and (ii) appointed RC Benson Consulting Inc.
as Chief Restructuring Officer of the Pride Entities (in such capacity, the "**CRO**"). The
Monitor filed a Pre-Filing Report dated March 27, 2024 in connection with the CCAA
Application.

3.      In addition to the Applicants, the entities listed as "Limited Partnerships" and "Additional
Stay Parties" in **Schedule "A"** hereto also obtained the benefit of the stay of proceedings
until and including April 6, 2024, which stay expired the next business day, April 8, 2024
(the "**Stay Period**"). The Applicants together with the Limited Partnerships are referred to

- 2 -

herein as the "**Pride Entities**" (and together with the Additional Stay Parties, the "**Pride Group**").

4.      The comeback hearing was heard on Friday, April 5, 2024 (the "**Comeback Hearing**"), where the Pride Entities sought and obtained an amended and restated initial order (the "**ARIO**"). The Monitor filed its First Report to Court, dated April 4, 2024 (the "**First Report**") in connection with the Comeback Hearing. The ARIO, among other things, extended the Stay Period to June 30, 2024, approved the DIP Term and granted other relief as further described in the First Report.

5.      At the Comeback Hearing, the Court also granted an order approving certain protocols (the "**Protocols Order**"), including the Governance Protocol set out in Schedule "B" thereto (the "**Governance Protocol**"). The Governance Protocol was approved subject to parties returning to Court on a without prejudice basis on April 19, 2024, for the approval of proposed revisions to the Governance Protocol ("**Revised Governance Protocol**"), which was subsequently adjourned to April 25, 2024, on consent. The Monitor filed its Second Report to Court, dated April 24, 2024 (the "**Second Report**") in connection with this April 19, 2024 return date, which was further adjourned to May 15, 2024, on consent, to give the Monitor, the Pride Entities, and the CRO additional time to negotiate the Revised Governance Protocol with affected stakeholders.

6.      The Monitor filed its Supplement to the Second Report to Court on May 6, 2024, to provide information to the Court in respect of ongoing negotiations and terms of the Revised Governance Protocol from the date of the Second Report.

7.      On May 6, 2024, the Pride Entities brought a motion for an approval and vesting order in respect of the sale of certain real property in Bolingbrook, Illinois (the "**Bolingbrook Property**") and to amend and restate the ARIO. The Monitor filed its Third Report to Court, dated May 2, 2024, in connection with such motion. The Court granted orders approving the sale of the Bolingbrook Property and amending and restating the ARIO (the "**Second ARIO**").

- 3 -

8.     On May 5, 2024, the Pride Entities brought a motion, seeking, among other things, (i) an order approving a sale and marketing process for the business, operations, and assets ("**PGL Sale Process**") of Pride Group Logistics Ltd. ("**PGL**"), Pride Group Logistics USA, Co., Pride Global Insurance Company Ltd.[1] (collectively, the "**PGL Entities**"), and (ii) an approval and vesting order in respect of the sale of certain property in Chehalis, Washington (the "**Chehalis Property**"). The Monitor filed its Fourth Report to Court, dated May 10, 2024, in connection with same.

9.     On May 13, 2024, the Monitor filed its Fifth Report to Court (the "**Fifth Report**"), which provided the Court and stakeholders with an update on the status and ongoing work with respect to: (i) secured facility reviews, (ii) securitization facility reviews, and (iii) the entitlement claims process. On May 15, 2024, the Court granted orders approving, among other things, the PGL Sale Process, the sale of the Chehalis Property, and the Amended and Restated Protocols Order, dated May 15, 2024 (the "**Amended and Restated Protocols Order**"), which included the Revised Governance Protocol.

10.    On June 14, 2024, the Pride Entities brought a motion seeking approval of the entitlement claims process (the "**Entitlement Claims Process**", with such Order being the "**Entitlement Claims Process Order**"). The Monitor filed its Sixth Report to Court, dated June 13, 2024 (the "**Sixth Report**"), in connection with same. On June 14, 2024, the Court granted the Entitlement Claims Process Order.

11.    On June 27, 2024, the Pride Entities brought motions seeking (i) the extension of the Stay Period (as defined in the Second ARIO) to and including September 30, 2024, (ii) the entry of a consent order authorizing Regions Equipment Finance Corporation ("**REFCO**") and Regions Commercial Equipment Finance, LLC ("**RCEF**", and together with REFCO, "**Regions Equipment Finance**") to sell certain vehicles surrendered to Regions Equipment Finance pre-filing, and (iii) the entry of a consent order authorizing Daimler Truck Financial Services Canada Corporation ("**DTF Canada**") and Daimler Truck Financial Services USA LLC ("**DTF US**", and together with DTF Canada, "**Daimler**") to sell certain vehicles surrendered to Daimler pre-filing. The Monitor filed its Seventh Report to Court,

---

[1] Pride Global Insurance Company Ltd. is not an Applicant in these proceedings and is an Additional Stay Party as listed in Schedule "A" to the Second ARIO.

- 4 -

dated June 26, 2024 in connection with these motions. On June 27, 2024, the Court granted the order extending the Stay Period as well as the consent orders referred to above.

12.    On July 3, 2024, the Pride Entities brought a motion seeking (i) an order approving the amendment and extension of the Fourth Amended and Restated Credit Agreement executed on May 10, 2024 ("**FARCA**"), and (ii) the entry of a consent order authorizing VFS Canada Inc. ("**VFS Canada**") and VFS U.S. LLC ("**VFS US**", and together with VFS Canada, "**VFS**") to sell certain vehicles surrendered to VFS pre-filing. The Monitor filed its Eighth Report to Court, dated July 2, 2024 (the "**Eighth Report**") in connection with this motion. On July 3, 2024, the Court granted the orders referred to above.

13.    On July 16, 2024, the Pride Entities brought a motion seeking, among other things, (i) entry of an order in respect of certain unreturned collateral financed by Regions Equipment Finance, (ii) an order approving the distribution of net proceeds of sale of the Chehalis Property to Roynat Inc. ("**Roynat**"), and (iii) an order approving a transaction contemplated by a factoring portfolio purchase agreement (the "**Factoring Transaction**") between TPine Financial Services Inc., as vendor, and J D Factors Corporation / Corporation D'affacturage J D, as purchaser. The Monitor filed its Ninth Report to Court, dated July 13, 2024, in connection with same. Separately, the Monitor filed a Supplement to the Ninth Report of the Monitor on July 15, 2024 (the "**Supplement to the Ninth Report**"), which Supplement to the Ninth Report included an update on the Monitor's review of the securitization facilities. On July 16, 2024, the Court granted the orders referred to in points (i) and (ii) above. The motion seeking the approval of the Factoring Transaction was adjourned until August 7, 2024. An order granted on that date approved the Factoring Transaction.

14.    On July 21, 2024, the Pride Entities brought a motion seeking, among other things, (i) an order respecting the transition and relinquishment of servicing and other duties under certain Securitization Programs where the outcome of the Monitor's proprietary interest assessment with respect to an applicable Securitization Party's ownership entitlement to such assets is favourable, and (ii) set out the terms and conditions upon which such turn-over may occur.  That motion was scheduled for August 7, 2024. The Monitor filed its Tenth Report to Court, dated July 21, 2024 (the "**Tenth Report**"), in connection with same,

- 5 -

which Tenth Report included the Monitor's view with respect to certain of the Securitization Programs. The parties are continuing to work on a consent order in respect of same.

15. The Monitor filed its Supplement to the Tenth Report on August 1, 2024 (the "**Supplement to the Tenth Report**"), which provided a proposed methodology for consideration by the stakeholders and the Court for the allocation of the direct legal fees and disbursements of the Securitization Program review undertaken by the Monitor's Canadian counsel, Blake, Cassels & Graydon LLP ("**Canadian Counsel**"), and U.S. counsel, McDermott, Will & Emery LLP ("**U.S. Counsel**") on a fair and equitable basis as a necessary cost of transitioning, as well as an Estimate to Turnover, among the Subject Assets subject to the Reviewed Programs (the "**Validation Mandate Fee Proposal**") (as such terms are defined in the Supplement to the Tenth Report). No hearing date has been set to approve the Validation Mandate Fee Proposal, and the Monitor expects to engage with stakeholders prior to such hearing date.

16. The Monitor filed its Eleventh Report to the Court on August 2, 2024 (the "**Eleventh Report**"), which provided the Court with information pertaining to the Monitor's review of the security interests asserted by Secured Creditors (as defined therein), including, but not limited to, the Monitor's view as to whether each Secured Creditor has provided sufficient evidence of a perfected and priority interest in specific vehicles which are owned by the Pride Entities and identified and tracked by vehicle identification numbers (with the exception of MCVs, which are subject to the Entitlement Claims Process).

17. On August 2, 2024, the DIP Agent brought a motion, on a date to be set by the Court, for the appointment of Alvarez & Marsal Canada Inc. (the "**Proposed Manager**") as manager, an officer of the Court (in such capacity, the "**Manager**"), of those assets, undertakings and properties of the Pride Entities/Syndicate Lenders, including all proceeds thereof, included in the definition of "Management Property" in the proposed Syndicate Collateral Management Order and lifting the stay of proceedings granted in these CCAA Proceedings to the extent necessary to give effect to the appointment of the Proposed Manager as Manager and the other relief set out in the Syndicate Collateral Management Order. The

- 6 -

Monitor has not yet had an opportunity to engage with the DIP Agent and its advisors to discuss this motion.

18.     On August 4, 2024, the Monitor served its responses to written interrogatories received from certain Securitization Counterparties on July 26, 2024 with respect to information contained in certain previous Monitor reports.

19.     On August 7, 2024, the Pride Entities brought a motion seeking, among other things, (i) an approval and vesting order in respect of the sale of certain property in Abbotsford, British Columbia and approving the distribution of net proceeds of sale to Roynat, and (i) an approval and vesting order in respect of the sale of certain property in Cornwall, Ontario and approving the distribution of net proceeds of sale to Roynat.  The Monitor filed its Twelfth Report to the Court on August 6, 2024 (the "**Twelfth Report**") in respect of this motion and to provide updates to the Court in respect of the PGL Sale Process and the Factoring Transaction.

20.     This report (the "**Thirteenth Report**") should be read in conjunction with prior Monitor Reports and the Affidavit of Randall Benson, sworn August 7, 2024 (the "**Benson Affidavit**").

**TERMS OF REFERENCE**

21.     In preparing this Thirteenth Report and making the comments herein, the Monitor has been provided with, and has relied upon, unaudited financial information, books and records prepared by the Applicants, discussions with management of the Applicants ("**Management**"), and information from other third-party sources, including Financiers and personal property security registries (collectively, the "**Information**"). In its preparation of this Thirteenth Report the Monitor has reviewed the Information for reasonableness, internal consistency and use in the context in which it was provided. However, the Monitor has not audited or otherwise attempted to verify the accuracy or completeness of such Information in a manner that would wholly or partially comply with Canadian Auditing Standards ("**CAS**") pursuant to the Chartered Professional Accountants Canada Handbook and, accordingly, the Monitor expresses no opinion or other form of

- 7 -

assurance contemplated under CAS in respect of the Information. Some of the information referred to in this Thirteenth Report may consist of forecasts and projections. An examination or review of the financial forecast and projections, as outlined in the Chartered Professional Accountants Canada Handbook, has not been performed.

22.    Any future-oriented financial information referred to in this Thirteen Report was prepared based on Management's estimates and assumptions. Readers are cautioned that since projections are based upon assumptions about future events and conditions that are not ascertainable, the actual results will vary from the projections, even if the assumptions materialize, and the variations could be significant.

23.    Unless otherwise indicated, the Monitor's understanding of factual matters expressed in this Thirteenth Report concerning the Pride Group and their business is based on the Information, and not independent factual determinations made by the Monitor.

24.    Capitalized terms not otherwise defined herein have the meaning given to them in the Fifth Report, Tenth Report or Second ARIO, as applicable.

**PURPOSE**

25.    The purpose of this Thirteenth Report is to provide the Court with:

(a)    an update in respect of the Validation Mandate (as defined below), the DIP Facility (defined below), and the status of the Pride Entities' liquidity;

(b)    information with respect to the Pride Entities' motion for an order that includes the following relief (the "**Requested Relief**"):

(i)    an order authorizing and entitling the Pride Entities to apply any Lease Payments and Soft Collections (each as defined in the Benson Affidavit), but excluding amounts collected in respect of (i) MCVs, or (ii) Securitization Programs ("**Deferred Payments**") to pay their ordinary course working capital needs and for other general corporate purposes until further Order of the Court, subject to the Monitor's review and oversight, provided that the Pride Entities shall continue to abide by the reporting and

- 8 -

record-keeping obligations in respect of such Deferred Payments set out in the Revised Governance Protocol;

    (ii)    ratifying and approving the Indicative Term Sheet (as defined below), and the Pride Entities' execution of same, and

    (iii)    sealing Confidential Exhibit 1 to the Benson Affidavit, pending further Order of the Court; and

    (c)    the Monitor's views on the Requested Relief.

**VALIDATION MANDATE UPDATE**

26.    Pursuant to the Second ARIO, the Monitor was empowered and directed to assist the Pride Entities and the Court in assessing the validity, enforceability and relative priority of any security, ownership or other interest which any person (including a Securitization Counterparty or Secured Creditor) may assert in or to any property, including property purportedly transferred under a Securitization Program or pledged to Secured Creditors (the "**Validation Mandate**"). In discharging the Validation Mandate, the Monitor instructed its Canadian and U.S. Counsel to undertake (i) a review of the Securitization Programs and report on their findings in order to inform the Monitor's interim Turn-Over recommendations to the Court, and (ii) a review of security governed by Canadian and U.S. law.

27.    The Validation Mandate was a critical step to facilitate a determination for dealing with a myriad of asserted interests in equipment, inventory and leases related thereto together with proceeds thereof ("**Inventory or Equipment**") and other personal property subject to these CCAA Proceedings. The Monitor understood it to be imperative that there was a transparent and objective process to determine entitlement to ensure that all interested parties were being treated in a fair and even manner, had an opportunity to raise concerns with the proposed treatment of any Inventory or Equipment in which they assert an interest and, ultimately, that no one party is prejudiced by the rights sought to be exercised by another. In addition, such a review directly relates to the identification of assets and collateral that may be excluded from the DIP Lenders' Charge. The Validation Mandate

- 9 -

was complicated, time consuming, and without precedent in Canadian insolvency proceedings, yet critical to the fair and orderly conduct of these CCAA Proceedings for the benefit of all stakeholders.

28.    The Monitor has satisfied the Validation Mandate as of the date hereof based on the Monitor issuing the Tenth Report and Eleventh Report, as discussed in paragraphs 14 and 16 herein. The Monitor has also apprised all stakeholders and the Court in respect of its proposed methodology for the allocation of direct legal fees and disbursements of the Securitization Program review undertaken by Canadian Counsel and U.S. Counsel, as discussed in paragraph 15 herein.

29.    The Eleventh Report provided for, among other things, pivotal analysis in respect of VINs (as defined therein) where a Secured Creditor had not provided the Monitor sufficient evidence of a perfected and priority security interest, together with the identification of the universe of MCVs.  The Monitor was of the view that over 1,750 separate VINs comprise MCVs and that there were over 2,200 VINs where a Secured Creditor had not provided sufficient evidence of a perfected security interest and priority, as further specified in the Eleventh Report, such that the DIP Lenders' Charge would have priority. The Monitor anticipates that its Eleventh Report will result in a significant number of inquiries by parties of interest and potential inter-creditor disputes, with any disputes relating to MCVs being addressed through the Entitlement Claims Process. No process has yet been established for disputes relating to VINs identified as subject to the priority of the DIP Agent, but the Monitor intends to engage with the DIP Agent and affected Financiers on advancing the determination of such disputes by agreement of relevant parties or Court order. The numerous competing claims for VINs together with attendant costs of uncoordinated enforcement actions support the need for an orderly and centralized wind-down of the Pride Entities for the benefit of its stakeholders to avoid the chaos and expense that would ensue if individual enforcement actions were taken.

- 10 -

**DIP FACILITY UPDATE**

*Background Details*

30.     Pursuant to the ARIO, the Pride Entities were authorized and empowered to obtain and borrow pursuant to a credit facility from the DIP Lenders in order to finance the ordinary course working capital and other general corporate purposes of the Pride Entities, provided that borrowings under such credit facility did not exceed a principal amount of $30 million unless permitted by further Order of the Court, with such credit facility (the "**DIP Facility**") being provided on the terms and subject to the conditions set forth in the DIP Term Sheet, as memorialized by the fourth amended and restated credit agreement dated May 10, 2024 (as amended from time to time, the "**DIP Credit Agreement**"). The DIP Facility was intended to be temporary relief used to address the Pride Entities' immediate liquidity issues and to bridge the Pride Entities to a more long-term solution.

31.     The Governance Protocol was established as required by the DIP Term Sheet, with the Revised Governance Protocol being approved pursuant to the Amended and Restated Protocols Order. The Revised Governance Protocol serves the important purpose of imposing discipline, predictability, flexibility and transparency on the operations of the Pride Entities throughout these CCAA Proceedings. Most notably, the Revised Governance Protocol provides for, among other things, requirements to be followed by the Pride Entities in respect of disbursing collected Lease Payments and Soft Collections to applicable Financiers.

32.     The DIP Credit Agreement initially provided for a maturity date of June 30, 2024 (the "**Outside Maturity Date**") and provided that the Outside Maturity Date would be automatically extended to September 30, 2024 upon satisfaction of certain conditions precedent, including, but not limited to, (i) the receipt by the DIP Agent by no later than June 1, 2024 of the detailed principal terms of a restructuring plan (the "**Restructuring Plan**") supported by the Monitor with appropriate financial analysis, which provided for a path for repayment in full of the DIP Obligations (as defined in the DIP Credit Agreement) by no later than September 30, 2024, and (ii) the receipt of the approval of the Lenders (as defined therein) of the Restructuring Plan by June 15, 2024.

- 11 -

33.    The Restructuring Plan was delivered to the DIP Agent pursuant to the DIP Credit Agreement and presented to the DIP Agent on June 6, 2024. As further detailed in the affidavit of Randy Benson sworn on June 12, 2024, the fundamental elements of the Restructuring Plan included, among other things: (i) an orderly disposition of certain assets and certain real property to align with the physical movement of vehicles, (ii) an inventory monetization strategy, (iii) turn over of assets owned by Securitization Parties back to them, (iv) transitioning of servicing duties, (v) the going concern continuation of a leaner go-forward business, and (vi) additional DIP borrowings to support the foregoing.

34.    Based on discussions with the DIP Agent, it did not appear that approval of the Restructuring Plan condition precedent was going to be satisfied by June 15, 2024, and the Pride Entities engaged with the DIP Agent, in consultation with the Monitor and CRO, to (i) pursue an extension of the Outside Maturity Date and Restructuring Plan condition precedent deadlines, and (ii) address additional funding needs.

35.    As discussed in the Supplement to the Ninth Report, on July 3, 2024, the Court granted an Order (the "**DIP Amendment Order**") approving the Term Sheet – First Amendment to Fourth Amended and Restated Credit Agreement, dated July 2, 2024 (the "**DIP Amendment Term Sheet**"), which provided for, among other things, (i) the increase of the maximum availability under the DIP Facility to $36,300,000 from $30,000,000, and (ii) an extension of the Outside Maturity Date under the DIP Credit Agreement from June 30, 2024 to July 31, 2024, subject to such Outside Maturity Date being automatically extended to September 30, 2024 if certain conditions to extension were satisfied, including approval by the Lenders of a Restructuring Plan by no later than July 15, 2024.

36.    The DIP Amendment Order authorized and empowered the Pride Entities to execute and deliver an amending agreement (the "**Amending Agreement**") to the DIP Credit Agreement substantially on the terms of the DIP Amendment Term Sheet. Execution of the Amending Agreement and satisfaction of the conditions precedent to effectiveness thereof was required before the Outside Maturity Date would be extended and the Pride Entities would have any further access to the DIP Facility (including the increased availability thereunder).

- 12 -

*Recent DIP Advances*

37.    The Pride Entities and the DIP Agent, in consultation with the Monitor, worked diligently to (i) negotiate and finalize the Amending Agreement prior to the Outside Maturity Date of July 31, 2024, which Amending Agreement was executed on July 23, 2024, and (ii) facilitate draws of the remaining amount available under the DIP Facility.

38.    The Pride Entities received on July 25, 2024, an advance under the DIP Facility in the amount of $10,876,785 ($4,023,880 CAD and $4,168,349 USD). The DIP Agent permitted a direction of certain amounts from this advance to pay the DIP Agent's outstanding professional advisor fees. Additionally, certain amounts from this advance were remitted to the Segregated Lease Accounts (as defined in the DIP Credit Agreement), the payment of which was a condition precedent of such advance. Following this advance, the Pride Entities requested a final advance on July 23, 2024 under the DIP Facility in the amount of $10,002,000 (the "**Final Advance**").

39.    Subsequent to submitting the request for the Final Advance, the Pride Entities were advised that certain conditions precedent to further funding were not satisfied but the Lenders would consider making the Final Advance pursuant to escrow-like arrangements to be agreed upon by the parties.

40.    On July 30, 2024, the Pride Entities entered into a payment procedure agreement (the "**Payment Procedure Agreement**"), which is attached hereto as **Appendix "A"**. The Payment Procedure Agreement required the Monitor to hold the Final Advance in a segregated Monitor account ("**Monitor's Segregated Account**") and use such funds in accordance with restrictions requiring that (i) prior to having access to such funds, the Pride Entities top-up the Monitor's Segregated Account by approximately $8.6 million (the "**Payment Procedure Top-Up**"), and (ii) the funds in the Monitor's Segregated Account being solely applied to pay certain disbursements specified in the DIP Budget (as defined in the DIP Credit Agreement), being the following amounts accrued as at July 31, 2024 (collectively, the "**July 31st Accruals**"): (a) equipment payments in the amount of approximately $5.21 million, (b) floor plan financier payments in the amount of

- 13 -

approximately $3.81 million, (c) lease collection payments in the amount of approximately $4.65 million, and (d) HST payments in the amount of approximately $4.89 million.

41.   The Final Advance was received by the Monitor on July 31, 2024.

42.   Accordingly, as at the date hereof, the Pride Entities have drawn $35,883,935, which is almost the full amount available under the DIP Facility, being $36,300,000; however, the Pride Entities do not have unrestricted access to the amount of the Final Advance which can only be disbursed in accordance with the Payment Procedure Agreement.

43.   The Pride Entities and the DIP Agent, in consultation with the Monitor, continued to diligently pursue approval by the Lenders of a Restructuring Plan by July 15, 2024, which approval was not obtained. Accordingly, the Outside Maturity Date of the DIP Facility was not extended beyond July 31, 2024, and on August 1, 2024, the Monitor delivered a letter to the Service List (the "**August 1 Letter**") which advised, among other things, that:

   (a)   the DIP Facility had matured on July 31, 2024, with the maximum amount available thereunder fully drawn prior to maturity;

   (b)   the Pride Entities and the CRO are in advanced discussions with another potential debtor-in-possession lender; and

   (c)   the Monitor is assisting the Pride Entities and the CRO to advance an orderly monetization plan for presentation to the Court and stakeholders.

   A copy of the August 1 Letter is attached hereto as **Appendix "B"**.

*Orderly Disposition*

44.   Given the feedback it has received to date, the Monitor no longer views a going-concern Restructuring Plan as a feasible option given the lack of stakeholder support for it. Accordingly, the Pride Entities and the CRO, in consultation with the Monitor, intend to continue to move forward with a centralized, coordinated and controlled disposition and wind-up of the remaining Pride Entities assets (the "**Orderly Disposition**") and the CRO,

- 14 -

in consultation with the Monitor and subject to direction from the Court, intends to continue to move forward with a going concern sale or wind-down of the PGL Entities.

45.    An Orderly Disposition is imperative, given the vast number of vehicles in the Pride Entities' fleet across North America, in addition to the thousands of leased Vehicles (most of which are constantly in transit). Any form of wind down will require liquidity to fund the necessary payroll, transition costs, transfer of assets to the applicable Securitization Parties, and administration costs of the Pride Entities. Without this funding, employees would have to be immediately terminated, customers would be stranded, committed and in-progress sales would be abandoned, leases would not be serviced, delinquency rates would increase, and a large number of vehicles would be abandoned without the critical infrastructure needed to support their retrieval or to determine competing claims against the assets of the Pride Entities. As such, the CRO and the Monitor have considered options to best secure additional debtor-in-possession financing to fund the Orderly Disposition and other remaining matters in these CCAA Proceedings, such as the Entitlement Claims Process (collectively, the "**Remaining Matters**").

*Indicative Term Sheet*

46.    Efforts to secure additional interim financing (a "**New Interim Financing Facility**") in order to pursue an Orderly Disposition have resulted in the Pride Entities entering into a non-binding funded agency agreement indicative term sheet, dated August 5, 2024 (the "**Indicative Term Sheet**"), (i) a redacted copy of which, to protect commercially sensitive information, is included as Exhibit "E" to the Benson Affidavit, and (ii) an unredacted copy of which is included as Confidential Exhibit 1 to the Benson Affidavit.

47.    The Indicative Term Sheet provides for Nations Capital, LLC ("**NCI**"), as agent, and 1903P Loan Agent, LLC or its affiliates ("**Gordon Brothers**"), as lender, to jointly provide disposition services and financing to the Pride Entities in a single, integrated transaction tailored to the specific needs of the Pride Entities. There are substantial benefits to the transactions contemplated by the Indicative Term Sheet, including: (i) the engagement of a third-party expert to manage the Orderly Disposition, and (ii) the necessary financing being provided to facilitate the Orderly Disposition. Unless a going concern transaction in

- 15 -

respect of the PGL Entities is completed or other relief granted in respect of the PGL Entities is granted, the transactions contemplated by the Indicative Term Sheet will provide sufficient financing for a controlled and orderly wind up of the PGL Entities.

48.     The Indicative Term Sheet is described in greater detail below. At a hearing scheduled for August 9, 2024, the Pride Entities are seeking approval of the Indicative Term Sheet and the exclusivity and initial deposit provided for therein. However, the Pride Entities are not seeking approval at this time of the interim financing facility contemplated by the Indicative Term Sheet. If and when definitive documentation is entered into with NCI and Gordon Brothers, then the Pride Entities will seek approval of same on proper notice (including of the economic terms) to interested parties.

49.     NCI and its affiliate, Gordon Brothers, have over 100 years of combined experience of providing capital in distressed situations across various industries, including, but not limited to, transportation and equipment, real estate, accounts receivable, lease portfolio purchases, inventory and intellectual property. NCI utilizes a variety of selling platforms and leverages its collective database of worldwide customers through a combination of private treaty sales, strategic sales (multi-unit, regional, or geography-driven bulk sales), extensive dealership network, and as a last resort, auctions. NCI has the operational and logistical experience and capabilities to recommend and implement a strategic plan to store or remove assets from the Pride Entities' locations, and in turn, reduce the footprint and expense of the Pride Entities, complete management and administrative handling of all titles associated with vehicles, and supply all back-office support for invoicing, collection, and tracking of proceeds. In addition to these core services, NCI provides other services, including transportation and logistics, refurbishment and repair, secure storage, and insurance options (as needed). NCI can also assist with titling issues, missing titles, and taxes through being a licensed US motor vehicle dealer.

50.     As an example of NCI's experience, NCI acted as "Co-Agent" to sell over 60,000 rolling stock assets of Yellow Corporation appraised at a value of approximately US$1 billion in one of the largest if not the largest dispositions of commercial and industrial equipment ever.

- 16 -

51.    A redacted copy of the Indicative Term Sheet was shared with the advisors of the DIP Agent prior to the Pride Entities bringing the motion for approval thereof, with an unredacted copy to be provided to the DIP Agent upon confirmation of certain confidentiality arrangements.

52.    The Monitor summarizes the following key terms of the Indicative Term Sheet, with further description contained in the Benson Affidavit:[2]

| Indicative Term Sheet | |
|---|---|
| **Non-Binding** | |
| | With the exception of (i) the Diligence, Deposit, Lender Costs & Expenses section, (ii) the Exclusivity and Work Fee section, and (iii) the confidentiality section, the Indicative Term Sheet is non-binding and subject to execution of definitive documentation and Court approval of such definitive documentation. |
| **Agency Services** | |
| Overview | NCI will act as the Pride Entities'[3] exclusive agent in connection with the disposition (the "**NCI Liquidation**") of those certain truck tractors, trailers, motor vehicles and other assets in Exhibit "A" to the Indicative Term Sheet, along with any accessories to the foregoing, as further detailed in the Indicative Term Sheet (the "**Offered Assets**"). |
| Term | 12 months |
| Expense Reimbursement | The Pride Entities will reimburse the Agent for all reasonable and documented expenses incurred on behalf of the Company, subject to an agreed-upon budget, for transportation, insurance, refurbishment, repair, detailing and preparation for the sale of the Offered Assets. |
| **Financing** | |
| Overview | Gordon Brothers will provide financing to Pride Group Holdings Inc. ("**PGHI**") and PGL[4] (if applicable) required to perform an organized liquidation of the Offered Assets, including, without limitation, certain of the Pride Entities' vehicle assets and parts inventory. |

---

[2] Capitalized terms not otherwise defined in this paragraph shall have the meaning ascribed to such term in the Indicative Term Sheet.
[3] PGL will not receive agency services.
[4] PGHI and PGL are classified as the "Borrower" pursuant to the Indicative Term Sheet, and certain affiliates and subsidiaries of PGHI are classified as "Guarantors".

| Loan | A senior secured revolving loan in support of the NCI Liquidation in the principal amount of up to $50,000,000 (the "**GB Loan**"). The GB Loan will be provided in the form of a revolving loan made available to Pride Entities on a weekly basis subject to compliance with the Budget and applicable conditions precedent. |
|---|---|
| Term | The earlier of (i) 12 Months from the Closing, and (ii) the occurrence of an event of default under the loan provisions of the Indicative Term Sheet. |
| Collateral and Security | The Pride Entities will grant in favour of Gordon Brothers a first-priority charge against all of the Pride Entities' rights, title and interest in and to the Priority Collateral, which will be subject to the Administration Charge and Intercompany Advances Charge (each, up to amounts to be set out in definitive documentation). |
| Repayment | The Obligations shall be repaid from the proceeds of the sale of the Priority Collateral (only after payment of any Agent Fees and Agent Expenses) as such Priority Collateral is sold pursuant to the NCI Liquidation. |
| Conditions Precedent | Conditions precedent include, among other things, completion of satisfactory due diligence and Court approval. |
| Diligence Deposit, Lender Costs & Expenses | $100,000 ("**Initial Deposit**") to be paid to Gordon Brothers upon Court approval of the Indicative Term Sheet and applied by Gordon Brothers towards Lender Expenses, including any costs incurred by NCI on Gordon Brothers' behalf, regardless of if the Closing occurs. The Pride Entities further agree to provide additional deposits promptly as required by Gordon Brothers and NCI to reimburse Gordon Brothers for all Lender Expenses beyond the Initial Deposit. Any amounts of the Initial Deposit or subsequent deposits not applied toward payment of Lender Expenses will be returned to the Pride Entities. This section will become binding upon Court approval of the Indicative Term Sheet. |
| Exclusivity | A period of 30 days beginning on the date the Court approves the Indicative Term Sheet (the "**Exclusivity Period**"). This section will become binding upon Court approval of the Indicative Term Sheet. |
| Work Fee | $400,000, payable in $50,000 weekly increments with any remaining balance immediately due and payable on Closing. This section will become binding upon Court approval of the Indicative Term Sheet. |
| Equity Bid | NCI and Gordon Brothers to deliver an Equity Bid to the Pride Entities within 30 days of Closing and upon completion of the |

- 18 -

|  | physical inspections and all other diligence regarding all of the Pride Entities assets. |
|---|---|
|  | Subject to the Company's approval of the terms thereof, the Equity Bid will serve as a stalking horse bid in these CCAA Proceedings. Excluded Assets may be removed from the assets being purchased pursuant to the Equity Bid. |
|  | NCI will continue to liquidate any Offered Assets that are not included in the Equity Bid (including Excluded Assets) on behalf of the Pride Entities pursuant to the terms of the Indicative Term Sheet. |

53.    The Monitor understands that the Exclusivity Period was included in the Indicative Term Sheet in exchange for a significant reduction in the quantum of the Initial Deposit from $400,000 to $100,000. Although the Exclusivity Period extends for 30 days beginning on August 9, 2024 (if the Requested Relief is granted), the Indicative Term Sheet requires definitive documentation to be finalized by August 23, 2024. Given the substantial benefit received by the Pride Entities for agreeing to the Exclusivity Period in the Indicative Term Sheet and the limited bandwidth of the Pride Entities, the CRO and the Monitor to enter into multiple parallel negotiations with other prospective interim lenders, the Monitor supports the inclusion of the Exclusivity Period in the Indicative Term Sheet.

54.    The Monitor further notes that, while the Indicative Term Sheet contains the Exclusivity Period, such Exclusivity Period does not preclude stakeholders from presenting to the Court an alternative funding arrangement that may be negotiated and pursued and finalized by the Pride Entities subsequent to the Exclusivity Period.

55.    The Monitor understands that the Pride Entities will be seeking a sealing order of this Court sealing Confidential Exhibit "1" to the Benson Affidavit, being the unredacted copy of the Indicative Term Sheet (setting out the Agent's fees in connection with the transactions proposed thereby). In the event that the parties are not able to agree upon definitive documentation, the disclosure of this information would, in the Monitor's view, be prejudicial to further negotiations or efforts to secure alternative debtor-in-possession financing. Accordingly, at this juncture, the economic pricing terms redacted from the Indicative Term Sheet have not been included in the Thirteenth Report but such terms will

- 19 -

be disclosed if and when Court approval of the debtor-in-possession facility contemplated by the Indicative Term Sheet is sought.

56.    The Monitor recommends that this Court approve the Indicative Term Sheet on the basis that if the transactions contemplated thereby are ultimately approved by the Court and close: (i) an Orderly Disposition will be conducted by experienced parties positioned to maximize the Pride Entities' assets for all of its stakeholders, which is further supported by NCI's recent experience as part of its Yellow Corporation "Co-Agent" mandate, (ii) the Indicative Term Sheet provides for a Commitment amount sufficient to finance an Orderly Disposition, in addition to ancillary matters remaining in these CCAA Proceedings, (iii) the pricing terms contained in the Confidential Schedule I of the Indicative Term Sheet (which will be disclosed if and when Court approval of definitive documentation is sought) result in fair and reasonable compensation being paid to facilitate both an Orderly Disposition and financing of the same, and (iv) as set out in greater detail below, the Pride Entities require urgent funding.

**LIQUIDITY UPDATE**

57.    Due to the DIP Facility being effectively fully drawn and matured, and given the restrictions on the manner in which the Final Advance can be used by the Pride Entities pursuant to the Payment Procedure Agreement (described in greater detail at paragraph 40 above), the Pride Entities will have limited liquidity during the interim period of July 29, 2024 up to and including September 8, 2024 (the "**Forecast Period**") by which point the Pride Entities intend on seeking Court approval of a New Interim Financing Facility. This limited liquidity means that, without the Requested Relief being granted or further funding being received, the Pride Entities' will not be able to satisfy their working capital requirements and other needs over the coming weeks which jeopardizes the value of their assets and fleet (described in greater detail at paragraph 45 above).

58.    The Monitor has prepared an interim cash flow forecast, in consultation with counsel to the Pride Entities and the CRO, for the Forecast Period (the "**Cash Flow Forecast**"), which illustrates that, without access to further funding, the Pride Entities will only be able to satisfy their payroll, operating expenses and professional fees during the Forecast Period if

- 20 -

the Requested Relief is granted to allow the Pride Entities to temporarily retain and utilize Deferred Payments. The Requested Relief will sufficiently address immediate liquidity concerns during the Forecast Period while the transactions contemplated by the Indicative Term Sheet (if approved) are pursued. A copy of the Cash Flow Forecast is attached hereto as **Appendix "C"**.

59.     The Cash Flow Forecast assumes that the Requested Relief is granted and estimates (i) total receipts of approximately $31.3 million during the Forecast Period with approximately $13.7 million in Deferred Payments and (ii) total disbursements of approximately $42.4 million during the Forecast Period, which, for illustrative purposes, includes the Payment Procedure Top-Up (approximately $8.6 million) and July 31st Accruals (approximately $18.6 million)[5]. If all of the forecast receipts are received and the Payment Procedure Top-Up and July 31st Accruals are made, the Pride Entities will, at the end of the Forecast Period (September 8, 2024) have a closing cash balance of approximately $1.3 million, with no liquidity beyond then without additional funding. If the Payment Procedure Top-Up and the July 31st Accruals are not made, the Pride Entities will have a closing cash balance of approximately $9.9 million at the end of the Forecast Period (being September 8, 2024).

**AMENDMENT TO REVISED GOVERNANCE PROTOCOL**

60.     The Pride Entities cannot continue to incur post-filing obligations to pursue an Orderly Disposition or a solution for the PGL Entities with no prospect of the ability to pay such obligations. Without access to the Deferred Payments, the Pride Entities would not have liquidity beyond August 11, 2024, regardless of whether or not the Payment Procedure Top-Up is made.

61.     Currently, pursuant to the Amended and Restated Protocols Order, Lease Payments and Soft Collections received by the Pride Entities are distributed to applicable Financiers. This is also authorized in the Second ARIO, despite the prohibition typically contained in

---

[5] The Payment Procedure Top-Up and payment of the July 31st Accruals are included in the Cash Flow Forecast for illustrative purposes. Whether or not the Payment Procedure Top-Up and, in turn, the July 31st Accruals are made by the Pride Entities will depend on their liquidity which will be monitored closely during the Forecast Period.

- 21 -

CCAA proceedings on repaying pre-filing secured indebtedness. These payments (totaling approximately $28.8 million, comprised of approximately $15.2 million paid since the Filing Date and another $13.6 million currently held in a Segregated Lease Payment Account and contemplated to be paid during the Forecast Period) were made possible as a result of the DIP Facility, which has been effectively fully drawn.

62.     The Pride Entities require access to the Deferred Payments and are seeking to temporarily suspend the requirement that they disburse the Deferred Payments and are also seeking authorization to use the Deferred Payments for working capital until such time as additional funding under a New Interim Financing Facility becomes available.

**CONCLUSIONS AND RECOMMENDATIONS**

63.     The Monitor views it as vital that the Pride Entities receive financial reprieve during the Forecast Period to bridge the Pride Entities to funding under a New Interim Financing Facility. The Deferred Payments are only being temporarily suspended until a New Interim Financing Facility is finalized, approved by the Court, and made available to the Pride Entities.

64.     The Pride Entities have the means to access urgent interim funding to continue these CCAA Proceedings in an orderly fashion by suspending Deferred Payments. If the Pride Entities are able to utilize such Deferred Payments for working capital, the Pride Entities should be able to self-fund their operations until ultimately receiving financing under a New Interim Financing Facility.

65.     The Monitor supports the Requested Relief on the basis that it will provide the Pride Entities with the necessary liquidity to sustain baseline operations throughout the Forecast Period and preserve the value of their assets and fleet, with the aim of commencing the Orderly Disposition as soon as funding has been received pursuant to a New Interim Financing Facility.

66.     The Monitor understands that there will be several ongoing matters to be dealt with during the Forecast Period for the benefit of the Pride Entities and its stakeholders.  The Monitor intends to engage in the following matters during the Forecast Period:

- 22 -

(a) managing the marketing, negotiation and sale of the Pride Entities' North American real estate portfolio, including approximately 12 properties that are currently in various stages of letter of intent and asset purchase agreement ("**APA**") negotiations, as well as closing the sale of two (2) properties in respect of which APAs have been executed and approved by the Court on August 7, 2024;

(b) facilitating Turn-Overs to the applicable Securitization Counterparties and transitioning of servicing of Securitization Programs;

(c) assisting the Pride Entities in pursuing sale transactions in respect of their assets;

(d) assisting the CRO in pursuing the PGL Sale Process or as the Court may otherwise direct;

(e) facilitating Vehicle sales to Pride Entity customers;

(f) dealing with inter-creditor matters, including, but not limited to, conducting the Entitlement Claims Process, formulating a plan for addressing instances where Financiers have not established priority relative to the DIP Lenders, and facilitating the sharing of Financier record books among Financiers to resolve inter-creditor disputes;

(g) responding to ongoing Financier inquiries with respect to the status and location of their collateral; and

(h) consulting with the Pride Entities regarding employee matters.

67.    Unless the Requested Relief is granted, there will not be sufficient liquidity to fund operations of the Pride Entities, including payroll. Without employees, customers will be stranded, assets will be abandoned, sales would cease and lease servicing would stop, and the Monitor will not have access to necessary personnel of the Pride Entities to (i) negotiate with the vast number of Financiers, (ii) address numerous and frequent requests from Financiers for information regarding assets in which they claim an interest, or (iii) assist with the negotiation of a New Interim Financing Facility and return to Court prior to the conclusion of the Forecast Period with its recommendations in respect of same.

- 23 -

68.     For the reasons set out in this Thirteenth Report, the Monitor recommends this Court grant the Requested Relief.

All of which is respectfully submitted this 8th day of August 2024.

**ERNST & YOUNG INC.,**
solely in its role as Court-appointed Monitor of Pride Group Holdings Inc. and certain affiliates and not in its personal or corporate capacity

**per:**

**Alex Morrison, CPA, CA, LIT, CIRP**
**Senior Vice President**

**Karen Fung, CPA, CA, LIT, CIRP**
**Senior Vice President**

**Appendix "A"**

**Payment Procedure Agreement**

Please see attached.

*Execution Version*

## PAYMENT PROCEDURE AGREEMENT

**THIS AGREEMENT** is made the 30th day of July, 2024.

AMONG:

**TPINE LEASING CAPITAL CORPORATION, TPINE TRUCK RENTAL INC., TPINE LEASING CAPITAL L.P., PGL, PRIDE FLEET SOLUTIONS INC., PRIDE TRUCK SALES L.P., TPINE RENTAL USA, INC. and PRIDE TRUCK SALES LTD., as DIP Availment Borrowers**
*(hereinafter called the "DIP Availment Borrowers", and "DIP Availment Borrower" means an applicable one or more of them, as the context requires or so admits)*

- and -

**ERNST & YOUNG INC., solely in its capacity as court-appointed Monitor and not in its personal or corporate capacity**

- and -

**ROYAL BANK OF CANADA, as Administrative Agent**
*(in its capacity as "Administrative Agent" under the DIP Credit Agreement (defined below), hereinafter called the "DIP Agent")*

RECITALS:

A.   **WHEREAS** the DIP Availment Borrowers, the Borrowers, the Guarantors, the DIP Borrowers, the Administrative Agent, the Floor Plan Administrator and the Lenders are party to that certain fourth amended and restated credit agreement dated as of May 10, 2024, as amended pursuant to a first amending agreement dated as of July 23, 2024 (as further amended, restated, changed and in effect from time to time prior to the date hereof) pursuant to which the Lenders established certain credit facilities in favour of the Borrowers and the DIP Borrowers (the "**DIP Credit Agreement**");

B.   **AND WHEREAS** Ernst & Young Inc. was appointed as Court-appointed monitor in the CCAA Proceedings (in such capacity and not in its personal or corporate capacity, the "**Monitor**");

C.   **AND WHEREAS**, the DIP Availment Borrowers have delivered a Drawdown Notice dated July 24, 2024 requesting an Advance in the principal amount of CAD10,002,000 under the DIP Facility, to be funded on July 31, 2024 (the "**Requested Advance**");

D.   **AND WHEREAS**, the DIP Availment Borrowers are unable to satisfy all conditions precedent to each Advance under Section 9.7 of the DIP Credit Agreement on or prior to funding of the Requested Advance;

- 2 -

E.    **AND WHEREAS**, the DIP Facility matures on July 31, 2024 and in exchange for the agreements and covenants of the DIP Availment Borrowers and the Monitor as set forth in this Agreement, the Lenders have agreed to fund the Requested Advance on the date hereof subject to the terms set forth in this Agreement.

**WITNESSETH THAT** in consideration of the mutual covenants herein contained and other valuable consideration now paid by each party hereto, the one to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    **Interpretation.** Terms defined in the DIP Credit Agreement and not otherwise defined herein are used herein as respectively defined therein. The terms "this Agreement", "hereof", "herein", "hereof" and words of like import means this payment procedure agreement, as changed from time to time in accordance with the terms hereof and for the time being in effect.

2.    **Direction.** The DIP Availment Borrowers hereby irrevocably authorize and direct

(i) the DIP Agent to remit, upon receipt from the Lenders, the entire proceeds of the Requested Advance to the following segregated bank account of the Monitor (the "**Segregated Account**"):

| **Amount** to be **Transferred** | **Name of Person** to be paid | **Transfer Account No.** | **Name, Address, etc. of Transferee** |
|---|---|---|---|
| CAD10,002,000 | Ernst & Young Inc. | Royal Bank of Canada<br><br>Royal Bank Plaza – Main Branch (Toronto)<br><br>200 Bay Street, Toronto, ON M5J 2J5<br><br>Clearing Code: 000300002<br><br>Account #: 116-879-8<br><br>Transit # 00002<br><br>Swift Code: ROYCCAT2 | Ernst & Young Inc., Court appointed Monitor of Pride Group Holdings Inc. – DIP Proceeds<br><br>100 Adelaide Street West, Toronto, ON, M5H 0B3 |

and (ii) the Monitor to remit from the Segregated Account, for and on behalf of each applicable DIP Availment Borrower, each Approved Payment (as defined below) in accordance with this Agreement.

3.    **Special Purpose.** Each of the DIP Availment Borrowers will apply the Requested Advance and any Accrued Obligations Shortfall for the sole purpose of making, as they become due,

- 3 -

each of the following disbursements which are contemplated to be paid pursuant to the DIP Budget under the heading "**Accrued Post Filing Lender Payment Obligations**" (each, an "**Approved Obligation**"), which Approved Obligations will, as at the date of the advance of the Requested Advance by the DIP Agent to the Monitor, have accrued but have not been finally quantified or become due:

    (a)    Equipment Payments Deferred;

    (b)    Floor Plan Financiers Payments;

    (c)    Lease Collections Accrual; and

    (d)    HST Accrual.

4.    **Disbursement.** At or before 11:00 a.m. (Toronto time) on August 1, 2024, the DIP Availment Borrowers shall notify each of the DIP Agent, Fasken Martineau DuMoulin LLP, Blake, Cassels & Graydon LLP, Alvarez & Marsal Canada ULC, Thornton Grout Finnigan LLP and the Monitor (the "**Parties Required to be Notified**") of a reasonable estimate of the aggregate amount of Approved Obligations. To the extent that the estimate of the aggregate amount of Approved Obligations exceeds the Requested Advance (such excess referred to herein as the "**Accrued Obligations Shortfall**"), the Accrued Obligations Shortfall shall, prior to any portion of the Requested Advance being disbursed in accordance with this Agreement, be funded by the Obligor's Available Cash Balance for the Syndicate Borrowers (as such term is used in the DIP Budget) into the Segregated Account.

5.    **Payment Notices**. As each of the Approved Obligations are finally quantified and become due, the CRO will, on behalf of the applicable DIP Availment Borrower paying such Approved Obligation, provide Notice (as defined below) to each of the Parties Required to be Notified in the manner specified in Section 11 below of (a) the quantum of each Approved Obligation and (b) wire remittance details for the payment of such Approved Obligation.

6.    **Monitor Confirmation.** The Monitor will confirm (by way of e-mail) to each of the other Parties Required to be Notified at the email addresses at the email addresses specified in Section 11 below whether such payment is, in its view, consistent with the DIP Budget, and if it does so, that payment shall, for the purposes of this Agreement, be regarded as an "Approved Payment" and be paid.

7.    **Application of Payments.** Payments to be made pursuant to Section 6 shall be applied *first*, to pay HST that has become an Approved Payment and thereafter, to pay Equipment Payments Deferred, Floor Plan Financiers Payments and Lease Collections Accrual that have become Approved Payments in such order and to such extent as the Obligors, in consultation with the Monitor, determine to be equitable, fair, reasonable and consistent with the Court Orders.

8.    **HST Accruals.** Solely with respect to any HST Accrual that becomes an Approved Payment, the Monitor will remit such amount to the applicable DIP Availment Borrower(s)

- 4 -

from the Segregated Account and promptly upon receipt, such DIP Availment Borrower(s) will remit the entirety of the amount received to the appropriate governmental authority and provide each of the Parties Required to be Notified at the email addresses specified in Section 4 above with confirmation of same.

9. **Monitor's Capacity.** Each of the DIP Availment Borrowers and the DIP Agent (for and on behalf of itself and each Lender) acknowledges and agrees that in taking any of the steps or actions contemplated above, the Monitor shall not incur any liability or obligation whatsoever under this Agreement (save and except for any gross negligence or wilful misconduct on its part) and will continue to enjoy all of the releases and protections available to it pursuant to the Court Orders granted in these CCAA Proceedings, the CCAA and at law.

10. **Representations and Warranties.** Each of the DIP Availment Borrowers represents and warrants to each other party hereto that:

    (a)    *Status.* It is duly organised and validly existing under the laws of the jurisdiction of its organisation or incorporation and, if relevant under such laws, in good standing;

    (b)    *Powers.* It has the power to execute this Agreement and any other documentation relating to this Agreement to which it is a party, to deliver this Agreement and any other documentation relating to this Agreement that it is required by this Agreement to deliver and to perform its obligations under this Agreement and has taken all necessary action to authorise such execution, delivery and performance;

    (c)    *No Violation or Conflict.* Such execution, delivery and performance do not violate or conflict with any law applicable to it, any provision of its constitutional documents, any order or judgment of any court or other agency of government applicable to it or any of its assets, including, without limitation, the Court Orders, or any contractual restriction binding on or affecting it or any of its assets;

    (d)    *Consents.* All governmental and other consents that are required to have been obtained by it with respect to this Agreement have been obtained and are in full force and effect and all conditions of any such consents have been complied with; and

    (e)    *Obligations Binding.* Its obligations under this Agreement constitute its legal, valid and binding obligations, enforceable in accordance with their respective terms (subject to applicable bankruptcy, reorganisation, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application (regardless of whether enforcement is sought in a proceeding in equity or at law)).

11. **Notices** Each notice or other communication to be made or given under or in connection with this Agreement (a "**Notice**") to each of the Parties Required to be Notified shall be in writing and given by e-mail addressed at their respective addresses set out below:

- 5 -

12.    **To the DIP Agent**
email:        brad.d.newton@rbc.com

**To the DIP Availment Borrowers**
email:        r.benson@rcbensonconsulting.com

**Fasken Martineau DuMoulin LLP**
email:        sbrotman@fasken.com and dsingh@fasken.com

**Blake, Cassels & Graydon LLP**
email:        pridegroup@blakes.com

**Alvarez & Marsal Canada ULC**
email:        dmcintosh@alvarezandmarsal.com

**The Monitor**
email:        Alex.F.Morrison@parthenon.ey.com and
Karen.K.Fung@parthenon.ey.com and Alexander.Slovic@parthenon.ey.com

**Thornton Grout Finnigan LLP**
email:        lwilliams@tgf.ca and rnicholson@tgf.ca

13.    **Termination of this Agreement**

Any breach or non-compliance with the terms of this Agreement shall result in a default hereunder (each a "**Default**"). The Monitor shall notify DIP Agent of any Default under this Agreement as soon as it becomes aware of such Default. The Lenders may, with leave of the Court, seek termination of this Agreement and the return of any undisbursed portion of the Requested Advance in the Segregated Account at that time to the bank account of the DIP Agent identified in Schedule "A" hereto.

14.    **Miscellaneous**

(a)    *Grammatical Variations.*  In this Agreement, unless the context otherwise requires, (i) words and expressions (including words and expressions (capitalized or not) defined, given extended meanings or incorporated by reference herein) in the singular include the plural and vice versa (the necessary changes being made to fit the context), (ii) words in one gender include all genders, (iii) grammatical variations of words and expressions (capitalized or not) which are defined, given extended meanings or incorporated by reference in this Agreement shall be construed in like manner, (iv) "or" is not necessarily to be construed in the alternative and (v) "change" is to be construed to include change, modify, alter, amend, supplement, extend, renew, compromise, novate, replace, terminate, release, discharge, cancel, suspend or waive.

(b)    *Reference to Agreements.* Unless the context otherwise requires, each reference in this Agreement to any agreement or document (including this Agreement and any other defined term that is an agreement or document) shall be construed so as to

- 6 -

include such agreement or document (including any attached schedules, appendices and exhibits) and each change made to it at or before the time in question; provided that (a) no change to this Agreement shall be effective unless it is made in compliance with Sections 14(d) and 15.

(c) *Entire Agreement*. This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter. Each of the parties acknowledges that in entering into this Agreement it has not relied on any oral or written representation, warranty or other assurance (except as provided for or referred to in this Agreement) and waives all rights and remedies which might otherwise be available to it in respect thereof, except that nothing in this Agreement will limit or exclude any liability of a party for fraud.

(d) *Amendments*. An amendment, modification or waiver in respect of this Agreement will only be effective when it has been executed by the parties hereto and each party hereto has received counterparts hereof that, when taken together, bear the signatures of each of the other parties thereto.

(e) *Survival of Obligations*. Without limiting the generality of Section 9, the termination of this Agreement shall be without prejudice to the rights and obligations of each party hereto (other than the Monitor) which shall have accrued hereunder or have arisen in connection herewith at the time of termination, all of which shall survive such termination for a limitations period of not less than two (2) years. This Agreement shall survive maturity of the DIP Facility under the DIP Credit Agreement.

(f) *Loan Document*. This Agreement shall constitute a Loan Document within the meaning of the DIP Credit Agreement.

(g) *Remedies Cumulative*. Except as provided in this Agreement, the rights, powers, remedies and privileges provided in this Agreement are cumulative and not exclusive of any rights, powers, remedies and privileges provided by law.

15. **No Waiver of Rights.** A failure or delay in exercising any right, power or privilege in respect of this Agreement will not be presumed to operate as a waiver, and a single or partial exercise of any right, power or privilege will not be presumed to preclude any subsequent or further exercise, of that right, power or privilege or the exercise of any other right, power or privilege.

16. **Headings.** The headings used in this Agreement are for convenience of reference only and are not to affect the construction of or to be taken into consideration in interpreting this Agreement.

17. **Governing Law**

This Agreement shall be governed by, and interpreted in accordance with, the laws in force in the Province of Ontario, including the federal laws of Canada applicable therein, but excluding choice of law rules.

- 7 -

18.    **Counterparts**

This Agreement may be executed by hand, electronic signature or electronic document (such as DocuSign) in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract, and it shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart. Transmission of a signed copy of this Agreement by each party hereto (other than the DIP Agent) to the DIP Agent by e-mail in pdf or electronic document format shall be as effective as delivery of an original manually executed counterpart hereof. This Agreement shall become effective when it has been executed by the DIP Agent, the DIP Agent has received counterparts hereof that, when taken together, bear the signatures of each of the other parties hereto and the DIP Agent notifies each other party that that has occurred.

*[Signature Pages Follow]*

S-1

**IN WITNESS WHEREOF** the parties hereto have executed this Agreement as of the day and year first above written.

**DIP Availment Borrowers:**

**TPINE TRUCK RENTAL INC.**

By: _____

    Name: Sulakhan Johal
    Title: President


**TPINE LEASING CAPITAL CORPORATION**

By: _____

    Name: Sulakhan Johal
    Title: President


**PRIDE TRUCK SALES LTD.**

By: _____

    Name: Sulakhan Johal
    Title: President


**TPINE LEASING CAPITAL L.P. by its general partner COASTLINE HOLDINGS, CORP.**

By: _____

    Name: Sulakhan Johal
    Title: President

S-2

**PRIDE TRUCK SALES L.P., by its general partner COASTLINE HOLDINGS, CORP.**

By: _____

    Name: Sulakhan Johal
    Title: President


**TPINE RENTAL USA, INC.**

By: _____

    Name: Sulakhan Johal
    Title: President


**PRIDE GROUP LOGISTICS LTD.**

By: _____

    Name: Sulakhan Johal
    Title: President


**PRIDE FLEET SOLUTIONS INC.**

By: _____

    Name: Sulakhan Johal
    Title: President

S-3

**DIP Agent:**

**ROYAL BANK OF CANADA, as DIP Agent**

By: _____

    Name:  Annie Lee
    Title:   Associate Director, Agency Services

By: _____

    Name:
    Title:

S-4

**The Monitor acknowledges and approves this Agreement and agrees to its obligations as set out in this Agreement.**

**Ernst & Young Inc., solely in its capacity as Court-appointed monitor and not in its personal or corporate capacity.**

By: _____

Name: _Alex Morrison_

Title: _Senior Vice President_

## SCHEDULE "A"

## WIRE TRANSFER INSTRUCTIONS

**CDN:**

**BENEFICIARY BANK NAME:** ROYAL BANK OF CANADA
**ADDRESS:** TORONTO ONTARIO CANADA
**SWIFT CODE:** ROYCCAT2
**BENEFICIARY NAME:** ROYAL BANK OF CANADA
**ADDRESS:** 200 BAY STREET, TORONTO ON CANADA M5J 2J5
**TRANSIT:** 00002
**BANK:** 003
BENEFICIARY ACCOUNT:
**NOTIFY AND PAY**

**NOTE: THE FOLLOWING SHOULD GO IN TEXT FIELD FOR INFORMATION PURPOSES**

**Details of Payment/Information for the beneficiary:**

FFC G.L. 991-604-0 transit 07272 PLEASE CALL
DAWN OUTHWAITE AT 416 974-8118 OR KHADIJA ALRAIS AT 416 974-7333

**USD (FROM CANADA):**

**BENEFICIARY BANK NAME:** ROYAL BANK OF CANADA
**ADDRESS:** TORONTO ONTARIO CANADA
**SWIFT CODE:** ROYCCAT2
**BENEFICIARY NAME:** ROYAL BANK OF CANADA
**ADDRESS:** 200 BAY STREET, TORONTO ON CANADA M5J 2J5
**TRANSIT:** 00002
**BANK:** 003
**BENEFICIARY ACCOUNT:**
**NOTIFY AND PAY**

**NOTE: THE FOLLOWING SHOULD GO IN TEXT FIELD FOR INFORMATION PURPOSES**

**Details of Payment/Information for the beneficiary:**

FFC G.L. 900-352-6 transit 07272 PLEASE CALL
JOHN FERNANDES 416-974-4441 OR KHADIJA ALRAIS 416-974-7333

**USD:**

**Clearing Bank/ pay :** JP Morgan Chase Bank, New York
**SWIFT CODE:** CHASUS33
**ABA Number :** 021000021
**BENEFICIARY BANK NAME:** ROYAL BANK OF CANADA
**ADDRESS:** TORONTO ONTARIO CANADA
**SWIFT CODE:** ROYCCAT2
**BENEFICIARY NAME:** ROYAL BANK OF CANADA
**ADDRESS:** 200 BAY STREET
TORONTO ON CANADA M5J2J5
**TRANSIT:** 00002
**BANK:** 003
**BENEFICIARY ACCOUNT:**

**NOTIFY AND PAY**

**NOTE: THE FOLLOWING SHOULD GO IN TEXT FIELD FOR INFORMATION PURPOSES**

**Details of Payment/Information for the beneficiary:**

FFC G.L. 900-352-6 transit 07272 PLEASE CALL
DAWN OUTHWAITE AT 416 974-8118 OR KHADIJA ALRAIS AT 416 974-7333

**Appendix "B"**

**August 1 Letter**

Please see attached.



Blake, Cassels & Graydon LLP
Barristers & Solicitors
Patent & Trade-mark Agents
199 Bay Street
Suite 2800, Commerce Court West
Toronto ON  M5L 1A9  Canada
Tel: 416-863-2400  Fax: 416-863-2653

**Pamela Huff**

August 1, 2024

Partner
Dir: 416-863-2958
pamela.huff@blakes.com

**VIA E-MAIL**

Reference: 8431/1367

Pride Group Holdings et al. Service List

**Re:   Notice of DIP Expiry**

To the Service List:

We are counsel to Ernst & Young Inc., in its capacity as the Court-appointed Monitor of Pride Group Holdings Ltd., *et al*. As you are aware, the Court most recently extended the stay of proceedings until September 30th. At the hearing extending the stay of proceedings, the Court was advised that the DIP Facility would expire on July 31, 2024, unless the Applicants satisfied the conditions for an automatic extension. Those conditions were not met and the DIP Facility matured on July 31st. The maximum amount available under the DIP Facility, being $36.3 million, was fully drawn prior to the maturity.

The Applicants, the CRO and the Monitor are working to develop the path forward in light of the maturity of the DIP Facility. The Applicants and CRO are in advanced discussions with another potential DIP lender, and the Monitor is assisting the Applicants and CRO to advance an orderly monetization plan for presentation to the Court and stakeholders. The Applicants will continue to seek court approval for transactions, including the potential going-concern sale of PGL, as they are negotiated and finalized, as has been the current practice.

The Monitor expects to a file a Report in the coming days outlining further details, but wanted the stakeholders to be advised as soon as possible of this material development in the CCAA proceedings.

The Applicants intend to seek the approval of temporary measures to provide short-term liquidity to enable them to continue to operate until they are able to seek approval from the Court in the coming weeks as to the path-forward and an appropriate plan for the orderly monetization and transition of the Pride estate that is fair and equitable to all stakeholders, including over 900 employees and contractors, as well as customers, mortgage holders and secured and unsecured creditors

Yours truly,

Pamela L. J. Huff

1376-5154-8941.2

**Appendix "C"**

**Cash Flow Forecast**

Please see attached.

CCAA Proceedings of Pride Group Holdings Inc., other Applicants and Additional Stay Parties
Cash Flow Forecast for the period from July 29, 2024 to September 08, 2024 (in $000 CAD)

| | Notes | W1 Forecast 04-Aug | W2 Forecast 11-Aug | W3 Forecast 18-Aug | W4 Forecast 25-Aug | W5 Forecast 01-Sep | W6 Forecast 08-Sep | 29-Jul-24 08-Sep-24 TOTAL |
|---|---|---|---|---|---|---|---|---|
| **Cash Sales** | | | | | | | | |
| Can Sales | 1 | 2,443 | 2,443 | 2,443 | 2,443 | 2,469 | 2,469 | 14,710 |
| US Sales | 1 | 1,609 | 1,609 | 1,609 | 1,609 | 1,627 | 1,627 | 9,690 |
| Downpayments and Deposits | 2 | - | - | - | - | - | - | - |
| Sales Payments to Financier | 3 | (3,468) | (3,506) | (3,544) | (3,582) | (3,640) | (3,678) | (21,458) |
| Cost Recovery | 4 | - | - | - | - | - | - | - |
| Realization Commission | 4 | 370 | 370 | 370 | 370 | 328 | 328 | 2,136 |
| **Net Cash from Sales** | | 954 | 916 | 878 | 840 | 764 | 726 | 5,078 |
| | | | | | | | | |
| **Receipts** | | | | | | | | |
| Lease Collections | 5 | 5,308 | 498 | 3,991 | 498 | 5,308 | 498 | 16,101 |
| Lease Buyout | 6 | - | - | - | - | - | - | - |
| Lease Buyout - Payments to Funder | 6 | - | - | - | - | - | - | - |
| Logistics Receipts | 7 | 2,200 | 2,200 | 2,200 | 2,200 | - | - | 8,800 |
| Net Fuel Sales | 8 | 74 | 74 | 74 | 74 | 52 | 52 | 400 |
| Securitization Portfolio Fees | 9 | - | - | - | - | - | - | - |
| Rental Income | 10 | 305 | 27 | 108 | 181 | 259 | 73 | 953 |
| **Total receipts** | | 7,887 | 2,799 | 6,373 | 2,953 | 5,619 | 623 | 26,254 |
| **Cash Sales & Receipts** | | 8,841 | 3,715 | 7,251 | 3,793 | 6,383 | 1,349 | 31,332 |
| | | | | | | | | |
| **Operating disbursements** | | | | | | | | |
| Payroll and Benefits | 11 | (1,802) | (1,687) | (1,071) | (1,508) | (1,618) | (1,232) | (8,918) |
| Income taxes payable | 12 | - | - | - | - | - | - | - |
| Sales taxes payable | 13 | - | (100) | - | - | (100) | - | (200) |
| Utilities | 14 | (35) | (35) | (35) | (35) | (28) | (28) | (196) |
| Operating Fuel | 15 | (487) | (487) | (487) | (487) | (487) | (487) | (2,922) |
| Repairs and maintenance | 16 | (378) | (378) | (1,102) | (378) | (50) | (50) | (2,336) |
| Brokerage costs | 17 | (200) | (200) | (200) | (200) | (200) | (200) | (1,200) |
| Legal Costs | 18 | (50) | (50) | (50) | (50) | (24) | (24) | (248) |
| Recovery Costs | 19 | (1) | (1) | (1) | (1) | (1) | (1) | (6) |
| Occupancy Costs | 20 | (435) | (10) | (11) | - | (299) | (10) | (768) |
| Other Costs | 21 | (796) | (2,946) | (381) | (693) | (273) | (43) | (5,082) |
| Logistics Equipment Financing | 22 | - | - | - | - | - | - | - |
| Intercompany Borrowings | 23 | (82) | (82) | (82) | (82) | (72) | (72) | (472) |
| **Total operating disbursements** | | (4,266) | (5,976) | (3,423) | (3,434) | (3,102) | (2,147) | (22,348) |
| | | | | | | | | |
| Professional Fees - Restructuring | 24 | (3,000) | (2,805) | (1,014) | (1,014) | (1,014) | (1,014) | (9,861) |
| | | | | | | | | |
| **Net operating cash flow** | | 1,575 | (5,066) | 2,814 | (655) | 2,267 | (1,812) | (877) |
| | | | | | | | | |
| **Non operating disbursements** | | | | | | | | |
| Lease Repayments | 25 | - | - | - | - | - | - | - |
| Floor Plan Repayments | 26 | - | - | - | - | - | - | - |
| Floor Plan Interest | 27 | - | - | - | - | - | - | - |
| Term Loan Repayments (Mortgages) | 28 | - | - | - | - | - | - | - |
| OEM Lease Repayments | 29 | - | - | - | - | - | - | - |
| OEM Interest | 30 | - | - | - | - | - | - | - |
| Lease Repayments - Other | 31 | - | - | - | - | - | - | - |
| **Total non-operating disbursements** | | - | - | - | - | - | - | - |
| | | | | | | | | |
| **Available Cash Balance for the Syndicate Borrowing Group** | 32 | | | | | | | |
| Opening Bank Balance | | 13,129 | 13,516 | 8,100 | 2,055 | 1,150 | 3,217 | 13,129 |
| Bill and Collect | | (788) | - | - | - | - | - | (788) |
| Net operating cash/(disbursements) | | 1,575 | (5,066) | 2,814 | (655) | 2,267 | (1,812) | (877) |
| Non-operating cash/(disbursements) | | - | - | - | - | - | - | - |
| DIP Draws/(repayments)/Additional Finance | | - | - | - | - | - | - | - |
| Contributions to Monitor's Segregated Account (Pursuant to the Payment Procedure Agreement) | | - | - | (8,559) | - | - | - | (8,559) |
| Segregated Lease Payments | | - | - | - | - | - | - | - |
| Payments to Trust Account | | (400) | (350) | (300) | (250) | (200) | (150) | (1,650) |
| **Closing Bank Balance** | | 13,516 | 8,100 | 2,055 | 1,150 | 3,217 | 1,255 | 1,255 |
| | | | | | | | | |
| **Monitor's Trust Account** | 33 | | | | | | | |
| Opening Pooling Balance | | 6,220 | 6,626 | 6,983 | 7,290 | 7,547 | 7,754 | 6,220 |
| Floorplan | | 303 | 265 | 227 | 190 | 152 | 114 | 1,251 |
| Leaseline | | 92 | 81 | 69 | 58 | 46 | 35 | 381 |
| OEM Financing | | 4 | 4 | 3 | 3 | 2 | 2 | 18 |
| Interest | | 7 | 7 | 8 | 6 | 7 | 7 | 42 |
| **Closing Pool Balance** | | 6,626 | 6,983 | 7,290 | 7,547 | 7,754 | 7,912 | 7,912 |
| | | | | | | | | |
| **Segregated Lease Payment Account** | 34 | | | | | | | |
| Opening Lease Payment Account | | 13,728 | 13,728 | 13,728 | 9,152 | 4,576 | 0 | 13,728 |
| Lease Collections (Bank) | | - | - | - | - | - | - | - |
| Lease Repayments | | - | - | (4,576) | (4,576) | (4,576) | - | (13,728) |
| **Closing Lease Payment Account** | | 13,728 | 13,728 | 9,152 | 4,576 | 0 | 0 | 0 |
| | | | | | | | | |
| **Monitor's Segregated Account (Pursuant to the Payment Procedure Agreement)** | 35 | | | | | | | |
| Opening Monitor's Segregated Account Balance (funded through Final Advance) | | 10,002 | 10,002 | 10,002 | - | - | - | 10,002 |
| Contributions to Monitor's Segregated Account (Pursuant to the Payment Procedure Agreement) | | - | - | 8,559 | - | - | - | 8,559 |
| July 31st Accrued Equipment Payments | | - | - | (5,214) | - | - | - | (5,214) |
| July 31st Floor Plan Financiers Payments | | - | - | (3,811) | - | - | - | (3,811) |
| July 31st Lease Collections Accrual Payments | | - | - | (4,650) | - | - | - | (4,650) |
| July 31st HST Accrual Payments | | - | - | (4,886) | - | - | - | (4,886) |
| **Closing Monitor's Segregated Account Balance** | | 10,002 | 10,002 | - | - | - | - | - |
| | | | | | | | | |
| **Deferred Payments** | 36 | 4,512 | 4,935 | 8,327 | 8,751 | 13,263 | 13,686 | 13,686 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF **PRIDE GROUP HOLDINGS INC.** and those
Applicants listed on **Schedule "A"** hereto

**Notes to the Unaudited Consolidated Filing Cash Flow Forecast of the
Applicants and Limited Partnerships listed on Schedule "A"
(collectively, the "Pride Entities") for the period from
July 29, 2024, to September 8, 2024 (the "Forecast Period")**

**Disclaimer:**

In preparing this cash flow forecast (the "**Cash Flow Forecast**"), the Applicants with the assistance of
Ernst & Young Inc., in its capacity as Monitor of the Pride Entities (the "**Monitor**"), have relied upon
unaudited financial information and have not attempted to further verify the accuracy or completeness of
such information. The Cash Flow Forecast includes estimates concerning the operations of the Pride
Entities and additional assumptions discussed below, including assumptions from management of the Pride
Entities ("**Management**"), with respect to the requirements and financial impact of a *Companies' Creditors
Arrangement Act* ("CCAA") filing (the "**Probable and Hypothetical Assumptions**" or the
"**Assumptions**"). Since the Cash Flow Forecast is based on Assumptions about future events and conditions
that are not ascertainable, the actual results achieved during the Cash Flow Forecast period will vary from
the Cash Flow Forecast, even if Assumptions materialize, and such variation may be material. There is no
representation, warranty, or other assurance that any of the estimates, forecasts or projections will be
realized.

The Monitor's review of the Cash Flow Forecast consisted of inquiries, analytical procedures and
discussions related to information supplied to it by certain key members of the Pride Entities and other
employees of the Pride Entities. Since the Probable and Hypothetical Assumptions need not be supported,
the Monitor's procedures with respect to them were limited to evaluating whether they were consistent with
the purpose of the Cash Flow Forecast. The Monitor also reviewed the support provided by the Pride
Entities for the Probable and Hypothetical Assumptions and the preparation and presentation of the Cash
Flow Forecast. Based on the Monitor's review, nothing has come to the Monitor's attention that causes the
Monitor to believe, in any material respect, that:

a) The Probable and Hypothetical Assumptions are not consistent with the purpose of the Cash
Flow Forecast;

b) As at the date of this Report, the Probable and Hypothetical Assumptions are not suitably supported and consistent with the plans of the Pride Entities or do not provide a reasonable basis for the Cash Flow Forecast; or

c) The Cash Flow Forecast does not reflect the Probable and Hypothetical Assumptions.

Receipts and disbursements are denominated in thousands of Canadian dollars. The line-by-line details are based on borrowers and guarantors to the Syndicate Agreement ("**Syndicate Borrowers**"). Receipts and disbursements of other Applicants are represented on a net basis. The Syndicate Borrowers are noted in Schedule "A" and are a subset of the Pride Entities.

This version of the Cash Flow Forecast outlines the change in the Pride Entities' cash flow position until a new interim financing is approved by the Court. It is based on the assumption that the Pride Entities receive the Requested Relief to stop making and begin utilizing Deferred Payments.

**Assumptions:**

1. **Cash Sales**
   This category includes estimates of revenues generated by the Pride Entities (through PTS, TTR, PTS LP and TTR USA) with respect to cash sales of vehicles. This would also include customers who have sought out third-party lease financing. The estimate of cash sales is based on the historical 4-week trailing average of both the sales and the deposit received, net of funds retained for Cost Recovery and Realization Commission in Note 4.

2. **Downpayment/Deposit**
   This category represents the downpayments/deposits that customers pay for cash sales. However, no amounts are forecast as there is currently no predictability of these amounts. It is assumed that the sale proceeds are inclusive of the deposit.

3. **Sale Payments to Financier**
   Represents the repayment to the floor plans/lease lines from net proceeds from the sale of vehicles. It is assumed that if the sale price is below the outstanding loan value, then the financier is only repaid with the funds received from the sale, net of Realization Commission and Cost Recovery (See Note 4). This does not include payments to the floor plans for vehicles that are identified as Multiple Collateral Vehicles. The net proceeds received from the sale of Multiple Collateral Vehicles will be placed into the Monitor's Trust Account (See Note 33).

4. **Realization Commission and Cost Recovery on Sales**

The Realization Commission represents the structure of the Pride Entities to recover commission from cash sales to cover a portion of the variable and overhead costs related to selling vehicles. The commission calculation reflects a weighted average of the rates anticipated to be agreed to by various lenders weighted against the historical sales data, which includes the number of trucks sold for each lender. The Cost Recovery on Sales relates to costs associated with specific vehicle identification numbers ("**VINs**") and the work required to either repossess, repair, or store, to bring it to a saleable state. It is assumed that these costs (legal and transportation recovery costs, and repairs and maintenance) are approximately 80% of the costs incurred by PTS and PTS USA in these categories. It is also assumed that 10% of these costs will be retained to recover other overhead costs. Note that this would be charged based on actual cost related to a specific VIN and therefore new units would typically have little to no cost recovery on sales, whereas used vehicles would be higher.

5. **Lease Collections**

This category includes the collection of customers payments under their lease obligations and short-term rental obligations. This is based on known pre-authorized payments for the current month, and adjusted based on historical performance, including assumptions for estimated defaults and recovery of such defaults ("**Soft Collections**").

6. **Lease Buyout**

The buyouts represent payments that customers have made to end a lease agreement in order to take full ownership of the vehicle. This also includes payments from insurance claims with respect to any losses because of lease buyouts. When a lease is bought out, the Pride Entities will pay the relevant lease funder. As these amounts are unpredictable, they are not being forecast.

7. **Logistics Receipts**

Represents the collection from customers for the logistics business, which is through PGL, based on known contracts with customers. The projection is based on Management's assumptions. The forecast assumes there is a sale transaction of PGL that closes in Week 4.

8. **Net Fuel Sales**

Represents receipts from customers that have purchased fuel cards through PFS, net of the cost of sale. Customers purchase fuel cards to benefit from a volume discount that PFS has obtained. The net fuel sales are based on a 4-week trailing actual run rate.

9. **Securitization Portfolio Fee**

Represents the proposed structure for recovery of costs associated with managing the lease portfolios of the securitization entities with respect to Soft Collections. For the purposes of the forecast, it has been assumed that Turn-Overs to the applicable Securitization Parties commences

3

in August. Therefore, the nominal performance fees have not been forecast. Since Soft Collections for securitization lenders are not collected in Pride Entities accounts (as the Pride Entities acts as the servicer), these amounts are not included in the Lease Collections in Note 5 but run through the bill and collect transactions that are a reconciling item in the bank accounts.

### 10. Rental Income

Represents rental income collected from tenants of real estate owned by the Syndicate Borrower. This is based on actual tenant contracts of each property. This will be updated as new tenants are onboarded or tenant agreements are terminated. Rental income for the other Pride Entities is assumed to be collected within their own bank accounts.

### 11. Payroll and Benefits

Represents wages and salaries, benefits, WSIB and National Auto League insurance (WSIB alternative coverage for the trucking industry). This also includes payment to subcontractors, i.e. truck drivers under contract, mechanics, and office contractors.

It is assumed that the Pride Entities will continue to pay outstanding salaries and vacation pay, and independent contractors (including those contractors and subcontractors that provide office support) in the ordinary course. It is assumed that no payments are made for severance or termination pay because of any headcount reduction.

### 12. Income Taxes Payable

It is assumed that outstanding income tax has been stayed and that the Pride Entities will not be in a taxes payable position during the Forecast Period.

### 13. Sales Taxes Payable

The amounts included in the Forecast Period are calculated based on amounts that would be accrued and due post-filing, and all accrued and payable amounts within the CCAA Proceeding. The timing has been updated to reflect the filing and expected payment dates from Management.

### 14. Utilities

These are the estimated utility costs for the terminal/dealership operations. PTS pays for PGL's utilities currently.

### 15. Operating Fuel Costs

Represents the cost of fuel that is used by PGL estimated based on its 4-week trailing averages. It is assumed that the payments will be on regular credit terms. The forecast assumes there is a sale transaction of PGL that closes in Week 4. Remaining pre-closing operating expenses will be paid in Weeks 5 and 6.

**16. Repairs and Maintenance**

Represents the repairs and maintenance costs (typically incurred by the operating entities). The costs to complete the Di Miller Bakersfield construction project are also included in Week 3 of the Cash Flow Forecast.

**17. Brokerage Fees**

Represents the operating cost for PGL for brokerage fees. This is based on Management's estimate and historical run rate. The forecast assumes there is a sale transaction of PGL that closes in Week 4. Remaining pre-closing operating expenses will be paid in Weeks 5 and 6.

**18. Legal Costs**

These relate to fees paid to legal teams and other advisors for operations, such as enforcement and recovery of delinquent customer accounts. It is assumed that some of these will continue as they relate to collections and recoveries from customers.

**19. Recovery Costs**

These relate to fees paid to repossess vehicles from delinquent leasing customers. As Turn-Overs to the applicable Securitization Parties begin in August, these fees will be minimal.

**20. Occupancy Costs**

Represents rent for leased premises used by Syndicate Borrowers and 2076401 Ontario Inc. ("207"). The lease for 207 is then sublet to PTS. It is assumed that these will be paid in the normal course as they are typically paid at the first of the month, or first of the period for which they cover.

**21. Other Costs**

Represents the operating cost for the Pride Entities which include parking, software, tolls, insurance, and other general administrative costs. This also includes the Initial Deposit and Work Fee pursuant to the Indicative Term Sheet, as proposed for approval by the Court.

**22. Logistics Equipment Financing**

This represents payments to financers of equipment used for PGL operations. It is assumed in the forecast that these payments are paused until the sale of PGL. The forecast assumes there is a sale transaction of PGL that closes in Week 4.

**23. Intercompany Borrowings**

This represents intercompany borrowings from Pride Entities outside of the Syndicate Borrowers from the Syndicate Borrowers to support operations of these Pride Entities.

**24. Professional Fees - Restructuring**

This relates to fees of the Applicants' external legal counsel in Canada and US, the Monitor and its counsels in Canada and the US, the directors and officers counsel, and the Chief Restructuring Officer.

## Non-Operating Disbursements

**25. Lease Repayments**

This represents the payments for wholesale leases to the various financiers. These lease payments only relate to income generating leases and therefore excludes any payments associated with delinquent customers, vehicles returned or repossessed, vehicles in inventory, duplicate liabilities, etc. These payments are subject to the Revised Governance Protocol. The Cash Flow Forecast assumes that the Pride Entities receive the Requested Relief and temporarily do not make these lease payments during the Forecast Period.

**26. Floor Plan Repayments**

This represents the curtailment payments under various floor plans (Mitsubishi, RBC, BMO). The forecast projects curtailments are stayed.

**27. Floor Plan Interest**

Represents the interest payment on the floor plans. The forecast reflects that such interest payments are stayed.

**28. Term Loan Payments**

Represents term loans that are secured by real estate property that are held by the Pride Entities. These payments are stayed.

**29. OEM Lease Repayments**

This represents payments for wholesale leases to the various OEM financiers. These lease payments only relate to income generating leases and therefore excludes any payments associated with delinquent customers, vehicles returned or repossessed, vehicles in inventory, duplicate liabilities, etc. These payments will be subject to the Revised Governance Protocol. The Cash Flow Forecast assumes that the Pride Entities receive the Requested Relief and temporarily do not make these OEM lease payments during the Forecast Period.

**30. OEM Interest**

Represents the interest payment on the vehicles that are in inventory for OEM Financiers. Interest has been stayed.

**31. Lease Repayments - Other**

This represents payments to non-lease lines financiers at a two-week lag for which the vehicle has been leased out to a customer. These lease payments only relate to income generating leases and therefore excludes any payments associated with delinquent customers, duplicate liabilities, etc., pursuant to the Revised Governance Protocol. The Cash Flow Forecast assumes that the Pride Entities receive relief from the Court to temporarily not make other lease payments during the Forecast Period.

**32. Available Cash Balance for the Syndicate Borrowers**

This represents the bank balances of the Syndicate Borrowers, net of the bank account balances held with respect to lease collections for securitization lenders. In Week 3, there is an illustrated outflow of $8,559, being the Payment Procedure Top-Up to the Monitor's Segregated Account.

**33. Monitor's Trust Account**

This is the Trust account set up by the Monitor to hold amounts including Cash Proceeds and Lease Collections that relate to Multiple Collateral Vehicles (Leases) until the priority to such vehicles are determined pursuant to the Entitlement Claims Process. In addition, this includes the amounts held in a trust for soft collections of securitization lenders as required under the Revised Governance Protocol.

**34. Segregated Lease Payment Account**

These lease collections are set aside in segregated accounts pursuant to the DIP Credit Agreement. They will be paid to the appropriate lenders pursuant to the Revised Governance Protocol.

**35. Monitor's Segregated Account (Pursuant to the Payment Procedure Agreement)**

The Payment Procedure Agreement requires the Monitor to hold the Final Advance of $10,002 in a Monitor's Segregated Account and that the Pride Entities use such funds in accordance with restrictions requiring that (i) prior to having access to such funds, the Payment Procedure Top-Up (being $8,559) be made, and (ii) the funds in the Monitor's Segregated Account can only be used to pay the July 31st Accruals, being: (a) equipment payments ($5,214), (b) floor plan financier payments ($3,811), (c) lease collection payments ($4,650), and (d) HST payments ($4,885). While these payments are shown for illustrative purposes, whether or not the Payment Procedure Top-Up and, in turn, the July 31st Accruals are made will depend on the liquidity of the Pride Entities which will be monitored closely.

**36. Deferred Payments**

This is the Deferred Payments, net of margin and HST assuming that the Pride Entities receive the Requested Relief from the Court to suspend Deferred Payments during the Forecast Period.

**Schedule "A"**

## A. APPLICANTS

**Operating Entities**

*Canadian Operating Entities*

- PRIDE TRUCK SALES LTD. ("**PTS**")*
- TPINE TRUCK RENTAL INC. ("**TTR**")*
- PRIDE GROUP LOGISTICS LTD. ("**PGL**")*
- PRIDE GROUP LOGISTICS INTERNATIONAL LTD.
- TPINE LEASING CAPITAL CORPORATION*
- DIXIE TRUCK PARTS INC.
- PRIDE FLEET SOLUTIONS INC. ("**PFS**")*
- TPINE FINANCIAL SERVICES INC.
- PRIDE GROUP EV SALES LTD.

*U.S. Operating Entities*

- TPINE RENTAL USA, INC. ("**TTR USA**")*
- PRIDE GROUP LOGISTICS USA, CO.
- ARNOLD TRANSPORTATION SERVICES, INC.
- DIXIE TRUCK PARTS INC.
- TPINE FINANCIAL SERVICES CORP.
- PARKER TRANSPORT CO.
- PRIDE FLEET SOLUTIONS USA INC.

## Real Estate Holding Companies

*Canadian Real Estate Holding Companies*

- 2029909 ONTARIO INC.
- 2076401 ONTARIO INC.*
- 1450 MEYERSIDE HOLDING INC.*
- 933 HELENA HOLDINGS INC.
- 30530 MATSQUI ABBOTSFORD HOLDING INC.
- 2863283 ONTARIO INC.
- 2837229 ONTARIO INC.
- 2108184 ALBERTA LTD.
- 12944154 CANADA INC.
- 13184633 CANADA INC.
- 13761983 CANADA INC.
- 102098416 SASKATCHEWAN LTD.
- 177A STREET SURREY HOLDING INC.
- 52 STREET EDMONTON HOLDING INC.
- 84 ST SE CALGARY HOLDINGS INC.
- 68TH STREET SASKATOON HOLDING INC.
- 3000 PITFIELD HOLDING INC.

*U.S. Real Estate Holding Companies*

- PGED HOLDING, CORP.*
- HIGH PRAIRIE TEXAS HOLDING CORP.*
- 131 INDUSTRIAL BLVD HOLDING CORP.*
- 59TH AVE PHOENIX HOLDING CORP.*
- DI MILLER DRIVE BAKERSFIELD HOLDING CORP.*
- FRONTAGE ROAD HOLDING CORP.*
- ALEXIS INVESTMENTS, LLC
- TERNES DRIVE HOLDING CORP.
- VALLEY BOULEVARD FONTANA HOLDING CORP.
- HIGHWAY 46 MCFARLAND HOLDING CORP.
- TERMINAL ROAD HOLDING, CORP.
- BISHOP ROAD HOLDING CORP.
- OLD NATIONAL HIGHWAY HOLDING CORP.
- 11670 INTERSTATE HOLDING, CORP.
- 401 SOUTH MERIDIAN OKC HOLDING CORP.
- 8201 HWY 66 TULSA HOLDING CORP.
- EASTGATE MISSOURI HOLDING CORP.
- FRENCH CAMP HOLDING CORP.
- 87TH AVENUE MEDLEY FL HOLDING CORP.
- LOOP 820 FORT WORTH HOLDING CORP.
- 162 ROUTE ROAD TROY HOLDING CORP.
- CRESCENTVILLE ROAD CINCINNATI HOLDING CORP.
- MANHEIM ROAD HOLDING CORP.
- 13TH STREET POMPANO BEACH FL HOLDING CORP.
- EAST BRUNDAGE LANE BAKERSFIELD HOLDING CORP.
- CORRINGTON MISSOURI HOLDING CORP.
- 963 SWEETWATER HOLDING CORP.
- OAKMONT DRIVE IN HOLDING CORP.

## Other Holding Companies

*Other Canadian Holding Companies*

- 2692293 ONTARIO LTD.
- 2043002 ONTARIO INC.*
- PRIDE GROUP HOLDINGS INC.*
- 2554193 ONTARIO INC.
- 2554194 ONTARIO INC.
- PRIDE GROUP REAL ESTATE HOLDINGS INC.
- 1000089137 ONTARIO INC.

*Other U.S. Holding Companies*

- COASTLINE HOLDINGS, CORP.*
- PARKER GLOBAL ENTERPRISES, INC.
- DVP HOLDINGS, CORP.

**B. LIMITED PARTNERSHIPS**

*U.S. Limited Partnerships*

- PRIDE TRUCK SALES L.P. ("**PTS LP**")*
- TPINE LEASING CAPITAL L.P.*
- SWEET HOME HOSPITALITY L.P.

**C. ADDITIONAL STAY PARTIES**

*Canadian Additional Stay Parties*

- BLOCK 6 HOLDING INC.
- 2500819 ONTARIO INC.

*U.S. and Other Additional Stay Parties*

- PRIDE GLOBAL INSURANCE COMPANY LTD.
- PERGOLA HOLDINGS, CORP.

\* Syndicate Borrowers (borrowers or guarantors under the Syndicate Agreement)

Court File No.: CV-24-00717340-00CL

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF **PRIDE GROUP HOLDINGS INC.**, et al.

---

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

Proceeding Commenced at Toronto

---

### THIRTEENTH REPORT OF THE MONITOR
### dated August 8, 2024

---

**BLAKE, CASSELS & GRAYDON LLP**
Barristers and Solicitors
199 Bay Street
Suite 4000, Commerce Court West
Toronto, Ontario  M5L 1A9

**Pamela Huff**, LSO #27344V
Tel:      416-863-2958
Email:   pamela.huff@blakes.com

**Chris Burr**, LSO #55172H
Tel:      416-863-3261
Email:   chris.burr@blakes.com

**Kelly Bourassa**, LSO #43062R
Tel:      416-863-2421
Email:   kelly.bourassa@blakes.com

**Daniel Loberto**, LSO #79632Q
Tel:      416-863-2937
Email:   daniel.loberto@blakes.com

Lawyers for the Monitor

# Exhibit "10"



### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

## COUNSEL/ENDORSEMENT SLIP

**COURT FILE NO.: CV-24-00717340-00CL**          **DATE: August 9, 2024**

**NO. ON LIST: 5**

**TITLE OF PROCEEDING:  IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF PRIDE GROUP HOLDINGS INC et al.**

**BEFORE:   JUSTICE OSBORNE**

**PARTICIPANT INFORMATION**

**For Plaintiff, Applicant:**

| Name of Person Appearing | Name of Party | Contact Info |
|---|---|---|
| Rachel Nicholson<br>Leanne Williams<br>Puya Fesharaki<br>Ines Ferreira | Counsel for the Applicants | rnicholson@tgf.ca<br>lwilliams@tgf.ca<br>pfeshraki@tgf.ca<br>iferreira@tgf.ca |
| Raj Sahni | Counsel for the Directors and Officers | sahnir@bennettjones.com |

**For Defendant, Respondent:**

| Name of Person Appearing | Name of Party | Contact Info |
|---|---|---|
| Patrick Corney | Counsel for CWB Maximum Holdings | pcorney@millerthomson.com |
| Graham Phoenix | Counsel for FINLOC 2000 Inc. and for Republic Bank of Chicago | gphoenix@LN.law |
| Craig Colraine | Counsel for PACCAR FINANCIAL Ltd | colraine@bslsc.com |

**For Other, Self-Represented:**

| Name of Person Appearing | Name of Party | Contact Info |
|---|---|---|
| Jeffrey Levine<br>Anthony Labib | Counsel for Roynat Inc and The Bank of Nova Scotia | Jeffrey.levine@mcmillan.ca<br>anthony.labib@mcmillan.ca |
| Stuart Brotman<br>Daniel Richer<br>Aubrey E. Kauffman | Counsel for The Lending Syndicate | sbrotman@fasken.com<br>dricher@fasken.com<br>akauffman@fasken.com |
| Shaun Parsons<br>Matilda Lici | Counsel for TD Equipment Finance Canada | sparsons@airdberlis.com<br>mlici@airdberlis.com |
| Pam Huff<br>Kelly Bourassa<br>Chris Burr<br>Kevin Wu<br>Daniel Loberto | Counsel for the Monitor | Chris.burr@blakes.com<br>Kelly.bourassa@blakes.com<br>Pam.huff@blakes.com<br>kevin.wu@blakes.com<br>daniel.loberto@blakes.com |
| John Salmas | Counsel for Bank of Montreal | john.salmas@dentons.com |
| Blair McRadu<br>Mary Paterson | Counsel for Mitsubishi HC Capital | bmcradu@osler.com<br>mpaterson@osler.com |
| Rania Hammad<br>Lee Nicholson | Counsel for MOVETRUST and Boat Capital LP | rhammad@stikeman.com<br>leenicholson@stikeman.com |
| Elaine Gray | Counsel for Daimler Truck Financial Services Canada Corporation and Daimler Truck Financial Services USA LLC | Elaine.gray@dentons.com |
| John MacDonald<br>Marleigh Dick<br>Tracy Sandler<br>Ben Muller | Counsel for RBC as Financial Service Agent | jmacdonald@osler.com<br>mdick@osler.com<br>tsandler@osler.com<br>bmuller@osler.com |
| Caroline Descours<br>Erick Axell<br>Peter Kolla | Counsel for Regions Bank Regions Equipment Finance Corporation and Regions Commercial Equipment Finance LLC | cdescours@goodmans.ca<br>eaxell@goodmans.ca<br>pkolla@goodmans.ca |
| Heather Meredith | Counsel for National Bank of Canada | hmeredith@mccarthy.ca |
| Thomas Gertner | Counsel for VFS | Thomas.gertner@gowlings.com |
| Jessica Chen | Volvo Financial Services | Jessica.chen@gowlingwlg.com |
| Gray Abrahamson | Proposed Receiver | gabrahamson@fullerllp.com |
| Jennifer Stam | Counsel for the Proposed Receiver | jennifer.stam@nortonrosefulbright.com |
| Justin Limpright | Boat Capital LP (Move Trust) | Justin.limpright@990capital.com |
| Caitlin Fell<br>R. Brendan Bissell | Counsel for Versa Finance and Aviator Financial | cfell@reconllp.com<br>bbissell@reconllp.com |
| Valerie Cross | Counsel for RBC – formerly HSBC Bank Canada | valerie.cross@dentons.com |
| Laura Culleton | Agent for Lawson Lindell – for Coast Capital Savings | laurac@chaitons.com |
| Nick Hollard<br>Alex MacFarlane | Counsel for RBC (Bilateral Lender) | NHollard@blg.com<br>amacfarlane@blg.com |

| John Russo | Counsel for Meridian OneCap Credit Corp | jrusso@pallettvalo.com |
| Trevor Courtis | Counsel for Bennington Financial Corp | tcourtis@mccarthy.ca |

---

**ENDORSEMENT OF JUSTICE OSBORNE:**

1. At the conclusion of this hearing on Friday, August 9, 2024, and following an adjournment to permit the parties to have a discussion with one another, the Applicants advised that they were narrowing for the time being the scope of relief being sought, and the parties had reached agreement on the form of draft order.

2. I granted that order with reasons to follow. These are those reasons. Defined terms in this Endorsement have the meaning given to them in my earlier Endorsements made in this proceeding or in the motion materials, unless otherwise stated.

3. The Pride Entities are in extremely challenging circumstances. The DIP Facility has not been extended and is effectively fully drawn. The practical result of all of this is that absent some form of relief, the Applicants would have no liquidity and would be unable to carry on any business or indeed to continue these proceedings.

4. It is against that backdrop that the parties agreed on the form of order to amend the Revised Governance Protocol. The net effect of the agreed-upon amendments is to permit the Pride Entities to apply any Lease Payments and Collections received by them from and after July 15, 2024 until September 3, 2024 to pay their ordinary course working capital needs and for other general corporate purposes, subject to the review and oversight of the Court-appointed Monitor, provided that certain conditions as set out in the motion materials and reflected in the draft order are met.

5. On the consent, and indeed at the request, of the affected parties, I direct that the Chief Restructuring Officer and the Pride Entities, in consultation with the Monitor, shall immediately engage with the Pride Entities' significant financiers in an effort to develop an orderly wind-down proposal in respect of the Pride Entities, including the funding required in respect of such proposal and completion of the CCAA proceedings.

6. The motion of the Applicants to approve certain provisions of the Indicative Term Sheet dated August 5, 2024 between and among Nations Capital, LLC, as agent, 1903P Loan Agent, LLC, as lender, and Pride Group Holdings, Inc. as borrower, is adjourned *sine die.*

7. The order I signed on August 9, 2024 has immediate effect without the requirement of issuing and entering.

Osborne, J.

# Exhibit "11"



**Birenbaum Steinberg Landau Savin & Colraine LLP**

**Barristers & Solicitors**

Suite 1000 - 33 Bloor Street East
Toronto, Canada M4W 3H1

Telephone: (416) 961-4100
Fax: (416) 961-2531

Craig R. Colraine
Direct Line: (416) 961-0042
E-Mail: colraine@bslsc.com

Refer to file no. 45706

August 21, 2024

***BY EMAIL TO pamela.huff@blakes.com and chris.burr@blakes.com***
Pamela Huff
Chris Burr
Blake, Cassels & Graydon LLP
199 Bay Street, Suite 4000
Commerce Court West
Toronto ON  M5L 1A9

***BY EMAIL TO lwilliams@tgf.ca***

Leanne Williams
Thornton Grout Finnigan LLP
TD West Tower, Toronto-Dominion Centre
100 Wellington Street West, Suite 3200
Toronto, ON  M5K 1K7

Dear Pamela, Chris and Leanne:

**Re: *Companies' Creditors Arrangement Act* proceeding (the "CCAA Proceedings") commenced by Pride Group Holdings Inc., et al (the "Applicants" or the "Pride Group")**

This letter is being written on behalf of PACCAR, VFS Canada Inc., VFS U.S. LLC, Daimler Truck Financial Services Canada Corporation and Daimler Truck Financial Services USA LLC, each of whom is an original equipment manufacturer, or a captive financing company of an original equipment manufacturer (collectively, the "OEMs") involved in the financing of the purchase and lease of trucks by certain Pride Group entities ("OEM Vehicles").

As a preliminary matter, the OEMs note that notwithstanding the direction of Justice Osborne of the Ontario Superior Court of Justice [Commercial List] in his endorsement dated August 9, 2024, none of the OEMs have been meaningfully consulted or engaged about an orderly wind-down proposal for the Pride Group as it relates to the OEM Vehicles. The OEMs appear to be excluded from that process.

- 2 -

At the same time, as the OEMs are being excluded from this process, their idle financed and leased trucks, which could be returned at little or no expense are being held hostage so that unjustifiable and unwarranted wind-up expenses can be extracted from them for the benefit of other lenders which may require more complex and expensive wind-up procedures, and the professional fees associated with such a process. The same concerns equally apply to those trucks that are currently leased out by members of the Pride Group to third parties that have been financed by the OEMs.

To date, considerable expenses have been incurred as a result of the Pride Group's failure to restructure -which realistically was never going to be possible given the justifiable mistrust of

the Pride Group's stakeholders in light of the Pride Group's conduct and their failure to present a coherent and viable plan stakeholders could support.

The OEMs understand that significant costs will have to be incurred to wind up the Pride Group. However, they do not understand why arrangements cannot be made now to return easily accessible idle units and to permit the forwarding of notices of assignment to third party lessees so that they can take over servicing of those leases – leases which the OEMs understand are not presently being serviced adequately by the Pride Group. The OEMs are prepared to do that at their expense which will in turn result in cost savings and efficiencies in the overall wind-up costs and which will be in the interest of all the lenders. Space on Pride Group lots will be freed up, insurance and maintenance expenses reduced and, the administrative costs associated with operating third party leases will be reduced. The OEMs are global leaders in the trucking industry with wide networks of dealers and substantial human resources at their disposal, as well as access to unique remarketing networks, the ability to extend direct financing to end users and potential purchasers to maximize recovery, and unique product and pricing knowledge.

No third-party will be in a better position to repossess and market the idle units and to take over servicing the leases than the OEMs.

Minimal cooperation and information from Pride and the Monitor will be required to permit the recovery of idle units, trucks subject to non-performing leases and the takeover of servicing of performing leases. As a result of its extensive review of the records of the Pride Group, the Monitor should have easily accessible lists of the locations of the affected trucks and the identities and addresses of the lessees (the OEMs in fact already have much of this information in hand). In addition, Daimler has already demonstrated that the recovery of idle units can be completed quickly and efficiently, as evidenced by its orderly collection of its voluntarily surrendered units within a few weeks.

The OEMs are being substantially prejudiced by (a) not being able to deal with their assets immediately, (b) while at the same time being excluded from any discussions pertaining to a wind-up plan (notwithstanding again the clear wording in the Court's endorsement dated August 9, 2024) . Through these proceedings, collectively the value of their security has already significantly depreciated. There is simply no justifiable reason why depreciation cost

- 2 -

should continue to mount and recovery continue to be delayed, while at the same time the OEMs are excluded from any discussion around a wind-up plan.

Given the foregoing, we must insist that the Pride Group's and the Monitor's counsels make themselves available for a meeting at their earliest opportunity with counsels to the OEMs to address the issues raised in this letter.

The OEMs are attaching a draft order for consideration with respect to their proposal. Please note that the OEMs are content that the MCV's (Schedule H) be dealt with in accordance with the existing protocol. They will, however, be working with the other MCV affected parties to efficiently recover and sell those vehicles.

Yours very truly,

**BIRENBAUM, STEINBERG, LANDAU, SAVIN & COLRAINE LLP**

*C. R. Col*

Craig R. Colraine

cc:    Elaine Gray and Mark Freake - Dentons Canada LLP
       NicholaKluge and Thomas Gertner – Gowling WLG (Canada) LLP

# Exhibit "12"

*Blakes*

Blake, Cassels & Graydon LLP
Barristers & Solicitors
Patent & Trade-mark Agents
199 Bay Street
Suite 2800, Commerce Court West
Toronto ON  M5L 1A9  Canada
Tel: 416-863-2400  Fax: 416-863-2653

August 23, 2024

**Pamela Huff**
Partner
Dir: 416-863-2958
pamela.huff@blakes.com

Reference: 8431/1367

**VIA E-MAIL**

Pride Group Holdings et al. Service List

Re:   **Motions to be Heard on September 3, 2024**

To the Service List:

We are counsel to Ernst & Young Inc., in its capacity as the Court-appointed Monitor of Pride Group Holdings Ltd., et al.  As you are aware, the Court has scheduled time on September 3, 2024, in this matter to hear various motions, including lift stay motions filed by certain secured lenders. We wanted to advise the parties how the Applicants, the CRO and the Monitor intend to respond to such motions.

It is impossible from a band width and cost perspective for the Applicants, the Monitor and the CRO to respond to each motion individually or to negotiate separately with each secured lender.  The intention is that there will be a single, coordinated response contained in a report of the Monitor and an affidavit of the CRO, which will outline the recommended path forward: an orderly wind-down of the Pride Entities under the direction and supervision of the CRO and the Monitor, considering the interests of employees, customers, lenders and other stakeholders.  The Monitor also anticipates that its report will propose a going concern sale of the PGL business.  It is the Monitor's intention to communicate with all PGL lenders in advance of the hearing with respect to the benefits of the going concern sale and alternatives available.

At the hearing on August 9, 2024, the Court granted an Order permitting the Pride Entities to use proceeds of certain Deferred Payments to fund ordinary course working capital needs and for other general corporate purposes for the period from and after July 15, 2024 until September 3, 2024.  The Applicants will be seeking relief to allow the continued use of proceeds of certain Deferred Payments through to September 30, 2024.



Page 2

The individual motions do not provide for the conclusion of the CCAA proceedings, nor do they appreciate the logistical complexity and costs of an orderly turn-over of leasing portfolios and vehicles to numerous secured lenders and financiers. This will be addressed by the CRO and the Monitor in a single response proposing an orderly turn-over of assets and the required funding to complete the necessary steps to conclude the CCAA proceedings.

Yours truly,

Pamela L.J. Huff

# Exhibit "13"

## Depreciation Analysis by Vehicle Type

### Retail Value

| # of Units | Year | Model | April | May | July | Loss of Value | % Loss | % Loss / Month |
|---|---|---|---|---|---|---|---|---|
| 27 | 2020 | PT126SLP | $52,600.00 | | $49,675.00 | $3,325.00 | 6.40% | 2.10% |
| 22 | 2021 | PT126SLP | $63,900.00 | | $60,950.00 | $2,958.00 | 4.60% | 1.50% |
| 109 | 2022 | PT126SLP | $83,250.00 | | $75,000.00 | $8,250.00 | 10.00% | 3.30% |
| 234 | 2023 | PT126SLP | $112,225.00 | | $99,850.00 | $12,375.00 | 11.0% | 3.60% |
| 90 | 2024 | PT126SLP | N/A | $134,650.00 | $126,400.00 | $8,250.00 | 6.0% | 3.30% |

### Wholesale Value

| # of Units | Year | Model | April | May | July | Loss of Value | % Loss | % Loss / Month |
|---|---|---|---|---|---|---|---|---|
| 27 | 2020 | PT126SLP | $38,850.00 | | $36,350.00 | $2,500.00 | 6.40% | 2.10% |
| 22 | 2021 | PT126SLP | $47,400.00 | | $44,900.00 | $2,500.00 | 5.20% | 1.70% |
| 109 | 2022 | PT126SLP | $61,450.00 | | $54,450.00 | $7,000.00 | 11.30% | 3.80% |
| 234 | 2023 | PT126SLP | $86,000.00 | | $75,500.00 | $11,000.00 | 12.8% | 4.30% |
| 90 | 2024 | PT126SLP | N/A | $105,000.00 | $98,000.00 | $7,000.00 | 6.7% | 3.30% |

# J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2017 Freightliner Cascadia CA125SLP Sleeper |
| Period: | April 22, 2024 |
| VIN: | 3AKJGLDR3HSHT2157 |
| Mileage: | 900,000 |
| Base MSRP: | $194,715 |
| GVW: | 52,000 |
| GCW: | 80,000 |

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $22,400 | N/A | N/A | **$22,400** |
| Loan | $20,175 | N/A | N/A | **$20,175** |
| Retail | $28,600 | N/A | N/A | **$28,600** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

# J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2017 Freightliner Cascadia CA125SLP Sleeper |
| Period: | July 22, 2024 |
| VIN: | 3AKJGLDR3HSHT2157 |
| Mileage: | 900,000 |
| Base MSRP: | $194,715 |
| GVW: | 52,000 |
| GCW: | 80,000 |

J.D. POWER

No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $22,400 | N/A | N/A | **$22,400** |
| Loan | $20,175 | N/A | N/A | **$20,175** |
| Retail | $28,600 | N/A | N/A | **$28,600** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power

# J.D. POWER

8/21/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2018 Freightliner Cascadia New Cascadia 126" BBC |
| Period: | April 22, 2024 |
| VIN: | 3AKJHHDR9JSJW7121 |
| Mileage: | 787,500 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $27,750 | N/A | N/A | **$27,750** |
| Loan | $24,975 | N/A | N/A | **$24,975** |
| Retail | $36,500 | N/A | N/A | **$36,500** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

## J.D. POWER

**J.D. POWER Commercial Trucks**

### Vehicle Information

| | |
|---|---|
| Vehicle: | **2018 Freightliner Cascadia New Cascadia 126" BBC** |
| Period: | July 22, 2024 |
| VIN: | 3AKJHHDR9JSJW7121 |
| Mileage: | 787,500 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |



J.D. POWER
No Image Available

### J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $27,750 | N/A | N/A | **$27,750** |
| Loan | $24,975 | N/A | N/A | **$24,975** |
| Retail | $36,500 | N/A | N/A | **$36,500** |

### Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

# J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2019 Freightliner Cascadia New Cascadia 126" BBC |
| Period: | April 22, 2024 |
| VIN: | 3AKJHHDR4KSKG4272 |
| Mileage: | 675,000 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |

J.D. POWER
o Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $35,250 | N/A | N/A | $35,250 |
| Loan | $31,725 | N/A | N/A | $31,725 |
| Retail | $47,400 | N/A | N/A | $47,400 |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

# J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information



| | |
|---|---|
| Vehicle: | 2019 Freightliner Cascadia New Cascadia 126" BBC |
| Period: | July 22, 2024 |
| VIN: | 3AKJHHDR4KSKG4272 |
| Mileage: | 675,000 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $31,750 | N/A | N/A | **$31,750** |
| Loan | $28,575 | N/A | N/A | **$28,575** |
| Retail | $42,725 | N/A | N/A | **$42,725** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

# J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2020 Freightliner Cascadia New Cascadia 126" BBC |
| Period: | April 22, 2024 |
| VIN: | 1FUJHHDR2LLLA0425 |
| Mileage: | 562,500 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $38,850 | N/A | N/A | **$38,850** |
| Loan | $34,975 | N/A | N/A | **$34,975** |
| Retail | $52,200 | N/A | N/A | **$52,200** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power

# J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2020 Freightliner Cascadia New Cascadia 126" BBC** |
| Period: | July 22, 2024 |
| VIN: | 1FUJHHDR2LLLA0425 |
| Mileage: | 562,500 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |

J.D. POWER
No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $36,350 | N/A | N/A | **$36,350** |
| Loan | $32,725 | N/A | N/A | **$32,725** |
| Retail | $48,675 | N/A | N/A | **$48,675** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power

## J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2021 Freightliner Cascadia New Cascadia 126" BBC** |
| Period: | April 22, 2024 |
| VIN: | 1FUJHHDR1MLMJ2154 |
| Mileage: | 450,000 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |

J.D. POWER
No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $47,400 | N/A | N/A | **$47,400** |
| Loan | $42,675 | N/A | N/A | **$42,675** |
| Retail | $63,900 | N/A | N/A | **$63,900** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power

# J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2021 Freightliner Cascadia New Cascadia 126" BBC |
| Period: | July 22, 2024 |
| VIN: | 1FUJHHDR1MLMJ2154 |
| Mileage: | 450,000 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |

J.D. POWER
No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $44,900 | N/A | N/A | $44,900 |
| Loan | $40,425 | N/A | N/A | $40,425 |
| Retail | $60,950 | N/A | N/A | $60,950 |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

## J.D. POWER

**J.D. POWER Commercial Trucks**

### Vehicle Information



| | |
|---|---|
| **Vehicle:** | 2022 Freightliner Cascadia New Cascadia 126" BBC |
| **Period:** | April 22, 2024 |
| **Mileage:** | 337,500 |
| **Base MSRP:** | N/A |
| **GVW:** | 52,000 |
| **GCW:** | 80,000 |

### J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $61,450 | N/A | N/A | **$61,450** |
| Loan | $55,325 | N/A | N/A | $55,325 |
| Retail | $83,250 | N/A | N/A | $83,250 |

### Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power

# J.D. POWER

8/22/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2022 Freightliner Cascadia New Cascadia 126" BBC |
| Period: | July 22, 2024 |
| Mileage: | 337,500 |
| Base MSRP: | N/A |
| GVW: | 52,000 |
| GCW: | 80,000 |

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $54,450 | N/A | N/A | $54,450 |
| Loan | $49,025 | N/A | N/A | $49,025 |
| Retail | $75,000 | N/A | N/A | $75,000 |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

# J.D. POWER

8/20/2024

J.D. POWER Commercial Trucks

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2023 Freightliner Cascadia New Cascadia 126" BBC |
| Period: | April 22, 2024 |
| VIN: | 3AKJHHDR1PSNU8499 |
| Mileage: | 225,000 |
| Base MSRP: | N/A |
| GVW: | 0 |
| GCW: | 0 |

J.D. POWER
o Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $86,000 | N/A | N/A | $86,000 |
| Loan | $77,400 | N/A | N/A | $77,400 |
| Retail | $112,225 | N/A | N/A | $112,225 |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

# J.D. POWER

8/20/2024

**J.D. POWER Commercial Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2023 Freightliner Cascadia New Cascadia 126" BBC** |
| Period: | July 22, 2024 |
| VIN: | 3AKJHHDR1PSNU8499 |
| Mileage: | 225,000 |
| Base MSRP: | N/A |
| GVW: | 0 |
| GCW: | 0 |

No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $75,500 | N/A | N/A | $75,500 |
| Loan | $67,950 | N/A | N/A | $67,950 |
| Retail | $99,850 | N/A | N/A | $99,850 |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

**J.D. POWER**

J.D. POWER Commercial Trucks

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2024 Freightliner Cascadia New Cascadia 126" BBC** |
| Period: | **May 22, 2024** |
| VIN: | **3AKJHHDR7RSUV2525** |
| Mileage: | **112,500** |
| Base MSRP: | **N/A** |
| GVW: | **0** |
| GCW: | **0** |

J.D. POWER
No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $105,000 | N/A | N/A | **$105,000** |
| Loan | $94,500 | N/A | N/A | **$94,500** |
| Retail | $134,650 | N/A | N/A | **$134,650** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power

**J.D. POWER**

8/20/2024

J.D. POWER Commercial Trucks

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2024 Freightliner Cascadia New Cascadia 126" BBC |
| Period: | July 22, 2024 |
| VIN: | 3AKJHHDR7RSUV2525 |
| Mileage: | 112,500 |
| Base MSRP: | N/A |
| GVW: | 0 |
| GCW: | 0 |

J.D. POWER
No Image Available

## J.D. POWER Commercial Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Wholesale | $98,000 | N/A | N/A | **$98,000** |
| Loan | $88,200 | N/A | N/A | **$88,200** |
| Retail | $126,400 | N/A | N/A | **$126,400** |

## Selected Options

| | Wholesale/Loan | Retail |
|---|---|---|
| Single/Nonreinforced Frame | w/body | w/body |
| 12000lb Front Axle/Susp | w/body | w/body |
| 38-42K Rear Axle/Susp | w/body | w/body |
| Highway Type Suspension | w/body | w/body |