```
 1                   UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
 2

 3   IN RE:                         .  Chapter 15
                                    .  Case No. 24-10632 (CTG)
 4   PRIDE GROUP HOLDINGS, INC., .
     et al.,                        .  (Jointly Administered)
 5                                  .
                                    .  Courtroom No. 7
 6                                  .  824 North Market Street
                                    .  Wilmington, Delaware 19801
 7       Debtors in a Foreign       .
         Proceeding.                .  Thursday, August 15, 2024
 8   . . . . . . . . . . . . . . .  .  2:00 p.m.

 9              TRANSCRIPT OF STATUS CONFERENCE HEARING
                BEFORE THE HONORABLE CRAIG T. GOLDBLATT
10                  UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   For the Debtors:         Derek Abbott, Esquire
                              Andrew Remming, Esquire
13                            MORRIS, NICHOLS, ARSHT
                                & TUNNELL LLP
14                            1201 North Market Street
                              16th Floor
15                            Wilmington, Delaware 19801

16                            Christopher Hunker, Esquire
                              LINKLATERS LLP
17                            1290 Avenue of the Americas
                              New York, New York 10104
18
     (APPEARANCES CONTINUED)
19
     Audio Operator:          Alyce Doody, ECRO
20

21   Transcription Company:   Reliable
                              The Nemours Building
22                            1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
23                            Telephone: (302)654-8080
                              Email: gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

```
 1  APPEARANCES (CONTINUED):

 2  For Mitsubishi HC
    Capital America:         Jared Roach, Esquire
 3                           REED SMITH LLP
                             Reed Smith Centre
 4                           225 Fifth Avenue
                             Pittsburgh, Pennsylvania 15222
 5
    For PACCAR:              Tina Moss, Esquire
 6                           PERKINS COIE LLP
                             1155 Avenue of the Americas
 7                           22nd Floor
                             New York, New York 10036
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1         (Proceedings commenced at 2:00 p.m.)
2              THE COURT:  Good afternoon, all.  This is Judge
3    Goldblatt.  We are on the record in In Re Pride Group
4    Holdings Inc., *et al.*, which is Case No. 24-10632.
5              We are proceeding this afternoon by way of Zoom.
6    Usual Zoom rules are in effect.
7              Why don't I just pass the virtual podium to
8    counsel for the foreign representative to take us through our
9    agenda for today.
10             MR. ABBOTT:  Thank you, Your Honor.  Derek Abbott
11   here of Morris Nichols. Here with me virtually, obviously, is
12   Chris Hunker from Linklaters and he will drive the matters
13   this afternoon, Your Honor.
14             THE COURT:  Okay.  Very well.  Thank you very
15   much, Mr. Abbott.
16             Mr. Hunker.
17             MR. HUNKER:  Good afternoon, Your Honor.
18   Christopher Hunker from Linklaters on behalf of the foreign
19   representative. I am joined today, obviously, by my friend
20   and colleague, Derek Abbott, from Morris Nichols and my
21   partner, Penelope Jensen.
22             Your Honor, we don't have any matters going
23   forward today, but we did want to take the opportunity today
24   to give the Court an update on the case given that its been a
25   few months since our recognition hearing.

1    Your Honor, over the last several months the
2 debtors have worked tirelessly to stabilize their businesses,
3 monetize assets, continue operations and explore pathways to
4 achieve a potential restructuring. Those efforts included
5 continuing to operate their trucks sale and lease businesses
6 in a very difficult market, selling multiple parcels of real
7 estate in the United States and Canada, negotiating a
8 restructuring plan with the group's creditors, negotiating
9 with various secured creditors regarding lift stay
10 stipulations that have been approved in Canada and,
11 obviously, in the United States.  Your Honor has seen a
12 number of those from us.
13    The debtors have also been working on
14 transitioning servicing and respective leases and assets
15 owned by certain securitization parties.  We thank Your Honor
16 for entering the order that you did earlier this week in that
17 regard.  The debtors are also focused on negotiating with
18 potential purchasers and the debtors creditors regarding a
19 potential going concern sale of the debtors logistics
20 business and are also working on effectuating a factoring
21 portfolio purchase transaction of certain of the debtors
22 Canadian receivables to generate necessary liquidity during
23 the case.
24    Your Honor, despite these and other positive
25 developments over the past few months these cases are now at

1  a critical juncture.  As set forth in the monitors letter,
2  which we filed at Docket No. 232, the debtors amended DIP
3  facility matured on July 31st, 2024 and was not extended by
4  the DIP agent and lenders.  However, the debtors did still
5  need liquidity to operate their businesses, so the debtors
6  quickly pivoted and filed a motion in the Canadian Court
7  seeking approval of certain aspects of a new non-binding DIP
8  facility term sheet with a third party lender and agent;
9  however, it became apparent at that hearing that the new
10 proposed DIP was not supported by the group's creditors and
11 so consideration of that new DIP term sheet was adjourned by
12 the Canadian Court.
13          The motion that the debtors filed in the Canadian
14 Court also sought approval to amend the governance protocol
15 to permit the debtors to use cash collateral in the form of
16 lease payments and soft corruptions on account of truck and
17 trailer leases received from the group's customers.  The
18 foreign representative is very pleased to report that the
19 debtors were able to reach consensus with all of their major
20 stakeholder groups with respect to amending the governance
21 protocol including short term use of cash collateral subject
22 to a budget and everyone's rights are reserved.  And the
23 Canadian Court entered an order granting that relief amending
24 governance protocol following a hearing that was held on
25 August 9th.

1     The debtors, in consultation with the monitor and
2 their chief restructuring officer have determined at this
3 point that the best path forward is likely an orderly
4 winddown of their operations and businesses for the benefit
5 of their creditors and stakeholders with the exception of the
6 logistics business which I mentioned earlier for which the
7 debtors are continuing to explore a potential going concern
8 sale of that business.
9     The debtors are also continuing to work with the
10 creditors over the next few weeks on a path forward. Notably,
11 at the hearing on August 9th, Justic Osborne, who is the
12 presiding justice of the primary CCAA proceedings in Canada,
13 noted that the parties -- and encouraged the parties to
14 potentially mediate their outstanding disputes with respect
15 to the path forward and the orderly winddown.  The debtors
16 are currently exploring, you know, that mediation path with
17 their stakeholders.
18     Since the hearing on August 9th the debtors have
19 continued to engage with many of their key stakeholders
20 including Mitsubishi and the existing DIP lenders.  The
21 debtors, along with the chief restructuring officer and the
22 monitor, have also been working diligently to produce a
23 consensual winddown budget to fund the orderly winddown of
24 the business if, indeed, that is the path that we are going
25 down.

1                While the debtors secured creditors are,
2  obviously, focused on obtaining the return of their
3  collateral there is definitely more work to be done to wind
4  down the business in an orderly fashion and agreeing upon a
5  consensual winddown budget is a big part of that, Your Honor.
6  The debtors are also continuing to progress other work
7  streams including the sale of their logistics business and
8  their real estate in Canada and the US.  Those efforts are
9  continuing.
10               The debtors hope to reach a consensual resolution
11 with respect to the path forward that will maximize
12 recoveries for creditors and we expect to be back before Your
13 Honor hopefully very soon with a further update once we have
14 clarity on the path forward.
15               Your Honor, in the Chapter 15 cases, as Your Honor
16 is aware, Mitsubishi filed an emergency motion for adequate
17 protection, but has agreed to adjourn the hearing on that
18 motion to September 12th at which time their stay relief
19 motion will also be heard.  We appreciate that Mitsubishi has
20 agreed to stand down on those motions for the time being, so
21 that its request for relief can be heard and adjudicated in
22 the proper order, that is first in the proceedings in Canada
23 where Mitsubishi has also filed a stay relief motion and then
24 in these ancillary Chapter 15 cases.
25

Case 24-10632-CTG    Doc 249    Filed 08/30/24    Page 8 of 15

8

1      We believe that the continued coordination and
2 proper sequencing of the relief being sought first in Canada
3 is really of paramount importance at this critical juncture
4 of the cases as we are trying to navigate a path forward, as
5 I mentioned, Your Honor, in a very difficult market and
6 difficult circumstances.
7      Again, we hope to have more clarity on the path
8 forward before we appear before you on September 12th.  We
9 will certainly keep the Court update on developments in the
10 meantime.  Happy to answer any questions Your Honor has;
11 otherwise, I am happy to turn it over to Mitsubishi's counsel
12 for the status conference on their stay relief motion.
13      THE COURT:  Mr. Hunker, thank you.  That update is
14 very helpful. I don't have my own questions, though that was
15 very helpful to understand. I confess, I hadn't entirely,
16 from the pleadings that had crossed my desk, fully had my
17 brain wrapped around the status of the proceedings in Canada.
18 And as you say, it seems to me that anything that comes up
19 before me is, in a very substantial part, derivative of what
20 happens there so that context was extremely helpful.  So,
21 thank you for that.
22      Mr. Roach, I see you have turned your camera on.
23 Let me give you the chance to be heard.
24      MR. ROACH:  Thank you, Your Honor. Jared Roach
25 with Reed Smith on behalf of Mitsubishi.  Your Honor, we did

1  file my pro hac motion, I believe, on Monday afternoon. I
2  just wanted to make that clear.
3              Your Honor, we're here, as Mr. Hunker said, and
4  appreciate his introduction on a status conference on
5  Mitsubishi's relief from say motion which is filed at Docket
6  No. 216 and will be heard on September 12th along with
7  Mitsubishi's adequate protection motion.  So, to be clear,
8  today is not the day to make any decisions on the merits and
9  Mitsubishi does not seek any relief from Your Honor today.
10             Mr. Hunker also mentioned that there is similar
11 relief that is being sought and will be heard currently on
12 September 3rd in the CCAA proceedings.  So, we have got
13 roughly a month here.  Many things may change including what
14 we bring to Your Honor on September 12th depending on how all
15 the parties work together in this intervening period.
16             I just briefly wanted to set the stage for the
17 basis of the stay relief motion including why Mitsubishi
18 believes that there is precedent for Your Honor to make some
19 decisions independent of what happens in the CCAA Court
20 especially as it relates to adequate protection which, again,
21 is not up for hearing today.  Our motion for relief from stay
22 seeks relief based on US collateral with 635 VINS that are in
23 the United States from the US entity that is Pride Truck,
24 which is not a CCAA applicant.  And on behalf of the US based
25 financing party, that is my client Mitsubishi.

1           THE COURT:  Mr. Roach, hold on.  I apologize for
2  interrupting, but I do want to make sure I understand this.
3  Is there any entity that is before me, hold aside the Chapter
4  7 cases that I have.  If there is an entity that is an
5  affiliate of the debtors that is not a CCAA applicant are
6  such debtors -- are there Chapter 15 cases pending with
7  respect to entities that aren't debtors in Canada.
8           MR. ROACH:  I believe there would be a covered
9  entity.
10          THE COURT:  Okay.  So, there is an order I entered
11 that grants certain protection to them but they don't have
12 the automatic stay, literally, that Chapter 15 provides. I
13 just want to make sure that I've got the right framework.
14 So, apologies for the need for remedial help here, I just
15 want to make sure I'm getting it.
16          MR. ROACH:  Your Honor, I appreciate the
17 interruptions.  There are two entities with which Mitsubishi
18 is a financing party.  They are both limited partners. One
19 relates to securitization assets not at issue now and not on
20 the 12th to be very candid as well.  The other is just a
21 limited partnership which I believe has coverage and then we
22 have also negotiated in the final -- in the recognition
23 order, you know, to seek relief from stay adequate
24 protection, certain negotiations that Mitsubishi and other
25

1  lenders, I believe, have with the debtors leading to the
2  entry of those final orders.
3              THE COURT:  Okay.  Thank you.  This is helpful.
4              MR. ROACH:  Thank you, Your Honor.  As Mr. Hunker
5  noted, and I think parties on the line would admit, these
6  cases are now trending very quickly towards liquidation and
7  whether that is an orderly liquidation with a newly proposed
8  DIP lender that would layer another $50 million of priming
9  debt on these debtors or whether it takes some other form
10 still to be negotiated.  And Mr. Hunker is correct, I know
11 Mitsubishi had a call in Canada or our counsel did with
12 various parties. So, there are ongoing discussions.
13             Clearly, these are liquidations. There is no
14 reorganization here.  So, the debtors have no equity in the
15 collateral, Mitsubishi's collateral, and, indeed, we believe
16 the collateral is depreciating at nearly five percent per
17 month or equivalent of nearly $2.5 million which is causing
18 real harm to Mitsubishi's collateral.  Mitsubishi will bear
19 the cost of getting -- picking up its collateral, dealing
20 with its UCC rights and remedies and removing this for the
21 debtor.
22             Finally, you know, we believe the debtors have not
23 and cannot, given their current cash situation, offer
24 adequate protection and the stay relief here is our form of
25 adequate protection.  So, again, we appreciate the Court's

1  time.  This was by way of update to sort of set the stage for
2  the 12th.  The parties, we have maintained a relationship
3  with Mr. Hunker. We will continue to discuss and we may bring
4  some sort of resolution to Your Honor on or before the 12th
5  as many other parties, but that is where things currently
6  stand.
7      THE COURT:  So, that is helpful. So, I think I get
8  the state of play. It seems to me I should have, at least in
9  the first instance, wait and see what happens in Canada and
10 what you bring me.  Based on whatever dispute, if any, is
11 before me then I will then be in a position to sort through
12 it and try to do my best to get it right.
13     MR. ROACH:  We appreciate your time, Your Honor.
14     THE COURT:  Okay.  Very well. Is there any other
15 party in interest that would like to be heard with respect to
16 the state of play more broadly?
17     Ms. Moss.
18     MS. MOSS:  Good afternoon, Your Honor.  Tina Moss,
19 Perkins Coie, on behalf of PACCAR Financial.  My Delaware
20 counsel, also Mr. DeBaecke, is on the line as well today.
21     Your Honor, we would just like to preview for the
22 Court that PACCAR Financial is similarly situated to
23 Mitsubishi, has similar issues with respect to about 253
24 vehicles that are located in the United States as well and
25 that although there are a lot of moving parts going on right

1   now in Canada and things may change from day to day, it is
2   our expectation that should we find ourselves remaining in
3   the current situation and not being able to recover PACCAR's
4   vehicles that we may also be filing a motion for relief from
5   stay before Your Honor. PACCAR also has a pending motion in
6   Canada which is scheduled to be heard on September 3rd.
7              Your Honor, we wanted to let you know that that
8   may be coming and would try to have that heard as well on the
9   12th if possible.
10             THE COURT:  Okay.  I appreciate that update.
11             Is there any other party that would like to be
12  heard with respect to the broader status?
13        (No verbal response)
14             THE COURT:  Mr. Hunker, anything else that we
15  should share from the perspective of the foreign
16  representative?
17             MR. HUNKER:  No, nothing further at this time.  We
18  thank the Court for your time today.  Again, we will keep the
19  Court updated of any developments between now and the
20  currently scheduled hearing on September 12th.
21             THE COURT:  Thank you.  Let me thank all of the
22  parties.  It is true that there have been several months and
23  a number of pleadings.  This was very helpful to bring me up
24  to speed on the state of play. I confess I hadn't' fully
25  grasped the status. I guess that is the nature of presiding

1  over a case where the main action is happening somewhere else
2  but understanding that this is very helpful.  So, I very much
3  appreciate that.
4          Mr. Abbott, I see you have turned on your camera.
5  Should I give you the chance to be heard?
6          MR. ABBOTT:  No, Your Honor.  Just wanted to say
7  thank you for the Court's time and we will be in touch as
8  appropriate.
9          THE COURT:  Wonderful.  Thanks again to all of
10 you. I do appreciate the update.  We will stand by and if we
11 can be of use you all know how to find us.  With my thanks we
12 are adjourned.
13       (Proceedings concluded at 2:16 p.m.)

```
 1                         CERTIFICATION
 2           I certify that the foregoing is a correct
 3  transcript from the electronic sound recording of the
 4  proceedings in the above-entitled matter to the best of my
 5  knowledge and ability.
 6
 7  /s/ William J. Garling                 August 28, 2024
 8  William J. Garling, CET-543
 9  Certified Court Transcriptionist
10  For Reliable
```