## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>Pride Group Holdings Inc., *et al.*[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 24-10632 (CTG)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>**October 15, 2024 at 11:30 a.m. (ET)**<br><br>**Objection Deadline:**<br>**October 8, 2024 at 4:00 p.m. (ET)** |

## MOTION OF THE FOREIGN REPRESENTATIVE
## FOR ENTRY OF AN ORDER (I) ENFORCING THE
## PGL VESTING ORDER AND (II) GRANTING RELATED RELIEF

Randall Benson, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors"),[2] in the Canadian proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"), respectfully submits this motion (the "Motion") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, granting relief under section 1521(a)(7) of Title 11 of the United States Code (the "Bankruptcy Code").

---

[1]    The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

[2]    The term "Debtors" does not include: 1000089137 Ontario Inc., DVP Holdings, Corp., Parker Global Enterprises, Inc., Parker Transport Co., and Arnold Transportation Services, Inc. (collectively, the "Arnold Entities").

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference* from the United States District Court for

the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2)(P).

2.      Venue is proper in this Court and this District pursuant to 28 U.S.C. § 1410.

3.      The Foreign Representative, in his capacity as authorized foreign representative,

has properly commenced these chapter 15 cases pursuant to sections 1504, 1509, and 1515 of the

Bankruptcy Code and rules 2002 and 9007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

4.      The statutory predicates for the relief requested herein are section 105(a) and 1521

of the Bankruptcy Code.

## BACKGROUND

**I.      Commencement of the CCAA Proceedings and the Chapter 15 Cases**

5.      The Debtors and certain of their non-Debtor affiliates (collectively, the "Pride

Group")[3] operate a trucking and logistics conglomerate based in Canada with operations in Canada

and the United States.  The Pride Group's businesses are managed from their headquarters in

Mississauga, Ontario, and they maintain facilities and operations in both Canada and the United

States.  The Pride Group owns substantial assets located within the territorial jurisdiction of the

---

[3]    As used herein, "Pride Group" includes: (i) each of the "Applicants" listed in Schedule "A" to the PGL Vesting
Order (as defined below); (ii) Pride Truck Sales L.P., TPine Leasing Capital L.P., and Sweet Home Hospitality
L.P. ((i) and (ii) together, the "Pride Entities"); and (iii) Block 6 Holding Inc., 2500819 Ontario Inc., Pergola
Holdings, Corp., and Pride Global Insurance Company Ltd.  Further, as noted in the Recognition Order (as defined
below), the Foreign Representative is not seeking relief with respect to the Arnold Entities.  As a result, the terms
"Pride Group" and "Pride Entities" do not include the Arnold Entities.

United States, including, among other things, real estate properties, bank accounts, equipment, and trucks.

6.      On March 27, 2024, the Debtors commenced the CCAA Proceedings in the Canadian Court, and the Canadian Court issued the initial order on the following day (the "Initial Order") authorizing, among other things, Randall Benson of RC Benson Consulting Inc. to act as the Foreign Representative and file these chapter 15 cases (collectively, the "Chapter 15 Cases").

7.      On April 1, 2024 (the "Petition Date"), and on April 15, 2024, the Foreign Representative filed petitions for the Pride Group's Canadian and U.S. operating companies, single-asset real estate holding companies, and non-real estate holding companies (the "Petitions"), thereby commencing the Debtors' Chapter 15 Cases.  Also on the Petition Date, the Foreign Representative filed the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 2] (the "Verified Petition") seeking, among other things, recognition of the CCAA Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code and certain related relief.

8.      On April 23, 2024, the Debtors filed an amended Verified Petition [D.I. 121] (the "Amended Verified Petition, and together with the Petitions, the "Chapter 15 Petitions") seeking, among other things, recognition of the CCAA Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code, enforcement of the A&R Initial Order in the United States on a final basis, and related relief.

9.      On April 30, 2024, the Arnold Entities (except for 1000089137 Ontario Inc.) filed cases under chapter 7 of the Bankruptcy Code pending in the United States Bankruptcy Court for the District of Delaware.[4]    As described in the Amended Verified Petition, the Foreign

---

[4]    *See In re Arnold Transportation Services, Inc.*, Case No. 24-10928 (CTG) (Bankr. D. Del. 2024); *In re DVP Holdings Corp.*, Case No. 24-10931 (CTG) (Bankr. D. Del. 2024); *In re Parker Global Enterprises, Inc.*, Case

Representative is not seeking further relief with respect to the Arnold Entities in these Chapter 15 Cases.

10.     On May 2, 2024, the Court entered an order [D.I. 152] (the "<u>Recognition Order</u>") granting recognition of the CCAA Proceedings and the related relief sought in the Chapter 15 Petitions, including, among other things, extending the relief granted in the Court's *Order Granting Provisional Relief in Connection with Debtors-In-Possession Financing and Certain Protocols Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 110] (the "<u>Second Provisional Relief Order</u>") on a final basis.

## II.     The PGL Assets and PGL Sale Process

11.     On May 15, 2024, the Debtors filed a motion in the CCAA Proceedings, seeking, among other things, an order approving a sale and marketing process (the "<u>PGL Sale Process</u>") for the Pride Group's logistics, brokerage, and delivery businesses and related assets (the "<u>PGL Assets</u>").   These businesses are operated by the Pride Group through Debtors Pride Group Logistics Ltd., Pride Group Logistics USA, Co., Pride Group Logistics International Ltd., 12944154 Canada Inc. and 933 Helena Holdings Inc., and non-Debtor Pride Group Insurance Company Ltd. (collectively, the "<u>PGL Entities</u>").   On the same day, the Canadian Court held a further hearing and granted an order approving the PGL Sale Process (the "<u>PGL Sale Process Order</u>").

12.     The PGL Assets consist of approximately 1,459 trucks and trailers (of which approximately (i) 1,383 are owned directly by the PGL Entities and (ii) 76 are owned by Debtor Tpine Leasing Capital Corporation).   Approximately 1,068 of those trucks are in active transit with

---

No. 24-10929 (CTG) (Bankr. D. Del. 2024); *In re Parker Transport Co.*, Case No. 24-10930 (CTG) (Bankr. D. Del. 2024).

customer orders at any given time.  The PGL Entities also employ approximately (i) 110 office staff (including subcontractors) to manage their logistics operations and (ii) 95 drivers. Further, the PGL Entities' operations also include approximately (i) 120 driver subcontractors through agencies, (ii) 140 owner-operator drivers, and (iii) 75 drivers through four partner carriers. Overall, the PGL Entities' business operations include over 500 individuals as drivers or office staff.

13.     In accordance with the PGL Sale Process Order, the Debtors' Canadian Court-appointed monitor (in such capacity, the "Monitor"), in consultation with the Debtors' chief restructuring officer (the "CRO"), prepared a list of potential bidders for all or part of the PGL Assets pursuant to the PGL Sale Process, including (i) parties that had approached the PGL Entities, any other members of the Pride Group, or the Monitor and (ii) strategic and financial parties that the Monitor identified as potential bidders.  Further, the Monitor, in consultation with the CRO, prepared: (i) a letter summarizing the PGL Sale Process and inviting interested parties to express their interest in the PGL Assets and (ii) a non-disclosure agreement in form and substance satisfactory to the CRO, Monitor and the PGL Entities and their respective counsel, each of which the Monitor caused to be distributed to potential bidders on the PGL Assets.

14.     As summarized in the Twelfth Report of the Monitor, dated August 6, 2024, attached hereto at **Exhibit B** (the "Twelfth Report"), and as set forth in the table below, after extensive marketing efforts undertaken by EY's Corporate Finance Group, including calls, discussions, and email exchanges with various parties that expressed interest, three offers were received for the PGL Assets.  Of the three offers received, one was for the purchase of certain trailers and a pool of certain customers, and two were for the PGL Entities' business as a going concern but one was significantly lower in value than the highest and best offer submitted by

1000927605 Ontario Inc. (the "Purchaser") to purchase the PGL Entities' business as a going concern, which was ultimately selected as the successful bid.

15.    The following table summarizes the outcome of the PGL Sale Process:

| Outreach Summary | Canada | | US | Total |
|---|---|---|---|---|
| | Tier 1 | Tier 2 | Tier 1 | |
| Parties Contacted | 21 | 25 | 25 | 71 |
| Declined Pre-NDA | 7 | 3 | 11 | 21 |
| No Response | 4 | 11 | 11 | 26 |
| NDA Signed & Info Received | 10 | 11 | 3 | 24 |
| Management Meeting / Site Visit | 1 | - | 1 | 2 |
| Declined Post-NDA | 8 | 4 | 2 | 14 |
| Offers Submitted | 1 | 2 | - | 3 |
| No Bid but No Formal Decline | 1 | 5 | 1 | 7 |

16.    The Purchaser is a company owned and controlled by certain members of the Johal family, who are the ultimate direct and indirect owners of the Pride Entities. Because the Purchaser is a related party of the Pride Entities, the negotiations and discussions with the Purchaser and its counsel have been conducted by the Monitor and its counsel, EY's Corporate Finance Group, and the CRO, without the involvement of the Pride Group's counsel. Similarly, no direct or indirect shareholder, Johal family member or member of senior management of the Pride Group was given access to, or information about, any bids submitted in the PGL Sale Process.

17.    Several rounds of negotiations between the Monitor and the Purchaser culminated in the final sale agreement, dated September 22, 2024 (the "PGL Sale Agreement"), attached to the Third Supplement to Fourteenth Report of the Monitor, dated September 23, 2024 (the "Fourteenth Report"), attached hereto as **Exhibit C**.  Under the terms of the PGL Sale Agreement, the Pride Entities agreed to sell and the Purchaser agreed to purchase in exchange for the purchase price of CAD$52,458,838 (subject to closing adjustments) (the "Purchase Price"), among other things, (a) substantially all of the tangible and intangible assets, undertakings and properties owned

by the PGL Vendors,[5] (b) certain vehicles owned by Debtor Tpine Leasing Capital Corporation, (c) the option to purchase all rights, titles and interests in and to the real property owned by the Optional Vendors,[6] subject to (i) the approval of the Monitor, and (ii) the consent of (x) the mortgage lenders to each of the mortgaged real property owned by the applicable Optional Vendors to the assignment of the existing mortgages to the Purchaser, and (y) Royal Bank of Canada, in its capacity as administrative agent and collateral agent under the Syndicated Facility (as defined in the Recognition Order) (collectively, the "Purchased Assets").

18.     The Purchased Assets that are located in the territorial jurisdiction of the United States (the "Purchased U.S. Assets") consist of a subset of the (i) Acquired AR Amount, (ii) Tangible Property and (iii) Intangibles (each as defined in the PGL Sale Agreement), which in the aggregate comprise less than US$1,000,000 of the Purchase Price.  Pursuant to the procedures set forth in the *Order (I) Approving the Sale Procedures and Sale Notice, (II) Authorizing the Sale of the Debtors' U.S. Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (III) Granting Related Relief* [D.I. 197] (the "Sale Procedures Order") entered by this Court, the Foreign Representative intends to seek authority from this Court to consummate the sale of the Purchased U.S. Assets and obtain relief under section 363 of the Bankruptcy Code for the sale of the Purchased U.S. Assets.

## III.    The PGL Vesting Order

19.     On September 3, 2024, the Debtors filed a motion in the CCAA Proceedings seeking, among other things, approval of the transactions contemplated by the PGL Sale

---

[5]   As used herein, the "PGL Vendors" include Pride Group Logistics Ltd., Pride Group Logistics USA, Co., Pride Group Logistics International Ltd., Pride Fleet Solutions Inc., Pride Fleet Solutions USA Inc., and 2029909 Ontario Inc.

[6]   As used herein, the "Optional Vendors" include 12944154 Canada Inc., 13184633 Canada Inc., and 2837229 Ontario Inc.

Agreement (the "PGL Sale Motion").  At the hearing held on September 3, 2024, the Canadian Court directed the affected parties to mediation on September 9-10, 2024.  As a result of the mediation, the open issues among the affected parties were narrowed but not completely resolved. On September 24, 2024, the Canadian Court held a further hearing on the PGL Sale Motion at which all interested parties had the opportunity to appear and object.  Several parties appeared at the hearing and lodged objections to the approval of the PGL Sale Motion.  Following that hearing, on September 24, 2024, the Canadian Court issued an endorsement, attached hereto as **Exhibit D**, approving the PGL Sale Motion and the transactions contemplated by the PGL Sale Agreement (the "PGL Sale Endorsement"). The Canadian Court has not yet granted the order (the "PGL Vesting Order") in accordance with, and as contemplated by, the PGL Sale Endorsement. The Foreign Representative intends to supplement this Motion by filing the as-granted PGL Vesting Order shortly after it is granted by the Canadian Court.

20.     The Debtors will not be able to consummate the transactions contemplated by the PGL Sale Agreement until the conditions precedent thereto are satisfied, which include entry of an order by this Court enforcing the PGL Vesting Order in the territorial jurisdiction of the United States.  As such, the Pride Group urgently requires the relief requested herein.

## IV.     Impact of the PGL Sale Agreement

21.     As set out in the Fourteenth Report, the Monitor supports the going-concern sale of the PGL Assets as contemplated under the PGL Sale Agreement because: (i) the sale provides a higher recovery than the alternative liquidation scenario; (ii) the sale provides for the purchase of substantially all of the PGL Assets, including trucks, trailers, inventory and accounts receivable (except for accounts receivable owed to any PGL Vendor or its subsidiaries by any member of the Pride Entities that is not a PGL Vendor) on an as-is, where-is basis; (iii) the Purchase Price was the result of a thorough and comprehensive sales process, on terms and conditions approved by

the Canadian Court; (iv) the sale contemplates the continuing employment and preservation of over 500 employees and independent contractors; (v) the closing and post-closing adjustments regarding assumed liabilities and other assets are limited and rational; (vi) the Real Estate Option (as defined in the PGL Sale Agreement) appropriately balances the Purchaser's need for real property to conduct the PGL Entities' business, with the mortgagee's rights to consent to a sale of such real property pursuant to existing Canadian Court orders; and (vii) the alternative is a liquidation that would result in the loss of over 500 jobs and would be expensive, time-consuming, value destructive and logistically difficult to implement, to the detriment of the Pride Group and its stakeholders.

22.     Moreover, the Pride Group is concurrently engaged in negotiating a global wind down plan for its remaining businesses apart from the PGL Entities (the "Wind Down Plan"). The current Wind Down Plan contemplates a total cost of CAD$40 million, but that figure is dependent upon consummation of the sale of the PGL Assets as contemplated under the PGL Sale Agreement. If the PGL Sale Agreement is not consummated, then the Monitor and CRO will need to re-evaluate the Wind Down Plan, which will in all likelihood be more costly to the detriment of creditors.

## RELIEF REQUESTED

23.     By this Motion, the Foreign Representative seeks entry of the Proposed Order enforcing the PGL Vesting Order in the United States, and granting such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF REQUESTED

24.     Upon recognition of a foreign proceeding, section 1521(a) of the Bankruptcy Code authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of

the debtor or the interests of the creditors."  Such relief may include "granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) of the Bankruptcy Code."  11 U.S.C. § 1521(a)(7).  The Court may grant relief under section 1521(a) of the Bankruptcy Code if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).

25.     As set out in the Fourteenth Report, the Monitor and its advisors have determined that the transactions contemplated by the PGL Sale Agreement will provide a higher recovery than an alternative liquidation scenario. The PGL Sale Agreement was the result of a competitive and thorough sale process that yielded a Purchase Price that maximizes the available value distributable to the Pride Group's stakeholders.  Accordingly, it is in the best interests of the Pride Group, the PGL Entities, and other parties in interest to effectuate the sale of the PGL Assets under the PGL Sale Agreement given that the alternative is a value-destructive wind-down that will result in the loss of approximately 500 jobs and potentially jeopardize the global wind down of the Pride Group.

26.     Further, the relief sought in the PGL Vesting Order generally comports with U.S. due process standards.  On notice to creditors, the Canadian Court reviewed the proposed PGL Vesting Order, held a hearing, and all creditors and other parties had a full and fair opportunity to participate.  By granting the relief requested herein, the Court would enforce the PGL Vesting Order on a coextensive basis in the United States, which will allow the Pride Group to sell the Purchased Assets and use the proceeds thereof to effectuate the Wind Down Plan in accordance with the budget and timetable contemplated therein.

27.     Granting the requested relief is also in the public interest because it will facilitate the Foreign Representative's efforts to complete a court-supervised going concern sale for the benefit of all creditors and other stakeholders (including those in the United States).  Additionally,

granting the relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15 of the Bankruptcy Code. *See* 11 U.S.C. § 1501(a).

28.     For those reasons, the Foreign Representative respectfully submits that the relief requested herein is authorized under section 1521(a) of the Bankruptcy Code and should be approved.

## NOTICE

29.     The Foreign Representative has provided notice of this Motion consistent with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). The Foreign Representative submits that such notice is sufficient in view of the facts and circumstances, and no other or further notice need be provided.

*[Remainder of page left intentionally blank]*

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit A**, granting the requested relief and such other and further relief as may be just and proper.

<table>
<tr>
<td>Dated: October 1, 2024<br>Wilmington, Delaware</td>
<td>

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Austin T. Park*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Clint M. Carlisle (No. 7313)
Austin T. Park (No. 7247)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dabbott@morrisnichols.com
     aremming@morrisnichols.com
     ccarlisle@morrisnichols.com
     apark@morrisnichols.com

- and -

**LINKLATERS LLP**

Penelope J. Jensen, Esq. (admitted *pro hac vice*)
Christopher J. Hunker, Esq. (admitted *pro hac vice*)
Clark L. Xue, Esq.
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 903-9000
Facsimile: (212) 903-9100
Email: penelope.jensen@linklaters.com
     christopher.hunker@linklaters.com
     clark.xue@linklaters.com

*Attorneys for the Foreign Representative*

</td>
</tr>
</table>