# EXHIBIT A

**PGL Vesting Order**

Court File No.: CV-24-00717340-00CL

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | THURSDAY, THE 26th |
| | ) | |
| JUSTICE OSBORNE | ) | DAY OF SEPTEMBER, 2024 |

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF PRIDE GROUP HOLDINGS INC. AND THOSE APPLICANTS LISTED ON SCHEDULE "A" HERETO (each, an "Applicant", and collectively, the "Applicants")**

**ORDER**
**(Approval and Vesting - PGL)**

**THIS MOTION**, made by Applicants pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. c-36, as amended (the "**CCAA**") for an order, among other things, approving the sale transaction (the "**Transaction**")[1] contemplated by an Amended and Restated Purchase Agreement dated as of September 22, 2024 (the "**Purchase Agreement**") between Pride Group Logistics Ltd., Pride Group Logistics USA, Co., Pride Group Logistics International Ltd., Pride Fleet Solutions Inc., Pride Fleet Solutions USA Inc., 2029909 Ontario Inc., 12944154 Canada Inc., 13184633 Canada Inc., 2837229 Ontario Inc., 2043002 Ontario Inc. and TPine Leasing Capital Corporation, as vendors (collectively, the "**Vendors**"), and 1000927605 Ontario Inc., as purchaser (the "**Purchaser**"), attached to the Third Supplement to the Fourteenth Report of the Monitor, dated September 23, 2024 (the "**Third Supplementary Report**") as Appendix "A", and vesting in the Purchaser all of the Vendors' right, title

---

[1] For greater certainty, "Transaction" shall not include any transaction(s) contemplated by the Real Property Option (as defined in the Sale Agreement) which option and the exercise of same remain open in accordance with and subject to the terms of the Sale Agreement and which transaction(s) remain subject to Court approval.

1415-2696-3471.6

and interest in and to the Purchased Assets (as defined in the Purchase Agreement), was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of Randal Benson sworn August 27, 2024 and the Exhibits thereto (the "**Benson Affidavit**"), the Fourteenth Report of Ernst & Young Inc. dated August 28, 2024 (the "**Fourteenth Report**"), the Supplement to the Fourteenth Report of Ernst & Young Inc., dated September 2, 2024, and the Third Supplementary Report, each issued by Ernst & Young Inc. in its capacity as court-appointed monitor (in such capacity, the "**Monitor**"), and on hearing the submissions of counsel for the Applicants and the limited partnerships listed in **Schedule "A"** hereto (collectively with the Applicants, the "**Pride Entities**"), the Monitor and the Purchaser, and such other counsel as listed on the Participant Information Form, with no one else appearing although properly served as appears from the affidavits of service and lawyers certificates of service, filed,

**DEFINITIONS**

1. **THIS COURT ORDERS** that capitalized terms used but not defined in this Order shall have the meanings given to them in the Purchase Agreement or the Fourteenth Report, as the case may be.

**APPROVAL OF TRANSACTION**

2. **THIS COURT ORDERS AND DECLARES** that the Transaction is hereby approved, and the execution of the Purchase Agreement by the Vendors is hereby authorized and approved, with such minor amendments as the Vendors and the Purchaser, with the consent of the Monitor, may deem necessary or as the Purchase Agreement may permit in accordance with its terms. The Vendors and the Monitor are hereby authorized and directed to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the Transaction and for the conveyance of the Purchased Assets to the Purchaser.

3. **THIS COURT ORDERS AND DECLARES** that this Order shall constitute the only authorization required by the Monitor and Vendors to proceed with the Transaction and that no shareholder, partner, or other approvals shall be required in connection therewith.

4. **THIS COURT ORDERS AND DECLARES** that upon the delivery of a certificate by the Monitor to the Vendors and the Purchaser or their respective counsel substantially in the form attached as **Schedule "B"** hereto (the "**Monitor's Certificate**"), all of the Vendors' right, title and interest in and to the Purchased Assets (which for greater certainty shall not include the Excluded Assets listed on Schedule "B" to the Purchase Agreement or the Excluded Contracts listed on Schedule "E" to the Purchase Agreement) shall vest absolutely in the Purchaser, free and clear of and from any and all security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts, or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, rights of distraint, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise (collectively, the "**Claims**") including, without limiting the generality of the foregoing: (i) any encumbrances or charges created by the Second ARIO or any other Order made in these CCAA Proceedings, including, without limitation, the Administration Charge, Intercompany Advances Charge, DIP Lenders' Charge and the Directors' Charge (as each of those terms are defined in the Second ARIO); (ii) all charges, security interests or claims evidenced by registrations pursuant to the *Personal Property Security Act* (Ontario) or any other personal property registry system in Canada or the United States and all Encumbrances (as defined in the Purchase Agreement) (all of which are collectively referred to as the "**Encumbrances**", which term shall not include the Permitted Encumbrances listed on Schedule "C" to the Purchase Agreement) and, for greater certainty, this Court orders that all of the Encumbrances affecting or relating to the Purchased Assets are hereby expunged and discharged as against the Purchased Assets.

5. **THIS COURT ORDERS** that upon the issuance of the Monitor's Certificate, any of the Vendors, the Purchaser or the Monitor, shall be authorized to take all such steps as may be necessary to effect the discharge of all Encumbrances registered against the Purchased Assets (including by filing such financing change statements in the Ontario Personal Property Registry (or any analogous legislation as may be necessary) provided that the Vendors, the Purchaser and the Monitor shall not be authorized to effect any discharge that would have the effect of releasing any Encumbrances against any property other than the Purchased Assets.

6. **THIS COURT ORDERS AND DIRECTS** that the Cash Purchase Price (as adjusted pursuant to the Purchase Agreement) shall be paid to the Monitor on Closing, and held in trust by the Monitor pending further order of the Court.

7. **THIS COURT ORDERS** that for the purposes of determining the nature and priority of Claims, the net proceeds from the sale of the Purchased Assets shall stand in the place and stead of the Purchased Assets, in accordance with and based on the allocations set out in the Allocation Statement, without prejudice to a subsequent determination by the Court as to the quantum of any claims, distributions and priority in respect of proceeds, and that from and after the delivery of the Monitor's Certificate, all Claims and Encumbrances shall attach to the net proceeds from the sale of the Purchased Assets with the same priority as they had with respect to the Purchased Assets immediately prior to the sale, as if the Purchased Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the sale.

8. **THIS COURT ORDERS AND DIRECTS** the Monitor to file with the Court a copy of the Monitor's Certificate, forthwith after delivery thereof.

9.      **THIS COURT ORDERS** that the Monitor may rely on written notice from the Vendors and the Purchaser or their respective counsel regarding fulfillment of the conditions to Closing under the Purchase Agreement and shall incur no liability with respect to the delivery of the Monitor's Certificate.

10.     **THIS COURT ORDERS** that nothing herein shall amend, modify or vary in any way the Order Re Regions Surrendered Vehicles dated June 27, 2024, or the Order Re Additional Regions Vehicles dated July 16, 2024 (together, the "**Regions Surrendered Vehicles Orders**"), and, for certainty, nothing herein applies to any of the trucks, trailers or other motor vehicles subject to the Regions Surrendered Vehicles Orders. In the event of any conflict between the terms of this Order and the Regions Surrendered Vehicles Orders, the Regions Surrendered Vehicles Orders shall govern.

11.     **THIS COURT ORDERS** that notwithstanding anything in this Order or in the Purchase Agreement, no "Securitization Party Assets" (as defined in the Second Amended and Restated Initial Order of Mr. Justice Osborne, dated May 6, 2024 (the "**ARIO**")) that are not "Multiple Collateral Vehicles" (as defined in the Entitlement Claims Process Order of Mr. Justice Osborne, dated June 14, 2024) that are specifically listed on Schedule "G" of the Purchase Agreement as included as Appendix "A" of the Third Supplementary Report shall be sold, conveyed, or otherwise transferred, without the prior written consent of the Securitization Party (as defined in the ARIO) with an interest in such Securitization Party Asset being delivered to the Monitor.

12.     **THIS COURT ORDERS** that upon the issuance of the Monitor's Certificate, (a) each Permit Vendor and each Related Party Landlord shall be subject to the exclusive governance and control of the CRO and/or the Monitor, (b) except by further Court order, sought on not less than 10 calendar days notice to the Purchaser, no Permit Vendor shall be bankrupt, dissolved or otherwise wound-up prior to the earlier of (i) the date that all Permits are irrevocably transferred to the Purchaser, (ii) the date that the Purchaser advises the CRO and the Monitor in writing that it does not require the irrevocable transfer of the Permits

1415-2696-3471.6

to the Purchaser, and (iii) March 31, 2025, and (c) except by further Court order, sought on not less than 10 calendar days notice to the Purchaser, no Related Party Landlord shall be bankrupt, dissolved or otherwise wound-up prior to the date that the lease, access agreement or parking agreement to which the Related Party Landlord is a party is terminated.

13.     **THIS COURT ORDERS** that nothing in this Order, and nothing done by the Monitor or the CRO in carrying out their control of the Permit Vendors and Related Party Landlords as prescribed in Paragraph 12 hereof, shall result in, or be deemed to result in, the Monitor or CRO being an employer, successor employer, responsible person, operator, officer, director, employee, receiver, trustee, assignee, liquidator, administrator, legal representative, receiver-manager or agent of any Permit Vendor or Related Party Landlord, in each case, within the meaning of any statute, regulation or rule of law, or equity, for any purpose whatsoever.

14.     **THIS COURT ORDERS** that, without limiting Paragraph 13 hereof, the Monitor and CRO shall not, as a result of this Order, or anything done pursuant to Paragraph 12 hereof, be deemed to occupy or to take control, care, charge, possession or management of any of the property of any Permit Vendor or Related Party Landlord that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination; provided however, if the Monitor or CRO is nevertheless found to be in possession of any property of any Permit Vendor or Related Party Landlord, then the Monitor and CRO, as applicable, shall be deemed to be a person who has been lawfully appointed to take, or has lawfully taken, possession or control of such property for the purposes of section 14.06(1.1)(c) of the BIA, and shall be entitled to the benefits and protections in relation to the applicable Permit Vendor or Related Party Landlord and such property, as provided by section 14.06(2) of the BIA to a "trustee" in relation to an insolvent person and its property.

1415-2696-3471.6

15. **THIS COURT ORDERS** that, in addition to the rights and protections afforded to the Monitor and CRO under the CCAA, any order granted in these CCAA proceedings, as an officer of this Court or otherwise at law, the Monitor, CRO and their respective legal counsel shall continue to have the benefit of all of the indemnities, charges, protections and priorities as set out in the Second ARIO and any other Order of this Court and all such indemnities, charges, protections and priorities shall apply and extend to the Monitor and CRO in the fulfillment of their duties, carrying out the provisions of this Order and exercising any powers granted to them hereunder. Nothing in this Order shall derogate from the powers of the Monitor as provided in the CCAA, the Second ARIO and the other Orders of this Court in the CCAA proceedings. Without limiting the generality of the foregoing, in exercising any powers granted to it hereunder: (a) the Monitor and CRO shall be entitled to rely on the Permit Vendors' and Related Party Landlords' books and records without independent investigation; and (b) the Monitor and CRO shall incur no liability or obligation as a result of exercising the powers granted to it under Paragraph 12 hereof, save and except for any gross negligence or wilful misconduct on their part, and the Monitor and CRO shall not have any liability with respect to any losses, claims, damages or liabilities, of any nature or kind in relation to the exercise of their powers under Paragraph 12 hereof, to any person from and after the date of this Order, save and except to the extent such losses, claims, damages or liabilities result from gross negligence or wilful misconduct on their part.

16. **THIS COURT ORDERS** that, notwithstanding:

    (a)   the pendency of these CCAA Proceedings;

    (b)   any applications for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act* (Canada) (the "**BIA**") in respect of any of the Vendors and any bankruptcy order issued pursuant to any such applications; and

    (c)   any assignment in bankruptcy made in respect of any of the Vendors;

1415-2696-3471.6

the vesting of the Purchased Assets in the Purchaser pursuant to this Order shall be binding on any trustee in bankruptcy that may be appointed in respect of the Vendors and shall not be void or voidable by creditors of the Vendors, nor shall it constitute nor be deemed to be a fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transaction under the BIA or any other applicable federal or provincial legislation, nor shall it constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

**SELLER NAME CHANGE AND TITLE OF PROCEEDINGS**

17.     **THIS COURT ORDERS AND DIRECTS** that, following the issuance of the Monitor's Certificate, each of the Vendors and Purchaser are authorized and directed to take any and all steps prescribed by Section 5.4 of the Purchase Agreement, pursuant to the terms thereof (the "**Name Change**").

18.     **THIS COURT ORDERS** that following the Name Change, the name of the Vendors in the within title of proceedings shall be deleted and replaced with the new legal name of the Vendors, and any document filed in these CCAA Proceedings shall be filed using such revised title of proceedings.

**DISCLOSURE OF PERSONAL INFORMATION**

19.     **THIS COURT ORDERS** that, pursuant to clause 7(3)(c) of the *Personal Information Protection and Electronic Documents Act* (Canada), the Vendors and the Monitor are authorized and permitted to disclose and transfer to the Purchaser all human resources and payroll information in the Vendors' records pertaining to the Vendors' past and current employees. The Purchaser shall maintain and protect the privacy of such information and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Vendors.

**GENERAL**

20.     **THIS COURT ORDERS AND DECLARES** that this Order shall have full force and effect in all provinces and territories in Canada.

1415-2696-3471.6

- 9 -

21. **THIS COURT ORDERS** that the Vendors, the Monitor or the Purchaser may apply to the Court as necessary to seek further orders and directions to give effect to this Order.

22. **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States to give effect to this Order and to assist the Pride Entities, the CRO, the Monitor and their agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Pride Entities, the CRO, and the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order or to assist the Pride Entities, the CRO, the Monitor and their agents in carrying out the terms of this Order.

23. **THIS COURT ORDERS** that each of the Pride Entities, the CRO, the Monitor, and the Purchaser be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

24. **THIS COURT ORDERS** that this Order is effective from the date that it is made and is enforceable without any need for entry and filing.



Digitally signed by Osborne J.
Date: 2024.10.03 18:36:39 -04'00'

1415-2696-3471.6

SCHEDULE "A"

**A. APPLICANTS**

**Operating Entities**
*Canadian Operating Entities*
- PRIDE TRUCK SALES LTD.
- TPINE TRUCK RENTAL INC.
- PRIDE GROUP LOGISTICS LTD.
- PRIDE GROUP LOGISTICS INTERNATIONAL LTD.
- TPINE LEASING CAPITAL CORPORATION
- DIXIE TRUCK PARTS INC.
- PRIDE FLEET SOLUTIONS INC.
- TPINE FINANCIAL SERVICES INC.
- PRIDE GROUP EV SALES LTD.

*U.S. Operating Entities*
- TPINE RENTAL USA, INC.
- PRIDE GROUP LOGISTICS USA, CO.
- ARNOLD TRANSPORTATION SERVICES, INC.
- DIXIE TRUCK PARTS INC.
- TPINE FINANCIAL SERVICES CORP.
- PARKER TRANSPORT CO.
- PRIDE FLEET SOLUTIONS USA INC.

**Real Estate Holding Companies**
*Canadian Real Estate Holding Companies*
- 2029909 ONTARIO INC.
- 2076401 ONTARIO INC.
- 1450 MEYERSIDE HOLDING INC.
- 933 HELENA HOLDINGS INC.
- 30530 MATSQUI ABBOTSFORD HOLDING INC.
- 2863283 ONTARIO INC.
- 2837229 ONTARIO INC.
- 2108184 ALBERTA LTD.
- 12944154 CANADA INC.
- 13184633 CANADA INC.
- 13761983 CANADA INC.
- 102098416 SASKATCHEWAN LTD.
- 177A STREET SURREY HOLDING INC.
- 52 STREET EDMONTON HOLDING INC.
- 84 ST SE CALGARY HOLDINGS INC.
- 68TH STREET SASKATOON HOLDING INC.
- 3000 PITFIELD HOLDING INC.

*U.S. Real Estate Holding Companies*
- PGED HOLDING, CORP.
- HIGH PRAIRIE TEXAS HOLDING CORP.
- 131 INDUSTRIAL BLVD HOLDING CORP.

- 59TH AVE PHOENIX HOLDING CORP.
- DI MILLER DRIVE BAKERSFIELD HOLDING CORP.
- FRONTAGE ROAD HOLDING CORP.
- ALEXIS INVESTMENTS, LLC
- TERNES DRIVE HOLDING CORP.
- VALLEY BOULEVARD FONTANA HOLDING CORP.
- HIGHWAY 46 MCFARLAND HOLDING CORP.
- TERMINAL ROAD HOLDING, CORP.
- BISHOP ROAD HOLDING CORP.
- OLD NATIONAL HIGHWAY HOLDING CORP.
- 11670 INTERSTATE HOLDING, CORP.
- 401 SOUTH MERIDIAN OKC HOLDING CORP.
- 8201 HWY 66 TULSA HOLDING CORP.
- EASTGATE MISSOURI HOLDING CORP.
- FRENCH CAMP HOLDING CORP.
- 87TH AVENUE MEDLEY FL HOLDING CORP.
- LOOP 820 FORT WORTH HOLDING CORP.
- 162 ROUTE ROAD TROY HOLDING CORP.
- CRESCENTVILLE ROAD CINCINNATI HOLDING CORP.
- MANHEIM ROAD HOLDING CORP.
- 13TH STREET POMPANO BEACH FL HOLDING CORP.
- EAST BRUNDAGE LANE BAKERSFIELD HOLDING CORP.
- CORRINGTON MISSOURI HOLDING CORP.
- 963 SWEETWATER HOLDING CORP.
- OAKMONT DRIVE IN HOLDING CORP.

**Other Holding Companies**
*Other Canadian Holding Companies*
- 2692293 ONTARIO LTD.
- 2043002 ONTARIO INC.
- PRIDE GROUP HOLDINGS INC.
- 2554193 ONTARIO INC.
- 2554194 ONTARIO INC.
- PRIDE GROUP REAL ESTATE HOLDINGS INC.
- 1000089137 ONTARIO INC.

*Other U.S. Holding Companies*
- COASTLINE HOLDINGS, CORP.
- PARKER GLOBAL ENTERPRISES, INC.
- DVP HOLDINGS, CORP.

**B.  LIMITED PARTNERSHIPS**

*U.S. Limited Partnerships*
- PRIDE TRUCK SALES L.P.
- TPINE LEASING CAPITAL L.P.
- SWEET HOME HOSPITALITY L.P.

**C.  ADDITIONAL STAY PARTIES**

*Canadian Additional Stay Parties*
- BLOCK 6 HOLDING INC.
- 2500819 ONTARIO INC.

*U.S. and Other Additional Stay Parties*
- PERGOLA HOLDINGS, CORP.
- PRIDE GLOBAL INSURANCE COMPANY LTD.

SCHEDULE "B"

Form of Monitor's Certificate

Court File No.: CV-24-00717340-00CL

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF PRIDE GROUP HOLDINGS INC. AND THOSE APPLICANTS LISTED ON SCHEDULE "A" HERETO (each, an "Applicant", and collectively, the "Applicants")**

Applicants

**MONITOR'S CERTIFICATE**

**RECITALS**

A.  Pursuant to an Order of the Court dated September 26, 2024 (the "**Approval and Vesting Order**"), the Court approved an Amended and Restated Purchase Agreement dated as of September 22, 2024 (the "**Purchase Agreement**") between Pride Group Logistics Ltd., Pride Group Logistics USA, Co., Pride Group Logistics International Ltd., Pride Fleet Solutions Inc., Pride Fleet Solutions USA Inc., 2029909 Ontario Inc., 12944154 Canada Inc., 13184633 Canada Inc., 2837229 Ontario Inc., 2043002 Ontario Inc. and TPine Leasing Capital Corporation, as vendors (collectively, the "**Vendors**"), and 1000927605 Ontario Inc., as purchaser (the "**Purchaser**"), and provided for the vesting in the Purchaser of the Vendor's right, title and interest in and to the Purchased Assets (the "**Transaction**"), which vesting is to be effective with respect to the Purchased Assets upon the Monitor's delivery to the Purchaser of a certificate confirming the Transaction has been completed to the satisfaction of the Monitor.

B.  Pursuant to the Approval and Vesting Order, the Monitor may rely on written notice from the Vendors and the Purchaser regarding fulfillment and/or waiver of conditions to closing under the Purchase Agreement.

C.  Capitalized terms used herein and not otherwise defined have the meanings given to such terms in the Approval and Vesting Order or the Purchase Agreement, as the case may be.

1415-2696-3471.6

- 2 -

**THE MONITOR CERTIFIES** the following:

1. The Purchaser has paid the Purchase Price for the Purchased Assets pursuant to the Purchase Agreement.

2. The Vendors and the Purchaser have each delivered written notice to the Monitor that the conditions to Closing under the Purchase Agreement have been satisfied and/or waived, as applicable.

3. The Transaction has been completed to the satisfaction of the Monitor.

4. This Certificate was delivered by the Monitor at _____ **[TIME]** on _____ **[DATE]**.

        **ERNST & YOUNG INC.**, solely in its capacity as Court-appointed Monitor of the Pride Entities and not in its personal capacity

Per: _____
    Name:
    Title:

1415-2696-3471.6

Court File No.: CV-24-00717340-00CL

**IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF PRIDE GROUP HOLDINGS INC. ET AL.** (each, an "Applicant", and collectively, the "Applicants")

|   |   |
|---|---|
|   | **ONTARIO**<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>PROCEEDING COMMENCED AT TORONTO |
|   | **ORDER**<br>**(Approval and Vesting)** |
|   | **THORNTON GROUT FINNIGAN LLP**<br>TD West Tower, Toronto-Dominion Centre<br>100 Wellington Street West, Suite 3200<br>Toronto, ON  M5K 1K7<br><br>**Leanne Williams (LSO #41877E)**<br>Tel:  (416) 304-0060 / Email:  lwilliams@tgf.ca<br><br>**Rachel Nicholson (LSO #68348V)**<br>Tel:  (416) 304-1153 / Email:  rnicholson@tgf.ca<br><br>**Puya Fesharaki (LSO #70588L)**<br>Tel:  (416) 304-7979 / Email:  pfesharaki@tgf.ca<br><br>**Ines Ferreira (LSO #81472A)**<br>Tel:  (416) 304-0461 / Email: iferreira@tgf.ca<br><br>Lawyers for the Applicants |

1415-2696-3471.6