# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Pride Group Holdings Inc., *et al.*[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 24-10632 (CTG)<br><br>(Jointly Administered)<br><br>Hearing Date: Dec. 20, 2024 at 10:00 a.m. (ET)<br>Obj. Deadline: Dec. 13, 2024 at 4:00 p.m. (ET) |

## MOTION OF MITSUBISHI HC CAPITAL AMERICA INC. F/K/A HITACHI CAPITAL AMERICA CORP. FOR AN ORDER GRANTING (I) RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d) AND (II) RELATED RELIEF

Mitsubishi HC Capital America Inc. f/k/a Hitachi Capital America Corp. ("MHCA"), through its undersigned counsel, respectfully submits this motion (this "Motion") for entry of an order in the above-captioned chapter 15 cases (these "Chapter 15 Cases") of Pride Group Holdings Inc. and its affiliated debtors (collectively, the "Debtors"),[2] substantially in the form attached as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a) and 362(d) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) granting MHCA relief from the automatic stay to pursue prepetition actions commenced against the non-debtor Personal Guarantors (as defined herein);

---

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

[2] The Debtors are also debtors in the Canadian proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"), commenced on March 26, 2024, by the Debtors' filing of the *Application Record* (the "CCAA Application"). Unless otherwise noted, capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the U.S. Financing Agreements or the Personal Guaranties, as the context requires.

(ii) waiving the 14-day stay provided for in Bankruptcy Rule 4001(a)(3); and (iii) granting such further relief to MHCA as is appropriate. In support of this Motion, MHCA respectfully states as follows:

## **PRELIMINARY STATEMENT**[3]

1.  There is good reason to believe that Sulakhan (Sam) Johal and Jasvir Johal (together, the "Personal Guarantors") orchestrated a massive fraud involving significant double financing of vehicles, targeting parties that financed their business operations. They are liable to MHCA for tens of millions of dollars for breaching personal guaranties that supported MHCA's financing arrangements with entities they controlled. Before the commencement of the CCAA Proceedings and these Chapter 15 Cases, MHCA filed suit against the Personal Guarantors to enforce these guaranties. However, upon initiation of these proceedings, the Canadian Court imposed a non-debtor stay recognized by this Court, thereby, halting MHCA's litigation efforts.

2.  These Chapter 15 Cases and the related CCAA Proceedings are not aimed at reorganization but instead constitute a large-scale liquidation managed by the CRO and the Debtors' professionals, with no operational involvement from the Personal Guarantors. At the outset of the CCAA Proceedings, the Debtors obtained a stay as to, among other parties, the Personal Guarantors by claiming their involvement was crucial to developing a restructuring plan for the Pride Group. *See* CCAA Application, p. 21-22 (representing that the Personal Guarantors are "integral to the Pride Group's operations" and that the requested stay represented "the only means of ensuring that the Pride Group can . . . develop a plan to restructure its affairs and address its indebtedness for the benefit of its creditors . . . ."). With the focus of the proceedings shifting

---

[3] Capitalized terms not otherwise defined in this *Preliminary Statement* have the meaning given to such terms in the body of the Motion.

to liquidation, these justifications are no longer relevant or valid, and the continued extension of the stay now serves only to shield the Personal Guarantors from their contractual obligations.

3. Given the Debtors' shift to liquidation—potentially involving financing that primes secured creditors like MHCA—the protections afforded to the Personal Guarantors should be lifted. Dissolving the stay would afford MHCA an opportunity to recover its significant losses by looking to non-debtor assets outside of the Debtors' liquidation efforts. As such, ample cause exists to justify this necessary relief to MHCA under section 362(d) of the Bankruptcy Code.

## JURISDICTION AND VENUE

4. The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over these Chapter 15 Cases under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is and other proceedings under chapter 15 of the Bankruptcy Code are core matters within the meaning of 28 U.S.C. § 157(b)(2)(P).

5. Pursuant to Local Rule 9013-1(f), MHCA consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6. Venue of these Chapter 15 Cases is proper in the Court pursuant to 28 U.S.C. § 1410.

7. The statutory predicates for the relief requested in this Motion are sections 362(d) and 1520 of the Bankruptcy Code. The requested relief is warranted under Bankruptcy Rule 4001(a) and Local Rule 4001-1.

**BACKGROUND**

A.   **U.S. Financing Agreements and Personal Guaranties**

8.   MHCA provides customized financing solutions to businesses to help meet their capital needs. MHCA offers vehicles, trading, structure, and commercial vehicle finance services. Prior to the commencement of the CCAA Proceedings and these Chapter 15 Cases, MHCA provided such financing to non-debtor Pride Truck and non-debtor Tpine Leasing Capital, L.P. ("Tpine") under three (3) agreements (collectively the "U.S. Financing Agreements"), each personally guaranteed by the Personal Guarantors.

   i.   *Norwalk U.S. Floorplan Agreement and Norwalk Guaranty*

9.   On or around November 21, 2018, MHCA entered into a *Floorplan and Security Agreement* (the "Norwalk U.S. Floorplan Agreement") with Pride Truck (of which each Personal Guarantor is a partner). A true and correct copy of the Norwalk U.S. Floorplan Agreement is attached to the Angelo Decl.[4] as **Exhibit 1**.

10.   Under the Norwalk U.S. Floorplan Agreement, MHCA agreed to "extend credit to or on behalf of [Pride Truck] to purchase inventory." Ex. 1, § 1. The agreement also granted MHCA "an absolute and cross-collateralized security interest in" the "Collateral".[5] *Id.,* § 2(a)-(b).

---

[4]   *See Transmittal Declaration of Jason D. Angelo, Esq. in Support of Motion of Mitsubishi HC Capital America Inc. f/k/a Hitachi Capital America Corp. for an Order Granting (I) Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and (II) Related* Relief ("Angelo Decl."), filed contemporaneously herewith.

[5]   Under the Norwalk U.S. Floorplan Agreement, the term "Collateral" means "all personal property of [Pride Truck], whether such property or [Pride Truck's] right, title or interest therein or thereto is now owned or existing or hereafter acquired or arising, and wherever located, including without limitation, any and all inventory acquired by virtue of any extensions of credit . . . as well as any and all Accounts, Inventory, Equipment, Fixtures, other Goods, General Intangibles (including Payment Intangibles), Chattel Paper (whether tangible or electronic), Instruments (including Promissory Notes), Insurance (and Insurance proceeds), Deposit Accounts, Investment Property and Documents and all Proceeds and Products of the foregoing." *Id.* at § 2(b). Collateral also includes "all books and records, electronic or otherwise, which evidence or relate to the foregoing personal property, and all computers, disks, media and other devices in which such records are stored." *Id.*

11. The Norwalk U.S. Floorplan Agreement is guaranteed by the Personal Guarantors pursuant to that certain *Personal Guaranty Agreement* (the "Norwalk Guaranty") dated on or around July 21, 2024. A true and correct copy of the Norwalk Guaranty is attached to the Angelo Decl. as **Exhibit 2**.

12. By executing the Norwalk Guaranty, the Personal Guarantors each "severally request[ed] [MHCA] to extend credit to or to purchase security agreements, leases, notes, accounts and/or other obligations." *Id.* at 1. To induce MHCA "to extend such credit or to make such purchase, and in consideration thereof," each Personal Guarantor, "as a primary obligor, irrevocably and unconditionally, jointly and severally guarantee[d] to [MHCA] that [Personal Guarantors' company] will fully and promptly pay and perform all of its present and *future* obligations." *Id.*, § 1 (emphasis added).

13. The Norwalk Guaranty allowed MHCA and the Personal Guarantors to enter "new or additional . . . agreements relating to…said obligations" of the Norwalk Guaranty "without affecting or impairing the obligation of any [Personal] Guarantor." *Id.,* § 5

14. In addition to guaranteeing the obligations of Pride Truck on a joint and several, irrevocable, and unconditional basis, by the Norwalk Guaranty, the Personal Guarantors also guaranteed the payment of "all losses, costs, attorneys' fees and expenses which may be suffered by [MHCA] by reason of [Pride Truck's] default or default of" either Personal Guarantor. *See* Ex. 2, § 1.

15. On or about November 10, 2020, the Personal Guarantors reaffirmed the Norwalk Guaranty by executing a *Forbearance, Waiver and Reaffirmation Agreement* (the "Forbearance"). A true and correct copy of the *Forbearance* is attached to the Angelo Decl. as **Exhibit 3**. MHCA relied on the Personal Guarantors' personal guarantees as a condition to enter the Forbearance.

### ii. *The Program Agreement and Program Guaranties*

16. On or around May 31, 2023, MHCA entered into the *Second Amended and Restated Program Agreement* (the "Program Agreement") with Tpine. A true and correct copy of the Program Agreement is attached to the Angelo Decl. as **Exhibit 4**.

17. Under the Program Agreement, Tpine agreed to sell MHCA all of its right, title, and interest in certain Contracts (defined as leases, conditional sale agreements, or other evidence or form of payment obligation and/or security interest), along with all related guaranties, insurance proceeds, vendor warranties, and any other amounts due under the Contracts. *See* Ex. 4, § 2.2.

18. To further induce MHCA to enter into the Program Agreement, each Personal Guarantors an unconditional personal guaranty of Tpine's obligations under the Program Agreement (the "Program Guaranties"). On or around March 18, 2020, and concurrent with Tpine's entry into the Program Agreement, the Personal Guarantors entered into the Program Guaranties. True and correct copies of the Program Guaranties are attached to the Angelo Decl. as **Exhibit 5**.

19. Each Personal Guarantor further agreed to (i) be a Guarantor of Tpine's "payment obligations and other obligations under [the Program] Agreement and any Assignment" and (ii) "be responsible for the representation, warranties, and obligations of [Tpine], including, without limitation, the obligation to maintain loss reserve amounts." *See* Ex. 4, § 5.3(f).

20. The Program Guaranties guaranty Tpine's obligations under the Program Agreement (including, without limitation, the payment of all principal and interest and all other sums then and thereafter incurred by Tpine). *See* Ex. 5, § 2.

### iii. *The Norwalk Master Receivables Purchase Agreement and Norwalk Receivables Guaranties*

21. On or around May 25, 2021, MHCA entered into a *Master Lease Receivables Sale and Assignment Agreement* ("Norwalk Master Receivables Purchase Agreement" and collectively with the Nowalk U.S. Floorplan Agreement and the Program Agreement, the "U.S. Financing Agreements") with Tpine, another company owned by Personal Guarantors. A true and correct copy of the Norwalk Master Receivables Purchase Agreement is attached to the Angelo Decl. as **Exhibit 6**.

22. On or around the same date, MHCA and Tpine also entered in a *Servicing and Remarketing Agreement*. A true and correct copy of this agreement is attached to the Angelo Decl. as **Exhibit 7**.

23. Under the Norwalk Master Receivables Purchase Agreement, the Personal Guarantors' company, Tpine, which "[i]n its normal course of business . . . provides equipment lease financing for commercial vehicles," agreed to sell MHCA "the rentals payable under certain of those leases, on the terms and conditions set forth" in the agreement. Ex. 6, at 1.

24. MHCA further agreed to "provide financial accommodations to and for the benefit of" Tpine, while Tpine agreed to "provide servicing for the purchase lease receivable sand remarketing for leased equipment in accordance with the terms" of the agreement. *Id*.

25. The Personal Guarantors guaranteed Tpine's obligations under the Norwalk Master Receivables Purchase Agreement by executing a *Personal Guaranty Agreement* (the "Norwalk Receivables Guaranties" and, together with the Norwalk Guaranty and Program Guaranties, the "Personal Guaranties"). True and correct copy of the Norwalk Receivables Guaranties are attached to the Angelo Decl. as **Exhibit 8**.

26. By the Norwalk Receivables Guaranties, each Personal Guarantor "jointly and severally and unconditionally and irrevocably" guaranteed Tpine's obligations, including, without limitation, payment of all principal, interest, costs, expenses, and attorneys' fees. *See* Ex. 8, §§ 3.01, 9.01. The Norwalk Receivables Guaranties further state that the Personal Guarantors' liability is "absolute and unconditional." *Id*., § 3.02.

**B.  Defaults under the U.S. Financing Agreements and Personal Guaranties**

27. By mid-December 2023, Pride Truck, Tpine, and the Personal Guarantors had defaulted on the U.S. Financing Agreements and Personal Guaranties. Specifically, on December 21, 2023, Pride Truck notified MHCA that it had sold or assigned certain Floorplan Collateral to another third-party purchaser or lender, triggering a Default under Section 7(n) of the Norwalk U.S. Floorplan Agreement.[6] A true and correct copy of the Notice of Default is attached to the Angelo Decl. as **Exhibit 9**.

28. As of March 25, 2024, the outstanding amount owed to MHCA under the U.S. Financing Agreements and Personal Guaranties was at least $88,920,679.27, excluding attorneys' fees, appraisal costs, and other expenses (the "Indebtedness"). The Indebtedness includes accrued interest and fees and expenses, each of which continue to accrue and remain subject to further revision.

**C.  The Personal Guarantor Actions**

29. On March 25, 2024, with defaults continuing, MHCA filed three (3) actions against the Personal Guarantors for breach of the Personal Guaranties (collectively, the "Personal Guarantor Actions" and each, a "Personal Guarantor Action"). Each Personal Guarantor Action

---

[6] A Default occurs under Section 7(n) of the Norwalk U.S. Floorplan Agreement if MHCA in good faith believes the prospect of payment of any Obligations is impaired or it deems itself insecure.

corresponded to one of the three (3) U.S. Financing Agreements and the applicable Personal Guaranty and was filed in accordance with the agreement-specific jurisdictional and venue provisions.[7] Accordingly, MHCA filed complaints asserting breach of the Personal Guaranties as follows:

- **Norwalk U.S. Floorplan Agreement:** United States District Court for the District of Connecticut (Case No. 24-cv-433).

- **Program Agreement:** United States District Court for the Northern District of Illinois, Eastern Division (Case No. 24-cv-2393).

- **Norwalk Master Receivables Purchase Agreement:** United States District Court for the Southern District of New York (Case No. 24-cv-2205).

True and correct copies of the complaints commencing each of the Personal Guarantor Actions are attached to the Angelo Decl. as **Exhibit 10**.

30.     The Personal Guarantor Actions were stayed immediately after filing due to the Debtors' initiation of the CCAA Proceedings and these Chapter 15 Cases.

**D.     Pride Group's CCAA Proceedings and Chapter 15 Cases**

31.     On March 27, 2024, the Debtors commenced the CCAA Proceedings in the Canadian Court, which thereafter issued an initial order (the "Initial Order") (a) authorizing (among other things) Randall Benson (the "Foreign Representative") to act as the foreign representative for the Debtors and file these Chapter 15 Cases and (b) appointing Ernst & Young Inc. as the monitor (the "Monitor") and RC Benson Consulting Inc. as Chief Restructuring Officer of the Debtors (the "CRO").

---

[7] The jurisdictional and venue provisions of the Norwalk Guaranty provide for the state and federal courts of Connecticut. *See* Ex. 2, § 8. The jurisdictional and venue provisions of the Program Guaranties provide for the exclusive jurisdiction for the state and federal courts of Illinois. *See* Ex. 5, § 8. The jurisdictional and venue provisions of the Norwalk Receivables Guaranties provide for the exclusive jurisdiction for the state and federal courts located in the Borough of Manhattan, New York County, New York. *See* Ex. 8, § 6.02.

32. On April 1, 2024, the Foreign Representative filed petitions for relief under chapter 15 of the Bankruptcy Code for 26 Canadian and U.S. operating companies and non-real estate holding companies and sought recognition of the CCAA Proceedings as "foreign main proceedings" under Bankruptcy Code section 1517. *See Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 2] (the "Verified Petition").

33. On April 5, 2024, the Canadian Court issued an amended and restated version of the Initial Order (the "A&R Initial Order") and an order regarding protocols for real estate sale transactions *(*the "Canadian Protocols Order"), which imposed a stay as to the Debtors, the Personal Guarantors, and certain other parties initially through April 6, 2024 (the "Stay Period"). The Foreign Representative thereafter sought and obtained enforcement of the orders in the United States on a provisional basis. *See Order Granting Provisional Relief in Connection with Debtors-In-Possession Financing and Certain Protocols Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 110].

34. On April 15, 2024, the Foreign Representative filed petitions for relief under chapter 15 of the Bankruptcy Code for 45 Canadian and U.S. single-asset real estate holding companies.

35. On April 23, 2024, the Debtors filed an amended version of the Verified Petition [D.I. 121] seeking recognition of the CCAA Proceedings as "foreign main proceedings" under Bankruptcy Code section 1517 and related relief.

36. On May 2, 2024, the Court granted recognition of the CCAA Proceedings, enforcement of the A&R Initial Order and Canadian Protocols Order in the United States on a final basis, and related relief. *See* D.I. 152.

37. On May 6, 2024, the Canadian Court entered the *Second Amended and Restated Initial Order* ("Second A&R Order") extending the Stay Period through June 30, 2024.

38. On June 27, 2024, the Canadian Court further extended the stay through September 30, 2024 pursuant to the Stay Extension Order (the "Extension Order" and, together with the Second A&R Order and the A&R Initial Order, the "A&R Orders").

39. On August 7, 2024, the Debtors filed the *Motion to Amend Governance Protocol; Approve Indicative Term Sheet* (the "Term Sheet Motion"), in which they admitted their inability to continue as a going concern and their intent "to effect an orderly and centralized wind-down of their operations." The Debtors sought authority to "finance the orderly wind-down" with a $50 million senior secured revolving loan that is secured by a first ranking charge on the assets to be sold.

40. On August 9, 2024, the Canadian Court authorized the Debtors to develop an orderly wind down proposal, including soliciting bidders for the sale of substantially all of the Debtors' assets (the "PGL Assets", as more fully defined in the Fourteenth Report and Supplemental Report (each as defined below)). After engaging in a sale process seeking qualified bids for the PGL Assets, the CRO and Monitor identified a sole bidder—1000927605 Ontario Inc. (the "Proposed Buyer")[8]—created by the Personal Guarantors for the sole purpose of purchasing the Debtors' assets. *See Fourteenth Report of the Monitor* (the "Fourteenth Report") and *Supplemental Fourteenth Report of the Monitor* (the "Supplemental Report").

41. Several secured creditors, including MHCA and the DIP Agent (as defined in the Fourteenth Report), oppose the proposed sale and filed motions with the Canadian Court seeking

---

[8] While not finally approved, it does appear that Sulakhan (Sam) Johal and his wife are purchasing the PGL assets through the sale process approved by the Canadian Court.

immediate return of assets and receivership-like structures within the CCAA Proceedings as the preferred path forward (as opposed to the sale of the PGL Assets to the Debtors' insiders). *See* Fourteenth Report at ¶ 33. These motions cite the Debtors' lack of progress and extreme expense of the CCAA Proceedings (born solely by creditors), the lack of confidence in the CRO and Monitor to progress the CCAA Proceedings in the interest of all stakeholders, and the obvious problems appurtenant to the sale of the PGL Assets to the Proposed Buyer.

42. On September 24, 2024, the Pride Entities filed the *Motion Approving Wind-Down Funding Contribution, Turn-Over, Stay Extension and KERP* (the "<u>Wind-Down and Turn-Over Motion</u>") in the CCAA Proceedings requesting approval of an allegedly centralized, coordinated, and controlled wind-down of the Pride Entities' business. By the Wind-Down and Turn-Over Motion, the Pride Entities sought authority to, among other things, allow a Recourse Lender (as defined in the Wind-Down and Turn-Over Motion) to retrieve its collateral under certain specified conditions for disposition outside of the CCAA Proceedings. On October 10, 2024, the Canadian Court entered an order (the "<u>Wind-Down and Turn-Over Order</u>") granting the requested relief.

43. MHCA, having satisfied the conditions under the Wind-Down and Turn-Over Order, is entitled to retrieve its collateral. The Personal Guarantors offer no value to MHCA and should have no role in MHCA's disposition of its collateral.

E. **Extension of the Stay to Non-Debtor Personal Guarantors**

*44.* The A&R Orders stayed the commencement or continuation of all proceedings or enforcement actions against (among others) Pride Group, the Personal Guarantors, and their respective property initially through April 6, 2024, later extended to June 30, 2024, and then to September 30, 2024. *See* A&R Initial Order ¶ 14; Second A&R Initial Order at ¶ 13; Extension Order at ¶ 3. Most recently, the Canadian Court extended the stay for actions against the Personal

Guarantors through March 31, 2025, with this Court granting parallel relief in deference to the Canadian Court and based on the Debtors' representations. [D.I. 152 at ¶ 6].

45. This Court and the Canadian Court found extending the stay appropriate based upon the Debtors' representation that allowing proceedings to continue against the Personal Guarantors, in their capacities as directors and officers of the Pride Group, would be "distracting to management which is operating the Pride Group and pursuing the CCAA Proceedings and these Chapter 15 Cases." *See* D.I. 6 at ¶ 5; CCAA Application at ¶ 156. The Debtors also claims that the Pride Group's business and operations "are heavily intertwined with that of the [Personal Guarantors], such that the extended stay of proceedings is necessary to preserve the *status quo*." *See id.*

F. **Stay Relief Sought in the CCAA Proceedings**

46. On November 11, 2024, MHCA filed its *Motion to Lift the Stay of Proceedings* in the CCAA Proceedings. The parties are awaiting a hearing date in the CCAA Proceedings.

**RELIEF REQUESTED**

47. MHCA respectfully requests entry of the Proposed Order: (i) granting MHCA relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to continue the Personal Guarantor Actions; (ii) waiving the stay of such order under Bankruptcy Rule 4001(a)(3); and (iii) granting such further relief to MHCA as is appropriate.

**BASIS FOR REQUESTED RELIEF**

48. "The procedure for obtaining a court order for relief from the U.S. automatic stay under subsections (d) through (g) of § 362 applies in a chapter 15 case." *In re Manley Toys Ltd.*, No. 16-15374 (JNP), 2020 Bankr. LEXIS 902, at *5 (Bankr. D.N.J. Mar. 31, 2020).

49. Section 362(g) places an initial burden on the moving party to establish its *prima facie* case for relief from the automatic stay which must then be rebutted by the party opposing such relief. *See Izzarelli v. Rexene (In re Rexene Prods. Co.)*, 141 B.R. 574, 577 (Bankr. D. Del. 1992); *In re Eatman*, 182 B.R. 386, 390 (Bankr. S.D.N.Y. 1995) ("[T]he movant must [] make a *prima facie* showing that it is entitled to the relief that it seeks."). A *prima facie* case requires a showing by the movant of a factual and legal right to the relief that it seeks. *In re Eatman¸* 182 B.R. at 390 (citations omitted). "After the moving party establishes a *prima facie* case, the burden of producing evidence, as well as the ultimate burden of proof, *i.e.*, risk of non-persuasion, shifts to the debtor." *In re Planned Systems, Inc.*, 78 B.R. 852, 859 (Bankr. S.D. Ohio 1987). Here, ample cause exists to lift the automatic stay pursuant to section 362(d)(1) as to the non-debtor Personal Guarantors.

50. Section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief from the stay "for cause." 11 U.S.C. § 362(d)(1). Cause is not defined in § 362(d)(1). This Court has adopted the three-part test outlined in *Rexene Products* to determine the existence of "cause" in the context of a creditor seeking stay relief to pursue litigation, in which the Court weighs (1) the prejudice to the debtor or estate from the continuation of the civil suit, (2) whether the hardships imposed by the stay on the moving party "considerably outweigh[] the hardship[s] of the debtor, and" (3) whether the moving party "has a probability of prevailing on the merits." *In re AmeriFirst Fin., Inc.*, No. 23-11240, 2024 Bankr. LEXIS 1379, at *4 (Bankr. D. Del. June 12, 2024) (citing *In re Rexene Products Co.*, 141 B.R. at 576).

51. Here, because the litigation does not involve or implicate the Debtors or any property or assets of the Debtors, it follows that there can be no prejudice to the Debtors or their estates from the continuation of the Personal Guarantor Actions. *See In re Rexene Prods. Co.*,

141 B.R. at 576 ("[t]he legislative history indicates that cause may be established by a single factor such as 'a desire to permit an action to proceed in another tribunal,' or lack of any connection with or interference with the pending bankruptcy case.") (citing H.R. REP. NO. 95-595, 95th Cong., 1st Sess., 343-344 (1977)).  By contrast, the hardships of the stay imposed on MHCA considerably outweigh the complete lack of hardship on the Debtors.  MHCA is likely the victim of a fraud orchestrated by or under the watch of the Personal Guarantors, and the likelihood of (or even hope for) recovery in the CCAA Proceedings and these Chapter 15 Cases is drastically diminished as the Debtors meander through the CCAA Proceedings without purpose and focus.  Indeed, but for the lenders' pushing the CCAA Proceedings to the only possible solution—a complete sale—the Debtors and Monitor would still be languishing while trying to appease the Personal Guarantors to the detriment of creditors.  MHCA will likely suffer tens of millions of dollars in losses caused by the Personal Guarantors' conduct, and the maintenance of the stay in favor of the Personal Guarantors further undermines MHCA's ability to recover amounts owing to it.

52. Importantly, there is every likelihood that MHCA will prevail on the merits in the Personal Guarantor Actions.  The Personal Guarantor Actions each seek a single count for breach of contract under the applicable Personal Guaranty.  *See* Ex. 10.  In addition to the fact that each of the Personal Guarantors waived all rights to setoff, counterclaims, recoupment, or similar rights to reduce the amounts owed under each of the Personal Guaranties, the Debtors have acknowledged the liabilities owed to MHCA under the U.S. Financing Agreements—the obligations thereunder which are the basis for the Personal Guaranties.  *See generally* Ex. 10.

53. Even more egregious is that the Personal Guarantors purchased certain assets out of the CCAA Proceedings while leaving their creditors suffering tens of millions of dollars (if not hundreds of millions of dollars) of losses.  In the *Twelfth Report of the Monitor* (the "Twelfth

Report"), the Monitor disclosed that the proposed purchaser of the PGL Assets is a company owned and controlled by certain members of the Johal family, who are owners of the Pride Entities. *See* Twelfth Report at ¶ 34. This was confirmed in the Fourteenth Report and Supplemental Report. *See* Fourteenth Report at ¶ 45; Supplemental Report at ¶ 18. The approximately $56 million bid by the Proposed Buyer—again, an entity controlled by the Personal Guarantors—was finalized on August 26, 2024, and the Monitor believes that the Johal purchasers are working to obtain an unconditional bid for the PGL Assets. *Fourteenth Report of the Monitor*, at ¶ 47. The Personal Guarantors think so little of their creditors and the deliberate financial pain they have caused them through a massive, and orchestrated fraud that they are using the CCAA Proceedings and these Chapter 15 Cases to obtain a broad stay of proceedings against them while working to purchase the PGL assets (likely at a discount).

54. The Debtors have the burden of proving the absence of "cause" for relief from the automatic stay. *See Wilmington Trust Co. v. Aardvark, Inc. (In re Aardvark, Inc.)*, 1997 U.S. Dist. LEXIS 3304 (D. Del. Mar. 4, 1997) (quoting *In re Phoenix Pipe & Tube, L.P.*, 154 B.R. 197, 198 (Bankr. E.D. Pa. 1993)); *Partee v. White (In re White)*, 2004 Bankr. LEXIS 478 (Bankr. D. Colo. Mar. 12, 2004); *see also* 11 U.S.C. § 362(g). Bankruptcy courts evaluate "cause" based on the totality of the circumstances in each case. *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) *(citing Trident Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co. (In re Trident Assocs. Ltd. P'ship),* 52 F.3d 127, 131 (6th Cir. 1995)).

55. Any attempt by the Debtors to show the absence of "cause" under these circumstances necessarily fails because the extension of the stay to *non-debtor* actions may be appropriate only "where such actions would interfere with, deplete or adversely affect property of [the estate] or which would frustrate the statutory scheme of Chapter 11 or diminish [the debtor's]

ability to formulate a plan of reorganization," *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, No. 01—1139 (JKF), 2004 Bankr. LEXIS 579, at *6 (Bankr. D. Del. Apr. 29, 2004) (quoting *Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.)*, 26 B.R. 420, 423 (Bankr S.D.N.Y. 1983)). Moreover, "courts are careful to reserve such power to the most extreme and 'unusual circumstances.'" *Id.* (quoting *McCartney v. Integra Nat'll Bank North*, 106 F.3d 506, 510 (3d Cir. 1997).) Accordingly, the viability of reorganization must be implicated for the stay to continue to benefit a non-debtor party. This cannot be the case here, as, by the Debtors' own admissions and representations, they are not seeking to reorganize, but liquidate assets and winddown operations. *See* Term Sheet Motion. The continued imposition of the stay with respect to the Personal Guarantors under these facts cannot be sustained.

56. Finally, and by analogy, relief from the stay is also warranted considering the grounds for relief from the co-debtor stay afforded to non-debtor parties in Chapter 13 cases. In Chapter 13 cases, a non-filing spouse automatically receives the benefit of the automatic stay pursuant to section 1301(a). However, section 1301(c) provides three grounds for relief from the co-debtor stay, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that—
>
> (1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;
>
> (2) the plan filed by the debtor proposes not to pay such claim; or
>
> (3) such creditor's interest would be irreparably harmed by continuation of such stay.

11 U.S.C. § 1301(c).

57. Under this construct, stay relief is warranted because the Debtors do not propose to (and indeed cannot) pay MHCA's claims in full. *See In re Grace*, No. 14-33624, 2015 Bankr. LEXIS 625, at *6 (Bankr. N.D. Ohio Feb. 27, 2015) ("[w]here a claim will not be paid in full through a co-debtor's Chapter 13 plan, the court simply lacks the discretion under § 1301(c)(2) to continue the stay against the co-debtor"); *see also In re Schaffrath*, 214 B.R. 153, 155 (6th Cir. B.A.P. 1997) (relief mandatory where plan does not propose to pay entire claim); *In re Laska*, 20 B.R. 675 (Bankr. N.D. Ohio 1982); *cf. Harris v. Ft. Oglethorpe State Bank*, 721 F.2d 1052 (6th Cir. 1983). Further, as explained *infra*, continuation of the stay poses irreparable harm to MHCA.

58. Ultimately, lifting the stay to allow the Personal Guarantor Actions to proceed would allow MHCA to significantly reduce its losses and claims in these Chapter 15 Cases and the CCAA Proceedings. MHCA should be permitted to exercise and pursue its rights and remedies against non-debtor parties in proceedings that do not implicate the Debtors' assets or property. The Personal Guarantors should not be gifted with the benefit of an automatic stay without the burdens and obligations associated with pursuing their own bankruptcy filing. *See In re Cred Inc.*, No. 20-12836 (JTD), 2021 Bankr. LEXIS 518 (Bankr. D. Del. Feb. 26, 2021).

## **WAIVER OF BANKRUPTCY RULE 4001(a)(3)**

59. MHCA respectfully requests waiver of the 14-day stay under Bankruptcy Rule 4001(a)(3). There is no reason to delay effectiveness of an order granting stay relief because the Debtors will not suffer any significant prejudice from the granting of stay relief. Indeed, the relief does not implicate the Debtors or their estates in any way. Accordingly, MHCA respectfully requests that this Court grant such relief effective immediately.

60. MHCA further requests that the first hearing on this Motion be treated as a final hearing under 11 U.S.C. § 362(e)(1).

## NOTICE

61. Notice of this Motion will be provided to: (i) the Foreign Representative; (ii) counsel to the Debtors; (iii) the Office of the United States Trustee for the District of Delaware; and (iv) those parties entitled to receive notice pursuant to Bankruptcy Rule 2002. MHCA submits that no other or further notice is necessary or required.

## RESERVATION OF RIGHTS

62. MHCA reserves all of its rights to amend, modify, or supplement this Motion in any manner, at any time, and for any purpose, and to assert and file any and all additional claims of whatever kind or nature that it has or may hereafter have against the Debtors, which may be based on the respective rights and obligations arising under the relationship and agreements discussed in this Motion or the same events and circumstances described in this Motion. MHCA further reserves the right to bring forth additional documentation supporting all of its claims including, without limitation, any documents that may become available after further investigation and discovery.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, MHCA respectfully requests entry of the Proposed Order, substantially in the form attached as **Exhibit A**, granting MHCA: (i) relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to continue litigating the Personal Guarantor Actions; (ii) a waiver of the stay of such order under Bankruptcy Rule 4001(a)(3); and (iii) such further relief as is appropriate.

Dated: November 25, 2024  
       Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Jason D. Angelo*  
Jason D. Angelo (No. 6009)  
1201 North Market Street, Suite 1500  
Wilmington, DE 19801  
Telephone: +1 302.778.7500  
Facsimile: +1 302.778.7575  
Email: jangelo@reedsmith.com

- and -

Aaron G. Javian, Esq. (admitted *pro hac vice*)  
**REED SMITH LLP**  
599 Lexington Avenue, 22nd Floor  
New York, NY 10022  
Telephone: +1.212.521.5400  
Facsimile: +1.212.521.5450  
Email: ajavian@reedsmith.com

- and -

Jared S. Roach, Esq. (admitted *pro hac vice*)  
**REED SMITH LLP**  
Reed Smith Centre  
225 Fifth Avenue  
Pittsburgh, PA 15222  
Telephone: +1 412.288.3131  
Facsimile: +1 412.288.3063  
Email: jroach@reedsmith.com

*Counsel to Mitsubishi HC Capital America Inc. f/k/a Hitachi Capital America Corp.*