**EXHIBIT 5**

Continuing Personal Guaranties

(See attached)

PERSONAL GUARANTY

**FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which are hereby acknowledged, and in order to induce **ENGS COMMERCIAL FINANCE CO.** ("ENGS") to make certain purchases, financial accommodations, and agreements regarding leases and loans to customers of **TPINE Leasing Capital, L.P., on behalf of itself, its Principal(s) and its Affiliates** ("Obligor") with its principal place of business at 1125 East Alexis Road, Toledo, Ohio 43612providing for the purchase and acquisition by customers of Obligor of certain equipment (the "Equipment") the undersigned, Jasvir Johal ("Guarantor"), residing at the address listed below, hereby absolutely unconditionally and irrevocably guarantees to ENGS the full and prompt payment and performance by Obligor of all Obligations (as that term is defined below), on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

1. **Definitions**: The following words shall have the following meanings in this Guaranty:
"Guaranty" means this Personal Guaranty made by Guarantor for the benefit of ENGS.
"Program Agreement" shall have the meaning set forth in the Program Agreement dated March 18, 2020 entered into between ENGS and TPINE Leasing Capital, L.P., on behalf of itself, its Principal(s) and its Affiliates and shall include all Assignments (as defined therein) and other documents which may be executed by Obligor, its Principals, and Affiliates in furtherance thereof.
"Obligations" means obligations of Obligor under the Program Agreement, including, without limitation, the payment when due of all principal and interest and all other sums currently or hereafter owing by Obligor to ENGS thereunder, including costs, expenses and attorneys fees incurred by ENGS in connection therewith.
"Other Guarantor" means any other guarantor of the Obligations.
"Other Guarantees" means any guaranty by any Other Guarantor.

Capitalized terms not otherwise defined herein have the meaning given in Program Agreement dated March 18,2020 entered into between ENGS and TPINE Leasing Capital, L.P., on behalf of itself, its Principal(s) and its Affiliates.

2. **Nature of Guaranty**. Guarantor's liability under this Guaranty shall be absolute, primary and direct. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Obligations. Guarantor unconditionally and irrevocably guarantees to ENGS and its assigns the prompt payment in full of all amounts due, financial recourse, indebtedness, indemnity and obligations of every kind and nature now and hereafter owing by the Obligor to ENGS under the Program Agreement as well as any other obligations and indebtedness which the Obligor now owes or may hereafter incur to ENGS under any other agreements or by reason of any agreement, indemnity, Assignment, purchase and funding of Contracts, (as defined in the Program Agreement), financial accommodation including, without limitation, loans of personal property and/or notes and security agreements between ENGS and the Obligor whether now existing or made after the date hereof, whether or not presently contemplated. ENGS shall not be required to pursue any right or remedy it may have against Obligor under the Program Agreement or otherwise (and shall not be required first to commence any action or obtain any judgment against Obligor) before enforcing this Guaranty against Guarantor.

3. **Guarantor's Representations and Warranties**. Guarantor warrants and represents to ENGS that (a) the execution, delivery and performance of this Guaranty will not result in a breach of, or constitute a default under, or result in the creation of any security interest, lien, charge or encumbrance upon any property or assets of Guarantor pursuant to any loan agreement, indenture or contract to which Guarantor is a party or by or under which it is bound; (b) this Guaranty is executed at Obligor's request and not at the request of ENGS; (c) Guarantor is closely affiliated with Obligor and the purchase or financing of the Equipment to Obligor's customer with the proceeds of the Assignment paid by ENGS to Obligor or on behalf of Obligor will result in a direct or indirect material economic benefit to Guarantor; (d) ENGS has made no representation to Guarantor as to the creditworthiness of Obligor; (e) Guarantor has means to and shall keep adequately informed regarding Obligor's financial condition and ENGS shall have no obligation to disclose to Guarantor any information regarding Obligor. Guarantor shall not transfer all or substantially all of its assets by any means including, without limitation, sale, distribution, death, or reorganization, without the prior written consent of ENGS. Upon ENGS's request, Guarantor will provide ENGS any and all financial information concerning Guarantor which ENGS determines within ENG's discretion.

4. **Guarantor Waivers**. (a) Guarantor expressly waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Obligor, the Guarantor or both, in any action or proceeding, in any court, arising on, out of, under, by virtue of, or in any way relating to the Program Agreement, this Guaranty or the transactions contemplated thereby or hereby. Guarantor agrees that this Guaranty shall be valid, enforceable and unconditionally binding upon Guarantor regardless of: (i) the reorganization, merger or consolidation of Obligor into or with another entity, corporate or otherwise, or the sale or other disposition of all or substantially all of the capital stock, business or assets of Obligor to any other person or party; (ii) the death or dissolution of Obligor, Guarantor or any Other Guarantor; (iii) the voluntary or involuntary bankruptcy (including a reorganization in bankruptcy) of Obligor, Guarantor or any Other Guarantor; (iv) the granting by ENGS of any indulgences or extensions to Obligor, Guarantor or any Other Guarantor; (v) the assertion by ENGS against Obligor, Guarantor or any Other Guarantor of any of ENGS's rights and remedies provided for under the Program Agreement or existing in its favor in law, equity or bankruptcy; (vi) the release of Obligor, Guarantor or any Other Guarantor from any Obligations under the Program Agreement, this Guaranty or any Other Guarantees by ENGS or by operation of law or otherwise; (vii) any invalidity, irregularity, defect or unenforceability of any provision of any of the Program Agreement, this Guaranty or any Other Guarantees; (viii) any defenses given to guarantors at law or in equity other than actual payment and performance of the Obligations; (ix) the destruction, sale, modification or alteration of any item of the Equipment or Contract; or (x) any future amendment of or change in, this Guaranty, the Program Agreement, any Assignment, any Contact, Other Guarantees, or any other agreement, document or instrument to which Obligor and/or Guarantor is or may become a party.

(b) Guarantor hereby waives notice of and consents to (i) the entering of any Contracts by Obligor for the Equipment, entering into any Assignments and documents related thereto, or any agreements, accommodations, modifications to the Program Agreement, as well as any servicing of the Contracts, including without limitation the billing and collecting of amounts due under the Contracts in Obligors name, by ENGS as well as to any leasing or subleasing or other use of the Equipment permitted by ENGS (regardless of who any such lessee or sublessee or user may be), (ii) all of the provisions of the Program Agreement, and any amendments, qualifications and extensions thereof, and any actions taken thereunder, and (iii) the execution by Obligor of the foregoing documents and of any other agreements, documents and instruments executed by Obligor in connection therewith. Guarantor further waives notice of ENGS's acceptance of this Guaranty, of any default and non-payment and/or non-performance by Obligor under the Program Agreement, of presentment, protest and demand, and of all other matters to which Guarantor might otherwise be entitled. Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any renewal, modification or extension of the term of the Program Agreement or of the terms and conditions of the Program Agreement. Guarantor hereby expressly waives all notice of and consents to any such renewal, modification or extension, and to the execution by Obligor of any documents pertaining to any such renewal, modification or extension. **GUARANTOR CONFIRMS THAT THE FOREGOING WAIVER IS INFORMED AND VOLUNTARY.**

5. **ENGS Waiver**. ENGS shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by ENGS. No delay or omission on the part of ENGS in exercising any right shall operate as a waiver of such right or any other right. Guarantor hereby agrees that the failure of ENGS to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions or covenants of this Guaranty or the Program Agreement, or to exercise any of its rights thereunder or hereunder, shall not be construed or deemed to be a waiver or relinquishment for the future of any such terms, provisions, covenants or rights, but such terms, provisions, covenants and rights shall continue and remain in full force and effect and shall be enforceable under this Guaranty. No delay or failure by ENGS to exercise any right or remedy against Obligor or any Other Guarantor will be construed as a waiver of that right or remedy or as a waiver of any right or remedy against Guarantor. All remedies of ENGS against the Obligor, Guarantor and the Other Guarantors are cumulative. Receipt by ENGS of any payments or other sums payable under the Program Agreement with knowledge that Obligor has breached any of the terms, provisions or covenants of the Program Agreement shall not be deemed to be a waiver by ENGS of such breach, or a release or relinquishment of any claim for future performance under the Program Agreement or this Guaranty.

6. **Subordination/Subrogation**. (a) Guarantor specifically waives any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against the Obligor, Other Guarantor, or any other person or entity directly or contingently liable for the Obligations guaranteed hereunder, or against or with respect to the Obligor's property (including, without limitation, property collateralizing the Program Agreement), arising from the existence or performance of this Guaranty. In addition, Guarantor shall be subrogated to rights of ENGS against the Obligor, Other Guarantor, or any other person or entity directly or contingently liable for the Obligations, and ENGS agrees to take such steps as the Guarantor may reasonably request at, at the Guarantor's expense, to implement such subrogation.

(b) The liability of Guarantor under this Guaranty, and of any Other Guarantors, if any, under Other Guarantees given in favor of ENGS in connection with the Program Agreement, shall be joint and several and shall be irrevocable, unconditional and absolute, continuing in full force and effect according to its terms, until all of the Obligations hereby guaranteed have been fully satisfied. Guarantor covenants and agrees that any indebtedness of Obligor to Guarantor is hereby subordinated to the obligations of Obligor to ENGS, and that after any default under the Program Agreement or any of the other documents evidencing the transactions contemplated hereby, Guarantor shall hold any funds received from Obligor in trust for ENGS to satisfy the obligations of Obligor to ENGS and shall forthwith deliver such funds to ENGS in the form received. This subordination of the indebtedness and other obligations shall continue until all of the Obligations have been paid, performed and satisfied in full.

7. **Assignment**. This Guaranty is assignable by ENGS without notice to Guarantor and Guarantor consents thereto. Guarantor's obligations under this Guaranty may not be delegated to any other person or entity without the prior written consent of ENGS. Any assignee of ENGS shall have all of the rights of ENGS hereunder and may enforce this Guaranty against Guarantor with the same force and effect as if this Guaranty were given to such assignee in the first instance. This Guaranty shall inure to the benefit of ENGS, and its successors and assigns, and shall be binding upon Guarantor and its heirs, administrators, successors and assigns.

8. **Severability/Governing Law**. If any provision of this Guaranty is found by a court of competent jurisdiction to be prohibited or unenforceable, it shall be ineffective only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision to the extent that it is not prohibited or unenforceable, nor invalidate the other provisions hereof, all of which shall be construed liberally in favor of ENGS in order to effect the provisions hereof. This Guaranty is being delivered in, and shall be governed by and construed in accordance with the laws of, the state of Illinois, including all matters of construction, validity and performance, without giving effect to any choice of law or conflict of laws which would result in the application of the law of any other state. Guarantor agrees to pay upon demand all of ENGS's costs and expenses, including reasonable attorneys' fees and court costs, in enforcing payment under this Guaranty, or in the prosecution or defense of any action or proceeding by or against ENGS or the Guarantor concerning any matter arising out of or connected herewith, including without limitation any of the foregoing arising in, arising under or related to a case under the United States Bankruptcy Code. Each of the parties hereto (i) accepts the exclusive jurisdiction of courts, state or federal located in Cook County, Illinois and any related appellate court and agrees to be bound by any judgment rendered by any such court in connection with any such proceeding and (ii) waives any objection it may now or hereafter have as to the venue of any such proceeding brought in such court or that such court is an inconvenient forum. The foregoing shall not prevent any action in any other court to enforce a judgment or to acquire or reacquire possession of any Equipment

9. **Jury Trial Waiver. GUARANTOR HEREBY WAIVES ITS RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS GUARANTY, THE PROGRAM AGREEMENT OR THE TRANSACTIONS CONTEMPLATED THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH GUARANTOR MAY BE A PARTY,**

WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THE PROGRAM AGREEMENT OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY GUARANTOR WHO ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY OR THE PROGRAM AGREEMENT.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the __18__ day of __MARCH__ 20 __20__

_____
**Sulakhan Singh Johal**

Guarantor's Residence Address: __97 COAST LINE DR__
__BRAMPTON ON__

Guarantor's SS#: [REDACTED]

~~STATE~~ Province OF __ONTARIO__        )
                                          ) ss.:
COUNTY OF __Canada__                      )

On this __18__ (Day) day of __March__ (Month), __2020__ (Year), before me the subscriber personally appeared __Sulakhan Johal__, who being by me duly sworn, did depose and say; that he/she resides at __97 COAST LINE DRIVE, BRAMPTON ON__, that he/she is the person described in and who executed the foregoing instrument; and that he/she signed his name thereto freely and of his/her own volition.

_____
NOTARY PUBLIC

My Commission Expires: __Unlimited__

Frederick Jonathan Matthew Gareri
Licensed Paralegal
a Commissioner, etc., in and for
the Courts in Ontario,
while being a Licensed Paralegal.
LSUC # P10284

PERSONAL GUARANTY

**FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which are hereby acknowledged, and in order to induce **ENGS COMMERCIAL FINANCE CO.** ("ENGS") to make certain purchases, financial accommodations, and agreements regarding leases and loans to customers of **TPINE Leasing Capital, L.P., on behalf of itself, its Principal(s) and its Affiliates** ("Obligor") with its principal place of business at 1125 East Alexis Road, Toledo, Ohio 43612providing for the purchase and acquisition by customers of Obligor of certain equipment (the "Equipment") the undersigned, Sulakhan Singh Johal a/k/a Sam Johal ("Guarantor"), residing at the address listed below, hereby absolutely unconditionally and irrevocably guarantees to ENGS the full and prompt payment and performance by Obligor of all Obligations (as that term is defined below), on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

1. **Definitions**: The following words shall have the following meanings in this Guaranty:
"Guaranty" means this Personal Guaranty made by Guarantor for the benefit of ENGS.
"Program Agreement" shall have the meaning set forth in the Program Agreement dated March 18, 2020 entered into between ENGS and TPINE Leasing Capital, L.P., on behalf of itself, its Principal(s) and its Affiliates and shall include all Assignments (as defined therein) and other documents which may be executed by Obligor, its Principals, and Affiliates in furtherance thereof.
"Obligations" means obligations of Obligor under the Program Agreement, including, without limitation, the payment when due of all principal and interest and all other sums currently or hereafter owing by Obligor to ENGS thereunder, including costs, expenses and attorneys fees incurred by ENGS in connection therewith.
"Other Guarantor" means any other guarantor of the Obligations.
"Other Guarantees" means any guaranty by any Other Guarantor.

Capitalized terms not otherwise defined herein have the meaning given in Program Agreement dated March 18, 2020 entered into between ENGS and TPINE Leasing Capital, L.P., on behalf of itself, its Principal(s) and its Affiliates.

2. **Nature of Guaranty**. Guarantor's liability under this Guaranty shall be absolute, primary and direct. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Obligations. Guarantor unconditionally and irrevocably guarantees to ENGS and its assigns the prompt payment in full of all amounts due, financial recourse, indebtedness, indemnity and obligations of every kind and nature now and hereafter owing by the Obligor to ENGS under the Program Agreement as well as any other obligations and indebtedness which the Obligor now owes or may hereafter incur to ENGS under any other agreements or by reason of any agreement, indemnity, Assignment, purchase and funding of Contracts, (as defined in the Program Agreement), financial accommodation including, without limitation, loans of personal property and/or notes and security agreements between ENGS and the Obligor whether now existing or made after the date hereof, whether or not presently contemplated. ENGS shall not be required to pursue any right or remedy it may have against Obligor under the Program Agreement or otherwise (and shall not be required first to commence any action or obtain any judgment against Obligor) before enforcing this Guaranty against Guarantor.

3. **Guarantor's Representations and Warranties**. Guarantor warrants and represents to ENGS that (a) the execution, delivery and performance of this Guaranty will not result in a breach of, or constitute a default under, or result in the creation of any security interest, lien, charge or encumbrance upon any property or assets of Guarantor pursuant to any loan agreement, indenture or contract to which Guarantor is a party or by or under which it is bound; (b) this Guaranty is executed at Obligor's request and not at the request of ENGS; (c) Guarantor is closely affiliated with Obligor and the purchase or financing of the Equipment to Obligor's customer with the proceeds of the Assignment paid by ENGS to Obligor or on behalf of Obligor will result in a direct or indirect material economic benefit to Guarantor; (d) ENGS has made no representation to Guarantor as to the creditworthiness of Obligor; (e) Guarantor has means to and shall keep adequately informed regarding Obligor's financial condition and ENGS shall have no obligation to disclose to Guarantor any information regarding Obligor. Guarantor shall not transfer all or substantially all of its assets by any means including, without limitation, sale, distribution, death, or reorganization, without the prior written consent of ENGS. Upon ENGS's request, Guarantor will provide ENGS any and all financial information concerning Guarantor which ENGS determines within ENG's discretion.

4. **Guarantor Waivers**. (a) Guarantor expressly waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Obligor, the Guarantor or both, in any action or proceeding, in any court, arising on, out of, under, by virtue of, or in any way relating to the Program Agreement, this Guaranty or the transactions contemplated thereby or hereby. Guarantor agrees that this Guaranty shall be valid, enforceable and unconditionally binding upon Guarantor regardless of: (i) the reorganization, merger or consolidation of Obligor into or with another entity, corporate or otherwise, or the sale or other disposition of all or substantially all of the capital stock, business or assets of Obligor to any other person or party; (ii) the death or dissolution of Obligor, Guarantor or any Other Guarantor; (iii) the voluntary or involuntary bankruptcy (including a reorganization in bankruptcy) of Obligor, Guarantor or any Other Guarantor; (iv) the granting by ENGS of any indulgences or extensions to Obligor, Guarantor or any Other Guarantor; (v) the assertion by ENGS against Obligor, Guarantor or any Other Guarantor of any of ENGS's rights and remedies provided for under the Program Agreement or existing in its favor in law, equity or bankruptcy; (vi) the release of Obligor, Guarantor or any Other Guarantor from any Obligations under the Program Agreement, this Guaranty or any Other Guarantees by ENGS or by operation of law or otherwise; (vii) any invalidity, irregularity, defect or unenforceability of any provision of any of the Program Agreement, this Guaranty or any Other Guarantees; (viii) any defenses given to guarantors at law or in equity other than actual payment and performance of the Obligations; (ix) the destruction, sale, modification or alteration of any item of the Equipment or Contract; or (x) any future amendment of or change in, this Guaranty, the Program Agreement, any Assignment, any Contact, Other Guarantees, or any other agreement, document or instrument to which Obligor and/or Guarantor is or may become a party.

(b) Guarantor hereby waives notice of and consents to (i) the entering of any Contracts by Obligor for the Equipment, entering into any Assignments and documents related thereto, or any agreements, accommodations, modifications to the Program Agreement, as well as any servicing of the Contracts, including without limitation the billing and collecting of amounts due under the Contracts in Obligors name, by ENGS as well as to any leasing or subleasing or other use of the Equipment permitted by ENGS (regardless of who any such lessee or sublessee or user may be), (ii) all of the provisions of the Program Agreement, and any amendments, qualifications and extensions thereof, and any actions taken thereunder, and (iii) the execution by Obligor of the foregoing documents and of any other agreements, documents and instruments executed by Obligor in connection therewith. Guarantor further waives notice of ENGS's acceptance of this Guaranty, of any default and non-payment and/or non-performance by Obligor under the Program Agreement, of presentment, protest and demand, and of all other matters to which Guarantor might otherwise be entitled. Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any renewal, modification or extension of the term of the Program Agreement or of the terms and conditions of the Program Agreement. Guarantor hereby expressly waives all notice of and consents to any such renewal, modification or extension, and to the execution by Obligor of any documents pertaining to any such renewal, modification or extension. **GUARANTOR CONFIRMS THAT THE FOREGOING WAIVER IS INFORMED AND VOLUNTARY.**

5. **ENGS Waiver**. ENGS shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by ENGS. No delay or omission on the part of ENGS in exercising any right shall operate as a waiver of such right or any other right. Guarantor hereby agrees that the failure of ENGS to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions or covenants of this Guaranty or the Program Agreement, or to exercise any of its rights thereunder or hereunder, shall not be construed or deemed to be a waiver or relinquishment for the future of any such terms, provisions, covenants or rights, but such terms, provisions, covenants and rights shall continue and remain in full force and effect and shall be enforceable under this Guaranty. No delay or failure by ENGS to exercise any right or remedy against Obligor or any Other Guarantor will be construed as a waiver of that right or remedy or as a waiver of any right or remedy against Guarantor. All remedies of ENGS against the Obligor, Guarantor and the Other Guarantors are cumulative. Receipt by ENGS of any payments or other sums payable under the Program Agreement with knowledge that Obligor has breached any of the terms, provisions or covenants of the Program Agreement shall not be deemed to be a waiver by ENGS of such breach, or a release or relinquishment of any claim for future performance under the Program Agreement or this Guaranty.

6. **Subordination/Subrogation**. (a) Guarantor specifically waives any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against the Obligor, Other Guarantor, or any other person or entity directly or contingently liable for the Obligations guaranteed hereunder, or against or with respect to the Obligor's property (including, without limitation, property collateralizing the Program Agreement), arising from the existence or performance of this Guaranty. In addition, Guarantor shall be subrogated to rights of ENGS against the Obligor, Other Guarantor, or any other person or entity directly or contingently liable for the Obligations, and ENGS agrees to take such steps as the Guarantor may reasonably request at, at the Guarantor's expense, to implement such subrogation.

(b) The liability of Guarantor under this Guaranty, and of any Other Guarantors, if any, under Other Guarantees given in favor of ENGS in connection with the Program Agreement, shall be joint and several and shall be irrevocable, unconditional and absolute, continuing in full force and effect according to its terms, until all of the Obligations hereby guaranteed have been fully satisfied. Guarantor covenants and agrees that any indebtedness of Obligor to Guarantor is hereby subordinated to the obligations of Obligor to ENGS, and that after any default under the Program Agreement or any of the other documents evidencing the transactions contemplated hereby, Guarantor shall hold any funds received from Obligor in trust for ENGS to satisfy the obligations of Obligor to ENGS and shall forthwith deliver such funds to ENGS in the form received. This subordination of the indebtedness and other obligations shall continue until all of the Obligations have been paid, performed and satisfied in full.

7. **Assignment**. This Guaranty is assignable by ENGS without notice to Guarantor and Guarantor consents thereto. Guarantor's obligations under this Guaranty may not be delegated to any other person or entity without the prior written consent of ENGS. Any assignee of ENGS shall have all of the rights of ENGS hereunder and may enforce this Guaranty against Guarantor with the same force and effect as if this Guaranty were given to such assignee in the first instance. This Guaranty shall inure to the benefit of ENGS, and its successors and assigns, and shall be binding upon Guarantor and its heirs, administrators, successors and assigns.

8. **Severability/Governing Law**. If any provision of this Guaranty is found by a court of competent jurisdiction to be prohibited or unenforceable, it shall be ineffective only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision to the extent that it is not prohibited or unenforceable, nor invalidate the other provisions hereof, all of which shall be construed liberally in favor of ENGS in order to effect the provisions hereof. This Guaranty is being delivered in, and shall be governed by and construed in accordance with the laws of, the state of Illinois, including all matters of construction, validity and performance, without giving effect to any choice of law or conflict of laws which would result in the application of the law of any other state. Guarantor agrees to pay upon demand all of ENGS's costs and expenses, including reasonable attorneys' fees and court costs, in enforcing payment under this Guaranty, or in the prosecution or defense of any action or proceeding by or against ENGS or the Guarantor concerning any matter arising out of or connected herewith, including without limitation any of the foregoing arising in, arising under or related to a case under the United States Bankruptcy Code. Each of the parties hereto (i) accepts the exclusive jurisdiction of courts, state or federal located in Cook County, Illinois and any related appellate court and agrees to be bound by any judgment rendered by any such court in connection with any such proceeding and (ii) waives any objection it may now or hereafter have as to the venue of any such proceeding brought in such court or that such court is an inconvenient forum. The foregoing shall not prevent any action in any other court to enforce a judgment or to acquire or reacquire possession of any Equipment

9. **Jury Trial Waiver**. **GUARANTOR HEREBY WAIVES ITS RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS GUARANTY, THE PROGRAM AGREEMENT OR THE TRANSACTIONS CONTEMPLATED THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH GUARANTOR MAY BE A PARTY,**

WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THE PROGRAM AGREEMENT OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY GUARANTOR WHO ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY OR THE PROGRAM AGREEMENT.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the _18_ day of _MARCH_, 20_20_

_J. Johal_
**Jasvir Johal**

Guarantor's Residence Address: _4 Pergola Way, Brampton ON_

Guarantor's SS#: ████████

~~STATE~~ **Province** OF _ONTARIO_        )
                                          ) ss.:
COUNTY OF _CANADA_                        )

On this _18_ (Day) day of _March_ (Month), _2020_ (Year), before me the subscriber personally appeared _JASVIR JOHAL_, who being by me duly sworn, did depose and say; that he/she resides at _4 PERGOLA WAY, BRAMPTON ON_, that he/she is the person described in and who executed the foregoing instrument; and that he/she signed his name thereto freely and of his/her own volition.

_____
NOTARY PUBLIC

My Commission Expires: _Unlimited_

**Frederick Jonathan Matthew Gareri**
Licensed Paralegal
a Commissioner, etc., in and for
the Courts in Ontario,
while being a Licensed Paralegal.
LSUC # P10284