**EXHIBIT 10**

<u>Guarantor Complaints</u>

(See attached)

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MITSUBISHI HC CAPITAL AMERICA, INC. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | No. 24 Civ 433 |
| | ) | |
| vs. | ) | |
| | ) | |
| SULAKHAN JOHAL and JASVIR JOHAL | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Mitsubishi HC Capital America, Inc., formally known as Hitachi Capital America Corp. ("MHCA" or "Plaintiff"), by and through its counsel, and for its Complaint against Sulakhan Johal ("S. Johal") and Jasvir Johal ("J. Johal" or together with S. Johal, the "Defendants"), states and alleges as follows:

## INTRODUCTION

1.      This action stems from Defendants' default under a Personal Guaranty Agreement (the "Defaulted Guaranty").  A true and correct copy of the Defaulted Guaranty signed by Defendants is attached hereto as **Exhibit A**.

2.      Since at least 2014, Plaintiff has provided financing arrangements to Defendants' non-party companies Pride Truck Sales L.P. ("Pride Truck") and Tpine Leasing Capital, L.P. ("Tpine") in the United States.  Under the financing arrangements with Pride Truck, Plaintiff provided floorplan financing to Pride Truck so that Pride Truck could purchase inventory to sell in the ordinary course of its business.  When complying with the terms of the applicable agreement, Pride Truck would use the proceeds of a sale to repay Plaintiff.

3.      Pursuant to obligations set forth under the Defaulted Guaranty**,** Defendants each

agreed to personally guaranty Pride Truck's obligations under the floorplan financing agreement (as described herein).

4.      However, following defaults by Pride Truck, Defendants have defaulted on their obligations under the Defaulted Guaranty.

5.      In fact, Defendants' default under the Defaulted Guaranty is just one of multiple instances in which they failed to honor other guaranty obligations to Plaintiff related to Plaintiff's financing of their two companies.

6.      Despite Plaintiff's notice to Defendants of defaults under the U.S. Financing Agreements (as defined below), Defendants have refused to honor their obligations under the Defaulted Guaranty.  Defendants are personally liable for damages suffered by Plaintiff, and Defendants' refusal to comply with the Defaulted Guaranty necessitated Plaintiff's filing of this action to recover amounts owed by Defendants.  Defendants' defaults under the Defaulted Guaranty have damaged Plaintiff in the approximate amount of no less than $88,800,000.00, which amount continues to accrue interest, expenses, and fees.

## THE PARTIES

7.      Plaintiff MHCA is a Delaware corporation with its principal place of business in Connecticut.  MHCA provides customized financing solutions to businesses to help meet their capital needs.  MHCA offers vehicles, trading, structure, and commercial vehicle finance services.

8.      Defendant Sulakhan Singh Johal a/k/a Sam Johal is a citizen of and domiciled in the Province of Ontario, Canada.

9.      Defendant Jasvir Johal is a citizen of and domiciled in the Province of Ontario, Canada.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship and the matter in controversy exceeds $75,000 exclusive of interests and costs.

11.     Additionally, Defendants contractually agreed to the personal jurisdiction of this Court.  Under Section 8 of the Defaulted Guaranty, each Defendant accepted that all actions arising out of the Defaulted Guaranty may be tried by this Court.  It is an accepted practice for parties to contract to establish exclusive jurisdiction.  *See Onward Search, LLC v. Noble*, 3:22-cv-00369 (VAB), 2022 U.S. Dist. LEXIS 121506, at *21 (D. Conn. July 11, 2022) (citing *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006)).

12.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391, and Defendants contractually agreed that all actions arising directly or indirectly under Section 8 of the Defaulted Guaranty, further described herein, must be instituted and litigated in Connecticut federal or state court.

## FACTUAL ALLEGATIONS

### A.     *Plaintiff Provided Financing to Defendants' Two Companies*

13.     Through a series of agreements, Plaintiff provided financing for two companies that Defendants own.

14.     Specifically, on or around November 21, 2018, Plaintiff entered into the Floorplan and Security Agreement ("Norwalk U.S. Floorplan Agreement") with Pride Truck, in which Defendants each are partners.  A true and correct copy of the Norwalk U.S. Floorplan Agreement is attached hereto as **Exhibit B**.

15.     On or around May 25, 2021, Plaintiff also entered into the Master Lease

Receivables Sale and Assignment Agreement ("Norwalk Master Receivables Purchase Agreement") with Tpine, another company owned by Defendants.

16.     Also on or around May 25, 2021, Plaintiff entered into the Servicing and Remarketing Agreement with Tpine.  The Servicing and Remarketing Agreement and Norwalk Master Receivables Purchase Agreement are by their terms a single undertaking.

17.     On or around May 31, 2023, Plaintiff entered into the Second Amended and Restated Program Agreement ("Program Agreement") with Tpine.  Together, the Norwalk U.S. Floorplan Agreement, Norwalk Master Receivables Purchase Agreement, and Program Agreement are referred to herein as the "U.S. Financing Agreements".  Through the U.S. Financing Agreements, Plaintiff provided to Defendants' companies, Tpine and Pride Truck, financing in the U.S. for: (a) lease and contract receivables generated under commercial vehicle leases originated by Tpine, and (b) dealer floorplan (inventory financing) for Pride Truck.

18.     The Defaulted Guaranty at issue relates to the Norwalk U.S. Floorplan Agreement.

### B.     *The Norwalk U.S. Floorplan Agreement*

19.     Under the Norwalk U.S. Floorplan Agreement, Plaintiff agreed to "extend credit to or on behalf of [Pride Truck] to purchase inventory."  Ex. B at § 1.

20.     The agreement also granted Plaintiff "an absolute and cross-collateralized security interest in" the "Collateral," defined as "all personal property of [Pride Truck], whether such property or [Pride Truck's] right, title or interest therein or thereto is now owned or existing or hereafter acquired or arising, and wherever located, including without limitation, any and all inventory acquired by virtue of any extensions of credit."  *Id. at* § 2(a)-(b).  Collateral also includes all of Pride Truck's "Accounts, Inventory, Equipment, Fixtures, other Goods, General

Intangibles (including Payment Intangibles), Chattel Paper (whether tangible or electronic), Instruments (including Promissory Notes), Insurance (and Insurance proceeds), Deposit Accounts, Investment Property and Documents and all Proceeds and Products of the foregoing." *Id.* at § 2(b). Collateral also includes "all books and records, electronic or otherwise, which evidence or relate to the foregoing personal property, and all computers, disks, media and other devices in which such records are stored." *Id.*

21.     Under this agreement, Pride Truck was also obligated to "keep all Collateral at permitted locations and keep all tangible Collateral safe and secure, in good order, repair and operating condition and insured as required by" Plaintiff. *Id.* at § 4(c).

22.     Further, under this agreement, Pride Truck was prohibited from using (except for demonstration of sale), renting, leasing, selling, transferring, consigning, licensing, encumbering or otherwise disposing of the Collateral without prior written consistent and with only certain limited exceptions. *Id.* at § 4(d).

### C.     *Defendants Agreed to Be Personal Guarantors*

23.     Defendants are personal guarantors for all the U.S. Financing Agreements, including the Norwalk U.S. Floorplan Agreement. *See generally* Ex. A.

24.     On or around July 21 2014, Defendants each "severally request[ed] [Plaintiff] to extend credit to or to purchase security agreements, leases, notes, accounts and/or other obligations." *Id.* at 1. Plaintiff and Defendants entered into the continuing Defaulted Guaranty to induce Plaintiff "to extend such credit or to make such purchase, and in consideration thereof . . . each [Defendant], as a primary obligor, irrevocably and unconditionally, jointly and severally guarantees to [Plaintiff] that [Defendants' company] will fully and promptly pay and perform all of its present and *future* obligations…." *Id*. at § 1 (emphasis added).

25.     The Defaulted Guaranty also provides that Plaintiff and Defendants could enter in "new or additional . . . agreements relating to…said obligations" of the Defaulted Guaranty "without affecting or impairing the obligation of any Guarantor." *Id.* at § 5.

26.     The Defaulted Guaranty, besides serving to "jointly and severally" and "irrevocably and unconditionally" guarantying the obligations of Pride Truck, also guarantied the payment of "all losses, costs, attorneys' fees and expenses which may be suffered by [Plaintiff] by reason of [Pride Truck's] default or default of [either Defendant]. *See* Ex. A at § 1.

27.     Defendants also agreed to waive any rights to demand, setoff, counterclaim, recoupment or similar rights to reduce the amounts owed. *Id.* at § 4.

28.     Moreover, Defendants waived any defenses that they may have other than actual payment and performance under the Defaulted Guaranty. *Id.* Defendants also waived any defenses of the guarantors regarding any invalidity, or unenforceability of any provision of the Program Agreement. *Id.* at §§ 1, 4.

29.     With this guaranty in effect, Plaintiff engaged in further business with Defendants and, on November 21, 2018, executed the Norwalk U.S. Floorplan Agreement.  On or about November 10, 2020, Defendants executed a Forbearance, Waiver and Reaffirmation Agreement and reaffirmed the Defaulted Guaranty.  A true and correct copy of the Forbearance, Waiver and Reaffirmation Agreement is attached hereto as **Exhibit C**.  Plaintiff relied on the Defendants' personal guaranty as a condition to enter into the Forbearance, Waiver and Reaffirmation Agreement.

### D.     *Defendants' Defaults and Refusal to Pay Plaintiff*

30.     By or around December 21, 2023, Pride Truck was in default of the Norwalk U.S. Floorplan Agreement.  Pursuant to Section 7(n) of the Norwalk U.S. Floorplan Agreement,

a Default (as defined therein) occurs if MHCA in good faith believes the prospect of payment of any Obligations (as defined therein) is impaired or it deems itself insecure.  MHCA was notified by Pride Truck on December 21, 2023, that certain Collateral (as defined therein) was also sold or assigned to another third-party purchaser or lender, and therefore, an Event of Default under Section 7(n) of the Norwalk U.S. Floorplan Agreement occurred.

31.     Thus, Defendants were obligated to pay Plaintiff and make them whole pursuant to the Defaulted Guaranty.

32.     However, Defendants have refused to fulfill their obligations.

33.     On December 21, 2023, Plaintiff issued a Notice of Defaults and Reservation of Rights ("Notice of Default") to Defendants and their non-party companies that the default under the Agreement was continuing and remain uncured.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit D**.

34.     To date, neither Defendants nor Defendants' companies, have cured the defaults under the Norwalk U.S. Floorplan Agreement and, thus, remain in breach under the Norwalk U.S. Floorplan Agreement and the Defaulted Guaranty.

35.     As of March 25, 2024, the amount due and owing, not including attorneys' fees and costs or appraisal costs, under the express terms of the Norwalk U.S. Floorplan Agreement is $88,920,679.27.  The damages include the following interest, which continues to accrue and remain subject to further revision by Plaintiff as the full scope of the damages caused by Pride Truck and Defendants crystalizes.

### COUNT I
**(Breach of Guaranty)**

36.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 35 as if fully set forth herein.

37.     Under the Defaulted Guaranty, Plaintiff is entitled to contractual money damages from Defendants as provided therein, both for the amounts due and owing under the Norwalk U.S. Floorplan Agreement and for any damage inflicted upon the Collateral, as well as any and all additional damages specified as a remedy after default.

38.     The Defaulted Guaranty provides that Plaintiff shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

39.     Notwithstanding their contractual obligations set forth in the Defaulted Guaranty and demand made by Plaintiff, each Defendant has failed to fulfill his obligations thereunder.

40.     Defendants' failure and refusal to satisfy Pride Truck's payment obligations to Plaintiff are clear and unambiguous breaches of the Defaulted Guaranty.

41.     As a direct and proximate result, Plaintiff has incurred and continues to incur substantial damages in an amount not less than $88,920,679.27, plus attorney's fees, costs, accruing interest, and costs of suit.  Plaintiff has performed any and all conditions and obligations required of it under the Norwalk U.S. Floorplan Agreement.


WHEREFORE, Plaintiff MHCA respectfully prays that judgment be entered in its favor and against Defendants Sulakhan Johal and Jasvir Johal in the amount no less than $88,920,679.27, plus all past, current and further accruing interest, default interest, attorneys' fees, and costs, and for other and further relief that the Court deems just, equitable, and proper under the circumstances.

Dated: March 25, 2024

Respectfully submitted,

REED SMITH LLP

By:  */s/Richard J. Tannenbaum*
Richard J. Tannenbaum

599 Lexington Avenue
New York, NY
Tel: (212) 549-0299
Email: rtannenbaum@reedsmith.com

*Counsel for Plaintiff Mitsubishi HC Capital
America, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MITSUBISHI HC CAPITAL AMERICA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| vs. | ) | |
| | ) | |
| SULAKHAN JOHAL and JASVIR JOHAL | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT

Mitsubishi HC Capital America, Inc., formally known as Hitachi Capital America Corp. ("MHCA" or "Plaintiff"), by and through its counsel, and for its Complaint against Sulakhan Johal ("S. Johal") and Jasvir Johal ("J. Johal" or together with S. Johal, the "Defendants"), states and alleges as follows:

## INTRODUCTION

1.     This action stems from Defendants' default under two unconditional Personal Guaranty Agreements (collectively, the "Defaulted Guaranties").  A true and correct copy of S. Johal's Personal Guaranty is attached hereto as **Exhibit A**.  A true and correct copy of J. Johal's Personal Guaranty is attached hereto as **Exhibit B**.

2.     Since at least 2014, Plaintiff has provided financing arrangements to Defendants' non-party companies Pride Truck Sales L.P. ("Pride Truck") and Tpine Leasing Capital, L.P. ("Tpine") in the United States.  Under the financing arrangements with Tpine, Plaintiff purchased certain lease and/or contract receivables from Tpine at a discount.  Under the arrangement, Tpine received cash immediately and Plaintiff received an income stream.

3.     Pursuant to obligations set forth under the Defaulted Guaranties**,** Defendants

each agreed to personally guaranty Tpine's obligations under the financing arrangement described herein.

4.      However, following defaults by Tpine, Defendants have defaulted on their obligations under these Defaulted Guaranties.

5.      In fact, Defendants' default under the Defaulted Guaranties is just one of multiple instances in which they failed to honor other guaranty obligations to Plaintiff related to Plaintiff's financing of their two companies.

6.      Despite Plaintiff's notice to Defendants of defaults under the U.S. Financing Agreements (as defined below), Defendants have refused to honor their obligations under the Defaulted Guaranties.  Defendants are personally liable for damages suffered by Plaintiff, and Defendants' refusal to comply with the Defaulted Guaranties necessitated Plaintiff's filing of this action to recover amounts owed by Defendants.  Defendants' defaults under the Defaulted Guaranties have damaged Plaintiff in amounts exceeding $75,000.

## THE PARTIES

7.      Plaintiff MHCA is a Delaware corporation with its principal place of business in Connecticut.  ENGS Commercial Finance Co. ("ENGS"), MHCA's predecessor by merger and in interest, was a California corporation with its principal place of business in Illinois.  MHCA provides customized financing solutions to businesses to help meet their capital needs.  MHCA offers vehicles, trading, structure, and commercial vehicle finance services.

8.      Defendant Sulakhan Singh Johal a/k/a Sam Johal is a citizen of and domiciled in the Province of Ontario, Canada.

9.      Defendant Jasvir Johal is a citizen of and domiciled in the Province of Ontario, Canada.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C.

§ 1332(a)(1) because there is complete diversity of citizenship and the matter in controversy

exceeds $75,000 exclusive of interests and costs.

11.     Additionally, Defendants contractually agreed to the personal jurisdiction of this

Court.   Under Section 8 of the Defaulted Guaranties, each party accepted "the exclusive

jurisdiction" of this Court, and parties can contract to establish exclusive jurisdiction.  *See Heller*

*Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1291-92 (7th Cir. 1989).

12.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391, and Defendants

contractually agreed that all actions arising directly or indirectly under Section 8 of the Defaulted

Guaranties, further described herein, must be instituted and litigated in either federal or state court

in Illinois.

## FACTUAL ALLEGATIONS

### A.     *Plaintiff Provided Financing to Defendants' Two Companies*

13.     Through a series of agreements, Plaintiff provided financing arrangements for

two companies that Defendants own.

14.     Specifically, on or around November 21, 2018, Plaintiff entered into the

Floorplan and Security Agreement ("Norwalk U.S. Floorplan Agreement") with Pride Truck, in

which Defendants are each partners.

15.     On or around May 25, 2021, Plaintiff also entered into the Master Lease

Receivables Sale and Assignment Agreement ("Norwalk Master Receivables Purchase

Agreement") with Tpine, another company owned by Defendants.

16.     Also, on or around May 25, 2021, Plaintiff entered into the Servicing and

3

Remarketing Agreement with Tpine. The Servicing and Remarketing Agreement and Norwalk Master Receivables Purchase Agreement are by their terms a single undertaking.

17.     On or around May 31, 2023, Plaintiff entered into the Second Amended and Restated Program Agreement ("Program Agreement") with Tpine. A true and correct copy of the Program Agreement is attached hereto as **<u>Exhibit C</u>**. The original version of the Program Agreement was entered into by Plaintiff's predecessor by merger and in interest, ENGS, on March 18, 2020.

18.     Together, the Norwalk U.S. Floorplan Agreement, Norwalk Master Receivables Purchase Agreement, and Program Agreement are referred to herein as the "U.S. Financing Agreements." Through the U.S. Financing Agreements, Plaintiff provided to Defendants' companies, Tpine and Pride Truck, financing in the U.S. for: (a) lease and contract receivables generated under commercial vehicle leases originated by Tpine, and (b) dealer floorplan (inventory financing) for Pride Truck.

19.     Under the Program Agreement, Tpine agreed to sell to Plaintiff all its right, title, and interest to certain Contracts (defined as leases, conditional sale agreements, or other evidence or form of payment obligation and/or security interest), including all related guaranties, insurance proceeds, vendor warranties, and any other amounts due under the Contracts. *See* Ex. C, at § 2.2.

**B.      *Defendants Agreed to Be Personal Guarantors***

20.     To further induce Plaintiff to enter into the Program Agreement, Defendants each provided an unconditional personal guaranty of Tpine's obligations under the Program Agreement. Defendants entered into the Defaulted Guaranties on or around March 18, 2020, at the same time Tpine entered into the Program Agreement.

21.     Under Section 5.3(f) of the Program Agreement, Defendants agreed to be a

Guarantor of Tpine's "payment obligations and other obligations under this Agreement and any Assignment." *See* Ex. C at § 5.3(f). Defendants agreed to "be responsible for the representation, warranties, and obligations of Seller, including, without limitation, the obligation to maintain loss reserve amounts." *Id.*

22.     The Defaulted Guaranties serve to guaranty the obligations of Tpine under the Program Agreement, including the payment of all principal and interest and all other sums then and thereafter incurred by Tpine, including costs, expenses, and attorneys' fees. *See* Ex. A and Ex. B at § 2.

23.     Under the Defaulted Guaranties, Defendants waived any rights to demand, setoff, counterclaim, recoupment, or similar rights to reduce the amounts owed. *Id.* at § 4.

24.     Moreover, Defendants waived any defenses that they may have other than actual payment and performance under the Defaulted Guaranties. *Id.* Defendants also waived any defenses of the guarantors regarding any invalidity, irregularity, defect, or unenforceability of any provision of the Program Agreement. *Id.*

### C.     *Defendants' Defaults and Refusal to Pay Plaintiff*

25.     By or around December 21, 2023, Tpine and Defendants were in default of the Program Agreement and Defaulted Guaranties for, among other things, assigning or selling certain contracts under the Program Agreement in violation of the Program Agreement. Pursuant to Section 5.1(l) of the Program Agreement, Tpine represented and warranted that, it had not assigned or pledged any part of the rights assigned thereunder to anyone other than MHCA or its designees. Tpine notified MHCA on December 21, 2023 that certain Contracts (as defined in the Program Agreement) assigned thereunder were also sold or assigned to another third party purchaser or lender, and therefore, an Event of Default under Section 7.1(a) of the Program

Agreement occurred.

26.     On December 21, 2023, Plaintiff issued a Notice of Defaults and Reservation of Rights ("Notice of Default") to Defendants and their non-party companies that the default under the Program Agreement was continuing and remain uncured.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit D**.

27.     To date, neither Defendants, nor Defendants' companies, have cured the defaults under the Program Agreement and, thus, remain in breach of the Program Agreement and the Defaulted Guaranties.

28.     Due to the breach of the Defaulted Guaranties, the damages exceed $75,000 (exclusive of fees and interest, which continue to accrue) and remain subject to further revision by Plaintiff as the full scope of the damages caused by Defendants crystalizes.

## COUNT I
### (Breach of Guaranty)

29.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 28 as if fully set forth herein.

30.     Under the Defaulted Guaranties, Plaintiff is entitled to contractual money damages from Defendants as provided therein, both for the amounts due and owing under the Program Agreement and for any damage inflicted upon the collateral, as well as any and all additional damages specified as a remedy after default.

31.     The Defaulted Guaranties provide that Plaintiff shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

32.     Notwithstanding their contractual obligations set forth in the Defaulted Guaranties and demand made by Plaintiff, each Defendant has failed to fulfill his obligations thereunder.

6

33.     Defendants' failure and refusal to satisfy Tpine's payment obligations to Plaintiff are clear and unambiguous breaches of the Defaulted Guaranties.

34.     As a direct and proximate result, Plaintiff has incurred and continues to incur substantial damages.  Plaintiff has performed any and all conditions and obligations required of it under the Program Agreement.

WHEREFORE, Plaintiff MHCA respectfully prays that judgment be entered in its favor and against Defendants Sulakhan Johal and Jasvir Johal for all money damages incurred due to their breach, and for other and further relief that the Court deems just, equitable, and proper under the circumstances.


Dated: March 25, 2024

Respectfully submitted,

REED SMITH LLP

By:  */s/ John R. Casey III*
John R. Casey III (ARDC #6338796)

10 S Wacker Drive, Suite 4000
Chicago, IL 60606
Tel: (312) 207-1000
Email: jcasey@reedsmith.com

*Counsel for Plaintiff Mitsubishi HC Capital America, Inc.*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MITSUBISHI HC CAPITAL AMERICA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 24 Civ. 2205 |
| | ) | |
| vs. | ) | |
| | ) | |
| SULAKHAN JOHAL and JASVIR JOHAL | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT

Mitsubishi HC Capital America, Inc., formally known as Hitachi Capital America Corp. ("MHCA" or "Plaintiff"), by and through its counsel, and for its Complaint against Sulakhan Johal ("S. Johal") and Jasvir Johal ("J. Johal" or together with S. Johal, the "Defendants"), states and alleges as follows:

## INTRODUCTION

1.      This action stems from Defendants' default under two unconditional Personal Guaranty Agreements (collectively, the "Defaulted Guaranties").  A true and correct copy of S. Johal's Personal Guaranty is attached hereto as **Exhibit A**.  A true and correct copy of J. Johal's Personal Guaranty is attached hereto as **Exhibit B**.

2.      Since at least 2014, Plaintiff has provided financing arrangements to Defendants' non-party companies Pride Truck Sales L.P. ("Pride Truck") and Tpine Leasing Capital, L.P. ("Tpine") in the United States.  Under the financing arrangements with Tpine, Plaintiff purchased certain lease and/or contract receivables from Tpine at a discount.  Under the arrangement, Tpine received cash immediately and Plaintiff received an income stream.

3.      Pursuant to obligations set forth under the Defaulted Guaranties**,** Defendants

each agreed to personally guaranty Tpine's obligations under the financing arrangement described herein.

4.      However, following defaults by Tpine, Defendants have defaulted on their obligations under these Defaulted Guaranties.

5.      In fact, Defendants' default under the Defaulted Guaranties is just one of multiple instances in which they failed to honor other guaranty obligations to Plaintiff related to Plaintiff's financing of their two companies.

6.      Despite Plaintiff's notice to Defendants of defaults under the U.S. Financing Agreements (as defined below), Defendants have refused to honor their obligations under the Defaulted Guaranties.  Defendants are personally liable for damages suffered by Plaintiff, and Defendants' refusal to comply with the Defaulted Guaranties necessitated Plaintiff's filing of this action to recover amounts owed by Defendants.  Defendants' defaults under the Defaulted Guaranties have damaged Plaintiff in the approximate amount of no less than $2,160,000.00.

## THE PARTIES

7.      Plaintiff MHCA is a Delaware corporation with its principal place of business in Connecticut.  MHCA provides customized financing solutions to businesses to help meet their capital needs.  MHCA offers vehicles, trading, structure, and commercial vehicle finance services.

8.      Defendant Sulakhan Singh Johal a/k/a Sam Johal is a citizen of and domiciled in the Province of Ontario, Canada.

9.      Defendant Jasvir Johal is a citizen of and domiciled in the Province of Ontario, Canada.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship and the matter in controversy exceeds $75,000 exclusive of interest and costs.

11.     Additionally, Defendants contractually agreed to the personal jurisdiction of this Court.  Under Section 6.02 (titled "Consent to Jurisdiction") of the Defaulted Guaranties, each Defendant accepted "the exclusive jurisdiction" of this Court.  It is an accepted practice for parties to contract to establish exclusive jurisdiction.  *Khelalfa v. GE*, No. 1:19-cv-10727-MKV, 2021 U.S. LEXIS 266838, *10 (S.D.N.Y. Mar. 22, 2021) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language.").

12.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391, and Defendants contractually agreed that all actions arising directly or indirectly under Section 6.02 of the Defaulted Guaranties, further described herein, must be instituted and litigated in New York federal or state court.

## FACTUAL ALLEGATIONS

### A.     *Plaintiff Provided Financing to Defendants' Two Companies*

13.     Through a series of agreements, Plaintiff provided financing arrangements for two companies that Defendants own.

14.     Specifically, on or around November 21, 2018, Plaintiff entered into the Floorplan and Security Agreement ("Norwalk U.S. Floorplan Agreement") with Pride Truck, in which Defendants are each partners.

15.     On or around May 25, 2021, Plaintiff also entered into the Master Lease Receivables Sale and Assignment Agreement ("Norwalk Master Receivables Purchase

3

Agreement") with Tpine, another company owned by Defendants.  A true and correct copy of the Norwalk Master Receivables Purchase Agreement is attached hereto as **Exhibit C**.

16.     Also on or around May 25, 2021, Plaintiff entered into the Servicing and Remarketing Agreement with Tpine.  A true and correct copy of the Norwalk Servicing and Remarketing Agreement is attached hereto as **Exhibit D**.  The Servicing and Remarketing Agreement and Norwalk Master Receivables Purchase Agreement are by their terms a single undertaking.

17.     On or around May 31, 2023, Plaintiff entered into the Second Amended and Restated Program Agreement ("Program Agreement") with Tpine.

18.     Together, the Norwalk U.S. Floorplan Agreement, Norwalk Master Receivables Purchase Agreement, and Program Agreement are referred to herein as the "U.S. Financing Agreements".  Through the U.S. Financing Agreements, Plaintiff provided to Defendants' companies, Tpine and Pride Truck, financing in the U.S. for: (a) lease and contract receivables generated under commercial vehicle leases originated by Tpine, and (b) dealer floorplan (inventory financing) for Pride Truck.

19.     The Defaulted Guaranties at issue relate to the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement.

**B.     The Norwalk Master Receivables Purchase Agreement**

20.     Under the Norwalk Master Receivables Purchase Agreement, Defendants' company Tpine, which "[i]n its normal course of business . . . provides equipment lease financing for commercial vehicles," agreed to sell from time to time to Plaintiff "the rentals payable under certain of those leases, on the terms and conditions set forth" in the agreement.  Ex. C, at 1.

21.     Further, Tpine agreed to "provide financial accommodations to and for the benefit of" Tpine, while Tpine agreed to "provide servicing for the purchased lease receivables

and remarketing for leased equipment in accordance with the terms of this Agreement." *Id.*

### C.     Defendants Agreed to Be Personal Guarantors

22.     Defendants are personal guarantors for all the U.S. Financing Agreements, including the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement.  *See* Ex. A; Ex. B.

23.     On or around March 25, 2021, which is around when the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement were executed, Defendants each entered into the Defaulted Guaranties.

24.     The Defaulted Guaranties serve to "jointly and severally and unconditionally and irrevocably" guaranty the obligations of Tpine, including the payment of all principal and interest and all other sums then and thereafter incurred by Tpine, including costs, expenses, and attorneys' fees.  *See* Ex. A and Ex. B at §§ 3.01, 9.01.

25.     The Defaulted Guaranties state that "the liability of [Defendants] under this Guaranty shall be absolute and unconditional . . . ."  *Id.* at § 3.02.

26.     Defendants also agreed to waive any rights to setoff, counterclaim, recoupment or similar rights to reduce the amounts owed.  *Id.* at § 5.01.  Defendants' obligations under the Defaulted Guaranties are absolute, regardless of notice or suit thereunder.  *Id.* at § 3.03.

27.     Moreover, Defendants waived any defenses that they may have other than actual payment and performance under the Defaulted Guaranties.  *Id.* at §§ 3.02, 5.01.

### D.     Defendants' Defaults and Refusal to Pay Plaintiff

28.     By or around December 21, 2023, Tpine was in default of the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement.  In the Norwalk Master Receivables Purchase Agreement, Tpine represents and warrants that, except as set forth therein, none of the Lease Receivables and other Transferred Assets (each as defined under the

Norwalk Master Receivables Purchase Agreement) would be assigned to any other Person or are subject to any lien other than that created thereby. Tpine notified Plaintiff on December 21, 2023 that certain Lease Receivables and Transferred Assets were also assigned to another third party purchaser or lender, and therefore, an Event of Default under Section 3.3(e) of the Master Assignment Agreement occurred. Pursuant to Section 6.01(c) of the Servicing and Remarketing Agreement, an event of default shall occur upon a breach by Tpine of any of its obligations under the Norwalk Master Receivables Purchase Agreement, therefore a Servicer Event of Default (as defined in the Servicing and Remarketing Agreement) has occurred.

29.     Thus, Defendants were obligated to pay Plaintiff and make it whole pursuant to the Defaulted Guaranties.

30.     However, Defendants have refused to fulfill their obligations.

31.     On December 21, 2023, Plaintiff issued a Notice of Defaults and Reservation of Rights ("Notice of Default") to Defendants and their non-party companies that the default under the Agreement was continuing and remain uncured. A true and correct copy of the Notice of Default is attached hereto as **Exhibit E**.

32.     To date, neither Defendants nor Defendants' companies, have cured the defaults under the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement and, thus, remain in breach of the Norwalk Master Receivables Purchase Agreement, the Servicing and Remarketing Agreement, and the Defaulted Guaranties.

33.     As of March 25, 2024, the amount due and owing, not including attorneys' fees and costs or appraisal costs, under the express terms of the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement, is $2,168,746.87. The damages continue to accrue (including fees and costs) and remain subject to further revision by Plaintiff as the full scope of the damages caused by Tpine and Defendants crystalizes.

## COUNT I
### (Breach of Guaranty)

34.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 33 as if fully set forth herein.

35.     Under the Defaulted Guaranties, Plaintiff is entitled to contractual money damages from Defendants as provided therein, both for the amounts due and owing under the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement, and for any damage inflicted upon the collateral, as well as any and all additional damages specified as a remedy after default.

36.     The Defaulted Guaranties provide that Plaintiff shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

37.     Notwithstanding their contractual obligations set forth in the Defaulted Guaranties and demand made by Plaintiff, each Defendant have failed to fulfill his obligations thereunder.

38.     Defendants' failure and refusal to satisfy Tpine's payment obligations to Plaintiff are clear and unambiguous breaches of the Defaulted Guaranties.

39.     As a direct and proximate result, Plaintiff has incurred and continues to incur substantial damages in an amount not less than $2,168,746.87, plus attorney's fees and costs and costs of suit.  Plaintiff has performed any and all conditions and obligations required of it under the Norwalk Master Receivables Purchase Agreement and Servicing and Remarketing Agreement.

WHEREFORE, Plaintiff MHCA respectfully prays that judgment be entered in its favor and against Defendants Sulakhan Johal and Jasvir Johal in the amount no less than $2,168,746.87, plus all past, current and further accruing interest, default interest, attorneys' fees, and costs, and for other and further relief that the Court deems just, equitable, and proper under the circumstances.

Dated: March 25, 2024

Respectfully submitted,

REED SMITH LLP

By: */s/ Hyuna Yong*
Hyuna Yong
599 Lexington Avenue
New York, NY
Tel: (212) 549-0299
Email: hyong@reedsmith.com

*Counsel for Plaintiff Mitsubishi HC Capital
America, Inc.*