## Exhibit A

SPA

**SHARE PURCHASE AGREEMENT**

between

**PERGOLA HOLDINGS, CORP.**

and

**RASHPAL JOHAL**

dated as of

December 3, 2024

## SHARE PURCHASE AGREEMENT

This Share Purchase Agreement (this "**Agreement**"), dated as of the 3rd day of December 2024, is entered into between Pergola Holdings, Corp., a Delaware corporation ("**Seller**"), and Rashpal Johal, an individual ("**Buyer**" and together with the Seller, the "**Parties**").

### RECITALS

**WHEREAS**, pursuant to an order granted on March 27, 2024 (as amended and restated from time to time, the "**Initial Order**") of the Ontario Superior Court of Justice (Commercial List) (the "**CCAA Court**"), the Seller and certain of its subsidiaries and affiliates, including the Company (as defined below) (collectively, the "**Pride Entities**") were granted a stay of proceedings and other relief under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (the "**CCAA Proceedings**"), which such Initial Order was recognized and given full force and effect in the United States pursuant to the final recognition order granted by the United States Bankruptcy Court for the District of Delaware on May 2, 2024 pursuant to Chapter 15 of Title 11 of the Bankruptcy Code (the U.S. proceedings, the "**Chapter 15 Proceedings**");

**AND WHERERAS**, pursuant to the Initial Order, (i) Ernst & Young Inc. was appointed as the monitor of the Pride Entities (in such capacity, the "**Monitor**"), and (ii) RC Benson Consulting Inc. was appointed as Chief Restructuring Officer of the Pride Entities (in such capacity, the "**CRO**");

**AND WHEREAS**, Seller owns all of the issued and outstanding shares (the "**Shares**") in 963 Sweetwater Holding Corp., a Florida corporation (the "**Company**");

**AND WHEREAS**, Seller wishes to sell to Buyer, and Buyer wishes to purchase from Seller, the Shares, subject to the terms and conditions set forth herein; and

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### ARTICLE I
### INTERPRETATION

**Section 1.01    Definitions.** In this Agreement, unless there is something inconsistent in the subject matter or context:

"**Agreement**" means this agreement to purchase and sell the Shares of the Company;

"**Approval and Vesting Order**" means an Order of the CCAA Court, substantially in the form attached as **Schedule "A"** hereto, inter alia, approving this Agreement and vesting in the Buyer all of the Shares free and clear of all Encumbrances;

"**Closing**" means the completion of the sale to and purchase by the Buyer of the Shares;

"**Closing Date**" means the date the Monitor delivers its Monitor's Certificate to the Parties confirming Closing has been completed;

"**Encumbrances**" means any right, title or interest of any person in the Shares, including any security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges (including the Charges as defined in and created by the Initial Order), or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise;

"**Governmental Authorities**" means governments, regulatory authorities, governmental departments, agencies, commissions, bureaus, officials, ministers, Crown corporations, courts, bodies, boards, tribunals or dispute settlement panels or other law or regulation-making organizations or entities:

> (a) having or purporting to have jurisdiction on behalf of any nation, province, territory or state or any other geographic or political subdivision of any of them; or
>
> (b) exercising, or entitled or purporting to exercise any administrative, executive, judicial, legislative, policy, regulatory or taxing authority or power;

"**Laws**" means currently existing applicable statutes, by-laws, rules, regulations, orders, ordinances or judgments, in each case of any Governmental Authority having the force of law;

"**Monitor's Certificate**" means the certificate delivered to each of the Parties and filed with the CCAA Court by the Monitor certifying receipt of the Purchase Price and satisfaction of the closing deliverables provided for herein; and

"**Taxes**" means taxes, duties, fees, premiums, assessments, imposts, levies and other similar charges imposed by any Governmental Authority under applicable Law, including all interest, penalties, fines, additions to tax or other additional amounts imposed by any Governmental Authority in respect thereof, and including those levied on, or measured by, or referred to as, income, gross receipts, profits, capital, transfer, land transfer, sales, goods and services, harmonized sales, use, value-added, excise, stamp, withholding, business, franchising, property, development, occupancy, employer health, payroll, employment, health, social services, education and social security taxes, all surtaxes, all customs duties and import and export taxes, countervail and anti-dumping, all licence, franchise and registration fees.

**Section 1.02   Schedules.** The schedules to this Agreement listed below are an integral part of this Agreement:

Schedule "A" – Approval and Vesting Order

## ARTICLE II
## PURCHASE AND SALE

**Section 2.01   Action by Seller and Buyer.** Subject to the provisions of this Agreement, at Closing:

(a)     **Purchase and Sale of Shares** – Seller shall sell to Buyer, and Buyer shall purchase from Seller, the Shares, free and clear of Encumbrances, provided that nothing herein shall vest away the Company's mortgage obligation to RBC Bank (Georgia), N.A. recorded at ORB 34154, Page 894, Public Records of Palm Beach County, Florida (the "**RBC Mortgage**"), which shall continue as a binding obligation of the Company;

(b)     **Payment of Purchase Price** – the Buyer shall pay to the Monitor at the Closing, as the Monitor may direct, the Purchase Price. The "**Purchase Price**" shall be equal to US$4,425,000.00 minus the following amounts:

(i)     The outstanding principal and interest due on the RBC Mortgage as of the Closing,

(ii)     The outstanding 2024 property taxes for the property located at 255 NE Spanish Court, Boca Raton, FL, 33432 (the "**Property Taxes**") (which shall be prorated between the Parties as of the Closing Date), and

(iii)     The 3% broker fee due to Compass Florida LLC ("**Compass**"), as of the Closing (the "**Broker Fee**").

The final Purchase Price, reflecting these adjustments, shall be exchanged between the Seller and Buyer no later than three days prior to the Closing.

(c)     **Payment of Property Taxes and Broker Fee** – Buyer covenants and agrees to pay, in each case, the entirety of the Property Taxes and the Broker Fee to the proper governmental authority and Compass, respectively, on or before Closing.

(d)     "**As Is, Where Is**" **Sale** – the Buyer acknowledges to and in favour of the Seller that the Buyer has conducted its own investigations and inspections of the Shares and that the Buyer is responsible for conducting its own investigations of all matters and things connected with or in any way related to the Shares, that the Buyer has relied upon its own investigations and inspections in entering in this Agreement, that the Buyer is purchasing the Shares on an "as is, where is" basis as at the Closing Date, and that the Buyer hereby acknowledges that neither the Seller, CRO or Monitor has made any representations, warranties, statements or promises with respect to the Shares, save and except as are contained herein, including as to title, and that any and all conditions and warranties expressed or implied by the *Sale of Goods Act* (Ontario) do not apply to the sale of the Shares and are hereby waived by the Buyer; and

(e)     **Other Documents** – the Seller and the Buyer shall deliver such other documents as may be reasonably necessary to complete the transaction contemplated by this Agreement.

## ARTICLE III
## CLOSING

**Section 3.01    Closing.** The closing of the transaction contemplated by this Agreement (the "**Closing**") shall take place at the offices of Thornton Grout Finnigan LLP, Suite 3200, 100 Wellington Street West, Toronto, Ontario, M5K 1K7 or such other place as may be agreed upon by the Parties. The Closing shall be deemed to be effective as of the date and time set out in the Monitor's Certificate.

**Section 3.02    Seller's Closing Deliverables.** At the Closing, Seller shall deliver to Buyer the following:

(a)    Approval and Vesting Order granted by the CCAA Court;

(b)    Order granted by the United States Bankruptcy Court for the District of Delaware approving the transaction contemplated hereby in the Chapter 15 Proceedings;

(c)    Share certificates evidencing the Shares, duly endorsed in blank for transfer, or accompanied by irrevocable security transfer powers of attorney duly executed in blank; and

(d)    Copies of any articles of incorporation, by-laws or other constating documents of the Company (collectively, the "**Constating Documents**") in the Seller's possession; and

**Section 3.03    Buyer's Closing Deliveries.** At the Closing, Buyer shall

(a)    deliver the Purchase Price to the Monitor; and

(b)    provide confirmation of payment of Property Taxes and the Broker Fee in accordance with Section 2.01(c).

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this Article IV are true and correct as of the date hereof.

**Section 4.01    Organization and Authority of Seller.** Seller is a corporation duly organized under the Laws of the State of Delaware. Seller has full corporate power and authority to enter into this Agreement, to carry out its obligations hereunder, and to consummate the transaction contemplated hereby and thereby.

**Section 4.02    Organization, Authority, and Qualification of the Company.** The Company is a corporation duly organized under the Laws of the State of Florida.

**Section 4.03    Capitalization.**

5

(a)     The authorized shares of the Company consist of one thousand (1,000) common shares, of which 1,000 shares are issued and outstanding and constitute the Shares. Upon the transfer, assignment, and delivery of the Shares and payment therefor in accordance with the terms of this Agreement, Buyer shall own all of the Shares, free and clear of all Encumbrances.

(b)     There are no outstanding or authorized options, warrants, convertible securities, stock appreciation, profit participation, or other rights, agreements, or commitments relating to the shares of the Company or obligating Seller or the Company to issue or sell any shares of, or any other interest in, the Company.

**Section 4.04   No Conflicts or Consents.** Subject to obtaining the Approval and Vesting Order, the execution, delivery, and performance by Seller of this Agreement and the consummation of the transaction contemplated hereby does not: (a) violate or conflict with any provision of the certificate of incorporation, by-laws, or other governing documents of Seller or the Company; or (b) violate or conflict with any Laws.

**Section 4.05   Corporate Actions.** The Seller and Company have not taken any corporate action to amend the Constating Documents or to dissolve the Company or otherwise terminate its corporate existence.

**Section 4.06   Preservation of Records.** The Buyer shall take all reasonable steps to preserve and keep the records of the Company in connection with the completion of the transaction contemplated by this Agreement for a period of six years from the Closing Date, or for any longer periods as may be required by any Laws, and shall make such records available to the Monitor or CRO on a timely basis as may be requested by either of them.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this Article V are true and correct as of the date hereof.

**Section 5.01   No Conflicts; Consents.** The execution, delivery, and performance by Buyer of this Agreement and the consummation of the transaction contemplated hereby does not and will not: (a) violate or conflict with any provision of any Law or Governmental Order applicable to Buyer; or (b) require the consent, notice, declaration, or filing with or other action by any person or require any permit, license, or Governmental Order.

**Section 5.02   Investment Purpose.** Buyer is acquiring the Shares solely for its own account for investment purposes and not with a view to, or for offer or sale in connection with, any distribution thereof or any other security related thereto within the meaning of the (State of Florida) Securities Act of 1933, as amended (the "**Securities Act**"). Buyer acknowledges that Seller has not registered the offer and sale of the Shares under the Securities Act or any state securities laws, and that the Shares may not be pledged, transferred, sold, offered for sale, hypothecated, or otherwise disposed of except pursuant to the registration provisions of the

Securities Act or pursuant to an applicable exemption therefrom and subject to state securities laws and regulations, as applicable.

## ARTICLE VI
## COVENANTS

**Section 6.01   Confidentiality.** From and after the Closing, Seller shall, and shall cause its affiliates and its and their respective directors, officers, employees, consultants, counsel, accountants, and other agents (collectively, "**Representatives**") to, hold in confidence any and all information, in any form, concerning the Company, except to the extent that such information: (a) is required to be made available pursuant to the CCAA Proceedings, including with respect to seeking the Approval and Vesting Order; (b) is generally available to and known by the public through no fault of Seller, any of its affiliates, or their respective Representatives; or (c) is lawfully acquired by Seller, any of its affiliates, or their respective Representatives from and after the Closing from sources which are not prohibited from disclosing such information by any obligation.

**Section 6.02   Independent Legal Advice.**   The Buyer warrants that it has received independent legal advice in connection with this Agreement.

**Section 6.03   Further Assurances.** Following the Closing, each of the parties hereto shall, and shall cause their respective affiliates to, execute and deliver such additional documents and instruments and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transaction contemplated by this Agreement.

**Section 6.04   Approval and Vesting Order.** Prior to the Closing Time, Seller shall have obtained the Approval and Vesting Order vesting title to the Shares in the Buyer free and clear of all Encumbrances and, at the Closing Time, such order shall not have been stayed, suspended, set aside, varied or appealed and no motion to stay, suspend the operation of, set aside or vary such order shall be served. If such Approval and Vesting Order is not granted by the CCAA Court by December 30, 2024, the Buyer or Seller shall be entitled to terminate this Agreement.

**Section 6.05   Monitor's Certificate.** The Monitor shall file the Monitor's Certificate upon the Approval and Vesting Order having been obtained and the Parties having confirmed to the Monitor that the Closing Deliverables at sections 3.02 and 3.03 herein have been satisfied. The Monitor shall have no liability to the Parties or any other person as a result of filing the Monitor's Certificate. If, for any reason, the transaction contemplated by this Agreement does not close and the Monitor has not delivered its completed Monitor's Certificate by December 30, 2024, then the Buyer or Seller shall be entitled to terminate this Agreement.

## ARTICLE VII
## MISCELLANEOUS

**Section 7.01   Survival.** None of the representations and warranties contained in this Agreement on the part of either of the Parties shall survive the Closing.

**Section 7.02   Monitor's Capacity.** Notwithstanding anything else contained herein or elsewhere, each of the Buyer and Seller acknowledges and agrees that: (a) the Monitor's

obligations hereunder are limited to those specifically set out herein; and (b) Ernst & Young Inc., is acting solely in its capacity as monitor of the Seller and Company in the CCAA Proceedings and not in its personal or corporate capacity, and has no liability in connection with this Agreement whatsoever, in its personal or corporate capacity or otherwise, save and except for the Monitor's gross negligence or willful misconduct.

**Section 7.03    Expenses.** All costs and expenses incurred in connection with this Agreement and the transaction contemplated hereby shall be paid by the party incurring such costs and expenses.

**Section 7.04    Notices.** All notices, claims, demands, and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or email of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid, if sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this section):

|  |  |
|---|---|
| **If to Seller:** | **Thornton Grout Finnigan LLP**<br>100 Wellington Street West, Suite 3200<br>Toronto, ON M5K 1K7<br>Attention: Leanne Williams / Rachel Nicholson / Puya Fesharaki<br>Tel: (416) 304-0060 / (416) 304-1153 / (416) 304-7979<br>Email: lwilliams@tgf.ca / rnicholson@tgf.ca / pfesharaki@tgf.ca |
| with a copy (which shall not constitute notice) to: | **Blake, Cassels & Graydon LLP**<br>199 Bay Street, Suite 4000, Commerce Court West<br>Toronto, ON M5L 1A9<br>Attention: Pamela Huff / Chris Burr / Daniel Loberto<br>Tel: (416) 863-2958 / (416) 863-3261 / (416) 863-2927<br>Email: pamela.huff@blakes.com / chris.burr@blakes.com / daniel.loberto@blakes.com |
| **If to Buyer:** | Rashpal Johal<br>6050 Dixie Road<br>Mississauga, ON L5T 1A6<br><br>Email:  rashpalkaurj@gmail.com<br>Attention: Owner |

<table>
<tr><td>with a copy (which shall not<br>constitute notice) to:</td><td><b>AC Law</b><br>1826 Ponce de Leon Blvd.<br>Coral Gables, FL 33134<br>Facsimile: (305) 600-3817<br>Email: janna@business-esq.com<br><br>Attention: Janna Mateo / Molly Arntson</td></tr>
</table>

**Section 7.05   Interpretation; Headings.** This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 7.06   Severability.** If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement.

**Section 7.07   Entire Agreement.** This Agreement constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.

**Section 7.08   Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Neither party may assign its rights or obligations hereunder without the prior written consent of the other party. No assignment shall relieve the assigning party of any of its obligations hereunder.

**Section 7.09   Amendment and Modification; Waiver.** This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No failure to exercise, or delay in exercising, any right or remedy arising from this Agreement shall operate or be construed as a waiver thereof. No single or partial exercise of any right or remedy hereunder shall preclude any other or further exercise thereof or the exercise of any other right or remedy.

**Section 7.10 Submission to Jurisdiction.** Each party hereto submits to the exclusive jurisdiction of the CCAA Court in any action, application, reference or other proceeding arising out of or relating to this Agreement and consents to all claims in respect of any such action, application, reference or other proceeding behind heard and determined in the CCAA Court. Each party irrevocably waives, to the full extent, the defense of inconvenient forum to the maintenance of such action, application, reference or other proceeding.

**Section 7.11   Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date first written above.

**PERGOLA HOLDINGS, CORP.**

Per: _RC Benson_____

Randall Benson per RC Benson Consulting Inc., in its capacity as CRO of the Pride Entities, and not in its personal or corporate capacity

**Witness as to signature of Rashpal Johal:**     **RASHPAL JOHAL**

By_____               By_____
Name:

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date first written above.

**PERGOLA HOLDINGS, CORP.**

Per:_____

Randall Benson per RC Benson Consulting Inc., in its capacity as CRO of the Pride Entities, and not in its personal or corporate capacity

**Witness as to signature of Rashpal Johal:**          **RASHPAL JOHAL**

By _____          By _____
Name: Amrinder Johal

Docusign Envelope ID: 404E57C1-3333-42FF-A643-AA4BFF996273

**Schedule "A"**

[Attached]

Court File No. CV-24-00717340-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| THE HONOURABLE | ) | FRIDAY, THE 13TH |
| | ) | |
| JUSTICE OSBORNE | ) | DAY OF DECEMBER, 2024 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF **PRIDE GROUP HOLDINGS INC.** and those Applicants listed on Schedule "A" hereto (each, an "**Applicant**", and collectively, the "**Applicants**")

**Approval and Vesting Order**
**(Share Sale Agreement)**

**THIS MOTION**, made by the Applicants, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") for an order, *inter alia*, (i) approving the share purchase agreement dated December 3, 2024 (the "**Share Purchase Agreement**") between Pergola Holdings, Corp., as seller (the "**Seller**") and Rashpal Johal, as purchaser (the "**Buyer**") for the transfer of shares of the Applicant, 963 Sweetwater Holding Corp. (the "**Company**") contemplated thereby (the "**Transaction**"), was heard this day at 330 University Avenue, Toronto, Ontario by videoconference.

**ON READING** the affidavit of Randy Benson sworn December [Date], 2024 and the Exhibits thereto (the "**Benson Affidavit**"), the nineteenth report of Ernst & Young Inc. in its capacity as court-appointed monitor (the "**Monitor**") dated December [Date], 2024 and on hearing the submissions of counsel for the Applicants and the limited partnerships listed in Schedule "A" hereto (collectively with the Applicants, the "**Pride Entities**"), the Monitor, and such other counsel that were present, and no one else appearing although duly served as appears from the affidavit of service of Ines Ferreira, to be filed,

**SERVICE AND DEFINITIONS**

1.      **THIS COURT ORDERS** that the time for service and filing of the Notice of Motion and Motion Record herein is hereby abridged and validated such that this motion is properly returnable today and hereby dispenses with further service thereof.

2.      **THIS COURT ORDERS** that any capitalized terms used but not defined herein have the meanings given to them in the Second Amended and Restated Initial Order dated May 6, 2024 (the "**SARIO**"), or the Share Purchase Agreement, as applicable.

**APPROVAL OF THE SHARE PURCHASE AGREEMENT**

3.      **THIS COURT ORDERS** that the Transaction is hereby approved, and the execution of the Share Purchase Agreement by the Seller is hereby authorized and approved, with such minor amendments as the Seller and the Buyer may agree to in writing with the consent of the Monitor. The Seller is hereby authorized and directed to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the Transaction and for the conveyance of the Shares to the Buyer.

4.      **THIS COURT ORDERS** that upon the delivery of a Monitor's certificate to the Buyer substantially in the form attached as Schedule "B" hereto (the "**Monitor's Certificate**"), all of the Seller's right, title and interest in and to the Shares described in the Share Purchase Agreement shall vest absolutely in the Buyer free and clear of and from any and all security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise (collectively, the "**Claims**") including, without limiting the generality of the foregoing:  (i) any encumbrances or charges created by the SARIO; (ii) all charges, security interests or claims evidenced by registrations pursuant to any personal property registry system (all of which are collectively referred to as the "**Encumbrances**") and, for greater certainty, this Court orders that all of the Encumbrances affecting or relating to the Shares are hereby expunged and discharged as against the Shares.

5.      **THIS COURT ORDERS** the Monitor to file with the Court a copy of the Monitor's Certificate, forthwith after delivery thereof.

6.      **THIS COURT ORDERS** that, notwithstanding:

(a)      the pendency of these proceedings;

(b)      any applications for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act* (Canada) in respect of the Company and any bankruptcy order issued pursuant to any such applications; and

(c)      any assignment in bankruptcy made in respect of the Company,

the vesting of the Shares in the Buyer pursuant to this Order shall be binding on any trustee in bankruptcy that may be appointed in respect of the Company and shall not be void or voidable by creditors of the Company, nor shall it constitute nor be deemed to be a fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transaction under the *Bankruptcy and Insolvency Act* (Canada) or any other applicable federal or provincial legislation, nor shall it constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

**GENERAL**

7.      **THIS COURT ORDERS** that effective upon the Monitor filing the Monitor's Certificate with the Court, (i) the Company shall cease to be an Applicant in these proceedings, (ii) shall be deemed to be released from the purview of all other Orders of this Court in these proceedings save and except for this Order, and (iii) the title to these proceedings shall be amended to remove the Company from Schedule "A" thereto.

8.      **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Pride Entities, the Chief Restructuring Officer (the "**CRO**"), the Monitor and their respective agents in carrying out the terms of this Order, as may be applicable.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Pride Entities, the CRO and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the CRO or Monitor in any foreign proceeding, or to assist

- 4 -

the Pride Entities, the CRO and the Monitor and their respective agents in carrying out the terms of this Order.

9.      **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 12:01 a.m. on the date hereof and is enforceable without further need for entry or filing.

_____

**SCHEDULE "A"**

## A. APPLICANTS

### Operating Entities

*Canadian Operating Entities*

- PRIDE TRUCK SALES LTD.
- TPINE TRUCK RENTAL INC.
- PRIDE GROUP LOGISTICS LTD.
- PRIDE GROUP LOGISTICS INTERNATIONAL LTD.
- TPINE LEASING CAPITAL CORPORATION
- DIXIE TRUCK PARTS INC.
- PRIDE FLEET SOLUTIONS INC.
- TPINE FINANCIAL SERVICES INC.
- PRIDE GROUP EV SALES LTD.

*U.S. Operating Entities*

- TPINE RENTAL USA, INC.
- PRIDE GROUP LOGISTICS USA, CO.
- ARNOLD TRANSPORTATION SERVICES, INC.
- DIXIE TRUCK PARTS INC.
- TPINE FINANCIAL SERVICES CORP.
- PARKER TRANSPORT CO.
- PRIDE FLEET SOLUTIONS USA INC.

### Real Estate Holding Companies

*Canadian Real Estate Holding Companies*

- 2029909 ONTARIO INC.
- 2076401 ONTARIO INC.
- 1450 MEYERSIDE HOLDING INC.
- 933 HELENA HOLDINGS INC.
- 30530 MATSQUI ABBOTSFORD HOLDING INC.
- 2863283 ONTARIO INC.
- 2837229 ONTARIO INC.
- 2108184 ALBERTA LTD.
- 12944154 CANADA INC.
- 13184633 CANADA INC.
- 13761983 CANADA INC.
- 102098416 SASKATCHEWAN LTD.

- 177A STREET SURREY HOLDING INC.
- 52 STREET EDMONTON HOLDING INC.
- 84 ST SE CALGARY HOLDINGS INC.
- 68TH STREET SASKATOON HOLDING INC.
- 3000 PITFIELD HOLDING INC.

*U.S. Real Estate Holding Companies*

- PGED HOLDING, CORP.
- HIGH PRAIRIE TEXAS HOLDING CORP.
- 131 INDUSTRIAL BLVD HOLDING CORP.
- 59TH AVE PHOENIX HOLDING CORP.
- DI MILLER DRIVE BAKERSFIELD HOLDING CORP.
- FRONTAGE ROAD HOLDING CORP.
- ALEXIS INVESTMENTS, LLC
- TERNES DRIVE HOLDING CORP.
- VALLEY BOULEVARD FONTANA HOLDING CORP.
- HIGHWAY 46 MCFARLAND HOLDING CORP.
- TERMINAL ROAD HOLDING, CORP.
- BISHOP ROAD HOLDING CORP.
- OLD NATIONAL HIGHWAY HOLDING CORP.
- 11670 INTERSTATE HOLDING, CORP.
- 401 SOUTH MERIDIAN OKC HOLDING CORP.
- 8201 HWY 66 TULSA HOLDING CORP.
- EASTGATE MISSOURI HOLDING CORP.
- FRENCH CAMP HOLDING CORP.
- 87TH AVENUE MEDLEY FL HOLDING CORP.
- LOOP 820 FORT WORTH HOLDING CORP.
- 162 ROUTE ROAD TROY HOLDING CORP.
- CRESCENTVILLE ROAD CINCINNATI HOLDING CORP.
- MANHEIM ROAD HOLDING CORP.
- 13TH STREET POMPANO BEACH FL HOLDING CORP.
- EAST BRUNDAGE LANE BAKERSFIELD HOLDING CORP.
- CORRINGTON MISSOURI HOLDING CORP.
- 963 SWEETWATER HOLDING CORP.
- OAKMONT DRIVE IN HOLDING CORP.

**Other Holding Companies**

*Other Canadian Holding Companies*

- 2692293 ONTARIO LTD.
- 2043002 ONTARIO INC.
- PRIDE GROUP HOLDINGS INC.
- 2554193 ONTARIO INC.

- 2554194 ONTARIO INC.
- PRIDE GROUP REAL ESTATE HOLDINGS INC.
- 1000089137 ONTARIO INC.

*Other U.S. Holding Companies*

- COASTLINE HOLDINGS, CORP.
- PARKER GLOBAL ENTERPRISES, INC.
- DVP HOLDINGS, CORP.

**B. LIMITED PARTNERSHIPS**

*U.S. Limited Partnerships*

- PRIDE TRUCK SALES L.P.
- TPINE LEASING CAPITAL L.P.
- SWEET HOME HOSPITALITY L.P.

**Schedule B – Form of Monitor's Certificate**

Court File No. CV-21-00672654-00CL

**ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF **PRIDE GROUP HOLDINGS INC.** and those Applicants listed on Schedule "A" hereto (each, an "**Applicant**", and collectively, the "**Applicants**")

**APPROVAL AND VESTING ORDER**
**(Share Purchase Agreement)**

**MONITOR'S CERTIFICATE**

**RECITALS**

A.  Pursuant to an Approval and Vesting Order of the Ontario Superior Court of Justice (Commercial List) dated December 13, 2024 (the "**Vesting Order**"), the Court approved the share purchase agreement dated December 3, 2024 (the "**Share Purchase Agreement**"), between Pergola Holdings, Corp., as seller (the "**Seller**") and Rashpal Johal (the "**Buyer**"), and provided for the vesting in the Buyer of the Seller's right, title and interest in and to the shares of 963 Sweetwater Holding Corp. (the "**Company**"), which vesting is to be effective with respect to the Shares upon the delivery by the Monitor to the Buyer of a certificate confirming the transaction has been completed to the satisfaction of the Monitor.

B.  Unless otherwise indicated herein, terms with initial capitals have the meanings set out in the Vesting Order.

**THE MONITOR CERTIFIES** the following:

1.  The Buyer has paid and the Seller has received the purchase price for the Shares, and the closing deliverables under the Share Purchase Agreement have been delivered in accordance therewith; and

2.  The transaction has been completed to the satisfaction of the Monitor.

3.  This Certificate was delivered by the Monitor at _____ [TIME] on _____, 2024.

**ERNST & YOUNG INC., solely in its capacity as Court-appointed Monitor of the Pride Entities, and not in its personal or corporate capacity.**

Per:    _____

      Name:

      Title:

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF **PRIDE GROUP HOLDINGS INC.** ET AL.

Court File No.: CV-24-00717340-00CL

|  | |
|---|---|
| | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>Proceedings commenced at Toronto, Ontario |
| | **APPROVAL AND VESTING ORDER**<br>**(Share Purchase Agreement)** |
| | **Thornton Grout Finnigan LLP**<br>3200 – 100 Wellington Street West<br>TD West Tower, Toronto-Dominion Centre<br>Toronto, ON   M5K 1K7<br><br>**Leanne Williams (LSO# 41877E)**<br>Email:  lwilliams@tgf.ca<br><br>**Rachel Nicholson (LSO# 68348V)**<br>Email:  rnicholson@tgf.ca<br><br>**Puya Fesharaki (LSO# 70588L)**<br>Email:  pfesharaki@tgf.ca<br>Tel:      416-304-1616<br>Fax:     416-304-1313<br><br>Lawyers for the Applicants |