**IN THE UNITED STATES BANKRUPTCY COURT  
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Pride Group Holdings Inc., *et al.*[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 24-10632 (CTG)<br><br>(Jointly Administered) |

**NOTICE OF PROPOSED SALE OF AVAILABLE U.S. ASSETS**

**PLEASE TAKE NOTICE** that on March 27, 2024, Randall Benson, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors") in the Canadian proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act, R.S.C. 1985 c. C-36, pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"), and that on April 1, 2024 filed the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 2] (as amended on April 23, 2024 [D.I. 120], the "Amended Verified Petition") and the form chapter 15 petitions for the Initial Debtors (together with the form chapter 15 petitions for the Additional Debtors filed on April 15, 2024 and the Amended Verified Petition, the "Chapter 15 Petitions") pursuant to chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on May 2, 2024, the Court entered an order granting recognition of the CCAA Proceedings and related relief sought in the Chapter 15 Petitions [D.I. 152] (the "Recognition Order").

**PLEASE TAKE FURTHER NOTICE** that on June 7, 2024, the Court entered the *Order (I) Approving the Sale Procedures and Sale Notice, (II) Authorizing the Sale of the Debtors' U.S. Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (III) Granting Related Relief* [D.I. 197] (the "Sale Procedures Order"),[2] which authorizes the sale of the Debtors' assets located within the territorial jurisdiction of the United States pursuant to the procedures set forth in the Sale Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Sale Procedures Order, the Foreign Representative seeks authority from the Court for the Debtors to consummate the *de*

---

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Procedures Order.

*minimis* sale of the Debtors' assets located within the territorial jurisdiction of the United States (the "Sale") pursuant to the asset purchase agreement (the "APA")[3] attached to this Sale Notice as **Exhibit A**. The material terms of the APA are described below:

- **Available U.S. Assets Being Sold**: all standard truck and trailer repair parts and inventory of Debtor Dixie Truck Parts Inc. (US) (the "Seller") listed in Schedule "B" annexed to the APA located in Fresno, California, each on an "as is, where is" basis.

- **Purchaser**: 1001076738 Ontario Inc. (the "Purchaser").[4]

- **Purchase Price**: The Purchaser will (i) pay US$250,000 in cash (the "Cash Purchase Price"), which excludes applicable taxes, and (ii) assume from the Seller and become obligated to pay, perform and discharge, when due, the Assumed Obligations (as defined in the APA) (collectively, the "Purchase Price").

- **Terms of Payment**: Purchaser has deposited US$50,000 with Ernst & Young Inc., the Debtors' Canadian Court-appointed monitor (the "Monitor"). The Purchaser will pay the balance of the Cash Purchase Price (subject to adjustments) at closing.

- **Marketing Efforts**:

    o As set forth in the Foreign Representative Declaration, on November 22, 2024, the Canadian Court granted an order authorizing and empowering Nations Capital, LLC ("NCI"), an independent liquidation agent with experience and expertise in the trucking and logistics industry, to market for sale and sell the inventory, assets and property owned by Dixie Truck Parts Inc. (Ontario) (the "Canadian Dixie Parts Assets") and the Seller (the "U.S. Dixie Parts Assets", and together with the Canadian Dixie Parts Assets, the "Dixie Parts Assets") in accordance with the sale process developed by NCI, in consultation with the Monitor and the CRO. The entire sale process was carried out by NCI. The Debtors, their principals, and their advisors did not have any involvement in the conduct of the sale process, or the review and analysis of any offers submitted on the Dixie Parts Assets.

    o Following the issuance of that order, NCI leveraged its existing network and contacted approximately 1,500 potential purchasers of the Dixie Parts Assets, which resulted in five bidders submitting offers to NCI for the Dixie Parts Assets, including (i) the Purchaser's binding offer of CAD$1,000,000, (ii) a non-binding offer of CAD$605,000, (iii) a non-binding offer of

---

[3] An order approving the transaction contemplated by the APA was granted by the Canadian Court on January 15, 2025. Although that order inadvertently states that the APA is dated January 15, 2025, the correct date of the APA is January 14, 2025.

[4] The Purchaser is a special purpose entity incorporated for the purpose of acquiring the Dixie Parts Assets. The sole director and officer of the Purchaser is Mr. Navraj (Raj) Johal, the son of one of the principals of the Debtors. As such, the Purchaser is an "insider" of the Debtors, as that term is defined in the Bankruptcy Code.

      CAD$584,084, (iv) a non-binding offer of CAD$425,000, and (v) a non-binding offer of CAD$300,000.[5] Given the multiple offers received, NCI continued to seek a higher and better offer from the Purchaser notwithstanding that it was highest and best offer and the only binding offer received by NCI as of the bid deadline. However, the Purchaser was unwilling to raise its offer.

- o As detailed in the Twentieth Report of the Monitor, dated January 10, 2025 (together with any supplements thereto, the "Twentieth Report"), which is attached hereto as **Exhibit D**, the Monitor estimated that based on the Debtors' books and records, approximately 90% of the value of the Dixie Parts Assets is attributable to the Canadian Dixie Parts Assets. Given the *de minimis* value of the U.S. Dixie Parts Assets relative to the overall transaction, the Debtors, in consultation with the Monitor, instructed NCI to request that the Purchaser bifurcate the transaction into separate sales for the Canadian Dixie Part Assets and U.S. Dixie Parts Assets to reduce the risks to the Debtors' wind-down objectives if the U.S. sale component fails to obtain approval pursuant to the Sale Procedures Order in these Chapter 15 Cases. Accordingly, the Purchaser promptly revised its offer by separately offering to purchase the Canadian Dixie Parts Assets and the U.S. Dixie Parts Assets. The aggregate purchase price ultimately obtained for the total Dixie Parts Assets under the Purchaser's revised offer was unchanged from the Purchaser's original offer. The competing bidders were not solicited to submit revised bids because the Purchaser's original offer was significantly higher than the competing offers, and the only binding offer submitted to NCI.

- o After reviewing all offers submitted on the Dixie Parts Assets, NCI recommended that the Seller accept the Purchaser's revised offer of US$250,000 for the U.S. Dixie Parts Assets, which NCI determined to be the highest and best offer based on (i) total value offered, (ii) the terms and conditions of the offer and (iii) Purchaser's assurances that the Sale would close. NCI determined that additional marketing efforts would be unlikely to yield an offer that is a higher and better offer than the Purchaser's offer under the circumstances. The Monitor supports the Sale for the foregoing reasons, which culminated in the APA between the Seller and Purchaser.

- **Known Liens**: As of the date hereof, the DIP Agent (as defined in the Recognition Order) is the only party with liens on the U.S. Dixie Parts Assets. There are no other known liens on the U.S. Dixie Parts Assets.

- **Consent by Known Holders of Liens**: The DIP Agent has consented to the Sale of the U.S. Dixie Parts Assets.

---

[5] A redacted summary of the terms and conditions of the offers submitted to NCI by the three most competitive bidders for the Dixie Parts Assets is attached hereto as **Exhibit C.**

- **Other Material Terms**:

    o   The U.S. Dixie Parts Assets remain at the risk of the Seller prior to closing. The Seller is obligated to maintain, preserve and protect the U.S. Dixie Parts Assets prior to closing and maintain any insurance currently in effect with respect to the U.S. Dixie Parts Assets.

    o   It is a condition precedent to closing under the APA that either (i) the relevant objection deadline set forth in this Sale Notice has elapsed and the Seller may close the transaction or (ii) the transaction has been approved by the Court, if applicable.

**PLEASE TAKE FURTHER NOTICE** that in support of this Sale Notice, the Foreign Representative submits the *Declaration of Foreign Representative* attached to this Sale Notice as **Exhibit B** (the "Foreign Representative Declaration").[6]

**PLEASE TAKE FURTHER NOTICE** that any party in interest wishing to submit a response, answer, or objection to the Sale must do so pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, and such response, answer, or objection must (i) be in writing, (ii) set forth in detail the factual and legal bases therefor, (iii) be filed with the United States Bankruptcy Court for the District of Delaware, Office of the Clerk of the Court, 824 Market Street, Wilmington, Delaware 19801, and (iv) served upon counsel for the Foreign Representative, Linklaters LLP, 1290 Avenue of the Americas, New York, New York 10104 (Attention: Penelope J. Jensen, Esq. and Christopher J. Hunker, Esq.) and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Floor, P.O. Box 1347, Wilmington, Delaware 19801 (Attention: Derek C. Abbott, Esq. and Andrew R. Remming, Esq.), so as to be actually received on or before **February 3, 2025**.[7]

**PLEASE TAKE FURTHER NOTICE** that if no response or objection is timely filed and served as provided above, the Debtors may consummate the Sale without further order of the Court following the expiration of the objection deadline.

[*Remainder of Page Intentionally Left Blank*]

---

[6] Pursuant to the Sale Procedures Order, the Foreign Representative is not required to submit a declaration in support of any *de minimis* Sale with an aggregate sale price less than or equal to US$1,000,000. However, given that the Purchaser is an "insider" of the Debtors, the Foreign Representative is submitting the Foreign Representative Declaration in the interests of full disclosure and transparency with respect to the sale process undertaken with respect to the Available U.S. Assets being sold.

[7] In accordance with the Sale Procedures Order, the Foreign Representative must provide: (i) seven (7) days' notice with respect to any Sale with an aggregate sale price less than US$7,000,000 and (ii) twenty-one (21) days' notice with respect to any Sale with an aggregate sale price greater than or equal to US$7,000,000.

| | |
|---|---|
| Dated: January 27, 2025<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/ Austin T. Park*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Clint M. Carlisle (No. 7313)<br>Austin T. Park (No. 7247)<br>1201 N. Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br>Email: dabbott@morrisnichols.com<br>            aremming@morrisnichols.com<br>            ccarlisle@morrisnichols.com<br>            apark@morrisnichols.com<br><br>- and -<br><br>**LINKLATERS LLP**<br><br>Penelope J. Jensen, Esq. (admitted *pro hac vice*)<br>Christopher J. Hunker, Esq. (admitted *pro hac vice*)<br>Clark L. Xue, Esq. (admitted *pro hac vice*)<br>1290 Avenue of the Americas<br>New York, NY 10104<br>Telephone: (212) 903-9000<br>Facsimile: (212) 903-9100<br>Email: penelope.jensen@linklaters.com<br>            christopher.hunker@linklaters.com<br>            clark.xue@linklaters.com<br><br>*Attorneys for the Foreign Representative* |