**Exhibit B**

Foreign Representative Declaration

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Pride Group Holdings Inc., *et al.*[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 24-10632 (CTG)<br><br>(Jointly Administered) |

**DECLARATION OF FOREIGN REPRESENTATIVE
IN SUPPORT OF THE SALE OF AVAILABLE U.S. ASSETS FREE AND
CLEAR OF ANY LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

I, Randall Benson, pursuant to 28 U.S.C. § 1746, hereby declare (this "Declaration") under penalty of perjury under the laws of the United States, as follows:

1.   I am the founder of RC Benson Consulting Inc, which was engaged on February 26, 2024 as the Chief Restructuring Officer (in such capacity, the "CRO") of the Pride Group. The Debtors and certain of their affiliates are the subject of proceedings (the "CCAA Proceedings") under the Companies' Creditors Arrangement Act, pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"). I was appointed as the foreign representative of the Debtors (the "Foreign Representative") by the Canadian Court pursuant to the preliminary initial order dated March 27, 2024.

2.   I am an individual over the age of 18 and, if called upon, could and would testify to the facts set forth in this Declaration. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by members of

---

[1]   The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

the Pride Group's management and professionals or learned from my review of relevant documents, or my opinion based upon my experience and knowledge of the Pride Group's industry, operations, and financial condition that I have acquired since my engagement.

3. I am authorized to make this Declaration on behalf of the Debtors in support of the sale notice submitted contemporaneously herewith with respect to the sale (the "Sale") of the Debtors' assets free and clear of any liens, claims, encumbrances and other interests (collectively, the "Liens"), pursuant to the asset purchase agreement dated January 14, 2025 (the "APA")[2] by and between Dixie Truck Parts Inc. (US), as seller (the "Seller"), and 1001076738 Ontario Inc., as purchaser (the "Purchaser").[3]

## THE SALE PROCEDURES

4. On May 21, 2024, the Foreign Representative filed a motion [D.I. 178] (the "Sale Procedures Motion") seeking, among other things, this Court's approval of the Sale Procedures governing the sale of any Available U.S. Assets being sold in the United States.

5. On June 7, 2024, this Court entered an Order granting the relief requested in the Sale Procedures Motion [D.I. 197] (the "Sale Procedures Order").[4]

6. Paragraph 2(e) of the Sale Procedures Order provides that the Foreign Representative shall attach to the applicable Sale Notice "a declaration in support of the Sale containing statements sufficient for the Court to find that: (i) the Sale constitutes a prudent exercise

---

[2] An order approving the transaction contemplated by the APA was granted by the Canadian Court on January 15, 2025. Although that order inadvertently states that the APA is dated January 15, 2025, the correct date of the APA is January 14, 2025.

[3] The Purchaser is a special purpose entity incorporated for the purpose of acquiring the Dixie Parts Assets. The sole director and officer of the Purchaser is Mr. Navraj (Raj) Johal, the son of one of the principals of the Debtors. As such, the Purchaser is an "insider" of the Debtors, as that term is defined in the Bankruptcy Code.

[4] Capitalized terms used in this Declaration but not otherwise defined shall have the meanings ascribed to them in the Sale Procedures Order.

of the applicable Debtor's business judgment; (ii) the Sale may be consummated free and clear of all Liens under section 363(f) of the Bankruptcy Code; and (iii) the purchaser is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code."[5]

## STATEMENTS IN SUPPORT OF THE SALE NOTICE

7. I believe that the Sale is in the best interests of the Debtors' estates and constitutes a prudent exercise of the Seller's business judgment.

8. On November 22, 2024, the Canadian Court granted an order authorizing and empowering Nations Capital, LLC ("NCI"), an independent liquidation agent with experience and expertise in the trucking and logistics industry, to market for sale and sell the inventory, assets and property owned by Dixie Truck Parts Inc. (Ontario) (the "Canadian Dixie Parts Assets") and the Seller (the "U.S. Dixie Parts Assets", and together with the Canadian Dixie Parts Assets, the "Dixie Parts Assets") in accordance with the sale process developed by NCI, in consultation with the Ernst & Young Inc., the Debtors' Canadian Court-appointed monitor (the "Monitor"), and the CRO. The entire sale process was carried out by NCI. The Debtors, their principals, and their advisors did not have any involvement in the conduct of the sale process, or the review and analysis of any offers submitted on the Dixie Parts Assets.

9. Following the issuance of that order, NCI leveraged its existing network and contacted approximately 1,500 potential purchasers of the Dixie Parts Assets, which resulted in five bidders submitting offers to NCI for the Dixie Parts Assets, including (i) the Purchaser's binding offer of CAD$1,000,000, (ii) a non-binding offer of CAD$605,000, (iii) a non-binding

---

[5] Pursuant to the Sale Procedures Order, the Foreign Representative is not required to submit a declaration in support of any *de minimis* Sale with an aggregate sale price less than or equal to US$1,000,000. However, given that the Purchaser is an "insider" of the Debtors, the Foreign Representative is submitting this Declaration in the interests of full disclosure and transparency with respect to the sale process undertaken with respect to the Available U.S. Assets being sold.

3

offer of CAD$584,084, (iv) a non-binding offer of CAD$425,000, and (v) a non-binding offer of CAD$300,000.[6] Given the multiple offers received, NCI continued to seek a higher and better offer from the Purchaser notwithstanding that it was highest and best offer and the only binding offer received by NCI as of the bid deadline. However, the Purchaser was unwilling to raise its offer.

10. As detailed in the Twentieth Report of the Monitor, dated January 10, 2025 (together with any supplements thereto, the "Twentieth Report"), which is attached to the Sale Notice as Exhibit D, the Monitor estimated that based on the Debtors' books and records, approximately 90% of the value of the total Dixie Parts Assets is attributable to the Canadian Dixie Parts Assets. Given the *de minimis* value of the U.S. Dixie Parts Assets relative to the overall transaction, the Debtors, in consultation with the Monitor, instructed NCI to request that the Purchaser bifurcate the transaction into separate sales for the Canadian Dixie Part Assets and U.S. Dixie Parts Assets to reduce the risks to the Debtors' wind-down objectives if the U.S. sale component fails to obtain approval pursuant to the Sale Procedures Order in these Chapter 15 Cases. Accordingly, the Purchaser promptly revised its offer by separately offering to purchase the Canadian Dixie Parts Assets and the U.S. Dixie Parts Assets. The aggregate purchase price ultimately obtained for the total Dixie Parts Assets under the revised offer was unchanged from the Purchaser's original offer. The competing bidders were not solicited to submit revised bids because the Purchaser's original offer was significantly higher than the competing offers, and the only binding offer submitted to NCI.

11. After reviewing all offers submitted on the Dixie Parts Assets, NCI recommended that the Debtors accept the Purchaser's revised offer of US$250,000 for the U.S. Dixie Parts

---

[6] A redacted summary of the terms and conditions of the offers submitted to NCI by the three most competitive bidders for the Dixie Parts Assets is attached to the Sale Notice as Exhibit C.

Assets, which was the highest and best offer based on (i) total value offered, (ii) the terms and conditions of the offer and (iii) Purchaser's assurances that the Sale would close. NCI determined that additional marketing efforts would be unlikely to yield an offer that is a higher and better offer than the Purchaser's offer under the circumstances. The Monitor supports the Sale for the foregoing reasons, which culminated in the APA between the Seller and Purchaser. As required under the APA, the Purchaser has paid a deposit of US$50,000, which will be held in escrow pending closing of the Sale.

12. I believe that the U.S. Dixie Parts Assets were marketed publicly in a manner designed to maximize the purchase price obtained for those assets in accordance with the Sale Procedures Order. The Purchaser's offer for the U.S. Dixie Parts Assets is the highest or otherwise best offer received to date, is in line with the market for similar assets, and constitutes reasonably equivalent value for the U.S. Dixie Parts Assets.

13. As of the date hereof, the DIP Agent (as defined in the Recognition Order) has Liens on the U.S. Dixie Parts Assets. No other secured or unsecured lender or any other party is known to have an interest in the U.S. Dixie Parts Assets or any proceeds therefrom. The DIP Agent has consented to the sale of the U.S. Dixie Parts Assets to the Purchaser. I am further advised that all Liens on the U.S. Dixie Parts Assets will attach to the proceeds of the sale under the APA with the same force, validity, priority, and effect as they currently exist.

14. For these reasons, I believe that selling the U.S. Dixie Parts Assets to the Purchaser pursuant to the terms set forth in the APA constitutes a prudent exercise of the Seller's business judgment.

[*Remainder of Page Intentionally Left Blank*]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: January 27, 2025
      Toronto, Canada

                              */s/ Randall Benson*
                              Randall Benson