**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Pride Group Holdings Inc., *et al.*[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 24-10632 (CTG)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>TBD<br><br>**Objection Deadline:**<br>April 23, 2025 at 4:00 p.m. (ET) |

**MOTION OF THE FOREIGN REPRESENTATIVE
FOR ENTRY OF AN ORDER (I) AUTHORIZING THE
SALE OF PROPERTY OF DEBTOR VALLEY BOULEVARD
FONTANA HOLDING CORP. FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF**

Randall Benson, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors") in the Canadian proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"), respectfully submits this motion (the "Motion"), pursuant to sections 105(a), 363, 1501, 1507, 1514, 1520 and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

---

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order (the "Sale Order"), substantially in the form attached hereto as **Exhibit A**, (i) authorizing the sale of certain property owned by Debtor Valley Boulevard Fontana Holding Corp. ("Fontana") pursuant to the sale agreement attached as **Exhibit B** hereto (as amended and as may be further amended from time to time, the "Sale Agreement"), free and clear of liens, claims, encumbrances and other interests and (ii) granting related relief.

In support of the requested relief, the Foreign Representative respectfully refers the Court to and incorporates by reference the *Declaration of Foreign Representative in Support of Motion of the Foreign Representative for Entry of an Order (I) Authorizing the Sale of Property of Debtor Valley Boulevard Fontana Holding Corp. Free and Clear of Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* (the "Declaration") filed contemporaneously herewith.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under 28 U.S.C. § 157(b)(2)(P).

2. The Foreign Representative, solely in his capacity as such, consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue is proper in this Court and this District pursuant to 28 U.S.C. § 1410.

4. The statutory predicates for the relief requested herein are section 105(a), 363, 1501, 1507, 1514, 1520, and 1521 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1.

## BACKGROUND

**I.     Commencement of the CCAA Proceedings and the Chapter 15 Cases**

5. The Debtors and their non-Debtor affiliates (collectively, the "Pride Group") operate a trucking and logistics conglomerate based in Canada with operations in Canada and the United States. The Pride Group's businesses are managed from their headquarters in Mississauga, Ontario, and they maintain facilities and operations in both Canada and the United States. The Pride Group owns substantial assets within the territorial jurisdiction of the United States, including, among other things, real estate properties, bank accounts, equipment, and trucks.

6. On March 27, 2024, the Debtors commenced the CCAA Proceedings in the Canadian Court, and the Canadian Court issued the initial order (the "Initial Order,") authorizing, among other things, Randall Benson to act as the Foreign Representative for the Debtors and file these chapter 15 cases (collectively, the "Chapter 15 Cases").

7. On April 1, 2024 (the "Initial Petition Date"), the Foreign Representative filed form petitions for the Pride Group's 26 Canadian and U.S. operating companies and non-real estate holding companies (the "Initial Debtors"), thereby commencing the Initial Debtors' Chapter 15 Cases. On the same day, the Foreign Representative filed the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 2] (the "Verified Petition") seeking, among other things, recognition of the CCAA Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code, and certain related relief.

3

8.  On April 5, 2024, the Canadian Court signed an amended and restated Initial Order (the "A&R Initial Order") and the Protocols Order (the "Protocols Order," and together with the A&R Initial Order, the "Canadian Orders"). The A&R Initial Order authorizes, among other things, the Debtors to list for sale all of their real property, subject to the Protocols Order. The Protocols Order approves, among other things, a real estate monetization plan, which is intended to bring structure, oversight, and transparency to the monetization of the Debtors' real estate (the "Real Estate Monetization Plan"). Following the Canadian Court's signing of the Canadian Orders, the Foreign Representative sought and obtained enforcement of those orders in the United States on a provisional basis pursuant to this Court's *Order Granting Provisional Relief in Connection with Debtors-In-Possession Financing and Certain Protocols Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 110] (the "Second Provisional Relief Order").

9.  Pursuant to the Real Estate Monetization Plan, the DIP Borrowers[2] were required to list for sale all of their real property by no later than May 1, 2024 (unless otherwise extended), including all real property owned by the Debtors. The listing for sale of such real property and the sale process undertaken with respect such real property is directed by the Debtors' chief restructuring officer, RC Benson Consulting Inc. (the "CRO"), in consultation with the Debtors' Canadian Court-appointed monitor (the "Monitor") and relevant third-party mortgagees and the Royal Bank of Canada, as administrative agent (the "DIP Agent") under the DIP Facility (as defined in the Recognition Order).

---

[2] As used herein, "DIP Borrowers" includes: (i) each of the Debtors and (ii) non-Debtor affiliates Pride Truck Sales L.P., TPine Leasing Capital L.P., and Sweet Home Hospitality L.P.

10. On April 15, 2024, the Foreign Representative filed additional form petitions for the Pride Group's 45 Canadian and U.S. single-asset real estate holding companies (the "Additional Debtors"), thereby commencing the Additional Debtors' Chapter 15 Cases.

11. On April 23, 2024, the Debtors filed an amended Verified Petition [D.I. 121] (the "Amended Verified Petition, and together with the Petitions, the "Chapter 15 Petitions").

12. On May 2, 2024, the Court entered an order [D.I. 152] (the "Recognition Order") granting recognition of the CCAA Proceedings and the related relief sought in the Chapter 15 Petitions, including, among other things, extending the relief granted in the Second Provisional Relief Order on a final basis.

13. On June 7, 2024, the Court entered the *Order (I) Approving the Sale Procedures and Sale Notice, (II) Authorizing the Sale of the Debtors' U.S. Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (III) Granting Related Relief* [D.I. 197] (the "Sale Procedures Order"), which authorizes the sale of the Debtors' assets located within the territorial jurisdiction of the United States pursuant to the procedures set forth in the Sale Procedures Order. The Foreign Representative has obtained approval of and consummated several transactions pursuant to the procedures set forth in the Sale Procedures Order.

14. On October 10, 2024, the Canadian Court granted an order implementing a centralized, coordinated, and controlled wind-down of the Pride Group's remaining assets, including real property owned by the Debtors in the United States (the "Wind-Down Order"). Following the Canadian Court's signing of the Wind-Down Order, the Foreign Representative sought and obtained enforcement of the Wind-Down Order in the United States pursuant to this Court's *Order (I) Enforcing the Wind-Down Orders and (II) Granting Related Relief* [D.I. 286].

15. Notices of sales of the Debtors' property under the Sale Procedures Order do not provide legal arguments for the sale of properties free and clear of liens, claims, encumbrances and other interests under section 363(f) of the Bankruptcy Code on a basis other than consent. Given that the holders of the Mechanic's Liens (as defined below) have not consented to the sale under the Sale Agreement, out of an abundance of caution, the Foreign Representative is filing this Motion to provide the basis for section 363(f) relief with respect to those liens.

## II.     The Sale Process for the Fontana Property

16. In 2021, Fontana purchased a parcel of real property located at 15762 Valley Blvd., Fontana, CA 92335 (the "Property"). The Property was previously used by the Pride Group for sales, leasing, and servicing of trucks. As noted above, the Debtors are currently engaged in the centralized, coordinated, and controlled wind-down of their remaining assets pursuant to the Wind-Down Order, including their real properties located in the United States.

17. Prior to the Initial Petition Date, on January 17, 2024, Fontana retained CBRE, Inc., an independent broker (the "Broker"), to publicly list the Property for sale. The Broker formally marketed the Property following its retention for over a year. The marketing process generated seven offers for the Property over the course of its listing, including (i) six offers in amounts ranging from US$8,960,000 to US$16,000,000 and (ii) an offer in the amount of US$17,650,000 from Duff Real Estate, LLC (the "Purchaser"). The Purchaser's offer for the Property was the highest offer, and was ultimately accepted by Fontana as the winning offer, which culminated in the Sale Agreement between the parties thereto.

18. Fontana, in consultation with the CRO and the Monitor, determined that additional marketing efforts for the Property would be unlikely to yield an offer that is a higher and better offer than the Purchaser's offer under the circumstances. Therefore, Fontana, in consultation with the CRO and the Monitor, believes that entry into and consummation of the transactions

contemplated by the Sale Agreement represents the highest and best value for the Purchased Assets (defined below) under the circumstances in its business judgment and is in the best interests of the Debtors, their creditors, and other stakeholders.

### III.    The Sale Agreement and Local Rule 6004-1 Disclosures

19.    On January 22, 2025, Fontana, as the seller, and the Purchaser entered into the Sale Agreement pursuant to which the Purchaser agreed to purchase from Fontana all of Fontana's rights, title and interests in and to the Property, along with all other property described in Section 1.01 of the Sale Agreement (collectively, the "Purchased Assets").

20.    The Foreign Representative submits this Motion on the date hereof to provide notice to parties in interest as required by Local Rule 9006-1 to enable Fontana to close the transactions contemplated by the Sale Agreement on or about May 13, 2025 (the "Closing Date").

21.    The following is a summary of certain material provisions of the Sale Agreement,[3] including certain disclosures as required by Local Rule 6004-1.[4]

| Provision | Description | Location in Sale Agreement |
|---|---|---|
| **Purchased Assets** | Seller agrees to sell to Purchaser and Purchaser agrees to purchase from Seller in accordance with the terms and conditions of the Sale Agreement, all of Seller's rights, title and interests in and to the real property located at 15762 Valley Blvd., Fontana, CA 92335 and all other property described in section 1.01 of the Sale Agreement. | Sale Agreement ¶ 1.01 |
| **Purchase Price** | US$17,650,000 | Sale Agreement ¶ 2.01 |

---

[3]    Capitalized terms used in this table but not otherwise defined herein shall have the meanings ascribed to them in the Sale Agreement.

[4]    Pursuant to Local Rule 6004-1(b)(iv), a Sale Motion (as defined in the Local Rules) must highlight certain provisions contained in the proposed form of sale order and/or the underlying sale agreement. The Foreign Representative has highlighted below the relevant provisions of the Sale Agreement that implicate Local Rule 6004-1(b)(iv) by providing a citation to the relevant sections of the Sale Agreement. In addition, the Foreign Representative highlights that, pursuant to the Sale Order, it is requesting (i) that the sale be approved under section 363(f) of the Bankruptcy Code, free and clear of any interests and (ii) a waiver of Bankruptcy Rule 6004(h).

| Provision | Description | Location in Sale Agreement |
|---|---|---|
| **Sale to Insider** Local Bankr. R. 6004-1(b)(iv)(A) | The Purchaser is not an insider as defined by section 101(31) of the Bankruptcy Code. | N/A |
| **Agreements with Management** Local Bankr. R. 6004-1(b)(iv)(B) | N/A | N/A |
| **Releases** Local Bankr. R. 6004-1(b)(iv)(C) | N/A | N/A |
| **Private Sale/No Competitive Bidding** Local Bankr. R. 6004-1(b)(iv)(D) | The sale of the Purchased Assets is fair and reasonable under the circumstances, is the result of good-faith, arm's length negotiations, and is in the best interests of the Debtors, their creditors, and other stakeholders. | N/A |
| **Closing and Other Deadlines** Local Bankr. R. 6004-1(b)(iv)(E) | The Closing Date is scheduled to occur on or about May 13, 2025. | Sale Agreement ¶ 4.01 |
| **Good Faith Deposit** Local Bankr. R. 6004-1(b)(iv)(F) | Purchaser has made an earnest money deposit in the amount of US$882,500 (together with any interest earned thereon, collectively, the "Earnest Money Deposit") to First American Title Insurance Company, as Escrow Agent, to be held in trust pending closing. The Earnest Money Deposit shall be applied against the Purchase Price at closing. | Sale Agreement ¶¶ 2.02, 2.03 |
| **Interim Arrangements with Purchaser** Local Bankr. R. 6004-1(b)(iv)(G) | N/A | N/A |
| **Use of Proceeds** Local Bankr. R. 6004-1(b)(iv)(H) | N/A | N/A |
| **Tax Exemption** Local Bankr. R. 6004-1(b)(iv)(I) | N/A | N/A |
| **Record Retention** Local Bankr. R. 6004-1(b)(iv)(J) | N/A | N/A |
| **Sale of Avoidance Actions** Local Bankr. R. 6004-1(b)(iv)(K) | N/A | N/A |
| **Requested Findings as to Successor Liability** Local | N/A | N/A |

| Provision | Description | Location in Sale Agreement |
|---|---|---|
| *Bankr. R. 6004-1(b)(iv)(L)* | | |
| ***Sale Free and Clear of Unexpired Leases*** *Local Bankr. R. 6004-1(b)(iv)(M)* | N/A | N/A |
| ***Credit Bid*** *Local Bankr. R. 6004-1(b)(iv)(N)* | N/A | N/A |
| ***Relief from Bankruptcy Rule 6004(h)*** *Local Bankr. R. 6004-1(b)(iv)(O)* | Time is of the essence given the Closing Date. Accordingly, the Foreign Representative requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h). | N/A |

## RELIEF REQUESTED

22. By this Motion, the Foreign Representative respectfully requests entry of the Sale Order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 363, 1501, 1507, 1514, 1520 and 1521 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1: (i) authorizing the sale of Fontana's rights, title, and interests in and to the Purchased Assets pursuant to the Sale Agreement, free and clear of liens, claims, encumbrances and other interests, and (ii) granting certain related relief.

## BASIS FOR RELIEF REQUESTED

### I. The Court Should Authorize the Sale of the Purchased Assets Pursuant to Section 363 of the Bankruptcy Code.

23. Upon a bankruptcy court's granting recognition of a foreign proceeding as a foreign main proceeding, relief is available to the petitioner under section 1520 of the Bankruptcy Code. *See* 11 U.S.C. § 1520. Section 1520(a)(2) of the Bankruptcy Code provides, in relevant part, that, "upon recognition of a foreign proceeding that is a foreign main proceeding . . . section[] 363 appl[ies] to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the section[] would apply to property of an estate." 11 U.S.C.

9

§ 1520(a)(2). Moreover, section 1520(a)(3) provides that upon recognition of a foreign main proceeding, "unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by section[] 363." 11 U.S.C § 1520(a)(3); *see also In re Elpida Memory, Inc.*, 2012 Bankr. LEXIS 5367, at *18 (CSS) (Bankr. D. Del. Nov. 16, 2012) (holding that section 363 of the Bankruptcy Code applies to transfers of assets located within the United States outside of the ordinary course of business in connection with cases commenced under chapter 15 of the Bankruptcy Code); *In re Atrimm, S.r.L.*, 335 B.R. 149, 159 (Bankr. C.D. Cal. 2005) ("[U]nder chapter 15, § 363 (governing sale, use or lease of property of the estate) . . . appl[ies] to any transfer of an interest of the debtor in property within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of a domestic bankruptcy estate.") (citing 11 U.S.C. § 1520(a)(2)).

24. Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve a sale under section 363(b)(1) of the Bankruptcy Code, the Third Circuit requires a debtor to show that the decision to sell the property outside of the ordinary course of business was based on a sound exercise of the debtor's business judgment and that there is a sound business purpose for the proposed transaction. *See, e.g.*, *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *see also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (same); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale or lease of property outside of the ordinary course of business).

25. In determining whether a sale is a sound exercise of a debtor's business judgment, Delaware Bankruptcy Courts require that the sale satisfy four requirements: "(1) a sound business reason exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith." *In re Decora Indus., Inc.*, 2002 WL 32332749, at *7−8 (D. Del. May 20, 2002) (citing *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 150 (3d Cir. 1986); *In re Exaeris Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). The Foreign Representative submits that all of these requirements have been met.

26. ***First***, the "sound business reason" factor is similar to the 'business judgment rule,' which provides significant deference to a debtor's determination of its own best interests. *In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997). Additionally, a showing of a sound business purpose is determined on the facts and circumstances of each case and need not be unduly exhaustive, but rather, "simply required to justify the proposed disposition with sound business reasons." *See In re Lionel Corp.*, 722 F.2d at 1071 (2d Cir. 1983); *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Here, there is a sound business reason to consummate the Sale Agreement. Fontana no longer intends to use the Property for operational or any other business purposes given that the Debtors are winding down their businesses, and therefore no longer requires the Property. Accordingly, Fontana retained an independent broker that publicly marketed the Property and engaged parties that were interested in purchasing the Purchased Assets. Fontana, in consultation with the CRO and the Monitor, determined that additional marketing efforts would be unlikely to yield an offer that is a higher and better offer

than the Purchaser's offer under the circumstances. Therefore, Fontana ultimately accepted the Purchaser's offer and believes that entry into and consummation of the transactions contemplated by the Sale Agreement represents the highest and best value for such assets under the circumstances in its business judgment. Accordingly, the Foreign Representative believes there is a sound business reason justifying the sale of the Purchased Assets to the Purchaser pursuant to the Sale Agreement.

27. ***Second***, the Purchase Price provided in the Sale Agreement is fair and reasonable. The Purchased Assets were publicly listed for sale by the Broker and the Purchase Price was the result of a comprehensive marketing process and is the highest and best offer received to date. Thus, the consideration provided constitutes a fair and reasonable price for the Purchased Assets.

28. ***Third***, fair and reasonable notice of the sale has been provided to all parties in interest in accordance with the Bankruptcy Code, Bankruptcy Rules and Local Rules, including all known lienholders. All parties in interest will have an opportunity to object and be heard at a hearing to consider the Motion.

29. ***Fourth***, the Sale Agreement is the product of arm's-length and good-faith negotiations between the parties thereto. As such, the Foreign Representative contends that the Purchaser is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.

30. For the foregoing reasons, the Foreign Representative submits that the sale of the Purchased Assets pursuant to the Sale Agreement is in the best interests of their estates, creditors and other parties in interest, and is a sound exercise of Foreign Representative's business judgment. Accordingly, the Foreign Representative respectfully requests that this Court approve the sale of the Purchased Assets.

31.     This Court has previously granted relief similar to that requested in this Motion. *See* D.I. 166, 176. Further, courts in this district routinely grant relief similar to that requested in this Motion. *See, e.g.*, *In re Nextpoint Fin. Inc.*, No. 23-10983 (TMH) (Bankr. D. Del. Dec. 11, 2023) (authorizing and approving the sale free and clear of any and all liens, claims, encumbrances and other interests under section 363 of the Bankruptcy Code); *In re Thane Int'l, Inc.*, No. 15-12186 (KG) (Bankr. D. Del. Dec. 1, 2015) (same); *In re Xchange Tech. Group LLC*, No. 13-12809 (KG) (Bankr. D. Del. Nov. 25, 2013) (same); *Arctic Glacier Int'l Inc.*, No. 12-10605 (KG) (Bankr. D. Del. July 17, 2012) (same); *In re EarthRenew IP Holdings LLC*, No. 10-13363 (CSS) (Bankr. D. Del. Feb. 18, 2011) (same); *In re Grant Forest Prods.*, No. 10-11132 (PJW) (Bankr. D. Del. April 26, 2010) (same); *In re Destinator Techs. Inc.*, No. 08-11003 (CSS) (Bankr. D. Del. July 8, 2008) (same).

II.   **The Court Should Authorize and Approve the Sale of the Purchased Assets Free and Clear of Interests and Successor Liability Pursuant to Section 363(f) of the Bankruptcy Code.**

32.     Under section 363(f) of the Bankruptcy Code, a trustee or a debtor in possession may sell all or any part of a debtor's property free and clear of any and all liens, claims, encumbrances, and other interests in such property if: (1) such a sale is permitted under applicable non-bankruptcy law; (2) the party asserting such a lien, claim or interest consents to such sale; (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. *See* 11 U.S.C. § 363(f); *In re P.K.R. Convalescent Ctrs., Inc.*, 189 B.R. 90, 93–94 (Bankr. E.D. Va. 1995) ("[Section] 363 covers more situations than just sales involving liens. . . . Section 363(f) addresses sales free and clear of any interest . . . ."). In addition, a court may authorize the sale of a debtor's assets free and clear of any liens, claims or

13

encumbrances under section 105 of the Bankruptcy Code. *See Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

33. The Foreign Representative submits that at least one of the subsections of section 363(f) of the Bankruptcy Code is satisfied here with respect to each of the liens on the Purchased Assets. The Foreign Representative believes that the only parties that have a lien on the Purchased Assets are (i) Roynat, Inc. ("Roynat"), as the mortgagee, (ii) the DIP Agent, (iii) certain taxing authorities holding liens against the Property relating to delinquent taxes (the "Tax Liens")[5] and (iv) Vega Iron Works, Inc ("Vega") and Lord Constructors, Inc. ("Lord"), each of which has registered a mechanic's lien against the Property (the "Mechanic's Liens"). Roynat and the DIP Agent have consented to the sale of the Purchased Assets, which satisfies section 363(f)(2) of the Bankruptcy Code with respect to those entities.

34. With respect to the Mechanic's Liens, as detailed in Twenty Fourth Report of the Monitor attached hereto as **Exhibit C** (the "Monitor's Report"), the Monitor has conducted an analysis of the validity and priority of those liens. U.S. counsel to the Monitor advised that each of Lord and Vega may have failed to take certain steps in the time required under applicable California law to preserve its Mechanic's Lien on the Property. *See* Monitor's Report ¶¶ 93-101. Further, notwithstanding this uncertainty as to the validity of the Mechanic's Liens, the Monitor understands that under California law, the relative priority of a mortgage vis-à-vis a mechanic's lien is based on the date of registration of mortgage and the date on which the mechanic's lien

---

[5] As detailed in the Monitor's Report, the Tax Liens have priority over all other liens registered against the Property. Prior to the Monitor's receipt of the proceeds of sale upon closing of the transaction, the designated escrow agent will remit such amounts directly to the relevant tax authorities and the Tax Liens will be released.

claimant began performing the relevant work on the Property. *See* Monitor's Report ¶ 102. As noted in the Declaration, each of Lord and Vega commenced work on the Property after Roynat recorded its mortgage. *See* Declaration ¶ 14. Therefore, the Monitor has concluded that Roynat's mortgage, which secures obligations owed to Roynat in excess of the Purchase Price, has priority over each of the Mechanic's Liens. *See* Monitor's Report ¶¶ 104, 105, 107-108. As such, the proceeds of the proposed sale of the Purchased Assets to the Purchaser are insufficient to satisfy the amounts purportedly secured by the Mechanic's Liens. *See* Monitor's Report ¶ 106.

35. The Bankruptcy Code provides a mechanism under section 363(f)(5) whereby a court may approve a sale free and clear out-of-the-money junior liens, which provides:

> "(f) the trustee may sell property under section subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

36. Several courts have concluded that the availability of a hypothetical foreclosure proceeding under state law satisfies the requirements under section 363(f)(5) of the Bankruptcy Code for allowing a sale free and clear of junior liens, notwithstanding that the proceeds may be insufficient to satisfy all junior liens. *See, e.g.*, *In re Urban Commons 2 W. LLC*, No. 22-11509, 2025 Bankr. LEXIS, at 12-13\* (Bankr. S.D.N.Y. Mar. 4, 2025) (availability of foreclosure proceeding under New York law satisfies 363(f)(5)); *In re Boston Generating, LLC*, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010) (availability of foreclosure proceeding under Massachusetts law satisfies 363(f)(5)); *In re Jolan Inc.*, 403 B.R. 866, 869-70 (Bankr. W.D. Wash. 2009) (availability of foreclosure proceeding under Washington law satisfies 363(f)(5)); *but see Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 710 (S.D.N.Y. 2014) (holding that section 363(f)(5) is satisfied only when the owner of the property—as distinct from a lienholder—could compel the interest holder to accept a money satisfaction for its interest). As the court in *Urban Commons* reasoned, the

narrow reading of section 363(f)(5) espoused by the *Dishi* court is improper because it undercuts the purposes of the Bankruptcy Code's statutory scheme by allowing "holders of out-of-the-money junior liens [which would be extinguished for no value in a state foreclosure proceeding] . . . [to] retain their liens and potentially be able to enforce them against the buyer for full value, even though the value of their interest in the collateral is zero." *Urban Commons*, No. 2025 Bankr. LEXIS, at 16*.

37. Under California law, a non-judicial foreclosure remedy constitutes a "legal or equitable proceeding" under which the junior lienholders could be compelled "to accept a money satisfaction of such interest." *See Bank of America v. Graves*, 51 Cal. App. 4th 607, 611-12 (Cal. Ct. App. 1996) (finding that the purchaser at a non-judicial foreclosure sale under California law receives title under a trustee's deed free and clear of any right, title or interest of junior lienholders, who are left with unsecured deficiency claims to the extent there are no excess proceeds available to satisfy them). Section 363(f)(5) of the Bankruptcy Code is therefore satisfied with respect to each of the Mechanic's Liens because Lord and Vega could be compelled under California law to accept unsecured deficiency claims on account of their Mechanic's Liens given that the value of those liens is zero. *See Boston Generating, LLC*, 440 B.R. at 33.

38. For the same reasons, section 363(f)(1) is also satisfied with respect to each of the Mechanic's Liens. Section 363(f)(1) of the Bankruptcy Code provides:

> "(f) the trustee may sell property under section subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest."

39. Like section 363(f)(5), courts have found that section 363(f)(1) permits a debtor to stand in the shoes of a senior secured lender to exercise hypothetical foreclosure rights available under nonbankruptcy law and extinguish junior interests on a property. *See, e.g., Southland*

*Royalty Co. LLC v. Wamsutter LLC (In re Southland Royalty Co. LLC)*, 623 B.R. 64, 96-98 (Bankr. D. Del. 2020). The *Southland Royalty* court explicitly rejected the *Dishi* limitation that section 363(f)(1) applies only to situations where the owner of the asset may, under non-bankruptcy law, sell an asset free and clear, since the plain language of the statute creates no such limitations. *See id.* at 97-98. The court reasoned that the debtor may extinguish subordinated real property interests as permitted under nonbankruptcy law because any alternative reading "would place [the interest holder] in a better position than it would be outside of bankruptcy and encourage state law foreclosures and corresponding lift stay motions rather than the orderly process established by the Bankruptcy Code designed to maximize value for all stakeholders." Id. at 98.

40. Here, all existing liens, claims, encumbrances, or other interests that exist will attach to the proceeds of the Purchased Assets in the order of priority and with the same validity, force and effect that they have as against the Purchased Assets immediately prior to the Sale Agreement. Accordingly, the Foreign Representative submits that the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and other interests satisfies the statutory requirements of section 363(f) of the Bankruptcy Code.

### III. The Court Should Afford Purchasers All Protections under Sections 363(m) of the Bankruptcy Code

41. The Foreign Representative also requests that the Purchaser receive the protections set forth in sections 363(m) and (n) of the Bankruptcy Code. Specifically, section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith," courts have stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbots Dairies of Pa.*, 788 F.2d at 147.  Courts have held that in order to demonstrate a lack of good faith, a party would have to show "fraud or collusion between the purchaser and [seller] or an attempt to take grossly unfair advantage [of other potential purchasers.]" *Id*.

42.     Here, the Sale Agreement was entered into without fraud or collusion, and is the result of a marketing process undertaken by Fontana and its Broker, and the product of arm's-length, good-faith negotiations between the parties thereto.  Fontana also did not enter into the Sale Agreement for the purpose of hindering, delaying, or defrauding present or future creditors of Fontana.  Accordingly, the Foreign Representative seeks a finding that the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and has not violated section 363(n) of the Bankruptcy Code.

## WAIVER OF BANKRUPTCY RULE 6004(h)

43. The Foreign Representative also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the anticipated closing date under the Sale Agreement is on or about May 13, 2025, and time is of the essence with respect to closing. Accordingly, the Foreign Representative respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h).

## NOTICE

44. The Foreign Representative has provided notice of this Motion consistent with the Bankruptcy Code, Bankruptcy Rules and Local Rule 9006-1, including to all known lienholders. The Foreign Representative submits that such notice is sufficient in view of the facts and circumstances, and no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that the Court enter the Sale Order, substantially in the form attached as **Exhibit A**, granting the requested relief and such other and further relief as may be just and proper.

| | |
|---|---|
| Dated: April 9, 2025<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/ Austin T. Park*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Clint M. Carlisle (No. 7313)<br>Austin T. Park (No. 7247)<br>1201 N. Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br>Email: dabbott@morrisnichols.com<br>          aremming@morrisnichols.com<br>          ccarlisle@morrisnichols.com<br>          apark@morrisnichols.com<br><br>- and -<br><br>**LINKLATERS LLP**<br><br>Penelope J. Jensen, Esq. (admitted *pro hac vice*)<br>Christopher J. Hunker, Esq. (admitted *pro hac vice*)<br>Clark L. Xue, Esq. (admitted *pro hac vice*)<br>1290 Avenue of the Americas<br>New York, NY 10104<br>Telephone: (212) 903-9000<br>Facsimile: (212) 903-9100<br>Email: penelope.jensen@linklaters.com<br>          christopher.hunker@linklaters.com<br>          clark.xue@linklaters.com<br><br>*Attorneys for the Foreign Representative* |