IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>Pride Group Holdings Inc., *et al.*[1]<br>Debtors in Foreign Proceedings. | Chapter 15<br>Case No. 24-10632 (CTG)<br>(Jointly Administered)<br>Re: D.I. 345 |

**DECLARATION OF FOREIGN REPRESENTATIVE IN SUPPORT OF MOTION OF THE FOREIGN REPRESENTATIVE FOR ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF PROPERTY OF DEBTOR VALLEY BOULEVARD FONTANA HOLDING CORP. FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF**

I, Randall Benson, pursuant to 28 U.S.C. § 1746, hereby declare (this "Declaration") under penalty of perjury under the laws of the United States, as follows:

1. I am the founder of RC Benson Consulting Inc, which was engaged on February 26, 2024 as the Chief Restructuring Officer (in such capacity, the "CRO") of the Pride Group. The Debtors and certain of their affiliates are the subject of proceedings (the "CCAA Proceedings") under the Companies' Creditors Arrangement Act, pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"). I was appointed as the foreign representative of the Debtors (the "Foreign Representative") by the Canadian Court pursuant to the preliminary initial order dated March 27, 2024.

2. I am an individual over the age of 18 and, if called upon, could and would testify to the facts set forth in this Declaration. Except as otherwise indicated, all facts set forth in this

---

[1] The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

Declaration are based upon my personal knowledge, information supplied to me by members of the Pride Group's management and professionals or learned from my review of relevant documents, or my opinion based upon my experience and knowledge of the Pride Group's industry, operations, and financial condition that I have acquired since my engagement.

3. I submit this Declaration in support of the *Motion of the Foreign Representative for Entry of an Order (I) Authorizing the Sale of Property of Debtor Valley Boulevard Fontana Holding Corp. Free and Clear of Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* (the "Motion"),[2] filed contemporaneously herewith.

## THE SALE PROCESS FOR THE FONTANA PROPERTY

4. In 2021, Debtor Valley Boulevard Fontana Holding Corp. ("Fontana") purchased a parcel of real property located at 15762 Valley Blvd., Fontana, CA 92335 (the "Property"). The Property was previously used by the Pride Group for sales, leasing, and servicing of trucks. The Debtors are currently engaged in the centralized, coordinated, and controlled wind-down of their remaining assets pursuant to the Wind-Down Order, including their real properties located in the United States.

5. On January 17, 2024, Fontana retained CBRE, Inc., an independent broker (the "Broker"), to publicly list the Property for sale. The Broker formally marketed the Property following its retention for over a year. The marketing process generated seven offers for the Property over the course of its listing, including (i) six offers in amounts ranging from US$8,960,000 to US$16,000,000 and (ii) an offer in the amount of US$17,650,000 from Duff Real Estate, LLC (the "Purchaser"). The Purchaser's offer for the Property was the highest offer, and

---

[2] Capitalized terms used in this Declaration but not otherwise defined shall have the meanings ascribed to them in the Motion.

was ultimately accepted by Fontana as the winning offer, which culminated in the Sale Agreement between the parties thereto.

6. Fontana, in consultation with the CRO and the Monitor, determined that additional marketing efforts for the Property would be unlikely to yield an offer that is a higher and better offer than the Purchaser's offer under the circumstances. Therefore, Fontana, in consultation with the CRO and the Monitor, believes that entry into and consummation of the transactions contemplated by the Sale Agreement represents the highest and best value for the Purchased Assets (defined below) under the circumstances in its business judgment and is in the best interests of the Debtors, their creditors, and other stakeholders.

## THE SALE AGREEMENT

7. On January 22, 2025, Fontana, as the seller, and the Purchaser entered into the Sale Agreement pursuant to which the Purchaser agreed to purchase from Fontana all of Fontana's rights, title and interests in and to the Property, along with all other property described in Section 1.01 of the Sale Agreement (collectively, the "<u>Purchased Assets</u>").

8. I am submitting the Motion, along with this Declaration, on the date hereof to provide notice to parties in interest as required by Local Rule 9006-1 to enable Fontana to close the transactions contemplated by the Sale Agreement on or about May 13, 2025 (the "<u>Closing Date</u>").

9. The following is a summary of certain material provisions of the Sale Agreement.[3]

| Provision | Description | Location in Sale Agreement |
|---|---|---|
| ***Purchased Assets*** | Seller agrees to sell to Purchaser and Purchaser agrees to purchase from Seller in accordance with the terms and | Sale Agreement ¶ 1.01 |

---

[3] Capitalized terms used in this table but not otherwise defined herein shall have the meanings ascribed to them in the Sale Agreement.

3

| Provision | Description | Location in Sale Agreement |
|---|---|---|
|  | conditions of the Sale Agreement, all of Seller's rights, title and interests in and to the real property located at 15762 Valley Blvd., Fontana, CA 92335 and all other property described in section 1.01 of the Sale Agreement. |  |
| *Purchase Price* | US$17,650,000 | Sale Agreement ¶ 2.01 |
| *Sale to Insider* Local Bankr. R. 6004-1(b)(iv)(A) | The Purchaser is not an insider as defined by section 101(31) of the Bankruptcy Code. | N/A |
| *Agreements with Management* Local Bankr. R. 6004-1(b)(iv)(B) | N/A | N/A |
| *Releases* Local Bankr. R. 6004-1(b)(iv)(C) | N/A | N/A |
| *Private Sale/No Competitive Bidding* Local Bankr. R. 6004-1(b)(iv)(D) | The sale of the Purchased Assets is fair and reasonable under the circumstances, is the result of good-faith, arm's length negotiations, and is in the best interests of the Debtors, their creditors, and other stakeholders. | N/A |
| *Closing and Other Deadlines* Local Bankr. R. 6004-1(b)(iv)(E) | The Closing Date is scheduled to occur on or about May 13, 2025. | Sale Agreement ¶ 4.01 |
| *Good Faith Deposit* Local Bankr. R. 6004-1(b)(iv)(F) | Purchaser has made an earnest money deposit in the amount of US$882,500 (together with any interest earned thereon, collectively, the "Earnest Money Deposit") to First American Title Insurance Company, as Escrow Agent, to be held in trust pending closing. The Earnest Money Deposit shall be applied against the Purchase Price at closing. | Sale Agreement ¶¶ 2.02, 2.03 |
| *Interim Arrangements with Purchaser* Local Bankr. R. 6004-1(b)(iv)(G) | N/A | N/A |
| *Use of Proceeds* Local Bankr. R. 6004-1(b)(iv)(H) | N/A | N/A |
| *Tax Exemption* Local Bankr. R. 6004-1(b)(iv)(I) | N/A | N/A |
| *Record Retention* Local Bankr. R. 6004-1(b)(iv)(J) | N/A | N/A |

| Provision | Description | Location in Sale Agreement |
|---|---|---|
| **Sale of Avoidance Actions** Local Bankr. R. 6004-1(b)(iv)(K) | N/A | N/A |
| **Requested Findings as to Successor Liability** Local Bankr. R. 6004-1(b)(iv)(L) | N/A | N/A |
| **Sale Free and Clear of Unexpired Leases** Local Bankr. R. 6004-1(b)(iv)(M) | N/A | N/A |
| **Credit Bid** Local Bankr. R. 6004-1(b)(iv)(N) | N/A | N/A |
| **Relief from Bankruptcy Rule 6004(h)** Local Bankr. R. 6004-1(b)(iv)(O) | Time is of the essence given the Closing Date. Accordingly, the Foreign Representative requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h). | N/A |

10. I believe there is a sound business reason to consummate the Sale Agreement. Fontana no longer intends to use the Property for operational or any other business purposes given that the Debtors are winding down their businesses, and therefore no longer requires the Property. Accordingly, Fontana retained an independent broker that publicly marketed the Property and engaged parties that were interested in purchasing the Purchased Assets. Fontana, in consultation with me in my capacity as the CRO and the Monitor, determined that additional marketing efforts would be unlikely to yield an offer that is a higher and better offer than the Purchaser's offer under the circumstances. Therefore, Fontana ultimately accepted the Purchaser's offer and believes that entry into, and consummation of the transactions contemplated by, the Sale Agreement represents the highest and best value for such assets under the circumstances in its business judgment. Accordingly, I believe there is a sound business reason justifying the sale of the Purchased Assets to the Purchaser pursuant to the Sale Agreement.

11. I believe that the Purchase Price provided in the Sale Agreement is fair and reasonable. The Purchased Assets were publicly listed for sale by the Broker and the Purchase Price was the result of a comprehensive marketing process and is the highest and best offer received to date. Thus, I believe the consideration provided constitutes a fair and reasonable price for the Purchased Assets.

12. The Sale Agreement was entered into without fraud or collusion, and is the result of a marketing process undertaken by Fontana and its Broker, and the product of arm's-length, good-faith negotiations between the parties thereto. Fontana also did not enter into the Sale Agreement for the purpose of hindering, delaying, or defrauding present or future creditors of Fontana. As such, I believe the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and has not violated section 363(n) of the Bankruptcy Code.

13. The Foreign Representative believes that the only parties that have a lien on the Purchased Assets are (i) Roynat Inc. ("Roynat"), as the mortgagee, (ii) the DIP Agent (as defined in the Recognition Order), (iii) certain taxing authorities holding liens against the Property relating to delinquent taxes (the "Tax Liens")[4] and (iv) Vega Iron Works, Inc ("Vega") and Lord Constructors, Inc. ("Lord"), each of which has registered a mechanic's lien against the Property (the "Mechanic's Liens"). Roynat and the DIP Agent have consented to the sale of the Purchased Assets, which I understand satisfies section 363(f)(2) of the Bankruptcy Code with respect to those entities.

14. With respect to the Mechanic's Liens, as detailed in Twenty Fourth Report of the Monitor attached to the Motion as Exhibit C (the "Monitor's Report"), the Monitor has conducted

---

[4] As detailed in the Monitor's Report, the Tax Liens have priority over all other liens registered against the Property. Prior to the Monitor's receipt of the proceeds of sale upon closing of the transaction, the designated escrow agent will remit such amounts directly to the relevant tax authorities and the Tax Liens will be released.

an analysis of the validity and priority of those liens. U.S. counsel to the Monitor advised that each of Lord and Vega may have failed to take certain steps in the time required under applicable California law to preserve its Mechanic's Lien on the Property. *See* Monitor's Report ¶¶ 93-101. Further, notwithstanding this uncertainty as to the validity of the Mechanic's Liens, the Monitor understands that under California law, the relative priority of a mortgage vis-à-vis a mechanic's lien is based on the date of registration of mortgage and the date on which the mechanic's lien claimant began performing the relevant work on the Property. *See* Monitor's Report ¶ 102. I have been advised by management of and certain professionals employed by the Pride Group that (i) Lord commenced design work on the Property in June 2021 and commenced construction work in July 2022 and (ii) Vega commenced work on the Property in November 2022, in each case, after Roynat recorded its mortgage on April 1, 2021. Therefore, the Monitor has concluded that Roynat's mortgage, which secures obligations owed to Roynat in excess of the Purchase Price, has priority over each of the Mechanic's Liens. *See* Monitor's Report ¶¶ 104, 105, 107-108. As such, the proceeds of the proposed sale of the Purchased Assets to the Purchaser are insufficient to satisfy the amounts purportedly secured by the Mechanic's Liens. *See* Monitor's Report ¶ 106.

15. I have been advised that sections 363(f)(5) and 363(f)(1) of the Bankruptcy Code allow for the sale of the Purchased Assets free and clear of the Mechanic's Liens, notwithstanding that the proceeds may be insufficient to satisfy those liens. I further understand that to the extent any liens, claims, encumbrances, or other interests exist, those liens, claims, encumbrances and other interests will attach to the proceeds of the Purchased Assets in the order of priority and with the same validity, force and effect that they have as against the Purchased Assets immediately prior to the Sale Agreement. Accordingly, I believe that the sale of the Purchased Assets free and clear

of all liens, claims, encumbrances and other interests satisfies the statutory requirements of section 363(f) of the Bankruptcy Code.

16.    Accordingly, I submit that the sale of the Purchased Assets pursuant to the Sale Agreement is in the best interests of their estates, creditors and other parties in interest, and is a sound exercise of Fontana's business judgment.

[*Remainder of page left intentionally blank*]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: April 9, 2025
      Toronto, Canada

                                    */s/ Randall Benson*
                                    Randall Benson