# **Exhibit A**

APA



# ADDENDUM # 1 TO PURCHASE AGREEMENT
### For use only by members of the Indiana Association of REALTORS®

1. This Addendum is attached to and made a part of Purchase Agreement dated 03/27/2025
2. on property known as 2400 Oakmont Drive
3. Plainfield                       , Indiana, Zip 46168                    (the "Property").

4. Further Conditions:

5. As-Is, Where-Is: Buyer acknowledges and agrees that the Property shall be sold on an "as-is, where
6. is" basis, and Seller does not, and shall not, make any representations, warranties, guarantees,
7. or covenants regarding the Property, whatsoever, including, but not limited to, representations,
8. warranties, guarantees, or covenants regarding the condition, fitness, use, or intended use of the
9. Property. Buyer agrees to conduct its own investigation(s) and inspection(s), and Buyer
10. unequivocally and forever releases any and all claims and causes of action Buyer may have, either
11. now or in the future against Seller in connection with condition of the Property.

28. **All other terms and conditions of the Purchase Agreement remain unchanged.**
29. By signature below, the parties acknowledge receipt of a signed copy of this Addendum.

30. *Abiodun Ojerinola*   dotloop verified 03/31/25 1:23 PM EDT 1ICC-BKOI-NXVQ-CH57          *RC Benson*  EIT-QA05A6T494R0        April 1, 2025
31. BUYER'S SIGNATURE                              DATE    SELLER'S SIGNATURE                              DATE

32. Abiodun Ojerinola                                      Oakmont Drive IN Holding Corp
33. PRINTED                                                PRINTED

34.
35. BUYER'S SIGNATURE                              DATE    SELLER'S SIGNATURE                              DATE

36.
37. PRINTED                                                PRINTED



Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR). This form is restricted to use by members of IAR. This is a legally binding contract, if not understood seek legal advice. **Form #19A.** Copyright IAR 2025



Chris Price                                        Keller Williams Realty - The Indy Property Source

Listing Broker (Co.) **Keller Williams Indy Metro** ( **KWIN04** ) By **Chris Price** ( **21181** )
Office code                                                                            individual code
Selling Broker (Co.) **Ferris Property Group** ( **FRRS01** ) By **Steve Snyder** ( **41189** )
Office code                                                                            individual code

# PURCHASE AGREEMENT
## (IMPROVED PROPERTY)
### For use only by members of the Indiana Association of REALTORS®

1  Date: **03/27/2025**
2
3  **A.  BUYER:** **Abiodun Ojerinola** ("Buyer")
4  agrees to buy the following property from the owner ("Seller") for the consideration and subject to the following terms,
5  provisions, and conditions:
6
7  **B.  PROPERTY:** The property ("Property") is known as **2400 Oakmont Drive**
8  in **Washington** Township, **Hendricks** County, **Plainfield**
9  Indiana, **46168** (zip code) legally described as: **Fairwood Sec 3 Lot 64 0.361 Ac**
10
11  together with any existing permanent improvements and fixtures attached **(unless leased or excluded)**, including, but
12  not limited to, electrical and/or gas fixtures, heating and central air-conditioning equipment and all attachments thereto,
13  built-in kitchen equipment, sump pumps, water softener, water purifier, fireplace inserts, gas logs and grates, central
14  vacuum equipment, window shades/blinds, curtain rods, drapery poles and fixtures, ceiling fans and light fixtures, towel
15  racks and bars, storm doors, windows, awnings, TV antennas, wall mounts, satellite dishes, storage barns, all
16  landscaping, mailbox, garage door opener(s) with control(s) AND THE FOLLOWING: **(If applicable, any smart home**
17  **devices should be addressed in this paragraph.)** **Dishwasher, Water Heater, Disposal, Microwave/Hood,**
18  **Oven Range, Refrigerator**
19
20  **EXCLUDES THE FOLLOWING (include leased items):** **Washer, Dryer, Water Softener**
21
22
23  **The terms of this Agreement will determine what items are included/excluded, not the Seller's Disclosure Form,**
24  **multiple listing service or other promotional materials. All items sold shall be fully paid for by Seller at time of**
25  **closing the transaction.**
26
27  **Buyer should verify and rely upon Buyer's own determination of total square footage, land, room dimensions**
28  **or community amenities if material, and releases the Seller, the Listing and Selling Brokers and all licensees**
29  **associated with Brokers from any and all liability relating to such determination.**
30
31  **C.  PRICE:** Buyer will pay the total purchase price of ($ **441,000.00** ) **Four Hundred Forty One Thousand**
32  U.S. Dollars for the Property. If Buyer obtains an appraisal of the Property, this
33  Agreement is contingent upon the Property appraising at no less than the agreed upon purchase price. If appraised
34  value is less than the agreed upon purchase price Buyer retains the option to proceed toward closing at the agreed
35  upon purchase price. If Buyer is not willing or able to proceed at the agreed upon purchase price then: 1) either party
36  may terminate this Agreement; or 2) parties may mutually agree to amend the agreed upon price.
37
38  **D.  EARNEST MONEY:**
39  **1.  SUBMISSION:** Buyer submits $ **4,000.00** U.S. Dollars as earnest money which shall be
40  applied to the purchase price at closing. If not submitted with Purchase Agreement, **Earnest money shall be**
41  **delivered to Escrow Agent within** **2 business** ☐ hours ☒ **days after acceptance of offer to purchase.**
42  Escrow Agent to be: ☐ Listing Broker ☐ Selling Broker ☒ Other **Title Company** . Escrow agent shall, after
43  acceptance of the Agreement and **within two (2) banking days of receipt of the earnest money**, deposit the
44  earnest money into its escrow account and hold it until time of closing the transaction or termination of this Agreement.
45  Earnest money shall be returned promptly to Buyer in the event this offer is not accepted. If Buyer fails to timely
46  submit Earnest Money to Escrow Agent as agreed to above, Buyer agrees Seller may terminate this Agreement by
47  serving a Notice of Termination to Buyer prior to Escrow Agent's receipt of the Earnest Money.
48  **2.  DISBURSEMENT:** Upon notification that Buyer or Seller intends not to perform, and if Escrow Agent is the Broker,
49  then Broker holding the Earnest Money may release the Earnest Money as provided in this Agreement. If no
50  provision is made in this Agreement, Broker may send to Buyer and Seller notice of the disbursement by certified
51  mail of the intended payee of the Earnest Money as permitted in 876 IAC 8-2-2. If neither Buyer nor Seller enters
52  into a mutual release or initiates litigation within sixty (60) days of the mailing date of the certified letter, Broker may
53  release the Earnest Money to the party identified in the certified letter. If Escrow Agent is anyone other than a
54  Broker, the 60 day letter release process will not be available. If the Escrow Agent is the Broker, Broker shall be
55  absolved from any responsibility to make payment to Seller or Buyer unless the parties enter into a Mutual Release

2400 Oakmont Drive                                                    Plainfield                         IN  46168

(Property Address)
**Page 1 of 9 (Purchase Agreement)**
COPYRIGHT IAR 2025

56 or a Court issues an Order for payment, except as permitted in 876 IAC 8-2-2 (release of earnest money). Buyer
57 and Seller agree to hold the Broker harmless from any liability, including attorney's fees and costs, for good faith
58 disbursement of Earnest Money in accordance with this Agreement and licensing regulations.
59
60 E. **METHOD OF PAYMENT: (Check appropriate paragraph number)**
61     1. ☐ **CASH: The entire purchase price shall be paid in cash, U.S. Dollars, and no financing is required. Buyer**
62        **to provide proof of funds submitted ☐ with offer ☐ within _____ days of acceptance.**
63        **If Buyer fails to timely submit proof of funds, Buyer agrees Seller may terminate this Agreement by**
64        **serving a Notice of Termination prior to receiving the proof of funds.**
65        **Buyer ☐ will ☐ will not have an appraisal.**
66     2. ☒ **NEW MORTGAGE: Completion of this transaction shall be contingent upon the Buyer's ability to obtain a**
67        ☒ **Conventional** ☐ **Insured Conventional** ☐ **FHA** ☐ **VA** ☐ **Other:** _____ first
68        mortgage loan for  95       % of purchase price, payable in not less than  30       years, with an
69        original rate of interest not to exceed N/A       % per annum and not to exceed N/A    points. Buyer
70        shall pay all costs of obtaining financing, except for any Seller concessions agreed to by Seller.
71        Any inspections and charges which are required to be made and charged to Buyer or Seller by the lender,
72        FHA, VA, or mortgage insurer, shall be made and charged in accordance with their prevailing rules or
73        regulations and shall supersede any provisions of this Agreement.
74     3. ☐ **ASSUMPTION: (Attach Financing Addendum)**
75     4. ☐ **CONDITIONAL SALES CONTRACT: (Attach Financing Addendum)**
76     5. ☐ **OTHER METHOD OF PAYMENT: (Attach Financing Addendum)**
77
78 F. **TIME FOR OBTAINING FINANCING:**
79   1. **APPLICATION:** Within  5       days after the acceptance of this Agreement, Buyer agrees to make written
80 application for any financing necessary, to complete this transaction or for approval to assume the unpaid balance
81 of the existing mortgage and to make a diligent effort to meet the lender's requirements and to obtain financing in
82 cooperation with the Broker and Seller. **Buyer directs lender to order appraisal immediately.**
83   2. **APPROVAL:** No more than  35       days after acceptance of this Agreement shall be allowed for obtaining loan
84 approval, which shall include a completed appraisal, if required by lender or mortgage assumption approval. If an
85 approval is not obtained within the time specified above, this Agreement may terminate unless an extension of
86 time for this purpose is mutually agreed to in writing.
87
88 G. **SELLER CONTRIBUTIONS:**
89     1. ☐ **SELLER CONCESSIONS**: Seller shall provide an allowance up to $_____ U.S. Dollars or _____% of
90        purchase price to be used by Buyer toward any allowed closing costs.
91     2. ☒ **BUYER BROKER COMPENSATION:** Seller to pay Buyer Broker in the amount of $_____ U.S. Dollars or
92         2.5  % of purchase price. The payment of compensation does not create an agency relationship between Buyer
93        Broker and Seller.
93
94 H. **CLOSING:**
95     1. **DATE:** The closing of the sale (the "Closing Date") shall be on or before _____, or
96        within  60       days after  Expiraton of Buyer's Inspection Period  whichever is later or this Agreement
97        shall terminate unless an extension of time is mutually agreed to in writing. Any closing date earlier than the latest
98        date above must be by mutual written agreement of the parties.
99     2. **FEE:** The settlement or closing fee incurred in conducting the settlement charged by the closing agent or company
100        shall be paid by ☐ **Buyer (included in allowance, if provided)** ☐ **Seller** ☒ **Shared equally.**
101     3. **CONTINGENCY:** This Agreement:
102        ☒ **is not contingent upon the closing of another transaction;**
103        ☐ **is contingent upon the closing of the pending transaction on Buyer's property located at** _____
104        _____ **scheduled to close by** _____.
105        **Should that transaction not close, this Purchase Agreement is null and void and the earnest money shall be disbursed**
106        **according to a Mutual Release Agreement.**
107        ☐ **is contingent upon the acceptance of a Purchase Agreement on Buyer's property:**
108          ☐ **Addendum to Purchase Agreement First Right Contingency. See attached Addendum.**
109          ☐ **Addendum to Purchase Agreement Limited Purchase Contingency Right. See attached Addendum.**
110     4. **GOOD FUNDS:** Notwithstanding terms to the contrary, the Parties agree that as a condition to Closing, all funds
111        delivered to the closing agent's escrow account be in such form that the closing agent shall be able to disburse in
112        compliance with I.C. 27-07-3.7 et. seq. Therefore, all funds from a single source of $10,000, U.S. Dollars, or more shall
113        be wired unconditionally to the closing agent's escrow account and all funds under $10,000, U.S. Dollars, from a single
114        source shall be good funds as so defined by statute. Buyer is advised that the cost incurred to wire funds on behalf of
115        and the actual cost incurred shall appear on the closing statement.

2400 Oakmont Drive                                              Plainfield                     IN    46168
(Property Address)
**Page 2 of 9  (Purchase Agreement)**
COPYRIGHT IAR 2025

Chris Price                         Keller Williams Realty - The Indy Property Source

5. **WIRE FRAUD. If you receive any electronic communication directing you to transfer funds or provide nonpublic personal information, EVEN IF THAT ELECTRONIC COMMUNICATION APPEARS TO BE FROM BROKER OR TITLE COMPANY, do not respond until you verify the authenticity by direct communication with Broker or Title Company. Do not rely on telephone numbers provided in the electronic communication. Such requests may be part of a scheme to steal funds or use your identity.**

**I. POSSESSION:**
1. The possession of the Property shall be delivered to Buyer [X] **at closing** [ ] **within** N/A **days beginning the day after closing by** N/A [ ] **AM** [ ] **PM** [ ] **noon or** [ ] **on or before** N/A **by** N/A [ ] **AM** [ ] **PM** [ ] **noon if closed.** For each day Seller is entitled to possession after closing, Seller shall pay to Buyer at closing $0.00 U.S. Dollars per day.
If Seller does not deliver possession by the date and time required in the first sentence of this paragraph, Seller shall pay Buyer $0.00 U.S. Dollars per day as **liquidated damages** until possession is delivered to Buyer; and Buyer shall have all other legal and equitable remedies available against the Seller.

2. **MAINTENANCE OF PROPERTY:** Seller shall maintain the Property in its present condition until its **possession** is delivered to Buyer, subject to repairs in response to any inspection. Buyer may inspect the Property prior to closing to determine whether Seller has complied with this paragraph. **Seller shall remove all debris and personal property not included in the sale.**

3. **CASUALTY LOSS:** Risk of loss by damage or destruction to the Property prior to the closing shall be borne by Seller, including any deductible(s). In the event any damage or destruction is not fully repaired prior to closing, Buyer, at Buyer's option, may either **(a) terminate this Agreement with prompt return of earnest money to buyer or (b) elect to close the transaction**, in which event Seller's right to all real property insurance proceeds resulting from such damage or destruction shall be assigned in writing by Seller to Buyer.

4. **UTILITIES/MUNICIPAL SERVICES:** Seller shall pay for all municipal services and public utility charges through the day of **possession**.

5. **HOME HEATING FUEL:** Any remaining fuel stored in tank(s) [ ] **to be included in the sale** [ ] **will be purchased by Buyer at current market price measured within five (5) days prior to closing** [X] **not applicable.**

**J. LEASED PROPERTY:** If this Property is subject to an enforceable Lease between Seller and tenant(s), such Lease will be provided to Buyer by Seller within N/A days after acceptance of this Agreement. If Buyer does not make a written response to the Lease within N/A days after receipt, the Lease shall be deemed acceptable. Possession will be subject to tenant's rights. In the event the Buyer does not accept any provision(s) of the Lease and such provision(s) cannot be re-negotiated with Tenant(s), this Agreement may be terminated by the Buyer and the earnest money deposit shall be refunded to Buyer promptly.

**K. SURVEY:** Buyer shall receive a **(Check one)** [ ] **SURVEYOR LOCATION REPORT**, which is a survey where corner markers are not set; [ ] **BOUNDARY SURVEY**, which is a survey where corner markers of the Property are set prior to closing; [X] **WAIVED**, no survey unless required by lender; at **(Check one)** [ ] **Buyer's expense (included in allowance, if provided** [ ] **Seller's expense** [ ] **Shared equally and ordered by** [ ] **Buyer** [ ] **Seller** [ ] **Other** N/A. The survey shall (1) be received prior to closing and certified as of a current date, (2) be reasonably satisfactory to Buyer, (3) show the location of all improvements and easements. If Buyer waives the right to conduct a survey, the Seller, the Listing and Selling Brokers, and all licensees associated with Brokers are released from any and all liability relating to any issues that could have been discovered by a survey. This release shall survive the closing.

**L. FLOOD AREA:** If the property is located in a flood plain, Buyer may be required to carry flood insurance at Buyer's expense. Revised flood maps and changes to Federal law may substantially increase future flood insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insurance agents regarding the need for flood insurance and possible premium increases. Buyer [ ] may [X] may not terminate this Agreement if the Property requires flood insurance.

**M. BUILDING USE LIMITATIONS:** Buyer's intended use for the Property is [X] single-family, owner occupied use [ ] other N/A Buyer shall have 0 days after acceptance of Purchase Agreement to satisfy the following building or use limitation: N/A.

**N. HOMEOWNER'S INSURANCE:** Completion of this transaction shall be contingent upon the Buyer's ability to obtain a favorable written commitment for homeowner's insurance within 10 days after acceptance of this Agreement. Buyer should consult with one or more insurance agents regarding optional, or additional, coverage.

**O. ENVIRONMENTAL CONTAMINANTS ADVISORY/RELEASE:** Buyer and Seller acknowledge that Listing Broker, Selling Broker and all licensees associated with Brokers are NOT experts and have NO special training, knowledge or experience with regard to the evaluation or existence of possible lead-based paint, radon, mold and other biological contaminants ("Environmental Contaminants") which might exist and affect the Property. Environmental Contaminants

178  at harmful levels may cause property damage and serious illness, including but not limited to, allergic and/or respiratory
179  problems, particularly in persons with immune system problems, young children and/or the elderly. Buyer is STRONGLY
180  ADVISED to obtain inspections (see below) to fully determine the condition of the Property and its environmental status.
181  The ONLY way to determine if Environmental Contaminants are present at the Property at harmful levels is through
182  inspections.

184  **Buyer and Seller agree to consult with appropriate experts and accept all risks for Environmental**
185  **Contaminants and release and hold harmless all Brokers, their companies and licensees from any and all**
186  **liability, including attorney's fees and costs, arising out of or related to any inspection, inspection result,**
187  **repair, disclosed defect or deficiency affecting the Property, including Environmental Contaminants. This**
188  **release shall survive the closing.**

190  P.  **INSPECTIONS: (Check one)**

192  **Buyer has been made aware that independent inspections disclosing the condition of the property may be**
193  **conducted and has been afforded the opportunity to require such inspections as a condition of this Agreement.**

195  1.  ☐  **BUYER WAIVES THE RIGHT TO HAVE INDEPENDENT INSPECTIONS**
196     **Buyer WAIVES inspections and relies upon the condition of the Property based upon Buyer's own**
197     **examination and releases the Seller, the Listing and Selling Brokers and all licensees associated with**
198     **Brokers from any and all liability relating to any defect or deficiency affecting the Property, which**
199     **release shall survive the closing. Inspections required by law, FHA/VA, down payment assistance program**
200     **or by lender are not included in this waiver.**

202  2.  ☒  **BUYER RESERVES THE RIGHT TO HAVE INDEPENDENT INSPECTIONS** (including Lead-Based Paint)
203     Buyer reserves the right to have independent inspections in addition to any inspection required by law, FHA/VA,
204     down payment assistance program or Buyer's lender(s). All inspections shall be:
205         a.  At Buyer's expense (unless agreed otherwise by the parties or required by lender);
206         b.  Conducted by licensed, independent inspectors or qualified independent contractors selected by
207             Buyer within the following time periods.
208     Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's inspections. Seller must make **all**
209     **areas of the Property** available and accessible for Buyer's inspection.

211  3.  ☐  **PROPERTY IS SOLD "AS IS".** See Attached Addendum.

213  **INSPECTION/RESPONSE PERIOD** (Does not apply with As Is Addendum):
214     A.  **INITIAL INSPECTION PERIOD:** Buyer shall order all independent inspections after acceptance of the Purchase
215         Agreement. Buyer shall have  10  days beginning the day following the date of acceptance of the Purchase
216         Agreement to respond to the inspection report(s) in writing to Seller (see "Buyer's Inspection Response").
217     B.  **SCOPE OF INSPECTION: Inspections may include but are not limited to the condition of the following**
218         **systems and components: heating, cooling, electrical, plumbing, roof, walls, ceilings, floors, foundation,**
219         **basement, crawl space, well/septic, water, wood destroying insects and organisms, lead-based paint (note:**
220         **intact lead-based paint that is in good condition is not necessarily a hazard), radon, mold and other**
221         **biological contaminants and/or the following:**
222         N/A                                                                                                  .
223     C.  **ADDITIONAL INSPECTION:** If the **INITIAL** inspection report reveals the presence of lead-based paint, radon, mold
224         and other biological contaminants, or any other condition that requires further examination or testing, then Buyer
225         shall notify Seller in writing and have  N/A  **additional days from the deadline listed above to order,**
226         **receive and respond in writing to all inspection reports.**
227     D.  **INSPECTION RESPONSE(S) REQUIRED:** If the Buyer does not comply with any Inspection/Response Period or make
228         a written objection to any problem revealed in a report within the applicable Inspection/Response Period, the Property
229         shall be deemed to be acceptable. If one party fails to respond or request in writing an extension of time to respond to the
230         other party's Independent Inspection Response, then that inspection response is accepted. A timely request for
231         extension is not an acceptance of the inspection response, whether or not granted. A reasonable time period to respond
232         is required to prevent misuse of this acceptance provision. Factors considered in determining reasonable time periods
233         include, but are not limited to, availability of responding party to respond, type and expense of repairs requested and
234         need of responding party to obtain additional opinions to formulate a response.
235     E.  **IF DEFECT IS IDENTIFIED:** If an Inspection Report reveals a DEFECT(S) with the Property, the Buyer must:
236         1.  Provide the inspection report, or relevant parts thereof, to the Seller; and
237         2.  Give the Seller the opportunity to remedy the defect(s).
238     F.  **SELLER RESPONSE TO INSPECTION DEFECT:** If Seller is unable or unwilling to remedy the defect(s) to Buyer's
239         reasonable satisfaction before closing (or at a time otherwise agreed to by the parties), then Buyer may terminate this
240         Agreement or waive such defect(s) and the transaction shall proceed toward closing. Seller may terminate

241 Agreement by submitting a Mutual Release if Buyer chooses to further negotiate with subsequent Inspection
242 Response(s).

**G. DEFECT DEFINED:** Under Indiana law, "Defect" means a condition that would have a significant adverse effect on the value of the Property, that would significantly impair the health or safety of future occupants of the property, or that if not repaired, removed, or replaced would significantly shorten or adversely affect the expected normal life of the premises.

**H. PREVIOUSLY DISCLOSED DEFECT:** Buyer agrees that any property defect(s) previously disclosed by Seller, or routine maintenance and minor repair items mentioned in any report, shall not be a basis for termination of this agreement.

**I. INSPECTION RELEASE:** Buyer releases and holds harmless all Brokers and their companies from any and all liability, including attorney's fees and costs, arising out of or related to any inspection, inspection result, repair, disclosed defect or deficiency affecting the Property, including but not limited to lead-based paint, radon, mold and other biological contaminants. This release shall survive the closing.

**Q. LIMITED HOME WARRANTY PROGRAM:**
Buyer acknowledges the availability of a LIMITED HOME WARRANTY PROGRAM with a deductible paid by Buyer which ☐ **will** ☒ **will not** be provided at a cost not to exceed $ N/A U.S. Dollars charged to ☐ **Buyer** ☐ **Seller and ordered by** ☐ **Buyer** ☐ **Seller.** Buyer and Seller acknowledge this LIMITED HOME WARRANTY PROGRAM may not cover any pre-existing defects in the Property nor replace the need for an independent home inspection. Broker may receive a fee from the home warranty provider and/or a member benefit. The Limited Home Warranty Program is a contract between Buyer/Seller and the Home Warranty Provider.

The Parties agree that Brokers and their companies shall be released and held harmless in the event of claims disputes with the Home Warranty Provider.

**R. DISCLOSURES: (Check one)**
1. Buyer ☐ **has** ☐ **has not** ☒ **not applicable** received and executed SELLER'S RESIDENTIAL REAL ESTATE SALES DISCLOSURE.
2. Buyer ☐ **has** ☐ **has not** ☒ **not applicable** received and executed a LEAD-BASED PAINT CERTIFICATION AND ACKNOWLEDGEMENT.

**S. TITLE APPROVAL:** Prior to closing, Buyer shall be furnished with ☒ **a title insurance commitment for the most current and comprehensive ALTA Owner's Title Insurance Policy available** in the amount of the purchase price or ☐ **an abstract of title continued to date**, showing marketable title to Property in Seller's name. Seller must convey title free and clear of any encumbrances and title defects, with the exception of any mortgage assumed by Buyer and any restrictions or easements of record not materially interfering with Buyer's intended use of the Property. A title company, at Buyer's request, can provide information about availability of various additional title insurance coverages and endorsements and the associated costs.

**OWNER'S TITLE INSURANCE PREMIUM** and that portion of Title Service Fees incurred to prepare the Owner's Policy (including title search and examination and commitment preparation), to be paid by ☒ **Buyer (included in allowance, if provided)** ☐ **Seller** ☐ **Shared equally.**

**LENDER'S TITLE INSURANCE PREMIUM** and that portion of Title Service Fees incurred to prepare the Lender's Policy (including title search and examination and commitment preparation), if applicable, to be paid by ☒ **Buyer (included in allowance, if provided)** ☐ **Seller** ☐ **Shared equally** ☐ **Other** N/A

The parties agree that ☐ **Seller** ☒ **Buyer** will select a title insurance company to issue a title insurance policy and will order the commitment ☒ **immediately** or ☐ **other:** N/A

Pursuant to Federal and State Law, Seller cannot make Seller's selection of a title insurance provider a condition of this Agreement.

Seller agrees to pay the cost of obtaining all other documents necessary to perfect title (including the cost of the deed and vendor's affidavit), so that marketable title can be conveyed.

**T. TAXES: (Check appropriate paragraph number)**
1. ☐ Buyer will assume and pay all taxes on the Property beginning with the taxes due and payable on N/A , _____, and all taxes due thereafter. At or before closing, Seller shall pay all taxes for the Property payable before that date.
2. ☒ All taxes that have accrued for any **prior calendar year** that remain unpaid shall be paid by Seller either to the County Treasurer and/or the Buyer in the form of a credit at closing. All taxes that have accrued for the **current calendar year** shall be prorated on a calendar-year basis as of the day immediately prior to the Closing Date.

2400 Oakmont Drive                                                    Plainfield            IN   46168
(Property Address)
Page 5 of 9 (Purchase Agreement)
COPYRIGHT IAR 2025

Chris Price                                    Keller Williams Realty - The Indy Property Source

304    **3.** ☐    For recent construction or other tax situations. Seller will give a tax credit of
305    $ _N/A_____ U.S. Dollars to Buyer at closing. This shall be a final settlement.
306    **For purposes of paragraph 1 and 2:** For the purpose of determining the credit amount for accrued but unpaid taxes,
307    taxes shall be assumed to be the same as the most recent year when taxes were billed based upon *certified* tax rates.
308    This shall be a final settlement.

310    **WARNING:**
311    *****The succeeding year tax bill for recently constructed homes or following reassessment periods may greatly exceed**
312    **the last tax bill available to the closing agent.**

314    *****Buyer acknowledges Seller's tax exemptions and/or credits may not be reflected on future tax bills.**

316    *****Buyer may apply for current-year exemptions/credits at or after closing.**

318    **U**.    **PRORATIONS AND SPECIAL ASSESSMENTS:** Insurance, if assigned to Buyer, interest on any debt assumed or
319    taken subject to, any rents, all other income and ordinary operating expenses of the Property, including but not limited
320    to, public utility charges, shall be prorated as of the day immediately prior to the Closing Date. Seller shall pay any
321    special assessments applicable to the Property for municipal improvements previously made to benefit the Property.
322    Seller warrants that Seller has no knowledge of any planned improvements which may result in assessments and that
323    no governmental or private agency has served notice requiring repairs, alterations or corrections of any existing
324    conditions. Public or municipal improvements which are not completed as of the date above but which will result in a
325    lien or charge shall be paid by Buyer. Buyer will assume and pay all special assessments for municipal improvements
326    completed after the date of this Agreement.

328    **V**.    **TIME:** Time is of the essence. Time periods specified in this Agreement and any subsequent Addenda to the Purchase
329    Agreement are calendar days and shall expire at 11:59 PM of the date stated unless the parties agree in writing to a
330    different date and/or time. Unless otherwise stated, all time periods shall begin the day after the acceptance of this Agreement.

332    **Note: Seller and Buyer have the right to withdraw any offer/counter offer prior to written acceptance and**
333    **delivery of such offer/counter offer.**

335    **W**.    **HOMEOWNERS ASSOCIATION/CONDOMINIUM ASSOCIATION ("Association"):** If the property is located in a
336    community governed by a mandatory homeowners association, the following must be provided by the Seller to Buyer
337    within _N/A_ days after acceptance of this Agreement, but not later than ten (10) days prior to closing pursuant to I.C.
338    32-21-5-8.5: 1. A disclosure that the property is in a community governed by a homeowners association; 2) A copy of
339    the recorded governing documents; 3) a statement indicating there are assessments and the amount of any
340    assessments; 4) The following information about a board member, homeowners association agent, or other person who
341    has a contract with the homeowners association to provide any management services for the homeowners association:
342    (A) the name. (B) the business or home address. Brokers are not responsible for obtaining, verifying or interpreting this
343    information. The parties agree that Brokers and their companies shall be released and held harmless from any and all
344    liability arising out of or related to these documents.

346    If the Buyer does not make a written response to the documents within _N/A_ days after receipt, the documents shall be
347    deemed acceptable. In the event the Buyer does not accept the provisions in the documents and such provisions
348    cannot be waived, this Agreement may be terminated by the Buyer and the earnest money deposit shall be refunded to
349    Buyer promptly. Any approval of sale required by the Association shall be obtained by the Seller, in writing, within _N/A___
350    days after Buyer's approval of the documents. Fees charged by the "Association", or its management company, for
351    purposes of verification of good standing and/or transfer of ownership shall be shared equally by Buyer and Seller.
352    Start-up or one time reserve fees, if any, shall be paid by Buyer.

354    **Buyer acknowledges that in every neighborhood there are conditions which others may find objectionable.**
355    **Buyer shall therefore be responsible to become fully acquainted with neighborhood and other off-site**
356    **conditions that could affect the Property.**

358    **X**.    **ATTORNEY'S FEES:** Any party to this Agreement who is the prevailing party in any legal or equitable proceeding
359    against any other party brought under or with relation to the Agreement or transaction shall be additionally entitled to
360    recover court costs and reasonable attorney's fees from the non-prevailing party.

362    **Y**.    **FAIR HOUSING:** The parties acknowledge that the Fair Housing Act prohibits discrimination in housing because of
363    race, color, national origin, religion, sex, familial status, and disability. **Due to Fair Housing risks, Brokers will not**
364    **prepare, review, or submit personal information letters, including photographs, from Buyer to Seller.** The

365  National Association of REALTORS® Code of Ethics also prohibits REALTORS® from discriminating on the basis of
366  sexual orientation or gender identity.

**Z. ADDITIONAL PROVISIONS:**

1. Unless otherwise provided, any proration's for rent, taxes, insurance, damage deposits, association dues/assessments, or any other items shall be computed as of the day immediately prior to the Closing Date.

2. Underground mining has occurred in Indiana, and Buyers are advised of the availability of subsidence insurance. Broker is not responsible for providing or verifying this information.

3. The Indiana State Police has created a registry of known meth contaminated properties which can be found at www.in.gov/meth. Click on "Clan Lab Addresses." Broker is not responsible for providing or verifying this information.

4. The Indiana Sheriff's Sex Offender Registry (www.indianasheriffs.org) exists to inform the public about the identity, location and appearance of sex offenders residing within Indiana. Broker is not responsible for providing or verifying this information.

5. Conveyance of this Property shall be by general Warranty Deed, or by _____ subject to taxes, easements, restrictive covenants and encumbrances of record, unless otherwise agreed.

6. If it is determined Seller is a "foreign person" subject to the Foreign Investment in Real Property Tax Act, Seller will pay applicable tax obligation.

7. Any notice required or permitted to be delivered shall be deemed received when personally delivered, transmitted electronically or digitally or sent by express courier or United States mail, postage prepaid, certified and return receipt requested, addressed to Seller or Buyer or the designated agent of either party.

8. This Agreement shall be construed under and in accordance with the laws of the State of Indiana and is binding upon the parties' respective heirs, executors, administrators, legal representatives, successors, and assigns. Buyer may not assign this Agreement without the consent of Seller.

9. In case any provision contained in this Agreement is held invalid, illegal, or unenforceable in any respect, the invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement.

10. This Agreement constitutes the sole and only agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties' respecting the transaction and cannot be changed except by their written consent.

11. All rights, duties and obligations of the parties shall survive the passing of title to, or an interest in, the Property.

12. Broker(s) may refer Buyer or Seller to other professionals, service providers or product vendors, including lenders, loan brokers, title insurers, escrow companies, inspectors, pest control companies, contractors and home warranty companies. Broker(s) does not guarantee the performance of any service provider. Buyer and Seller are free to select providers other than those referred or recommended to them by Broker(s). The Parties agree that Brokers and their companies shall be released and held harmless in the event of claims disputes with any service provider.

13. By signing below, the parties to this transaction acknowledge: 1) receipt of a copy of this Agreement; and 2) information regarding this transaction may be published in a listing service, Internet or other advertising media.

14. Any amounts payable by one party to the other, or by one party on behalf of the other party, shall not be owed until this transaction is closed.

15. Buyer and Seller consent to receive communications from Broker(s) via telephone, U.S. mail, email, text message and facsimile at the numbers/addresses provided to Broker(s) unless Buyer and Seller notify Broker(s) in writing to the contrary.

16. Buyer discloses to Seller that Buyer holds Indiana Real Estate License # N/A _____.

17. Where the word "Broker" appears, it shall mean "Licensee" as provided in I.C.25-34.1-10-6.8.

dotloop signature verification: dtlp.us/lz06-2K0N-4UKw
Docusign Envelope ID: CA7D798D-C2FD-409E-AAF5-99102F163F19

426 **AA.** **FURTHER CONDITIONS (List and attach any addenda):** Court Approval: Buyer acknowledges and agrees
427 that Seller is currently a party to proceedings pending under the Companies' Creditors
428 Arrangement Act ("CCAA") in Canada and similar proceedings under Chapter 15 of Title 11 of
429 the Bankruptcy Code pending int he United States Bankruptcy Court for the District of
430 Delaware (the "Chapter 15 Proceedings). As such, the Parties expressly agree that the sale
431 of the Property is expressly contingent on Seller receiving the necessary order(s),
432 consent(s), and permission(s) from the courts in the CCAA proceedings and the Chapter 15
433 Proceedings to consummate the sale of the Property contemplated in the Contract. If the
434 requisite order(s), consent(s), and permission(s) from the aforementioned courts are not
435 obtained then: (1) the sale of the Property shall not be consummated; (2) Seller shall not
436 be deemed to be in default under the terms of the Contract; and (3) Seller shall not be
437 responsible and/or liable to Buyer for any equitable or economic damages, of any kind and in
438 any amounts that may be due and owing under the terms of the Contract.
439
440 Addendum 1 to be attached to this Purchase Agreement.
441
440
441 **BB**. **CONSULT YOUR ADVISORS:** Buyer and Seller acknowledge they have been advised that, prior to signing this
442 document, they may seek the advice of an attorney for the legal or tax consequences of this document and the
443 transaction to which it relates. In any real estate transaction, it is recommended that you consult with a professional,
444 such as a civil engineer, environmental engineer, or other person, with experience in evaluating the condition of the
445 Property.
446
447 **CC**. **ACKNOWLEDGEMENTS: This** ☐ **is** ☒ **is not** a limited agency transaction. Buyer and Seller acknowledge that each
448 has received agency office policy disclosures, has had agency explained, and now confirms all agency relationships. Buyer
449 and Seller further acknowledge that they understand and accept agency relationships involved in this transaction.
450
451 **EXPIRATION OF OFFER:** Unless accepted in writing by Seller and delivered to Buyer **by** 5:00
452 ☐ **AM** ☒ **PM** ☐ **Noon, on** 04/07/2025              , this Purchase Agreement shall be null
453 and void and all parties shall be relieved of any and all liability or obligations.
454
455 This Agreement/contract together with any and all subsequent forms, amendments and addenda may be executed
456 simultaneously or in two or more counterparts, each of which shall be deemed an original but all of which together shall
457 constitute one and the same instrument. The parties agree that this Agreement, together with any and all subsequent
458 forms, amendments and addenda may be transmitted between them electronically or digitally. The parties intend that
459 electronically or digitally transmitted signatures constitute original signatures and are binding on the parties. The original
460 documents shall be promptly delivered, if requested.
461
462 **LEGAL REMEDIES/DEFAULT:** If this offer is accepted and Buyer fails or refuses to close the transaction, without legal
463 cause, the earnest money shall be retained by Seller for damages Seller has or will incur. Seller retains all rights to seek other
464 legal and equitable remedies, which may include specific performance and additional monetary damages. All parties have the
465 legal duty to use good faith and due diligence in completing the terms and conditions of this Agreement. A material failure to
466 perform any obligation under this Agreement is a default which may subject the defaulting party to liability for damages and/or
467 other legal remedies, which, as stated above, may include specific performance and monetary damages in addition to loss of
468 Earnest Money.
469
470 **By signature below, the parties verify that they understand and approve this Purchase Agreement and acknowledge**
471 **receipt of a signed copy.**
472 *Abiodun Ojerinola*   dotloop verified 03/31/25 1:19 PM EDT NF33-IEH8-EHMI-W995
473
474 BUYERS SIGNATURE                                 DATE        BUYER'S SIGNATURE                               DATE
475
476 Abiodun Ojerinola
477 PRINTED                                                     PRINTED

2400 Oakmont Drive                                        Plainfield                       IN    46168
(Property Address)
**Page 8 of 9  (Purchase Agreement)**
COPYRIGHT IAR 2025

Chris Price                              Keller Williams Realty - The Indy Property Source

478 **SELLER'S RESPONSE: (Check appropriate paragraph number):**
479
480 **On** _____, **at** _____ ☐AM ☐PM ☐Noon
481
482 **1.** ☐ The above offer is Accepted.
483
484 **2.** ☐ The above offer is Rejected.
485
486 **3.** ☐ The above offer is Countered. See Counter Offer. Seller should sign both the Purchase Agreement and the Counter
487         Offer.
488
489
490 **By signature below, the parties verify that they understand and approve this Purchase Agreement and acknowledge**
491 **receipt of a signed copy.**
492
493     Signed by: RC Benson                                April 1, 2025
        ED7DE0516449410...
494     SELLER'S SIGNATURE                         DATE    SELLER'S SIGNATURE                         DATE
495
496     Oakmont Drive IN Holding Corp
497     PRINTED                                            PRINTED




Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR) This form is restricted to use by members of IAR. This is a legally binding contract, if not understood seek legal advice.
**Form #02. Copyright IAR 2025**



2400 Oakmont Drive                                             Plainfield                    IN    46168
                                    (Property Address)
                        Page 9 of 9  (Purchase Agreement)
                              COPYRIGHT IAR 2025

Chris Price                           Keller Williams Realty - The Indy Property Source

Docusign Envelope ID: CA7D798D-C2FD-409E-AAF5-99102F163F19



03/09/2025

Abiodun Ojerinola,
411 Red Tail Ln
Indianapolis, IN  46241

Subject Address: 2400 Oakmont Dr, Plainfield, IN  46168

Subject:  Successful Pre-approval

This letter can serve as notice to Seller, Real Estate Agent, and/or Builder that you are a Pre-Approved Buyer. Below are some of the details of your pre-approval

| | |
|---|---|
| Purchase Price: | $450,000.00 |
| Credit Approval Date: | 02/10/2025 |
| Credit Expires Date: | 06/09/2025 |
| Pre-approval Product: | Conv Fixed |

Income, assets and credit have been reviewed and deemed acceptable for this transaction. The loan application has received an Approve/Eligible determination through our automated Underwriting process. Please remember market conditions have an effect on the interest rates available, so feel free to remain in contact with me for updates on current rates or other payment options as you continue your home shopping process. Also, your pre-approval is based on the information provided during the pre-approval interview. If your financial situation or the information provided changes, we may need to modify the loan amount and/ or product or withdraw the pre-approval.

Sincerely,

*Courtney Kraft*

Courtney Kraft– NMLS# 1025897
Mortgage Loan Officer
Office – 317-937-0704
GVC Mortgage, Inc.
600 Corporation Drive Suite 200, Pendleton, IN  46064
Email - ckraft@gvcmortgage.com

This letter is based on preliminary information that is subject to verification and does not constitute a loan application or guarantee.

**Your local premier mortgage lender. Big city quality, small town comfort.**

GVC Mortgage, Inc. I 600 Corporation Drive STE 200, Pendleton, IN 46064 I **O:** 1.800.401.3677 **F:** 765.778.3150 I GVCmortgage.com I NMLS# 2334

