## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Pride Group Holdings Inc., *et al.*[1]<br><br>     Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 24-10632 (CTG)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>**To Be Determined**<br><br>**Objection Deadline:**<br>**December 23, 2025 at 4:00 p.m. (ET)** |

## MOTION OF THE FOREIGN REPRESENTATIVE FOR ENTRY OF AN ORDER (I) AUTHORIZING THE ABANDONMENT AND DESTRUCTION OF CERTAIN DOCUMENTS AND RECORDS AND (II) GRANTING RELATED RELIEF

Randall Benson, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors"), in the Canadian proceedings (the "CCAA Proceedings") commenced under the Companies' Creditors Arrangement Act (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) in Ontario, Canada, Court File No. CV-24-00717340-00CL (the "Canadian Court"), respectfully submits this motion (the "Motion") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, granting relief under sections 105(a), 554(a), and 1521(a)(7) of Title 11 of the United States Code (the "Bankruptcy Code").

---

[1]    The last four digits of Debtor Pride Group Holdings Inc.'s Canadian business number are 6399. Due to the large number of debtors in these chapter 15 cases, a complete list of the debtor entities and the last four digits of their unique identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing agent at https://dm.epiq11.com/pridegroup. The Debtors' service address for the purposes of these chapter 15 cases is 1450 Meyerside, Suite 401, Mississauga, Ontario, L5T 2N5, Canada.

## PRELIMINARY STATEMENT

1.      The Pride Group is in the process of winding down its trucking and logistics operations in accordance with orders of the Canadian Court and this Court.  As part of its orderly wind-down, the Pride Group must address the ongoing burden of storing and maintaining thousands of Documents and Records (defined below) at an approximate cost of at least $4,400 per month in the aggregate.

2.      As further detailed herein, the Pride Group has no operational use for the Documents and Records, the vast majority of which are original copies or physical duplicates of electronic documents held by the Pride Group.  Continuing to store the Documents and Records would cause the Pride Group to incur significant unjustifiable expenses during the wind down to the detriment of its stakeholders, particularly given that the Pride Group no longer has the manpower or financial resources to review and organize these materials.

3.      As such, to ensure that the Pride Group has authority to abandon and destroy the Documents and Records in a manner that protects potentially interested parties, the Foreign Representative respectfully seeks entry of the Proposed Order.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

5.      Venue is proper in this Court and this District pursuant to 28 U.S.C. § 1410.

6.      The Foreign Representative, in his capacity as authorized foreign representative, has properly commenced these chapter 15 cases pursuant to sections 1504, 1509, and 1515 of the

Bankruptcy Code and rules 2002 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.     The statutory predicates for the relief requested herein are sections 105(a), 554(a) and 1521(a)(7) of the Bankruptcy Code.

## BACKGROUND

### I.     Commencement of the CCAA Proceedings and the Chapter 15 Cases

8.     The Debtors and certain of their non-Debtor affiliates (collectively, the "Pride Group")[2] operated a trucking and logistics conglomerate based in Canada with operations in Canada and the United States.  The Pride Group's businesses were managed from their headquarters in Mississauga, Ontario, and they maintained facilities and operations in both Canada and the United States.  The Pride Group owned substantial assets located within the territorial jurisdiction of the United States, including, among other things, real estate properties, bank accounts, equipment, and trucks.

9.     On March 27, 2024, the Debtors commenced the CCAA Proceedings in the Canadian Court, and the Canadian Court issued the initial order on the following day (as amended, the "Initial Order") authorizing, among other things, Randall Benson of RC Benson Consulting Inc. to act as the Foreign Representative and file these chapter 15 cases (collectively, the "Chapter 15 Cases").

10.     On April 1, 2024 (the "Petition Date"), and on April 15, 2024, the Foreign Representative filed petitions for the Pride Group's Canadian and U.S. operating companies, single-asset real estate holding companies, and non-real estate holding companies (the "Petitions"),

---

[2]     As used herein, "Pride Group" includes: (i) each of the "Applicants" in the CCAA Proceedings; (ii) Pride Truck Sales L.P., TPine Leasing Capital L.P., and Sweet Home Hospitality L.P.; and (iii) Block 6 Holding Inc., 2500819 Ontario Inc., Pergola Holdings, Corp., and Pride Global Insurance Company Ltd.

thereby commencing the Debtors' Chapter 15 Cases. Also on the Petition Date, the Foreign Representative filed the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 2] (the "<u>Verified Petition</u>") seeking, among other things, recognition of the CCAA Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code, enforcement of the Initial Order in the United States on a final basis, and related relief.

11.     On April 23, 2024, the Debtors filed an amended Verified Petition [D.I. 121] (the "<u>Amended Verified Petition</u>," and together with the Petitions, the "<u>Chapter 15 Petitions</u>") seeking, among other things, recognition of the CCAA Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code, enforcement of the Initial Order in the United States on a final basis, and related relief.

12.     On May 2, 2024, the Court entered an order [D.I. 152] (the "<u>Recognition Order</u>") granting recognition of the CCAA Proceedings and the related relief sought in the Chapter 15 Petitions, including, among other things, enforcement of the Initial Order in the United States on a final basis.

13.     On October 10, 2024, the Canadian Court granted an order (the "<u>Wind-Down Order</u>"), which, among other things, approved the Pride Group's wind-down plan (the "<u>Wind-Down Plan</u>") to implement a centralized, coordinated, and controlled wind-down of the Pride Group's remaining businesses and assets to maximize value for their stakeholders.

14.     On November 7, 2024, this Court entered an order [D.I. 286] enforcing the Wind-Down Order in the United States.

## II.     The Pride Group's Documents and Records and Proposed Destruction/Abandonment Protocols

15.     The Pride Group is in possession of certain documents and records described below (collectively, the "Documents and Records") for which the costs of continued maintenance by the Pride Group are unjustified under the circumstances.  Because the costs of maintaining the Documents and Records constitute an undue burden on the Pride Group's wind-down efforts to the detriment of stakeholders, the Pride Group must return, abandon, or destroy the Documents and Records in a prompt and responsible manner, which may require several weeks to months to complete.  The Foreign Representative submits that the relief requested herein is necessary to the successful completion of the Pride Group's Court-approved wind-down efforts.

16.     To facilitate the Pride Group's wind-down efforts and bring the CCAA Proceedings and these Chapter 15 Cases to an orderly conclusion, the Foreign Representative respectfully requests that this Court authorize the abandonment and destruction of the Documents and Records maintained by the Pride Group pursuant to the protocols set forth below.

### A.  *Title Documents*

17.     The Pride Group is in possession of approximately 241 titles, of which one title is in respect of an active lease serviced by a lender (the "Serviced Title"), 233 are titles that have not been assigned or serviced (the "Non-Serviced Titles"), and seven are unresolved titles tied to vehicles in which multiple lenders claim a security interest (the "Unresolved Titles", and together with the Serviced Title and the Non-Serviced Titles, the "Titles").

18.     Given the significance of these Titles to the rightful holders, the Pride Group has already mailed, or intends to mail, the Titles via certified mail at the Pride Group's expense to the last known address of the applicable titleholder or lender.  The Foreign Representative further requests Court authority for the Pride Group to abandon and destroy any Titles for which the Pride

Group does not have contact information after employing commercially reasonable efforts to identify the appropriate recipient or that are returned to the Pride Group as undeliverable; *provided* that the Pride Group may not abandon and destroy the Unresolved Titles until disputes related to the applicable lenders' interests in the applicable vehicles are resolved, at which point the Pride Group will either (i) return the applicable Unresolved Title to the appropriate recipient or (ii) abandon and destroy the applicable Unresolved Title for which the Pride Group does not have contact information after employing commercially reasonable efforts to identify the appropriate recipient or that are returned to the Pride Group as undeliverable.

B. *Chattel Paper*

19.     The Pride Group is in possession of forty-nine bankers' boxes containing approximately 5,000 commingled and uncategorized active and inactive lease documents and other related documents for approximately 5,000 of the Pride Group's leased vehicles and equipment (collectively, the "Chattel Paper").  Reviewing and organizing the Chattel Paper would require the expenditure of substantial resources that the Pride Group does not have and cannot justify under the circumstances.  The Pride Group has stored and inventoried electronic copies of the Chattel Paper, and has no reason to believe that any lender or other party requires the Chattel Paper for lease servicing or other purposes.

20.     Nevertheless, the Foreign Representative understands that certain lender parties may request the return of their original Chattel Paper.  Accordingly, to appropriately safeguard the interests of such parties, the Foreign Representative intends to cause the Pride Group to send a letter to the lenders notifying them that they have a 30-day period after the entry of the Proposed Order to contact the Pride Group to arrange for retrieval of their Chattel Paper at their own expense under the supervision of the Pride Group. After the expiration of that 30-day retrieval period, the

Foreign Representative requests Court authority to cause the Pride Group to send any remaining Chattel Paper to a third-party records management vendor (such as Iron Mountain, Inc.) for destruction.

     *C.* *Ancillary Documents*

    21.    The Pride Group is in possession of approximately thirty crates holding approximately 3,000 pounds of commingled and uncategorized active and inactive leases, ancillary documents, and tax forms (the "<u>Ancillary Documents</u>").  The Ancillary Documents are currently being stored at the personal storage unit, and at the personal expense of, an employee of the Pride Group.  Organizing the Ancillary Documents would require the expenditure of substantial resources that cannot be justified, particularly given that the Pride Group has no reason to believe that any third parties require original copies of the Ancillary Documents.

    22.    As noted above, the Ancillary Documents include certain tax forms relating to vehicle sales and leases (the "<u>Tax Forms</u>").  The Pride Group maintains electronic copies of all Tax Forms, but the Foreign Representative understands that certain state and local tax authorities (the "<u>Taxing Authorities</u>") may conduct an audit of the Pride Group in the future, and may request original Tax Forms to prove that the relevant tax liability was discharged.  The Foreign Representative understands from the Pride Group's tax consultant that the best practice is to retain the original Tax Forms for a period of three years.  However, given that the Pride Group has electronic copies of all Tax Forms and the cost of maintaining and organizing the physical Tax Forms is expensive and detrimental to the Pride Group's stakeholders, the Foreign Representative requests that the Court authorize and direct the Taxing Authorities to accept electronic copies of the Tax Forms for audit purposes in the event there is a subsequent audit; and authorize the Pride

Group to abandon and destroy the Tax Forms in the most efficient manner as it may determine in its commercial judgment.

     *D.  <u>Mail at the Toledo Property</u>*

23.    The Pride Group continues to receive mail (the "<u>Mail</u>") in respect of vehicles to which the Pride Group is the titleholder at the real property located at 1125 E. Alexis Rd., Toledo, OH 43612 (the "<u>Toledo Property</u>").  The Toledo Property was sold by Debtor Alexis Investments, LLC several months ago to a third-party purchaser, and the third-party purchaser has thus far allowed the Pride Group to continue to collect the Mail from the Toledo Property via a third-party contract worker.  The contract worker collects, scans, and forwards the Mail to the Pride Group six times per week at a cost of approximately $900 per week, and the Pride Group then reviews the Mail and forwards it to the appropriate lender or other recipient.  These costs and efforts can no longer be justified given that the Pride Group no longer owns the Toledo Property and cannot feasibly continue to collect and process the Mail at the Toledo Property indefinitely for the benefit of lenders that may continue to rely on timely receipt of such Mail to maintain accurate records regarding their collateral after the Pride Group completes its wind down.

24.    As such, the Pride Group intends to send a letter to the applicable lenders informing them that they should transition any titles still in the name of a Pride Group entity as soon as possible so that important Mail is sent directly to the applicable lenders rather than the Pride Group at the Toledo Property.  Further, the Foreign Representative requests Court authority for the Pride Group to abandon and destroy any Mail that may be received at the Toledo Property upon the expiration of seven days after the entry of the Proposed Order.

25.    While maintenance of the Documents and Records was necessary for the Pride Group to operate as going-concern trucking enterprise, the Foreign Representative has no reason

to believe that the Documents and Records are necessary for the Pride Group to complete the wind-down of its businesses.  In particular, the Foreign Representative believes that the vast majority of the Documents and Records are merely original copies or physical duplicates of documents held electronically by the Pride Group.

26.     Requiring the Pride Group to continue to store the Documents and Records would incur substantial costs.  Further, given that the Pride Group is no longer operating and does not have the manpower or financial resources to do so, it would be exceedingly difficult and costly to the Pride Group to retain additional employees or a third-party advisor to spend the time and money needed to review and organize the Documents and Records.

27.     In sum, the costs of maintaining the Documents and Records cannot be justified under the circumstances, and the Foreign Representative therefore seek Court authority to destroy, cause to be destroyed, or abandon, the Documents and Records.

## RELIEF REQUESTED

28.     By this Motion, the Foreign Representative seeks entry of the Proposed Order granting the relief described herein, and granting such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF REQUESTED

29.     Upon recognition of a foreign proceeding, section 1521(a) of the Bankruptcy Code authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors."  Such relief may include "granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) of the Bankruptcy Code."  11 U.S.C. § 1521(a)(7).  The Court may grant relief under

section 1521(a) of the Bankruptcy Code if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

30.    Courts routinely find that there is just cause to destroy property of the estate pursuant to the standards for abandonment under section 554 of the Bankruptcy Code. *See, e.g.*, *In re Yellow Corporation*, No. 23-11069 (Bankr. D. Del 2024) (authorizing the debtors to destroy or abandon certain hard copy records that are no longer needed post-sale); *In re Motors Liquidation Co.*, 625 B.R. 605, 613 (Bankr. S.D.N.Y. 2021) (authorizing a post confirmation trustee to destroy a debtor's books and records under Bankruptcy Code section 554(a)); *In re Great Atl. & Pac. Tea Co., Inc.*, No. 15-23007 (RDD), 2021 WL 5863393, at *13 (Bankr. S.D.N.Y. May 13, 2021) (authorizing the abandonment or destruction of debtors' books and records pursuant to sections 105(a) and 554 of the Bankruptcy Code); *In re Syntax-Brillian Corp.*, No. 08-11407 (KJC), 2018 WL 3491758, at *15 (Bankr. D. Del. July 18, 2018) (authorizing a trustee to destroy books and records following an analysis under section 554).

31.    Section 554(a) of the Bankruptcy Code allows a trustee to abandon property of the estate if it is (i) "burdensome to the estate" or (ii) "of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).    A trustee is given broad discretion when determining the propriety of abandonment. *In re Wilton Armetale, Inc.*, 618 B.R. 424, 433 (Bankr. E.D. Pa. 2020); *see Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.*, 474 U.S. 494, 507 n.9 (1986) (noting that a trustee's power to abandon property is broad); *First Nat'l Bank v. Lasater*, 196 U.S. 115, 118-19 (1905) (noting that "[T]rustees in bankruptcy are not bound to accept property of an onerous or unprofitable character . . .").

32.    A trustee's business judgment is given deference unless an objecting party meets its burden to show that the potentially-abandoned property provides a benefit to the debtor's estate. *In*

*re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) ("The trustee's power to abandon property is discretionary. Courts defer to the trustee's judgement and place the burden on the party opposing the abandonment to prove a benefit to the estate and an abuse of the trustee's discretion.") (citations omitted), *aff'd*, 112 F. App'x 868 (3d Cir. 2004); *In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997) (The trustee has "substantial discretion" when determining "that assets of the state should be abandoned . . . . The [t]rustee [ ] need only demonstrate that he has exercised sound business judgment in making the determination to abandon."); *In re Interpictures, Inc.*, 168 B.R. 526, 535 (Bankr. E.D.N.Y. 1994) ("From the beginning of modern bankruptcy law, the courts have uniformly held that a trustee's power to abandon property is discretionary. By adopting a policy of adherence to a trustee's decision, the courts have placed the burden of proving an abuse of discretion of the trustee's action or inaction on abandonment on the party seeking to make the trustee act.") (citations omitted).  Any party disputing the propriety of abandonment must "show some likely benefit to the estate; mere speculation about possible scenarios in which there might be a benefit is not sufficient."  *In re Apex Long Term Acute Care - Katy, L.P.*, 599 B.R. 314, 323 (Bankr. S.D. Tex. 2019); *see also In re Wilton Armetale, Inc.*, 618 B.R. at 433 (same).

33.     Section 105(a) of the Bankruptcy Code also provides that the Court may issue any necessary or appropriate order to carry out the provisions of the Bankruptcy Code.  11 U.S.C. § 105(a).  The purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction."  2 Collier on Bankruptcy ¶ 105.01 (Richard Levin & Henry J. Sommer eds., 16th ed.).

34.     The Pride Group's proposed abandonment and destruction of the Documents and Records is warranted under sections 105(a), 554(a), and 1521(a)(7) of the Bankruptcy Code.  The Foreign Representative has determined, in the exercise of his sound business judgment, that the

Documents and Records for which the Pride Group seeks authority to abandon and destroy are neither necessary nor valuable to the Pride Group.  Absent the authority to abandon and destroy the Documents and Records, the Pride Group will be compelled to continue to incur additional and unnecessary expenses for third-party vendors to store the Documents and Records, thereby impeding the Pride Group's wind-down efforts.

35.    As set forth above, certain parties in interest have expressed a desire to retrieve their Documents and Records. The Pride Group will employ commercially reasonable efforts to safeguard the interests of such parties pursuant to the protocols described herein.

36.    For the foregoing reasons, the Foreign Representative respectfully submits that the Pride Group's decision to abandon and destroy the Documents and Records is authorized under sections 105(a), 554(a), and 1521(a)(7) of the Bankruptcy Code, constitutes sound business judgment, and should be approved by this Court.

## NOTICE

37.    The Foreign Representative has provided notice of this Motion consistent with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). The Foreign Representative submits that such notice is sufficient in view of the facts and circumstances, and no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit A**, granting the requested relief and such other and further relief as may be just and proper.

Dated: December 9, 2025
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Luke Brzozowski*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Luke Brzozowski (No. 7377)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dabbott@morrisnichols.com
      aremming@morrisnichols.com
      lbrzozowski@morrisnichols.com

- and -

**LINKLATERS LLP**

Penelope J. Jensen, Esq. (admitted *pro hac vice*)
Christopher J. Hunker, Esq. (admitted *pro hac vice*)
Clark L. Xue, Esq.
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 903-9000
Facsimile: (212) 903-9100
Email: penelope.jensen@linklaters.com
      christopher.hunker@linklaters.com
      clark.xue@linklaters.com

*Attorneys for the Foreign Representative*